1  Cohen, Milstein, Hausfeld & Toll P.L.L.C.
   Steven J. Toll
2  Mark S. Willis
   Matthew B. Kaplan
3  stoll@cmht.com
   1100 New York Avenue, N.W.
4  Suite 500, West Tower
   Washington, DC 20005
5  Telephone:    (202) 408-4600
   Facsimile:    (202) 408-4699
6
   Cohen, Milstein, Hausfeld & Toll P.L.L.C.
7  Michael Lehmann
   mlehmann@cmht.com
8  One Embarcadero Center
   Suite 526
9  San Francisco, CA 94111
   Telephone:    (415) 623-2048
10 Facsimile:    (415) 433-5994

11 Lead Counsel for the Proposed Class

12                    UNITED STATES DISTRICT COURT

13                   NORTHERN DISTRICT OF CALIFORNIA

14

15 In re LDK Solar Securities Litigation       Master File No. C-07-05182-WHA

16
                                               **OPPOSITION TO DEFENDANTS'**
17 This Document Relates To:                    **MOTION FOR LEAVE TO FILE MOTION**
                                                **FOR RECONSIDERATION; OR**
18 All Actions                                  **ALTERNATIVELY CERTIFICATION OF**
                                                **ISSUES FOR APPEAL**
19

20

21

22

23

24

25

26

27

28

COHEN, MILSTEIN,
HAUSFELD & TOLL
P.L.L.C.

Opp. To Defs.' Mot. For Leave To File Mot. For Reconsid. Or Alternatively Cert.
Of Issues For Appeal—Master File No. C-07-05182-WHA
384097.2 2

1

## TABLE OF CONTENTS

2

TABLE OF AUTHORITIES ................................................................................................ii

3

I.    STATEMENT OF ISSUES TO BE DECIDED .................................................. 1

4

II.   PRELIMINARY STATEMENT ......................................................................... 1

5

III.  DEFENDANTS' MOTION DOES NOT MEET THE STANDARD FOR A
      MOTION FOR RECONSIDERATION ............................................................. 3

6
      A.   The Requirements For A Motion For Reconsideration Are Stringent ............................. 3
      B.   The Court Did Not Manifestly Fail To Consider Defendants' Arguments ....................... 4

7
           1.   The Court Did Not Manifestly Fail To Consider "Facts" About LDK's Inventory ....... 5
           2.   The Court Did Not Manifestly Fail to Consider Defendants' Argument That They

8
                Were Exonerated By Their Investigators And Auditors ................................................. 6

9
           3.   The Court Did Not Manifestly Fail To Consider Defendants' Argument That The
                Absence Of Insider Trading Exonerates Them ............................................................... 8

10
           4.   The Court Did Not Manifestly Fail To Consider Defendants' Argument That The
                Complaint Is Based On Unreliable Sources .................................................................... 9

11
           5.   The Court Did Not Manifestly Fail To Consider Defendants' Argument That
                They Were Not On Notice About Inventory Irregularities ........................................... 11

12
      C.   The Court Was Not Required To Rule On The Allegations Against The Unserved
           Defendants ....................................................................................................................... 12

13
      D.   The October 4, 2007 Press Release Is An Actionable False Statement .......................... 12

14
IV.   DEFENDANTS' REQUEST FOR CERTIFICATION OF AN
      INTERLOCUTORY APPEAL SHOULD BE REJECTED ............................ 13

15
      A.   Section 1292(b) Certification Is Meant For Exceptional Circumstances ....................... 13
      B.   Defendants Identify No Exceptional Cirucmstances Meriting § 1292(b)

16
           Certification ..................................................................................................................... 14
      C.   An Interlocutory Appeal Is Unlikely To Save Time Or Money ..................................... 15

17
V.    CONCLUSION .................................................................................................. 16

18

19

20

21

22

23

24

25

26

27

28

Opp. To Defs.' Mot. For Leave To File Mot. For Reconsid. Or Alternatively Cert. Of Issues For
Appeal—Master File No. C-07-05182-WHA                                                        i
384097.2 2

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Berson v. Applied Signal Technology, Inc.,*
527 F.3d 982, 2008 WL 2278670 (9th Cir. June 5, 2008) ............................... 2, 10, 11, 14, 15

*Bowoto v. Chevron Corp.,*
No. C 99-02506, 2007 WL 4224593 (N.D. Cal. Nov. 28, 2007) ............................................ 4

*Caterpillar Inc. v. Lewis,*
519 U.S. 61 (1996) ............................................................................................................... 13

*Clanahan v. McFarland Unified School District,*
No. CV F 05-07965, 2007 WL 2428089 (E.D. Cal. Aug. 22, 2007) .................................... 13

*Contratto v. Ethicon, Inc.,*
227 F.R.D. 304 (N.D. Cal. 2005) ......................................................................................... 12

*Coopers and Lybrand v. Livesay,*
437 U.S. 463 (1978) ............................................................................................................. 13

*Eminence Capital, LLC v. Aspeon, Inc.,*
316 F.3d 1048 (9th Cir. 2003) .............................................................................................. 15

*Gonzalez v. Crosby,*
545 U.S. 524 (2005) ............................................................................................................... 3

*In re Cement Antitrust Litig.,*
673 F.2d 1020 (9th Cir. 1982) .............................................................................................. 14

*In re Connetics Corp. Secs. Litig.,*
542 F. Supp. 2d 996 (N.D. Cal. 2008) ................................................................................. 10

*In re Pixar Securities Litig.,*
450 F. Supp. 2d 1096 (N.D. Cal. 2006) ................................................................................. 9

*James v. Price Stern Sloan, Inc.,*
283 F.3d 1064 (9th Cir. 2002) .............................................................................................. 13

*Lee v. City of Los Angeles,*
250 F.3d 668 (9th Cir. 2001) .................................................................................................. 6

*Nidec Corp. v. Victor Co. of Japan, Ltd.,*
No. C 05-0686, 2007 WL 4108092 (N.D. Cal. Nov. 16, 2007) ......................................... 3, 4

*Osher v. JNI Corp.,*
256 F. Supp. 2d 1144 (S.D. Cal. 2003) .................................................................................. 9

COHEN, MILSTEIN,
HAUSFELD & TOLL
P.L.L.C.

*Prudential Real Estate Affiliates, Inc. v. PPR Realty, Inc.*,
    204 F.3d 867 (9th Cir. 2000) .................................................................................. 3

*Taylor v. City of Oakland*,
    No. C 06-05169 WHA, 2007 WL 3287843 (N.D. Cal. Nov. 5, 2007) ................................... 13

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    127 S. Ct. 2499 (2007) ................................................................................. 4, 5, 9

*Troy Group, Inc. v. Tilson*,
    364 F. Supp. 2d 1149 (C.D. Cal. 2005) ................................................................. 6

**STATUTES**

28 U.S.C. § 1292 .................................................................................. 13, 14

Opp. To Defs.' Mot. For Leave To File Mot. For Reconsid. Or Alternatively Cert. Of Issues For
Appeal—Master File No. C-07-05182-WHA                                                    iii
384097.2 2

1

**MEMORANDUM OF POINTS AND AUTHORITIES**

2    This Memorandum is filed in opposition to Defendants' Notice of Motion and Motion for

3    Leave to File Motion for Reconsideration; Or Alternatively Certification of Issues for Appeal

4    ("the Motion").  Defendants' Motion should be denied in its entirety.

5

6    **I.    STATEMENT OF ISSUES TO BE DECIDED**

7    Whether the Court should consider or grant Defendants' request for reconsideration of the

8    Court's May 29, 2008 order and opinion ("the Order") denying their motion to dismiss when the

9    request for reconsideration largely repeats Defendants' previous arguments and whether, in the

10   alternative, the Court of Appeals should be asked to review several issues that Defendants claim

11   were wrongly decided by this Court when it rejected their motion to dismiss.

12   **II.    PRELIMINARY STATEMENT**

13   The Consolidated Complaint ("the Complaint") sets out extensive allegations of

14   wrongdoing by Defendants which are supported by detailed factual assertions.  Despite the

15   discovery stay imposed by the Private Securities Litigation Reform Act ("PSLRA"), the

16   allegations in the Complaint are supported by a number of reliable sources, including information

17   provided by Defendant LDK's former financial controller, Charley Situ.  As set forth in the

18   Complaint, Situ left the Company near the end of the Class Period, revealing that Defendants had

19   been cooking LDK's books and inflating its inventory.  Defendants do not suggest that Situ had

20   any motive to lie and, as the Court noted in its Order, it is difficult to see who within a company

21   would be better positioned to have personal knowledge of accounting fraud than its financial

22   controller.  This was especially true at LDK, where Situ was hired to deal with known accounting

23   problems and was the Company's liaison with its outside auditors.

24   Standing alone, Situ's information would support a strong inference that Defendants acted

25   with scienter.  But his allegations do not stand alone.  They are corroborated by numerous

26   sources, including internal company documents, press reports, the views of knowledgeable

27   securities analysts, a tape recording of a key internal company meeting, the Company's own

28

Opp. To Defs.' Mot. For Leave To File Mot. For Reconsid. Or Alternatively Cert. Of Issues For
Appeal—Master File No. C-07-05182-WHA                                                      - 1 -
384097.2 2

1  admissions, and a sudden and highly unusual post-Class Period change in accounting procedures

2  which seems to confirm that LDK was not properly accounting for its inventory.

3      The Court recognized the strength of Plaintiff's case in its thorough and well-reasoned

4  Order.  Defendants' current Motion seeks leave to ask for reconsideration of this Order.  Despite

5  a local rule prohibiting repetitive argument, the Motion is almost entirely a rehash of the

6  arguments Defendants made previously in support of their motion to dismiss, arguments that the

7  Court properly rejected.  Although Defendants' apparent view is that the Court made erroneous

8  factual determinations in applying the facts alleged to the relevant law, they do not say that the

9  Court used improper legal standards and they identify no new facts or changes in the law that

10 might justify reconsideration.  Moreover, Defendants would have the Court look in isolation at a

11 handful of the facts set out in the Complaint, ignoring the Supreme Court's mandate that, in

12 determining whether a strong inference of scienter has been established, the Complaint must be

13 viewed as a collective whole.  Furthermore, a recent Ninth Circuit decision reversing the

14 dismissal of a securities class action, *Berson v. Applied Signal Technology, Inc.*, 527 F.3d 982,

15 2008 WL 2278670 (9th Cir. June 5, 2008) (Kozinski, C.J.), supports Plaintiff's view that the

16 Court's analysis of the Complaint in this case was on the mark.

17     Defendants seem to believe that, by constant repetition, unsupported assertions can be

18 converted into actual facts.  But no matter how many times Defendants falsely assert that Situ

19 "admitted" he did not check all materials in the warehouse, or that he was not qualified to say

20 what he said, that the Company was exonerated by an "independent" investigation conducted by a

21 "Special Committee," or that KPMG's audit found that LDK's quarterly results were accurate, the

22 Court must apply the facts as they are, not as Defendants would like them to be.

23     The Motion also seeks, in the alternative, leave to file an interlocutory appeal on several

24 issues, factual in nature, which were correctly decided in the Court's Order.  There is even less

25 justification for asking the Ninth Circuit to deal with the minutia of this case than there is for

26 Defendants' request for reconsideration.

27     Plaintiff responded to Defendants' recycled substantive arguments in his April 24, 2008

28 Opposition to Defendants' Motion to Dismiss, which he incorporates by reference into this

COHEN, MILSTEIN,
HAUSFELD & TOLL
P.L.L.C.

Opp. To Defs.' Mot. For Leave To File Mot. For Reconsid. Or Alternatively Cert. Of Issues For
Appeal—Master File No. C-07-05182-WHA                                                      - 2 -
384097.2 2

1   Memorandum. Although repeating all that was said before would serve little purpose, this

2   Memorandum makes some additional comments on the substantive points raised in Defendants'

3   Motion that Plaintiff believes may be helpful to the Court.

4

### III.   DEFENDANTS' MOTION DOES NOT MEET THE STANDARD FOR A MOTION
5          FOR RECONSIDERATION

6         ***A.    The Requirements For A Motion For Reconsideration Are Stringent***

7         Defendants do not come close to meeting the standard in this District for being granted

8   permission to file a motion for reconsideration. In a likely attempt to conceal the weakness of

9   their position, Defendants misleadingly claim that they seek reconsideration pursuant to "Federal

10  Rules of Civil Procedure … Rule 60 and Civil L.R. 7-9." (Mot. at 1.) Rule 60(b)(6), which

11  Defendants purport to rely on, provides for relief from judgments and similar "final" orders for

12  "any … reason that justifies relief" from the judgment, Fed. R. Civ. P. 60(b)(6), but "relief under

13  Rule 60(b)(6) requires a showing of 'extraordinary circumstances,'" *Gonzalez v. Crosby*, 545

14  U.S. 524, 536 (2005), a showing Defendants do not even claim to have made. More

15  fundamentally, Rule 60 deals only with ***final*** orders and judgments and has no relevance to

16  whether the Court should reconsider its interlocutory Order denying Defendants' motion to

17  dismiss. *See, e.g., Prudential Real Estate Affiliates, Inc. v. PPR Realty, Inc.*, 204 F.3d 867, 880

18  (9th Cir. 2000) (because "preliminary injunctions are 'interlocutory orders'" they cannot "be

19  addressed by a motion under Rule 60(b)").

20        Instead, "[m]otions for reconsideration of interlocutory orders are governed in this District

21  by Civil Local Rule 7-9." *Nidec Corp. v. Victor Co. of Japan, Ltd.*, No. C 05-0686, 2007 WL

22  4108092 at *2 (N.D. Cal. Nov. 16, 2007). Under the rule, "before leave to file a motion for

23  reconsideration is granted, the moving party must specifically show:

24              (1)    that at the time of the motion for leave, a material difference
                in fact or law exists from that which was presented to the Court
25              before entry of the interlocutory order for which reconsideration is
                sought. The party also must show that in the exercise of reasonable
26              diligence the party applying for reconsideration did not know such
                fact or law at the time of the interlocutory order; or
27
                (2)    The emergence of new material facts or a change of law
28              occurring after the time of such order; or

COHEN, MILSTEIN,
HAUSFELD & TOLL
P.L.L.C.

Opp. To Defs.' Mot. For Leave To File Mot. For Reconsid. Or Alternatively Cert. Of Issues For
Appeal—Master File No. C-07-05182-WHA                                                  - 3 -
384097.2 2

1

2

(3)    A *manifest* failure by the Court to consider material facts or dispositive legal arguments which were presented to the Court before such interlocutory order.

3

*Id.* (quoting Civil L.R. 7-9(b)) (emphasis added).

4

5

6

7

8

The high threshold set for even allowing consideration of a motion to reconsider reflects sound policy—the demanding standard "lessens the likelihood that parties will, as [the defendant] has done here, opportunistically move the Court to reconsider any order that it disagrees with, needlessly impeding the progress of the case and unduly burdening opposing parties and the Court." *Id.* at *4.

9

10

11

12

13

14

15

16

17

18

Defendants do not claim to have met either of the first two grounds set out in Civil Local Rule 7-9(b)—discovery of a previously unknown "material difference in fact or law" from what was presented to the Court at the time of the motion to dismiss or the "emergence of new material facts or a change of law" since the Court rejected the motion to dismiss.  Although Defendants do halfheartedly suggest that the Court failed to consider some of their arguments, even a cursory review of their current Motion demonstrates that their real complaint is not that the Court "manifestly" failed to consider their arguments, but that the Court considered these arguments and rejected them.  But a contention that a court's ruling was "wrongly decided" is "not sufficient under Civil Local Rule 7-9(b) to grant leave to file a motion for reconsideration." *Bowoto v. Chevron Corp.*, No. C 99-02506, 2007 WL 4224593 at *2 (N.D. Cal. Nov. 28, 2007).

19

20

21

22

The Local Rules make it sanctionable conduct to repeat previously-made arguments in a motion for reconsideration.  Civil L.R. 7-9(c) ("Any party who violates this restriction shall be subject to appropriate sanctions.").  Despite this draconian rule, Defendants' current Motion is largely a regurgitation of the arguments made in their motion to dismiss.

23

**B.    *The Court Did Not Manifestly Fail To Consider Defendants' Arguments***

24

25

26

27

28

The Court fully considered Defendants' arguments about the inferences that should have been drawn from the facts before the Court.  Defendants agree that the Court applied the correct legal standard in deciding whether Plaintiff adequately pled falsity and scienter—whether Plaintiff had pled facts that "were 'at least as compelling as any opposing inference one could draw from the facts.'"  (Mot. at 3) (quoting *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 127 S.

COHEN, MILSTEIN, HAUSFELD & TOLL P.L.L.C.

Opp. To Defs.' Mot. For Leave To File Mot. For Reconsid. Or Alternatively Cert. Of Issues For Appeal—Master File No. C-07-05182-WHA                                        - 4 -
384097.2 2

1   Ct. 2499, 2509-10 (2007)); *compare* Order at 10 ("*A complaint will survive… if a reasonable*

2   *person would deem the inference of scienter cogent and at least as compelling as any opposing*

3   *inference one could draw from the facts alleged.*") (quoting *Tellabs*, 127 S. Ct. at 2510) (italics by

4   the Court).  What Defendants challenge are the inferences drawn by the Court when it applied the

5   facts to this acknowledged standard.

6           1.   The Court Did Not Manifestly Fail To Consider "Facts" About LDK's
                 Inventory

7           Defendants fault the Court for not considering the "fact" of Situ's "Admission That He

8   Did Not Verify or Test the Inventory" which was allegedly inflated.  (Mot. at 2-3.)  According to

9   Defendants, this "admission" is contained in an email string with respect to which the Court

10  "declined to take notice."  (Mot. at 4.)

11          In fact, however, the Order explained that "the Court **has reviewed** the emails [in the

12  email string] and finds that they actually bolster plaintiffs' case, thereby reinforcing the Court's

13  decision to move forward with this action."  (Order at 6 n.1) (emphasis added).  As the Court

14  noted, the email string supports the inference that Situ carefully reviewed LDK's inventory, as the

15  Complaint asserts he did, and nothing in the emails can reasonably be interpreted as an

16  "admission" by Situ that he did not know what he was talking about.  *See* Order at 13-14 (the

17  email string "does **not** show that Controller Situ admitted an inability to asses the evidence before

18  him") (emphasis by the Court).  Even ignoring what the email string actually says, and accepting

19  Defendants' unfounded assertion that Situ only checked the inventory in the "warehouse" (Mot.

20  at 4) would provide no grounds for reconsideration—as the Court noted "[b]oth parties referred to

21  'the' warehouse rather than 'all' warehouses."  (Order at 13.)

22          Defendants attack an argument of their own making when they say that, standing alone,

23  the fact that LDK had production problems because of serious polysilicon shortages does not

24  necessarily prove that LDK's "inventory accounting numbers were false" (Mot. at 12)—neither

25  the Court nor Plaintiff make such an assertion.  But, when combined with the other facts alleged

26  in the Complaint, such shortfalls support Situ's assertion that LDK misled investors when it

27

28

COHEN, MILSTEIN,
HAUSFELD & TOLL
P.L.L.C.

Opp. To Defs.' Mot. For Leave To File Mot. For Reconsid. Or Alternatively Cert. Of Issues For
Appeal—Master File No. C-07-05182-WHA                                          - 5 -
384097.2 2

1    assured them that it had a huge polysilicon inventory which was properly valued at the lower of

2    acquisition cost or market value.

3         In discussing this issue Defendants make a puzzling argument—that, although it is true

4    "that the production team [at LDK] could not rely on the book quantities of total inventory when

5    planning production," this seemingly critical deficiency "in no way reflects on the accuracy of the

6    book quantities" of inventory.  (Mot. at 11-12.)  A more plausible inference is that the production

7    team could not rely on LDK's inventory numbers because those numbers were inaccurate and

8    materially inflated.

9                    2.    The Court Did Not Manifestly Fail to Consider Defendants' Argument That
                              They Were Exonerated By Their Investigators And Auditors

10        Despite Defendants' assertion to the contrary, the Court fully considered their argument

11   that it should give substantial weight to LDK's "clean" audit opinion and its SEC filings and

12   press releases asserting that the Company had investigated itself and found it had done nothing

13   wrong.  The Court rejected this argument on the merits.  (Order at 16-17.)

14        LDK's alleged internal investigation cannot be considered on a motion to dismiss—the

15   investigation is not referenced in the Complaint and, although the court can judicially notice the

16   existence of SEC filings containing LDK's assertions that it was exonerated by its own

17   investigation, it cannot judicially notice these documents for the truth of the matter asserted, that

18   LDK did nothing wrong.  *See, e.g., Lee v. City of Los Angeles*, 250 F.3d 668, 690 (9th Cir. 2001)

19   (on motion to dismiss court may judicially notice "*undisputed* matters of public record," but not

20   "*disputed* facts stated in public records") (emphasis in original); *Troy Group, Inc. v. Tilson*, 364

21   F. Supp. 2d 1149, 1152 (C.D. Cal. 2005) ("SEC filings 'should be considered only for the

22   purpose of determining what statements the documents contain, not to prove the truth of the

23   documents' contents.'").  Any other rule would permit any public company accused of securities

24   violations to do what LDK attempts to do here—file with the SEC documents asserting that it did

25   nothing wrong (or asserting that investigators it hired found it did nothing wrong) and then claim

26   that the SEC filings exonerate it, while simultaneously denying plaintiffs discovery to test the

27   accuracy of the company's bald assertions.

28

COHEN, MILSTEIN,
HAUSFELD & TOLL
P.L.L.C.

Opp. To Defs.' Mot. For Leave To File Mot. For Reconsid. Or Alternatively Cert. Of Issues For
Appeal—Master File No. C-07-05182-WHA                                              - 6 -
384097.2 2

1    Even if LDK's public characterization of the investigators' findings could be considered

2    on a motion to dismiss, they would be entitled to little weight.  The actual report prepared by the

3    investigators has never been disclosed and nothing on the record supports Defendants' repeated

4    assertion that the investigation was carried out by an independent "Special Committee."  (Mot. at

5    6, 9.)  To the contrary, LDK said publicly that the investigation was conducted by the Company's

6    audit committee, and it is undisputed that Defendant Peng was on this Committee during the

7    investigation.[1]  And Defendants' assertion that anyone who questions their supposed exoneration

8    by the investigation must show "a conspiracy to cover up the alleged fraud" by the investigators

9    (Mot. at 6) is nonsense.  The continued employment by LDK of all the officers, directors and

10   contractors who participated in the investigation was ultimately in the hands of Defendant Peng,

11   LDK's Chief Executive Officer and majority stockholder.  Even absent a conspiracy, it is a

12   reasonable inference that such individuals were unlikely to vigorously pursue allegations of

13   wrongdoing by Peng and his lieutenants.

14   Similar reasoning applies to Defendants' insistence that they are exonerated by a "clean"

15   opinion from LDK's outside auditor.  Even assuming it is appropriate to consider such opinions

16   on a motion to dismiss, and even if, in the post-Enron world, the accuracy of an auditor's opinion

17   should be assumed, the opinion at issue is simply irrelevant.  As the Court explained, the

18   allegedly false quarterly financial statements at the heart of the Complaint were not publicly

19   approved by the auditors.  (Order at 16) (audit opinion did not "exonerate LDK…. [because] [i]t

20   did not specifically discuss the time periods at issue; it discussed year-end results").

21   Defendants' insistence that "KPMG's year-end audit necessarily comprises the sum of the

22   previous four quarters, so any shortfall in one quarter would show up in the year-end audit" (Mot.

23   at 9) is wrong as a matter of mathematics.  A "shortfall" in one quarter would **not** necessarily

---

[1/]    Defendants asserted in briefing their motion to dismiss that "Mr. Peng—a member of the Audit Committee—was not a member of the Special Committee to ensure its independence," but they cite no authority for this assertion or for the existence of the supposed Special Committee itself.  (Defs.' Mot. to Dismiss at 6. n.6, Apr. 7, 2008.)  Aside from unsourced statements in Defendants' briefs, Plaintiff is unaware of any evidence, on or off the record, that an independent Special Committee was ever established or that Peng recused himself from participating in it.

Cohen, Milstein, Hausfeld & Toll P.L.L.C.

Opp. To Defs.' Mot. For Leave To File Mot. For Reconsid. Or Alternatively Cert. Of Issues For Appeal—Master File No. C-07-05182-WHA                                                          - 7 -
384097.2 2

1  show up in the 2007 audited financial statements if the results of another quarter were

2  manipulated so as to produce full year numbers acceptable to the auditors.  That is exactly what

3  the Complaint alleges—that Defendants added a new and highly unusual line item in the fourth

4  quarter for "[i]nventories to be processed beyond one year" so that LDK's year end financials

5  would be acceptable to its auditors.  (Compl. ¶ 57.)

6      Furthermore, KPMG determined that LDK had serious internal control problems in 2006.

7  (Order at 3.)  Defendants are correct that this does not **necessarily** "mean that [LDK's] financials

8  are incorrect" for 2007 (Mot. at 8), but the lack of internal controls in 2006 at least supports an

9  inference that Situ's claims of serious internal control problems in 2007 are accurate, especially

10  since KPMG was silent on the adequacy of internal controls in 2007.

11          3.  The Court Did Not Manifestly Fail To Consider Defendants' Argument That
            The Absence Of Insider Trading Exonerates Them

12

13      The Court did not "disregard[] the clear exculpatory inference that arises from the absence

14  of any suspicious trades or other tangible benefits to Defendants."  (Mot. at 10.)  It considered

    Defendants' arguments and rejected them.  (Order at 18 n.6.)

15

16      The Court concluded that Defendants did have a motive to commit fraud—the artificial

17  inflation of LDK's stock price caused by Defendants' false statements enriched Defendants by

    billions of dollars.  *Id.*  Defendants do not explain why the Court was wrong when it determined

18  that the possibility of enrichment by billions of dollars is a "personal benefit[]" that constituted a

19  motive to commit fraud.  (Mot. at 10) (insisting, without explanation, that the Complaint fails to

20  allege Defendants received "personal benefits" from their scheme).  Moreover, Defendants do not

21  dispute the Court's finding that, in addition to the individual Defendants' motivation of personal

22  enrichment, there was a corporate motive to mislead investors—"[a]s a relative newcomer in need

23  of additional funds, LDK had the motivation to attract investors with strong financial statements."

24  (Order at 18.)

25      Defendants' insistence that, having been bared by a lockup agreement from selling any of

26  their stock during the Class Period, their failure to sell stock somehow exonerates them is

27  ridiculous.  The possibility that the underwriters of LDK's IPO could have waived the lockup

28

COHEN, MILSTEIN,
HAUSFELD & TOLL
P.L.L.C.

Opp. To Defs.' Mot. For Leave To File Mot. For Reconsid. Or Alternatively Cert. Of Issues For
Appeal—Master File No. C-07-05182-WHA                                                    - 8 -
384097.2 2

1   provision is irrelevant—they did not do so.  (Mot. at 10-11.)  Since the prospect of large blocks of

2   insider-owned stock being dumped on the market would have depressed LDK's share price, it is

3   unlikely that the underwriters would waived the lockup provision had they been asked to do so.

4   More fundamentally, *Tellabs* held that a securities fraud claim can survive in "the

5   absence" of any motive allegations whatsoever.  *Tellabs*, 127 S. Ct. at 2511.  Defendants mis-cite

6   cases to suggest that the law is to the contrary.  They repeat their insistence that *In re Pixar*

7   *Securities Litigation*, 450 F. Supp. 2d 1096 (N.D. Cal. 2006), a pre-*Tellabs* case, supports the

8   proposition that this case should be dismissed because of the lack of insider trading (Mot. at 10)

9   even though, as the Court explained, *Pixar* actually supports the proposition that "it is

10  unnecessary for defendants to engage in insider trading or to sell LDK stock to establish

11  scienter."  Order at 18 n.6.  Defendants also complain that the Court ignored "the dispositive

12  holding" in *Osher v. JNI Corp.*, 256 F. Supp. 2d 1144 (S.D. Cal. 2003), which they imply holds

13  that lockup agreements are irrelevant when looking at a defendant's stock sales.  (Mot. at 11.)  In

14  fact, *Osher* says the opposite.  According to *Osher*, a "factor meriting consideration" when

15  reviewing stock sales, "is whether the insider had any limitations on his or her ability to trade."

16  256 F. Supp. 2d at 1163 (citing *No. 84 Employer-Teamster Joint Council Pension Trust Fund v.*

17  *Am. West Holding Corp.*, 320 F.3d 920, 938) (9th Cir. 2003)).  The *Osher* court concluded,

18  however, that the lockup agreement was irrelevant under the facts in that case because it did not

19  restrict stock sales during the period at issue.  256 F. Supp. 2d at 1165.  Here, there is no dispute

20  that the lockup restricted sales by LDK insiders during the Class Period.

21          4.   The Court Did Not Manifestly Fail To Consider Defendants' Argument That
               The Complaint Is Based On Unreliable Sources
22

23  Again repeating what they said in their motion to dismiss, Defendants attempt to portray

24  the Complaint as relying almost entirely on facts provided by Charley Situ, who they insist did

    not have "personal knowledge" of the facts attributed to him.  As the Court recognized,
25
    Defendants are wrong.
26

27  There is no support in the Court's Order for Defendants' contention that the Court held

28  that Situ had no relevant personal knowledge and then, despite this lack of knowledge,

COHEN, MILSTEIN,
HAUSFELD & TOLL
P.L.L.C.

Opp. To Defs.' Mot. For Leave To File Mot. For Reconsid. Or Alternatively Cert. Of Issues For
Appeal—Master File No. C-07-05182-WHA                                                    - 9 -
384097.2 2

1    improperly credited his information.  The Court's assertion that "'[f]or pleading purposes, it is not

2    necessary that the source have personal firsthand knowledge in a strict evidentiary sense,'" (Mot.

3    at 22) (quoting Order at 12), is an apparent recognition of the well-established principle that

4    securities plaintiffs need not produce "evidence" at the pleading state that would meet the strict

5    criteria for admissibility at trial.  *See In re Connetics Corp. Secs. Litig.*, 542 F. Supp. 2d 996,

6    1004 (N.D. Cal. 2008) ("pleadings need not contain admissible evidence").  Not only is this

7    sentence not a finding by the Court that Situ lacked personal knowledge, the Court specifically

8    held that it could be reasonably inferred that Situ ***did*** have "***personal knowledge*** of the alleged

9    falsity" of Defendants' statements.  Order at 12 (emphasis added).

10       *Berson* supports the Court's reasoning.  In that case the Ninth Circuit rejected the

11   defendants' insistence that confidential sources cited in the complaint should be ignored because

12   they lacked personal knowledge of key facts.  *Berson*, 2008 WL 2278670 at *2.  The Court of

13   Appeals explained that the sources cited in the complaint were sufficiently reliable because "[i]t's

14   entirely plausible" the sources "would know, ***or could reasonably deduce***" the relevant facts and

15   that this was sufficient for pleading purposes.  *Id.* (emphasis added).  Even setting aside Situ's

16   obvious extensive first-hand personal knowledge of Defendants' wrongdoing, it appears

17   nonsensical to assert that, as LDK's financial controller, Situ was not in a position to "reasonably

18   deduce" the relevant facts.

19       Defendants also say that it is improper for the Complaint to cite to a report in <u>Barron's</u>, a

20   respected periodical focused on business and finance, which says that a source confirmed key

21   allegations made by Situ.  In fact, the case they cite, *Connetics*, 542 F. Supp. 2d 996, is to the

22   contrary.  According to *Connetics*, in drafting a securities fraud complaint, "an attorney ***may*** rely

23   in part on other sources, ***such as a newspaper article***."  *Id.* at 1005 (emphasis added).  The

24   court's concern in *Connetics* was that the plaintiffs there relied ***only*** on public documents and had

25   apparently conducted no investigation whatsoever into the claims asserted in the complaint.  That

26   is not the case here.

27

28

Opp. To Defs.' Mot. For Leave To File Mot. For Reconsid. Or Alternatively Cert. Of Issues For
Appeal—Master File No. C-07-05182-WHA                                                    - 10 -

384097.2 2

5.  <u>The Court Did Not Manifestly Fail To Consider Defendants' Argument That They Were Not On Notice About Inventory Irregularities</u>

Defendants' suggestion that nothing in the Complaint gives rise to a strong inference that they should have known of serious inventory irregularities prior to September 2007 (Mot. at 13) is false.  As the Court explained,

> Plaintiffs have sufficiently alleged that defendants knew there were inventory and accounting discrepancies prior to [LDK's] IPO.  In *February 2007*, LDK's lead auditor KPMG had raised concerns about the "inadequate" inventory accounting and "significant deficiency" in LDK's internal controls.… Situ first raised his concerns about LDK's accounting in an email sent to CFO Lai on *May 29, 2007*, two days before the IPO.  "In his email Situ told Lai that the Company's financial and operational sides were using different sources and methods to calculate inventory and output and that it was impossible to verify which figures were accurate.  Subsequently, in a *June 27* email to CFO Lai Situ expressed concern that, with respect to LDK's finances, '[t]he actual story is quite different from what the investors expect or are told.'"

(Order at 19) (emphasis added) (citations omitted).  On **July 19, 2007** Situ told LDK's controller that "among the LDK feedstock only a small percentage is good stock.  According to US GAAP (ARB 43 Ch. 4; APB 28, etc.), the management should make provision [take a write-off] in this regard." *Id.* at 21.  Moreover, in *Berson* the Ninth Circuit held that, on a motion to dismiss in a securities case, it is proper to "infer" that officers "directly responsible for" a company's "day-to-day operations" know the key facts related to these operations, even in cases, unlike this case, where "plaintiffs allege no particular facts," other than the officers' positions, to show that the officers had actual knowledge of these facts.  2008 WL 2278670 at *4.

Defendants' argument that Situ could not have raised inventory and other accounting problems with senior LDK management on May 29, 2007, because on that date Situ supposedly raised concerns about the accuracy of LDK's reported "outputs and yield rates" (Mot. at 13) is specious.  It is entirely plausible that Situ expressed concerns about more than one issue on May 29.

COHEN, MILSTEIN, HAUSFELD & TOLL P.L.L.C.

Opp. To Defs.' Mot. For Leave To File Mot. For Reconsid. Or Alternatively Cert. Of Issues For Appeal—Master File No. C-07-05182-WHA                                                        - 11 -
384097.2 2

### C.    The Court Was Not Required To Rule On The Allegations Against The Unserved Defendants

Defendants assert that the Court had the power to dismiss claims against the non-moving, unserved Defendants.  Even if that assertion is correct, nothing in their papers suggests that the Court lacked discretion to defer consideration of any motion to dismiss on behalf of these defendants or that the Court improperly exercised this discretion.

### D.    The October 4, 2007 Press Release Is An Actionable False Statement

Contrary to Defendants' suggestion that the Court overlooked an important issue, it is hardly surprising that the Court's Order does not discuss Defendants' argument that "the October 4, 2007 press release is not actionable because the information had already been made widely available to the market as of October 3, 2007" (Mot. at 19)—Defendants' initial memorandum in support of their motion to dismiss did not make this argument or even mention the October 4 press release.[2]  Defendants do not, and could not, assert that their failure to raise this argument should be excused under the Local Rule on reconsideration because they "did not know" of the relevant facts or law when they filed their motion to dismiss.  Civil L.R. 7-9(b)(1).

In any event, the October 3, 2007 disclosure that Situ had resigned was only a partial and limited disclosure of Defendants' fraud.  LDK's stock price dropped when this news became public, but, because the October 3 report did not quantify any accounting irregularities, and conveyed LDK's assurance that nothing improper had occurred, the value of LDK's stock still remained substantially inflated.  (Compl. ¶¶ 78-81.)  LDK's October 4, 2007 press release sought to maintain the artificial inflation in the price of LDK's stock by falsely asserting that there were no material accounting irregularities at the Company and that Situ's allegations were "without merit."  (Order at 7.)  The market did not receive relatively clear information on the nature and extent of LDK's problems until October 8, when a <u>Barron's</u> article described Situ's allegations in detail and reported that LDK "may have overstated its inventory by up to $92 million."  (Order at

---

[2]    This argument was touched on briefly—in a sentence and a footnote—and for the first time in Defendants' reply brief in further support of Defendants' motion to dismiss.  *See* Reply at 2 & n.1 (filed May 1, 2008).  "It is well settled that new arguments cannot be made for the first time in reply."  *Contratto v. Ethicon, Inc.*, 227 F.R.D. 304, 309 n.5 (N.D. Cal. 2005) (quoting *Gold v. Wolpert*, 876 F.2d 1327, 1331 n.6 (7th Cir. 1989).

COHEN, MILSTEIN,
HAUSFELD & TOLL
P.L.L.C.

Opp. To Defs.' Mot. For Leave To File Mot. For Reconsid. Or Alternatively Cert. Of Issues For Appeal—Master File No. C-07-05182-WHA                                        - 12 -
384097.2 2

7; Compl. ¶¶ 78-81.)  On this news LDK's stock price dropped by more than 25% (Order at 7), a reaction inconsistent with Defendants' assertion that the market had already learned the full truth about irregularities at LDK.

## IV.    DEFENDANTS' REQUEST FOR CERTIFICATION OF AN INTERLOCUTORY APPEAL SHOULD BE REJECTED

Defendants have no reasonable basis for their request that the Court certify several issues for immediate appeal pursuant to 28 U.S.C. § 1292(b).

### A.    *Section 1292(b) Certification Is Meant For Exceptional Circumstances*

Section 1292(b) is a narrow exception to the firmly established rule that only final judgments can be appealed.  The final judgment rule is not a mere technicality, but was established by Congress to "avoid[] the obstruction to just claims that would come from permitting the harassment and cost of a succession of separate appeals from the various rulings to which a litigation may give rise, from its initiation to entry of judgment."  *Coopers and Lybrand v. Livesay*, 437 U.S. 463, 468 n.8 (1978) (quoting *Cobbledick v. United States*, 309 U.S. 323, 325 (1940)).  Consequently, "[r]outine resort to § 1292(b) requests would hardly comport with Congress' design to reserve interlocutory review for 'exceptional' cases while generally retaining for the federal courts a firm final judgment rule."  *Caterpillar Inc. v. Lewis* , 519 U.S. 61, 74 (1996); *see also James v. Price Stern Sloan, Inc.*, 283 F.3d 1064, 1068 n.6 (9th Cir. 2002) ("Section 1292(b) is a departure from the normal rule that only final judgments are appealable, and therefore must be construed narrowly."); *Taylor v. City of Oakland*, No. C 06-05169 WHA, 2007 WL 3287843 at *1 (N.D. Cal. Nov. 5, 2007). ("Interlocutory review under 28 U.S.C. 1292(b) is an extraordinary remedy").  Certification is especially inappropriate in cases, like this one, where the challenged rulings largely involve the "'application of facts to the law," rather than clear issues of law.  *Clanahan v. McFarland Unified School Dist.*, No. CV F 05-0796, 2007 WL 2428089 at *2 (E.D. Cal. Aug. 22, 2007).

Section 1292(b) allows a district court to certify an interlocutory order for appeal if it believes "that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially

COHEN, MILSTEIN,
HAUSFELD & TOLL
P.L.L.C.

Opp. To Defs.' Mot. For Leave To File Mot. For Reconsid. Or Alternatively Cert. Of Issues For Appeal—Master File No. C-07-05182-WHA                                                                      - 13 -
384097.2 2

1    advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b).  If the district court so

2    certifies the appropriate circuit court has the option of hearing the appeal.  § 1292(c).  The Ninth

3    Circuit has suggested that, in limiting such appeals to "controlling question[s] of law," Congress

4    indicated that § 1292(b) appeals should deal with "fundamental" issues, such as "the

5    determination of who are necessary and proper parties, whether a court to which a cause has been

6    transferred has jurisdiction, or whether state or federal law should be applied." *In re Cement*

7    *Antitrust Litig.*, 673 F.2d 1020, 1026-27 (9th Cir. 1982) (quoting *United States v. Woodbury*, 263

8    F.2d 784, 787 (9th Cir. 1959)).

9    ### B.    *Defendants Identify No Exceptional Circumstances Meriting § 1292(b)*
     ### *Certification*

10

11   A review of the specific issues which Defendants say should be certified for appeal

12   highlights the absence of any basis for Defendants' certification request.

13   Defendants say that the Ninth Circuit should review the "[t]he Court's determination that

14   for pleading purposes, a source need not 'have personal first hand knowledge'" of alleged

15   wrongdoing.  (Mot at 22.)  But, as discussed above, Situ did have personal knowledge.

16   Moreover, as also noted above, the Court of Appeals has just addressed the issue in *Berson*, 2008

17   WL 2278670, concluding that it is sufficient that a source be in a position to "reasonably deduce"

18   relevant information.  *Id.* at *2

19   Similarly, even Defendants' own cases do not support their contention that it was

20   improper for the court to consider the findings of an investigation by a financial journalist as

21   contributing, along with the wide array of other facts cited in the Complaint, to the inference of

22   scienter.  And even if the challenged <u>Barron's</u> article is ignored, there remains abundant indicia of

23   Defendants' intentional wrongdoing.  This is not the type of exceptional, "controlling" legal issue

24   that merits interlocutory review.

25   Defendants' assertion that the Court's refusal to dismiss the Complaint against the

26   unserved defendants merits review is particularly wrong-headed.  Not only do Defendants fail to

27   cite a single case that suggests the Court lacks the discretion to postpone consideration of a

28   motion to dismiss until the affected party has been served, but certifying this issue will do nothing

COHEN, MILSTEIN,
HAUSFELD & TOLL
P.L.L.C.

Opp. To Defs.' Mot. For Leave To File Mot. For Reconsid. Or Alternatively Cert. Of Issues For
Appeal—Master File No. C-07-05182-WHA                                                  - 14 -
384097.2 2

1   to speed this case.  Plaintiff will soon serve each unserved defendant through LDK's U.S. office,

2   pursuant to the Court's June 12, 2008 Order authorizing such service.  Each currently unserved

3   Defendant will then be able, should they so desire, to file a motion to dismiss, regardless of any

4   decision taken by the Ninth Circuit on the issue.

5       Defendants' claim that the Court's interpretation of the "safe harbor" provision of the

6   PSLRA merits interlocutory review can be rapidly disposed of.  Defendants have never claimed

7   that all of their allegedly false statements are forward looking.  Presumably even Defendants here

8   are unwilling to argue that their statements about LDK's current inventories, statements that are at

9   the heart of Plaintiff's case, should somehow be viewed as predictions of the future.  *Berson*,

10  2008 WL 2278670 at *6 ("descriptions of the present aren't forward-looking").  Consequently,

11  review of this issue by the Ninth Circuit would do little to move this case forward.  Moreover,

12  Defendants acknowledge that the Ninth Circuit provided guidance on this very issue in *America*

13  *West*, and that the Court's ruling here is consistent with that guidance.  (Mot. at 24.)  Their

14  complaint is that "many other courts have [supposedly] refused to follow *America West*," and that

15  this Court should have done the same.  (Mot. at 24.)  Defendants do not explain why there are

16  "substantial ground for difference of opinion" on an issue with which the Court of Appeals has

17  already dealt.

18      ### C.    *An Interlocutory Appeal Is Unlikely To Save Time Or Money*

19      There is little reason to believe that an immediate appeal would "materially advance the

20  ultimate termination of the litigation."  Defendants argue that, if the Ninth Circuit orders the case

21  dismissed "with prejudice," this litigation will be over.  (Mot. at 25.)  But it is unlikely that the

22  Court of Appeals would reverse with prejudice.  Lead Plaintiff has never amended his

23  Consolidated Complaint and the Ninth Circuit has emphasized that in complex securities cases

24  leave to replead must be granted unless amendment is clearly futile.  *Eminence Capital, LLC v.*

25  *Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003) ("especially … in the context of the PSLRA,"

26  "[d]ismissal with prejudice and without leave to amend is not appropriate unless it is clear … that

27  the complaint could not be saved by amendment").

28

COHEN, MILSTEIN,
HAUSFELD & TOLL
P.L.L.C.

1    Defendants' also say that an interlocutory appeal would "avoid the potential for

2    expenditure of great resources … over a period of years, only to have the case ultimately

3    dismissed." (Mot. at 25.) But, even accepting the questionable proposition that allowing

4    piecemeal appeals reduces litigation costs, reducing expense is not one of the factors Congress

5    said should be considered in deciding whether to allow an interlocutory appeal. Reading such a

6    factor into the law would make interlocutory appeals appropriate in virtually any complex case,

7    eviscerating the final judgment rule.

8

## V.    CONCLUSION

9    For the foregoing reasons the Motion should be denied in its entirety.

10

11   Dated: June 26, 2008                          COHEN, MILSTEIN, HAUSFELD & TOLL
                                                    P.L.L.C.
12

13                                                 By:    /s/ Michael Lehmann
14                                                        Michael Lehmann

15                                                 Cohen, Milstein, Hausfeld & Toll P.L.L.C.
                                                   mlehmann@cmht.com
16                                                 One Embarcadero Center
                                                   Suite 526
17                                                 San Francisco, CA 94111
                                                   Telephone:    (415) 623-2048
18                                                 Facsimile:    (415) 433-5994

19

20                                                 Cohen, Milstein, Hausfeld & Toll P.L.L.C.
                                                   Steven J. Toll
21                                                 Mark S. Willis
                                                   Matthew B. Kaplan
22                                                 stoll@cmht.com
                                                   1100 New York Avenue, N.W.
23                                                 Suite 500, West Tower
                                                   Washington, DC 20005
24                                                 Telephone:    (202) 408-4600
                                                   Facsimile:    (202) 408-4699
25
                                                   Lead Counsel for the Proposed Class
26

27

28

COHEN, MILSTEIN,
HAUSFELD & TOLL
P.L.L.C.

1

## CERTIFICATE OF SERVICE

2

3

  I hereby certify that on this date, I electronically filed the foregoing with the Clerk of the

Court using the CM/ECF system which will send notification of such filing to the e-mail

4

addresses of the parties of record.

5

  I further certify that Service Pursuant to Local Rule 23-2 will be made electronically to:

6

7

    Securities Class Action Clearinghouse
    Att. Juan-Carlos Sanchez/Cara Mia Perlas

8

    Stanford University School of Law
    Crown Quadrangle

9

    Stanford, CA 94305-8612
    scac@law.stanford.edu

10

11

12

          /s/ Michael P. Lehmann
        Michael P. Lehmann

13

        June 26, 2008

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COHEN, MILSTEIN,
HAUSFELD & TOLL
P.L.L.C.

Opp. To Defs.' Mot. For Leave To File Mot. For Reconsid. Or Alternatively Cert. Of Issues For
Appeal—Master File No. C-07-05182-WHA
384097.2 2