1   LATHAM & WATKINS LLP
        James J. Farrell (Bar No. 166595)
2        james.farrell@lw.com
    633 West Fifth Street, Suite 4000
3   Los Angeles, California 90071-2007
    Telephone: (213) 485-1234
4   Facsimile: (213) 891-8763

5   LATHAM & WATKINS LLP
        Philip J. Wang (Bar No. 218349)
6        philip.wang@lw.com
    140 Scott Drive
7   Menlo Park, California 94025
    Telephone: (650) 328-4600
8   Facsimile: (650) 463-2600

9   Attorneys for Defendants LDK Solar Co.,
    Ltd., LDK Solar USA, Inc., Xiaofeng Peng,
10  and Jack Lai

11                   UNITED STATES DISTRICT COURT

12                   NORTHERN DISTRICT OF CALIFORNIA

13

14  In re LDK SOLAR SECURITIES          MASTER FILE NO. C-07-05182-WHA
    LITIGATION

15  _____    DEFENDANTS' REPLY MEMORANDUM IN
                                         SUPPORT OF MOTION FOR LEAVE TO
16  This Document Relates To:            FILE MOTION FOR RECONSIDERATION
                                         OR ALTERNATIVELY CERTIFICATION
17  ALL ACTIONS.                         OF ISSUES FOR APPEAL

18  _____

19

20

21

22

23

24

25

26

27

28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW

DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF MOTION
FOR LEAVE TO FILE MOTION FOR RECONSIDERATION OR
ALTERNATIVELY CERTIFICATION OF ISSUES FOR APPEAL

1    <u>**REPLY MEMORANDUM OF POINTS AND AUTHORITIES**</u>

2    **I.    INTRODUCTION**

3          Plaintiff's Opposition to Defendants' Motion for Leave to File Motion for

4    Reconsideration; or Alternatively Certification of Issues for Appeal ("Opposition" or "Opp.")

5    makes numerous concessions and relies on unsupported conjectures that compel granting

6    Defendants' motion.

7    **II.    ARGUMENT**

8          **A.    The Court Should Certify Various Issues For Interlocutory Appeal**

9                  1.    <u>The Court Should Certify Whether *Berson* Applies to a Witness Who</u>
                         <u>Admitted that He Lacks Personal Knowledge</u>
10

11          Plaintiff's Opposition relies heavily on the Ninth Circuit's recent decision in <u>Berson v.</u>

12    <u>Applied Signal Technology</u>, 527 F.3d 982 (9th Cir. June 5, 2007) and argues that on a motion to

13    dismiss, a witness does not need to have personal knowledge of alleged wrongdoing.  <u>See</u> Opp.

14    at 14.  Plaintiff contends that, under <u>Berson</u>, it is "sufficient that [the complaint's] source be in a

15    position to 'reasonably deduce' relevant information."  <u>Id.</u>

16          But <u>Berson</u> does not address whether a court should accept allegations in the complaint

17    that <u>directly contradict</u> plaintiff's own source documentation.  Here, Situ's judicially noticeable

18    e-mail, which is the <u>very source</u> Plaintiff relies on as the basis for his Complaint, directly

19    contradicts the existence of Situ's personal knowledge regarding LDK's polysilicon inventory.

20    Certification of this issue is therefore necessary to determine whether and how <u>Berson</u> applies

21    when the judicially noticed facts show that the Complaint's source lacks personal knowledge of

22    the allegations.  <u>Berson</u> should not be read to suggest that courts must accept allegations that are

23    directly contrary to the contents of its own source.  Here, Situ's own words establish that he did

24    not count all of LDK's inventory and that he did nothing to determine the usability of it.  Even

25    under <u>Berson</u>, this Complaint cannot satisfy the Reform Act standards.

26

27

28

**DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF MOTION
FOR LEAVE TO FILE MOTION FOR RECONSIDERATION OR
ALTERNATIVELY CERTIFICATION OF ISSUES FOR APPEAL**

2.    The Court Should Certify Whether Reliance on Allegations from an Unknown, "Unidentified Source," is Appropriate

Plaintiff contends that the issue of whether reliance on the findings of an investigation by a financial journalist to support an inference of scienter does not merit interlocutory review. Opp. at 14.  Contrary to Plaintiff's characterization, however, the issue for appellate consideration in this case does not involve the Court's consideration of analysts reports, but rather, the issue is whether an unidentified source, whose identity is unknown even to Plaintiff, can be relied upon to corroborate allegations of false or misleading statements under the standard set forth in Tellabs, Inc. v. Makor Issues & Rights, Ltd., 127 S. Ct. 2499 (2007).  Here, because Plaintiff does not know and does not even purport to allege that the unidentified source cited in the newspaper exists, whether the unknown source can properly serve as corroboration for Situ's allegations constitutes an issue that merits certification for interlocutory review.  Where Plaintiff's counsel has no idea whether the person actually exists, whether he or she ever worked at LDK, when he or she may have worked at LDK or any fact which would enable the complaint to allege facts demonstrating that the unidentified source has any basis for allegations about LDK's inventory, there can be no reliance placed on such an unidentified source.  As noted in Tellabs, the steep discount of such a completely unidentified source cannot support any inference.

B.    **Plaintiff's Opposition Raised Additional Grounds For Reconsideration Pursuant To Local Rule 7-9(b)(2)**

Plaintiff's Opposition concedes that there is further need for reconsideration under Civil Local Rule 7-9(b)(2) due to a "change of law occurring after the time of" the Court's Order. Significantly, as stated above, Plaintiff's Opposition relies heavily on Berson, a case that was decided on June 5, 2008, only one week after this Court's Order.  Berson clearly represents new controlling authority with respect to the standard for imputing knowledge to corporate directors and officers and the level of personal knowledge required under the PSLRA pleading requirements.  Reconsideration of the Court's Order is therefore proper under Civil Local Rule 7-9(b)(2), as well as under Local Rule 7-9(b)(3) as shown in Defendants' Opening Brief.

1

C.    **The Special Committee's Conclusions and KPMG's Clean Audit Opinion Undermine Any Inference that LDK's Inventory Disclosures were False**

2

3    Plaintiff does not dispute that both LDK's independent Special Committee and LDK's

4    independent auditors, KPMG, found that LDK's 2007 financial statements were accurate.  <u>See</u>

5    Opp. at 7-8.  Instead, Plaintiff misconstrues the appropriate standard by insisting that these two

6    facts do not "exonerate[]" the Defendants.  Opp. at 6.  However, Defendants do not have the

7    burden to "exonerate" themselves at the motion to dismiss stage; rather, it is Plaintiff's burden to

8    satisfy the pleading requirements of the PSLRA in light of the undisputed facts that the

9    independent Special Committee and KPMG both affirmed LDK's 2007 financial statements,

10    which Plaintiff has failed to do.

11    Plaintiff's assertion that the Peng was a member of the Special Committee, <u>see</u> Opp. at 7,

12    is flatly contradicted by judicially noticed documents.  In its December 17, 2007 press release,

13    the Company disclosed that "two outside directors, Louis T. Hsieh and Bing Xiang, oversaw the

14    investigation."  <u>See</u> RJN Ex. C at 2.  Likewise, Plaintiff provides no support for his conclusory

15    assertion that the findings of the Special Committee are somehow tainted because the Committee

16    is beholden to Peng.  Despite his unsupported assertion to the contrary (raised now for the first

17    time), Plaintiff does not allege, nor could he, that the independent outside directors, Simpson

18    Thacher, or the Big Four Accounting Firm, were in any way beholden to Peng.  <u>See</u> Opp. at 7.

19    Contrary to Plaintiff's assertions, <u>Tellabs</u> requires drawing the non-culpable inference from

20    LDK's Special Committee's conclusion that there were no material discrepancies in LDK's

21    polysilicon inventory accounting.

22    Similarly, KPMG's clean audit opinion for fiscal year 2007 is a compelling fact,

23    weighing strongly against scienter.  Even if incorrect, the clean audit opinion strongly suggests

24    that third parties would similarly conclude that LDK's financials, including its inventory

25    calculation for 2007, was correct, which establishes that Defendants' statements regarding

26    LDK's inventory were at least reasonable and that undermines the strong inference of scienter

27    required.  Plaintiff does not dispute that the year-end audit must necessarily include the financial

28    results for all four quarters, but speculates that LDK may have manipulated the results of one

LATHAM&WATKINS LLP

ATTORNEYS AT LAW

3

**DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF MOTION FOR LEAVE TO FILE MOTION FOR RECONSIDERATION OR ALTERNATIVELY CERTIFICATION OF ISSUES FOR APPEAL**

1    quarter to cover-up a shortfall in another quarter.  <u>See</u> Opp. at 7-8.  However, the Complaint

2    makes no allegation that LDK "manipulated" another quarter to cover up for the alleged shortfall

3    in 2Q07; and, in any event, Plaintiff's speculation that LDK could hide $100 million worth of

4    inventory in one quarter from KPMG after public disclosure of Situ's allegations is patently

5    absurd.  Certainly, it is more likely that Situ simply did not count all or test any of the inventory

6    – as his own e-mail concedes – and which a host of third parties also determined based on the

7    judicially noticed facts.  Plaintiff's argument runs afoul of <u>Tellabs</u> and seeks to pursue his

8    complaint if there is any theoretical possibility that it can be stated, rather than only if there is a

9    "powerful" inference of scienter, <i>i.e.</i>, one that must be more than merely reasonable.  <u>Tellabs</u>,

10   127 S. Ct. at  2510.

11          Lastly, Plaintiff concedes that KPMG's internal control warning relates only to 2006, but

12   nonetheless contends that KPMG's silence gives rise to an inference that LDK had weak internal

13   controls in 2007.  <u>See</u> Opp. at 8.  Plaintiff's position is plainly wrong.  The lack of a warning in

14   2007, especially in light of the 2006 warning, clearly supports a far more likely inference that the

15   controls were <u>not</u> deficient in 2007.  Plaintiff makes the desperate argument that KPMG was

16   "silent" on LDK's  significant deficiencies or material weakness in 2007, implying that such

17   silence should be interpreted as leaving open the possibility of the same control deficiency from

18   2006 existing in 2007.  But the judicially noticed documents show the opposite.  LDK's SEC

19   filing for 2007 states:  "No material weaknesses or significant deficiencies in our internal control

20   over financial reporting were identified during our preparation of the consolidated financial

21   statements as of and for the year ended December 31, 2007 and during the independent audit

22   thereof."  RJN Ex. S at 69.  Plaintiff tries to confuse the application of a new certification

23   requirement under Sarbanes Oxley, which need not be complied with until 2008, with the long

24   standing obligation of auditors to examine a company's controls as part of its audit.  But

25   Plaintiff's strained argument is contrary to the controlling professional standards, which require

26   consideration of controls and a written report of any significant deficiency, as was done in 2006.

27

28

LATHAM&WATKINS LLP

ATTORNEYS AT LAW

4    DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF MOTION
FOR LEAVE TO FILE MOTION FOR RECONSIDERATION OR
ALTERNATIVELY CERTIFICATION OF ISSUES FOR APPEAL

1    <u>See</u> Statement on Auditing Standards (SAS) No. 112.[1]

2         **D.    The Lack of Suspicious Trades or Any Personal Benefit to the Defendants**

3               **Undermines Any Inference of Scienter**

4           Plaintiff concedes that Defendants did not engage in any trades in LDK stock during the

5    class period even though the lock-up agreement permitted Defendants to sell stock with the

6    underwriters' permission or to enter into transactions designed to protect executives'

7    compensation, such as costless collars, which are common transactions with investment banks.

8    Nonetheless, Plaintiff contends that the <u>lack</u> of any insider sales is actually evidence of scienter

9    because sales of large blocks of insider-owned stock "would have depressed LDK's share price."

10   <u>See</u> Opp. at 8-9.  Plaintiff misses the point.  Regardless of the possible effects of selling LDK

11   stock, the lack of any stock sales by Defendants supports an inference of non-culpable conduct,

12   which negates Plaintiff's assertion of scienter.  Plaintiff has invented a novel "Catch-22"

13   argument where both selling and refraining from selling both evidence scienter. But the law in

14   the Ninth Circuit and across the country is to the contrary.  <u>See, e.g.</u>, <u>In re Silicon Graphics Inc.</u>

15   <u>Sec. Litig.</u>, 183 F.3d 970, 986 (9th Cir.1999) (finding no strong inference of fraud where

16   defendants retained almost all of their stock holdings); <u>In re Wet Seal, Inc. Secs. Litig.</u>, 518 F.

17   Supp. 2d 1148, 1178 (C.D. Cal. 2007) ("Accordingly, while allegations of insider sales 'are not

18   required' in securities fraud cases . . . the lack of any tangible, personal benefit here further

19   weighs against the Officer Defendants having scienter") (citation omitted).

20          Plaintiff's attempt to distinguish <u>Osher v. JNI Corp.</u>, 256 F.Supp.2d 1144 (C.D. Cal.

21   2003) is unavailing.  There, as here, the plaintiff argued that the court should disregard the

22   relatively low quantity of insiders' stock sales because of a lock-up agreement.  But the court

23   properly noted "Equally unclear is why defendants - if they were so eager to rid themselves of

24   JNI stock - would have entered into the lock-up agreements in the first place." <u>Id.</u> at 1165.  Just

25   _____

26   [1]   SAS 112, AU 325.20 states "Control deficiencies identified during the audit that upon
         evaluation are considered significant deficiencies or material weaknesses under this section

27   must be communicated in writing to management and those charged with governance as a
         part of each audit, including significant deficiencies and material weaknesses that were

28   communicated to management and those charged with governance in previous audits, and
         have not yet been remediated."

1    as in <u>Osher</u>, LDK executives could have initiated a secondary offering through the underwriters

2    or otherwise enter into transactions with the underwriters to capture the value of their allegedly

3    inflated stock price.  The absence of such a sale or transaction undermines a strong inference of

4    scienter, and Plaintiff's mere conjecture that there <u>might have been suspicious sales in the future</u>

5    is precisely the type of rank speculation that cannot satisfy the Reform Act's high burden for

6    pleading a claim under Section 10(b).

7         Plaintiff's other attempts to establish scienter through the lack of any stock sales –

8    namely, that the Defendants had a corporate motive to mislead investors to secure additional

9    funds – has been rejected as a matter of law.[2]

10   **E.    Situ was Not in a Position to Know or Reasonably Deduce the Falsity of the**
11   **Allegedly False Statements**

12        Plaintiff does not dispute that he must allege a foundation for Situ's allegations, but

13   contends that conjecture based solely on Situ's position as financial controller trumps his

14   admission that he did not verify the entire inventory and did not test any of the inventory.  In the

15   September 25, 2007 e-mail string, Situ admits that "Feedstock in Material Department and in

16   transit <u>not yet verified</u>" and that it was "[t]o be further accessed [sic]."  <u>See</u> RJN Ex. F at 1

17   (emphasis added).  Without counting and verifying all of LDK's polysilicon feedstock, it would

18   be impossible for Situ to have personal knowledge of whether LDK's inventory was overstated

19   and its accounting disclosures were false.

---

20

21   [2]  <u>See</u>, <u>e.g.</u>, <u>In re Impac Mortg. Holdings, Inc.</u>, No. SACV 06-00031-CJC(RNBx) 1, 2008 U.S.
      Dist. LEXIS 44644, *45-46 n.11 (C.D. Cal. May 19, 2008) (holding that neither defendant

22   engaged in trading that could be fairly characterized as "suspicious," much less which raises
      a strong inference of scienter, because they "did not sell any shares during the Class Period,

23   but increased his ownership by exercising options and holding the stock."); <u>In re
      Dreamworks Animation SKG, Inc.</u>, No. CV 05-03966 MRP (VBKx), 2006 U.S. Dist. LEXIS

24   24456, * (C.D. Cal. Apr. 12, 2006) (holding that "a financial motive to artificially inflate the
      stock price," was a "wholly conclusory allegations [that] do[es] not give rise to a strong

25   inference of scienter as required under the PSLRA."); <u>Caiafa v. Sea Containers Ltd.</u>, 525 F.
      Supp. 2d 398, at 412-413 (S.D.N.Y. 2007) (rejecting the corporate motive to secure funds

26   and holding that "the alleged desires to raise additional capital in a private placement or to
      maintain compliance with the financial covenants of a company loan agreement . . . are . . .

27   inadequate to support an allegation of intent to commit fraud."); <u>Chill v. Gen. Elec. Co.</u>, 101
      F.3d 263, 268 (2d Cir. 1996) ("The motive to maintain the appearance of corporate

28   profitability . . . does not entail concrete benefits.").

LATHAM&WATKINS LLP
ATTORNEYS AT LAW

6
DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF MOTION
FOR LEAVE TO FILE MOTION FOR RECONSIDERATION OR
ALTERNATIVELY CERTIFICATION OF ISSUES FOR APPEAL

1    Notwithstanding this admission, Plaintiff contends that under <u>Berson</u>, Situ's admissions

2    are overcome by conjectures based solely on Situ's position as the financial controller.  <u>See</u> Opp.

3    at 10.  However, <u>Berson</u> does not support his position.  There, the court relied upon four

4    confidential witnesses who claimed that the company received stop-work orders because those

5    orders "would have had the <u>very obvious effect</u> of putting numerous employees out of work[.]"

6    <u>Berson</u>, 527 F.3d at *4 (emphasis added).  However, unlike here, the witnesses in <u>Berson</u> did not

7    admit that they lacked personal knowledge about the allegations, which clearly trump any

8    conjectures of what Situ could "reasonably deduce" based solely on his position.  <u>Berson</u> does

9    not hold that when Plaintiff's own source for his allegations – Situ's e-mail – establishes Situ did

10   not have the necessary personal knowledge regarding the total amount to or usability of LDK

11   inventory, the Court must ignore that judicially noticeable document.  To the contrary, as stated

12   in <u>Berson</u>, it is no longer "reasonable to deduce" Situ had the required personal knowledge given

13   his own concession that he did not count or test LDK's inventory in a manner that would give

14   him that foundation.

15       Similarly, Plaintiff cannot allege any personal knowledge to establish foundation of the

16   unidentified source identified in the <u>Barron's</u> story.  <u>See</u> <u>In re Daou Sys., Inc.</u>, 411 F.3d 1006,

17   1015 (9th Cir. 2005) ("[P]ersonal sources of information relied upon in the complaint should be

18   'described in the complaint with sufficient particularity to support the probability that a person in

19   the position occupied by the source would possess the information alleged.'") (citations omitted).

   **F.    <u>Plaintiff Concedes That His Allegations of Notice are Based on Only
         Conjecture, Unsupported by Judicially Noticeable Facts</u>**

22       Plaintiff concedes that he has no evidence that any Defendants knew about Situ's

23   allegations until at the earliest when Situ first raised his inventory allegation on September 10,

24   2007, but merely speculates that it was "<u>entirely plausible</u> that Situ expressed concerns about

25   more than one issue on May 29."  Opp. at 11-12 (emphasis added).  <u>Tellabs</u>, however, requires

26   that Plaintiff's argument be more than "entirely plausible" – Plaintiff is required "to plead with

27   particularity <u>facts</u> that give rise to a 'strong'– i.e., a powerful or cogent – inference."  <u>Tellabs</u>,

28   127 S. Ct. at 2510 (emphasis added).  Here, given that the July 27, 2007, e-mail specifically

1    speaks to outputs and yield rates and says nothing regarding inventory or the usability of LDK's

2    feedstock, Plaintiff failed to plead any facts that would give rise to any reasonable inference that

3    Situ expressed any concerns other than outputs and yield rates on May 29.

4        Plaintiff's appeal to <u>Berson</u> is also inapposite.  Again, <u>Berson</u> does not require that this

5    Court ignore the content of the judicially noticeable documents and merely accept Plaintiff's

6    allegations, which are undermined by his own source documents.  Situ's own words show that he

7    did not say anything about the allegedly missing or unusable inventory until his September 2007

8    analysis of August 31 data, which could not support Plaintiff's allegations that statements in June

9    1, 2007 (relating to 2006 and 1Q07 inventory) or August 1, 2007, were inaccurate – and

10   knowingly so.  Further, Plaintiff's complaint and the judicially noticeable documents do not

11   establish that any defendant other than Jack Lai ever received Situ's assertions before his

12   September 25, 2007 email.  Thus, the Complaint cannot establish a strong inference of scienter

13   as to these individual defendants or LDK.  <u>Berson</u> does not authorize Plaintiff to avoid the strict

14   standards requiring a complaint to plead a strong inference of scienter as to each defendant with

15   particularity.

16   **III.    CONCLUSION**

17       For the above reasons, Defendants respectfully request reconsideration and alternatively

18   appellate certification of these issues.

19   Dated:  July 3, 2008                    Respectfully submitted,

20                                           LATHAM & WATKINS LLP

21

22                                           By _____/s/_____
                                                        James J. Farrell

23

24

25

26

27

28