United States District Court

For the Northern District of California

1

2

3

4

5

6 IN THE UNITED STATES DISTRICT COURT

7

8 FOR THE NORTHERN DISTRICT OF CALIFORNIA

9

10                                                    No. C 07-05182 WHA

11

IN RE LDK SOLAR SECURITIES
12 LITIGATION.

13 ————————————————/                **ORDER DENYING MOTION FOR**
                                                     **LEAVE TO FILE MOTION FOR**
                                                     **RECONSIDERATION, OR, IN**
14 This Document Relates to:                         **THE ALTERNATIVE, FOR**
                                                     **CERTIFICATION OF ISSUES**
15         All Actions.                              **FOR INTERLOCUTORY APPEAL**

16 ————————————————/

17                                 **INTRODUCTION**

18         In this federal securities action, a consolidated class of investors sued defendants LDK

19 Solar Co., Ltd., LDK Solar USA, Inc., and their officers and directors for alleged material

20 misstatements and omissions relating to LDK's inventory in polysilicon.  An earlier order

21 denied defendants' motion to dismiss, concluding that plaintiffs had met the heightened

22 pleading standards of the Private Securities Litigation Reform Act.  Defendants now request

23 leave to file a motion for reconsideration, or alternatively, for certification of issues for

24 interlocutory appeal.  Plaintiffs have responded.  For the reasons stated below, defendants'

25 motion is **DENIED**.

26                                   **ANALYSIS**

27         Defendants seek leave to file a motion for reconsideration pursuant to FRCP 60(b)(6)

28 and Civil Local Rule 7-9.  Motions for reconsideration are decided within the discretion of the

district court.  According to FRCP 60(b)(6), a party may be relieved from a "final judgment,

United States District Court

For the Northern District of California

1  order, or proceeding" for any reason that justifies relief.  This rule, however, does not govern an

2  order denying a motion to dismiss because such an order does not constitute a "final judgment,

3  order, or proceeding."  *See State of California on Behalf of California Dept. of Toxic*

4  *Substances Control v. Campbell*, 138 F.3d 772, 776–77 (9th Cir. 1998) (holding that "an order

5  that adjudicates less than all claims" is not a final judgment); *Prudential Real Estate Affiliates,*

6  *Inc. v. PPR Realty, Inc.*, 204 F.3d 867, 880 (9th Cir. 2000) ("a preliminary injunction is not a

7  'final judgment, order, or proceeding' that may be addressed by a motion under Rule 60(b)").

8  A motion for reconsideration of an interlocutory order is actually governed by Civil Local

9  Rule 7-9.  *Nidec Corp. v. Victor Co. of Japan, Ltd.*, 2007 WL 418092 (N.D. Cal. 2007)

10  (Armstrong, J.).

11         Civil Local Rule 7-9(b) sets forth the form and content of a proper motion for leave to

12  file a motion for reconsideration.  The moving party must specifically show:

13             (1) That at the time of the motion for leave, a material difference in
               fact or law exists from that which was presented to the Court
14             before entry of the interlocutory order for which reconsideration is
               sought.  The party also must show that in the exercise of
15             reasonable diligence the party applying for reconsideration did not
               know such fact or law at the time of the interlocutory order; or
16             (2) The emergence of new material facts or a change of law
               occurring after the time of such order; or
17
               (3) A manifest failure by the Court to consider material facts or
18             dispositive legal arguments which were presented to the Court
               before such interlocutory order.
19
20  The Civil Local Rules also prohibit repetition of argument: "No motion for leave to file a

21  motion for reconsideration may repeat any oral or written argument made by the applying party

22  in support of or in opposition to the interlocutory order which the party now seeks to have

23  reconsidered.  Any party who violates this restriction shall be subject to appropriate sanctions."

24  Civil L.R. 7-9(c).

25         Defendants primarily assert the third ground — that there was a manifest failure by the

26  Court to consider material facts or dispositive legal arguments that were presented before the

27  order denying their motion to dismiss was issued.  Defendants' individual arguments will be

28  addressed as follows.

2

United States District Court

For the Northern District of California

1          **1.      EXCULPATORY INFERENCES.**

2          Defendants contend that the previous order failed to consider the following exculpatory

3   inferences: (i) that former LDK financial controller Charley Situ admitted to not having verified

4   the inventory, and that he did not possess the requisite technical knowledge or test LDK's

5   feedstock; (ii) that the special committee and KPGM provided clean audit opinions that

6   contradicted Controller Situ's allegations; (iii) that there were no stock sales by defendants;

7   (iv) that different types of polysilicon are processed at different rates under LDK's proprietary

8   formula so production delays caused by the shortage of one type does not necessarily mean that

9   the inventory is nonexistent or unusable; and (v) that Situ did not make specific allegations

10  about inventory accounting until after three of the four alleged misstatements were made.

11          **A.      Charley Situ's Allegations.**

12          Defendants first say that the order did not consider that Situ admitted that he did not

13  verify LDK's inventory in an email dated September 25, 2007: "The scope of [the review] is the

14  feedstock in warehouse.  Feedstock in Material Dept and in transit not yet verified.  To be

15  further accessed" (Req. Jud. Not. Exh. F).  Because this email directly contradicted the previous

16  order's conclusion that Controller Situ had verified LDK's inventory, defendants argue,

17  there was a manifest failure to consider material facts.

18          This matter has already been argued.  The previous order stated that "the Court has

19  reviewed the emails [referring to the September 2007 email string] and finds that they actually

20  bolster plaintiffs' case, thereby reinforcing the Court's decision to move forward with this

21  action" (Order 6 n.1).  As noted in the earlier order, "[a] complaint will survive, we hold, only if

22  a reasonable person would deem the inference of scienter cogent and at least as compelling as

23  any opposing inference one could draw from the facts alleged." *Tellabs, Inc. v. Makor Issues &*

24  *Rights, Ltd.*, 127 S.Ct. 2499, 2510 (2007).  The totality of emails — with their inculpatory and

25  exculpatory inferences contained therein — and allegations in the complaint was sufficient to

26  uphold a strong inference of scienter.  For example, Controller Situ still concluded in the

27  September 25 email that there were "critical discrepancies between the actual operation and the

28  financial statements released" (Req. Jud. Notice Exh. F).

3

**United States District Court**
For the Northern District of California

1    Defendants then argue that Situ did not have any technical knowledge nor did he test

2    LDK's feedstock.  They further contend that because Situ did not count and test all of the

3    inventory, he failed to have personal knowledge to make such allegations.  Defendants have

4    also raised these arguments before and Situ's credibility was specifically addressed in the

5    earlier order.  The order noted, *inter alia*, that he had been specifically hired to be aware of

6    inventory and accounting matters and that the complaint.  He had worked at LDK from mid-

7    March 2007 to late September 2007 (which included most of the class period).  The complaint

8    also alleged that Situ "went to the warehouse physically to double check and reconfirm some

9    critical data" (Compl. ¶ 40).  This issue need not be revisited.[1]

10                    **B.    The Independent Investigation and KPMG Audit Opinions.**

11    Defendants say that the previous order gave no weight to the special committee

12    investigation (which included two outside directors from the audit committee, Simpson Thacher

13    & Bartlett LLP, a Big Four accounting firm, and other polysilicon experts), and KPMG's 2006

14    and 2007 clean audit opinions.

15    Again, this order disagrees; there was no manifest failure to consider exculpatory

16    inferences created by the "independent investigation" and clean KPMG audit opinions.  While it

17    is true that defendants did not have to show actual exoneration by these findings, the order still

18    found that there was enough evidence to support a strong inference of falsity.

19    *First*, a district court may take judicial notice of "matters of public record" without

20    converting a motion to dismiss into a motion for summary judgment.  "But a court may not take

21    judicial notice of a fact that is 'subject to reasonable dispute.'" *Lee v. City of Los Angeles*,

22    250 F.3d 668, 689 (9th Cir. 2001).  "With respect to SEC filings, the Court takes judicial notice

23

24    [1] Defendants say that the two decisions cited in the order are contrary to the order's conclusion.
Not so.  According to *In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970, 985 (9th Cir. 1999), the complaint
must contain "adequate corroborating details" to support the inference that defendants' statements were false.

25    *In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970, 985 (9th Cir. 1999).  Similarly, in *Novak v. Kasaks*,
216 F.3d 300, 313–14 (2000), the Second Circuit held, "[N]otwithstanding the use of the word 'all,' [15 U.S.C.

26    78u-4(b)(1)] does not require that plaintiffs plead with particularity every single fact upon which their beliefs
concerning false or misleading statements are based.  Rather, plaintiffs need only plead with particularity

27    sufficient facts to support those beliefs."  Nowhere in *Silicon Graphics* or *Novak* did the courts of appeals
require "personal firsthand knowledge in the strict evidentiary sense," as stated in the previous order.

28    Situ provided adequate corroborating details.  Consequently, there was no manifest failure to consider
dispositive legal arguments.

4

United States District Court

For the Northern District of California

1    only of the statements contained therein, but not for the purpose of determining the truth of

2    those statements." *In re Dura Pharmaceutical, Inc. Securities Litigation*, 548 F. Supp. 2d 1126

3    (S.D. Cal. 2008) (Sammartino, J.).  *See also Troy Group, Inc. v. Tilson*, 364 F. Supp. 2d 1149,

4    1152 (C.D. Cal. 2005) (Selna. J.).  As a result, the prior order could take judicial notice of the

5    SEC filings proffered by defendants at the motion to dismiss stage — but not for the truth of

6    documents' contents, especially if they were subject to reasonable dispute (as is the case here

7    with respect to LDK's accounting system).

8           *Second*, even taking these documents into account, the prior order found that the sum

9    of the evidence supported the inference of falsity (at the motion to dismiss stage).

10    Defendants produced what they considered to be exculpatory inferences found in the "clean"

11    findings by an investigative committee and by KPMG.  Plaintiffs produced what they

12    considered to be inculpatory inferences found in Controller Situ's allegations, LDK's internal

13    control problems in 2006 (which, admittedly, do not automatically mean that LDK's faced the

14    same problems in 2007), and suspect financials.  Taking all of this into account, the order still

15    found a strong inference of falsity.

16           *Third*, if district court judges simply accepted the findings of special committees in the

17    face of otherwise adequate allegations, they would be abdicating their duties to the special

18    committees and their well-paid advocates.  Defendants cannot escape the securities laws so

19    easily.

20                    **C.     Lack of Stock Sales by Defendants.**

21           Defendants say that the earlier order did not consider the exculpatory inference created

22    by the lack of suspicious stock sales by defendants.  They contend that the previous order

23    mistakenly declined to apply the holding of *In re Pixar Securities Litigation*, where the district

24    court held that the absence of insider trading by a defendant was highly relevant and

25    undermined any inference of scienter.  The prior order compounded this mistake, it is alleged,

26    by saying defendants' lock-up agreements helped establish a strong inference of scienter (even

27    though, in reality, defendants had the option all along to waive the lock-up provision).

28

5

United States District Court

For the Northern District of California

1    This argument is unpersuasive and repetitious.  The Court *did* consider this argument.

2  There was no manifest error.  The previous order specifically declined to apply the holding of

3  *In re Pixar* because there, the plaintiff relied "heavily on allegations of insider trading to

4  establish scienter."  *In re Pixar Securities Litigation*, 450 F. Supp. 2d 1096, 1107

5  (N.D. Cal. 2006) (White, J.).  The previous order even noted that the district court in *In re Pixar*

6  said, "In [two other actions], the plaintiffs did not rely on allegations of insider trading to

7  establish scienter.  Therefore, the courts found that the failure to allege selling or trading did not

8  negate the inference of scienter" (Order at 18 n.6).  As discussed earlier, in the instant action,

9  plaintiffs did not rely on allegations of insider trading to establish scienter, so the lack of stock

10  sales by defendants did not negate the inference of scienter.

11    Moreover, the earlier order did *not* rely upon the lock-up provisions to support a

12  finding of strong inference of scienter.  The order merely noted that these lock-up provisions

13  existed.  The lack of trading and lock-up provisions neither helped nor harmed defendants.

14  Rather, plaintiffs supported the claims of scienter with *other* allegations in the complaint.

### D.    Different Types of Polysilicon.

16    According to defendants, Controller Situ failed to take into account the fact that

17  different types of polysilicon were used at different rates during the silicon-wafer production

18  process.  The shortage of only one type of ingredient could lead to production delays without

19  actually showing that the inventory was nonexistent or unusable.  Controller Situ was therefore

20  incorrect in his allegations about the inaccurate amounts of LDK polysilicon feedstock, it is

21  argued.

22    Again, this argument goes to whether or not Controller Situ verified LDK's inventory

23  and to what extent he had personal knowledge of the matters in dispute.  This issue has been

24  previously argued and is currently disputed by both parties.  While a securities complaint must

25  raise a strong inference of fraud, it does not have to conclusively eliminate all doubt.

### E.    Timing of Situ's Allegations.

27    Defendants argue that the previous order failed to take into account the fact that Situ did

28  not report missing or unusable inventory until, at the earliest, September 10, 2007 — which was

6

United States District Court

For the Northern District of California

1  *after* three of the four alleged misstatements were made.  Consequently, plaintiffs failed to state

2  with particularity facts giving rise to a strong inference of scienter with respect to at least the

3  first three statements.

4          That is not the case.  The first alleged misstatement was the prospectus released in

5  connection with the IPO on June 1, 2007.  The prior order found that plaintiffs had alleged that

6  defendants knew of inventory and accounting discrepancies before that time.  In February 2007,

7  KPMG had raised concerns about LDK's inventory accounting and internal controls.  A report

8  in the *The Wall Street Journal* cited Controller Situ as having emailed CFO Lai about LDK's

9  accounting on May 29, 2007.

10          Defendants object to the order's reliance on the report in *The Wall Street Journal*.

11  They say that an email dated June 27, 2007, directly contradicted the assertion that there was a

12  "critical discrepancy" in the accounting.  According to defendants, the June 2007 email clarified

13  what Controller Situ was talking about; the "critical discrepancy" referred to outputs and yield

14  rates (*i.e.*, the electricity generated by a completed wafer) and not inventory accounting.

15  The June 2007 email, however, did not mean that Controller Situ did not raise accounting issues

16  earlier.  The same June 2007 email also stated that "[t]he critical discrepancy you found is only

17  one of the many examples" (Req. Jud. Not. Exh. F) (emphasis added).  As stated in the previous

18  order, this and KPMG's earlier concerns provided the requisite showing of scienter for the first

19  misstatement.

20          The second and third alleged misstatements occurred on August 1, 2007, when (i) LDK

21  issued a press release entitled, "LDK Solar Reports Financial Results for the Second Quarter

22  2007" and (ii) defendants Xiaofeng Peng and Jack Lai hosted a conference call for analysts and

23  investors.  The order said that the May and June 2007 emails were enough to put defendants on

24  notice that the financial statements were misleading.  There was no manifest error with respect

25  to the timing of Controller Situ's allegations.

26          **2.      FALSITY OR SCIENTER.**

27

28

7

**United States District Court**
For the Northern District of California

1    Defendants further assert that the earlier order over-relied on Situ's allegations of falsity

2    and scienter even though he lacked the requisite personal knowledge. Again, this argument has

3    been repeated and addressed before.

4    As stated, Controller Situ "had been specifically hired to be aware of inventory and what

5    was reflected in financial statements" (Order at 12). "[T]he source must be one whose context

6    and access to critical information makes him or her reasonably reliable, such that his or her

7    conclusions about the inner workings of the company are not speculative but reasonably

8    informed" (*ibid*.). The complaint contained "adequate corroborating details" to support

9    plaintiffs' beliefs. *See In re Silicon Graphics*, 183 F.3d at 985; *Novak*, 216 F.3d at 313–14;

10    *In re Daou Sys., Inc.*, 411 F.3d 1006, 1015–16 (9th Cir. 2005) (complaint described confidential

11    witnesses "with sufficient particularity to support the probability" that they knew about the

12    fraud).[2]

13    **3.    CLAIMS AGAINST NON-SPEAKING DEFENDANTS.**

14    The previous order did not consider that the claims against the non-speaking defendants

15    (Jiangxi LDK Solar, Xingxue Tong, Qiqiang Yao, Yonggang Shao, and Gang Wang) should be

16    dismissed. The complaint only provided generic allegations of scienter against these

17    defendants, movants say. Rather, the order stated that it did not pertain to the nonmoving,

18    unserved defendants.

19    This argument is unconvincing. While the order *could have* considered these claims,

20    it was not required to do so. Failing to consider the claims against the nonmoving, unserved

21

22

23

24

25

26    [2] Plaintiffs also cite to *Berson v. Applied Signal Technology, Inc.*, 527 F.3d 982 (9th Cir. 2008), which was decided a week after the order. In *Berson*, the Ninth Circuit held that four confidential witnesses were situated such that they "could reasonably deduce" some of the allegations in the complaint. In their reply,

27    defendants say that *Berson* represents a change of law occurring after the time of the earlier order. This order finds that, even without the benefit of *Berson*, other Ninth Circuit decisions support the prior order's

28    conclusions on Situ's personal knowledge. Defendants' request for leave to file a motion for reconsideration is not granted on this ground.

8

1    defendants did not constitute manifest error.  None of the decisions cited by defendants hold

2    otherwise.[3]

3          **4.     OCTOBER 4TH STATEMENT.**

4          Defendants say that the earlier order did not consider the dispositive legal argument that

5    the October 4, 2007, press release was not actionable because the information had already been

6    made widely available to the market as of the day before.  The day before, information about

7    the inventory entered the market, which led to the drop in LDK's stock price.

8          There was no manifest error by the previous order in considering that the October 4th

9    statement might not be actionable.  LDK's press release stated that the management team

10   believed that Controller Situ's allegations of improper accounting practices had no merit.

11   In reality, Controller Situ had emailed defendants in September 2007 about his misgivings.

12   As stated by the prior order, "[U]pon the laying of a proper factual foundation that information

13   was known within a corporation, it may be inferred that facts critical to a business's core

14   operations or an important transaction are known to a company's responsible officers."

15   *In re Northpoint Communications Group, Inc., Securities Litigation*, 221 F. Supp. 1090, 1104

16   (N.D. Cal. 2002) (Alsup, J.).  This information was not made widely available to the market on

17   October 3rd; the note stated that there was no reason to doubt LDK's assertion that Controller

18   Situ's claims were false.

19

20          [3]  *See In re Syncor Intern. Corp. Securities Litig.*, 239 Fed. Appx. 318, 321 (9th Cir. 2007)
(affirming dismissal of complaint for failing to allege specific misleading statements made by individual
21   defendants); *In re International Rectifier Corp. Securities Litig.*, 2008 U.S. Dist. LEXIS 44872, *35–36
(C.D. Cal. 2008) (Walter, J.) (dismissing with prejudice Section 10(b) claim against non-moving and unserved
22   defendants because they were not alleged to have made a material misrepresentation or omission, nor were they
alleged to have substantially participated in the preparation thereof); *Silverton v. Dept. of Treasury*, 644 F.2d
23   1341, 1345 (9th Cir. 1981) ("A District Court *may* properly on its own motion dismiss an action as to
defendants who have not moved to dismiss where such defendants are in a position similar to that of moving
24   defendants or where claims against such defendants are integrally related") (emphasis added); *Finley v.
Hartford Life & Acc. Ins. Co.*, 2008 WL 753911, *1 (N.D. Cal. 2008) (Wilken, J.) ("Because Plaintiff's claims
25   against [one defendant] fail for the same reasons they fail against the other Defendants, the Court now grants
summary judgment in favor of Dempsey on Plaintiff's claims against it, and those claims are dismissed"); *In re
26   Hansen Natural Corp. Securities Litig.*, 527 F. Supp. 2d 1142, 1153–54 (C.D. Cal. 2007) (Walter, J.)
(dismissing complaint against individual defendants where there were no specific allegations that they played
27   any role whatsoever in the preparation or dissemination of allegedly false statements); and *In re Silicon Storage
Technology, Inc.*, 2006 WL 648683, *21 (N.D. Cal. 2006) (dismissing claims against the individual defendants
28   because the complaint pled no facts showing that any individual defendant made any statement with scienter)
(Hamilton, J.).

9

**United States District Court**

For the Northern District of California

United States District Court

For the Northern District of California

1      **5.      CERTIFICATION FOR INTERLOCUTORY APPEAL.**

2              Defendants further request, in the event that their request for leave to file a motion for

3      reconsideration is denied, that they be granted certification for interlocutory appeal pursuant to

4      28 U.S.C. 1292(b).  A district court must find that the certification requirements of the statute

5      have been met.  These requirements are: "(1) that there be a controlling question of law,

6      (2) that there be substantial grounds for difference of opinion, and (3) that an immediate appeal

7      may materially advance the ultimate termination of the litigation."  *In re Cement Antitrust*

8      *Litigation*, 673 F.2d 1020, 1026 (9th Cir. 1982).  Even if these three requirements are satisfied,

9      a district court still has the discretion in deciding whether or not to grant a party's motion for

10     certification.  The party seeking certification for interlocutory appeal has the burden of showing

11     that "exceptional circumstances justify a departure from the basic policy of postponing

12     appellate review until after the entry of a final judgment."  *Ibid*.

13             Defendants request to certify the following questions for interlocutory appeal:

14     (i) the degree of personal firsthand knowledge required to satisfy the pleading requirements

15     under the PSLRA; (ii) whether a corporation has standing to raise issues regarding the

16     sufficiency, under the PSLRA, of the allegations in a complaint against its directors and

17     officers; (iii) whether a complaint alleging a Section 10(b) claim may rely on allegations from

18     an "unidentified source," whose identity is unknown even to the Plaintiffs, to corroborate the

19     allegations in the complaint; and (iv) whether the existence of cautionary language

20     accompanying a forward-looking statement precludes an inquiry into the defendant's state of

21     mind when determining the applicability of the PSLRA's safe harbor provision.

22             The first question, whether a witness need to have "personal firsthand knowledge *in the*

23     *strict evidentiary sense*," does not present substantial grounds for difference of opinion.

24     As discussed by the Ninth Circuit, there must be adequate corroborating details.  *In re Silicon*

25     *Graphics*, 183 F.3d at 985.  A complaint must describe witnesses with sufficient particularity to

26     support the probability that they knew about the fraud.  *In re Daou Sys., Inc.*, 411 F.3d at

27     1015–16.

28

10

**United States District Court**
For the Northern District of California

1   The second question asks if a corporation has standing to question the sufficiency of a

2   complaint against its directors and officers.  Defendants then assert that the Court's decision to

3   decline ruling on the motion to dismiss with respect to the unserved non-moving defendants

4   was erroneous as a matter of law.  These questions are distinguishable.  The previous order did

5   *not* conclude that a corporation lacked such standing.  The Court only exercised its discretion to

6   postpone consideration of these claims.  Defendants, however, have not cited any decisions

7   *requiring* a district court to consider claims against the nonmoving, unserved directors and

8   officers of a moving corporate defendant.   There are no substantial grounds for a difference of

9   opinion.

10   Defendants further object to the prior order's reference to a "second unidentified source"

11   (cited by a *Barron's* article) to corroborate Controller's Situ's allegations the LDK had

12   problems with its inventory accounting.  This is not, however, a controlling question of law;

13   the order did not primarily rely on this information to find that there was sufficient allegation of

14   falsity.

15   Finally, defendants dispute the previous order's finding that the safe-harbor provision

16   did not apply.  "A forward-looking statement qualifies for the PSLRA 'safe harbor' and is not

17   actionable if either of the following two conditions is true: (A) the statement is accompanied by

18   'meaningful cautionary statements identifying important factors that could cause actual results

19   to differ materially from those in the forward-looking statement'; or (B) plaintiffs fail to

20   establish that the statement was 'made with actual knowledge . . . that the statement was false or

21   misleading.'" *In re Connectics Corp. Securities Litigation*, 542 F. Supp. 2d 996, 1006–07

22   (N.D. Cal. 2008) (Illston, J.).  The previous order held that the safe harbor did not apply

23   because plaintiffs had adequately alleged that defendants actually knew that the statements were

24   false when the statements were made.  According to defendants, because the PSLRA safe

25   harbor worked in the disjunctive (*i.e.*, it applied when *either* the statements were forward-

26   looking and accompanied by meaningful cautionary statements *or* plaintiffs failed to adequately

27   allege actual knowledge), the prior order erred as a matter of law.

28

11

United States District Court

For the Northern District of California

1    The earlier order had cited back to *Employer-Teamster Joint Council Pension Trust v.*

2    *America West Holding Corp.*, 320 F.3d 920, 936 (9th Cir. 2003), which stated that "a person

3    may be held liable if the 'forward-looking statement' is made with 'actual knowledge . . .

4    that the statement was false or misleading.'"  The court of appeals reiterated its position in a

5    footnote: "[I]t is arguable that a strong inference of actual knowledge has been raised, thus,

6    *excepting these statements from the safe harbor rule altogether*."  *Id.* at 937 n.15 (emphasis

7    added).  The prior order therefore complied with a Ninth Circuit decision.

8    Defendants, however, point to the decisions of other district courts that have declined to

9    follow *America West*.  In *In re SeeBeyond Technologies Corp. Securities Litigation*,

10    266 F. Supp. 2d 1150, 1163–64 (C.D. Cal. 2003) (Pregerson, J.), the district court noted that

11    "the state of law in *America West* does not appear to be consistent with the statute.  The statute,

12    legislative history and courts interpreting the statute indicate that if a defendant shows that a

13    forward-looking statement is accompanied by meaningful cautionary language, a court need not

14    turn to subsection (B) and examine whether the plaintiff, nevertheless, has sufficiently alleged

15    actual knowledge.  In other words, these two prongs of the safe harbor provision are taken to be

16    independent, alternative means by which a defendant may insulate itself from liability."

17    The district court also observed that it was not bound by *America West* because the relevant

18    statements were dicta.  "While the *America West* court indicated that the allegations may have

19    also raised a strong inference of actual knowledge, the court did not rule on this ground."

20    *Id.* at 1165.

21    Similarly, in *In re Portal Software, Inc. Securities Litigation*, 2006 WL 2385250,

22    *12 (N.D. Cal. 2006) (Walker, J.), the district court also found that the safe harbor applied,

23    despite plaintiffs' argument that defendants were liable for forward-looking statements when

24    they knew the statements were false and misleading when made.  It reasoned, "Because the

25    statute is disjunctively phrased, 'if a statement is accompanied by meaningful cautionary

26    language, the defendants' state of mind is irrelevant.'"  *Ibid*.

27    With this last question, certification is still improper because there are no exceptional

28    circumstances to justify doing so.  This issue is a small part of a larger alleged fraud and it will

1    best be presented for appellate review after all of the facts are known and a full record of the

2    actual intent of the participants is evident.

### CONCLUSION

4        For the foregoing reasons, the motion for leave to file a motion for reconsideration is

5    **DENIED**.  This motion to reconsider was largely frivolous.  The Court has nonetheless waded

6    through defendants' rehash of old arguments.  In the main, the motion is simply an attack on the

7    credibility of their own management executive who has turned states' evidence and is the

8    mainstay of the complaint.  While exculpatory and inculpatory references must be considered at

9    the pleading stage, the PLSRA in no way turns FRCP 12 into a trial-type, papers-only

10   proceeding, much less one in which defendants get the benefit of every conceivable doubt,

11   including credibility calls.  That is reserved for the jury.  The parties are advised to bring no

12   more frivolous motions.  This motion did not warrant the time it has taken away from the

13   consideration of the hundreds of other actions pending in the Court's docket.

14

15       **IT IS SO ORDERED.**

16

17   Dated:  July 14, 2008.

                              WILLIAM ALSUP
18                            UNITED STATES DISTRICT JUDGE

19

20

21

22

23

24

25

26

27

28

United States District Court
For the Northern District of California

13