1 | LATHAM & WATKINS LLP
        James J. Farrell (Bar No. 166595)
2 |        james.farrell@lw.com
   | 355 South Grand Avenue
3 | Los Angeles, California  90071-1560
   | Telephone:  (213) 485-1234
4 | Facsimile:  (213) 891-8763

5 | LATHAM & WATKINS LLP
        Philip J. Wang (Bar No. 218349)
6 |        philip.wang@lw.com
   | 140 Scott Drive
7 | Menlo Park, California  94025
   | Telephone:  (650) 328-4600
8 | Facsimile:  (650) 463-2600

9 | Attorneys for Defendants

10 | UNITED STATES DISTRICT COURT

11 | NORTHERN DISTRICT OF CALIFORNIA

12 | In re LDK SOLAR SECURITIES LITIGATION

MASTER FILE NO. C-07-05182-WHA

**DEFENDANTS' NOTICE OF MOTION AND MOTION FOR PROTECTIVE ORDER**

This Document Relates To:

ALL ACTIONS.

Judge:     Hon. William H. Alsup
Date:      September 25, 2008
Time:      8:00 a.m.
Courtroom: 9, 19th Floor

# TABLE OF CONTENTS

**Page**

I.      PRELIMINARY STATEMENT ...................................................................... 1

II.     BACKGROUND ........................................................................................... 3

III.    ARGUMENT ................................................................................................. 5

      A.      Discovery Is Improper Before All Motions To Dismiss Have Been
            Resolved........................................................................................... 5

      B.      The Requested Documents Are Privileged And Immune From
            Discovery ......................................................................................... 6

            1.      The Documents Related to the Special Committee
                  Investigation Are Protected by the Attorney-Client
                  Privilege and Are Nondiscoverable .......................................... 6

            2.      Many of the Documents Requested Are Nondiscoverable
                  Work Product ............................................................................ 8

      C.      Plaintiff's Requests Seek Irrelevant Documents And Are Overly
            Broad And Unduly Burdensome.................................................... 11

IV.     CONCLUSION.............................................................................................. 12

1

# <u>TABLE OF AUTHORITIES</u>

2

<span style="float:right">**Page**</span>

3

**CASES**

4

<u>Beinin v. Ctr. for the Study of Popular Culture</u>,
   No. C 06-02298 JW, 2007 U.S. Dist. LEXIS 47546 (N.D. Cal. June 20, 2007) ................. 11

5

<u>Dart Indus. Co. v. Westwood Chem. Co.</u>,
   649 F.2d 646 (9th Cir. 1980) ............................................................................. 11

6

7

<u>Hickman v. Taylor</u>,
   329 U.S. 495 (1947) ...................................................................................... 2, 8, 9

8

9

<u>In re Grand Jury Subpoena (Torf)</u>,
   357 F.3d 900 (9th Cir. 2004) ............................................................................... 9

10

11

<u>In re LDK Solar Sec. Litig.</u>,
   No. C 07-05182 WHA, 2008 U.S. Dist. LEXIS 42425 (N.D. Cal. May 29,
   2008) ...................................................................................................... 3, 4, 5

12

13

<u>In re McKesson HBOC, Inc. Secs. Litig.</u>,
   No. C-99-20743 RMW, 2005 U.S. Dist. LEXIS 7098 (N.D. Cal. Mar. 31,
   2005) ........................................................................................................ 2, 9

14

15

<u>In re Southern Pac. Funding Corp. Secs. Litig.</u>
   83 F. Supp. 2d 1172 (D. Or. 1999) ........................................................................ 5

16

17

<u>In re Veeco Instruments, Inc. Sec. Litig.</u>,
   No. 05-MD-01695 (CM)(GAY), 2007 U.S. Dist. LEXIS 16922 (S.D.N.Y.
   Mar. 9, 2007) ............................................................................................... 8, 9

18

19

<u>In re Veeco Instruments, Inc. Secs. Litig.</u>,
   No. 05 MD 1695(CM)(GAY), 2007 U.S. Dist. LEXIS 5274, (S.D.N.Y. Jan.
   24, 2007) ....................................................................................................... 9

20

21

<u>Petersen v. Douglas County Bank & Trust Co.</u>,
   967 F.2d 1186 (8th Cir. 1992) ............................................................................ 10

22

23

<u>Plumbers & Pipefitters Local 572 Pension Fund v. Cisco Sys.</u>,
   No. C 01-20418 JW, 2005 U.S. Dist. LEXIS 43648 (N.D. Cal. June 21, 2005) ................. 10

24

25

<u>Powers v. Eichen</u>,
   961 F. Supp. 233 (S.D. Cal. 1997) ...................................................................... 4, 5

26

<u>Premiere Digital Access, Inc. v. Cent. Tel. Co.</u>,
   360 F. Supp. 2d 1168 (D. Nev. 2005) .................................................................... 6

27

28

<u>Saito v. McKesson HBOC, Inc.</u>,
   No. 18553, 2002 Del. Ch. LEXIS 125, (Del. Ch. Oct. 25, 2002) ...................................... 2, 9

SEC v. Brady,
238 F.R.D. 429 (N.D. Tex. 2006) ............................................................. 7, 10

Sedona Corp. v. Ladenburg Thalmann & Co.,
No. 03 Civ. 3120 (LTS) (THK), 2005 U.S. Dist. LEXIS 23905 (S.D.N.Y. Oct.
14, 2005) ........................................................................................................ 5

United States v. Adlman,
134 F.3d 1194 (2d Cir. 1998).......................................................................... 8

United States v. Nobles,
422 U.S. 225 S. Ct. 2160, 45 L. Ed. 2d 141 (1975)......................................... 9

United States v. Rowe, a
96 F.3d 1294 (9th Cir. Cal. 1996) .................................................................. 6

Upjohn Co. v. United States,
449 U.S. 383 (U.S. 1981).............................................................................. 6

**STATUTES**

15 U.S.C. § 78u-4(b)(3)(B)........................................................................ 1, 4

**RULES**

Fed. R. Civ. P. § 26(b)(1)............................................................................ 6, 13

Fed. R. Civ. P. § 26(b)(3)................................................................................. 9

Fed. R. Civ. P. § 26(c)(1)................................................................................ 13

**NOTICE OF MOTION AND MOTION**

PLEASE TAKE NOTICE that, pursuant to Federal Rule of Civil Procedure ("FRCP") 26(c), defendants LDK Solar Co., Ltd., LDK Solar USA, Inc., Xiaofeng Peng, and Jack Lai ("Defendants") hereby move for a protective order prohibiting Plaintiff's premature and improper discovery.  The Motion is set for hearing at 8:00 a.m. on September 25, 2008, in the courtroom of the Honorable William H. Alsup, United States District Court for the Northern District of California, 450 Golden Gate Ave., San Francisco, California.

With this Motion, Defendants request that the Court issue a protective order striking Plaintiff's premature discovery requests, thereby eliminating any need to respond until the Court rules on Defendants' pending motion to dismiss, in accordance with the Private Securities Litigation Reform Act's ("PSLRA" or "Reform Act") mandatory discovery stay.  Defendants further request that the Court limit Plaintiff's improper discovery requests – seeking both (i) protected and privileged materials, as well as (ii) irrelevant records during a time frame long before the events at issue – to include only discoverable documents and information.

**STATEMENT OF ISSUE TO BE DECIDED**

1.    Whether discovery in this action is premature pending the resolution of the pending motion to dismiss under the automatic stay provision of the Reform Act, codified at 15 U.S.C. § 78u-4(b)(3)(B).

2.    Whether Plaintiff is entitled to discover privileged attorney-client communications and/or protected attorney work product.

3.    Whether Plaintiff is entitled to irrelevant discovery (to the extent it even exists) from a period of time spanning three years prior to the Class Period, and long before LDK Solar Co., Ltd. ("LDK") even existed.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.    PRELIMINARY STATEMENT**

In violation of the Reform Act, which automatically stays all discovery until all motions to dismiss have been decided, Plaintiff has attempted to initiate untimely and improper discovery while certain Defendants' motion to dismiss is pending.  Worse, Plaintiff seeks discovery of

1  privileged materials in a brazen display of gamesmanship, designed simply to put pressure on

2  Defendants without any legitimate purpose.  Plaintiff has requested, both from Defendants and

3  from the outside counsel (Simpson Thacher & Bartlett LLP, hereinafter "Simpson Thacher") for

4  the two independent directors serving on LDK's Audit Committee (Louis T. Hsieh and Bing

5  Xiang) (the "Special Committee"), essentially any and all documents having anything to do with

6  LDK's internal independent Special Committee investigation.  The communications between

7  Simpson Thacher and its client, as well as the materials prepared, marshaled, and developed by

8  Simpson Thacher – which inherently reflect the attorneys' mental impressions, judgments, and

9  analysis of issues as part of their work on this internal investigation – are unquestionably

10 privileged.  This Court and courts across the country have recognized and defended the

11 privileged nature of such materials, which are routinely created as part of an internal

12 investigation.[1]  Here, the Special Committee's discussions with its counsel and the mental

13 impressions and work product of its outside counsel are protected by the attorney-client privilege

14 and/or work product doctrine.  On those grounds, Simpson Thacher has objected to producing

15 any of the privileged materials.  See Declaration of James G. Kreissman in Support of

16 Defendants' Motion for Protective Order ("Kreissman Decl.") Ex. B.  While Defendants are

17 certainly willing to participate in proper discovery once the mandatory PSLRA stay has been

18 lifted, Plaintiff's inappropriate discovery demands for such privileged materials should be

19 stricken.

20     In addition to seeking privileged documents, Plaintiff's document requests are overbroad

21 and unduly burdensome because they seek documents during a time period stretching far beyond

22 the bounds of relevance in this case.  Plaintiff's discovery requests define the relevant time

23

24 [1] For example, Judge Whyte of the Northern District of California upheld the privileged nature of
McKesson's internal investigation materials prepared by outside counsel, noting the materials
25 were protected under the important attorney work product doctrine, a fundamental element of our
judicial process.  In re McKesson HBOC, Inc. Secs. Litig., No. C-99-20743 RMW, 2005 U.S.
26 Dist. LEXIS 7098, *28 n.5 (N.D. Cal. Mar. 31, 2005) (holding work product protection is
"essential" because an attorney's thoughts are "inviolate" and without such protection "'much of
27 what is now put down in writing would remain unwritten . . . [t]he effect [of which] on the legal
profession would be demoralizing.") (citing Hickman v. Taylor, 329 U.S. 495, 511 (1947)); see
28 also Saito v. McKesson HBOC, Inc., No. 18553, 2002 Del. Ch. LEXIS 125, at *11 (Del. Ch.
Oct. 25, 2002) (holding same documents protected by work product doctrine).

1  period as beginning on June 1, 2004, almost three-years before any of the alleged misconduct

2  purportedly occurred and three years before LDK became a public company. Indeed, there is no

3  dispute that LDK only started operations in 2006 as a non-public entity.

4      In short, Plaintiff's discovery requests are improper. They seek materials that are either

5  plainly irrelevant, or shielded by the attorney-client privilege and/or the attorney work product

6  doctrine. And in all events, the discovery issued by Plaintiff violates the PSLRA's mandatory

7  discovery stay. Thus, the Court should issue a protective order under FRCP 26(c) relieving both

8  the Defendants and Simpson Thacher of any duty to produce the requested documents.

9  **II.    BACKGROUND**

10     On September 25, 2007, former LDK employee Charlie Situ – upon being terminated for

11 cause – sent an e-mail alleging that LDK's inventory was missing and unusable. Situ's e-mail

12 was sent to LDK's management team, members of its audit committee, and LDK's auditors

13 (KPMG), as well as the SEC and Public Company Accounting Oversight Board. In response to

14 Situ's September 25 e-mail, LDK promptly appointed the two independent directors serving on

15 its Audit Committee (Louis T. Hsieh and Bing Xiang) (the "Special Committee") to analyze

16 Situ's assertions. See Kreissman Decl. at ¶ 1-4, Ex. A. The Special Committee retained legal,

17 accounting, and polysilicon experts to assist in its investigation. See id. After two months of

18 work, Simpson Thacher, a Big Four accounting firm, and the polysilicon experts considered all

19 of the inventory and concluded that Situ's assertions had no merit. See id. at ¶ 5, Ex. A. The

20 Special Committee agreed with and adopted those conclusions. See id. at ¶ 5. The results of the

21 Special Committee's investigation were announced through a December 17, 2007, press release

22 and Form 6-K filed with the SEC. See id. at Ex. A.

23     Months before the investigation was concluded, several suits were immediately filed

24 following the October 3, 2007, revelation of Situ's assertions. On April 7, 2008, Defendants

25 LDK Solar Co., Ltd., LDK Solar USA, Inc., Xiaofeng Peng, and Jack Lai moved to dismiss

26 Plaintiff's consolidated Complaint, which automatically stayed all discovery under the Reform

27 Act. Because Plaintiff had failed to serve Defendants Jiangxi LDK Solar, Xingxue Tong,

28 Qiqiang Yao, Liangbao Zhu, Yonggang Shao, and Gang Wang, the Court declined to address

1    issues relating to the those Defendants. See In re LDK Solar Sec. Litig., No. C 07-05182 WHA,

2    2008 U.S. Dist. LEXIS 42425, *5, 51 (N.D. Cal. May 29, 2008).  In ruling on the April 7, 2008,

3    motion to dismiss, the Court instead stated that "Plaintiffs' claims against these remaining

4    defendants will be addressed at a later time." Id.

5        On June 13, 2008, Defendants LDK Solar Co., Ltd., LDK Solar USA, Inc., Xiaofeng

6    Peng, and Jack Lai filed a motion for reconsideration, which, of its own accord, mandated a

7    continuing stay of all discovery.  See, e.g., Powers v. Eichen, 961 F. Supp. 233, 235-36 (S.D.

8    Cal. 1997) (holding that the PSLRA mandates a stay of discovery pending a district court's

9    reconsideration of a ruling on a motion to dismiss).

10        Despite outstanding challenges to the Complaint, on July 3, 2008, Plaintiff served his

11    First Request for Production of Documents on July 3, 2008.  See Declaration of Raymond A.

12    Gallenberg In Support of Defendants Motion for Protective Order ("Gallenberg Decl.") Ex. A.

13    On July 16, 2008, LDK also received a copy of a document subpoena directed to Simpson

14    Thacher.  See id. Ex. B.  On July 8, 2008, in response to Lead Plaintiff's First Request for

15    Production of Documents, Defendants informed Plaintiff's counsel that the then-pending motion

16    for reconsideration mandated a stay of discovery until its resolution.  See id. Ex. C.  Defendants

17    also informed counsel that the recently-served Defendants intended to file a motion to dismiss,

18    which would further stay discovery due to the PSLRA's automatic stay "during the pendency of

19    any motion to dismiss." Id.  As such, Defendants requested that Plaintiff voluntarily withdraw

20    his improper discovery requests. Id.  Plaintiff refused.  See id. Ex. D.  On July, 21, 2008, the

21    Defendants Jiangxi LDK Solar, Xingxue Tong, Qiqiang Yao, Liangbao Zhu, Yonggang Shao,

22    and Gang Wang filed a motion dismiss Lead Plaintiff's Complaint pursuant to Federal Rules of

23    Civil Procedure 12(b)(2) and 12(b)(6).  That Motion is scheduled for hearing on September 18,

24    2008, and thus, at a minimum, will not be resolved until that date.

25        Because Plaintiff's discovery requests are premature and improper, on July 31, 2008,

26    Defendants filed their Motion to Stay All Discovery, requesting that the Court implement the

27    mandatory stay of all discovery required by the PSLRA.  In order to prevent Plaintiff from

28    further circumventing the Reform Act's mandatory stay, and also to limit all discovery to only

1  relevant and nonprivileged materials, Defendants request that the Court grant Defendants'

2  request for a protective order.  See Fed. R. Civ. P. 26(c).

3  **III.    ARGUMENT**

4          A.      Discovery Is Improper Before All Motions To Dismiss Have Been Resolved

5          As explained fully in Defendants' July 21, 2008 Motion to Stay Discovery, Defendants'

6  pending motion to dismiss Plaintiff's Complaint proscribes all discovery at this stage under the

7  PSLRA.  See 15 U.S.C. 78u-4(b)(3)(B); see also Sedona Corp. v. Ladenburg Thalmann & Co.,

8  No. 03 Civ. 3120 (LTS) (THK), 2005 U.S. Dist. LEXIS 23905, at *10 (S.D.N.Y. Oct. 14, 2005)

9  (holding that because there is "no ambiguity in the plain language of the PSLRA's stay

10 provision[,] the automatic stay applies while 'any motion to dismiss' is pending") (emphasis

11 added).  The mandatory PSLRA discovery stay "applies while 'any motion to dismiss' is

12 pending," including successive motions to dismiss, and mandates that discovery be stayed "as to

13 all defendants, even though motions to dismiss were filed by only some of the defendants."

14 Sedona Corp., 2005 U.S. Dist. LEXIS 23905, at *9-10 (citing a string of cases standing for same

15 proposition); see also In re Southern Pac. Funding Corp. Secs. Litig., 83 F. Supp. 2d 1172, 1174-

16 75 (D. Or. 1999) (staying discovery upon successive motions to dismiss).  Moreover, the PSLRA

17 discovery stay applies to discovery against parties and non-parties alike until the court has

18 addressed all motions to dismiss.  See Powers, 961 F. Supp. at 235-36 ("By its language, the

19 Reform Act addresses 'all discovery' with no distinction between that sought from nonparties as

20 opposed to parties.").

21         The Court here made explicitly clear that "Plaintiffs' claims against the[] remaining

22 defendants w[ould] be addressed at a later time."  In re LDK, 2008 U.S. Dist. LEXIS 42425, at

23 *51.  Thus, there should be no confusion that the PSLRA's automatic stay on discovery is still in

24 effect.  Upon receiving Plaintiff's premature discovery requests, Defendants reminded Plaintiff

25 that discovery remained stayed and requested that Plaintiff voluntarily withdraw his discovery

26 requests.  See Gallenberg Decl. Ex. C.  But, Plaintiff refused.  See id. Ex. D.  Simply put,

27 Plaintiff's refusal to withdraw his discovery while motions to dismiss are pending is a clear

28 violation of the mandatory PSLRA discovery stay.  The Court should therefore issue a protective

1  order eliminating any duty to respond to Plaintiff's premature document requests until all

2  motions to dismiss are resolved.

3      B.    The Requested Documents Are Privileged And Immune From Discovery

4      Plaintiff's document requests are clear attempts to seek documents shielded from

5  discovery by both the attorney-client privilege and the attorney work product doctrine.  The

6  starting point for any discussion regarding the scope of permissible discovery is FRCP 26(b)(1)

7  which states:  "Parties may obtain discovery regarding any nonprivileged matter that is relevant

8  to any party's claim or defense."  Fed. R. Civ. P. 26(b)(1) (emphasis added).  Both the attorney-

9  client privilege and the work product doctrine are critical:  impairment of these safeguards would

10  "not only make it difficult for corporate attorneys to formulate sound advice when their client is

11  faced with a specific legal problem but also threaten to limit the valuable efforts of corporate

12  counsel to ensure their client's compliance with the law."  Upjohn Co. v. United States, 449 U.S.

13  383, 392 (U.S. 1981).  Plaintiff's discovery requests seek to pierce these fundamental

14  protections.

15      1.    The Documents Related to the Special Committee Investigation Are

16          Protected by the Attorney-Client Privilege and Are Nondiscoverable

17      The attorney-client privilege is sacrosanct.  It "is the oldest of the privileges for

18  confidential communications known to the common law."  See Upjohn, 449 U.S. at 389.  "Its

19  purpose is to encourage full and frank communication between attorneys and their clients and

20  thereby promote broader public interests in the observance of law and administration of justice."

21  Id. (citations omitted).  The privilege applies with equal force to corporations and to employees

22  of corporations when, for example, an employee is questioned by an attorney conducting an

23  internal investigation or fact-finding mission on the corporations' behalf.  See, e.g., id. at 390-91;

24  United States v. Rowe, 96 F.3d 1294, 1296-97 (9th Cir. 1996).  As a result, communications are

25  protected when are made between outside counsel or in-house counsel, in their capacity as such,

26  and employees, in the "scope of their employment and with the knowledge that they are speaking

27  to . . . counsel for the purpose of securing legal advice."  See, e.g., Premiere Digital Access, Inc.

28  v. Cent. Tel. Co., 360 F. Supp. 2d 1168 (D. Nev. 2005) (citing Upjohn, 449 U.S. at 394-95).

1         Here, on their face, Plaintiff's Document Request Nos. 1 and 2 and many of the

2    Subpoena Requests to Simpson Thacher seek to invade the attorney-client privilege.[2]  For

3    example, Document Request No. 1 seeks from LDK all documents "evidencing the findings of

4    any investigation or inquiry, whether conducted by LDK employees or by others, into any type

5    of possible wrongdoing whatsoever by LDK relating to the subject matter of this litigation."  See

6    Gallenberg Decl. Ex. A at 7.  Document Request No. 2 seeks "[a]ll documents setting forth the

7    scope of any investigation or inquiry, whether conducted by LDK employees or by others."  Id.

8    at 7-8.

9         Similarly, the subpoena to Simpson Thacher seeks documents directly related to the

10   investigation, all of which are privileged and/or protected from discovery.  For example,

11   Subpoena Request No. 1 seeks "[a]ll reports . . . and any other Documents evidencing the

12   findings of any investigation or inquiry into any type of possible wrongdoing whatsoever by

13   LDK or by any of its current or former directors, officers, employees or agents," and

14   "encompasses, but is not limited to, both informal and formal investigations and inquiries and

15   formal and informal reports of the findings of such investigations or inquiries, including notes

16   and other records of oral presentations that set forth such findings."  See Gallenberg Decl. Ex. B,

17   Schedule A at 6.  And, Subpoena Request No. 4 seeks from the Special Committee's attorneys

18   "[a]ll Documents created by You . . . during any investigation or inquiry conducted by You into

19   any type of wrongdoing whatsoever by LDK, or by any of its current or former directors,

20   officers, employees or agents, which documents contain any information related to such

21   investigation."  Id.

22        The requested categories of documents include communications between the Special

23   Committee's counsel, Simpson Thacher, and its client, the Special Committee.  Written or oral

24   communications between Simpson Thacher and the Special Committee constitute privileged

25   communications between an attorney and his or her client.  See, e.g., SEC v. Brady, 238 F.R.D.

26   429, 439 (N.D. Tex. 2006) (holding that a special committee report and presentation of that

27

28   [2] While Document Request No. 3 and Subpoena Request No. 3 do not appear to explicitly seek
attorney-client communications, they do seek attorney work product, and will be addressed
below.  See infra Section B.2.

1   report by counsel to the committee qualify for the attorney-client privilege as both are, "in

2   essence, a written communication and the equivalent of a confidential communication between

3   an attorney and his client"). At a minimum, Document Requests Nos. 1 and 2, and Subpoena

4   Request Nos. 1, 2, and 4-6, seek documents that, to the extent they were shared with or presented

5   to the Special Committee, are protected by the attorney-client privilege. See Gallenberg Decl.

6   Ex. A, Ex. B. Each of these Subpoena Requests seeks documents from Simpson Thacher

7   relating to the investigation, such as documents evidencing Simpson Thacher's "findings,"

8   (Subpoena Request 1), or even more broadly, all documents created by Simpson Thacher during

9   the investigation (Subpoena Request 4). To the extent that they were presented to the Special

10  Committee, these records are clearly privileged attorney-client communications, and are not

11  discoverable. The same is true of Document Requests Nos. 1 and 2, as both seek documents

12  related to "any investigation or inquiry," whether conducted by LDK or others, which

13  presumably includes Simpson Thacher and its investigatory materials. Therefore, to the extent

14  that those requests seek documents that were created or prepared by Simpson Thacher and

15  presented to the Special Committee, those documents are privileged and not discoverable.

16      For these reasons, the Court should issue a protective order protecting from discovery any

17  documents evidencing communications relating to the Special Committee investigation by or

18  between Simpson Thacher, the Special Committee, LDK's auditors, or LDK directors or

19  employees.

20      2.   Many of the Documents Requested Are Nondiscoverable Work Product

21      Plaintiff's requests relating to LDK's Special Committee investigation are also precluded

22  from discovery by the attorney work product doctrine. The work product doctrine is codified at

23  FRCP 26(b)(3), and specifically safeguards "written statements, private memoranda and personal

24  recollections prepared or formed by an adverse party's counsel in the course of his legal duties."

25  Hickman v. Taylor, 329 U.S. 495, 509-12 (1947). This protection is afforded to both the factual

26  and opinion work product of an attorney or an attorney's agent or representative. See In re

27  Veeco Instruments, Inc. Sec. Litig., No. 05-MD-01695 (CM)(GAY), 2007 U.S. Dist. LEXIS

28  16922, at *10-11 (S.D.N.Y. Mar. 9, 2007) (citing United States v. Adlman, 134 F.3d 1194, 1197

1 | (2d Cir. 1998); <u>United States v. Nobles</u>, 422 U.S. 225, 238 (1975)).

2 |       The protection of attorney work product is "essential to an orderly working of legal

3 | procedure," (<u>Hickman</u>, 329 U.S. at 512), but it is not dependent upon the commencement of

4 | actual litigation.  <u>See</u>, <u>e.g.</u>, <u>In re Grand Jury Subpoena (Torf)</u>, 357 F.3d 900, 910 (9th Cir. 2004).

5 | Indeed, "[c]ourts and legislatures have consistently found that these benefits are so important that

6 | they outweigh society's competing interest in revealing all material facts relevant to the

7 | resolution of a dispute."  <u>Saito v. McKesson HBOC, Inc.</u>, No. 18553, 2002 Del. Ch. LEXIS 125,

8 | at *11 (Del. Ch. Oct. 25, 2002).

9 |       LDK formed its Special Committee of the Audit Committee to investigate the purported

10 | inventory deficiencies in response to Situ's allegations, which were publicly distributed,

11 | including being sent to the SEC and Public Company Accounting Oversight Board.

12 | Accordingly, all documents prepared or created during the course of the investigation led by

13 | Simpson Thacher are protected under the work product doctrine.

14 |       Courts have repeatedly held that documents prepared by outside law firms related to a

15 | company's internal investigation constitute protected work product.  <u>See</u>, <u>e.g.</u>, <u>Upjohn</u>, 449 U.S.

16 | at 398-402 (holding that to the extent documents created as part of an internal investigation do

17 | not already contain protected attorney-client communications, they reveal the attorneys' mental

18 | process, and thus are protected work product); <u>In re McKesson HBOC, Inc. Secs. Litig.</u>, 2005

19 | U.S. Dist. LEXIS 7098, at *15-16, 28-29 (N.D. Cal. Mar. 31, 2005) (noting that the parties did

20 | not even dispute that audit committee report and all documents related to its, and its outside

21 | counsel's and auditors' internal investigation were subject to attorney work product protection);

22 | <u>In re Veeco Instruments, Inc. Secs. Litig.</u>, No. 05 MD 1695(CM)(GAY), 2007 U.S. Dist. LEXIS

23 | 5274, at *4-8 (S.D.N.Y. Jan. 24, 2007) (holding that all documents relating to internal

24 | investigation were "prepared in the anticipation of litigation" and thus protected attorney work

25 | product) (citations omitted), <u>aff'd</u>, 2007 U.S. Dist. LEXIS 16922.

26 |       Here, Simpson Thacher was hired by the Special Committee to investigate Situ's

27 | allegations.  <u>See</u> Kreissman Decl. at ¶ 3.  The materials it prepared during that investigation are

28 | protected from discovery by the work product doctrine.  This includes, for example, any notes or

1    memoranda created by an attorney or his/her agent that contain mental impressions, legal

2    conclusions, or opinions.  See Brady, 238 F.R.D. at 442.  Indeed, this protection extends even to

3    records "specifically selected and compiled by a party or its representative"; they too constitute

4    "opinion work product because the mere acknowledgment of their selection would reveal mental

5    impressions concerning the potential litigation." Id. (citing Petersen v. Douglas County Bank &

6    Trust Co., 967 F.2d 1186, 1189 (8th Cir. 1992)); see also Plumbers & Pipefitters Local 572

7    Pension Fund v. Cisco Sys., No. C 01-20418 JW, 2005 U.S. Dist. LEXIS 43648, at *22 (N.D.

8    Cal. June 21, 2005) ("[T]he selection and compilation of documents by counsel . . . may reveal

9    an attorney's thought processes and fall within the protection of the work product doctrine.")

10   (citations omitted).

11         Seeking to circumvent the work-product and attorney-client privilege, Plaintiff's

12   Document Subpoena to Simpson Thacher demands documents that inherently include Simpson

13   Thacher's discussions with its client and its mental impressions and judgments, developed to

14   give guidance to its client.  See, e.g., Gallenberg Decl. Ex. B, Schedule A at 6 (Subpoena

15   Request No. 1 seeking "All reports . . . and any other Documents evidencing the findings of any

16   investigation or inquiry into any type of possible wrongdoing whatsoever by LDK," and

17   Subpoena Request No. 3 seeking "All documents collected or reviewed in the course of any

18   investigation or inquiry" into the same).  The document requests to LDK similarly include

19   additional circuitous attempts to gain access to Simpson Thacher's work product, by putting the

20   members of the Special Committee in the untenable position of having to protect the privileged

21   nature of its outside counsel's work product and communications.  See Gallenberg Decl. Ex. A at

22   7-8 (Document Request No. 1-3, seeking documents relating to the investigation that were

23   collected or created "by LDK employees or by others," which necessarily includes Simpson

24   Thacher attorneys).  Plaintiff is not entitled to eviscerate the work product protection associated

25   with these records.

26         Thus, the Court should grant a protective order excluding from discovery all documents

27   related to the Special Committee investigation that were created, prepared, collected, or

28   compiled by Simpson Thacher, or at its behest, and any other documents shielded from discovery

1  by the attorney work product doctrine.

2          C.        <u>Plaintiff's Requests Seek Irrelevant Documents And Are Overly Broad And</u>

3                  <u>Unduly Burdensome</u>

4        In addition to seeking documents protected from discovery by the attorney-client

5  privileged and/or the work product doctrine, Plaintiff's discovery requests are overly broad,

6  unduly burdensome, and not reasonably calculated to lead to the discovery of admissible

7  evidence.  Fed. R. Civ. P. 26(b)(1).  These requests should be curtailed because they seek

8  documents, which if they exist at all, are from long before the alleged wrongdoing.  Under FRCP

9  26(b)(1) parties may only obtain discovery that is "<u>relevant</u> to any party's claim or defense."

10  Moreover, FRCP 26(c)(1) allows a party to seek a protective order to "forbid the disclosure or

11  discovery" or "specify terms, including time and place, for the disclosure or discovery" to avoid

12  "annoyance, embarrassment, oppression, or undue burden or expense."  This Court has observed

13  also that "necessary restrictions must be imposed on non-party discovery to 'protect third parties

14  from harassment, inconvenience, or disclosure of confidential documents.'"  <u>Beinin v. Ctr. for</u>

15  <u>the Study of Popular Culture</u>, No. C 06-02298 JW, 2007 U.S. Dist. LEXIS 47546, at *16 (N.D.

16  Cal. June 20, 2007)  (citing <u>Dart Indus. Co. v. Westwood Chem. Co.</u>, 649 F.2d 646, 649 (9th Cir.

17  1980)).

18        The discovery propounded by Plaintiff here calls for "responsive Documents that were

19  created, modified or reviewed on or after June 1, 2004."  <u>See</u> Gallenberg Decl. Ex. A at 2, Ex. B,

20  Schedule A at 2.  This instruction is absurd.  Given the limited timeline of Plaintiff's allegations,

21  a request for documents reaching back to mid-2004 is impermissibly broad and unduly

22  burdensome because it necessarily encompasses irrelevant documents months, if not years,

23  before the operative facts.  Indeed, Plaintiff himself defines the "Class Period" as from June 1,

24  2007, through October 7, 2007, and alleges that <u>during the Class Period</u> the defendants

25  manipulated LDK's inventory and financials.  <u>See</u> Compl. at ¶¶ 2, 3 (emphasis added).  Because

26  Plaintiff alleges only inventory accounting discrepancies beginning on June 1, 2007, it is highly

27  improbable that documents existed at any meaningful time before this date, let alone as far back

28  as June 1, 2004.  Indeed, Plaintiff admits that LDK "only started operations in 2006."  <u>Id.</u> at ¶ 3.

1   Second, the earliest purportedly false statement alleged by Plaintiff was an allegedly false

2   statement contained in the Company's June 1, 2007, prospectus.  See Compl. at ¶¶ 32, 85-86.  It

3   is similarly improbable that any documents created almost three years before the first false

4   statement alleged by Plaintiff would be relevant to any of Plaintiff's claims.

5          Therefore, in order to restrict the requests to only relevant documents and to relieve LDK

6   and Simpson Thacher from undue burden, the Court should limit the time period of Plaintiff's

7   requests to one that encompasses the alleged false statements and purported inventory

8   discrepancies.  In other words, Defendants should only be required to produce relevant records,

9   if any, created during Plaintiff's proposed Class Period of June 1, 2007, through October 7, 2007.

10  **IV.    CONCLUSION**

11         For the foregoing reasons, the Court should grant Defendants motion for protective order.

12

13  Dated:  August 21, 2008                    Respectfully submitted,
                                                LATHAM & WATKINS LLP

14

15                                             By _____/s/_____
                                                      Raymond A. Gallenberg

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## **CERTIFICATE OF CONFERENCE**

2      I hereby certify that the parties conferred in good faith by telephone on several occasions

3 and in writing on July 8, 2008 and July 10, 2008, regarding the issues set forth in Defendants'

4 motion.  The parties were unable to resolve the dispute prior to submitting this issue to the Court

5 for resolution.

6                                                **/s/**

7                                       Raymond A. Gallenberg

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28