1    COHEN, MILSTEIN, HAUSFELD
        & TOLL, P.L.L.C.
2        Herbert E. Milstein
         Steven J. Toll
3        Mark S. Willis
         Joshua S. Devore
4        Mathew B. Kaplan
         hmilstein@cmht.com
5    1100 New York Avenue, N.W.
     West Tower, Suite 500
6    Washington, DC  20005-3964
     Telephone: (202) 408-4600
7    Facsimile: (202) 408-4699

8    COHEN, MILSTEIN, HAUSFELD
        & TOLL, P.L.L.C.
9        Michael P. Lehman
         mlehman@cmht.com
10   One Embarcadero Center
     Suite 2440
11   San Francisco, CA 94111
     Telephone: (415) 229-2080
12   Facsimile: (415) 986-3643

13   Lead Counsel for the Proposed Class

14                      UNITED STATES DISTRICT COURT

15                      NORTHERN DISTRICT OF CALIFORNIA

16   _____

17   In re LDK SOLAR SECURITIES          Master File No. C-07-05182-WHA
     LITIGATION
18                                        CLASS ACTION

19   _____     **LEAD PLAINTIFF'S NOTICE OF
                                          MOTION AND MOTION TO CERTIFY
20   This Document Relates To:            CLASS**

21       ALL ACTIONS.                     Judge:      Hon. William H. Alsup
                                          Date:       November 13, 2008
22   _____     Time:       8:00 a.m.
                                          Courtroom:  9, 19th Floor
23

24

25

26

27

28

COHEN, MILSTEIN,
HAUSFELD & TOLL
    P.L.L.C.
 ATTORNEYS AT LAW

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................................. ii

NOTICE OF MOTION AND MOTION ................................................................................ 1

STATEMENT OF ISSUES TO BE DECIDED ................................................................... 1

MEMORANDUM OF POINTS AND AUTHORITIES ....................................................... 1

I.     INTRODUCTION .................................................................................................. 1

II.    STATEMENT OF FACTS ..................................................................................... 2

III.   ARGUMENT ......................................................................................................... 2

   A.   Class Certification Is Appropriate Under Fed. R. Civ. P. 23(a) ........................... 4

      1.   Numerosity: The Class Is Sufficiently Numerous That Joinder Is Impracticable ......... 5

      2.   Commonality: Common Questions Of Law And Fact Are Shared Among The
           Class .................................................................................................................... 6

      3.   Typicality: The Claims Of The Representative Plaintiff Are Typical Of The
           Other Class Member Claims ............................................................................... 7

      4.   Adequacy: The Representative Plaintiffs Will Fairly And Adequately Protect
           The Interests Of The Class .................................................................................. 9

   B.   Class Certification Is Appropriate Under Rule 23(b)(3) ...................................... 11

      1.   Common Questions Predominate ...................................................................... 12

      2.   A Class Action Is The Superior Method For The Fair And Efficient
           Adjudication Of This Controversy .................................................................... 18

IV.    CONCLUSION .................................................................................................... 19

COHEN, MILSTEIN,
HAUSFELD & TOLL
P.L.L.C.
ATTORNEYS AT LAW

LEAD PLAINTIFF'S NOTICE OF MOTION AND MOTION TO CERTIFY CLASS
MASTER FILE NO. C-07-5182-WHA

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## TABLE OF AUTHORITIES

CASES                                                                                              Page

Amchem Prods., Inc. v. Windsor,
    521 U.S. 591 (1997) ...................................................................................................... passim

Ballard v. Equifax Check Services, Inc.,
    186 F.R.D. 589 (E.D. Cal. 1995) ............................................................................... 7

Basic Inc. v. Levinson,
    485 U.S. 224 (1988) ................................................................................................... 3, 13

Bell v. Ascendant Solutions, Inc.,
    422 F.3d 307 (5th Cir. 2005) ..................................................................................... 14, 17

Biancur v. Hickey,
    No. C 95-2145 FMS, 1997 WL 9857 (N.D. Cal. Jan. 7, 1997) ................................ 4

Blackie v. Barrack,
    524 F.2d 891 (9th Cir. 1975), cert. denied 429 U.S. 816 (1976) .............................. 3, 4, 5, 7

Cammer v. Bloom,
    711 F. Supp. 1264 (D.N.J. 1989) .............................................................................. 14, 15, 16, 18

Consolidated Rail Corp. v. Town of Hyde Park,
    47 F.3d 473 (2d Cir.1995)......................................................................................... 5

Deposit Guar. Nat'l Bank v. Roper,
    445 U.S. 326 (1980) .................................................................................................. 12

Deutschman v. Beneficial Corp.,
    132 F.R.D. 359 (D. Del. 1990)................................................................................... 10

Dukes v. Wal-Mart, Inc.,
    509 F.3d 1168 (9th Cir. 2007) ................................................................................... 4, 14

Eggleston v. Chicago Journeyman Plumbers Local Union 130,
    657 F.2d 890 (7th Cir. 1981)...................................................................................... 9

Eisen v. Carlisle & Jacquelin,
    417 U.S. 156 (1974) .................................................................................................. 4, 14

Endo v. Albertine,
    147 F.R.D. 164 (N.D. Ill. 1993) ................................................................................ 10

Freudenberg v. E*Trade Financial Corp.,
    No. 07 Civ. 8538, 2008 WL 2876373 (S.D.N.Y. July 16, 2008).............................. 10

General Telephone Co. of Southwest v. Falcon,
    457 U.S. 147 (1982) .................................................................................................. 4, 7

COHEN, MILSTEIN,
HAUSFELD & TOLL
P.L.L.C.
ATTORNEYS AT LAW

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1998).........................................................................6, 7, 12

*Harriss v. Pan Am. World Airways*,
   74 F.R.D. 24 (N.D. Cal. 1977) ..................................................................................9

*Hochschuler v. G.D. Searle & Co.*,
   82 F.R.D. 339 (N.D. Ill. 1978) ................................................................................12

*Hohmann v. Packard Instr. Co.*,
   399 F.2d 711 (7th Cir. 1968)...................................................................................12

*In re Accredo Health, Inc. Sec. Litig.*,
   No. 03-2216 DP, 2006 WL 1716910 (W.D. Tenn. Apr. 19, 2006) ........................14

*In re Enron Corp. Sec. Litig.*,
   206 F.R.D. 427 (S.D. Tex. 2002) ............................................................................10

*In re Magma Design Automation, Inc. Sec. Litig.*,
   No. C 05-2394 CRB, 2007 WL 2344992 (N.D. Cal. Aug. 16, 2007)...................2, 3

*In re Micron Techs., Inc. Sec., Litig.*,
   247 F.R.D. 627 (D. Idaho 2007) .............................................................................14

*In re Oxford Health Plans, Inc. Sec. Lit.*,
   199 F.R.D. 119 (S.D.N.Y. 2001) ............................................................................10

*In re PHP Healthcare Corp.*,
   128 Fed. Appx. 839, 2005 WL 488785 (3d. Cir. Mar. 5, 2005) ............................13

*In re Potash Antitrust Litig.*,
   159 F.R.D. 682 (D. Minn. 1995).............................................................................13

*In re Priceline.com Inc.*,
   236 F.R.D. 89 (D. Conn. 2006) ...............................................................................10

*In re Sepracor Inc.*,
   233 F.R.D. 52 (D. Mass. 2005) ...............................................................................10

*In re THQ, Inc. Sec. Litig.*,
   No. CV 00-1783AHM(EX), 2002 WL 1832145 (C.D. Cal. Mar. 22, 2002) .................. passim

*In re VMS Sec. Litig.*,
   136 F.R.D. 466 (N.D. Ill. 1991) ................................................................................4

*Krogman v. Sterritt*,
   202 F.R.D. 467 (N.D. Tex. 2001) ...........................................................................17

*La Mar v. H & B Novelty & Loan Co.*,
   489 F.2d 461 (9th Cir. 1973)..............................................................................11, 12

COHEN, MILSTEIN,
HAUSFELD & TOLL
P.L.L.C.
ATTORNEYS AT LAW

LEAD PLAINTIFF'S NOTICE OF MOTION AND MOTION TO CERTIFY CLASS
MASTER FILE NO. C-07-5182-WHA                                                    - iii -

*Moore v. Hughes Helicopters, Inc.*,
　708 F.2d 475 (9th Cir. 1983) .................................................................................. 4

*Moskowitz v. Lopp*,
　128 F.R.D. 624 (E.D. Pa. 1989) ............................................................................ 10

*Oscar Private Equity Investments v. Allegiance Telecom, Inc.*,
　487 F.3d 261 (5th Cir. 2007) ................................................................................. 14

*Patrick v. Marshall*,
　460 F. Supp. 23 (N.D. Cal. 1978) ........................................................................... 5

*Phillips Petroleum Co. v. Shutts*,
　472 U.S. 797 (1985) .............................................................................................. 12

*Ridings v. Canadian Imperial Bank of Commerce Trust Co. (Bahamas)*,
　94 F.R.D. 147 (N.D. Ill. 1982) .............................................................................. 12

*Rodriguez v. Carlson*,
　166 F.R.D. 465 (E.D. Wash. 1996) ......................................................................... 6

*Schlagel v. Learning Tree Int'l.*,
　No. CV 98-6384, 1999 WL 672306 (C.D. Cal. Feb. 23, 1999) ......................... 8, 9

*Schlanger v. Four-Phase Systems Inc.*,
　555 F. Supp. 535 (S.D.N.Y. 1982) ........................................................................ 13

*Schneider v. Traweek*,
　No. CV 88-0905 RG (KX), 1990 WL 132716 (C.D. Cal. July 31, 1990) ........... 4, 6

*Smith v. Univ. of Wash. Law School*,
　2 F. Supp. 2d 1324 (W.D. Wash. 1998) .................................................................. 8

*Tolan v. Computervision Corp.*,
　696 F. Supp. 771 (D. Mass. 1988) ........................................................................ 14

*Town of New Castle v. Yonkers Contracting Co., Inc.*,
　131 F.R.D. 38 (S.D.N.Y. 1990) .............................................................................. 5

*Unger v. Amedisys, Inc.*,
　401 F.3d 316 (5th Cir. 2005) ..................................................................... 14, 15, 17

*Valentino v. Carter-Wallace, Inc.*,
　97 F.3d 1227 (9th Cir. 1996) ................................................................................ 19

*Villereal v. Snow*,
　No. 95-C-2484, 1996 U.S. Dist. LEXIS 667 (N.D. Ill Jan. 19, 1996) ................. 12

*Weinberger v. Thornton*,
　114 F.R.D. 599 (S.D. Cal. 1986) ............................................................................ 5

COHEN, MILSTEIN,
HAUSFELD & TOLL
P.L.L.C.
ATTORNEYS AT LAW

LEAD PLAINTIFF'S NOTICE OF MOTION AND MOTION TO CERTIFY CLASS
MASTER FILE NO. C-07-5182-WHA
- iv -

*Welling v. Alexy*,
    155 F.R.D. 654 (N.D. Cal. 1994) ........................................................................ 3, 7

*Yamner v. Boich*,
    No. C-92-20597 RPA, 1994 WL 514035 (N.D. Cal. Sept. 15, 1994) ........................ 4, 7, 19

*Yslava v. Hughes Aircraft Co.*,
    845 F. Supp. 705 (D. Ariz. 1993) ........................................................................ 6

*Zinser v. Accufix Research Inst., Inc.*,
    253 F.3d 1180 (9th Cir. 2001) .............................................................................. 4

RULES

Federal Rules of Civil Procedure 23 ...................................................................... passim

OTHER AUTHORITIES

Alba Conte & Herbert Newberg, *Newberg on Class Actions* (4th ed. 2005).......................... 5, 6

Bromberg & Lowenfels, *Securities Fraugd and Commodities Fraud* (Aug. 1988) ................... 18

Wright, Miller & Kane, *Federal Practice and Procedure* (2005) .................................... 5

COHEN, MILSTEIN,
HAUSFELD & TOLL
P.L.L.C.
ATTORNEYS AT LAW

LEAD PLAINTIFF'S NOTICE OF MOTION AND MOTION TO CERTIFY CLASS
MASTER FILE NO. C-07-5182-WHA

- v -

**NOTICE OF MOTION AND MOTION**

PLEASE TAKE NOTICE that Lead Plaintiff Shahpour Javidzad hereby moves this Court for an order certifying the above-captioned consolidated action (the "Action") as a Class Action pursuant to Rule 23 of the Federal Rules of Civil Procedure, appointing him as the Class Representative, and approving his counsel as Class Counsel.  The Motion is set for hearing at 8:00 a.m. on November 13, 2008, in the courtroom of the Honorable William H. Alsup, United States District Court for the Northern District of California, 450 Golden Gate Ave., San Francisco, California.

**STATEMENT OF ISSUES TO BE DECIDED**

1.    Whether the Action should be certified as a Class Action pursuant to Rule 23 of the Federal Rules of Civil Procedure.

2.    Whether Lead Plaintiff Shahpour Javidzad should be appointed as the Class Representative.

3.    Whether Lead Counsel Cohen, Milstein, Hausfeld & Toll, P.L.L.C. should be appointed as Class Counsel.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.    INTRODUCTION**

Lead Plaintiff in the above-captioned action hereby moves this Court for an order certifying pursuant to Rule 23 of the Federal Rules of Civil Procedure a class (the "Class") consisting of all persons who (a) purchased LDK Solar Co., Ltd. ("LDK" or the "Company") American Depository Shares ("ADSs"); (b) purchased call options for LDK ADSs; or (c) sold put options for LDK ADSs during the Class Period defined below, and were damaged thereby. Excluded from the Class are the Defendants and the other current and former officers and directors of the Company, their immediate families, their heirs, successors, or assigns and any entity controlled by any such person.  The Class Period is June 1, 2007 through October 7, 2007.

As demonstrated below, this Action, like most securities fraud actions, is perfectly suited for treatment on a class-wide basis.  The Class is so numerous such that joinder of all the members would be impracticable, common questions of law and fact dominate the case, and the

COHEN, MILSTEIN,
HAUSFELD & TOLL
P.L.L.C.
ATTORNEYS AT LAW

LEAD PLAINTIFF'S NOTICE OF MOTION AND MOTION TO CERTIFY CLASS
MASTER FILE NO. C-07-5182-WHA                                                    - 1 -

1    proposed class representative has typical claims of the Class and is an adequate and appropriate

2    representative therefor.  Lead Plaintiff and all members of the proposed Class are similarly

3    situated.  Indeed, all of the Class members possess claims that are, in all material respects,

4    identical to those asserted by Lead Plaintiff in this Action, and all were commonly affected by

5    materially false and misleading statements made by the Defendants.  As such, Lead Plaintiff

6    respectfully requests the Court enter an order certifying the proposed Class, appointing him the

7    Class Representative, and appointing Lead Counsel as counsel for the Class.

8    ## II.    <u>STATEMENT OF FACTS</u>

9           The facts underlying this action have been set forth in detail in the Court's prior opinions

10    in this matter and should be familiar at this point in the litigation.  (*See* Order Denying

11    Defendants' Motion to Dismiss at 3-7, May 29, 2008, Dkt. No. 85 ("May 29 Order"); Order

12    Denying Motion for Leave to File Motion For Reconsideration, July 14, 2008, Dkt. No. 107.)  In

13    brief, LDK and its executives are alleged to have committed a massive securities fraud by

14    inflating the value – and even the mere existence – of the Company's inventory of raw materials,

15    and understating the costs of producing LDK's products.  (May 29 Order, at 4-5).  This fraud was

16    perpetrated by the dissemination of false and misleading statements both in documents filed with

17    the United States Securities and Exchange Commission and signed by the individual defendants,

18    and in public statements made by the Company's executives and "management team."  *Id.* at 6-8.

19    The uniform misrepresentations made to the entire market for LDK securities had the effect of

20    artificially inflating the market price for LDK's American depository shares ("ADSs"), and hence

21    inflating the prices of its call options and decreasing the prices of its put options.  (Declaration of

22    Jane D. Nettesheim, filed herewith ("Nettesheim Decl."), ¶ 76.)  When the truth about the

23    Company's inventory began to emerge, the price of LDK's ADSs dropped dramatically, causing

24    substantial losses to LDK's investors.  *Id.* ¶¶ 86, 91.

25    ## III.    <u>ARGUMENT</u>

26           Securities fraud actions are prime candidates for class action treatment. *See Amchem*

27    *Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997); *In re Magma Design Automation, Inc. Sec.*

28    *Litig.*, No. C 05-2394 CRB, 2007 WL 2344992, *1 (N.D. Cal. Aug. 16, 2007) ("As in almost all

Cohen, Milstein,
Hausfeld & Toll
P.L.L.C.
Attorneys At Law

LEAD PLAINTIFF'S NOTICE OF MOTION AND MOTION TO CERTIFY CLASS
MASTER FILE NO. C-07-5182-WHA                                                    - 2 -

1   lawsuits by shareholders of public companies, the investors in this case easily satisfy the

2   requirements of Rule 23.").  This Action, like other securities fraud class actions, alleges that the

3   Defendants perpetrated a "fraud on the market" – *i.e.*, that the Defendants misled the entire

4   market for the Company's securities, and that all persons who purchased the securities during the

5   period when the misrepresentations inflated the market price were damaged in the same way.

6   Such a fraud on the market gives rise to a presumption that the purchasers of LDK securities

7   uniformly relied on the market price being accurate and based on all relevant information that

8   they were entitled to receive, and not affected by false or concealed information which would

9   affect that price. *See generally Basic Inc. v. Levinson,* 485 U.S. 224 (1988); *Blackie v. Barrack*,

10   524 F.2d 891 (9th Cir. 1975), *cert. denied* 429 U.S. 816 (1976).  However, each individual

11   purchaser may not have suffered large enough damages to make the costs and expenses of a

12   complex lawsuit worthwhile.  Thus, courts consistently recognize the utility of, the necessity for,

13   and the appropriateness of class actions to remedy violations of the federal securities laws under

14   such circumstances.  *See, e.g., In re THQ, Inc. Sec. Litig.*, No. CV 00-1783AHM(EX), 2002 WL

15   1832145, at *2 (C.D. Cal. Mar. 22, 2002) ("[C]lass actions have proved useful 'where a large

16   number of purchasers or holders of securities claim to have been defrauded by a common course

17   of dealing on the part of the defendants.'" (quoting *Harris v. Palm Springs Alpine Estates, Inc.*,

18   329 F.2d 909, 913 (9th Cir.1964)); *Blackie,* 524 F.2d at 902 (noting that the availability of the

19   class action to redress frauds perpetrated on numerous persons by the use of similar

20   misrepresentations has been "consistently upheld.").

21         In deciding a motion for class certification, the Court must assume the truth of the

22   substantive allegations of the Complaint and it is inappropriate for the Court to conduct an inquiry

23   into the merits of Plaintiff's claims.  *Magma Design,* 2007 WL 2344992, at *1; *Welling v. Alexy*,

24   155 F.R.D. 654, 656 (N.D. Cal. 1994).  On the contrary, the Supreme Court long ago prohibited

25   such an inquiry into the merits at the class certification stage:

26             [The Court has no] authority to conduct a preliminary inquiry into
                the merits of a suit in order to determine whether it may be

27             maintained as a class action.

28                    * * *

1
2
3

> In determining the propriety of a class action, the question is not whether plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met.

*Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177-78 (1974) (citation omitted); *see also Blackie*, 524 F.2d at 901 n.17; *Moore v. Hughes Helicopters, Inc.*, 708 F.2d 475, 480 (9th Cir. 1983).

Thus, "[o]n a motion for class certification, the court's inquiry is limited to whether the requirements of Rule 23 have been satisfied." *In re VMS Sec. Litig.*, 136 F.R.D. 466, 473 (N.D. Ill. 1991). The Court must be "rigorous" in its examination as to whether the elements of Rule 23 have been satisfied. *Dukes v. Wal-Mart, Inc.,* 509 F.3d 1168, 1178 n.2 (9th Cir. 2007) (citing *General Telephone Co. of Southwest v. Falcon,* 457 U.S. 147, 161 (1982); *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 509 (9th Cir.1992)). Nonetheless, "the law in the Ninth Circuit is very well established that the requirements of Rule 23 should be liberally construed in favor of class action cases brought under the federal securities laws." *THQ*, 2002 WL 1832145, at *2 (quoting *Schneider v. Traweek*, No. CV 88-0905 RG (KX), 1990 WL 132716, at *6 (C.D. Cal. July 31, 1990) (citing *Blackie*, 524 F.2d at 902; *Yamner v. Boich*, No. C-92-20597 RPA, 1994 WL 514035 (N.D. Cal. Sept. 15, 1994) ("The Ninth Circuit favors a liberal use of class actions to enforce federal securities laws.") (citing *Arthur Young & Co. v. United States District Ct.*, 549 F.2d 686 (9th Cir.1976), *cert. denied*, 434 U.S. 829 (1977)))). Within these liberal standards, Lead Plaintiff need only satisfy each of the four requirements of Rule 23(a), and one of the three subsections of Rule 23(b). As demonstrated below, these requirements are easily satisfied here.

A.      **Class Certification Is Appropriate Under Fed. R. Civ. P. 23(a)**

In determining whether to certify a class action, a court must first determine whether the numerosity, commonality, typicality and adequacy prerequisites of Rule 23(a) are satisfied. Fed. R. Civ. P. 23(a)(1)-(4); *see also Amchem*, 521 U.S. at 613; *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1186 (9th Cir. 2001). As shown below, Lead Plaintiff and the Class satisfy each of Rule 23(a)'s four prerequisites for certifying and proceeding with a class action: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation. *See Amchem*, 521 U.S. 591; *see also Biancur v. Hickey*, No. C 95-2145 FMS, 1997 WL 9857, at *2

1   (N.D. Cal. Jan. 7, 1997) ("The party seeking to maintain the action as a class suit must make a

2   *prima facie* showing of each of the four certification prerequisites and must demonstrate that

3   appropriate grounds for a class action exist." (citing *Blackie*, 524 F.2d at 901)). If the

4   requirements of Rule 23(a) are met – which they are – the Court must then decide whether one or

5   more of the three criteria set forth in Rule 23(b) are satisfied. *See Amchem*, 521 U.S. at 614.

           1.     *Numerosity: The Class Is Sufficiently Numerous That Joinder Is*
                   *Impracticable*

8          Rule 23(a) first requires that the proposed class be so numerous that joinder of all

9   members is difficult or impracticable. Fed. R. Civ. P. 23(a)(1). "[I]n general, courts have held

10   that joinder is practicable where there are less than 25 parties, and impracticable where there are

11   more than 35." *In re THQ*, 2002 WL 1832145, at *3.[1] Here, joinder is certainly impracticable.

12          Joinder is presumed impracticable when a proposed class numbers in the hundreds. *See*

13   Alba Conte & Herbert Newberg, 1 *Newberg on Class Actions*, §3.5 (4th ed. 2005) ("certainly,

14   when the class is very large, for example, numbering in the hundreds, joinder will be

15   impracticable").[2] While the precise number of Class members is unknown, that number is

16   certainly in the thousands, or, more likely, tens of thousands.[3] Approximately 6 million LDK

17   ADSs were traded weekly during the Class Period, and more than 160 million shares were traded

18   during the more-than-four-month Class Period. (*See*. Nettesheim Decl. ¶¶ 21-22.) As such,

19   joinder of all purchasers of LDK's securities during the Class Period would be impracticable, and

20   the proposed Class easily satisfies the numerosity requirement of Rule 23(a).

---

22        [1]     *See also* Wright, Miller & Kane, *Federal Practice and Procedure: Civil* 3d § 1762
23   (2005); *Patrick v. Marshall*, 460 F. Supp. 23, 26 (N.D. Cal. 1978); *Town of New Castle v.
Yonkers Contracting Co., Inc.*, 131 F.R.D. 38, 40 (S.D.N.Y. 1990); *Consolidated Rail Corp. v.
24   Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir.1995).

25        [2]     *See also Newberg*, §3.5 ("In light of the prevailing precedent, the difficulty
inherent in joining as few as [forty] class members should raise a presumption that joinder is
26   impracticable, and the plaintiff whose class is that large or larger should meet the test of Rule
23(a)(1) on that fact alone.").

27        [3]     An approximate statement of the size of the Class is sufficient in a motion for class
certification. *See Newberg* §3.5 ("a good faith estimate should be sufficient when the number of
28   class members is not readily ascertainable"); *Weinberger v. Thornton*, 114 F.R.D. 599, 602 n.1
(S.D. Cal. 1986).

COHEN, MILSTEIN,
HAUSFELD & TOLL
P.L.L.C.
ATTORNEYS AT LAW

LEAD PLAINTIFF'S NOTICE OF MOTION AND MOTION TO CERTIFY CLASS
MASTER FILE NO. C-07-5182-WHA     - 5 -

2.      *Commonality: Common Questions Of Law And Fact Are Shared Among The Class*

Rule 23(a)(2) requires that there be "questions of law or fact common to [the members of] the class." Fed. R. Civ. P. 23(a)(2). Like all the requirements of Rule 23(a), the commonality requirement is to be construed liberally: "[T]hose courts that have focused on Rule 23(a)(2) have given it a permissive application so that common questions have been found to exist in a wide range of contexts. The Rule does not require all questions of law and fact to be common." *Rodriguez v. Carlson*, 166 F.R.D. 465, 472 (E.D. Wash. 1996); *see also Schneider*, 1990 WL 132716, at *6.

It is well established that the commonality requirement is satisfied if the claims of the prospective class share even one central question of fact or law. *See, e.g.*, *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019-1020 (9th Cir. 1998); *Newberg*, § 3.10. "All questions of fact and law need not be common to satisfy the rule. The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class." *Hanlon*, 150 F.3d at 1019; *see also Yslava v. Hughes Aircraft Co.*, 845 F. Supp. 705, 712 (D. Ariz. 1993) ("A common question is one which arises from a "common nucleus of operative facts" regardless of whether the underlying facts fluctuate over the class period and vary as to individual claimants."(quoting *In Re Asbestos School Litig.*, 104 F.R.D. 422, 429 (E.D. Pa. 1984))).

This Action will need to address a series of questions that will affect all members of the Class. For example, common questions of law and fact exist as to:

(a)     Whether the federal securities laws were violated by Defendants' acts as alleged in the Complaint;

(b)     Whether Defendants misstated the Company's financial results in documents, press releases, public statements, and filings with the SEC, in direct contravention of GAAP;

(c)     Whether the documents, press releases and public statements made, authorized and/or approved by Defendants contained material misrepresentations or omitted to state material information concerning the business and finances of LDK;

(d)     Whether Defendants acted with the requisite state of mind in misrepresenting material facts;

COHEN, MILSTEIN,
HAUSFELD & TOLL
P.L.L.C.
ATTORNEYS AT LAW

LEAD PLAINTIFF'S NOTICE OF MOTION AND MOTION TO CERTIFY CLASS
MASTER FILE NO. C-07-5182-WHA                                                      - 6 -

(e)     Whether the market price of LDK securities during the Class Period was artificially inflated due to the material omissions and misrepresentations described in the Complaint; and

(f)     Whether the members of the Class have sustained damages and, if so, the appropriate measure thereof.

*Cf. Yamner*, 1994 WL 514035, at *3-4 ("These are the standard questions upon which federal courts have based the grant of class certification in numerous securities actions.").

Underlying these basic common questions is a common nucleus of operative facts pertaining to Defendants' scheme to make LDK's business appear to be much more profitable than was actually the case. These central fact issues and their legal consequences are common to all Class members. When, as in this case, the Defendants engaged in a common or single course of conduct impacting all Class members and the litigation necessarily will focus on a common nucleus of operative facts, the commonality requirement is satisfied. *See, e.g., Ballard v. Equifax Check Services, Inc.*, 186 F.R.D. 589, 594-95 (E.D. Cal. 1995) ("A common nucleus of operative fact is typically found where 'defendants have engaged in standardized conduct toward members of the proposed class by mailing to them allegedly illegal form letters or documents.'" (citation omitted)). Indeed, courts routinely recognize that securities fraud actions alleging such a common course of conduct and based on a "fraud on the market" satisfy the commonality requirements of Rule 23(a)(2). *See In re THQ*, 2002 WL 1832145, at *3 (citing *Blackie*, 524 F.2d at 902); *Welling*, 155 F.R.D. at 657. Thus, the Action satisfies the commonality requirement of Rule 23(a).

    3.     *Typicality: The Claims Of The Representative Plaintiff Are Typical Of The Other Class Member Claims*

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). A plaintiff's claims will be deemed typical if "they are reasonably co-extensive with those of absent class members." *Hanlon*, 150 F.3d at 1020. The heart of the inquiry is whether the representative's claims and the class claims are interrelated so that class treatment is economical. *Falcon*, 457 U.S. at 157 n.13. As one court has stated:

1
2
3
4

> When it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, the typicality requirement is usually satisfied, irrespective of varying fact patterns which underlie individual claims. Typicality turns on the defendant's actions toward the plaintiff class, not particularized defenses against individual class members.

5

*Smith v. Univ. of Wash. Law School,* 2 F. Supp. 2d 1324, 1342 (W.D. Wash. 1998) (internal

6

quotations and citations omitted).

7

    "In the securities context, the fact that the class representatives may have reviewed

8

different documents from other members of the class or purchased different amounts of stock

9

does not mean their claims are not typical of the class." *In re THQ*, 2002 WL 1832145, at *3

10

(citing *Schlagel v. Learning Tree Int'l.*, No. CV 98-6384, 1999 WL 672306 (C.D. Cal. Feb. 23,

11

1999)). "Rather, the test of typicality is 'whether other members have the same or similar injury,

12

whether the action is based on conduct which is not unique to the named plaintiffs, and whether

13

other class members have been injured by the same course of conduct.'"*In re THQ*, 2002 WL

14

1832145, at*3 (quoting *Hanon,* 976 F.2d at 508 (citation omitted)).

15

    Here, Defendants' course of conduct described in the Complaint – making materially false

16

and misleading statements about LDK's inventory and related financial results – uniformly

17

affected all members of the Class, as they each suffered economic injury from overpaying (or

18

being undercompensated in the case of writing put options) for their securities. (Nettesheim Decl.

19

¶ 57) ("Purchasers of call options and sellers of put options share similar investment interests as

20

purchasers of the underlying security in that the value of the investment increases as the price of

21

the underlying security increases."). Defendants' conduct of misleading the market was not

22

unique to Lead Plaintiff, but rather was typical of all of the Class members who acquired LDK

23

securities in the open market. As such, Lead Plaintiff and all of the Class members were injured

24

by the same course of conduct that inflated LDK's ADS and call-option price, and underpriced

25

LDK's put options. Thus, Lead Plaintiff's claims are typical of the Class as a whole, and Rule

26

23's typicality requirement is satisfied.

27
28

Cohen, Milstein,
Hausfeld & Toll
P.L.L.C.
Attorneys At Law

LEAD PLAINTIFF'S NOTICE OF MOTION AND MOTION TO CERTIFY CLASS
MASTER FILE NO. C-07-5182-WHA

- 8 -

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

        4.    *Adequacy: The Representative Plaintiffs Will Fairly And*
              *Adequately Protect The Interests Of The Class*

Rule 23(a)(4) states that the representative plaintiff must "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "The Ninth Circuit has held that representation is 'adequate' where (1) counsel for the class is qualified and competent, (2) the representatives' interests are not antagonistic to the interests of absent class members, and (3) it is unlikely that the action is collusive." *Schlagel v. Learning Tree, Int'l*, No. CV 98-6384 ABC (EX), 1999 WL 672306, at *3 (C.D. Cal. Feb 23, 1999) (citing *In re N. D. of Cal., Dalkon Shield IUD Prod. Liab. Litig.*, 693 F.2d 847, 855 (9th Cir. 1982); *Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d 507, 512 (9th Cir. 1978)).

Lead Plaintiff has been actively involved in this case and has expressed his willingness to serve as class representative, and to prosecute this case on behalf of the entire Class. He has no conflicting interests with unnamed class members, and, moreover, has the same claim as each member of the Class. This Court may presume that there is no conflict between the class representative and the class in the absence of contrary evidence.[4] *See Harriss v. Pan Am. World Airways*, 74 F.R.D. 24 (N.D. Cal. 1977). In a securities fraud class action such as this one, "the only distinction between the representative plaintiffs and other class members concerns the amount of damages each individual may receive." *Schlagel*, 1999 WL 672306, at *5. As such a distinction cannot overcome a class certification motion, Lead Plaintiff is an adequate representative for the Class. *See id.*

The fact that the Class contains purchasers of stock, ADSs and options has no effect on the certification of one class. As Judge Sweet of the Southern District of New York recently noted, courts "often appoint purchasers of one type of securities to represent purchasers of other types of securities of the same issuer where the interests of those purchasers are aligned."

---

[4]    "[I]t is often the defendant, preferring not to be successfully sued by anyone, who supposedly undertakes to assist the court in determining whether a putative class should be certified. When it comes, for instance, to determining whether 'the representative parties will fairly and adequately protect the interests of the class,' or the plaintiffs' ability to finance the litigation, it is a bit like permitting a fox, although with a pious countenance, to take charge of the chicken house," *Eggleston v. Chicago Journeyman Plumbers Local Union 130*, 657 F.2d 890, 895 (7th Cir. 1981).

COHEN, MILSTEIN,
HAUSFELD & TOLL
P.L.L.C.
ATTORNEYS AT LAW

LEAD PLAINTIFF'S NOTICE OF MOTION AND MOTION TO CERTIFY CLASS
MASTER FILE NO. C-07-5182-WHA                                                    - 9 -

1   *Freudenberg v. E\*Trade Financial Corp.*, No. 07 Civ. 8538, 2008 WL 2876373, \*6 (S.D.N.Y.

2   July 16, 2008) (collecting cases, including *In re Sepracor Inc.*, 233 F.R.D. 52, 56 (D. Mass. 2005)

3   (appointing purchaser of options as lead plaintiff for class that included purchasers of all

4   defendant company's equity securities)).[5]

5          Further, as a purchaser of both LDK ADSs and options, and a seller of put options, Lead

6   Plaintiff is an ideal representative for the class, which consists of purchasers of both LDK shares

7   and call options, and those that wrote put options.  No conflict arises from Lead Plaintiff's

8   transactions in ADSs and options, as all of his transactions were designed to profit from an

9   increase in the price of LDK ADSs, and he suffered damages as a result of the ADSs and put

10  options being undervalued as a result of the alleged fraud.  *See* Nettesheim Decl. ¶ 57; *see also,*

11  *e.g., In re Priceline.com Inc.*, 236 F.R.D. 89, 100 (D. Conn. 2006); ("because [proposed class

12  representative] wrote put options, his interests are aligned with those of the class [including

13  purchasers of stock]).”[6]

14         Finally, proposed class counsel, Cohen, Milstein, Hausfeld & Toll, P.L.L.C. (“Cohen

15  Milstein”), is well qualified and highly experienced in litigating securities fraud class action

16  lawsuits, and this Court has already seen fit to appoint Cohen Milstein as Lead Counsel for this

17  action.  (Order Granting Mot. to Appoint Lead Counsel, Feb. 28, 2008, Dkt. No. 64.)[7]  Thus, Lead

19  _____

[5]     The court also noted, *inter alia*: *In re Enron Corp. Sec. Litig.*, 206 F.R.D. 427, 445 (S.D. Tex. 2002) (“[C]ourts have repeatedly concluded that stock purchasers can represent purchasers of debt instruments and vice versa in the same action.”); *Endo v. Albertine*, 147 F.R.D. 164, 167 (N.D. Ill. 1993) (appointing lead plaintiffs who purchased only common stock to represent class of purchasers of debentures, notes and common stock); *Deutschman v. Beneficial Corp.*, 132 F.R.D. 359 (D. Del. 1990) (appointing lead plaintiff who purchased only call options to represent class of purchasers of call options and common stock).

[6]     *See also In re Oxford Health Plans, Inc. Sec. Lit.*, 199 F.R.D. 119, 123-24 (S.D.N.Y. 2001) (holding that options traders were typical and adequate class representatives); *Deutschman v. Beneficial Corp.*, 132 F.R.D. 359, 371 (D. Del. 1990) (“[T]he market price of the underlying security may affect the premium at which the option holder is able to resell the option contract and the desirability of exercising the option by purchasing the shares at the striking price prior to the expiration date vis-a-vis allowing the option to expire.”); *Moskowitz v. Lopp*, 128 F.R.D. 624, 631 (E.D. Pa. 1989) (holding that plaintiff who used a variety of trading strategies, including options, could rely upon the fraud-on-the-market presumption and was an adequate class representative).

[7]     A copy of the firm's resume is previously on file with the Court in this matter at Decl. of Michael P. Lehman at Attach. B, Feb. 4, 2008, Dkt. Nos. 62-63.)

1  Plaintiff and Lead Counsel will fairly and adequately protect the interests of the Class. Finally,

2  there is no evidence or suggestion that the action is collusive. As such, Lead Plaintiff and Lead

3  Counsel satisfy the adequacy requirement.

4  Because the Class satisfies the numerosity and commonality elements of Rule 23(a), and

5  Lead Plaintiff satisfies the typicality and adequacy requirements, all of the prerequisites to class

6  certification are met. Thus, the Court need only determine whether one of the elements of Rule

7  23(b) is satisfied.

8  **B.    Class Certification Is Appropriate Under Rule 23(b)(3)**

9  To certify a class under Rule 23(b)(3), this Court must find that:

10  [T]he questions of law or fact common to the members of the class
    predominate over any questions affecting only individual members,
11  and the class action is superior to other available methods for the
    fair and efficient adjudication of the controversy.

12  
13  Fed. R. Civ. P. 23(b)(3). Both criteria are met in this case: common questions predominate and a

    class action is the superior method to adjudicate the claims of the Class.
14  
15  The primary purpose behind Rule 23(b)(3) is the vindication of the rights of people who

16  would not have the economic power or incentive to bring a wrongdoer into court to redress a

    wrong imposed on them. The objective is to aggregate small claims into a large enough recovery
17  
    to make the cost and effort of the litigation economically feasible and to allow the courts to
18  
19  redress wrongs that could otherwise be imposed with impunity. *See Amchem*, 521 U.S. at 617. A

    class action under Rule 23(b)(3) is also intended to achieve judicial economy, as well as
20  
21  economies of time, effort and expense. *La Mar v. H & B Novelty & Loan Co.*, 489 F.2d 461, 465

    n.2 (9th Cir. 1973).
22  
23  The Supreme Court has noted that "[p]redominance is a test readily met in . . . cases

    alleging . . . securities fraud." *Amchem*, 521 U.S. at 625. As courts have reiterated, such class
24  
25  actions are not only manageable but vindicate the fundamental policy of Rule 23 to allow

    plaintiffs suffering "small injuries" (too small to justify individually filed cases) to have their day
26  
27  in court against a defendant who has allegedly inflicted a massive amount of these "small

    injuries" on thousand of victims. *See Amchem,* 521 U.S. at 617 ("The policy at the very core of
28  

COHEN, MILSTEIN,
HAUSFELD & TOLL
P.L.L.C.
ATTORNEYS AT LAW

LEAD PLAINTIFF'S NOTICE OF MOTION AND MOTION TO CERTIFY CLASS
MASTER FILE NO. C-07-5182-WHA                                          - 11 -

1   the class action mechanism is to overcome the problem that small recoveries do not provide the

2   incentive for any individual to bring a solo action prosecuting his or her rights."); *see also*

3   *Hohmann v. Packard Instr. Co.*, 399 F.2d 711, 715 (7th Cir. 1968) ("To permit the defendants to

4   contest liability with each claimant in a single, separate suit, would, in many cases give

5   defendants an advantage which would be almost equivalent to closing the door of justice to all

6   small claimants.  This is what we think the class suit practice was to prevent." (citations

7   omitted)).  Indeed, given the likely modest size of most individual recoveries in this case,

8   balanced against the enormous resources necessary to prosecute this Action against well-financed

9   Defendants, the vast majority of Class members "would have no realistic day in court if a class

10  action were not available."  *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809 (1985); *Deposit*

11  *Guar. Nat'l Bank v. Roper*, 445 U.S. 326, 338 (1980); *La Mar*, 489 F.2d at 465 n.2 (noting that

12  class actions are intended to achieve judicial economy, as well as economies of time, effort and

13  expense); *Ridings  v. Canadian Imperial Bank of Commerce Trust Co. (Bahamas)*, 94 F.R.D. 147,

14  150 (N.D. Ill. 1982) ("The class action is thus a useful device in which to litigate similar claims as

15  well as an efficient deterrent against corporate wrongdoing.").

16              1.      *Common Questions Predominate*

17          In analyzing whether common questions predominate, the Court must evaluate whether

18  proving the elements of the Lead Plaintiff's claims can be done through common questions of fact

19  or law, or whether the proof will be overwhelmed with individual issues.  *See Hanlon*, 150 F.3d at

20  1022.  The predominance inquiry tests "whether proposed classes are sufficiently cohesive to

21  warrant adjudication by representation."  *Amchem*, 521 U.S. at 591.  "The commonality

22  requirement of Rule 23(a)(2) and the predominance requirement of Rule 23(b)(3) are closely

23  related and a finding of one generally will satisfy the other."  *Villereal v. Snow*, No. 95-C-2484,

24  1996 U.S. Dist. LEXIS 667, at *15 (N.D. Ill Jan. 19, 1996).  The focus of Rule 23(b)(3)'s

25  predominance test is on whether the class claims arise out of the same legal or remedial theory –

26  "a common legal grievance."  *Hochschuler v. G.D. Searle & Co.*, 82 F.R.D. 339, 349 (N.D. Ill.

27  1978); *see also Hanlon*, 150 F.3d at 1022.  "When one or more of the central issues in the action

28  are common to the class and can be said to predominate, the action will be considered proper

COHEN, MILSTEIN,
HAUSFELD & TOLL
P.L.L.C.
ATTORNEYS AT LAW

LEAD PLAINTIFF'S NOTICE OF MOTION AND MOTION TO CERTIFY CLASS
MASTER FILE NO. C-07-5182-WHA                                                                    - 12 -

1  under Rule 23(b)(3) even though other important matters will have to be tried separately." *In re*

2  *Potash Antitrust Litig.,* 159 F.R.D. 682, 693 (D. Minn. 1995).

3      Courts generally find securities fraud class actions to easily satisfy the predominance

4  requirement. *See In re THQ*, 2002 WL 1832145, at *8 ("Plaintiffs' claim – which is based on a

5  series of misrepresentations and market manipulations – clearly satisfies the requirement that

6  common questions predominate over those affecting individual members." (citing *In re United*

7  *Energy Corp. Solar Power Modules Tax Shelter Investments Sec. Litig.,* 122 F.R.D. 251, 256

8  (C.D. Cal. 1988) (finding that common questions such as the knowledge of the defendants and the

9  truth or falsity of their representations predominated over individual questions); *In re Unioil Sec.*

10  *Litig.,* 107 F.R.D. 615, 622 (C.D. Cal. 1985) (holding that common questions predominated

11  where the plaintiffs' claim was based on a "common nucleus of misrepresentations, material

12  omissions and market manipulations...")).

13      One of the elements required to prevail on a securities fraud claim is a showing of reliance

14  on the deceptive act. *See, e.g., Basic,* 485 U.S. at 243.  Although individual questions of reliance

15  can be claimed to undercut a finding of predominance, plaintiffs in a securities fraud class action

16  are entitled to a presumption of reliance in an action alleging a "fraud on the market." *Id.* at 247.

17  The fraud on the market presumption of reliance depends on the theory that, in an efficient

18  market, all information – including any misrepresentation – is incorporated into the value of a

19  security, and investors rely on the integrity of the market for that security. *Id.*  That investors

20  presumably relied on the integrity of the market when making their transactions is simple

21  common sense.  As has been repeatedly noted, including by the Supreme Court, "it is hard to

22  imagine that there ever is a buyer or seller who does not rely on market integrity.  Who would

23  knowingly roll the dice in a crooked crap game?" *Schlanger v. Four-Phase Systems Inc.*, 555 F.

24  Supp. 535, 538 (S.D.N.Y. 1982); *Basic*, 485 U.S. at 246-47.

25      LDK ADSs were traded on "one of the most efficient capital markets in the world," the

26  New York Stock Exchange.  *In re PHP Healthcare Corp.*, 128 Fed. Appx. 839, 848, 2005 WL

27  488785, *7 (3d. Cir. Mar. 5, 2005); *Basic*, 485 U.S. at 227-28 (presuming that the securities

28  traded in an efficient market because they were traded on the New York Stock Exchange).  As

COHEN, MILSTEIN,
HAUSFELD & TOLL
P.L.L.C.
ATTORNEYS AT LAW

LEAD PLAINTIFF'S NOTICE OF MOTION AND MOTION TO CERTIFY CLASS
MASTER FILE NO. C-07-5182-WHA                                                    - 13 -

1    such, it cannot seriously be disputed that the market for LDK ADSs was efficient. Nonetheless,

2    despite the long-recognized rule that courts must not look into the facts underlying the claims

3    when determining whether to certify a class, *Eisen*, 417 U.S. at 177, some courts have begun to

4    conduct factual reviews of the evidence supporting the efficiency of the market to allow a

5    presumption of reliance under the fraud-on-the-market doctrine. *See, e.g., In re Micron Techs.,*

6    *Inc. Sec., Litig.*, 247 F.R.D. 627, 633 (D. Idaho 2007), *citing Dukes,* 509 F.3d at 1178 n.2.

7           Though the Ninth Circuit has not endorsed such a rigorous standard in the securities

8    context and such an intensive investigation is generally not undertaken in this Court, anticipating

9    that Defendants here will nonetheless insist on such an evidentiary showing, Lead Plaintiff has

10   retained a noted expert in the field of market efficiency, Jane D. Nettesheim of Stanford

11   Consulting Group, Inc., to conduct a detailed examination of the efficiency for the market of

12   LDK's securities.[8]  In a detailed declaration, submitted herewith, Ms. Nettesheim concludes that

13   the market for LDK's securities, including its ADSs and its options, was highly efficient at all

14   relevant times.[9]  As such, a presumption of reliance under the fraud on the market presumption is

15   appropriate.[10]

16          Ms. Nettesheim examined eleven factors commonly analyzed in connection with whether

17   a security trades in an efficient market. Those factors largely derive from three cases: *Cammer v.*

18   *Bloom*, 711 F. Supp. 1264, 1276 n.17 (D.N.J. 1989); *Unger v. Amedisys, Inc.*, 401 F.3d 316, 323

19   (5th Cir. 2005); and *Bell v. Ascendant Solutions, Inc.,* 422 F.3d 307, 311 (5th Cir. 2005). Those

20

21          [8]      *See, e.g., In re Accredo Health, Inc. Sec. Litig.*, No. 03-2216 DP, 2006 WL
22   1716910, *7-8 (W.D. Tenn. Apr. 19, 2006) (granting motion for class certification; finding
     market efficient based on declaration of Jane Nettesheim).

23          [9]      Ms. Nettesheim also concludes that the misrepresentations and omissions alleged
     in the Complaint were material and caused the losses complained of. (Nettesheim Decl. ¶ 75-77._
24   However, such issues go to the ultimate merits of the action, not class certification, and should
     not be considered at this point of the litigation. *See Micron Tech.*, 247 F.R.D. at 633-34 (rejecting
25   *Oscar Private Equity Investments v. Allegiance Telecom, Inc.*, 487 F.3d 261 (5th Cir. 2007) as
     inconsistent with Supreme Court and Ninth Circuit precedent).

26          [10]     Ms. Nettesheim concludes that the market for LDK options was also efficient.
     (Nettesheim Decl. ¶¶ 6,18 .)  Thus, it is appropriate to presume reliance for options traders as
27   well, and include options transaction in the class. *See, e.g., Tolan v. Computervision Corp.*, 696
     F. Supp. 771, 779 (D. Mass. 1988) ("Traders in puts and calls rely on the integrity of information
28   disseminated in the market just as do the purchasers and sellers of the underlying securities.").

COHEN, MILSTEIN,
HAUSFELD & TOLL
P.L.L.C.
ATTORNEYS AT LAW

LEAD PLAINTIFF'S NOTICE OF MOTION AND MOTION TO CERTIFY CLASS
MASTER FILE NO. C-07-5182-WHA                                                  - 14 -

factors are:

    i.      whether the security trades at a large weekly volume;

    ii.     whether analysts follow and report on the security;

    iii.    whether the security has market makers and whether there is a potential for arbitrage activity;

    iv.    whether the company is eligible to file Securities and Exchange Commission ("SEC") Form S-3; and

    v.     whether there are empirical facts showing a cause-and-effect relationship between unexpected corporate events or financial information releases, and an immediate response in the security's price.

    vi.    the company's market capitalization;

    vii.   the bid/ask spread for stock prices; and

    viii.  the public float of the security, or shares outstanding excluding insider-owned stock.

    ix.    the principal exchange on which the security was listed and traded;

    x.     institutional ownership of the security; and

    xi.    news coverage and dissemination of information by news sources pertaining to the company and its securities during the Class Period.

(Nettesheim Decl. ¶ 14-16.)[11]  The available evidence indicates, and Ms. Nettesheim appropriately concludes, that when these factors are considered the market for LDK's ADSs and options was efficient.

    The trading volume (*Cammer* Factor 1) of LDK's ADSs was substantial during the class period – a market for a stock is liquid if investors can trade a large number of shares on demand, and liquidity indicates the market for those shares was efficient.  (Nettesheim Decl. ¶ 19.) Further, during the relatively short Class Period, there were at least 10 analyst reports (*Cammer* Factor 2) on LDK from three different investment firms, and there were analysts from at least nine firms who followed and reported on LDK during the Class Period, again indicating an

---

[11]/    The first five factors originate from *Cammer* and are commonly referred to as the "*Cammer* Factors," factors six through eight from *Unger* and *Bell* (the "*Unger/Bell* Factors"), and factors nine through eleven are additional factors which Ms. Nettesheim believes are relevant to the analysis of market efficiency (the "Additional Factors"). (Nettesheim Decl. ¶ 18.)

1  efficient market for the shares as analysts channel new information to the market rapidly through

2  their reports. *Id. ¶ 24.*

3    The third *Cammer* Factor, the number of market makers, applies only to NASDAQ listed

4  stocks; however, as a New York Stock Exchange listed company, LDK was assigned a specialist

5  which facilitated its trades, satisfying *Cammer's* concern that market makers be present to ensure

6  trading in the security. *Id.* ¶ 31. *Cammer* Factor 4 examines whether LDK was "entitled to file

7  an S-3 Registration Statement in connection with public offerings or, if ineligible, such

8  ineligibility was only because of timing factors rather than because the minimum stock

9  requirements set forth in the instructions to Form S-3 were not met." *Cammer*, 711 F. Supp. at

10  1287. LDK, as a new foreign registrant, was not eligible to file a Form F-3[12] during the class

11  period, as 12 months of timely SEC filings is required;[13] but LDK did do so as soon as the 12

12  months had run and it became eligible to do so and as such, LDK's ineligibility was "only

13  because of timing factors." *Id.*

14    *Cammer* Factor 5 is the most analytical of the factors, and requires "empirical facts

15  showing a cause and effect relationship between unexpected corporate events or financial releases

16  and an immediate response in the stock price." *Cammer*, 711 F. Supp. at 1287. In satisfaction of

17  this factor, Ms. Nettesheim performed an "event study," which examines the movement of LDK's

18  securities in reaction to news about the Company. (Nettesheim Decl. ¶ 38 & Ex. 14.) This event

19  study demonstrates that "[i]n general, large significant changes in the price of the LDK ADSs are

20  associated with material, new and unexpected information about the Company." (Nettesheim

21  Decl. ¶ 40.) The major significant movements in LDK's ADSs and accompanying news are set

22  out in the Nettesheim Declaration at paragraph 38. The statistically significant reaction of the

23  ADS prices in reaction to news about the company indicates that the market was efficient.

24     [12] "Form F-3 for foreign issuers is the functional equivalent to Form S-3 used by U.S

25  issuers. The Registrant Requirements in Form F-3 are essentially identical to the Registrant
  Requirements in Form S-3." (Nettesheim Decl. ¶ 33.)

26     [13] "Form S-3 is a simplified registration form that may be used if a company has

27  been subject to Securities Exchange Act of 1934 (the "Exchange Act") reporting requirements for
more than one year, has filed all documents in a timely manner during the prior twelve months,

28  and has not, since the last audited statements, failed to pay required dividends or sinking funds,
nor defaulted on debts or material leases." (Nettesheim Decl. ¶33.)

COHEN, MILSTEIN,
HAUSFELD & TOLL
P.L.L.C.
ATTORNEYS AT LAW

LEAD PLAINTIFF'S NOTICE OF MOTION AND MOTION TO CERTIFY CLASS
MASTER FILE NO. C-07-5182-WHA   - 16 -

1    Factor 6, the first of the *Unger/Bell* factors, looks at the market capitalization of the

2    company at issue.  *Unger*, 401 F.3d 316 at 323; *Bell*, 422 F.3d 307 at 313 n.10.  The market

3    capitalization of LDK's ADSs was substantial, and ranged from $403 million to $1.33 billion

4    during the Class Period.[14]  (Nettesheim Decl. ¶ 41.)  "The market capitalization of the LDK ADSs

5    is larger than the median of all companies listed on the [New York Stock Exchange] and the

6    NASDAQ combined," and as such, "this factor supports a conclusion that the market for the LDK

7    ADSs was efficient."  *Id.* ¶ 43.

8        *Unger/Bell* Factor 7, the bid/ask spreads,[15] also indicates that the market was efficient.

9    During the Class Period, the median bid/ask spread was relatively small, only 0.26%, and

10   comparable to comparable companies during the Class Period.  (Nettesheim Decl. ¶ 45); *contra*

11   *Krogman,* 202 F.R.D. at 478 (finding market inefficient where bid/ask spread was 5.6%).

12   Further, *Unger/Bell* Factor 8, the public float, also supports efficiency of the market.  This factor

13   looks to the number of outstanding shares of the company held by the public and available to

14   trade in the market, *i.e.,* the "float."  Here, "during the Class Period, the public float was at least

15   approximately 95% of the LDK ADSs outstanding."  (Nettesheim Decl. ¶ 46.)

16       Further, the facts that the ADSs traded on the New York Stock Exchange, Additional

17   Factor 9, (Nettesheim Decl. ¶ 49); that there was substantial institutional ownership of the ADSs,

18   Additional Factor 10, (Nettesheim Decl. ¶ 51); and that there was extensive news coverage of the

19   company, Additional Factor 11, (Nettesheim Decl. ¶ 54); all indicate that the market for LDK's

20   ADSs was efficient.

21       Finally, the market for the options on LDK's ADSs was also efficient.[16]  Its options were

22   _____

23   [14]    "Considering all ordinary shares outstanding, including the LDK ADSs and non-
     listed shares privately held by Company insiders, the average daily market capitalization of LDK

24   during the Class Period ranged from $2.41 billion to $7.73 billion; the average over the Class
     Period was $4.50 billion."  (Nettesheim Decl. ¶ 41.)  However, "the LDK ordinary shares were
     not listed and were not publicly traded during the Class Period."  *Id.*

25   [15]    The bid-ask spread is the difference between the price at which investors are

26   willing to buy the stock and the price at which current stockholders are willing to sell their shares.
     A large bid-ask spread is indicative of an inefficient market, because it suggests the market lacks

27   liquidity.  *Krogman v. Sterritt*, 202 F.R.D. 467, 478 (N.D. Tex. 2001).

28   [16]    "[S]tock options are financial instruments that give the buyer the right, but not the
     obligation, to buy (in the case of a call option) or sell (in the case of a put option) a specified

COHEN, MILSTEIN,
HAUSFELD & TOLL
P.L.L.C.
ATTORNEYS AT LAW

LEAD PLAINTIFF'S NOTICE OF MOTION AND MOTION TO CERTIFY CLASS
MASTER FILE NO. C-07-5182-WHA                                                          - 17 -

1    traded on the Chicago Board Options Exchange ("CBOE"); one of the markets commentators

2    have suggested where there "should be a presumption – probably conditional for class

3    determination – that certain markets are developed and efficient for virtually all the securities

4    traded there." *Cammer*, 711 F. Supp. at 1292-93 (quoting Bromberg & Lowenfels, 4 *Securities*

5    *Fraud and Commodities Fraud*, § 8.6 (Aug. 1988); (Nettesheim Decl. ¶ 48). Furthermore, the

6    prices of the LDK options "were dependent upon the value of LDK ADSs, for which information

7    was readily obtainable by investors. . . . [A]ll the factors which affected the value of the ADSs

8    would be incorporated into an assessment of the value of the call and put options on the LDK

9    ADSs." (Nettesheim Decl. ¶ 58.) Thus, that the market for the ADSs was efficient indicates that

10   the market for the options was also efficient.

11        The market for LDK's options was also efficient based on a technical analysis of the

12   prices of the options during the Class Period, as "put/call parity" for the options was consistent.

13   "When the price of a company's common stock, its put options, and its call options, are priced

14   such that an investor cannot make arbitrage profits, put/call parity is said to hold, indicating an

15   efficient market." (Nettesheim Decl. ¶ 61.) The calculation to determine put/call parity is

16   somewhat complex, and is set out in detail by Ms. Nettesheim at paragraphs 60-67 of her

17   declaration. Ultimately, Ms. Nettesheim reaches the conclusion that "[p]ut/call parity almost

18   always held during the Class Period with respect to the LDK ADSs and options on LDK ADSs,

19   which indicates that the market for both of these securities was efficient during that period."

20   (Nettesheim Decl. ¶ 66.)

21        Because the market for LDK's ADSs and options were efficient, a presumption of reliance

22   applies, the common issues in the litigation predominate over any individual issues, and the first

23   prong of Rule 23(b)(3) is satisfied.

24            2.    *A Class Action Is The Superior Method For The Fair And Efficient*
                   *Adjudication Of This Controversy*

25        This case also meets the second requirement of Rule 23(b)(3): that the class action be

26

27   quantity of a security at a set strike price at some time on or before the expiration date of that
     option." (Nettesheim Decl. ¶ 57.) "If the option holder chooses to exercise the option, the party

28   who sold, or wrote, the option must fulfill the terms of the contract." *Id.*

COHEN, MILSTEIN,
HAUSFELD & TOLL
P.L.L.C.
ATTORNEYS AT LAW

LEAD PLAINTIFF'S NOTICE OF MOTION AND MOTION TO CERTIFY CLASS
MASTER FILE NO. C-07-5182-WHA                                              - 18 -

1    "superior to other available methods for the fair and efficient adjudication of the controversy."

2    Fed. R. Civ. P. 23(b)(3).  Superiority is demonstrated where "class-wide litigation of common

3    issues will reduce litigation costs and promote greater efficiency."  *Valentino v. Carter-Wallace,*

4    *Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996).  Like the predominance element, courts generally find

5    class actions to be the superior mechanism for litigating securities fraud actions due to the large

6    number of possible class members.  *See In re THQ*, 2002 WL 1832145, at *8 (citing *In re Unioil*,

7    107 F.R.D. at 622); *Yamner*, 1994 WL 514035, at *5.  Because individual litigation of each Class

8    members' claims would be both highly inefficient and impracticable, a class action is the superior

9    means for adjudicating this Action.

10   **IV.    <u>CONCLUSION</u>**

11          For all of the foregoing reasons, Lead Plaintiff Shahpour Javidzad respectfully requests

12   that the Court certify this Action as a Class Action, approve his appointment as the Class

13   Representative, and appoint Lead Counsel as counsel for the Class.

14

15   DATED:  August 28, 2008                    COHEN, MILSTEIN, HAUSFELD
                                                  & TOLL, P.L.L.C.

16

17                                                  /s/ Michael P. Lehman
                                                 Michael P. Lehman
18                                               mlehman@cmht.com
                                            One Embarcadero Center
19                                          Suite 2440
                                            San Francisco, CA 94111
20                                          Telephone: (415) 229-2080
                                            Facsimile: (415) 986-3643
21

22                                          COHEN, MILSTEIN, HAUSFELD
                                              & TOLL, P.L.L.C.
23                                               Herbert E. Milstein
                                                 Steven J. Toll
24                                               Mark S. Willis
                                                 Joshua S. Devore
25                                               Mathew B. Kaplan
                                                 hmilstein@cmht.com
26                                          1100 New York Avenue, N.W.
                                            West Tower, Suite 500
27                                          Washington, DC  20005-3964
                                            Telephone: (202) 408-4600
28                                          Facsimile: (202) 408-4699

COHEN, MILSTEIN,
HAUSFELD & TOLL,
P.L.L.C.
ATTORNEYS AT LAW

LEAD PLAINTIFF'S NOTICE OF MOTION AND MOTION TO CERTIFY CLASS
MASTER FILE NO. C-07-5182-WHA                                        - 19 -

1

## CERTIFICATE OF SERVICE

2

3    I hereby certify that on this date, I electronically filed the foregoing with the Clerk of the

4    Court using the CM/ECF system which will send notification of such filing to the e-mail

5    addresses of the parties of record.

6    I further certify that Service Pursuant to Local Rule 23-2 will be made electronically to:

7       Securities Class Action Clearinghouse
        Att. Juan-Carlos Sanchez/Cara Mia Perlas
8       Stanford University School of Law
        Crown Quadrangle
9       Stanford, CA 94305-8612
        scac@law.stanford.edu
10

11

12                           ___/s/ Michael P. Lehmann___
                             Michael P. Lehmann
13
                             August 28, 2008
14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COHEN, MILSTEIN,
HAUSFELD & TOLL
P.L.L.C.
ATTORNEYS AT LAW

LEAD PLAINTIFF'S NOTICE OF MOTION AND MOTION TO CERTIFY CLASS        - 20 -
MASTER FILE NO. C-07-5182-WHA