1    Cohen, Milstein, Hausfeld & Toll P.L.L.C.
      Steven J. Toll
2    Herbert E. Milstein
      Joshua S. Devore
3    Matthew B. Kaplan
      hmilstein@cmht.com
4    1100 New York Avenue, N.W.
      Suite 500, West Tower
5    Washington, DC 20005
      Telephone:    (202) 408-4600
6    Facsimile:     (202) 408-4699

7    Cohen, Milstein, Hausfeld & Toll P.L.L.C.
      Michael Lehmann
8    mlehmann@cmht.com
      One Embarcadero Center
9    Suite 526
      San Francisco, CA 94111
10   Telephone:    (415) 623-2048
      Facsimile:     (415) 433-5994
11
      Lead Counsel for the Proposed Class
12

13                    UNITED STATES DISTRICT COURT

14                   NORTHERN DISTRICT OF CALIFORNIA

15

16   In re LDK Solar Securities Litigation        Master File No. C-07-05182-WHA

17                                                 **OPPOSITION TO DEFENDANTS'**
      This Document Relates To:                    **MOTION FOR A PROTECTIVE ORDER**
18
      All Actions                                  Judge:       Hon. William H. Alsup
19                                                 Date:        September 25, 2008
                                                   Time:        8:00 a.m.
20                                                 Courtroom:   9, 19th Floor

21

22

23

24

25

26

27

28

OPP. TO DEFS.' MOT. FOR A PROTECTIVE ORDER —
MASTER FILE NO. C-07-05182-WHA

1

# TABLE OF CONTENTS

2

3

I.    STATEMENT OF ISSUES TO BE DECIDED...................................................1

II.   PRELIMINARY STATEMENT .......................................................................1

III.  BACKGROUND ..............................................................................................3
      A.    LDK's Internal Investigations ............................................................3
      B.    Developments In This Case .................................................................5

IV.   ARGUMENT .....................................................................................................6
      A.    Defendants' Blanket Claim Of Privilege Is Facially Inadequate..........7
            1.  Defendants Do Not Show That Any Document Is Privileged ..........9
            2.  Many Of The Documents Are Clearly Not Privileged..................11
            3.  Defendants Have Waived Any Privilege .....................................12
      B.    Defendants Have Not Shown Any Burden..........................................15
      C.    The Court Should Rule That These Documents Are Discoverable ......17
      D.    Defendants' Motion May Also Be Dismissed As Premature...............18
      E.    The Status Of The Discovery Stay Has Already Been Argued ...........19

V.    CONCLUSION................................................................................................19

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

OPP. TO DEFS.' MOT. FOR A PROTECTIVE ORDER —
MASTER FILE NO. C-07-05182-WHA
- ii -

1

2

## <u>TABLE OF AUTHORITIES</u>

3

**Page(s)**

4

CASES

5

*Board of Trustees of the Leland Stanford Junior University v. Roche Molecular Systems Inc.*,
6
    237 F.R.D. 618 (N.D. Cal. 2006) ......................................................................................... 12

7

*Columbia Pictures Industries v. Krypton Broadcasting of Birmingham, Inc.*,
    259 F.3d 1186 (9th Cir. 2001)............................................................................................. 12
8

9
*Flanagan v. Benicia Unified School District*,
    No. CIV S-07-0333, 2008 WL 2073952 (E.D. Cal. May 14, 2008) ............................... passim

10

*Foltz v. State Farm Mutual Automobile Insurance Co.*,
11
    331 F.3d 1122 (9th Cir. 2003)............................................................................................... 7

12

*Grace United Methodist Church v. City Of Cheyenne*,
    451 F.3d 643 (10th Cir. 2006)............................................................................................. 12
13

14
*In re McKesson HBOC, Inc. Securities Litigation*,
    No. C-99-20743, 2005 U.S. Dist. LEXIS 7098 (N.D. Cal. Mar. 31, 2005)...................... 9, 12

15

*In re OM Group Securities Litigation*,
16
    226 F.R.D. 579 (N.D. Ohio 2005) ........................................................................ 11, 12, 13, 14

17
*In re Subpoena Duces Tecum Served on Willkie Farr & Gallagher*,
    No. M8-85, 1997 WL 118369 (S.D.N.Y. March 14, 1997)............................................ 11, 13

18

19
*In Re Veeco Instruments, Inc. Securities Litigation*,
    05-MD-01695, 2007 U.S. Dist. LEXIS 16922 (S.D.N.Y. Mar. 9, 2007) .............................. 10

20

*Jadwin v. County of Kern*,
21
    No. 1:07-cv-0026, 2008 WL 2025093 (E.D. Cal. May 9, 2008) ........................................... 8

22

*Ocean Mammal Institute v. Gates*,
    No. Cv-07-00254, 2008 WL 2185180 (D. Haw. 2008) ........................................................ 14
23

24
*Ryan v. Gifford*,
    No. 2213, 2007 WL 4259557 (Del. Ch. Nov. 30, 2007)...................................................... 14

25

*Saca v. J.P. Molyneux Studio Ltd.*,
26
    No. CIV S-06-2818, 2007 WL 2972842 (E.D. Cal. Oct. 10, 2007) ........................................ 8

27
*S.E.C. v. Brady*,
    238 F.R.D. 429, 437 (N.D. Tex. 2006) ........................................................................... 15, 16

28

OPP. TO DEFS.' MOT. FOR A PROTECTIVE ORDER —
MASTER FILE NO. C-07-05182-WHA
- iii -

*Sullivan v. Dollar Tree Stores, Inc.*,
    No. Cv-07-5020, 2008 U.S. Dist. LEXIS 27458 (E.D. Wash. Mar. 14, 2008).........................7

*Swackhammer v. Sprint Corp. PCS*,
    225 F.R.D. 658 (D. Kan. 2004)................................................................................................. 16

*United States ex rel. Parikh v. Premera Blue Cross*,
    No. C01-0476, 2006 U.S. Dist. LEXIS 79456 (W.D. Wash. Oct. 31, 2006) ......................... 12

*United States v. Martin*,
    278 F.3d 988 (9th Cir. 2002)................................................................................................ 8, 9

*United States v. Torf*,
    357 F.3d 900 (9th Cir. 2003).................................................................................................... 9

*United States v. Union Pacific Railroad Co.*,
    No. CIV 06-1740, 2007 WL 1500551 (E.D. Cal. May 23, 2007) ..................................... 8, 10

*Verizon California Inc. v. Katz Technology Licensing, L.P.*,
    266 F. Supp. 2d 1144 (C.D. Cal. 2003) ................................................................................. 12

*Weil v. Investment/Indicators, Research & Management, Inc.*,
    647 F.2d 18 (9th Cir. 1981).............................................................................................. 12, 13


**OTHER AUTHORITIES**

Civil Local Rules. ............................................................................................................... 17, 18

Fed. R. Civ. P. 26 ................................................................................................................ passim

COHEN, MILSTEIN,
HAUSFELD & TOLL
P.L.L.C.

1   **I.     STATEMENT OF ISSUES TO BE DECIDED**

2          Whether Defendants have met their heavy burden and established that good cause exists to

3   issue a protective order prohibiting discovery of materials which, according to Defendants'

4   largely unsupported assertions, are protected from discovery by the attorney-client privilege or

5   the work product doctrine or because they would be unduly burdensome to produce.  Should the

6   Court deny Defendants' motion, it should consider baring Defendants from unfairly relitigating

7   the issues now before the Court by ordering that they may not refuse to produce, on grounds of

8   attorney-client privilege, work product protection or undue burden, any of the documents that are

9   the subject of Defendants' proposed protective order.

10  **II.     PRELIMINARY STATEMENT**

11         In an effort to further complicate and delay discovery, Defendants ask this Court to

12  approve their refusal to produce broad categories of documents on the asserted grounds that these

13  documents are protected by the attorney-client privilege and the work product doctrine and that

14  production would be unduly burdensome.  But the Federal Rules of Civil Procedure establish a

15  strong presumption in favor of discovery and, as they surely know, Defendants must do more than

16  merely assert that the documents requested are not discoverable.  A party withholding documents

17  must identify the documents and provide the requesting party sufficient information so that the

18  requestor (and, if necessary, the court) can assess the validity of the claim that the documents are

19  protected.  Here, Defendants fail to meet this requirement.  The Court should deny Defendants'

20  motion and, to avoid further delay, resolve the issues raised by Defendants by ruling that the

21  documents subject to the challenged document requests are not protected by attorney-client

22  privilege or as work product and that producing them would not impose an undue burden.

23         The documents at issue are related to Defendant LDK Solar Co., Ltd.'s ("LDK" or "the

24  Company") internal investigations of the alleged wrongdoing that is the basis for this lawsuit.

25  Defendants insist that all such documents are protected by the attorney-client privilege and the

26  work product doctrine.  Although Defendants have the burden of showing that these protections

27  apply, they have provided little information on the internal investigations and have refused to

28  produce a privilege log.  In fact, although Lead Plaintiff ("Plaintiff") has no affirmative burden

1  whatsoever, it is clear from the limited information that Defendants have put on the record that

2  the requested documents are **not** so protected.  It appears, for example, that many of the persons

3  involved in the investigations were not attorneys or supervised by attorneys, precluding any valid

4  claim of attorney-client privilege in documents created by such persons.  Moreover, in the Ninth

5  Circuit parties claiming work product protection must show that, "but for" the prospect of

6  litigation the requested documents, or substantially similar documents, would not have been

7  created.  Here, however, Defendants do not dispute that even absent the prospect of litigation, an

8  investigation would have been necessary for business and accounting reasons.

9       Furthermore, even if any of the documents at issue were at one time privileged or

10 protected as work product, that protection has been waived.  Having used these Company-

11 sponsored investigations as a sword in this litigation, repeatedly arguing that information

12 unearthed by LDK's internal investigations required dismissal of this case, Defendants' cannot

13 now use the attorney-client privilege and the work product doctrine as a shield to avoid disclosing

14 documents related to the investigations.  Defendants have also failed to meet their burden of

15 showing that the attorney-client privilege and work product protection were not waived by

16 disclosure of confidential information to persons with potentially adverse interests.

17      Defendants' alterative argument is that responding to the document requests would be

18 unduly burdensome, but they provide no explanation whatsoever as to how or to what extent

19 complying with the requests would burden them.  Having refused even to look for these

20 documents, and apparently having no idea of the number of documents that might be responsive

21 to the challenged requests, Defendants have no legitimate basis to contend that they need a

22 protective order to avoid undue burden.

23      By seeking a protective order Defendants have voluntarily asked the court to decide, on

24 the current record, whether these documents are discoverable—having timely objected to these

25 document requests, nothing compelled Defendants to make the current motion.  Since Defendants

26 have raised the issue, but have manifestly failed to meet their burden of showing that the

27 requested documents are not discoverable, the Court should affirmatively find that these

28 documents are not protected by privilege and that their production would create no undue burden.

1    The Federal Rules of Civil Procedure expressly contemplate such an order, providing that a court

2    rejecting a request for a protective order may order production of the documents at issue.

3    Defendants have caused Plaintiff and the Court to spend considerable resources to deal with this

4    facially deficient motion.  They should not be rewarded by being allowed, after having had the

5    flaws in their arguments pointed out to them in detail by Plaintiff and the Court, to again ask the

6    Court to hold that the same documents are outside the scope of discovery on the same grounds.

7    Discovery should not be further delayed.

8         Because of Defendants' failure to meaningfully consult with Plaintiff before filing this

9    motion, as required by the Federal Rules of Civil Procedure and the Local Civil Rules, the Court

10   may also deny Defendants' motion on the alternate grounds that it is premature.  Such

11   consultations might narrow the issues the Court is asked to decide—Plaintiff has always been

12   willing consider reasonable limitations on the scope of his document requests.

13   **III.    <u>BACKGROUND</u>**

14        **A.    *LDK's Internal Investigations***

15        According to public statements by LDK, the Company or its Audit Committee conducted

16   at least two internal investigations into the accounting irregularities at the heart of this case.  In an

17   October 4, 2007 press release LDK said that "in accordance with instructions of the board of

18   directors, LDK's management team and board of directors formed an internal committee to

19   investigate the allegations."  Press Release, Form 6-K (Oct. 4, 2007), Defs.' Req. For Judicial

20   Notice in Support of Mot. to Dismiss[1] Ex. B.  The same press release also said that

21   "[a]dditionally, the Audit Committee has asked an independent ***auditing firm*** to conduct ***a***

22   ***separate, independent*** engagement on LDK's inventory.  These findings are expected to be

23   disclosed after the completion of the review and consideration of the Audit Committee."[2]  *Id.*

---

[1] Defs.' Req. For Judicial Notice In Support Of Mot. To Dismiss, Apr. 7, 2008, Dkt. No. 69. ("RJN").

[2] In their filings Defendants often incorrectly suggest that the audit committee investigation was LDK's only internal investigation.  *See, e.g.,* Defs.' Mot. For Protective Order ("Mem.") at 2, Aug. 21, 2008, Dkt. No. 111 (implying that Plaintiff's document requests cover only documents related to the Audit Committee investigation, ignoring investigation by LDK executives).

1   (emphasis added).  The press release does not say that the investigations were conducted in

2   anticipation of litigation or that any attorney was involved.

3          Subsequently, in a December 2007 press release, LDK "announced … that its Audit

4   Committee has completed its independent investigation into the … allegations" and had

5   determined that they were "incorrect."  Press Release, Form 6-K (Dec. 17, 2007), RJN Ex. C.

6   This announcement also indicated that the Audit Committee had, at some point, hired the

7   Simpson Thacher & Bartlett LLP ("Simpson Thacher") law firm as outside counsel and that the

8   investigation "was primarily conducted by the Audit Committee's independent counsel … and a

9   Big Four independent accounting and consulting firm … as well as independent experts in the

10  evaluation of silicon feedstock and the production of multicrystalline solar wafers."  *Id.*  The

11  Audit Committee, not Simpson Thacher, apparently retained and supervised the non-legal experts

12  who participated in the investigation.  *See id.* ("The Audit Committee and *its* highly qualified

13  professionals have conducted an extremely detailed and thorough investigation.") (emphasis

14  added); *see also* Mem. at 3 ("The *Special Committee retained* legal, accounting, and polysilicon

15  experts to assist in its investigation.") (emphasis added).  The press release explained that "the

16  Audit Committee relied on [information from] independent accountants, testing of the Company's

17  feedstock by independent experts, review of company and third party documentation and

18  interviews of certain present and former Company personnel and third parties."  Press Release

19  (Dec. 17, 2007).

20         In arguing that this case should be dismissed Defendants repeatedly relied on LDK's

21  internal investigations.  *See, e.g.*, Order Den. Defs.' Mot. to Dismiss at 14, May 29, 2008, Dkt.

22  No. 85 ("Defendants say that a two-month independent investigation conducted by people with

23  more expertise in the matter confirmed that LDK properly accounted for its inventory."); Defs.'

24  Reply Mem. in Support of Mot. to Dismiss at 5, May 1, 2008, Dkt. No. 74 ("The fact that the

25  Special Committee [that investigated the allegations] reviewed Situ's allegations and found them

26  to be without merit weighs strongly against any inference of falsity."); Defs.' Reply Mem. For

27  Recons. at 3, July 3, 2008, Dkt. No. 100 (the investigations' conclusions "[u]ndermine [a]ny

28  [i]nference that LDK's [i]nventory [d]isclosures were [f]alse"); Defs.' Mot. to Dismiss at 12, Apr.

OPP. TO DEFS.' MOT. FOR A PROTECTIVE ORDER—
MASTER FILE NO. C-07-05182-WHA

1    7, 2008, Dkt. No. 68 ("[A]ccording to every sufficiently knowledgeable entity that has conducted

2    a thorough investigation of LDK's inventory" there were no inventory irregularities.).

3    Defendants' initial brief in support of their first motion to dismiss makes at least thirteen

4    references to LDK's "investigation" (Defs.' Mot. to Dismiss, Apr. 7, 2008, Dkt. No. 68) and, in a

5    separate filing, Defendants urged the Court to "take judicial notice of *the facts relating to* the

6    Special Committee's investigation."  RJN at 3 (emphasis added).

7              **B.        *Developments In This Case***

8              On May 29, 2008 the Court denied a motion to dismiss against four of the Defendants,

9    including LDK and its Chief Executive Officer ("CEO") and Chief Financial Officer ("CFO").

10   On June 3 the Court issued a Case Management Order which established a discovery timetable.

11   (Case Mgmt. Order, June 3, 2008, Dkt. No. 88.)  In a June 17, 2008 email to counsel for

12   Defendants Plaintiff suggested that the parties confer to discuss discovery issues, including "any

13   claims of privilege that you plan to assert that may become an issue in the discovery process."

14   Email from Matthew B. Kaplan to Philip J. Wang (June 17, 2008), attached as Ex. A to

15   accompanying Decl. of Matthew B. Kaplan ("Kaplan Decl.").  In a subsequent telephone

16   conversation, counsel for Plaintiff told counsel for Defendants that Plaintiff would specifically

17   like to discuss any assertion of privilege that Defendants intended to make with respect to LDK's

18   internal investigations.  (Kaplan Decl. ¶ 3.)  Defendants did not respond to Plaintiff's request for

19   consultations (Kaplan Decl. ¶ 4), apparently because their motion for reconsideration had, in their

20   view, revived the discovery stay provided for in the Private Securities Litigation Reform Act

21   ("PSLRA").

22             On July 3, 2008 Plaintiff served on Defendants a narrow document request which asks for

23   documents relating to LDK's investigations.  (Decl. of Raymond A. Gallenberg, Ex. A, Aug. 21,

24   2008, Dkt. No. 112.)  On July 16 Plaintiff served a subpoena seeking similar documents on the

25   Simpson Thacher law firm.  (Decl. of James G. Kreissman, Ex. B, Aug. 21, 2008, Dkt. No. 113.)

26   On July 14 the Court denied Defendants' Motion for Leave to File a Motion for Reconsideration,

27   noting that the motion "was largely frivolous" and a "rehash of old arguments."  (Order Den.

28   Mot. for Recons. at 12, July 14, 2008, Dkt. No. 107.)

Cohen, Milstein,
Hausfeld & Toll
P.L.L.C.

Opp. To Defs.' Mot. for a Protective Order—
Master File No. C-07-05182-WHA
- 5 -

1    Defendants and Simpson Thacher timely objected to these document requests, including

2    on the grounds that they were burdensome and that the documents involved were protected by the

3    attorney-client privilege and by the work product doctrine.  (Kaplan Decl. Ex. B & C.)  These

4    objections were largely boilerplate.  ***Neither Defendants nor Simpson Thacher produced a***

5    ***privilege log*** or indicated that they would do so.

6    As the Court is undoubtedly aware, the parties disagree on the status of discovery.  On

7    July 21, 2008 six defendants, whose entry into this case had been delayed because of counsel for

8    LDK's refusal to accept service on their behalf (*see* Order Granting Pls.' Mot. To Authorize

9    Service To Unserved Defs. Located Abroad, June 12, 2008, Dkt. No. 92), moved that they be

10    dismissed form this lawsuit.  (Defs.' Mot. to Dismiss, July 21, 2008, Dkt. No. 108.)  Defendants

11    assert that this motion completely revived the PSLRA's discovery stay with respect to ***all***

12    Defendants, while Plaintiff's view is that the stay logically applies only to discovery with respect

13    to those Defendants whose motion to dismiss has not yet been denied.  Defendants filed a motion

14    for a stay of discovery on July 21, asking the Court to determine whether discovery has been

15    stayed.  (Defs.' Mot. to Stay Disc., July 21, 2008, Dkt. No. 109.)  A hearing on this motion is set

16    for September 18, 2008.

17    On August 21, 2008 Defendants filed the motion for a protective order at issue here.

18    (Mem., Dkt. No. 111.)  This motion repeats the still-to-be-decided motion for a stay's argument

19    that discovery should be suspended because of the PSLRA stay.  It also argues, as did

20    Defendants' motion to stay, that Plaintiff improperly seeks privileged or work product protected

21    materials, that these documents are irrelevant, and that it would be burdensome to produce them.

22    Defendants have not responded to Plaintiff's requests to discuss discovery issues and,

23    consequently, the parties have never discussed the possibility of modifying Plaintiff's requests to

24    ameliorate Defendants' concerns.  (Kaplan Decl. ¶ 4.)  Defendants did not inform Plaintiff that

25    they intended to seek a protective order prior to filing the instant motion.  (Kaplan Decl. ¶ 7.)

26    **IV.    ARGUMENT**

27    A court may only issue a protective order on a showing by the moving party that there is

28    "good cause" to do so.  Fed. R. Civ. P. 26(c)(1).  "Demonstrating good cause under Rule 26 is a

1   heavy burden."  *Sullivan v. Dollar Tree Stores, Inc.*, No. Cv-07-5020, 2008 U.S. Dist. LEXIS

2   27458, at *3 (E.D. Wash. Mar. 14, 2008); *see also Foltz v. State Farm Mut. Auto. Ins. Co.*, 331

3   F.3d 1122, 1130 (9th Cir. 2003) ("A party asserting good cause bears the burden, for each

4   particular document it seeks to protect, of showing that specific prejudice or harm will result if no

5   protective order is granted.").  Defendants here do not come close to meeting their burden.

6           Plaintiff does not seek, as Defendants' claim "privileged attorney-client communications

7   and/or protected attorney work product" or "irrelevant discovery."  (Mem. at 1.)  Plaintiff

8   formally requested certain documents likely to be especially important to this litigation, the

9   requests which Defendants now challenge, only after Defendants proved unwilling to cooperate

10  on discovery issues.  One of the reasons for these requests was to expedite this case by

11  compelling Defendants to disclose, at the beginning of the discovery process, whether they would

12  argue that any of these documents were not discoverable on privilege or other grounds and, if so,

13  to explain with specificity why the documents were not subject to production.  Plaintiff is entitled

14  to this information so that he can assess whether document are being appropriately withheld and,

15  if necessary, seek relief from the Court, but Defendants would not provide it voluntarily.

16          Not only have Defendants refused to provide specific information about why particular

17  documents are protected by privilege, the limited information available indicates that the

18  requested documents are ***not*** privileged.  Defendants' claim that the document requests are

19  burdensome is equally baseless—Defendants do not tell the Court why answering the requests

20  would be burdensome, let alone provide the required evidentiary support for the existence of a

21  burden.

22          **A.      Defendants' Blanket Claim Of Privilege Is Facially Inadequate**

23          Defendants' claim that the requested documents are protected by the attorney-client

24  privilege and the work product doctrine is facially deficient—Defendants insist, on little more

25  than the bare assertion that these protections apply, that the Court must declare that any document

26  created or reviewed by any member of the Audit Committee or by any other person involved in

27  the internal investigations, including documents "'setting forth the scope of any investigation or

28  inquiry,'" are "immune" from discovery.  (Mem. at 6-7, 10.)  Defendants make their sweeping

1  request even though they themselves apparently have not reviewed these documents or even

2  determined how many there are—Defendants admit that they have not even started looking for

3  any of the requested documents, much less actually reviewing them for privilege.  (Resp. to Lead

4  Pl.'s First Req. for Prod. of Docs. at 3-9, Kaplan Decl. Ex. B.) ("Defendants have not endeavored

5  to ascertain whether any responsive, nonprivileged documents exist.").

6      Nothing in the case law, including the cases cited by Defendants, supports such a

7  sweeping claim of privilege and work product protection.  To the contrary, "blanket assertions of

8  the privileges are extremely disfavored."  *Flanagan v. Benicia Unified School Dist.*, No. CIV S-

9  07-0333, 2008 WL 2073952, at *4 (E.D. Cal. May 14, 2008) (internal quotations and alterations

10  omitted) (quoting *Clarke v. Am. Commerce Nat'l Bank,* 974 F.2d 127, 129 (9th Cir. 1992)).  The

11  Federal Rules of Civil Procedure require that a party refusing to produce on the grounds of

12  privilege or work product must "describe the nature of the documents, communications, or

13  tangible things not produced or disclosed—and do so in a manner that, without revealing

14  information itself privileged or protected, will enable other parties to assess the claim."  Fed. R.

15  Civ. P. 26(b)(5)(A)(ii).  In virtually all cases this provision requires the requested party to provide

16  a privilege log to the requesting party.  *Jadwin v. County of Kern*, No. 1:07-cv-0026, 2008 WL

17  2025093, at *3 (E.D. Cal. May 9, 2008) ("A concomitant requirement with a claim of privilege is

18  an adequate privilege log."); *Saca v. J.P. Molyneux Studio Ltd.*, No. CIV S-06-2818, 2007 WL

19  2972842, at *2 (E.D. Cal. Oct. 10, 2007) ("a privilege log" is "required by Fed. R. Civ. P.

20  26(b)"); *United States v. Union Pac. Railroad Co.*, No. CIV 06-1740, 2007 WL 1500551, at *3

21  (E.D. Cal. May 23, 2007) (Rule 26 establishes a "responding party's duty to offer" a privilege log

22  to a requesting party even if requesting party does not ask for one.).

23      Normally a privilege log should contain, for each document for which privilege or work

24  product protection is claimed, "a description of responsive material withheld, the identity and

25  position of its author, the date it was written, the identity and position of all addressees and

26  recipients, the material's present location, and specific reasons for its being withheld, including

27  the privilege invoked and grounds thereof."  *Union Pac.*, 2007 WL 1500551, at *3 (citing *United

28  States v. Constr. Prods. Research, Inc.*, 73 F.3d 464, 473 (2d Cir.1996)); *see also United States v.*

1   *Martin*, 278 F.3d 988, 1000 (9th Cir. 2002) ("A party claiming the [attorney-client] privilege

2   must identify specific communications and the grounds supporting the privilege ***as to each piece***

3   ***of evidence*** over which privilege is asserted.") (emphasis added).  Defendants here provide none

4   of this information.

5                    1.   Defendants Do Not Show That Any Document Is Privileged

6          A party asserting attorney-client or work product protection must establish all the

7   elements of the privilege with respect to the specific documents for which privilege is claimed.

8   *Martin*, 278 F.3d at 999-1000 ("The burden is on the party asserting the [attorney-client] privilege

9   to establish all the elements of the privilege."); *Flanagan*, 2008 WL 2073952, at *4 ("it is the

10  burden of the party asserting the work product immunity to provide the court with evidence that

11  the documents qualify to be protected by the work product doctrine") (citing *Interstate Prod.*

12  *Credit Ass'n v. Fireman's Fund Ins. Co.*, 128 F.R.D. 273, 279 (D. Or. 1989)).

13         The Ninth Circuit has described the elements that must be proved to establish the

14  attorney-client privilege as follows:

15              (1) … legal advice of any kind is sought (2) from a professional
                legal adviser in his or her capacity as such, (3) the communications
16              relating to that purpose, (4) made in confidence (5) by the client, (6)
                are, at the client's instance, permanently protected (7) from
17              disclosure by the client or by the legal adviser (8) unless the
                protection be waived.
18
19  *Martin*, 278 F.3d at 999.  "Because it impedes full and free discovery of the truth, the attorney-

20  client privilege is strictly construed."  *In re McKesson HBOC, Inc. Sec. Litig.*, No. C-99-20743,

21  2005 U.S. Dist. LEXIS 7098, at *23 (N.D. Cal. Mar. 31, 2005) (quoting *Weil v. Inv./Indicators,*

22  *Research & Mgmt., Inc.*, 647 F.2d 18, 24 (9th Cir. 1981)).  The mere "fact that a person is a

23  lawyer does not make all communications with that person privileged."  *Martin*, 278 F.3d at 999.

24         To establish that a document is work product a party must show that it was created "by or

25  for another party or by or for that other party's representative" and that it was "prepared in

26  anticipation of litigation" so that "it can fairly be said that the document was created because of

27  anticipated litigation, ***and would not have been created in substantially similar form but for the***

28  ***prospect of that litigation***."  *United States v. Torf*, 357 F.3d 900, 907-08 (9th Cir. 2003) (internal

1   quotations omitted, emphasis added).  Even if a document is found to be work product, work

2   product is discoverable "when a party makes a substantial showing that he is [otherwise] unable

3   through his efforts to obtain needed information."  *Union Pac.*, 2007 WL 1500551, at *4-*5

4   (quoting *Admiral Ins. Co. v. U.S. Dist. Ct.*, 881 F.2d 1486, 1494 (9th Cir. 1989)) (ordering

5   production of interview report because of substantial need).

6          Defendants here have failed to carry their burden of establishing the elements of attorney-

7   client or work product protection with respect to ***any*** document.  Merely asserting, as Defendants

8   have done, that broad categories encompassing an unknown number of documents are outside the

9   scope of discovery because they are related to an internal investigation is far from sufficient.[3]

10  Not only do Defendants not establish the existence of each of the elements required to establish

11  attorney-client privilege, they do not even mention these elements.  They also provide only a

12  cursory discussion of work product and do not claim that the documents at issue would not have

13  been created in the absence of litigation, a showing that must be made for work product

14  protection to apply.[4]  In fact, Defendants themselves acknowledge that some of the documents are

15  not work product, but do not say which documents are protected and which are not.  (Mem. at 8)

16  ("***Many*** of the [d]ocuments [r]equested [a]re [n]ondiscoverable [w]ork [p]roduct.") (emphasis

17  added).

18

19  _____

20          [3] Defendants claim that *In Re Veeco Instruments, Inc. Sec. Litig.*, 05-MD-01695, 2007
    U.S. Dist. LEXIS 16922 (S.D.N.Y. Mar. 9, 2007), supports their position.  But in that case the

21  defendant corporation's CFO signed an affidavit which "did not rely solely on boilerplate
    paraphrasing of the legal standard but provided extensive background information [about the

22  internal investigation] based on ... personal knowledge" and which explained why the relevant
    documents "would not have been prepared" absent the threat of litigation.  *Id.* at *7, *22.  Here,

23  of course, there is no affidavit or declaration from an officer of LDK and no assertion that
    documents substantively the same as those requested would not have been created but for the
    prospect of litigation.

24          [4] In the only testimonial declaration supporting Defendants' motion, a Simpson Thacher
    attorney claims that his firm was retained by LDK's Audit Committee "in anticipation of

25  litigation" to assist in "its" (the Audit Committee's) investigation.  (Decl. of James G. Kreissman,
    ¶ 3.)  But the attorney provides no details on how he was retained, does not indicate whether there

26  were other motivations for the investigation, and does not say whether substantially similar
    documents would have been created absent the threat of litigation.  Moreover, there is no showing

27  that the attorney has any knowledge of documents subject to the document requests that were
    created independently by the Audit Committee and its non-legal advisors, or during the course of

28  the initial investigation conducted by LDK's management.

## 2.  Many Of The Documents Are Clearly Not Privileged

Like the requesting party in *Flanagan*, 2008 WL 2073952, Plaintiff "has been compelled to make his plea that no privilege/immunity attaches without recourse to the basic, essential information which would enable him (and the court) to sensibly determine whether particular documents were indeed privileged." *Id.* at *7.  Moreover, since the burden here is on Defendants, Plaintiff need not establish an absence of privilege.  Nevertheless, the fact that the very limited information Defendants have provided indicates that many of the documents at issue are not privileged or protected as work product underscores the lack of merit in Defendants' motion.

For example, Defendants suggest that the independent members of the ***Audit Committee*** directly "retained" "accounting, and polysilicon experts to assist in ***its*** investigation," Mem. at 3, and that LDK's executives ***themselves*** conducted the Company's initial investigation.  Press Release (Oct. 4, 2007).  It is impossible to divine how information from non-lawyers could constitute "legal advice" from "a professional legal adviser."  Similarly, the results of tests of LDK's inventory cannot constitute privileged attorney-client communications.

Similar issues arise with Defendants' claim of work product protection.  Even if one of the reasons for the Company's investigations was the possibility of litigation, investigations were also necessary for accounting and business purposes.  Courts faced with largely similar investigations have held that they are not work product because "[a]ccuracy of earnings and financial statements is clearly a business matter for all publicly-held corporations, regardless of whether litigation is pending or anticipated."  *In re OM Group Sec. Litig.*, 226 F.R.D. 579, 587 (N.D. Ohio 2005).  Consequently, in *OM* the court concluded "that the [a]udit [c]ommittee would have conducted the investigation and prepared the documents regardless of the possibility of additional litigation.  The documents [relating to the investigation] are not protected by the work-product doctrine." *Id.*; *see also In re Subpoena Duces Tecum Served on Willkie Farr & Gallagher*, No. M8-85, 1997 WL 118369, at *2 (S.D.N.Y. March 14, 1997) (documents related to internal investigation not work product because "[t]he investigation was necessary to maintain the integrity of the financial reports of a publicly-held corporation").

Cohen, Milstein,
Hausfeld & Toll
P.L.L.C.

Opp. To Defs.' Mot. For A Protective Order—
Master File No. C-07-05182-WHA

- 11 -

1

### 3.   Defendants Have Waived Any Privilege

2      Even if, arguendo, there was a valid claim of attorney-client privilege or work product

3   here, that protection can be waived and "[t]he asserting party's burden also includes proving that

4   it has not waived the privilege." *McKesson,* 2005 U.S. Dist. LEXIS 7098, at *22; *see also Weil*,

5   647 F.2d at 25.  Not only have Defendants failed to make the required showing of the absence of

6   any waiver, but the undisputed facts in this case indicate that a waiver has actually occurred.

7      When the attorney-client privilege is waived the waiver applies "to all other

8   communications concerning this subject matter." *United States ex rel. Parikh v. Premera Blue*

9   *Cross*, No. C01-0476, 2006 U.S. Dist. LEXIS 79456, at *2-*3  (W.D. Wash. Oct. 31, 2006)

10  ("Because [defendant] has selectively disclosed some of the documents relating to this subject

11  matter, it would be unfair not to require [defendant] to disclose the remainder."); s*ee also OM*

12  *Group,* 226 F.R.D. at 591 (waiver applies to all documents "on the same subject matter").  Where

13  work product protection has been waived by voluntary disclosure, the criteria for determining the

14  scope of the work product waiver are "equivalent" to the criteria for determining the scope of an

15  attorney-client waiver.  *Bd. of Trs. of Leland Stanford Junior Univ. v. Roche Molecular Sys. Inc.*,

16  237 F.R.D. 618, 623 (N.D. Cal. 2006).

17     A party waives the attorney-client privilege if it attempts to use the privilege "both as a

18  sword and a shield." *Columbia Pictures Indus. v. Krypton Broad. of Birmingham, Inc.*, 259 F.3d

19  1186, 1196 (9th Cir. 2001).  The rule is the same for work product—"work product immunity

20  may not be used both as a sword and a shield." *Verizon Cal. Inc. v. Katz Tech. Licensing, L.P.*,

21  266 F. Supp. 2d 1144, 1148 (C.D. Cal. 2003) (quotations omitted); *see also Grace United*

22  *Methodist Church v. City Of Cheyenne*, 451 F.3d 643, 668 (10th Cir. 2006) ("litigant cannot use

23  the work product doctrine as both a sword and shield by selectively using the privileged

24  documents to prove a point but then invoking the privilege to prevent an opponent from

25  challenging the assertion") (citation omitted).  Nothing in Defendants' cases is to the contrary.

26  *See, e.g., McKesson*, 2005 U.S. Dist. LEXIS 7098, at *50 (work product protection not waived

27  where documents had not been used "in such a way as to place some of the contents at issue with

28  respect to the present litigation while asserting attorney-client or work product protection over

1  supporting content").

2        As discussed above (p. 4), Defendants have repeatedly used LDK's internal investigations

3  as a sword—arguing that this case should be dismissed because of the investigations' supposed

4  findings. *Willkie*, 1997 WL 118369, deals with a similar situation.  In that case defendants

5  claimed attorney-client and work product protection for information relating to an investigation

6  conducted by a law firm hired by the company's audit committee to investigate alleged

7  wrongdoing. *Id.* at *1-*2.  The law firm orally shared information derived from the investigation

8  with an accounting firm, which used that information to provide a favorable opinion on the

9  company's financial statements, and the company then used that favorable opinion to support its

10 argument that a case against it should be dismissed. *Id.* at *1, *3.  The court held that even this

11 indirect use of information in support of a motion to dismiss (which contrasts with Defendants'

12 direct use of LDK's investigations in this case) waived the attorney-client privilege with respect

13 to the "underlying materials" used in the investigation.  *Id.* at *3-*4.  The court explained that it

14 would be unfair to allow a party to "rel[y] on the results of the … audit to disclaim liability"

15 while refusing to disclose "the facts uncovered by [the audit committee's law firm] that made that

16 audit possible." *Id.* at *4; *see also OM Group*, 226 F.R.D. at 593 ("There is no reason

17 [d]efendants, who voluntarily disclosed substantial information about an investigation … should

18 now be able to withhold information that would allow [p]laintiff to review the whole picture.").

19 Like the *Willkie* and *OM Group* courts, this Court should hold that documents relating to LDK-

20 sponsored investigations—investigations Defendants have repeatedly invoked in their efforts to

21 have this case dismissed, are not shielded from discovery by attorney-client privilege or as work

22 product.

23        From the limited information Plaintiff can glean from Defendants' defective privilege and

24 work product claims, it also appears that any privilege protection that the requested documents

25 may have had was waived by disclosure of information about the investigations to potentially

26 adverse parties.  "[V]oluntary disclosure of the content of a privileged attorney communication

27 constitutes waiver of the privilege as to all other such communications on the same subject."

28 *Weil*, 647 F.2d at 24.  Similarly "work product protection is waived … when protected materials

OPP. TO DEFS.' MOT. FOR A PROTECTIVE ORDER—
MASTER FILE NO. C-07-05182-WHA
- 13 -

1    are disclosed in a manner which substantially increases the opportunity for potential adversaries

2    to obtain the information." *Ocean Mammal Inst. v. Gates*, No. Cv-07-00254, 2008 WL 2185180,

3    at \*13 (D. Haw. 2008) (quoting *Martin v. Monfort, Inc.,* 150 F.R.D. 172, 174 (D. Colo. 1993))

4    (internal quotations omitted).  In *OM Group* the court concluded that the attorney-client privilege

5    had been waived because a briefing by counsel to the audit committee, which had been

6    responsible for the investigation, to the company's full board, constituted a voluntary disclosure

7    of privileged information.  *OM Group*, 226 F.R.D. at 590-92.  Work product protection is waived

8    when information about an audit committee's investigation is disclosed to senior company

9    management if, as is the case here, the committee is investigating possible wrongdoing by those

10   same managers.  *See Ryan v. Gifford*, No. 2213, 2007 WL 4259557, at \*3 (Del. Ch. Nov. 30,

11   2007) ("The Special Committee was formed to investigate wrongdoing and in response to

12   litigation in which certain directors were named as individual defendants.  This describes a

13   relationship [with these directors] more akin to one adversarial in nature.").

14        Here there is substantial reason to believe that confidential information about the Audit

15   Committee's investigation was disclosed to LDK's executives and attorneys.  Most notably,

16   counsel for Defendants' repeated description of the investigation in court filings, and counsel's

17   emphatic but unverified statements that the investigation fully cleared LDK, some of which are

18   set forth above (p. 4), indicates familiarity with non-public information about the investigation.[5]

19   Disclosure is also suggested by the fact that counsel for LDK, and not counsel for the Audit

20   Committee, filed this motion—presumably counsel has some substantive information about the

21   contents of the documents it says are properly protected from disclosure.

22        The artfully drafted declaration of the Audit Committee's counsel suggests that

23   Defendants are concerned about the waiver issue, but cannot deny that confidential information

---

[5] In their briefs Defendants make claims about the findings of the Audit Committee investigation that go beyond what was reported in LDK's December 2007 press release (RJN Ex. C).  *See, e.g.*, Defs.' Mot. to Dismiss at 12, Apr. 7, 2008, Dkt. No. 68 (claiming that "according to every sufficiently knowledgeable entity that has conducted a thorough investigation of LDK's inventory, (1) **all** of LDK's stated inventory did exist, and (2) **100%** of this polysilicon inventory was usable," statements not made in the press release) (emphasis added).

1   was disclosed.  The declarant says that, to the "best of his knowledge," Defendant Peng, LDK's

2   CEO, "recused himself from participation in the investigation," but he does not describe the role

3   of other LDK executives or say that his firm did not share confidential information with Peng or

4   others.  (Decl. of J. Kreissman, ¶ 2.)  Given that LDK officers, directors and members of the

5   Audit Committee would be best able to confirm that investigative materials were kept

6   confidential, Defendants' failure to submit a declaration by anyone from LDK is telling.

7         At a minimum, LDK has not met its burden of showing that confidential information

8   about the Audit Committee's investigation was not disclosed to persons outside the Audit

9   Committee.  Consequently, LDK cannot invoke the attorney-client privilege or the work product

10   doctrine.

11       **B.**     ***Defendants Have Not Shown Any Burden***

12         Having never met and conferred on the scope of discovery in this case, and relying on

13   nothing more than unsupported assertions, Defendants insist that many of the documents Plaintiff

14   seeks are irrelevant and that complying with the discovery request would be "unduly

15   burdensome." (Mem. at 11.)  But a party who objects to a discovery request on these grounds

16   must

> specifically state the objection and how it relates to the particular
> request being opposed, and not merely incant the familiar litany that
> a request is "overly broad and burdensome" or "oppressive" or
> "vexatious" or "not reasonably calculated to lead to the discovery
> of admissible evidence."  Rather, the objection must show
> ***specifically how*,** despite the broad and liberal construction afforded
> the federal discovery rules, each request is irrelevant or overly
> broad, burdensome or oppressive.…[I]n light of the broad
> construction given to discovery requests, the objecting party has a
> heavy burden to show why discovery should be denied.…

*Flanagan,* 2008 WL 2073952, at *4 (emphasis in original).[6]  A party claiming that a discovery

---

[6] A case Defendants rely on contains similar reasoning:
> In order to satisfy its burden, the objecting party must make a
> specific, detailed showing of how a request is burdensome.  A mere
> statement … that a request is overly broad and unduly burdensome
> is not adequate ….  Broad-based, non-specific objections are almost
> impossible to assess on their merits, and fall woefully short of the
> burden that must be borne by a party making an objection to a[] …
> document request.  A party asserting undue burden typically must

1   request is overly burdensome must "show not only undue burden or expense, but that the burden

2   or expense is unreasonable in light of the benefits to be secured from the discovery."

3   *Swackhammer v. Sprint Corp. PCS*, 225 F.R.D. 658, 666 (D. Kan. 2004).  Defendants' naked

4   assertion of undue burden with respect to relevant documents falls far short of the required

5   showing.

6          Defendants provide no explanation of the supposed burden of complying with their

7   discovery obligations.  *See Flanagan,* 2008 WL 2073952, at *8 (party opposing discovery "failed

8   to submit a declaration regarding the potential burden imposed by these … requests for

9   production," imposing sanctions).  They complain that the requests cover documents dating from

10  a year or two before LDK's creation,[7] but do not say why it would be burdensome for LDK to

11  simply explain—if true—that no documents exist for this time period.[8]

12         Defendants' insistence that "it is highly improbable that [relevant] documents existed"

13  before LDK's June 1, 2007 initial public offering date (Mem. at 11), is unsupportable.  Not only

14  do the LDK financial statements that the Complaint asserts were fraudulent cover periods prior to

15  June, but this Court held earlier this year that

16             Plaintiffs have sufficiently alleged that defendants knew there were
               inventory and accounting discrepancies prior to the IPO.  In

17             February 2007, LDK's lead auditor KPMG had raised concerns
               about the "inadequate" inventory accounting and "significant

18             deficiency" in LDK's internal controls."

19  (Order Den. Defs.' Mot. to Dismiss at 19, May 29, 2008, Dkt. No. 85.)

20         Given Defendants' admission that they have not even begun to look for documents, their

21  _____

22             present an affidavit or other evidentiary proof of the time or
               expense involved in responding to the discovery request.

23  *S.E.C. v. Brady*, 238 F.R.D. 429, 437 (N.D. Tex. 2006) (internal quotations and citations omitted).
    The court in that case held that undue burden had been established because, according to

24  affidavits, the request would require a non-party to review of 32,222,000 pages of electronic
    documents and over 200 boxes of  paper documents, and the "vast majority … if not all" the

25  documents were available from a party to the case.  *Id.* at 438.
         [7] Defendants emphasize that LDK "'started operations in 2006.'"  (Mem. at 11.)  But,

26  according to LDK itself, its "principal operating subsidiary … was incorporated … on July 5,
    2005."  LDK Form F-1 at 67 (May 11, 2007), RJN Ex. A.

27       [8] The date range set out in the document requests was meant to capture all potentially
    relevant documents, but Plaintiff would have been willing to discuss this range with Defendants

28  to reach a better understanding of when relevant documents were created.

OPP. TO DEFS.' MOT. FOR A PROTECTIVE ORDER—
MASTER FILE NO. C-07-05182-WHA

1   claim of undue burden rings hollow.

2       **C.    The Court Should Rule That These Documents Are Discoverable**

3       In addition to rejecting Defendants' request for a protective order, the Court should

4   consider affirmatively ruling that documents that are subject to the pending document requests

5   cannot be withheld on privilege or undue burden grounds.  The Federal Rules of Civil Procedure

6   provide that "[i]f a motion for a protective order is wholly or partly denied, the court may, on just

7   terms, order that any party or person provide or permit discovery." Fed. R. Civ. P. 26(c)(2).  The

8   comment to the Rule explains that this language was inserted so that "[w]hen a motion for a

9   protective order is made and the court is disposed to deny it, the court may go a step further and

10  issue an order to provide or permit discovery…. Since the court has heard the contentions of all

11  interested persons, an affirmative order is justified." Fed. R. Civ. P. 26 Advisory Comm. Notes,

12  1970 Amend. Subdiv. (c).

13      This motion for a protective order reflects the gamesmanship and determination to delay

14  that seems to have characterized Defendants' approach to discovery.  Here, Defendants have

15  asked the Court for relief even though they should have known that the factual record was

16  insufficient to permit the Court to conclude that the documents at issue are not discoverable.

17  Presumably, if the Court does nothing more than deny this motion, Defendants will continue their

18  refusal to produce and will raise the same issues—privilege. Work product and burden—in

19  response to a motion to compel production.  But Rule 26(c)(2) allows the Court to prevent parties

20  from benefiting from such dilatory tactics.  To keep Defendants from unfairly relitigating these

21  same issues in the future, the Court should consider ruling that the documents at issue are not

22  protected by the attorney-client privilege or as work product and that producing them would not

23  impose an undue burden on the producing party.[9]

24  _____

25      [9] As permitted by Civil Local Rule 7-3(a), a Proposed Order accompanies this
    Memorandum.  The Objections to the document requests that Defendants (and Simpson Thacher)
26  served on Plaintiff (Kaplan Decl. Ex. B & C) raise several objections to production in addition to
    the attorney-client privilege, work product protection and relevance/undue burden issues that are
27  the focus of Defendants' protective order motion.  The language of the Proposed Order makes
    clear that Plaintiff does not ask the Court to decide now any objection to production that has not
28  been raised by Defendants themselves in their current motion.  For example, in their Objections

1

### D.    Defendants' Motion May Also Be Dismissed As Premature

2    If the Court opts not to rule on the merits of the privilege and undue burden issues now, it

3  can dismiss Defendants' motion as premature—Defendants have yet to comply with their

4  obligation to try to negotiate a resolution of discovery disputes before seeking judicial relief.

5    The Federal Rules of Civil Procedure envision a "party-controlled" system of discovery in

6  which "[i]n general, … reasonable lawyers can cooperate to manage discovery without the need

7  for judicial intervention." Fed. R. Civ. P. 26 Advisory Comm. Notes, 2002 Amend. Subdiv.

8  (b)(1).  This philosophy is reflected in the requirement that a motion for a protective order must

9  be accompanied by "a certification that the movant has in good faith conferred or attempted to

10  confer with other affected parties in an effort to resolve the dispute without court action." Fed. R.

11  Civ. P. 26(c)(1); see also Civil L.R. 37-1 (Prior to filing discovery motion counsel must "confer[]

12  for the purpose of attempting to resolve all disputed issues.") (emphasis added).  The mandate to

13  confer requires "a good faith effort to resolve the discovery dispute without the need for court

14  intervention." Fed R. Civ. P. R 26 Advisory Comm. Notes, 1993 Amend. Subdiv. (c); see also

15  Civil L.R. 1-5(n) ("'Meet and confer' or 'confer' means to communicate directly and discuss in

16  good faith the issue(s) …. [T]his requirement can be satisfied only through direct dialogue and

17  discussion"). .

18    Defendants have ignored the consultation requirements of the Federal and Local Rules—

19  their certification that "the parties conferred … regarding the issues set forth in Defendants'

20  motion" (Mem. at 13) is apparently based solely on their demand that Plaintiff withdraw his

21  discovery requests.  Consultation requires more than a unilateral demand.

22    Even if Defendants are correct and all discovery has been stayed by the most recent

23  motion to dismiss, this would not make consultations on discovery matters inappropriate.

24  Discovery will eventually go forward, at least as to the Defendants whose motion to dismiss has

25  already been denied, and the PSLRA stay does not prevent the parties from discussing discovery

26

27  Defendants suggest that some documents may be protected because they contain confidential
proprietary information.  Plaintiff recognizes that, even if the Court adopts the Proposed Order,
28  Defendants can still assert that specific documents are protected from disclosure because they
contain confidential proprietary information if they have a good faith basis to do so.

1 issues.  Plaintiff has always been willing to consider modification of his document requests to the

2 extent legitimately necessary to accommodate privilege concerns and to avoid any undue burden.

3      ***E.    The Status Of The Discovery Stay Has Already Been Argued***

4      Plaintiff set forth in detail the reasons he believes that the discovery stay only applies to

5 those Defendants whose motions to dismiss have not yet been decided in his Opposition to

6 Defendants' Motion to Stay Discovery.  (Aug. 21, 2008, Dkt. No. 116.)  He incorporates by

7 reference those arguments into this Memorandum.

8      Because discovery will eventually go forward, the Court may rule now on the attorney-

9 client privilege, work product protection and undue burden issues, regardless of how it decides

10 the motion to stay.

11 **V.    <u>CONCLUSION</u>**

12      For the reasons set forth above, Defendants' motion for a protective order should be

13 denied and Plaintiff's proposed order with respect to discovery should be approved.

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Cohen, Milstein, Hausfeld & Toll P.L.L.C.

Opp. To Defs.' Mot. For A Protective Order—
Master File No. C-07-05182-WHA
- 19 -

| | |
|---|---|
| 1 | Dated: September 4, 2008 |
| 2 | |
| 3 | |
| 4 | |
| 5 | |
| 6 | |

COHEN, MILSTEIN, HAUSFELD & TOLL
P.L.L.C.


By:  /s/ Michael Lehmann
        Michael Lehmann

Cohen, Milstein, Hausfeld & Toll P.L.L.C.
mlehmann@cmht.com
One Embarcadero Center
Suite 526
San Francisco, CA 94111
Telephone:    (415) 623-2048
Facsimile:    (415) 433-5994


Cohen, Milstein, Hausfeld & Toll P.L.L.C.
Herbert E. Milstein
Steven J. Toll
Joshua S. Devore
Matthew B. Kaplan
hmilstein@cmht.com
1100 New York Avenue, N.W.
Suite 500, West Tower
Washington, DC  20005
Telephone:    (202) 408-4600
Facsimile:    (202) 408-4699

**Lead Counsel for the Proposed Class**

Cohen, Milstein,
Hausfeld & Toll
P.L.L.C.

1

## CERTIFICATE OF SERVICE

2

3      I hereby certify that on this date, I electronically filed the foregoing with the Clerk of the

4  Court using the CM/ECF system which will send notification of such filing to the e-mail

5  addresses of the parties of record.

6      I further certify that Service Pursuant to Civil Local Rule 23-2 will be made electronically

7  to:

8          Securities Class Action Clearinghouse
           Att. Juan-Carlos Sanchez/Cara Mia Perlas
9          Stanford University School of Law
           Crown Quadrangle
10         Stanford, CA 94305-8612
           scac@law.stanford.edu
11

12

13                              ____/s/ Michael P. Lehmann____
                                Michael P. Lehmann
14
                                September 4, 2008
15

16

17

18

19

20

21

22

23

24

25

26

27

28

COHEN, MILSTEIN,
HAUSFELD & TOLL
P.L.L.C.