LATHAM & WATKINS LLP
  James J. Farrell (Bar No. 166595)
  james.farrell@lw.com
633 West Fifth Street, Suite 4000
Los Angeles, California 90071-2007
Telephone: (213) 485-1234
Facsimile: (213) 891-8763

LATHAM & WATKINS LLP
  Philip J. Wang (Bar No. 218349)
  philip.wang@lw.com
140 Scott Drive
Menlo Park, California 94025
Telephone: (650) 328-4600
Facsimile: (650) 463-2600

Attorneys for Defendants

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re LDK SOLAR SECURITIES LITIGATION<br><br>This Document Relates To:<br><br>ALL ACTIONS. | MASTER FILE NO. C-07-5182-WHA<br><br>**DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS LEAD PLAINTIFF'S CONSOLIDATED CLASS ACTION COMPLAINT**<br><br>**[FRCP 12(b)(2) AND 12(b)(6)]**<br><br>Judge:      Hon. William H. Alsup<br>Date:        September 18, 2008<br>Time:       8:00 a.m.<br>Courtroom: 9, 19th Floor |

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS
CONSOLIDATED CLASS ACTION COMPLAINT
MASTER FILE NO. C-07-5182-WHA

**TABLE OF CONTENTS**

Page

I. INTRODUCTION ........................................................................................................... 1

II. ARGUMENT .................................................................................................................. 2

    A. Plaintiff Fails To Establish Personal Jurisdiction .............................................. 2

        1. The Non-Speaking Defendants' Positions Do Not Confer Jurisdiction. ............................................................................................ 2

        2. Plaintiff Fails to Establish "Purposeful Availment" ............................... 3

        3. Jurisdiction Over The Non-Speaking Defendants Would Be Unreasonable ........................................................................................ 4

        4. Section 20(a) Does Not Extend the Boundaries of Personal Jurisdiction. ............................................................................................ 5

    B. Plaintiff Has Not Pled Control Person Liability ................................................ 6

    C. Plaintiff Fails To Plead 10(b) Violations By The Remaining 10(b) Defendants ........................................................................................................ 7

        1. Plaintiff Pleads No False Statements by the Remaining 10(b) Defendants ............................................................................................ 7

            a. Plaintiff Cannot Manufacture Liability Through Group Pleading Based On Execution Of The IPO Prospectus. ............................................................................ 8

            b. Plaintiff Cannot Manufacture Liability Through Group Pleading Based On The October 4, 2007 Press Release. ......................................................................... 9

        2. Plaintiff Fails To Plead Scienter As To The Remaining 10(b) Defendants. ......................................................................................... 10

            a. Plaintiff has not alleged that the Remaining 10(b) Defendants knew of any inventory discrepancies Before June 1, 2007. ................................................................. 11

            b. Plaintiff Has Not Alleged That The Remaining 10(B) Defendants Knew Of Any Inventory Discrepancies In October 2007. ..................................................... 13

            c. Plaintiff's purported "motives to engage in fraud" have been rejected as a matter of law. ......................................... 14

        3. Plaintiff Has Alleged No Conduct upon which a Securities Fraud Violation Could be Based. ........................................................... 15

III. CONCLUSION ............................................................................................................. 15

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

i

REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS
CONSOLIDATED CLASS ACTION COMPLAINT
MASTER FILE NO. C-07-5182-WHA

# TABLE OF AUTHORITIES

Page

## CASES

Batwin v. Occam Networks, Inc.,
  Fed. Sec. L. Rep. (CCH) ¶ 94,776 (C.D. Cal. July 1, 2008)..................................................8

Burger King v. Rudzewicz,
  471 U.S. 462 (1985).............................................................................................................4

City of Brockton Ret. Sys. v. Shaw Group, Inc.
  540 F. Supp. 2d 464 (S.D.N.Y. 2008)................................................................................12

City of Monroe Employees Ret. Syst. v. Bridgestone Corp.,
  399 F.3d 651 (6th Cir. 2005) ...............................................................................................5

Davis v. Metro Production, Inc.,
  885 F. 2d 515 (9th Cir. 1989) ..............................................................................................2

Doe v. Geller,
  533 F. Supp. 996 (N.D. Cal. 2008) .....................................................................................4

Howard v. Everex,
  228 F.3d 1057 (9th Cir. Cal. 2000)......................................................................................9

In re 2TheMart.com, Inc. Sec. Litig.,
  114 F. Supp. 2d 955 (C.D. Cal. 2000) ...............................................................................10

In re AstraZeneca Sec. Litig.,
  No. 05 Civ. 2688 (TPG), 2008 WL 2332325 (S.D.N.Y. June 3, 2008).......................... 1, 3

In re Baan Co. Sec. Litig.,
  245 F. Supp. 2d 117 (D.D.C. 2003) ....................................................................................6

In re CornerStone Propane Partners, L.P. Secs. Litig.,
  416 F. Supp. 2d 779 (N.D. Cal. 2005) ........................................................................... 9, 10

In re Hansen Natural Corp. Sec. Litig.,
  527 F. Supp. 2d 1142 (C.D. Cal. 2007) ......................................................................passim

In re Infonet Services Corp. Sec. Litig.,
  310 F. Supp. 2d 1080 (C.D. Cal. 2003) .............................................................................11

In re Infosonics Corp. Sec. Litig.,
  No. 06cv1231 BTM(WMc), 2007 U.S. Dist. LEXIS 57784 (S.D. Cal. Aug. 7,
  2007) ..................................................................................................................................10

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS
CONSOLIDATED CLASS ACTION COMPLAINT
MASTER FILE NO. C-07-5182-WHA

In re Int'l Rectifier Corp. Secs. Litig.,
 No. CV 07-02544-JFW (VBKx), 2008 U.S. Dist. LEXIS 44872 (C.D. Cal.
 May 23, 2008) .......................................................................................................... 7, 13, 15

In re LDK Solar Sec. Litig.,
 No. C 07-05182 WHA, 2008 U.S. Dist. LEXIS 42425 (N.D. Cal. May 29,
 2008) ................................................................................................................................... 9

In re McKesson HBOC, Inc. Sec. Litig.,
 126 F. Supp. 2d 1248 (N.D. Cal. 2000) ......................................................................... 6, 7

In re Next Card, Inc. Sec. Litig.,
 2006 U.S. Dist. LEXIS 16156 (N.D. Cal. 2006) ................................................................. 6

In re Silicon Graphics Sec. Litig.,
 970 F. Supp. 746 (N.D. Cal. 1997) ................................................................................ 8, 11

In re Splash Technology Holdings, Inc. Sec. Litig.,
 2000 U.S. Dist. LEXIS 15369 (N.D. Cal. 2000) ................................................................. 7

Jette v. Mcqueen,
 No. C 05-2226, 2006 WL 2839133 (N.D. Cal. October 3, 2006) ....................................... 4

LeDuc v. Kentucky Cent. Life Ins. Co.,
 814 F. Supp. 820 (N.D. Cal. 1992) ..................................................................................... 3

Lipton v. Pathogenesis Corp.,
 284 F.3d 1027 (9th Cir. 2002) ........................................................................................... 14

No. 84 Employer-Teamster Joint Counsel Pension Trust Fund v. America West
 Holding Corp.,
 320 F.3d 920 (9th Cir. 2003) ............................................................................................... 6

Paracor Finance, Inc. v. General Elec. Capital Corp.,
 96 F.3d 1151 (9th Cir. 1996) ............................................................................................... 7

Rudolph v. UTStarcom,
 No. C 07-04578 SI, 2008 U.S. Dist. LEXIS 63990 (N.D. Cal. Aug. 21, 2008) .................. 8

San Mateo County Transit v. Dearman, Fitzgerald,
 979 F.2d 1356 (9th Cir. 1992) ............................................................................................. 5

Schwarzenegger v. Fred Martin Motor Co.,
 974 F. 3d 915 (9th Cir. 2001) .............................................................................................. 3

Siemers v. Wells Fargo & Co.,
 2006 U.S. Dist. LEXIS 81097 (N.D. Cal. Oct. 24, 2006) ................................................... 9

Stoneridge Inv. Partners, LLC v. Scientific-Atlanta, Inc.,
 128 S. Ct. 761 (2008) .......................................................................................................... 7

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

iii

REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS
CONSOLIDATED CLASS ACTION COMPLAINT
MASTER FILE NO. C-07-5182-WHA


Case 3:07-cv-05182-WHA    Document 126    Filed 09/04/2008    Page 5 of 20

Tellabs, Inc. v. Makor Issues & Rights, Ltd.,
   127 S. Ct. 2499 (2007) .............................................................................................. 9, 10

**STATUTES**

15 U.S.C. § 74u-4(b)(2) ....................................................................................................... 12

15 U.S.C. § 78u-4(b)(2) ................................................................................................. 10, 11

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

iv

REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS
CONSOLIDATED CLASS ACTION COMPLAINT
MASTER FILE NO. C-07-5182-WHA

# REPLY MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Plaintiff's Opposition makes several key concessions and relies on assertions outside the Complaint that fail to establish a claim against Jiangxi LDK Solar, Xingxue Tong, Qiqiang Yao, Liangbao Zhu, Yonggang Shao, and Gang Wang (collectively, the "Non-Speaking Defendants").[1] In response to Defendants' first motion to dismiss, Plaintiff argued that the Complaint stated a claim as to all Defendants. Now, when pressed a second time, Plaintiff concedes that his claims against three defendants – Yonggang Shao, Gang Wang and Jiangxi LDK Solar – should be dismissed. The defects in the Complaint, however, do not end there.

In a similar unreliable approach, Plaintiff stresses that LDK's operations, board and management are based in China, but fails to establish that the Court has personal jurisdiction over these foreign-based defendants. Plaintiff offers nothing to link these defendants to any wrongful conduct in the U.S. The evidence presented in the moving papers shows that the Non-Speaking Defendants simply do not have sufficient connections to the U.S. to create jurisdiction.

Plaintiff's assertion that the Individual Defendants are subject to personal jurisdiction because they signed the June 1, 2007 IPO prospectus is directly contrary to the law. In In re AstraZeneca Sec. Litig., No. 05 Civ. 2688 (TPG), 2008 WL 2332325, at *13 (S.D.N.Y. June 3, 2008), the Court rejected the exact same argument, noting that signing an SEC document in a foreign country, without more, was insufficient to confer personal jurisdiction.

Simply put, Plaintiff has offered nothing to establish that this Court has jurisdiction over the Non-Speaking Defendants, who have no connection to the U.S. besides their employment by a Cayman Island corporation with principal operations in China. The Court should dismiss the Complaint against the Non-Speaking Defendants for lack of personal jurisdiction.

Plaintiff's arguments regarding the substance of the Complaint are similarly lacking. After admitting no basis exists for a Section 10(b) claim against three defendants, Plaintiff argues his Section 20(a) claim still stands. But to support that claim, Plaintiff admittedly relies

---

[1] Defendants Tong, Yao, Zhu, Shao and Wang are sometimes referred to collectively as the "Individual Defendants."

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

1   REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS
CONSOLIDATED CLASS ACTION COMPLAINT
MASTER FILE NO. C-07-5182-WHA

on arguments that are not premised on any allegations in the Complaint.  Because the Complaint admittedly does not even plead the allegations Plaintiff contends are critical to stating a legitimate claim, the Court should grant this motion on that basis alone.

Even with these extra-judicial assertions, Plaintiff has not stated a 20(a) claim against these defendants.  A complaint must allege facts showing that defendants: (1) actually exercised control over the primary violators, and (2) had control over the specific transactions alleged to be fraudulent to state a Section 20(a) claim.  Here, Plaintiff offers nothing to demonstrate that these defendants had actually exerted control over the alleged "primary violators."  Also, the Complaint contains no allegations establishing that these defendants had control over the Company's specific inventory calculations at issue here, as the law requires to state a claim under Section 20(a).  Plaintiff's Opposition tries to gloss over these required elements by arguing in conclusory terms that all directors and officers are liable under Section 20(a), but the law is to the contrary, and the Complaint sets forth essentially nothing about these Individual Defendants.

Plaintiff concedes that he cannot allege a Section 10(b) violation against Jiangxi LDK Solar, Shao and Wang, but wrongly insists that he has pled a viable claim against Xingxue Tong, Qiqiang Yao, and Liangbao Zhu (the "Remaining 10(b) Defendants").  Plaintiff merely claims that the Remaining 10(b) Defendants were members of LDK's board and/or signed the IPO prospectus.  But Plaintiff fails to allege that these Defendants made any false statements and falls far short of pleading the strong inference of scienter required by the PSLRA.  Because Plaintiff has failed to plead with particularity the essential elements of falsity and scienter, the Section 10(b) claims should be dismissed as to the Remaining 10(b) Defendants.

## II. ARGUMENT

### A. Plaintiff Fails To Establish Personal Jurisdiction

#### 1. The Non-Speaking Defendants' Positions Do Not Confer Jurisdiction.

Plaintiff argues that personal jurisdiction over the Non-Speaking Defendants is proper because they are "key LDK insiders."  Opp. at 6.  But the law is to the contrary.  Ninth Circuit law mandates that an individual's role as an agent or employee of a corporation alone does not establish personal jurisdiction.  "For personal jurisdiction to lie, the character, quality and nature

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

2

REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS
CONSOLIDATED CLASS ACTION COMPLAINT
MASTER FILE NO. C-07-5182-WHA

of [each defendant's] activity must bear a substantial relationship to the causes of action beyond that derived solely his official position with the corporation." <u>Davis v. Metro Production, Inc.</u>, 885 F. 2d 515, 520 (9th Cir. 1989); <u>LeDuc v. Kentucky Cent. Life Ins. Co.</u>, 814 F. Supp. 820, 825 (N.D. Cal. 1992) ("A court does not have jurisdiction over individual officers and employees of a corporation just because the court has jurisdiction over the corporation."). Contrary to Plaintiff's argument, this Court has emphasized that jurisdiction over a corporation's officers in their individual capacities "must be based on their personal contacts with the forum, not their acts and contacts carried out solely in a corporate capacity." <u>LeDuc</u>, 814 F. Supp. at 825.

Plaintiff's Opposition ignores this key distinction between the personal capacities of the Individual Defendants and their alleged conduct as officers and directors of LDK. The unrefuted evidence shows that the Non-Speaking Defendants – all of whom lack any relevant contacts with the U.S. – are not subject to personal jurisdiction here. Mot. at 3-5. Absent a showing of any such contacts, there is no basis to haul the Non-Speaking Defendants into the courts here.

       2.    <u>Plaintiff Fails To Establish "Purposeful Availment."</u>

Plaintiff makes the conclusory assertion that it is "difficult to imagine" what more the Non-Speaking Defendants could have done to avail themselves to the benefits of U.S. law. Opp. at 9-11. But Plaintiff's lack of imagination does not suffice; a plaintiff must present evidence showing a defendant's conduct in the U.S. to warrant hauling a foreigner before the court. Purposeful availment "typically consists of evidence of a defendant's actions in the forum, such as executing or performing a contract there." <u>Schwarzenegger v. Fred Martin Motor Co.</u>, 974 F. 3d 915, 922 (9th Cir. 2001).

Plaintiff's sole argument in support of jurisdiction is the fact that the Non-Speaking Defendants signed LDK's IPO prospectus. But the law is directly contrary to this position. In <u>In re AstraZeneca</u>, 2008 WL 2332325, at * 13, the court rejected the argument that personal jurisdiction lies when a foreigner merely signs a document filed with the SEC. Plaintiff fails to explain why <u>AstraZeneca</u> is not applicable and merely suggests that the Court should ignore it as *dicta*. Opp. at 11. In fact, <u>AstraZeneca</u> is directly on point. Like <u>AstraZeneca</u>, the Individual Defendants here are foreign defendants who are alleged to have caused the distribution of false

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

3

REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS
CONSOLIDATED CLASS ACTION COMPLAINT
MASTER FILE NO. C-07-5182-WHA

and misleading reports and statements to U.S. investors. And, like <u>AstraZeneca</u>, Plaintiff claims that jurisdiction over the defendants is appropriate solely because they signed an SEC filing while abroad. <u>AstraZeneca</u> is irrefutably instructive, and Plaintiff offers no contrary authority.

In the same vein, Plaintiff's discussion of the "arising out of" requirement is wholly inadequate. Rather than explaining how his claims against the Non-Speaking Defendants "arise out of" or relate to the U.S., Plaintiff again relies exclusively on the Individual Defendants' signatures on LDK's IPO prospectus. As discussed above, however, the act of signing an SEC filing in a foreign country is insufficient to establish personal jurisdiction. Thus, Plaintiff also fails to satisfy the "arising out of" requirement of the personal jurisdiction analysis.

### 3. <u>Jurisdiction Over The Non-Speaking Defendants Would Be Unreasonable</u>.

Even if Plaintiff could establish that the Individual Defendants purposefully availed themselves of U.S. law <u>and</u> that a nexus exists between forum-related conduct (which he cannot), the exercise of jurisdiction would be improper because it would be unfair and unreasonable. <u>See</u> <u>Burger King v. Rudzewicz</u>, 471 U.S. 462, 476 (1985).

First, the Non-Speaking Defendants indisputably have no contacts with the U.S. They do not live in the U.S., nor do they own property here, work here or travel here frequently. This utter lack of contacts with the U.S. weighs heavily against the exercise of personal jurisdiction. <u>See</u> <u>Doe v. Geller</u>, 533 F. Supp. 996, 1007 (N.D. Cal. 2008) (holding attenuated contacts with forum weighs against personal jurisdiction); <u>Jette v. Mcqueen</u>, No. C 05-2226, 2006 WL 2839133, at *1 (N.D. Cal. October 3, 2006) ("[T]he exercise of personal jurisdiction over Katz would be unreasonable under the circumstances, in view of his lack of contacts with the [forum]."). In addition, since each of the Individual Defendants lives and works in China, they would be significantly inconvenienced by standing suit in the U.S.

Moreover, Plaintiff's unsupported argument that jurisdiction is proper because all Defendants are represented by LDK's U.S. counsel is absurd. Opp. at 12. The Non-Speaking Defendants' retention of counsel in the U.S. is irrelevant to the question of whether they should be subjected to personal jurisdiction in the U.S. <u>See</u> <u>Z-Rock Communications Corp. v. William A Exline, Inc.</u>, No. C 03-02436, 2004 WL 1771569, at *19 (August 6, 2004) (noting that post-

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

4

REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS
CONSOLIDATED CLASS ACTION COMPLAINT
MASTER FILE NO. C-07-5182-WHA

suit contacts, such as retention of local counsel, is irrelevant for purposes of establishing personal jurisdiction). If hiring U.S. counsel could confer jurisdiction, all foreign defendants would be trapped in a Catch-22 – retain local U.S. counsel to fight jurisdiction and thereby create U.S. Court jurisdiction, or refrain from obtaining local U.S. counsel and risk conceding the case completely.

### 4. Section 20(a) Does Not Extend The Boundaries Of Personal Jurisdiction.

Plaintiff next contends the personal jurisdiction standard should be expanded to include the Non-Speaking Defendants merely because he asserts a Section 20(a) claim against them. Plaintiff relies solely on San Mateo County Transit v. Dearman, Fitzgerald, 979 F.2d 1356, 1357 (9th Cir. 1992), a two-page decision, where the district court concluded that it lacked jurisdiction because the Section 20(a) claim was meritless on its face. The Ninth Circuit reversed, holding the court erred in collapsing jurisdiction into the elements of the Section 20(a) claim and finding the Section 20(a) claim so frivolous on its face that the court lacked jurisdiction. Id.

Plaintiff seeks to distort the limited text of the San Mateo case. The district court in San Mateo "put the cart before the horse," holding that it lacked jurisdiction because it believed plaintiff insufficiently alleged Section 20(a) liability. Id. at 1358. Plaintiff seeks to exploit that case by arguing the corollary to the district court's "cart before the horse" rationale: that because he asserts he has pled a colorable Section 20(a) claim, this Court should circumvent the requirements of due process and ignore the limitations of personal jurisdiction. That is not the holding of San Mateo. The San Mateo case merely stands for the position that the district court has jurisdiction to resolve even a weak Section 20(a) claim. It does not hold that by alleging a weak Section 20(a) claim, the district court has infinite jurisdiction and the due process requirements for personal jurisdiction are waived, as Plaintiff now argues.

Indeed, several cases have rejected Plaintiff's exact argument. Since San Mateo, the PSLRA, Sarbanes Oxley and numerous securities cases have been decided. The well-reasoned cases conclude that, while the courts may have jurisdiction to resolve a nearly frivolous Section 20(a) claim, that does not mean that a nearly frivolous Section 20(a) claim deprives the district court of the obligation to consider whether it has jurisdiction over the parties. Notably, the Sixth Circuit in City of Monroe Employees Ret. Syst. v. Bridgestone Corp., 399 F.3d 651, 667 (6th

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

5

REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS
CONSOLIDATED CLASS ACTION COMPLAINT
MASTER FILE NO. C-07-5182-WHA

1  Cir. 2005), held that "The broad understanding of control person liability adopted by securities
2  laws cannot on its own support personal jurisdiction. This approach would . . . impermissibly
3  conflate [ ] statutory liability with the Constitution's command that the exercise of personal
4  jurisdiction must be fundamentally fair." See also In re Baan Co. Sec. Litig., 245 F. Supp. 2d
5  117, 129 (D.D.C. 2003) ("Congress' decision to make a broad group of persons liable under the
6  securities laws cannot on its own discharge the responsibility of federal courts to ensure that such
7  persons have sufficient connection to the United States to render jurisdiction over them
8  compatible with the Due Process Clause. The Fifth Amendment is made of sterner stuff.").

Finally, as discussed in section II.B, Plaintiff has not properly alleged a colorable Section
20(a) claim against the Individual Defendants. Plaintiff's reliance on Section 20(a) as a basis for
personal jurisdiction underscores his desperate attempt to "hook" foreign defendants with no
contacts in the U.S. The law simply does not support his position.

**B.     Plaintiff Has Not Pled Control Person Liability**

To state a Section 20(a) claim, Plaintiff must establish that the Non-Speaking
Defendants: (1) actually exercised control over the primary violator's activities; and (2) had
control over the specific transaction that is the predicate for the alleged violation. See No. 84
Employer-Teamster Joint Counsel Pension Trust Fund v. America West Holding Corp., 320 F.3d
920, 945 (9th Cir. 2003). Plaintiff's Complaint instead provides only two conclusory paragraphs
to establish Section 20(a) liability. Complaint ¶¶ 157, 158. This claim must be dismissed as to
the Individual Defendants for several reasons.

First, Wang is an outside director of LDK with no direct control over LDK's operations.
Because Section 20(a) does not extend liability to outside directors, Plaintiff's claim as to Wang
fails. In re Next Card, Inc. Sec. Litig., 2006 U.S. Dist. LEXIS 16156, at *20 (N.D. Cal. 2006)
("[t]he Court is unaware of any authority for the proposition that an outside director may be
liable under § 20(a).").

Moreover, Plaintiff has not pled any specific facts demonstrating that any of the
Individual Defendants possessed "a significant degree of day-to-day operational control,
amounting to the power to dictate [the primary violator's] conduct or operations." In re

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

6   REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS
CONSOLIDATED CLASS ACTION COMPLAINT
MASTER FILE NO. C-07-5182-WHA

McKesson HBOC, Inc. Sec. Litig., 126 F. Supp. 2d 1248, 1277 (N.D. Cal. 2000). Plaintiff argues that "specific facts are not necessary," as Section 20(a) claims are governed by the liberal notice pleading requirements of Rule 8, rather than the heightened pleading requirements of Rule 9(b) and the PSLRA. Opp. at 14. However, as this Court noted in In re Splash Technology Holdings, Inc. Sec. Litig., No. C 99-00109 SBA, 2000 U.S. Dist. LEXIS 15369, at * 84 (N.D. Cal. Sept. 29, 2000), "In order to adequately plead the second element of a control person liability claim, the complaint must plead the circumstances of the control relationship with particularity." See also McKesson, 126 F. Supp. 2d at 1277 ("The pleadings of control person liability are insufficient, because they do not identify how the Section 20(a) defendants controlled specific Section 10(b) defendants.").

Under any standard, the Complaint's allegations are woefully insufficient to establish control person liability against any of the Individual Defendants. Plaintiff seeks to establish actual control by each individual defendant through nothing more than their positions at LDK. Opp. at 16. However, status as an officer of a corporation, by itself, is insufficient to establish a presumption of control liability. See Paracor Finance, Inc. v. General Elec. Capital Corp., 96 F.3d 1151, 1163-64 (9th Cir. 1996). Plaintiff fails to establish that any of the Individual Defendants had actual participation in the control of the operations at LDK or the offending primary violator, who in this case is Peng, as Chairman of the Board of Directors, CEO and a 70% majority shareholder in LDK. Nor does Plaintiff specify how the Individual Defendants had the power to control LDK's polysilicon inventory count. Absent specific allegations showing that Individual Defendants had the required control, Plaintiff's Section 20(a) claim must be dismissed.

**C.     Plaintiff Fails To Plead 10(b) Violations By The Remaining 10(b) Defendants**

1.     Plaintiff Pleads No False Statements By The Remaining 10(b) Defendants.

To state a Section 10(b) claim against the Remaining 10(b) Defendants, Plaintiff must specify with particularity a false or misleading statement or omission attributable to each. Stoneridge Inv. Partners, LLC v. Scientific-Atlanta, Inc., 128 S. Ct. 761, 768 (2008); see also In re Int'l Rectifier Corp. Secs. Litig., No. CV 07-02544-JFW (VBKx), 2008 U.S. Dist. LEXIS

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

7      REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS
CONSOLIDATED CLASS ACTION COMPLAINT
MASTER FILE NO. C-07-5182-WHA

44872, at *32-36 (C.D. Cal. May 23, 2008) (noting that "courts since Stoneridge have continued to dismiss actors (including insiders) who have not made any misleading statements, either explicitly or implicitly because plaintiffs could not prove reliance on their actions"). The Complaint does not contain a single allegation that any of the Remaining 10(b) Defendants made or participated in the preparation of any false statements. Thus, Plaintiff incorrectly asserts that because the Remaining 10(b) Defendants signed an SEC filing and because they are officers of LDK, they are liable. These facts do not form the basis for Section 10(b) liability under controlling law. Any different conclusion would transform Section 10(b) into a strict liability regime for corporate officers and directors, which is certainly not what Congress intended.

### a. Plaintiff cannot manufacture liability through group pleading based on execution of the IPO prospectus.

The Court will be hard pressed to find any allegation in the Complaint that the Remaining 10(b) Defendants made any false statements. Nevertheless, Plaintiff argues he has satisfied the strict Section 10(b) pleading requirements because the Individual Defendants signed LDK's IPO prospectus. This argument has been flatly rejected by the courts of this Circuit. In In re Hansen Natural Corp. Sec. Litig., the court dismissed allegations of securities fraud against defendants who signed purportedly false SEC filings because plaintiffs failed to identify any false statements as to each individual. 527 F. Supp. 2d 1142, 1153 n.3 (C.D. Cal. 2007) ("A defendant must actually make a false or misleading statement in order to be held liable under Section 10(b)"); cf. Rudolph v. UTStarcom, No. C 07-04578 SI, 2008 U.S. Dist. LEXIS 63990, at *13-14 (N.D. Cal. Aug. 21, 2008) ("[T]he signing of quarterly certifications of financial statements mandated by the Sarbanes-Oxley Act does not, without more, support an inference of scienter.").[2] Plaintiff's assertion that signing an allegedly false SEC filing – without more – qualifies as a statement under the securities laws is a thinly veiled attempt to revive the defunct "group pleading doctrine." The group pleading doctrine allowed a plaintiff to presume that an officer or director was responsible for false or

---

[2] See also Batwin v. Occam Networks, Inc., Fed. Sec. L. Rep. (CCH) ¶ 94,776, at *29-30 (C.D. Cal. July 1, 2008) (holding that "Unlike in In re Hansen, plaintiff alleges that [the defendants] not only signed false SEC filings, but also used their positions on the Audit Committee to influence the content of these filings . . . Therefore, because plaintiff's § 10(b) claims against [the defendants] do not depend entirely on the allegation that these defendants signed SEC filings, they are not premised on the group pleading doctrine").

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

8

REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS
CONSOLIDATED CLASS ACTION COMPLAINT
MASTER FILE NO. C-07-5182-WHA

misleading statements in company disclosures without having to plead actual participation in their preparation or dissemination. In re Silicon Graphics Sec. Litig., 970 F. Supp. 746, 759 (N.D. Cal. 1997). But many courts, including the Supreme Court, have rejected this approach. See Hansen Natural, 527 F. Supp. 2d at 1153-54 (holding that post-Tellabs, "the group pleading doctrine did not survive the PSLRA" and merely alleging that a defendant signed false financial statements is insufficient) (citing Tellabs, Inc. v. Makor Issues & Rights, Ltd., 127 S. Ct. 2499 (2007)).[3]

For these reasons, Plaintiff's reliance solely on Howard v. Everex, 228 F.3d 1057 (9th Cir. Cal. 2000), for the proposition that any officer signing an SEC filing may be found liable under Section 10(b), is misplaced. See Opp. at 17-18. Howard must be read in accordance with the Supreme Court's mandate in Tellabs that the group pleading doctrine is contrary to the PSLRA.[4] Plaintiff may not rely on the now-defunct group pleading doctrine for the presumption that all LDK officers are liable collectively for the alleged Section 10(b) violation. Instead, he must plead with particularity facts showing the specific involvement of each of the Remaining 10(b) Defendants in the allegedly false statements.

In sharp contrast with this requirement, the Complaint is completely devoid of facts demonstrating that any of the Remaining 10(b) Defendants had knowledge of or made any false statements. Claiming that "[e]ach Moving Defendant signed LDK's IPO prospectus" does not remedy Plaintiff's failure to allege any false statements by the Remaining 10(b) Defendants.

    b. <u>Plaintiff cannot manufacture liability through group pleading based on the October 4, 2007 press release.</u>

---

[3] See also In re CornerStone Propane Partners, L.P. Secs. Litig., 416 F. Supp. 2d 779, 788 (N.D. Cal. 2005) (noting that, without the group pleading doctrine, "plaintiffs must state with particularity facts indicating that an individual defendant was directly involved in the preparation of allegedly misleading statements published by an organization") (citations omitted); In re LDK Solar Sec. Litig., No. C 07-05182 WHA, 2008 U.S. Dist. LEXIS 42425, *34 (N.D. Cal. May 29, 2008) ("[T]he group-pleading doctrine . . . contradicts the PSLRA's requirements.").

[4] Siemers v. Wells Fargo & Co., which Plaintiff cites, relies on Howard for this proposition and must also be read in accord with Tellabs. 2006 U.S. Dist. LEXIS 81097 (N.D. Cal. Oct. 24, 2006). In Siemers, plaintiff alleged that defendants engaged in a fraudulent scheme, but the court concluded that the complaint failed to establish "that the [defendants] engaged in 'substantial participation or intricate involvement in the preparation of' the misleading statements in the prospectuses and SAIs." Id. at *35-36. Therefore, the court held that, "[a]s non-speaking actors, those defendants are not liable under Section 10(b)." Id. Plaintiff here also fails to allege a single fact showing that any of the Remaining 10(b) Defendants substantially participated or had intricate involvement in the preparation of any misleading statements.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

9

REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS
CONSOLIDATED CLASS ACTION COMPLAINT
MASTER FILE NO. C-07-5182-WHA

Grasping at straws to impute some statement to the Remaining 10(b) Defendants, Plaintiff advances the convoluted argument that they are responsible for LDK's October 4, 2007 press release because they are officers of LDK, and part of the press release is "attributable to LDK's 'management team.'" Opp. at 18. This argument also lacks merit.

The Complaint makes no allegations about the Remaining 10(b) Defendants' knowledge of or participation in the filing of this press release, or any allegations that it (or its contents) may be attributed to any of them. Instead, Plaintiff asserts that "'[e]ach of the Individual Defendants who is an employee of the Company' – including Tong, Zhu and Yao – is a member of LDK's 'management team,'" and that "common sense indicates that the senior officers of a major publicly traded company are members of the management team." Opp. at 18 (citing Compl. ¶ 123). Put differently, Plaintiff claims only that the Remaining 10(b) Defendants were LDK officers and were therefore responsible for the content of the press release. But, in essence, this is merely a recitation of the rejected group pleading doctrine, and in no way shows that the Remaining 10(b) Defendants had knowledge of, or involvement in, the preparation of the press release. Because Plaintiff has not pled with particularity facts indicating that the Remaining 10(b) Defendants were involved in the preparation of the press release, Plaintiff has failed to show that its content can be attributed to any of them. See CornerStone, 416 F. Supp. 2d at 788.

    2. <u>Plaintiff Fails To Plead Scienter As To The Remaining 10(b) Defendants</u>.

Even if the Complaint contained some allegation that the Remaining 10(b) Defendants made a false or misleading statement, the Section 10(b) claims fail because Plaintiff has not pled any "facts giving rise to a strong inference" (15 U.S.C. § 78u-4(b)(2)) that each Defendant acted with the intent "to deceive, manipulate, or defraud" LDK's investors. See In re Infosonics Corp. Sec. Litig., No. 06cv1231 BTM(WMc), 2007 U.S. Dist. LEXIS 57784, at *10 (S.D. Cal. Aug. 7, 2007) (citations omitted). Plaintiff admits that the inference of scienter must be "cogent and at least as compelling as any opposing inference one could draw from the facts alleged." Opp. at 10 (citing Tellabs, 127 S. Ct. at 2510). But despite the PSLRA's requirement that Plaintiff plead with particularity facts giving rise to a strong inference of scienter as to "each alleged misrepresentation or omission," Plaintiff's Complaint provides no such facts about the

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

10

REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS
CONSOLIDATED CLASS ACTION COMPLAINT
MASTER FILE NO. C-07-5182-WHA

1  Remaining 10(b) Defendants' state of mind.  Accordingly, Plaintiff has not met the pleading

2  requirements to state a Section 10(b) claim here.  See In re 2TheMart.com, Inc. Sec. Litig., 114

3  F. Supp. 2d 955, 960 (C.D. Cal. 2000) (quoting 15 U.S.C. § 78u-4(b)(2)).

         a.      <u>Plaintiff has not alleged that the Remaining 10(b) Defendants knew of any inventory discrepancies before June 1, 2007</u>.

There is nothing in the Complaint from which the Court could infer that the Remaining 10(b) Defendants signed the IPO prospectus with scienter, *i.e.*, the intent to "deceive, manipulate, or defraud" investors.  Neither the Remaining 10(b) Defendants' positions within the Company, nor the mere act of signing the SEC filing support a strong inference of scienter.  See, e.g., In re Infonet Services Corp. Sec. Litig., 310 F. Supp. 2d 1080, 1103 (C.D. Cal. 2003); Hansen Natural, 527 F. Supp. 2d at 1159-60 (stating that otherwise "scienter would be established in every case where there was an accounting error or auditing mistake made by a publicly traded company, thereby eviscerating the pleading requirements for scienter set forth in the PSLRA."); see also Mot. to Dismiss at 15-18.  Plaintiff does not dispute those points.

Instead, and despite the complete lack of contemporaneous facts evidencing the Remaining 10(b) Defendants' mental state, Plaintiff ***simply speculates*** that by June 2007, "it would have been clear to any knowledgeable LDK insider that there was substantial reason to believe that LDK's inventory numbers were fundamentally inaccurate."  Opp. at 20.  This attempt to plead fraud by hindsight is expressly prohibited by the law.  In Re Silicon Graphics Sec. Litig., 183 F.3d 970, 988 (9th Cir. 1999) ("Congress enacted the PSLRA to put an end to the practice of pleading fraud by hindsight.").  Worse, this assertion is not supported by facts or logic.  Every professional that has examined or audited LDK's inventory found the numbers to be accurate.  See, e.g., Defs.' Request for Judicial Notice ISO Mot. to Dismiss [D.E. No. 69] ("RJN"), Ex. C at 2; RJN, Ex. S at 119, F-2.  More importantly, Plaintiff's Complaint does not set forth one allegation establishing that any of the Remaining 10(b) Defendants had knowledge or reason to know that LDK's inventory accounting was inaccurate at that time.

Indeed, Plaintiff's assertion strains logic.  LDK's IPO prospectus contained financials for <u>2006</u>, which Plaintiff does not challenge in this lawsuit, and for <u>1Q07</u>, which ended in March

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

11

REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS
CONSOLIDATED CLASS ACTION COMPLAINT
MASTER FILE NO. C-07-5182-WHA

1  2007 (just days after Situ was hired).  Given that the financial periods addressed in the IPO

2  prospectus largely preceded the tenure of Plaintiff's sole source of any claim of wrongdoing (*i.e.*,

3  Situ), Plaintiff's use of this SEC filing to demonstrate scienter fails.  The only way Plaintiff can

4  attempt to bridge this gap in logic is to set forth the ***speculative (and unfounded)*** allegation in

5  the Complaint that the purported ratio of inventory overstatement – which Situ asserts occurred

6  at the end of August 2007 – must have been present months earlier, and affected LDK's

7  financials for 1Q07.  Opp. at 20.  Such conjecture, however, cannot support a Section 10(b)

8  claim because it does not set forth particularized facts giving rise to a strong inference of

9  scienter.  15 U.S.C. § 74u-4(b)(2).  Put differently, merely claiming that LDK's inventory

10 numbers could have been wrong months earlier in no way establishes that the Remaining 10(b)

11 Defendants either knew or were reckless in not knowing of such hypothetical inventory

12 discrepancies.  Moreover, Plaintiff has alleged no e-mail or conversation between Situ and any of

13 the Remaining 10(b) Defendants that took place prior to the June 1, 2007 IPO.

14    Plaintiff also asserts that the February 2007 internal controls warning by KPMG supports

15 an inference of scienter.  This is wrong both as a matter of fact and law.  See Hansen Natural,

16 527 F. Supp. 2d at 1158 ("[A]llegations that Defendants had deficient internal controls during the

17 class period does not create a strong inference that Defendants knowingly [made] false or

18 misleading statements" and "is no basis for a securities fraud claim."); City of Brockton Ret. Sys.

19 v. Shaw Group, Inc., 540 F. Supp. 2d 464, 474 (S.D.N.Y. 2008) ("It may not be prudent as a

20 business matter to have an accounting department that has a hard time keeping up with new

21 information technology, but it is not a violation of the federal securities laws to do so.").[5]  Nor

22 can Plaintiff point to anything else in his Complaint that supports an inference that the

23 Remaining 10(b) Defendants knew of or were reckless in not knowing of any missing or

---

[5] Factually, Plaintiff's claim is deficient on several fronts.  First, the February 2007 warning pertained to LDK's operations in 2006, not 2007.  There were no such internal control warnings regarding LDK's controls for the class period during 2007.  See RJN Ex. S at 68-69.  Second, as a matter of GAAS, if a company's controls have such deficiencies, it does not mean that the financials are incorrect, but only that the auditor must perform additional substantive testing of the company's financials to ensure their accuracy, rather than merely relying on the output of a more sophisticated set of internal controls.  See AU 314, 318.  Third, KPMG's 2006 controls comment principally stemmed from the fact that LDK had yet to hire its CFO until August 2006, not from anything that supports Plaintiff's claim of inventory inflation.  See RJN Ex. S at 68-69.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

12

REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS
CONSOLIDATED CLASS ACTION COMPLAINT
MASTER FILE NO. C-07-5182-WHA

1  unusable inventory during 1Q07, or any time prior to the IPO. Indeed, Plaintiff claims that Situ
2  "repeatedly warned of inventory problems" (Opp. at 21), but this is not borne out by the
3  Complaint's actual allegations, which set forth no facts showing that Situ repeatedly warned
4  anyone about anything prior to the June 1, 2007 IPO.

5  Even Plaintiff concedes that it is "possible that, at the time of the IPO and the filing of the
6  related prospectus that LDK's inventory and accounting were entirely accurate," and that it is
7  "conceivable" that the Remaining 10(b) Defendants signed the prospectus without scienter. See
8  Opp. at 20. But Plaintiff considerably undersells these points – LDK's inventory was entirely
9  accurate at the time of the IPO and Plaintiff has not alleged scienter as to the Remaining 10(b)
10 Defendants. Not even the Complaint's source – Situ – asserted that the financials in the IPO
11 were misstated because of any inventory shortfall. Neither the Complaint, nor Situ, provide any
12 facts as to how the inventory was misstated in the IPO financials.

13
        b.    Plaintiff has not alleged that the Remaining 10(b) Defendants
14            knew of any inventory discrepancies in October 2007.

15 Similarly, there is no indication in the Complaint that the Remaining 10(b) Defendants knew
16 of any inventory accounting discrepancies at LDK on October 4, 2007 – the day the Company
17 issued an allegedly false press release. In fact, the opposite is true. That press release states that
18 LDK investigated Situ's allegations and found no support for his assertions. See RJN, Ex. B.

19 Plaintiff claims that by October 2007 there was more reason to believe that the
20 Remaining 10(b) Defendants knew of accounting issues at LDK (Opp. at 21), and argues that
21 "the most dramatic indicator of accounting problems" was Situ's departure and accompanying
22 false allegations. Opp. at 22. Far from being the most "dramatic indicator" of scienter, this
23 shows nothing about the Remaining 10(b) Defendants' mental state. First, courts have
24 repeatedly held that "resignations or terminations by themselves do not support a strong
25 inference of scienter."[6] See, e.g., Int'l Rectifier, 2008 U.S. Dist. LEXIS 44872, at *49.

---

[6] Plaintiff also alleges that Defendant Yao took part in a July 19, 2007, meeting, and a September 13, 2007, conference call, but neither of these allegations supports a strong inference of scienter as to the Remaining 10(b) Defendants. See Opp. at 21-22. Plaintiff provides no indication that Defendants Tong and Zhu were ever made aware of Situ's allegations. And even in regard to Yao, these allegations are insufficient because the meeting dealt with production delays

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

13    REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS
      CONSOLIDATED CLASS ACTION COMPLAINT
      MASTER FILE NO. C-07-5182-WHA

More importantly, Plaintiff plays down the actual content of the October 4 press release, stating only that Defendants "affirmatively told investors that Situ's allegations 'have no merit.'" Opp. at 22. The October 4 statement instead confirms that the Company took objectively appropriate steps – it "formed an internal committee to investigate the allegations and conduct an immediate physical inventory of LDK's polysilicon materials." See RJN, Ex. B. Based upon that investigation, the press release stated: "The management team believes that these allegations have no merit," because it "found no material discrepancies as compared to LDK's financial statements." Id. The release also stated that an independent auditing firm would be conducting a separate, independent inventory analysis, which would be disclosed upon completion. Id.

Viewed in total, the October 4 statement hardly demonstrates that the Remaining 10(b) Defendants acted with scienter. The portions omitted by Plaintiff show that LDK investigated Situ's allegations, and Plaintiff makes no allegation that the Remaining 10(b) Defendants were involved in this investigation. See RJN, Ex. B. LDK then performed an intricate analysis of its polysilicon materials and found no discrepancies. In other words, the Company took steps in response to Situ's allegations, and reported them on October 4. The conclusions and reporting of LDK's initial investigation on that date should weigh heavily against a finding of scienter – not support it, as Plaintiff claims. See Hansen Natural, 527 F. Supp. 2d at 1156-57.

### c. Plaintiff's purported "motives to engage in fraud" have been rejected as a matter of law.

To salvage his scienter argument, Plaintiff claims that the Remaining 10(b) Defendants had two "motives to engage in the alleged fraud." Opp. at 22. First, he claims that it was necessary to misrepresent LDK's financial strength to secure capital. Id. But this has been soundly rejected as a matter of law as a means for supporting a strong inference of scienter.[7]

---

stemming from shortfalls in a specific type of polysilicon (as explained more fully in Defendants' Mot. for Reconsideration at II.A.4 [D.E. No. 93]), and Situ's warning during the conference call was based upon his incomplete understanding of the production process. Neither of these factual allegations can support a strong inference of scienter, as neither evidences any discrepancies in LDK's total polysilicon inventory.

[7] See Lipton v. Pathogenesis Corp., 284 F.3d 1027, 1038 (9th Cir. 2002) ("If scienter could be pleaded merely by alleging that officers and directors possess motive and opportunity to enhance a company's business prospects, 'virtually every company in the United States that experiences a downturn in stock price could be forced to defend securities fraud actions.'") (citations omitted).

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

14

REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS
CONSOLIDATED CLASS ACTION COMPLAINT
MASTER FILE NO. C-07-5182-WHA

Second, Plaintiff claims the Remaining 10(b) Defendants had a "more direct motive" to artificially inflate LDK's stock price: their stock options. Opp. at 22-23. The courts have also discarded this argument as a means for supporting a strong inference of scienter. See, e.g., In re Dreamworks Animation SKG, Inc., No. CV 05-03966 MRP (VBKx), 2006 U.S. Dist. LEXIS 24456, at *19-20 (C.D. Cal. Apr. 12, 2006) (holding that "a financial motive to artificially inflate the stock price" constitutes "wholly conclusory allegations [that] do not give rise to a strong inference of scienter as required under the PSLRA."). Plaintiff cannot allege a "motive" sufficient to support a strong inference of scienter as to these Defendants merely because they had options – options they did not even exercise or sell.[8]

### 3. Plaintiff Has Alleged No Conduct Upon Which A Securities Fraud Violation Could Be Based.

Plaintiff attempts to save his Section 10(b) claims by arguing that the Remaining 10(b) Defendants had a duty to "correct or revise a prior statement." Opp. at 23. This argument illustrates the desperate nature of Plaintiff's claims. The Complaint does not contain this new theory of liability, nor does it specify which statements were "accurate when made," but later became misleading, or how the Remaining 10(b) Defendants' conduct was deceptive. This argument lacks merit and certainly cannot satisfy the heightened pleading requirements under the Reform Act.[9]

## III. CONCLUSION

For the foregoing reasons, Plaintiff's Complaint against the Non-Speaking Defendants should be dismissed with prejudice.

Dated: September 4, 2008

Respectfully submitted,

LATHAM & WATKINS LLP

By  /s/
James J. Farrell

---

[8] Plaintiff again argues that lock up agreements may have prevented the Defendants from capitalizing on their options. Opp. at 23. But this assertion evidences nothing. The absence of a profit or gain cannot create the fiction of a strong inference of scienter.

[9] See Int'l Rectifier, 2008 U.S. Dist. LEXIS 44872, at *32-36 ("[C]ourts since Stoneridge have continued to dismiss actors (including insiders) who have not made any misleading statements, either explicitly or implicitly because plaintiffs could not prove reliance on their actions."); see also Hansen Natural, 527 F. Supp. 2d at 1153 n.3.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

15   REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS
CONSOLIDATED CLASS ACTION COMPLAINT
MASTER FILE NO. C-07-5182-WHA