# In The Matter Of:

## *In re LDK SOLAR SECURITIES LITIGATION*

---

### JANE D. NETTESHEIM
*December 2, 2009*

---

## *MERRILL CORPORATION*

### *25 West 45th Street - Suite 900*
### *New York, NY 10036*
*PH: 212-557-7400 / FAX: 212-692-9171*

**NETTESHEIM, JANE D. - Vol. 1**

JANE D.  NETTESHEIM

UNITED DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

--oOo--

In re LDK SOLAR SECURITIES          )
LITIGATION                          )
                                    )Case No.
                                    )C-07-05182-WHA
                                    )
_____)

VIDEOTAPED DEPOSITION OF

JANE D. NETTESHEIM

_____

Wednesday, December 2, 2009

REPORTED BY: SHERRI STARR, CSR# 10245 (03-424729)

58980aa7-4ab1-4bbc-9ea2-405d025aac3f

JANE D.  NETTESHEIM

Page 2

1                          I N D E X

2                   INDEX OF EXAMINATIONS

3                                                Page

4   EXAMINATION BY MR. HARRISON...................  6

5

6          EXHIBITS MARKED FOR IDENTIFICATION

7   Exhibit No.          Description          Page

8

9   Exhibit 1001  Expert Report of Jane D. Nettesheim  6
                  dated October 29, 2009, no Bates
10                numbers

11  Exhibit 1002  Expert Reply Report of Jane D.       6
                  Nettesheim dated November 19, 2009,
12                no Bates numbers

13  Exhibit 1003  Document entitled, "Q2 2007         23
                  Earnings Call," Bates LDK_JN010444 -
14                LDK_JN010458

15  Exhibit 1004  Consolidated Class Action           33
                  Complaint, no Bates numbers
16

    Exhibit 1005  Article by Janet Cooper Alexander   51
17                entitled, "The Value of Bad News
                  in Securities Class Actions," dated
18                August 1994, no Bates numbers

19  Exhibit 1006  Deposition of Jane Nettesheim       91
                  dated September 19, 2008, no
20                Bates numbers

21  Exhibit 1007  UBS Investment Research analyst     107
                  report entitled, "LDK Solar Co
22                Ltd, Fundamentals to boost share,"
                  Bates LDK-NDCA-00159986 -
23                LDK-NDCA-00159998

24

25

58980aa7-4ab1-4bbc-9ea2-405d025aac3f

JANE D.   NETTESHEIM

Page 3

1          EXHIBITS MARKED FOR IDENTIFICATION CONTINUED

2      Exhibit No.          Description              Page

3      Exhibit 1008   Document entitled, "Stanford      116
                      Consulting Group Fees and
4                     Expenses Billed as of December 1,
                      2009," no Bates numbers
5
       Exhibit 1009   Notice of Subpoena Requesting     121
6                     Production of Documents Directed
                      to Jane D. Nettesheim, no Bates
7                     numbers

8      Exhibit 1010   PiperJaffray analyst report       149
                      entitled, "LDK Solar Update;
9                     Takeaways From Management
                      Meetings," dated October 3, 2007,
10                    Bates LDK_JN011248 - LDK_JN011253

11     Exhibit 1011   Barron's article dated October 8,  179
                      2007 entitled, "China's Solar Boom
12                    Loses Its Luster," no Bates numbers

13     Exhibit 1012   A page from the Friedman Billings  190
                      report, Bates LDK_JN012772
14

15

16

17

18

19

20

21

22

23

24

25

58980aa7-4ab1-4bbc-9ea2-405d025aac3f

JANE D.   NETTESHEIM

Page 4

1                            --oOo--

2               Deposition of JANE D. NETTESHEIM, taken by

3          the Defendants at the office of Latham & Watkins,

4          505 Montgomery St., Suite 2000, San Francisco,

5          California, commencing at 9:10 a.m., on Wednesday,

6          December 2, 2009, before SHERRI STARR, RPR, CRR; CSR

7          10245.

8                            --oOo--

9                    A P P E A R A N C E S

10         FOR THE PLAINTIFF CLASS:
                    COHEN MILSTEIN
11                  1100 New York Avenue, N.W.
                    Suite 500, West Tower
12                  Washington, D.C. 20005
                    202.408.4600
13                  By:  JOSHUA S. DEVORE, Attorney at Law
                         HERBERT E. MILSTEIN, Attorney at Law
14

15         FOR THE PLAINTIFF CLASS:
                    BERMAN DeVALERIO
16                  425 California Street, Suite 2100
                    San Francisco, CA 94104
17                  415.433.3200
                    By:  CHRISTOPHER T. HEFFELFINGER,
18                       Attorney at Law

19
           FOR THE DEFENDANTS AND DR. KENNETH LEHN:
20                  LATHAM & WATKINS
                    505 Montgomery St., Suite 2000
21                  San Francisco, CA 94111
                    415.646.7813
22                  By:  MATTHEW HARRISON, Attorney at Law
                         JASON LEE, Attorney at Law
23

24         Also Present:  Kenneth Lehn

25         Videographer:  Jeffrey Anderson

58980aa7-4ab1-4bbc-9ea2-405d025aac3f

JANE D.  NETTESHEIM

Page 5

|        |    |                                                                |
|--------|----|----------------------------------------------------------------|
|        | 1  | SAN FRANCISCO, CALIFORNIA; DECEMBER 2, 2009                    |
|        | 2  | 9:10 A.M.                                                      |
|        | 3  | --oOo--                                                        |
|        | 4  | JANE D. NETTESHEIM                                             |
|        | 5  | _____                               |
|        | 6  | called as a witness, who, having been first duly              |
|        | 7  | sworn, was examined and testified as follows:                 |
|        | 8  | --oOo--                                                        |
|        | 9  | THE VIDEOGRAPHER:  This is the video                          |
| 09:10:23 | 10 | operator speaking, Jeffrey Anderson of Merrill Legal         |
| 09:10:26 | 11 | Solutions for New York, New York.  Today is                 |
| 09:10:32 | 12 | December 2nd, 2009 and the time is 9:11.  We are at          |
| 09:10:37 | 13 | the offices of Latham & Watkins LLP in San                  |
| 09:10:41 | 14 | Francisco, California to take the videotape                  |
| 09:10:45 | 15 | deposition of Jane Nettesheim in the matter of LDK          |
| 09:10:49 | 16 | Solar Securities Litigation in the United States            |
| 09:10:53 | 17 | District Court, Northern District of California.            |
| 09:10:53 | 18 | The Case Number is C-07-05182.                               |
| 09:10:59 | 19 | Will counsel please introduce themselves                    |
| 09:11:01 | 20 | for the record.                                              |
| 09:11:02 | 21 | MR. HEFFELFINGER:  Chris Heffelfinger from                   |
| 09:11:04 | 22 | Berman DeValerio, counsel for plaintiffs.                   |
| 09:11:08 | 23 | MR. DEVORE:  Joshua Devore, Cohen                            |
| 09:11:10 | 24 | Milstein, Washington, DC, for plaintiff.                    |
| 09:11:14 | 25 | MR. MILSTEIN:  Herbert Milstein from Cohen                   |

JANE D.  NETTESHEIM

Page 6

| | | |
|---|---|---|
| 09:11:14 | 1 | Milstein, Washington, DC, also for plaintiffs. |
| 09:11:16 | 2 | MR. HARRISON:  Matthew Harrison of |
| 09:11:17 | 3 | Latham & Watkins for the defendants along with my |
| 09:11:20 | 4 | colleague Jason Lee of Latham & Watkins for the |
| 09:11:24 | 5 | defendants and Dr. Kenneth Lehn. |
| 09:11:28 | 6 | THE VIDEOGRAPHER:  Will the court |
| 09:11:29 | 7 | reporter, Sherri Starr of Merrill Legal Solutions, |
| 09:11:30 | 8 | please swear in the witness. |
| 09:11:32 | 9 | (Whereupon, the witness was duly sworn.) |
| 09:11:41 | 10 | --oOo-- |
| 09:11:43 | 11 | THE VIDEOGRAPHER:  Please begin. |
| 09:11:46 | 12 | EXAMINATION BY MR. HARRISON |
| 09:11:48 | 13 | MR. HARRISON:  Q.  Good morning, |
| 09:11:49 | 14 | Ms. Nettesheim. |
| 09:11:52 | 15 | A.  Good morning. |
| 09:11:53 | 16 | Q.  I have premarked a couple of exhibits |
| 09:11:58 | 17 | which the court reporter will hand to you. |
| 09:12:02 | 18 | (Whereupon Exhibit 1001 and |
| 09:12:02 | 19 | Exhibit 1002 were marked for |
| 09:12:02 | 20 | identification.) |
| 09:12:02 | 21 | MR. HARRISON:  Q.  Exhibit 1 is your |
| 09:12:03 | 22 | expert report dated October 29th, 2009 along with |
| 09:12:13 | 23 | its appendices and exhibits. |
| 09:12:15 | 24 | And Exhibit 2 is the expert reply report |
| 09:12:19 | 25 | that you submitted on November 19th, 2009. |

JANE D.   NETTESHEIM

Page 7

| | | |
|---|---|---|
| 09:12:25 | 1 | MR. DEVORE:  Should we be marking these in |
| 09:12:27 | 2 | the sequence that we had going?  I'm just afraid if |
| 09:12:30 | 3 | we marked something else it will mess things up. |
| 09:12:36 | 4 | MR. HARRISON:  Does the court reporter |
| 09:12:37 | 5 | know the sequence?  That's the only issue that I |
| 09:12:40 | 6 | thought about when I thought about that. |
| 09:12:42 | 7 | MR. DEVORE:  I don't remember where we |
| 09:12:43 | 8 | left off, somewhere in the 300s.  You just want to |
| 09:12:46 | 9 | start at 1001 or something like that? |
| 09:12:49 | 10 | MR. HARRISON:  Fair enough.  Can we do |
| 09:12:54 | 11 | that? |
| 09:12:55 | 12 | THE REPORTER:  Yes. |
| 09:12:56 | 13 | MR. DEVORE:  Okay.  We'll do all the |
| 09:12:58 | 14 | experts that way, start at 1000 and go up. |
| 09:13:05 | 15 | MR. HARRISON:  So Exhibit 1001 will be |
| 09:13:07 | 16 | your expert report with the appendices and exhibits. |
| 09:13:12 | 17 | Exhibit 1002 will be your reply report, okay? |
| 09:13:39 | 18 | Q.   Do you have those in front of you? |
| 09:13:41 | 19 | A.   Yes, I do. |
| 09:13:42 | 20 | Q.   Have any of your opinions in this case |
| 09:13:46 | 21 | changed since you submitted those reports? |
| 09:13:48 | 22 | A.   No, they have not. |
| 09:13:49 | 23 | Q.   You've been deposed before, as I know, and |
| 09:13:51 | 24 | so I believe you know the ground rules of a |
| 09:13:54 | 25 | deposition.  I won't go through them in detail. |

JANE D.   NETTESHEIM

Page 8

| | | |
|---|---|---|
| 09:13:57 | 1 | Your lawyers probably explained them to you as well |
| 09:14:00 | 2 | as a refresher, but just basically you understand |
| 09:14:02 | 3 | that you're under oath? |
| 09:14:04 | 4 | A.   Yes, I do. |
| 09:14:05 | 5 | Q.   And do you understand to answer questions |
| 09:14:07 | 6 | audibly? |
| 09:14:08 | 7 | A.   Yes. |
| 09:14:09 | 8 | Q.   And your counsel may object today to some |
| 09:14:12 | 9 | of my questions, but if -- unless he instructs you |
| 09:14:16 | 10 | not to answer and you understand the question, you |
| 09:14:19 | 11 | are required to answer the question; do you |
| 09:14:21 | 12 | understand that? |
| 09:14:22 | 13 | A.   Yes. |
| 09:14:31 | 14 | Q.   So if you could turn to Exhibit 1001, |
| 09:14:34 | 15 | which is your expert report dated October 29th, at |
| 09:14:51 | 16 | paragraph 62; do you see that? |
| 09:14:55 | 17 | A.   Yes, I do. |
| 09:14:57 | 18 | Q.   And do you see that it states towards the |
| 09:15:01 | 19 | end of the page there, "I have attributed 100% of |
| 09:15:05 | 20 | the negative residual price changes in the price of |
| 09:15:08 | 21 | LDK ADSs associated with each of the three dates |
| 09:15:11 | 22 | associated with the corrective disclosures to the |
| 09:15:14 | 23 | measure of per-share damages, as I have concluded |
| 09:15:17 | 24 | that there is no new, negative, Company-specific |
| 09:15:20 | 25 | news unrelated to the allegations disclosed on these |

58980aa7-4ab1-4bbc-9ea2-405d025aac3f

JANE D.   NETTESHEIM

Page 9

| Time | Line | Text |
|------|------|------|
| 09:15:24 | 1 | dates that contributed to the residual change in LDK |
| 09:15:28 | 2 | ADSs price"; do you see that? |
| 09:15:31 | 3 | A.   Yes. |
| 09:15:31 | 4 | Q.   Did you perform any procedures to |
| 09:15:33 | 5 | determine what portion of the residual stock price |
| 09:15:35 | 6 | drop identified on October 3rd, 2007 is attributable |
| 09:15:39 | 7 | to each specific allegation in the complaint? |
| 09:15:44 | 8 | MR. HEFFELFINGER:  Objection.  Vague. |
| 09:15:44 | 9 | THE WITNESS:  I'm not sure what you mean |
| 09:15:46 | 10 | by specific allegations. |
| 09:15:47 | 11 | MR. HARRISON:  Q.  You accept the |
| 09:15:48 | 12 | allegations in the complaint as true, right? |
| 09:15:50 | 13 | A.   Yes. |
| 09:15:51 | 14 | Q.   And you understand that the plaintiffs |
| 09:15:53 | 15 | have alleged that there are a number of false |
| 09:15:56 | 16 | statements that were issued during the class period, |
| 09:16:00 | 17 | right? |
| 09:16:01 | 18 | A.   Yes. |
| 09:16:01 | 19 | Q.   And so did you perform any procedures to |
| 09:16:05 | 20 | determine what portion of the residual stock price |
| 09:16:09 | 21 | drop identified in your report on October 3rd, 2007 |
| 09:16:12 | 22 | is attributable to each of those false statements? |
| 09:16:16 | 23 | MR. HEFFELFINGER:  Objection.  Vague and |
| 09:16:17 | 24 | overbroad. |
| 09:16:18 | 25 | THE WITNESS:  I didn't do those |

JANE D.  NETTESHEIM

Page 10

| | | |
|---|---|---|
| 09:16:21 | 1 | procedures.  I didn't see a reason to do any of |
| 09:16:24 | 2 | those -- to do anything of that sort. |
| 09:16:28 | 3 | MR. HARRISON:  Q.  You say you didn't see |
| 09:16:29 | 4 | a reason to do any of that, what do you mean by |
| 09:16:32 | 5 | "that"? |
| 09:16:32 | 6 | A.  The allegations as I've listed them in my |
| 09:16:35 | 7 | report are -- they're related, they're all related |
| 09:16:39 | 8 | to allegations regarding inventory. |
| 09:16:42 | 9 | Q.  Okay.  So all of the false statements that |
| 09:16:45 | 10 | you identify in your report are all interrelated is |
| 09:16:48 | 11 | what you're saying? |
| 09:16:49 | 12 | A.  Yes. |
| 09:16:51 | 13 | Q.  And even false statements that are made on |
| 09:16:54 | 14 | different dates? |
| 09:16:57 | 15 | MR. HEFFELFINGER:  Objection.  Vague, |
| 09:16:58 | 16 | overbroad. |
| 09:17:05 | 17 | THE WITNESS:  Well, I've laid out the |
| 09:17:07 | 18 | allegations in my report and that's my understanding |
| 09:17:09 | 19 | of the allegations. |
| 09:17:10 | 20 | MR. HARRISON:  Q.  So even the allegations |
| 09:17:13 | 21 | made -- excuse me, the allegations about false |
| 09:17:17 | 22 | statements made about different dates are all |
| 09:17:21 | 23 | interrelated, is that your opinion? |
| 09:17:23 | 24 | MR. HEFFELFINGER:  Asked and answered. |
| 09:17:25 | 25 | THE WITNESS:  I don't have an opinion |

58980aa7-4ab1-4bbc-9ea2-405d025aac3f

JANE D.   NETTESHEIM

Page 11

| | | |
|---|---|---|
| 09:17:25 | 1 | about the allegations.  I have an understanding of |
| 09:17:28 | 2 | the allegations. |
| 09:17:29 | 3 | MR. HARRISON:  Q.  Is that your |
| 09:17:29 | 4 | understanding, that they're interrelated? |
| 09:17:32 | 5 | MR. HEFFELFINGER:  Asked and answered. |
| 09:17:37 | 6 | THE WITNESS:  The allegations are related, |
| 09:17:43 | 7 | yes. |
| 09:17:43 | 8 | MR. HARRISON:  Q.  And is it your |
| 09:17:44 | 9 | understanding that they're all interrelated even if |
| 09:17:49 | 10 | the false statements were made by different |
| 09:17:52 | 11 | defendants? |
| 09:17:52 | 12 | MR. HEFFELFINGER:  Objection.  Vague, |
| 09:17:53 | 13 | overbroad. |
| 09:17:58 | 14 | THE WITNESS:  I don't know which |
| 09:17:59 | 15 | defendants made which statements. |
| 09:18:01 | 16 | MR. HARRISON:  Q.  Okay.  You said that |
| 09:18:03 | 17 | you didn't perform any procedures to determine what |
| 09:18:06 | 18 | portion of the residual stock price drop identified |
| 09:18:09 | 19 | on October 3 were attributable to each specific |
| 09:18:13 | 20 | false statement, right? |
| 09:18:14 | 21 | A.  No, I said I don't know what you mean by |
| 09:18:16 | 22 | specific false statements, what you're referring to, |
| 09:18:19 | 23 | and I also said I didn't see a reason to -- |
| 09:18:24 | 24 | Q.  Right, you didn't see a reason to do it. |
| 09:18:27 | 25 | And why did you not see a reason to do that, because |

JANE D.   NETTESHEIM

Page 12

| | | |
|---|---|---|
| 09:18:30 | 1 | they were interrelated? |
| 09:18:32 | 2 | MR. HEFFELFINGER:  Asked and answered. |
| 09:18:34 | 3 | THE WITNESS:  Because the allegations are |
| 09:18:37 | 4 | related. |
| 09:18:38 | 5 | MR. HARRISON:  Q.  So you didn't see a |
| 09:18:39 | 6 | reason to perform any analysis for the residual |
| 09:18:43 | 7 | stock price drop identified on October 4th either, |
| 09:18:46 | 8 | right? |
| 09:18:47 | 9 | A.  That's correct. |
| 09:18:47 | 10 | Q.  And the same question with respect to |
| 09:18:49 | 11 | October 8th, you didn't see any reason to do any |
| 09:18:52 | 12 | analysis on October 8th, right? |
| 09:18:56 | 13 | A.  Of the type you're talking about, that's |
| 09:18:58 | 14 | correct. |
| 09:18:59 | 15 | Q.  So what happens if a jury concludes that |
| 09:19:03 | 16 | some of the alleged false statements in the |
| 09:19:06 | 17 | complaint identified by plaintiffs were not in fact |
| 09:19:09 | 18 | false or misleading?  How does that affect your |
| 09:19:12 | 19 | analysis? |
| 09:19:13 | 20 | MR. HEFFELFINGER:  Objection.  Calls for |
| 09:19:13 | 21 | speculation that goes beyond the scope of what this |
| 09:19:18 | 22 | witness is prepared to testify to today. |
| 09:19:22 | 23 | MR. HARRISON:  Q.  How does your analysis |
| 09:19:23 | 24 | account for the fact -- assume that a jury finds |
| 09:19:27 | 25 | that some of the alleged false statements were not |

58980aa7-4ab1-4bbc-9ea2-405d025aac3f

JANE D.   NETTESHEIM

Page 13

| | | |
|---|---|---|
| 09:19:31 | 1 | false statements.  How does your analysis account |
| 09:19:34 | 2 | for that situation? |
| 09:19:35 | 3 | MR. HEFFELFINGER:  Same objection. |
| 09:19:38 | 4 | THE WITNESS:  There are so many |
| 09:19:40 | 5 | possibilities.  You'd have to be more specific. |
| 09:19:45 | 6 | MR. HARRISON:  Q.  Well, assume that a |
| 09:19:46 | 7 | jury -- you're aware that the allegations in the |
| 09:19:50 | 8 | complaint describe accusations by Charlie Situ of |
| 09:19:55 | 9 | missing inventory? |
| 09:19:58 | 10 | A.   In the complaint, yes. |
| 09:20:00 | 11 | Q.   So assume that a jury determines that |
| 09:20:02 | 12 | Mr. Situ's allegations of missing inventory is |
| 09:20:07 | 13 | inaccurate, okay? |
| 09:20:09 | 14 | MR. HEFFELFINGER:  Same objection.  Also |
| 09:20:10 | 15 | an incomplete hypothetical. |
| 09:20:14 | 16 | MR. HARRISON:  Q.  Assume that.  Now, how |
| 09:20:15 | 17 | would that affect your opinion as to damages in this |
| 09:20:18 | 18 | case? |
| 09:20:19 | 19 | A.   I'm not -- I don't think that would affect |
| 09:20:23 | 20 | my opinion as to damages in this case. |
| 09:20:24 | 21 | Q.   Okay.  So if a jury finds that some of the |
| 09:20:28 | 22 | alleged false statements were actually true, then |
| 09:20:31 | 23 | your damages would remain the same; is that fair? |
| 09:20:35 | 24 | MR. HEFFELFINGER:  Same objection. |
| 09:20:36 | 25 | Overbroad, vague, incomplete. |

58980aa7-4ab1-4bbc-9ea2-405d025aac3f

JANE D.   NETTESHEIM

Page 14

| | | |
|---|---|---|
| 09:20:44 | 1 | THE WITNESS:  It would depend on what the |
| 09:20:46 | 2 | jury found. |
| 09:20:49 | 3 | MR. HARRISON:  Q.  Assuming that the -- |
| 09:20:50 | 4 | what would it -- what do you mean by that?  What |
| 09:20:53 | 5 | would it depend on? |
| 09:20:58 | 6 | MR. HEFFELFINGER:  Same objections. |
| 09:21:00 | 7 | THE WITNESS:  Which statements the jury |
| 09:21:02 | 8 | found to be true. |
| 09:21:05 | 9 | MR. HARRISON:  Q.  Can you identify which |
| 09:21:06 | 10 | statements -- if the jury found a certain statement |
| 09:21:09 | 11 | to be true, can you identify which statements would |
| 09:21:12 | 12 | affect your damages analysis? |
| 09:21:14 | 13 | MR. HEFFELFINGER:  Vague, overbroad, |
| 09:21:15 | 14 | incomplete hypothetical. |
| 09:21:23 | 15 | THE WITNESS:  I didn't do that analysis. |
| 09:21:24 | 16 | I'm not sure which statements in particular you're |
| 09:21:27 | 17 | thinking about so I don't know. |
| 09:21:29 | 18 | MR. HARRISON:  Q.  So you agree that if a |
| 09:21:33 | 19 | jury had found some of the false statements alleged |
| 09:21:37 | 20 | in the complaint to be true, then it might affect |
| 09:21:40 | 21 | your analysis of damages, right? |
| 09:21:42 | 22 | MR. HEFFELFINGER:  Mischaracterizes |
| 09:21:44 | 23 | testimony. |
| 09:21:47 | 24 | THE WITNESS:  It would depend on what the |
| 09:21:49 | 25 | jury found.  I don't know. |

58980aa7-4ab1-4bbc-9ea2-405d025aac3f

JANE D.   NETTESHEIM

Page 15

| | | |
|---|---|---|
| 09:22:03 | 1 | MR. HARRISON:   Q.   In order to calculate |
| 09:22:04 | 2 | inflation, do you need to determine what should have |
| 09:22:07 | 3 | been disclosed by the defendants as well as when |
| 09:22:09 | 4 | these disclosures should have been made? |
| 09:22:15 | 5 | MR. HEFFELFINGER:   Compound. |
| 09:22:19 | 6 | THE WITNESS:   Could you repeat the |
| 09:22:20 | 7 | question or break it up. |
| 09:22:22 | 8 | MR. HARRISON:   Q.   Right.   In order to |
| 09:22:23 | 9 | calculate inflation of a stock price during the |
| 09:22:26 | 10 | class period, do you need to determine what should |
| 09:22:28 | 11 | have been disclosed by the defendants during the |
| 09:22:30 | 12 | class period? |
| 09:22:32 | 13 | A.   I have assumptions about that. |
| 09:22:34 | 14 | Q.   What are your assumptions? |
| 09:22:36 | 15 | A.   They have to do with the allegations and I |
| 09:22:38 | 16 | have them listed in my report. |
| 09:22:40 | 17 | Q.   Where is that listed? |
| 09:22:46 | 18 | A.   Beginning on page 5. |
| 09:22:55 | 19 | Q.   And your assumptions are that all the |
| 09:22:59 | 20 | allegations are true, right? |
| 09:23:06 | 21 | A.   My assumptions are that the allegations |
| 09:23:08 | 22 | are true, yes. |
| 09:23:10 | 23 | Q.   And do you continue to make that |
| 09:23:12 | 24 | assumption today? |
| 09:23:20 | 25 | A.   Well, my assumption -- the assumptions |

JANE D.  NETTESHEIM

Page 16

| | | |
|---|---|---|
| 09:23:23 | 1 | that I continue to have today are the ones that are |
| 09:23:26 | 2 | listed in my report. |
| 09:23:34 | 3 | Q.   In order to calculate the inflation of the |
| 09:23:36 | 4 | stock, do you need to determine when disclosures by |
| 09:23:40 | 5 | the company should have been made during the class |
| 09:23:43 | 6 | period? |
| 09:23:45 | 7 | A.   That could affect the calculation of |
| 09:23:49 | 8 | per-share inflation. |
| 09:23:54 | 9 | Q.   So you have to determine when the |
| 09:23:56 | 10 | disclosures should have been made? |
| 09:23:58 | 11 | A.   Or be given an assumption about when those |
| 09:24:01 | 12 | disclosures should have been made, yes. |
| 09:24:03 | 13 | Q.   What's your assumption about when those |
| 09:24:05 | 14 | disclosures should have been made? |
| 09:24:07 | 15 | A.   That the relevant disclosures could have |
| 09:24:13 | 16 | been made at the start of the class period -- no |
| 09:24:16 | 17 | later than the start of the class period. |
| 09:24:27 | 18 | Q.   Okay.  And in your report starting at |
| 09:24:30 | 19 | page 5, you define the specific information that was |
| 09:24:34 | 20 | allegedly misrepresented or omitted by the |
| 09:24:36 | 21 | defendants, right? |
| 09:24:39 | 22 | A.   It's a summary, yes. |
| 09:24:41 | 23 | Q.   I said page 5, I actually meant page 11. |
| 09:24:44 | 24 | And that's a summary of the alleged misstatements |
| 09:24:50 | 25 | during the class period? |

JANE D.   NETTESHEIM

Page 17

| | | |
|---|---|---|
| 09:24:52 | 1 | A.   Yes. |
| 09:24:53 | 2 | Q.   Did you quantify the stock price inflation |
| 09:24:55 | 3 | caused by each specifically alleged |
| 09:24:57 | 4 | misrepresentation or omission listed here? |
| 09:25:01 | 5 | A.   No. |
| 09:25:02 | 6 | Q.   Why not? |
| 09:25:04 | 7 | A.   Well, I think the -- because the |
| 09:25:10 | 8 | misstatements, the alleged misstatements go back to |
| 09:25:14 | 9 | the start of the class period.  So everything goes |
| 09:25:17 | 10 | back to the start of the class period.  And the |
| 09:25:21 | 11 | August 1st press release includes statements that |
| 09:25:27 | 12 | are similar to the statements that were in effect at |
| 09:25:29 | 13 | the start of the class period. |
| 09:25:33 | 14 | Q.   Okay.  So you're assuming that all of the |
| 09:25:35 | 15 | misstatements listed here starting at page 11 all go |
| 09:25:38 | 16 | back to the very beginning of the class period? |
| 09:25:46 | 17 | A.   Well, I have information as to when |
| 09:25:49 | 18 | particular statements were made, but I'm assuming |
| 09:25:52 | 19 | that the misstatements with respect to inventory, |
| 09:26:00 | 20 | which are the relevant allegations in this case, go |
| 09:26:03 | 21 | back to the start of the class period. |
| 09:26:06 | 22 | Q.   Just so I'm clear, the allegations |
| 09:26:10 | 23 | relating to inventory you're assuming went all the |
| 09:26:14 | 24 | way back, all of them, back to June 1st, 2007? |
| 09:26:19 | 25 | A.   Yes. |

58980aa7-4ab1-4bbc-9ea2-405d025aac3f

JANE D.   NETTESHEIM

Page 18

| | | |
|---|---|---|
| 09:26:20 | 1 | Q.   If you look at paragraph 55 of your report |
| 09:26:23 | 2 | on page 41 -- I'm sorry, I misspoke, page 55 of your |
| 09:26:35 | 3 | reply report which is Exhibit 1002. |
| 09:26:43 | 4 | MR. DEVORE:   There's only 34 pages in the |
| 09:26:44 | 5 | reply report. |
| 09:26:45 | 6 | MR. HEFFELFINGER:   I was about to say. |
| 09:26:46 | 7 | MR. HARRISON:   That's the cold talking. |
| 09:26:49 | 8 | Paragraph 55. |
| 09:26:52 | 9 | MR. HEFFELFINGER:   Okay. |
| 09:26:54 | 10 | MR. HARRISON:   I'm going to let you get |
| 09:26:55 | 11 | there and I'm going to grab some water really quick. |
| 09:27:01 | 12 | Q.   Would you take a look at that paragraph. |
| 09:27:18 | 13 | Do you see there that you mentioned |
| 09:27:20 | 14 | misrepresentations made by the defendants on |
| 09:27:22 | 15 | June 1st and August 1st, 2007? |
| 09:27:26 | 16 | A.   Yes. |
| 09:27:27 | 17 | Q.   What are the specific misrepresentations |
| 09:27:30 | 18 | that you're referring to? |
| 09:27:37 | 19 | A.   Well, they're in my earlier report in more |
| 09:27:42 | 20 | detail, starting at page 11. |
| 09:28:02 | 21 | Q.   So in order to determine which false |
| 09:28:04 | 22 | statements you're referring to in paragraph 55 of |
| 09:28:06 | 23 | your reply report, we should look at your original |
| 09:28:10 | 24 | report starting at page 11? |
| 09:28:16 | 25 | A.   Well, the original report lays them out in |

JANE D.   NETTESHEIM

Page 19

| | | |
|---|---|---|
| 09:28:18 | 1 | more detail. |
| 09:28:20 | 2 | Q.   But that's where we should look, at |
| 09:28:22 | 3 | paragraph 22 and all of its subparts? |
| 09:28:25 | 4 | A.   In terms of -- yes, my understanding of |
| 09:28:31 | 5 | the misstatements, that's where you should look. |
| 09:28:33 | 6 | Q.   If you look at paragraph 22 in your |
| 09:28:35 | 7 | report, and just to make it simpler, I'll refer to |
| 09:28:41 | 8 | this as your report and this as your reply report, |
| 09:28:45 | 9 | (indicating), does that make sense? |
| 09:28:48 | 10 | A.   Yes. |
| 09:28:50 | 11 | Q.   So if you look at the allegations on June |
| 09:28:52 | 12 | 1st and August 1st, 2007 identified in paragraph 22, |
| 09:28:56 | 13 | you're identifying misrepresentations about LDK's |
| 09:29:00 | 14 | inventory levels as of that date? |
| 09:29:10 | 15 | A.   Among other things, but, yes. |
| 09:29:15 | 16 | Q.   What inventory levels should LDK have |
| 09:29:20 | 17 | reported in order for its June 1st, 2007 disclosures |
| 09:29:23 | 18 | not to have, in your opinion, been -- let me restart |
| 09:29:29 | 19 | that. |
| 09:29:30 | 20 | What inventory levels and value should LDK |
| 09:29:33 | 21 | have reported in order for its June 1st, 2007 |
| 09:29:36 | 22 | disclosures not to have artificially inflated LDK |
| 09:29:40 | 23 | stock price? |
| 09:29:41 | 24 | MR. HEFFELFINGER:  Objection.  Vague, |
| 09:29:41 | 25 | overbroad, exceeds the scope of her expertise. |

58980aa7-4ab1-4bbc-9ea2-405d025aac3f

JANE D.   NETTESHEIM

Page 20

| | | |
|---|---|---|
| 09:29:47 | 1 | MR. HARRISON:  Q.  Did you make any |
| 09:29:47 | 2 | determination about that? |
| 09:29:49 | 3 | A.   About inventory they should have reported? |
| 09:29:52 | 4 | Q.   Right. |
| 09:29:52 | 5 | A.   No, I did not. |
| 09:29:53 | 6 | Q.   Did you estimate the impact on LDK stock |
| 09:29:55 | 7 | price of the disclosure of any truthful information |
| 09:30:01 | 8 | on that date? |
| 09:30:07 | 9 | A.   On June 1st? |
| 09:30:08 | 10 | Q.   Right. |
| 09:30:11 | 11 | A.   I don't understand the question. |
| 09:30:13 | 12 | Q.   Well, assuming -- you said you assumed |
| 09:30:16 | 13 | that all the alleged misstatements go all the way |
| 09:30:20 | 14 | back to June 1st, right? |
| 09:30:21 | 15 | A.   Yes. |
| 09:30:23 | 16 | Q.   And paragraph 22 of your report indicates |
| 09:30:26 | 17 | that the misstatements relate to inventory levels, |
| 09:30:30 | 18 | correct? |
| 09:30:31 | 19 | A.   Yes. |
| 09:30:32 | 20 | Q.   Have you done any analysis to determine |
| 09:30:34 | 21 | what inventory levels LDK should have reported on |
| 09:30:38 | 22 | June 1st, 2007 that would have -- in order for its |
| 09:30:50 | 23 | June 1st, 2007 disclosures not to have inflated LDK |
| 09:30:55 | 24 | stock? |
| 09:30:56 | 25 | MR. HEFFELFINGER:  Vague, overbroad.  I |

58980aa7-4ab1-4bbc-9ea2-405d025aac3f

JANE D.   NETTESHEIM

Page 21

| | | |
|---|---|---|
| 09:30:58 | 1 | think it exceeds the scope of her testimony. |
| 09:31:02 | 2 | THE WITNESS:  I haven't determined what |
| 09:31:04 | 3 | inventory levels they should have reported at any |
| 09:31:06 | 4 | time. |
| 09:31:07 | 5 | MR. HARRISON:  Q.  So it's fair to say you |
| 09:31:09 | 6 | haven't determined what inventory levels LDK should |
| 09:31:12 | 7 | have reported on August 1st in order to make |
| 09:31:17 | 8 | disclosures on that date not to have reportedly |
| 09:31:20 | 9 | artificially inflated LDK stock? |
| 09:31:23 | 10 | A.   Correct, I have not determined the |
| 09:31:25 | 11 | inventory levels they should have reported on |
| 09:31:28 | 12 | August 1st. |
| 09:31:28 | 13 | Q.   Now, paragraph 57 of your reply report, |
| 09:31:37 | 14 | you write, "At or prior to the start of the Class |
| 09:31:40 | 15 | Period, Plaintiff alleges that the Company could |
| 09:31:42 | 16 | have and should have disclosed the truth about its |
| 09:31:47 | 17 | inventory accounting and its impact on its reported |
| 09:31:50 | 18 | cost of goods sold.  The corrective disclosures on |
| 09:31:53 | 19 | October 3-4 and October 8 partially disclosed this |
| 09:31:57 | 20 | information"; do you see that? |
| 09:31:59 | 21 | A.   Yes. |
| 09:32:03 | 22 | Q.   The October 8th disclosure that you |
| 09:32:05 | 23 | identify states that Charlie Situ circulated an |
| 09:32:15 | 24 | e-mail stating that inventory levels could have been |
| 09:32:17 | 25 | inflated by 46 million to 92 million, right? |

JANE D.   NETTESHEIM

Page 22

| | | |
|---|---|---|
| 09:32:27 | 1 | A.   Are you referring to the Barron's article |
| 09:32:29 | 2 | on October 8th? |
| 09:32:31 | 3 | Q.   I am. |
| 09:32:32 | 4 | A.   Well, I'd like to see the article if |
| 09:32:34 | 5 | you're quoting from the article. |
| 09:32:37 | 6 | MR. HEFFELFINGER:  I'll pose a late |
| 09:32:39 | 7 | objection.  It's vague and calls for an incomplete |
| 09:32:42 | 8 | hypothetical. |
| 09:32:42 | 9 | THE WITNESS:  I can also look in my report |
| 09:32:44 | 10 | because I do have the article in my report also. |
| 09:32:51 | 11 | MR. HARRISON:  We'll do one of those two |
| 09:32:53 | 12 | things. |
| 09:32:53 | 13 | Q.   If you look at paragraph 47 of your |
| 09:32:56 | 14 | original report -- |
| 09:32:58 | 15 | A.   And I do have the article at Exhibit 18. |
| 09:33:01 | 16 | Q.   I'll make it simpler.  If you look at |
| 09:33:04 | 17 | paragraph 47 of your report, do you see there that |
| 09:33:14 | 18 | you -- |
| 09:33:15 | 19 | A.   Yes. |
| 09:33:15 | 20 | Q.   -- you identified the October 8th, 2007 |
| 09:33:17 | 21 | Barron's article? |
| 09:33:19 | 22 | A.   Yes. |
| 09:33:20 | 23 | Q.   And towards the middle of that paragraph |
| 09:33:23 | 24 | you said, "Barron's indicated the Company's |
| 09:33:26 | 25 | inventories may be overvalued by as much as $92 |

58980aa7-4ab1-4bbc-9ea2-405d025aac3f

JANE D.  NETTESHEIM

Page  23

| | | |
|---|---|---|
| 09:33:30 | 1 | million"? |
| 09:33:34 | 2 | A.  Yes. |
| 09:33:39 | 3 | Q.  Now, does your statement at paragraph 57 |
| 09:33:43 | 4 | of your reply report mean that LDK should have |
| 09:33:46 | 5 | reported a raw material inventory value that was |
| 09:33:52 | 6 | lower by 46 million to 92 million as disclosed in |
| 09:33:56 | 7 | the October 8th Barron's article? |
| 09:34:00 | 8 | MR. HEFFELFINGER:  The report speaks for |
| 09:34:03 | 9 | itself. |
| 09:34:04 | 10 | THE WITNESS:  As I said earlier, I didn't |
| 09:34:06 | 11 | make a determination as to what inventory LDK should |
| 09:34:09 | 12 | have reported. |
| 09:34:10 | 13 | MR. HARRISON:  Q.  Have you seen the |
| 09:34:12 | 14 | company's earnings release conference call for the |
| 09:34:15 | 15 | second quarter of 2007? |
| 09:34:17 | 16 | A.  Yes. |
| 09:34:19 | 17 | Q.  Are you aware that the company's raw |
| 09:34:22 | 18 | materials inventory at the end of the second quarter |
| 09:34:26 | 19 | 2007 was less than 92 million? |
| 09:34:29 | 20 | A.  I don't recall. |
| 09:34:30 | 21 | MR. HARRISON:  Let's take a look at it, so |
| 09:34:41 | 22 | Exhibit 1003. |
| 09:34:43 | 23 | (Whereupon Exhibit 1003 was |
| 09:34:43 | 24 | marked for identification.) |
| 09:35:06 | 25 | MR. HEFFELFINGER:  Matt, did you have a |

58980aa7-4ab1-4bbc-9ea2-405d025aac3f

JANE D.   NETTESHEIM

Page 24

| | | |
|---|---|---|
| 09:35:07 | 1 | page that you want to direct her attention to? |
| 09:35:09 | 2 | MR. HARRISON:  Yeah, just wanted to make |
| 09:35:11 | 3 | sure she got it first. |
| 09:35:12 | 4 | Q.   I handed you the second quarter 2007 |
| 09:35:15 | 5 | earnings conference call.  And you can take a look |
| 09:35:18 | 6 | at it, but the page I want to direct you to is page |
| 09:35:21 | 7 | 11, internal page 11. |
| 09:35:42 | 8 | Have you had a chance to look at that |
| 09:35:44 | 9 | page? |
| 09:35:45 | 10 | A.   I'm at page 11. |
| 09:35:46 | 11 | Q.   Okay.  If you look down near the bottom |
| 09:35:50 | 12 | there's a line of questioning from Sunil Gupta to |
| 09:35:54 | 13 | Jack Lai; do you see that? |
| 09:35:57 | 14 | A.   Yes. |
| 09:35:59 | 15 | Q.   And you see that it says "Q - Sunil Gupta: |
| 09:36:05 | 16 | Yeah.  Of the $174 million that we have on the |
| 09:36:08 | 17 | balance sheet, what percentage is a raw material?" |
| 09:36:10 | 18 | And Jack responds, "Q2 it was $88.5 million"; do you |
| 09:36:16 | 19 | see that? |
| 09:36:16 | 20 | A.   Yes. |
| 09:36:18 | 21 | Q.   And so does that refresh your recollection |
| 09:36:20 | 22 | at all that LDK's raw material inventory was valued |
| 09:36:25 | 23 | at 88.5 million as of the end of Q2 2007? |
| 09:36:30 | 24 | MR. HEFFELFINGER:  Assumes facts not in |
| 09:36:32 | 25 | evidence. |

58980aa7-4ab1-4bbc-9ea2-405d025aac3f

JANE D.   NETTESHEIM

Page 25

| | | |
|---|---|---|
| 09:36:32 | 1 | THE WITNESS:  Well, I still don't have a |
| 09:36:34 | 2 | recollection of it but I am reading where you read |
| 09:36:36 | 3 | from. |
| 09:36:37 | 4 | MR. HARRISON:  Q.  Is this something -- |
| 09:36:38 | 5 | this document something that you looked at as part |
| 09:36:42 | 6 | of your opinions in this case? |
| 09:36:44 | 7 | A.  I looked at this document. |
| 09:36:47 | 8 | Q.  Now, is it fair to say that the company's |
| 09:36:50 | 9 | inventory -- recorded inventory as of this date was |
| 09:36:54 | 10 | less than 92 million, right? |
| 09:36:56 | 11 | MR. HEFFELFINGER:  Assumes facts not in |
| 09:36:57 | 12 | evidence. |
| 09:36:58 | 13 | THE WITNESS:  Well, on this page it says |
| 09:36:59 | 14 | the inventory is 174 million.  In that answer he's |
| 09:37:07 | 15 | just breaking out the raw material. |
| 09:37:11 | 16 | MR. HARRISON:  Q.  What do you understand |
| 09:37:11 | 17 | the raw material to be on that date? |
| 09:37:17 | 18 | A.  I don't have a particular understanding. |
| 09:37:20 | 19 | I know it includes silicon but I don't know what |
| 09:37:24 | 20 | else it includes. |
| 09:37:25 | 21 | Q.  Do you know what else the 174 million |
| 09:37:29 | 22 | includes? |
| 09:37:29 | 23 | A.  Not specifically.  I know there's some |
| 09:37:32 | 24 | work in process, but I don't know specifically. |
| 09:37:35 | 25 | Q.  Are you assuming that as of June 1st, 2007 |

58980aa7-4ab1-4bbc-9ea2-405d025aac3f

JANE D.   NETTESHEIM

Page 26

| | | |
|---|---|---|
| 09:37:38 | 1 | that LDK's inventory could have been inflated by up |
| 09:37:41 | 2 | to 92 million? |
| 09:37:45 | 3 | A.   No, I'm not assuming that. |
| 09:37:49 | 4 | Q.   And you don't have any assumption with |
| 09:37:52 | 5 | respect to the amount of inventory inflation that |
| 09:37:56 | 6 | the plaintiffs claim occurred at LDK as of June 1st, |
| 09:38:02 | 7 | 2007, right? |
| 09:38:03 | 8 | MR. HEFFELFINGER:  Vague, overbroad, |
| 09:38:04 | 9 | exceeds the scope of her expert testimony. |
| 09:38:09 | 10 | THE WITNESS:  I don't have a specific |
| 09:38:10 | 11 | assumption. |
| 09:38:18 | 12 | MR. HARRISON:  Q.  You haven't made any |
| 09:38:19 | 13 | determination about how much LDK's inventory was |
| 09:38:22 | 14 | inflated as of June 1st, 2007, right? |
| 09:38:27 | 15 | A.   Right, I have not made a determination. |
| 09:38:30 | 16 | Q.   Okay.  If you look at paragraph 78 of your |
| 09:38:36 | 17 | report, and there's a chart underneath that |
| 09:39:01 | 18 | paragraph; do you see that? |
| 09:39:02 | 19 | A.   Yes. |
| 09:39:03 | 20 | Q.   What's your basis for concluding that |
| 09:39:05 | 21 | LDK's stock was inflated by 44.9 percent on |
| 09:39:09 | 22 | June 1st, 2007? |
| 09:39:11 | 23 | A.   That's a combination of the company's |
| 09:39:15 | 24 | specific returns on October 3rd, October 4th, and |
| 09:39:19 | 25 | October 8th. |

58980aa7-4ab1-4bbc-9ea2-405d025aac3f

JANE D.   NETTESHEIM

Page 27

| | | |
|---|---|---|
| 09:39:27 | 1 | Q.   So that's an assumption based on the model |
| 09:39:30 | 2 | that you created? |
| 09:39:35 | 3 | A.   Well, it's a calculation. |
| 09:39:37 | 4 | Q.   A calculation based on the damages model |
| 09:39:40 | 5 | that you created for this case? |
| 09:39:42 | 6 | A.   Well, not the damages model, but it's a |
| 09:39:45 | 7 | calculation of price inflation based on the analysis |
| 09:39:54 | 8 | I did in this case. |
| 09:39:56 | 9 | Q.   And that price inflation of 44.9 percent |
| 09:40:02 | 10 | that you opine about in paragraph 78 of your report |
| 09:40:05 | 11 | also applies to June 1st, 2007, right? |
| 09:40:16 | 12 | A.   Yes. |
| 09:40:20 | 13 | Q.   And what analysis have you done to |
| 09:40:22 | 14 | determine that LDK's stock price was inflated on |
| 09:40:27 | 15 | June 1st, 2007? |
| 09:40:33 | 16 | A.   Well, it's based on the price reaction to |
| 09:40:38 | 17 | certain disclosures near the end of the class period |
| 09:40:45 | 18 | and at the end of the class period. |
| 09:40:48 | 19 | Q.   So you're analyzing the disclosures near |
| 09:40:51 | 20 | the end of the class period and at the end of the |
| 09:40:54 | 21 | class period to determine that LDK's stock was |
| 09:40:57 | 22 | inflated by 44.9 percent as of June 1st, 2007? |
| 09:41:02 | 23 | MR. HEFFELFINGER:  Vague, ambiguous. |
| 09:41:07 | 24 | THE WITNESS:  Well, I'm using the price |
| 09:41:09 | 25 | reaction from those dates to measure that. |

JANE D.   NETTESHEIM

Page 28

| | | |
|---|---|---|
| 09:41:14 | 1 | MR. HARRISON:  Q.  If you look at |
| 09:41:15 | 2 | paragraph 55 again of your reply report, we'll be |
| 09:41:20 | 3 | switching back and forth; do you see that? |
| 09:41:31 | 4 | A.  Yes. |
| 09:41:32 | 5 | Q.  It states that the alleged |
| 09:41:37 | 6 | misrepresentation -- I'll paraphrase, this paragraph |
| 09:41:43 | 7 | states that the alleged misrepresentations made by |
| 09:41:45 | 8 | the defendants on June 1st and August 1st, 2007 |
| 09:41:50 | 9 | would maintain the price inflation in effect since |
| 09:41:52 | 10 | the start of the class period; is that fair? |
| 09:41:57 | 11 | A.  Well, that's referring to the August 1st |
| 09:42:02 | 12 | period, but... |
| 09:42:08 | 13 | Q.  The August 1st period, can you explain |
| 09:42:10 | 14 | what you mean by that? |
| 09:42:11 | 15 | A.  Okay.  If you're referring to the sentence |
| 09:42:16 | 16 | that, "Thus, these statements would maintain the |
| 09:42:18 | 17 | price inflation in effect since the start of the |
| 09:42:20 | 18 | Class Period." |
| 09:42:21 | 19 | Q.  Yes. |
| 09:42:21 | 20 | A.  That has to do with the August 1st alleged |
| 09:42:26 | 21 | misstatements. |
| 09:42:32 | 22 | Q.  And what evidence did you rely on to |
| 09:42:34 | 23 | support the conclusion that that -- that |
| 09:42:37 | 24 | misrepresentations made on that date would maintain |
| 09:42:40 | 25 | the price inflation in effect since the start of the |

58980aa7-4ab1-4bbc-9ea2-405d025aac3f

JANE D.   NETTESHEIM

Page  29

| | | |
|---|---|---|
| 09:42:42 | 1 | class period? |
| 09:42:51 | 2 | A.   That comes primarily from my understanding |
| 09:42:55 | 3 | of the misstatements that I had starting at page 13 |
| 09:43:01 | 4 | of my report. |
| 09:43:06 | 5 | Q.   Did you conduct any analysis to determine |
| 09:43:07 | 6 | the extent to which the alleged misstatements on |
| 09:43:10 | 7 | August 1st, 2007 maintained the price inflation in |
| 09:43:14 | 8 | LDK's stock? |
| 09:43:26 | 9 | A.   Well, to the extent that I've, you know, |
| 09:43:29 | 10 | I've looked at the press release and the conference |
| 09:43:32 | 11 | call and the other information that came out at that |
| 09:43:34 | 12 | time, and I'm aware of the alleged misstatements |
| 09:43:42 | 13 | from that time period. |
| 09:43:44 | 14 | Q.   And that's what you base your statement in |
| 09:43:47 | 15 | paragraph 55, that representations on August 1st |
| 09:43:51 | 16 | would have maintained the price inflation in effect |
| 09:43:54 | 17 | since the start of the class period? |
| 09:43:58 | 18 | MR. HEFFELFINGER:  Vague, ambiguous. |
| 09:44:06 | 19 | THE WITNESS:  Well, yes.  I mean, I could |
| 09:44:07 | 20 | see the -- I could tie the alleged misstatements to |
| 09:44:12 | 21 | statements that were made to the public in that time |
| 09:44:15 | 22 | period. |
| 09:44:25 | 23 | MR. HARRISON:  Q.  What do you mean by |
| 09:44:26 | 24 | "tie the alleged misstatements"? |
| 09:44:29 | 25 | A.   That the alleged misstatements were made, |

58980aa7-4ab1-4bbc-9ea2-405d025aac3f

JANE D.   NETTESHEIM

Page 30

| | | |
|---|---|---|
| 09:44:37 | 1 | there were no correcting statements made in that |
| 09:44:40 | 2 | time period.  So I did look at the company's press |
| 09:44:42 | 3 | release and the conference call and looked at the |
| 09:44:45 | 4 | other news articles/analyst reports that came out at |
| 09:44:50 | 5 | that time period. |
| 09:44:50 | 6 | Q.   So you're making an assumption that those |
| 09:44:53 | 7 | statements maintained price inflation in LDK stock |
| 09:44:56 | 8 | that was present at the beginning of the class |
| 09:44:59 | 9 | period? |
| 09:45:10 | 10 | A.   Well, as I've said, it's more than an |
| 09:45:14 | 11 | assumption.  I did, in fact, look at the information |
| 09:45:16 | 12 | that came out at that time. |
| 09:45:18 | 13 | Q.   And the information you're referring to is |
| 09:45:20 | 14 | the statements made by the company? |
| 09:45:24 | 15 | A.   Yes, press release, conference call, and |
| 09:45:27 | 16 | then other news and analyst reports that came out at |
| 09:45:30 | 17 | that time. |
| 09:45:30 | 18 | Q.   Did you conduct any procedures to |
| 09:45:32 | 19 | determine which specific misrepresentations by the |
| 09:45:36 | 20 | company on August 1st, 2007 maintained price |
| 09:45:39 | 21 | inflation that was present in LDK's stock as of the |
| 09:45:43 | 22 | beginning of the class period? |
| 09:45:50 | 23 | A.   Well, the alleged misstatements have to do |
| 09:45:52 | 24 | with a reporting of the inventory, and I could see |
| 09:46:01 | 25 | that there were statements about the inventory. |

58980aa7-4ab1-4bbc-9ea2-405d025aac3f

JANE D.   NETTESHEIM

Page 31

| | | |
|---|---|---|
| 09:46:03 | 1 | There were no statements that were correcting |
| 09:46:05 | 2 | earlier reports of inventory. |
| 09:46:10 | 3 | Q.   And you're referring to August 1st? |
| 09:46:12 | 4 | A.   Yes. |
| 09:46:14 | 5 | Q.   Did you look at each specific |
| 09:46:17 | 6 | misrepresentation to determine how they maintained |
| 09:46:21 | 7 | any price inflation that was present since the |
| 09:46:23 | 8 | beginning of the class period? |
| 09:46:24 | 9 | MR. HEFFELFINGER:  Vague as to time. |
| 09:46:30 | 10 | THE WITNESS:  I mean, I've -- I have in my |
| 09:46:34 | 11 | report a summary of what I understand the |
| 09:46:37 | 12 | misrepresentations to be.  I'm not sure what you |
| 09:46:39 | 13 | mean by "specific misrepresentations." |
| 09:46:41 | 14 | MR. HARRISON:  Q.  Did you parse out what |
| 09:46:42 | 15 | effect each specific misrepresentation identified on |
| 09:46:45 | 16 | that date had on maintaining alleged price inflation |
| 09:46:49 | 17 | as of the beginning of the class period? |
| 09:46:52 | 18 | MR. HEFFELFINGER:  Vague and overbroad. |
| 09:46:58 | 19 | THE WITNESS:  I'm not sure if you have a |
| 09:46:59 | 20 | specific misrepresentation in mind.  I don't have |
| 09:47:05 | 21 | one in mind. |
| 09:47:06 | 22 | MR. HARRISON:  Q.  Did you say you don't |
| 09:47:08 | 23 | have one in mind? |
| 09:47:09 | 24 | A.   I don't have a specific misrepresentation |
| 09:47:09 | 25 | in mind.  I have a summary of my understanding of |

58980aa7-4ab1-4bbc-9ea2-405d025aac3f

JANE D.   NETTESHEIM

Page 32

| | | |
|---|---|---|
| 09:47:10 | 1 | the misrepresentations in my report.  I don't know |
| 09:47:17 | 2 | what you mean by "specific misrepresentations." |
| 09:47:18 | 3 | Q.   Were there multiple alleged |
| 09:47:21 | 4 | misrepresentations on August 1st? |
| 09:47:24 | 5 | MR. HEFFELFINGER:  Vague and overbroad. |
| 09:47:26 | 6 | THE WITNESS:  Well, there are -- there are |
| 09:47:33 | 7 | alleged misrepresentations.  I don't know that -- I |
| 09:47:37 | 8 | have a list which just corresponds with my |
| 09:47:40 | 9 | understanding.  I don't know that I would count them |
| 09:47:42 | 10 | in that, you know, I don't know that they could be |
| 09:47:46 | 11 | counted.  I just organize them. |
| 09:47:50 | 12 | MR. HARRISON:  Q.  When you say you don't |
| 09:47:52 | 13 | know that they can be counted, you just mean by the |
| 09:47:54 | 14 | number of misrepresentations? |
| 09:47:56 | 15 | A.   Right, I don't know that there's a |
| 09:47:58 | 16 | particular number of misrepresentations. |
| 09:48:03 | 17 | Q.   Well, if you look at page 13 of your |
| 09:48:06 | 18 | report. |
| 09:48:08 | 19 | A.   Yes. |
| 09:48:08 | 20 | Q.   Are you there? |
| 09:48:10 | 21 | A.   Yes. |
| 09:48:11 | 22 | Q.   The bullet there describes an LDK press |
| 09:48:14 | 23 | release; do you see that? |
| 09:48:17 | 24 | A.   Yes. |
| 09:48:17 | 25 | Q.   And the next page describes an August 1st, |

58980aa7-4ab1-4bbc-9ea2-405d025aac3f

JANE D.  NETTESHEIM

Page 33

| | | |
|---|---|---|
| 09:48:21 | 1 | 2007 conference call; do you see that? |
| 09:48:25 | 2 | A.   Yes, it refers to that conference call. |
| 09:48:28 | 3 | It doesn't describe the whole conference call, but |
| 09:48:31 | 4 | it refers to that conference call. |
| 09:48:32 | 5 | Q.   You understand those to be two separate |
| 09:48:34 | 6 | misrepresentations that are alleged by the |
| 09:48:36 | 7 | plaintiffs? |
| 09:48:47 | 8 | A.   Well, I understand them to be |
| 09:48:52 | 9 | characterized as misrepresentations incorporated in |
| 09:48:55 | 10 | a press release and misrepresentations in the |
| 09:48:59 | 11 | conference call.  I don't know that I would put the |
| 09:49:08 | 12 | number "2" to them as two misrepresentations.  I'm |
| 09:49:11 | 13 | not sure how you would count them because they are |
| 09:49:14 | 14 | related. |
| 09:49:14 | 15 | Q.   Were they made by the same defendants? |
| 09:49:17 | 16 | MR. HEFFELFINGER:  Calls for a legal |
| 09:49:18 | 17 | conclusion. |
| 09:49:30 | 18 | THE WITNESS:  I don't know specifically |
| 09:49:31 | 19 | who said what based on looking at pages 13 and 14 of |
| 09:49:37 | 20 | my report. |
| 09:49:46 | 21 | MR. HARRISON:  Okay.  I'm sure we've |
| 09:49:49 | 22 | marked the complaint before in this case but we |
| 09:49:52 | 23 | don't have a copy so I'm going to mark it again, so |
| 09:49:55 | 24 | Exhibit 1004. |
| 09:49:57 | 25 | (Whereupon Exhibit 1004 was |

58980aa7-4ab1-4bbc-9ea2-405d025aac3f

JANE D.  NETTESHEIM

Page 34

| | | |
|---|---|---|
| 09:49:57 | 1 | marked for identification.) |
| 09:50:18 | 2 | MR. HARRISON:  Q.  Take a look at page 30 |
| 09:50:30 | 3 | and paragraph 111; do you see that? |
| 09:50:36 | 4 | A.  Yes. |
| 09:50:37 | 5 | Q.  It states that on August 1st, 2007 |
| 09:50:39 | 6 | defendants Peng and Lai hosted a conference call for |
| 09:50:43 | 7 | analysts and investors to explain LDK's |
| 09:50:45 | 8 | just-released financial statements. |
| 09:50:47 | 9 | A.  Yes. |
| 09:50:48 | 10 | Q.  Are you aware of any other defendant in |
| 09:50:50 | 11 | this case that spoke on that conference call? |
| 09:51:13 | 12 | MR. HEFFELFINGER:  Calls for a legal |
| 09:51:14 | 13 | conclusion. |
| 09:51:23 | 14 | THE WITNESS:  I don't recall another |
| 09:51:25 | 15 | defendant other than those two speaking at that |
| 09:51:27 | 16 | conference call. |
| 09:51:29 | 17 | MR. HARRISON:  Q.  You see in paragraph |
| 09:51:30 | 18 | 111 that the complaint attributes statements made |
| 09:51:34 | 19 | during the October 1st, 2007 conference call to |
| 09:51:37 | 20 | defendants Peng and Lai? |
| 09:51:40 | 21 | A.  Yes. |
| 09:51:40 | 22 | Q.  Now, did you conduct any procedures to |
| 09:51:43 | 23 | determine whether alleged misstatements made during |
| 09:51:49 | 24 | this conference call as opposed to alleged |
| 09:51:52 | 25 | misstatements made in LDK's August 1st press release |

JANE D.  NETTESHEIM

Page 35

| | | |
|---|---|---|
| 09:51:58 | 1 | maintained price inflation in the stock that was |
| 09:52:00 | 2 | existent as of the beginning of the class period? |
| 09:52:04 | 3 | MR. HEFFELFINGER:  Vague and overbroad, |
| 09:52:04 | 4 | object as to form. |
| 09:52:12 | 5 | THE WITNESS:  Well, I see them as related. |
| 09:52:14 | 6 | I mean, the press release came out first and then |
| 09:52:17 | 7 | there was the follow-up conference call.  I don't |
| 09:52:19 | 8 | see them as separate items necessarily. |
| 09:52:22 | 9 | MR. HARRISON:  Q.  You see them as the |
| 09:52:24 | 10 | same misstatements on that date? |
| 09:52:28 | 11 | MR. HEFFELFINGER:  Same objections. |
| 09:52:29 | 12 | THE WITNESS:  I said I saw them as |
| 09:52:31 | 13 | related. |
| 09:52:32 | 14 | MR. HARRISON:  Q.  So in answer to my |
| 09:52:35 | 15 | earlier question, you didn't conduct any procedures |
| 09:52:37 | 16 | to determine which of these two misrepresentations |
| 09:52:43 | 17 | maintained any price inflation in LDK stock that was |
| 09:52:46 | 18 | existent as of the beginning of the class period? |
| 09:52:49 | 19 | A.  Well, as I said earlier, I don't count |
| 09:52:52 | 20 | them as one, two.  I see them as related. |
| 09:52:58 | 21 | Q.  I understand.  But the question was did |
| 09:53:00 | 22 | you conduct any procedures to determine whether the |
| 09:53:08 | 23 | alleged inflation in LDK's stock at the beginning of |
| 09:53:11 | 24 | the class period was maintained by one or the other |
| 09:53:15 | 25 | on August 1st, 2007? |

58980aa7-4ab1-4bbc-9ea2-405d025aac3f

JANE D.  NETTESHEIM

Page 36

| | | |
|---|---|---|
| 09:53:18 | 1 | MR. HEFFELFINGER:  Objection.  Vague. |
| 09:53:19 | 2 | Objection as to form determining whether something |
| 09:53:30 | 3 | goes to a misrepresentation, calls for a legal |
| 09:53:33 | 4 | conclusion. |
| 09:53:38 | 5 | THE WITNESS:  As I said earlier, I did |
| 09:53:39 | 6 | look at the press release conference call, all the |
| 09:53:43 | 7 | news and analyst reports, information that came out |
| 09:53:47 | 8 | at that time period and with an awareness of the |
| 09:53:57 | 9 | alleged misrepresentations. |
| 09:53:58 | 10 | MR. HARRISON:  Q.  You considered them |
| 09:53:59 | 11 | both together to determine whether statements made |
| 09:54:03 | 12 | on August 1st maintained price inflation that was |
| 09:54:07 | 13 | existent -- allegedly existent as of the beginning |
| 09:54:12 | 14 | of the class period? |
| 09:54:13 | 15 | MR. HEFFELFINGER:  Vague and overbroad. |
| 09:54:19 | 16 | THE WITNESS:  As I said, I considered all |
| 09:54:20 | 17 | of the information that came out on that day. |
| 09:54:29 | 18 | MR. HARRISON:  I just want to make sure my |
| 09:54:32 | 19 | question is answered so I'll go back to what's here |
| 09:54:37 | 20 | and repeat it. |
| 09:55:02 | 21 | Q.  So you said earlier that you don't count |
| 09:55:05 | 22 | these misrepresentations as two separate |
| 09:55:07 | 23 | misrepresentations on August 1st, 2007. |
| 09:55:12 | 24 | MR. HEFFELFINGER:  Objection.  Calls for a |
| 09:55:14 | 25 | legal conclusion. |

58980aa7-4ab1-4bbc-9ea2-405d025aac3f

JANE D.  NETTESHEIM

Page  37

| | | |
|---|---|---|
| 09:55:15 | 1 | MR. HARRISON:  Q.  Is that fair? |
| 09:55:18 | 2 | A.  I said that I didn't count |
| 09:55:21 | 3 | misrepresentations, I didn't enumerate them.  I see |
| 09:55:24 | 4 | them as related. |
| 09:55:27 | 5 | Q.  So you didn't conduct any procedures to |
| 09:55:29 | 6 | determine whether the inflation that you claim |
| 09:55:31 | 7 | existed at the beginning of the class period was |
| 09:55:35 | 8 | attributable -- was maintained by one or the other |
| 09:55:39 | 9 | on that date? |
| 09:55:41 | 10 | MR. HEFFELFINGER:  Same objections. |
| 09:55:50 | 11 | THE WITNESS:  Well, I looked at all of the |
| 09:55:54 | 12 | information.  I didn't just look at the press |
| 09:55:58 | 13 | release, I didn't just look at the conference call, |
| 09:56:00 | 14 | I looked at all -- I didn't just look at analyst |
| 09:56:03 | 15 | reports at that time period. |
| 09:56:08 | 16 | MR. HARRISON:  Q.  So in answer to my |
| 09:56:09 | 17 | question, you didn't conduct any procedures to |
| 09:56:11 | 18 | determine whether the inflation that you claimed |
| 09:56:13 | 19 | existed at the beginning of the class period was |
| 09:56:15 | 20 | maintained by one or the other alleged false |
| 09:56:19 | 21 | statement on that date, right? |
| 09:56:22 | 22 | MR. HEFFELFINGER:  Asked and answered. |
| 09:56:27 | 23 | MR. HARRISON:  Not answered. |
| 09:56:29 | 24 | THE WITNESS:  Then I'm not sure which |
| 09:56:31 | 25 | false statement you're referring to because I |

58980aa7-4ab1-4bbc-9ea2-405d025aac3f

JANE D.   NETTESHEIM

Page 38

| 09:56:33 | 1 | characterized them -- you know, I gave you my |
| 09:56:36 | 2 | understanding of them. |
| 09:56:37 | 3 | MR. HARRISON:  Q.  So you're considering |
| 09:56:38 | 4 | them together on that date? |
| 09:56:41 | 5 | MR. HEFFELFINGER:  Asked and answered. |
| 09:56:43 | 6 | THE WITNESS:  Well, I am looking at all of |
| 09:56:46 | 7 | the information on that date. |
| 09:56:48 | 8 | MR. HARRISON:  Q.  To determine whether |
| 09:56:51 | 9 | the alleged inflation in the price of LDK stock was |
| 09:56:55 | 10 | maintained from the beginning of the class period? |
| 09:57:01 | 11 | A.  I looked at all the information on that |
| 09:57:03 | 12 | date. |
| 09:57:06 | 13 | Q.  Are you aware that LDK's inventory was |
| 09:57:09 | 14 | changing continuously during the class period? |
| 09:57:13 | 15 | MR. HEFFELFINGER:  Assumes facts not in |
| 09:57:15 | 16 | evidence. |
| 09:57:21 | 17 | THE WITNESS:  I don't know how it was |
| 09:57:23 | 18 | changing, but I was aware that they were processing. |
| 09:57:31 | 19 | MR. HARRISON:  Q.  Do you know what amount |
| 09:57:32 | 20 | of inventory is alleged in the complaint to have |
| 09:57:35 | 21 | been missing from LDK during the class period? |
| 09:57:41 | 22 | A.  That's alleged in the complaint? |
| 09:57:43 | 23 | Q.  Uh-huh. |
| 09:57:45 | 24 | A.  I don't recall. |
| 09:57:45 | 25 | Q.  If you could take a look at the complaint |

58980aa7-4ab1-4bbc-9ea2-405d025aac3f

JANE D.   NETTESHEIM

Page 39

| | | |
|---|---|---|
| 09:57:48 | 1 | which is Exhibit 1004, you see paragraph 37?  You |
| 09:58:13 | 2 | there? |
| 09:58:14 | 3 | A.   Yes. |
| 09:58:15 | 4 | Q.   The second sentence there states, |
| 09:58:17 | 5 | "According to Situ, 284 metric tons that was |
| 09:58:22 | 6 | supposedly in the warehouse was 'fake silicon' -- it |
| 09:58:24 | 7 | simply did not exist"; do you see that? |
| 09:58:27 | 8 | A.   Yes. |
| 09:58:31 | 9 | Q.   Do you know when Situ alleged that there |
| 09:58:35 | 10 | was 284 metric tons -- well, let me strike that. |
| 09:58:42 | 11 | Do you know when, according to Situ, the |
| 09:58:50 | 12 | 284 metric tons of inventory at LDK was missing? |
| 09:58:57 | 13 | MR. HEFFELFINGER:  Object to form. |
| 09:59:01 | 14 | THE WITNESS:  The date?  I don't. |
| 09:59:13 | 15 | MR. HARRISON:  Q.  You didn't endeavor to |
| 09:59:17 | 16 | determine when he was claiming there is 284 metric |
| 09:59:21 | 17 | tons of inventory missing at LDK? |
| 09:59:26 | 18 | A.   No, I didn't. |
| 09:59:39 | 19 | Q.   If you look at paragraph 87 of the |
| 09:59:42 | 20 | complaint, do you see a third sentence there that |
| 09:59:49 | 21 | says, "According to former controller Situ, in late |
| 09:59:54 | 22 | August 2007, when LDK was claiming that there were |
| 09:59:55 | 23 | over 600 metric tons in the Company's warehouse, 284 |
| 09:59:59 | 24 | metric tons of what was supposedly in the warehouse |
| 10:00:02 | 25 | simply did not exist"? |

JANE D.   NETTESHEIM

Page 40

| 10:00:03 | 1 | A.   Yes, I see that. |
|----------|---|----------------------|

10:00:04   2        Q.   Does that refresh any recollection that

10:00:06   3    Situ was claiming that as of late August 2007, there

10:00:12   4    was 284 metric tons of missing polysilicon

10:00:15   5    inventory?

10:00:19   6        A.   Other than reading the complaint, I didn't

10:00:21   7    have any -- I don't have a recollection of it other

10:00:26   8    than having read it in the complaint.

10:00:28   9        Q.   You accept this allegation as true as part

10:00:30   10   of your loss causation and damages analysis, right?

10:00:35   11       A.   I accept as true the allegations regarding

10:00:37   12   the inventory being overstated.

10:00:39   13       Q.   Is it your opinion that this allegedly

10:00:41   14   missing amount was constant during the class period?

10:00:46   15       A.   I have no opinion on that.

10:00:48   16       Q.   You're just assuming that it was?

10:00:50   17       A.   I'm assuming that the allegations are true

10:00:53   18   and that the allegations regarding the inventory

10:00:56   19   being overstated in general.

10:00:58   20       Q.   And as part of your assumptions, you're

10:01:00   21   assuming that the amount of inventory that Charlie

10:01:05   22   Situ is claiming was missing as of August 2007 was

10:01:11   23   constant during the entire class period, right?

10:01:14   24       MR. HEFFELFINGER:   Mischaracterizes

10:01:14   25   testimony, asked and answered.

58980aa7-4ab1-4bbc-9ea2-405d025aac3f

JANE D.   NETTESHEIM

Page 41

| | | |
|---|---|---|
| 10:01:19 | 1 | THE WITNESS:  I don't have an assumption. |
| 10:01:20 | 2 | MR. HARRISON:  Q.  That's not something |
| 10:01:21 | 3 | you considered as part of your opinions in this |
| 10:01:23 | 4 | case? |
| 10:01:23 | 5 | A.   It's not an assumption that I have.  And I |
| 10:01:26 | 6 | don't have an opinion on inventory. |
| 10:01:29 | 7 | Q.   So that's not something that was relevant |
| 10:01:33 | 8 | to your analysis? |
| 10:01:35 | 9 | MR. HEFFELFINGER:  Vague, overbroad. |
| 10:01:43 | 10 | THE WITNESS:  These particular -- these |
| 10:01:45 | 11 | specific numbers are not something that I'm |
| 10:01:49 | 12 | assuming. |
| 10:01:50 | 13 | MR. HARRISON:  Q.  That's not relevant to |
| 10:01:51 | 14 | you in determining the amount of inflation that was |
| 10:01:56 | 15 | present in LDK stock during the entire class period; |
| 10:02:01 | 16 | is that fair? |
| 10:02:03 | 17 | A.   These particular numbers were not relevant |
| 10:02:04 | 18 | to my analysis. |
| 10:02:07 | 19 | Q.   Same question with respect to paragraph |
| 10:02:09 | 20 | 87's reference to 35 percent of recycled silicon -- |
| 10:02:17 | 21 | well, let me rephrase that. |
| 10:02:20 | 22 | Same question with respect to the |
| 10:02:24 | 23 | allegation at paragraph 87 that 65 percent of the |
| 10:02:33 | 24 | 285 metric tons was unusable? |
| 10:02:39 | 25 | MR. HEFFELFINGER:  Sorry, are you -- |

58980aa7-4ab1-4bbc-9ea2-405d025aac3f

JANE D.   NETTESHEIM

Page 42

| | | |
|---|---|---|
| 10:02:40 | 1 | MR. HARRISON:  Yeah -- |
| 10:02:41 | 2 | MR. HEFFELFINGER:  Are you reading from a |
| 10:02:42 | 3 | paragraph from the exhibit? |
| 10:02:44 | 4 | MR. HARRISON:  Sorry.  I'm referring to |
| 10:02:46 | 5 | paragraph 87. |
| 10:02:47 | 6 | Q.   You see that it says "The remaining 285 |
| 10:02:50 | 7 | metric tons was comprised of scrap material, most of |
| 10:02:53 | 8 | it 'unusable'"? |
| 10:02:56 | 9 | A.   I see the sentence, yes. |
| 10:02:57 | 10 | Q.   And then the next one says, "According to |
| 10:03:03 | 11 | Situ, 'on average only about 35% of the recycled |
| 10:03:08 | 12 | silicon can be used'"; do you see that? |
| 10:03:12 | 13 | A.   I see that. |
| 10:03:13 | 14 | Q.   Okay.  So in other words, 65 percent of |
| 10:03:17 | 15 | the 285 metric tons was unusable, is that how you |
| 10:03:23 | 16 | read that? |
| 10:03:24 | 17 | A.   I just read it as it is, but I guess |
| 10:03:26 | 18 | that's an inference that can be made, yes. |
| 10:03:29 | 19 | Q.   Now, is that something that you assumed to |
| 10:03:32 | 20 | be true as part of your opinions in this case? |
| 10:03:37 | 21 | A.   No, not these specific numbers, no. |
| 10:03:39 | 22 | Q.   You assumed all the allegations of the |
| 10:03:41 | 23 | complaint to be true as part of your analysis, |
| 10:03:43 | 24 | right? |
| 10:03:44 | 25 | A.   As I said earlier, I assumed that the |

58980aa7-4ab1-4bbc-9ea2-405d025aac3f

JANE D.   NETTESHEIM

Page 43

| | | |
|---|---|---|
| 10:03:46 | 1 | allegations regarding the inventory in general that |
| 10:03:49 | 2 | the inventory was overstated to be true. |
| 10:03:52 | 3 | Q.   When you say "inventory in general," |
| 10:03:54 | 4 | you're referring to the allegations in the complaint |
| 10:03:56 | 5 | here, right? |
| 10:04:00 | 6 | A.   Well, my assumptions are more general than |
| 10:04:10 | 7 | that. |
| 10:04:11 | 8 | Q.   And how are they more general than the |
| 10:04:13 | 9 | actual alleged claims contained in the complaint? |
| 10:04:17 | 10 | A.   Well, I've listed my assumptions on page 5 |
| 10:04:20 | 11 | of my report. |
| 10:04:21 | 12 | Q.   So I guess the question is are you |
| 10:04:23 | 13 | assuming the allegations in paragraph 87 to be true? |
| 10:04:33 | 14 | MR. HEFFELFINGER:  Asked and answered. |
| 10:04:35 | 15 | THE WITNESS:  Well, I'm not sure -- I |
| 10:04:37 | 16 | mean, these are references to Mr. Situ.  I don't |
| 10:04:46 | 17 | have an opinion on whether or not his numbers are |
| 10:04:48 | 18 | correct, I have no idea.  And I don't have an |
| 10:04:50 | 19 | assumption about whether or not Mr. Situ's numbers |
| 10:04:54 | 20 | were correct. |
| 10:04:56 | 21 | MR. HARRISON:  Q.  Are you assuming that |
| 10:04:57 | 22 | this allegation in paragraph 87 is true as part of |
| 10:04:59 | 23 | your analysis? |
| 10:05:03 | 24 | A.   The -- I'm not incorporating statements |
| 10:05:19 | 25 | apparently made by Mr. Situ in my analysis. |

58980aa7-4ab1-4bbc-9ea2-405d025aac3f

JANE D.   NETTESHEIM

Page 44

| | | |
|---|---|---|
| 10:05:28 | 1 | Q.   I'll ask that again.  Are you assuming |
| 10:05:29 | 2 | that the allegations in paragraph 87 are true? |
| 10:05:34 | 3 | MR. HEFFELFINGER:  Asked and answered. |
| 10:05:41 | 4 | THE WITNESS:  I don't have an assumption |
| 10:05:42 | 5 | about them one way or the other. |
| 10:05:44 | 6 | MR. HARRISON:  Q.  So you're not assuming |
| 10:05:45 | 7 | that they're accurate? |
| 10:05:46 | 8 | MR. HEFFELFINGER:  Asked and answered. |
| 10:05:48 | 9 | THE WITNESS:  I don't know if they're |
| 10:05:48 | 10 | accurate. |
| 10:05:49 | 11 | MR. HARRISON:  Q.  That's not relevant to |
| 10:05:50 | 12 | your opinions in this case? |
| 10:05:53 | 13 | MR. HEFFELFINGER:  Same objections. |
| 10:05:54 | 14 | THE WITNESS:  These particular statements |
| 10:05:56 | 15 | by -- apparently made by Mr. Situ are not relevant, |
| 10:05:59 | 16 | not to my specific calculations. |
| 10:06:04 | 17 | MR. HARRISON:  Q.  So the amount of |
| 10:06:07 | 18 | inventory that Situ claimed was overstated at LDK is |
| 10:06:11 | 19 | not relevant to your analysis and opinions in this |
| 10:06:15 | 20 | case? |
| 10:06:16 | 21 | MR. HEFFELFINGER:  Same objection. |
| 10:06:21 | 22 | THE WITNESS:  The statements that are |
| 10:06:24 | 23 | relevant to my opinions I've put forth in my report, |
| 10:06:27 | 24 | and they're more general, having to do with general |
| 10:06:35 | 25 | allegations regarding the valuations of the |

58980aa7-4ab1-4bbc-9ea2-405d025aac3f

JANE D.  NETTESHEIM

Page 45

| | | |
|---|---|---|
| 10:06:37 | 1 | inventory. |
| 10:06:38 | 2 | MR. HARRISON:  Q.  Okay.  Do you see at |
| 10:06:40 | 3 | page 12 of your report, Footnote 12, you cite |
| 10:06:46 | 4 | paragraph 87? |
| 10:06:51 | 5 | A.  Yes. |
| 10:06:53 | 6 | Q.  So as part of your opinions in this case, |
| 10:06:58 | 7 | you're assuming that paragraph 87 is true? |
| 10:07:04 | 8 | A.  Well, this is a summary of the |
| 10:07:05 | 9 | misstatements.  And, you know, I think this is |
| 10:07:13 | 10 | referring to paragraph 87, but it's -- I don't have |
| 10:07:17 | 11 | an opinion about how much of the inventory -- I |
| 10:07:20 | 12 | don't have an opinion about specific numbers about |
| 10:07:22 | 13 | the inventory.  I've been given assumptions that the |
| 10:07:29 | 14 | inventory was overvalued. |
| 10:07:31 | 15 | Q.  Have you been given assumptions about the |
| 10:07:34 | 16 | amount to which the inventory was overvalued? |
| 10:07:37 | 17 | A.  No. |
| 10:07:38 | 18 | Q.  Have you been asked to assume that the |
| 10:07:40 | 19 | amounts contained in the complaint as being |
| 10:07:45 | 20 | allegedly overstated are accurate? |
| 10:07:50 | 21 | A.  No. |
| 10:07:51 | 22 | Q.  So the reason why you're citing paragraph |
| 10:07:56 | 23 | 87 in the complaint is merely to describe the |
| 10:08:01 | 24 | allegations in the complaint? |
| 10:08:04 | 25 | MR. HEFFELFINGER:  Mischaracterizes |

JANE D.   NETTESHEIM

Page 46

| | | |
|---|---|---|
| 10:08:04 | 1 | testimony. |
| 10:08:05 | 2 | THE WITNESS:  Yeah, as I've described in |
| 10:08:08 | 3 | my report that there were alleged false and |
| 10:08:11 | 4 | misleading statements because much of the inventory |
| 10:08:16 | 5 | was unusable or could only be used to a limited |
| 10:08:19 | 6 | extent. |
| 10:08:20 | 7 | MR. HARRISON:  Q.  You see where you cite |
| 10:08:21 | 8 | to -- well, I referred to it before, but complaint |
| 10:08:27 | 9 | paragraph 86, 87, at the end of paragraph 22, |
| 10:08:31 | 10 | sub "i," Romanette "i." |
| 10:08:38 | 11 | A.   Yes. |
| 10:08:38 | 12 | Q.   You state that much of the inventory -- |
| 10:08:42 | 13 | well, I'll read the whole thing.  "Plaintiff alleges |
| 10:08:47 | 14 | that statements regarding the sufficiency of the |
| 10:08:48 | 15 | Company's silicon inventory to meet estimated 2007 |
| 10:08:51 | 16 | and 2008 requirements were false and misleading |
| 10:08:54 | 17 | because much of this inventory was unusable or could |
| 10:08:58 | 18 | only be used to a limited extent in LDK's |
| 10:09:01 | 19 | manufacturing process"; do you see that? |
| 10:09:03 | 20 | A.   Yes. |
| 10:09:03 | 21 | Q.   You cite paragraph 86 or 87? |
| 10:09:05 | 22 | A.   Yes. |
| 10:09:07 | 23 | Q.   Where in paragraph 86 and 87 does it |
| 10:09:10 | 24 | describe inventory that could only be used to a |
| 10:09:13 | 25 | limited extent in LDK's manufacturing process? |

JANE D.   NETTESHEIM

Page 47

| | | |
|---|---|---|
| 10:09:34 | 1 | A.   I don't think it uses those words |
| 10:09:37 | 2 | specifically. |
| 10:09:41 | 3 | MR. HEFFELFINGER:  Document speaks for |
| 10:09:42 | 4 | itself. |
| 10:09:43 | 5 | THE WITNESS:  There's reference to some |
| 10:09:51 | 6 | low-quality silicon that is unsuitable for |
| 10:09:55 | 7 | production.  Well, it references to that much of it |
| 10:10:09 | 8 | was unusable. |
| 10:10:11 | 9 | MR. HARRISON:  Q.  Where did you get the |
| 10:10:12 | 10 | words, "could be used to a limited extent in LDK's |
| 10:10:16 | 11 | manufacturing process"? |
| 10:10:24 | 12 | A.   I don't know where the specific words came |
| 10:10:26 | 13 | from, it's meant just to be a summary. |
| 10:10:30 | 14 | Q.   Summary of those -- I'm sorry. |
| 10:10:33 | 15 | A.   Summary taken from the complaint and, you |
| 10:10:35 | 16 | know, my understanding of the misrepresentations in |
| 10:10:38 | 17 | this case. |
| 10:10:39 | 18 | Q.   And that is referring to paragraphs 86 and |
| 10:10:43 | 19 | 87, so you're claiming that that's a summary of |
| 10:10:45 | 20 | those paragraphs? |
| 10:10:46 | 21 | A.   And my understanding of the |
| 10:10:47 | 22 | misrepresentations. |
| 10:10:50 | 23 | Q.   Is it your understanding in paragraphs 86 |
| 10:10:53 | 24 | or 87 that there are allegations of inventory that |
| 10:10:56 | 25 | could only be used to a limited extent in LDK's |

58980aa7-4ab1-4bbc-9ea2-405d025aac3f

JANE D.   NETTESHEIM

Page 48

| | | |
|---|---|---|
| 10:11:00 | 1 | manufacturing process? |
| 10:11:01 | 2 | MR. HEFFELFINGER:  Document speaks for |
| 10:11:02 | 3 | itself, asked and answered. |
| 10:11:11 | 4 | THE WITNESS:  Well, as I said earlier, I |
| 10:11:13 | 5 | mean, there are references in that paragraph to some |
| 10:11:17 | 6 | of the silicon being unsuitable for production and |
| 10:11:24 | 7 | only part of the scrap material being usable. |
| 10:11:33 | 8 | MR. HARRISON:  Q.  And that's where you -- |
| 10:11:35 | 9 | A.   You know, that seems to be similar type |
| 10:11:40 | 10 | statements. |
| 10:11:41 | 11 | Q.   Did you -- you see where in paragraph 87 |
| 10:11:47 | 12 | it says, "LDK was claiming that there were over 600 |
| 10:11:50 | 13 | metric tons in the Company's warehouse"? |
| 10:11:56 | 14 | A.   Yes, I see that. |
| 10:12:00 | 15 | Q.   What portion of that 600 metric tons was |
| 10:12:07 | 16 | inventory that could be used to a limited extent in |
| 10:12:10 | 17 | LDK's manufacturing process? |
| 10:12:13 | 18 | MR. HEFFELFINGER:  Exceeds the scope of |
| 10:12:15 | 19 | this witness's expertise. |
| 10:12:21 | 20 | THE WITNESS:  I don't know. |
| 10:12:25 | 21 | MR. HARRISON:  Q.  Did you assume that any |
| 10:12:28 | 22 | such amounts were constant during the entire class |
| 10:12:31 | 23 | period? |
| 10:12:32 | 24 | MR. HEFFELFINGER:  Vague and ambiguous. |
| 10:12:33 | 25 | THE WITNESS:  As I said earlier, I didn't |

58980aa7-4ab1-4bbc-9ea2-405d025aac3f

JANE D. NETTESHEIM

Page 49

| | | |
|---|---|---|
| 10:12:35 | 1 | make any assumptions about any amounts having to do |
| 10:12:38 | 2 | with -- any specific amounts with respect to the |
| 10:12:41 | 3 | inventory. |
| 10:12:42 | 4 | MR. HARRISON: Q. So whether or not |
| 10:12:43 | 5 | inventory that could only be used to a limited |
| 10:12:45 | 6 | extent in LDK's manufacturing process was constant |
| 10:12:50 | 7 | during the class period was not something that you |
| 10:12:52 | 8 | considered to be relevant as part of your opinions |
| 10:12:54 | 9 | in this case? |
| 10:12:55 | 10 | MR. HEFFELFINGER: Object to form. |
| 10:13:05 | 11 | THE WITNESS: I don't have any knowledge |
| 10:13:06 | 12 | of any specific inventory amounts. |
| 10:13:15 | 13 | MR. HARRISON: Q. I think the question |
| 10:13:16 | 14 | was a little different. And I was asking whether it |
| 10:13:21 | 15 | was relevant to you to consider whether missing or |
| 10:13:26 | 16 | unusable inventory or inventory that could be used |
| 10:13:31 | 17 | to a limited extent was constant during the class |
| 10:13:34 | 18 | period was relevant to your analysis. |
| 10:13:36 | 19 | MR. HEFFELFINGER: Same objection as to |
| 10:13:37 | 20 | form. |
| 10:13:41 | 21 | THE WITNESS: In terms of what I was |
| 10:13:42 | 22 | doing, it was not relevant. |
| 10:13:45 | 23 | MR. HARRISON: Q. Why wasn't it relevant? |
| 10:13:49 | 24 | A. I'm not providing opinions on quantities |
| 10:13:53 | 25 | of inventory, values of inventory. I'm not |

58980aa7-4ab1-4bbc-9ea2-405d025aac3f

JANE D.   NETTESHEIM

Page 50

| 10:13:59 | 1 | providing any opinions with respect to any inventory |
| 10:14:03 | 2 | numbers. |
| 10:14:04 | 3 | Q.   And so the amount to which the plaintiff |
| 10:14:08 | 4 | claims that LDK's inventory was overstated was not |
| 10:14:12 | 5 | relevant to the amount that LDK's stock was inflated |
| 10:14:15 | 6 | in your opinion? |
| 10:14:16 | 7 | MR. HEFFELFINGER:  Mischaracterizes |
| 10:14:18 | 8 | testimony. |
| 10:14:26 | 9 | THE WITNESS:  It is -- well, as I said |
| 10:14:30 | 10 | earlier, I don't have an opinion and I don't have |
| 10:14:33 | 11 | knowledge of specific inventory amounts.  And it's |
| 10:14:38 | 12 | not something that is relevant in terms of my |
| 10:14:43 | 13 | analysis with respect to loss causation and damages. |
| 10:14:48 | 14 | MR. HARRISON:  Q.  So that's not relevant |
| 10:14:49 | 15 | to the amount of inflation of LDK's stock that you |
| 10:14:53 | 16 | claim occurred during the class period? |
| 10:15:00 | 17 | MR. HEFFELFINGER:  Same objection. |
| 10:15:01 | 18 | Objection as to form. |
| 10:15:05 | 19 | THE WITNESS:  I didn't need to determine |
| 10:15:06 | 20 | those inventory numbers in order to do the analysis |
| 10:15:10 | 21 | that I did. |
| 10:15:35 | 22 | MR. HARRISON:  Q.  Is it your opinion that |
| 10:15:35 | 23 | the alleged inflation in LDK's stock price during |
| 10:15:39 | 24 | the class period was constant in percentage terms? |
| 10:15:45 | 25 | A.   Through October 2nd. |

58980aa7-4ab1-4bbc-9ea2-405d025aac3f

JANE D.  NETTESHEIM

Page 51

| | | |
|---|---|---|
| 10:15:49 | 1 | Q.   Do you -- is it your opinion that the |
| 10:15:52 | 2 | alleged inflation in LDK's stock price during the |
| 10:15:55 | 3 | class period was constant in dollar terms? |
| 10:16:00 | 4 | A.   Well, as I described in my report, the |
| 10:16:07 | 5 | dollar price -- the fall in dollar amounts at the |
| 10:16:12 | 6 | end of the class period is larger than the stock |
| 10:16:14 | 7 | price at the beginning of the class period.  So, no, |
| 10:16:16 | 8 | it's not my opinion that that inflation was |
| 10:16:18 | 9 | constant. |
| 10:16:21 | 10 | Q.   With respect to your opinion about the |
| 10:16:24 | 11 | inflation in terms of percentage in dollar terms, |
| 10:16:28 | 12 | it's not relevant to you whether or not LDK's |
| 10:16:33 | 13 | inventory amounts changed during the class period; |
| 10:16:36 | 14 | is that right? |
| 10:16:39 | 15 | A.   Based on the assumptions that I've been |
| 10:16:41 | 16 | given, the specific changes in the inventory are not |
| 10:16:47 | 17 | relevant to my opinion. |
| 10:17:00 | 18 | Q.   At Footnote 68 of your reply report, you |
| 10:17:21 | 19 | cite an article by Janet Cooper Alexander; do you |
| 10:17:25 | 20 | see that? |
| 10:17:27 | 21 | A.   Yes. |
| 10:17:28 | 22 | MR. HARRISON:  Exhibit 1005. |
| 10:17:30 | 23 | (Whereupon Exhibit 1005 was |
| 10:17:30 | 24 | marked for identification.) |
| 10:17:45 | 25 | MR. HARRISON:  Q.  Do you have it? |

58980aa7-4ab1-4bbc-9ea2-405d025aac3f

JANE D.   NETTESHEIM

Page 52

| | | |
|---|---|---|
| 10:17:46 | 1 | A.   Not yet. |
| 10:17:54 | 2 | Q.   For the record, this is an article by |
| 10:17:57 | 3 | Janet Cooper Alexander entitled, "The Value of Bad |
| 10:18:01 | 4 | News in Security Class Actions," 41 UCLA Law Review |
| 10:18:05 | 5 | 1421, dated August 1994. |
| 10:18:13 | 6 | You've read this article? |
| 10:18:17 | 7 | A.   I have.  Not recently, but I have. |
| 10:18:22 | 8 | Q.   Did you read it in connection with the |
| 10:18:24 | 9 | opinions that you offered in this case? |
| 10:18:27 | 10 | A.   I read it before I wrote this report but |
| 10:18:33 | 11 | not too long before I wrote the report, so I was |
| 10:18:36 | 12 | familiar with what's in the article. |
| 10:18:39 | 13 | Q.   If you turn to page 12, and I'm not going |
| 10:18:51 | 14 | to make you read this for the record because it's |
| 10:18:56 | 15 | sort of long but if you could just take a look at |
| 10:18:59 | 16 | the first three paragraphs for me. |
| 10:20:13 | 17 | A.   Okay.  I've read the first three |
| 10:20:15 | 18 | paragraphs. |
| 10:20:16 | 19 | Q.   On page 12, right? |
| 10:20:18 | 20 | A.   Yes. |
| 10:20:18 | 21 | Q.   Okay.  Do you agree with that passage? |
| 10:20:22 | 22 | MR. HEFFELFINGER:  Vague and overbroad. |
| 10:20:25 | 23 | THE WITNESS:  Anything in particular or? |
| 10:20:28 | 24 | MR. HARRISON:  Q.  Well, first, I'll ask |
| 10:20:30 | 25 | generally do you agree with what's written in the |

JANE D.   NETTESHEIM

Page 53

| | | |
|---|---|---|
| 10:20:33 | 1 | first three paragraphs on page 12? |
| 10:20:36 | 2 | MR. HEFFELFINGER:  Same objection. |
| 10:20:50 | 3 | THE WITNESS:  Well, I think I'd have to go |
| 10:20:53 | 4 | through it sentence by sentence.  There are a lot of |
| 10:20:56 | 5 | different concepts here.  I don't have any opinion |
| 10:20:58 | 6 | or can't agree or disagree what Apple should have |
| 10:21:02 | 7 | done, for example.  There's a lot here. |
| 10:21:04 | 8 | MR. HARRISON:  Q.  Fair enough.  Let me |
| 10:21:04 | 9 | make is easier for you.  See the second sentence, it |
| 10:21:06 | 10 | says, "Similarly, the significance of the |
| 10:21:08 | 11 | undisclosed information may change over time, so |
| 10:21:11 | 12 | that the value line cannot simply be extrapolated |
| 10:21:15 | 13 | from a later disclosure."  Do you agree with that |
| 10:21:19 | 14 | statement? |
| 10:21:27 | 15 | A.  Yes. |
| 10:21:32 | 16 | Q.  Your damages model concludes that there |
| 10:21:34 | 17 | was inflation that exceeded the amount of LDK stock |
| 10:21:38 | 18 | price early in the class period, right? |
| 10:21:44 | 19 | A.  Well, using the constant-dollar method to |
| 10:21:47 | 20 | measure price inflation, which is $30.90, would |
| 10:22:03 | 21 | exceed the stock price early in the class period. |
| 10:22:08 | 22 | Q.  And that's -- you're looking at paragraph |
| 10:22:12 | 23 | 75 of your report? |
| 10:22:14 | 24 | A.  Yes.  And I explained in my report the |
| 10:22:22 | 25 | differences between the constant-dollar and the |

58980aa7-4ab1-4bbc-9ea2-405d025aac3f

JANE D.   NETTESHEIM

Page 54

| | | |
|---|---|---|
| 10:22:25 | 1 | constant-percentage methods. |
| 10:22:28 | 2 | Q.   Now, you attempt to adjust for the fact |
| 10:22:36 | 3 | that your model concludes under the constant-dollar |
| 10:22:44 | 4 | method that the price of inflation exceeded LDK's |
| 10:22:47 | 5 | stock price at the beginning of the class period, |
| 10:22:51 | 6 | you adjusted for it by setting inflation equal to |
| 10:22:55 | 7 | zero in these instances, right? |
| 10:23:00 | 8 | A.   No, I said the inflation couldn't be |
| 10:23:02 | 9 | greater than the stock price. |
| 10:23:04 | 10 | Q.   That's what I -- thanks for correcting me. |
| 10:23:07 | 11 | Okay.  So you're assuming that the stock price of |
| 10:23:13 | 12 | LDK on that date was zero and let me -- |
| 10:23:20 | 13 | A.   I'm sorry. |
| 10:23:22 | 14 | Q.   Yeah, let me rephrase that.  If you look |
| 10:23:24 | 15 | at Exhibit 5B of your report, on page 1 of 3. |
| 10:23:38 | 16 | A.   Yes. |
| 10:23:38 | 17 | Q.   You there? |
| 10:23:39 | 18 | A.   Uh-huh. |
| 10:23:46 | 19 | Q.   You're assuming between June 1st and |
| 10:23:50 | 20 | June 27th that LDK stock price is zero, right? |
| 10:23:55 | 21 | A.   Yeah, using the constant-dollar method. |
| 10:24:00 | 22 | Q.   Is it your opinion that LDK's actual stock |
| 10:24:03 | 23 | price as of its IPO date was zero? |
| 10:24:06 | 24 | A.   Well, I also provide the |
| 10:24:08 | 25 | constant-percentage method and so it depends on |

58980aa7-4ab1-4bbc-9ea2-405d025aac3f

JANE D.   NETTESHEIM

Page 55

| | | |
|---|---|---|
| 10:24:11 | 1 | which method of price inflation you're looking at. |
| 10:24:17 | 2 | Q.   Looking at the constant-dollar method, is |
| 10:24:21 | 3 | it your opinion that LDK's actual stock price as of |
| 10:24:24 | 4 | its IPO date was zero? |
| 10:24:26 | 5 | A.   It's a result of using that method. |
| 10:24:29 | 6 | Q.   A result from your model? |
| 10:24:31 | 7 | A.   Yes. |
| 10:24:33 | 8 | Q.   You're assuming -- well, let me back up. |
| 10:24:36 | 9 | Is it your opinion that LDK's actual stock |
| 10:24:39 | 10 | price as of the IPO date was actually zero under |
| 10:24:45 | 11 | this method? |
| 10:24:47 | 12 | MR. DEVORE:  When you say "actual stock |
| 10:24:48 | 13 | price," do you mean the stock was actually trading |
| 10:24:51 | 14 | at zero dollars or are you saying some sort of |
| 10:24:54 | 15 | predicted price? |
| 10:24:56 | 16 | MR. HEFFELFINGER:  Vague and ambiguous. |
| 10:24:58 | 17 | MR. DEVORE:  The question is a little bit |
| 10:24:59 | 18 | vague.  I just want to clarify what you're asking. |
| 10:25:02 | 19 | MR. HARRISON:  Q.  I'm asking is it your |
| 10:25:03 | 20 | opinion that LDK's actual stock price as of the IPO |
| 10:25:07 | 21 | date was trading at zero? |
| 10:25:12 | 22 | A.   Well, it wasn't trading at zero.  But I |
| 10:25:16 | 23 | don't have that opinion, no. |
| 10:25:25 | 24 | Q.   So as part of this model where you assume |
| 10:25:28 | 25 | that the constant-dollar inflation of LDK stock is |

58980aa7-4ab1-4bbc-9ea2-405d025aac3f

JANE D.   NETTESHEIM

Page 56

| | | |
|---|---|---|
| 10:25:32 | 1 | $30.90, the only reason why your estimates of price |
| 10:25:38 | 2 | inflation don't actually exceed LDK's stock price is |
| 10:25:41 | 3 | because you're assuming that the amount of inflation |
| 10:25:44 | 4 | on LDK's stock during these dates was zero, right? |
| 10:25:51 | 5 | MR. HEFFELFINGER:  Objection as to form. |
| 10:25:56 | 6 | THE WITNESS:  Well, I'm assuming that the |
| 10:25:57 | 7 | inflation can't be greater than the stock price. |
| 10:25:59 | 8 | MR. HARRISON:  Q.  And you've created that |
| 10:26:01 | 9 | artificial predicted price because that $30.90 |
| 10:26:08 | 10 | figure actually exceeds LDK's stock price on that |
| 10:26:11 | 11 | date under this model? |
| 10:26:16 | 12 | A.  Well, yes, under this model the price |
| 10:26:18 | 13 | inflation can't exceed the stock price. |
| 10:26:26 | 14 | Q.  And the reason why it can't exceed the |
| 10:26:29 | 15 | stock price between -- under your model on June 1st, |
| 10:26:33 | 16 | 2007 through June 27th, 2007 is because you've |
| 10:26:38 | 17 | assumed under the column "Predicted Price" that |
| 10:26:41 | 18 | LDK's stock was zero? |
| 10:26:46 | 19 | MR. HEFFELFINGER:  Mischaracterizes |
| 10:26:48 | 20 | testimony. |
| 10:26:49 | 21 | THE WITNESS:  Well, as a result, the |
| 10:26:51 | 22 | predicted price is zero, but that's because of an |
| 10:26:53 | 23 | assumption that the price inflation can't exceed the |
| 10:26:57 | 24 | stock price. |
| 10:26:58 | 25 | MR. HARRISON:  Q.  That's your assumption? |

58980aa7-4ab1-4bbc-9ea2-405d025aac3f

JANE D.   NETTESHEIM

Page 57

| | | |
|---|---|---|
| 10:27:00 | 1 | A.   Yes. |
| 10:27:10 | 2 | Q.   As part of that assumption, you're |
| 10:27:12 | 3 | assuming that inflation occurred at the beginning of |
| 10:27:14 | 4 | the class period with no actual attempt to determine |
| 10:27:19 | 5 | the amount of inflation between 6/1 and 6/27/2007, |
| 10:27:25 | 6 | right? |
| 10:27:26 | 7 | MR. HEFFELFINGER:  Vague and ambiguous. |
| 10:27:31 | 8 | THE WITNESS:  No, the inflation is the |
| 10:27:34 | 9 | amount of the stock price. |
| 10:27:38 | 10 | MR. HARRISON:  Q.  So your assumption is |
| 10:27:40 | 11 | that the entire stock price of LDK under this model |
| 10:27:44 | 12 | is inflated by alleged misrepresentations on |
| 10:27:47 | 13 | June 1st? |
| 10:27:49 | 14 | A.   In this model, yes. |
| 10:28:12 | 15 | Q.   And in reality, LDK's stock during that |
| 10:28:15 | 16 | period of time was not actually trading at zero, |
| 10:28:19 | 17 | correct? |
| 10:28:20 | 18 | A.   That's correct. |
| 10:28:28 | 19 | Q.   You used the constant-percentage approach |
| 10:28:30 | 20 | to calculate inflation as well, right? |
| 10:28:33 | 21 | A.   Yes. |
| 10:28:33 | 22 | Q.   And is this your preferred method for this |
| 10:28:36 | 23 | case? |
| 10:28:37 | 24 | A.   I think in this case, yes, it is. |
| 10:28:42 | 25 | Q.   Is the use of constant-percentage |

JANE D.   NETTESHEIM

Page 58

| | | |
|---|---|---|
| 10:28:44 | 1 | inflation supported by any peer-review literature? |
| 10:28:49 | 2 | A.   Yes, there are articles that do the |
| 10:28:54 | 3 | calculations in the same way or talk about doing the |
| 10:28:56 | 4 | calculations in the same way. |
| 10:28:57 | 5 | Q.   Are they peer-reviewed articles? |
| 10:29:02 | 6 | A.   Yes. |
| 10:29:03 | 7 | Q.   Can you name any of them sitting here |
| 10:29:05 | 8 | today? |
| 10:29:06 | 9 | A.   Well, the Cornell and Morgan, the articles |
| 10:29:24 | 10 | in Footnote 68, I know some of those articles. |
| 10:29:29 | 11 | Certainly the Cornell and Morgan calculate price |
| 10:29:32 | 12 | inflation that way.  One of the NERA articles refer |
| 10:29:46 | 13 | to calculating -- different ways of calculating |
| 10:29:50 | 14 | inflation but that's one of the ways they talk |
| 10:29:52 | 15 | about. |
| 10:29:54 | 16 | Q.   And you're looking at Footnote 68 in your |
| 10:29:57 | 17 | reply report? |
| 10:30:00 | 18 | A.   Yes. |
| 10:30:04 | 19 | Q.   So it's your -- well, let me just make |
| 10:30:08 | 20 | sure we're clear.  Are any of these articles that |
| 10:30:11 | 21 | you cite in here peer-reviewed articles? |
| 10:30:13 | 22 | A.   Well, they're law reviews.  I don't know |
| 10:30:16 | 23 | what you mean by "peer reviewed." |
| 10:30:19 | 24 | Q.   Do you understand what the term "peer |
| 10:30:21 | 25 | reviewed" means in the field of -- in your field? |

JANE D.   NETTESHEIM

Page 59

| | | |
|---|---|---|
| 10:30:28 | 1 | A.   Well, these are not finance journals so I |
| 10:30:32 | 2 | don't know how these law reviews have been -- |
| 10:30:35 | 3 | articles and law reviews have been reviewed.  My |
| 10:30:38 | 4 | understanding is they're reviewed. |
| 10:30:40 | 5 | Q.   What does the term "peer reviewed" mean in |
| 10:30:44 | 6 | your field? |
| 10:30:46 | 7 | A.   Well, if an article is in an economics |
| 10:30:48 | 8 | journal, then it would be reviewed prior to its |
| 10:30:51 | 9 | publication by experts in that field, it would be |
| 10:30:55 | 10 | economists. |
| 10:30:57 | 11 | Q.   Are you aware of any articles in economics |
| 10:31:01 | 12 | journals that were peer reviewed that support the |
| 10:31:03 | 13 | use of a constant-percentage inflation model? |
| 10:31:08 | 14 | A.   I don't know of any articles that would be |
| 10:31:11 | 15 | in economics journals that have -- you know, this is |
| 10:31:19 | 16 | methodologies that are applied to litigation. |
| 10:31:24 | 17 | Q.   So you're not aware of any articles in |
| 10:31:27 | 18 | economics journals, peer-reviewed articles that |
| 10:31:31 | 19 | support a constant-percentage inflation model? |
| 10:31:35 | 20 | A.   Well, I'm just not aware of articles in |
| 10:31:37 | 21 | economics journals that talk about these types of |
| 10:31:40 | 22 | litigation issues. |
| 10:31:44 | 23 | Q.   Is the use of a constant-percentage |
| 10:31:46 | 24 | inflation model supported by any legal decisions |
| 10:31:52 | 25 | that you're aware of? |

58980aa7-4ab1-4bbc-9ea2-405d025aac3f

JANE D.   NETTESHEIM

Page 60

| | | |
|---|---|---|
| 10:31:58 | 1 | MR. HEFFELFINGER:  Calls for a legal |
| 10:32:01 | 2 | conclusion. |
| 10:32:03 | 3 | THE WITNESS:  I don't recall. |
| 10:32:08 | 4 | MR. HARRISON:  Q.  Are you aware of any? |
| 10:32:10 | 5 | I'm sorry, I didn't mean to repeat the question.  I |
| 10:32:13 | 6 | just -- you say you don't recall.  Do you believe |
| 10:32:16 | 7 | that there are some, you just don't remember? |
| 10:32:20 | 8 | MR. HEFFELFINGER:  Same objection. |
| 10:32:30 | 9 | THE WITNESS:  I believe there are some but |
| 10:32:32 | 10 | I don't recall. |
| 10:32:35 | 11 | MR. HARRISON:  Q.  Now, under the |
| 10:32:36 | 12 | constant-percentage model or the constant-percentage |
| 10:32:38 | 13 | method, prior to disclosure of any corrective |
| 10:32:44 | 14 | information, if the stock's price is higher on one |
| 10:32:47 | 15 | day during the class period than on another day |
| 10:32:50 | 16 | during the class period, the amount of inflation |
| 10:32:52 | 17 | will be larger, right? |
| 10:32:53 | 18 | A.   Yes.  In dollar terms, yes. |
| 10:32:57 | 19 | Q.   Does this mean that inflation can increase |
| 10:32:58 | 20 | or decrease on dates within a class period even |
| 10:33:02 | 21 | where no new information related to the alleged |
| 10:33:05 | 22 | fraud is disclosed? |
| 10:33:06 | 23 | MR. HEFFELFINGER:  Objection.  Incomplete |
| 10:33:08 | 24 | hypothetical. |
| 10:33:08 | 25 | THE WITNESS:  Yes, as I describe in my |

58980aa7-4ab1-4bbc-9ea2-405d025aac3f

JANE D.  NETTESHEIM

Page 61

| | | |
|---|---|---|
| 10:33:11 | 1 | report, the fraud portion of the stock price can be |
| 10:33:15 | 2 | affected by company-specific market and |
| 10:33:19 | 3 | industry-specific events also. |
| 10:33:23 | 4 | MR. HARRISON:  Q.  And as a result of |
| 10:33:24 | 5 | using the constant-percentage method of estimating |
| 10:33:27 | 6 | inflation in this case, would people who purchased |
| 10:33:30 | 7 | shares on different days during the class period and |
| 10:33:33 | 8 | sell after the alleged corrective disclosures have |
| 10:33:36 | 9 | different damages per share? |
| 10:33:39 | 10 | A.  They could, yes. |
| 10:33:43 | 11 | Q.  Could you look at your report, Exhibit 7B. |
| 10:33:49 | 12 | A.  Yes. |
| 10:33:58 | 13 | Q.  If you look at the second page of |
| 10:34:00 | 14 | Exhibit 7B, your estimate of inflation on August 30, |
| 10:34:05 | 15 | 2007 is $21.63, right? |
| 10:34:10 | 16 | A.  Yes. |
| 10:34:10 | 17 | Q.  And your estimate of inflation on |
| 10:34:13 | 18 | September 26, 2007 is a little over $33.21? |
| 10:34:21 | 19 | A.  Yes. |
| 10:34:22 | 20 | Q.  Just to be accurate, it's $33.214.  That |
| 10:34:29 | 21 | wasn't accurate either but about $33.21, right? |
| 10:34:34 | 22 | A.  Yes. |
| 10:34:36 | 23 | Q.  So under the constant-percentage method, |
| 10:34:38 | 24 | someone buying LDK stock on August 30th, 2007 and |
| 10:34:43 | 25 | holding through October 8th, 2007 would receive more |

58980aa7-4ab1-4bbc-9ea2-405d025aac3f

JANE D.   NETTESHEIM

Page 62

| | | |
|---|---|---|
| 10:34:49 | 1 | than $11 per share in damages than someone buying on |
| 10:34:55 | 2 | September 26, 2007 and holding through October 8th, |
| 10:34:59 | 3 | 2007? |
| 10:35:05 | 4 | A.   I think you got that backwards.  Maybe I |
| 10:35:08 | 5 | didn't understand the question.  Did you say that |
| 10:35:11 | 6 | somebody in August 30th would get more? |
| 10:35:15 | 7 | Q.   I'm sorry, yeah.  Thank you.  Someone |
| 10:35:20 | 8 | buying on September 26th would have -- and selling |
| 10:35:25 | 9 | on October 8th would have over $11 more damages than |
| 10:35:30 | 10 | someone buying on August 30th, 2007 and selling on |
| 10:35:33 | 11 | the same -- on October 10th -- October 8th, 2007? |
| 10:35:49 | 12 | A.   Yes. |
| 10:35:50 | 13 | Q.   Now, would that be the case despite the |
| 10:35:52 | 14 | fact that there were no alleged misrepresentations |
| 10:35:56 | 15 | during the class period between those two dates? |
| 10:36:02 | 16 | A.   Right, and as I explained in my report, |
| 10:36:05 | 17 | the difference between the -- well, that the -- |
| 10:36:11 | 18 | under the constant-percentage method of measuring |
| 10:36:14 | 19 | price inflation, the fraud part of the price, so if |
| 10:36:19 | 20 | you think about the true value, part of the price is |
| 10:36:22 | 21 | its true value, part of the price is inflated due to |
| 10:36:26 | 22 | the alleged fraud, the value of that fraud can |
| 10:36:28 | 23 | change. |
| 10:36:32 | 24 | Q.   And it's your opinion that the value of |
| 10:36:34 | 25 | the fraud can change between two dates even though |

58980aa7-4ab1-4bbc-9ea2-405d025aac3f

JANE D.   NETTESHEIM

Page 63

| | | |
|---|---|---|
| 10:36:38 | 1 | there's no alleged misrepresentations between those |
| 10:36:41 | 2 | dates and the class period? |
| 10:36:43 | 3 | A.   Right, because of the value of the fraud |
| 10:36:45 | 4 | is also affected by the underlying perceived value |
| 10:36:49 | 5 | of the company. |
| 10:36:51 | 6 | Q.   What is your estimate of inflation for |
| 10:36:54 | 7 | class members who bought LDK's stock -- well, let me |
| 10:37:01 | 8 | back up. |
| 10:37:02 | 9 | So if you look at September 26th, your |
| 10:37:10 | 10 | estimate of inflation on that date is $33.21? |
| 10:37:15 | 11 | A.   Yes. |
| 10:37:19 | 12 | Q.   What's your damages per share estimate for |
| 10:37:21 | 13 | the class members who bought on that date with an |
| 10:37:25 | 14 | inflation of $33 and sold at the closing price on |
| 10:37:30 | 15 | October 8th, 2007? |
| 10:37:39 | 16 | A.   It could also be affected by the PSLRA.  I |
| 10:37:48 | 17 | think in this case it would be the $33.21. |
| 10:37:56 | 18 | Q.   That would be the amount of damages per |
| 10:37:59 | 19 | share for someone who bought on September 26th and |
| 10:38:03 | 20 | sold on October 8th under this model, $33.21? |
| 10:38:13 | 21 | MR. DEVORE:  Just to be clear, your |
| 10:38:14 | 22 | previous question just said $33 not $33.21.  Just |
| 10:38:21 | 23 | want to make sure that the record is -- |
| 10:38:23 | 24 | MR. HARRISON:  I appreciate that. |
| 10:38:25 | 25 | Q.   I don't know if I misspoke, but I meant to |

58980aa7-4ab1-4bbc-9ea2-405d025aac3f

JANE D.  NETTESHEIM

Page 64

| | | |
|---|---|---|
| 10:38:27 | 1 | state the number that you include in your report |
| 10:38:30 | 2 | there.  And if I caused any confusion then I can |
| 10:38:33 | 3 | restate it.  But the question I was asking was the |
| 10:38:39 | 4 | last question. |
| 10:38:39 | 5 | So amount of damages per share for someone |
| 10:38:41 | 6 | who bought on September 26th, 2007 and sold on |
| 10:38:45 | 7 | October 8th, 2007 would be $33.21; is that right? |
| 10:38:50 | 8 | A.   Yes. |
| 10:38:53 | 9 | Q.   If you look at the column in your report, |
| 10:38:56 | 10 | and you can turn to the first page that says, |
| 10:38:59 | 11 | "90-Day-Lookback Values," what does that column |
| 10:39:04 | 12 | represent? |
| 10:39:04 | 13 | A.   That's the difference between the mean -- |
| 10:39:08 | 14 | the average price during the 90-day-lookback period |
| 10:39:11 | 15 | which is $42.28.  So it's the difference between |
| 10:39:14 | 16 | the -- it's the closing price minus the mean price |
| 10:39:18 | 17 | during the 90-day-lookback period. |
| 10:39:30 | 18 | Q.   And on that same page, the front page of |
| 10:39:32 | 19 | Exhibit 7 there's some notation at the top.  And you |
| 10:39:36 | 20 | see where it says, "For shares purchased in the |
| 10:39:39 | 21 | Class Period and retained through the |
| 10:39:42 | 22 | 90-day-lookback period, damages are calculated as |
| 10:39:45 | 23 | the minimum of the (calculated price inflation) or |
| 10:39:51 | 24 | the (90-day-lookback value)"; do you see that? |
| 10:39:55 | 25 | A.   Yes. |

58980aa7-4ab1-4bbc-9ea2-405d025aac3f

JANE D.  NETTESHEIM

Page 65

| | | |
|---|---|---|
| 10:39:56 | 1 | Q.    Under this method that you describe here, |
| 10:39:59 | 2 | isn't it true that class members -- let me start |
| 10:40:07 | 3 | over. |
| 10:40:08 | 4 | Under this method, isn't it true that |
| 10:40:10 | 5 | class members who purchased LDK shares on |
| 10:40:13 | 6 | September 26th and retained past the 90-day period |
| 10:40:17 | 7 | are entitled to $31.67 of damages per share? |
| 10:40:28 | 8 | A.    Right, if they hold past the |
| 10:40:30 | 9 | 90-day-lookback period, yes. |
| 10:40:33 | 10 | Q.    And isn't this 33 -- this let me start |
| 10:40:38 | 11 | over. |
| 10:40:38 | 12 | Isn't this $31.67 number greater than the |
| 10:40:45 | 13 | estimated total decline of LDK's stock price caused |
| 10:40:48 | 14 | by the three alleged corrective disclosures that you |
| 10:40:51 | 15 | identify? |
| 10:40:54 | 16 | MR. HEFFELFINGER:  Overbroad and vague. |
| 10:41:03 | 17 | THE WITNESS:  No, on a percentage basis on |
| 10:41:05 | 18 | that day it would be $33.21. |
| 10:41:11 | 19 | MR. HARRISON:  Q.  On a percentage basis? |
| 10:41:16 | 20 | A.    The dollar amount would be equivalent to |
| 10:41:20 | 21 | $33.21. |
| 10:41:44 | 22 | Q.    And that's -- your opinion is that's |
| 10:41:47 | 23 | different than the $30.90 that you identify at |
| 10:41:51 | 24 | paragraph 77 of your report? |
| 10:41:56 | 25 | A.    Well, it is different. |

JANE D.   NETTESHEIM

Page 66

| | | |
|---|---|---|
| 10:41:56 | 1 | Q.   Right. |
| 10:41:57 | 2 | MR. HEFFELFINGER:  Document speaks for |
| 10:41:58 | 3 | itself. |
| 10:41:59 | 4 | MR. HARRISON:  So I think we've been going |
| 10:42:15 | 5 | for like an hour and more than a half.  Can we take |
| 10:42:18 | 6 | a quick break? |
| 10:42:19 | 7 | MR. HEFFELFINGER:  Sure. |
| 10:42:20 | 8 | MR. HARRISON:  Thanks. |
| 10:42:21 | 9 | THE VIDEOGRAPHER:  Going off the record. |
| 10:42:23 | 10 | The time is 10:42. |
| 10:42:25 | 11 | (Recess was taken.) |
| 10:43:02 | 12 | THE VIDEOGRAPHER:  This marks the end of |
| 10:43:03 | 13 | Tape Number 1 in the deposition of Jane Nettesheim. |
| 10:43:09 | 14 | Going off the record.  The time is 10:43. |
| 10:43:16 | 15 | (Recess was taken.) |
| 11:03:27 | 16 | THE VIDEOGRAPHER:  This marks the |
| 11:03:28 | 17 | beginning of Tape Number 2 in the deposition of Jane |
| 11:03:31 | 18 | Nettesheim.  Going back on the record.  The time is |
| 11:03:34 | 19 | 11:04. |
| 11:03:40 | 20 | MR. HARRISON:  Q.  One thing that I didn't |
| 11:03:42 | 21 | ask you was what your reason is for preferring the |
| 11:03:48 | 22 | constant-percentage method of calculating damages |
| 11:03:55 | 23 | and price inflation? |
| 11:03:58 | 24 | A.   Well, in this matter, as I describe in my |
| 11:04:09 | 25 | report beginning on page 45, I describe the |

JANE D.   NETTESHEIM

Page 67

| | | |
|---|---|---|
| 11:04:14 | 1 | differences in the constant-percentage method is |
| 11:04:18 | 2 | useful when the allegations have to do with the |
| 11:04:21 | 3 | operations of the company and therefore the |
| 11:04:25 | 4 | inflation can vary depending on different value |
| 11:04:29 | 5 | of -- different valuation effects on the company. |
| 11:04:34 | 6 | So the inflation will vary depending on company |
| 11:04:37 | 7 | operations. |
| 11:04:43 | 8 | Q.   So in this case, you prefer that damages |
| 11:04:45 | 9 | model to the constant-dollar method? |
| 11:04:49 | 10 | A.   Right, because the allegations have to do |
| 11:04:51 | 11 | with cost of goods sold as part of operations. |
| 11:04:55 | 12 | Q.   Okay.  Going back to Exhibit 7 -- well, |
| 11:05:02 | 13 | before we look at it, you've calculated the residual |
| 11:05:09 | 14 | dollar decline of LDK's stock as of the end of the |
| 11:05:14 | 15 | class period, right? |
| 11:05:21 | 16 | A.   Well, I calculated the dollar amounts on |
| 11:05:24 | 17 | each day. |
| 11:05:26 | 18 | Q.   Let's pick a date.  How about October 8, |
| 11:05:29 | 19 | 2007, what's the residual dollar decline in LDK |
| 11:05:33 | 20 | stock on that date in your opinion? |
| 11:05:36 | 21 | A.   On October 8th? |
| 11:05:37 | 22 | Q.   Yes. |
| 11:05:38 | 23 | A.   $12.19. |
| 11:05:41 | 24 | Q.   And what's the price inflation of LDK |
| 11:05:44 | 25 | stock on that date? |

JANE D.   NETTESHEIM

Page 68

| 11:05:47 | 1 | A.   On that date, zero. |

11:06:03    2        Q.   If you look at Exhibit 5B concerning your
11:06:08    3    constant-dollar method of inflation; do you see
11:06:13    4    that?
11:06:14    5        A.   Yes.
11:06:18    6        Q.   For someone who purchases the stock of LDK
11:06:23    7    on September 26th, 2007 and sells on December -- I'm
11:06:34    8    sorry, October 8th, 2007, the price inflation would
11:06:40    9    be $30.89, right, or $30.90 rounding up?
11:06:45   10        A.   Yes.
11:06:48   11        Q.   And assuming someone on that date buys LDK
11:06:55   12    stock on September 26th and holds through the
11:07:01   13    90-day-lookback period, that person would recover
11:07:09   14    $31.70 of inflation on the stock he or she
11:07:13   15    purchased, right?
11:07:15   16        A.   No, it would still be $30.90.
11:07:18   17        Q.   Where do you describe that?
11:07:24   18        A.   It's the minimum of -- at the top of
11:07:28   19    Exhibit 5B, so for shares purchased in the class
11:07:33   20    period and retained through the 90-day-lookback
11:07:36   21    period, damages are either the calculated price
11:07:39   22    inflation, which for September 26th is $30.90, or
11:07:45   23    the 90-day-lookback value, which would be $31.67.
11:07:48   24    So it's the minimum, so it would be $30.90.
11:07:53   25        Q.   Okay.  So under your model you've capped

JANE D.   NETTESHEIM

Page 69

| | | |
|---|---|---|
| 11:07:55 | 1 | it at $30.89 -- 90 cents for someone who purchased |
| 11:08:02 | 2 | on September 26th? |
| 11:08:03 | 3 | A.   Right.   I mean, that is the price |
| 11:08:05 | 4 | inflation on that day and then I check and see |
| 11:08:08 | 5 | whether or not the PSLRA would constrain damages. |
| 11:08:12 | 6 | Q.   But you're assuming that the damages are |
| 11:08:15 | 7 | capped as of -- let me back up. |
| 11:08:22 | 8 | You're assuming that the damages -- or the |
| 11:08:24 | 9 | inflation is capped at $30.90 for someone who |
| 11:08:27 | 10 | purchases on September 26th and sells after the |
| 11:08:32 | 11 | 90-day-lookback? |
| 11:08:34 | 12 | MR. HEFFELFINGER:  I think that |
| 11:08:35 | 13 | mischaracterizes her testimony. |
| 11:08:39 | 14 | THE WITNESS:  As I said, that is the price |
| 11:08:41 | 15 | inflation but the PSLRA may constrain damages.  And |
| 11:08:49 | 16 | for the scenario that you described, for that |
| 11:08:52 | 17 | particular day the PSLRA does not constrain damages. |
| 11:08:56 | 18 | MR. HARRISON:  Q.  And it shows that the |
| 11:08:57 | 19 | damages -- there's additional inflation between the |
| 11:09:02 | 20 | end of the class period and the -- 90 days following |
| 11:09:08 | 21 | that date, right? |
| 11:09:13 | 22 | MR. HEFFELFINGER:  Mischaracterizes |
| 11:09:14 | 23 | testimony. |
| 11:09:17 | 24 | THE WITNESS:  Well, the price inflation is |
| 11:09:19 | 25 | zero beginning on October 8th, 2007 and thereafter. |

JANE D. NETTESHEIM

Page 70

| | | |
|---|---|---|
| 11:09:30 | 1 | MR. HARRISON: Q. For someone who |
| 11:09:31 | 2 | purchases on September 26th, 2007 and sells after |
| 11:09:35 | 3 | the 90-day-lookback value, your model shows that the |
| 11:09:39 | 4 | inflation is $31.70 though, right? |
| 11:09:45 | 5 | MR. HEFFELFINGER: Vague and ambiguous. |
| 11:09:47 | 6 | THE WITNESS: No. As I keep saying, the |
| 11:09:53 | 7 | inflation on September 26th, 2007, the inflation on |
| 11:09:57 | 8 | that day is $30.90 in Exhibit 5B. The other number |
| 11:10:06 | 9 | is the PSLRA constraint, if it applies. And for |
| 11:10:10 | 10 | that particular day given the scenario you |
| 11:10:13 | 11 | described, the PSLRA constraint does not apply. |
| 11:10:19 | 12 | MR. HARRISON: Q. What accounts for the |
| 11:10:20 | 13 | difference between the $30.90 listed for |
| 11:10:25 | 14 | September 26th, 2007 under the "Price Inflation" |
| 11:10:29 | 15 | column and the $31.70 listed under the |
| 11:10:33 | 16 | "90-Day-Lookback Values"? |
| 11:10:35 | 17 | A. It's $31.67. But anyway, it's -- that |
| 11:10:41 | 18 | number is the price minus the average |
| 11:10:47 | 19 | 90-day-lookback price. |
| 11:10:51 | 20 | Q. And what does that difference represent? |
| 11:10:56 | 21 | A. It -- according to the PSLRA, damages |
| 11:11:01 | 22 | cannot exceed that amount, it's a constraint under |
| 11:11:05 | 23 | the statute. |
| 11:11:06 | 24 | Q. Cannot exceed what amount? |
| 11:11:09 | 25 | A. $31.67, if the share is purchased on |

58980aa7-4ab1-4bbc-9ea2-405d025aac3f

JANE D.   NETTESHEIM

Page 71

| | | |
|---|---|---|
| 11:11:12 | 1 | September 26th and held after the 90-day-lookback |
| 11:11:17 | 2 | period. |
| 11:12:03 | 3 | Q.   Can we take a look at Exhibit 13A of your |
| 11:12:08 | 4 | report. |
| 11:12:34 | 5 | Okay.   I may have asked this before, but |
| 11:12:36 | 6 | what is the cumulative residual decline in LDK's |
| 11:12:39 | 7 | stock price that you opine was caused by the |
| 11:12:43 | 8 | corrective disclosures that you identify on |
| 11:12:46 | 9 | October 3rd, 4th, and 8th, 2007? |
| 11:12:50 | 10 | MR. HEFFELFINGER:  Vague and ambiguous and |
| 11:12:52 | 11 | overbroad. |
| 11:12:56 | 12 | THE WITNESS:  In percentage terms it's |
| 11:12:57 | 13 | 44.9 percent, and in dollar terms it's $30.90.  And |
| 11:13:04 | 14 | that's on pages 51 and 52 of my report. |
| 11:13:30 | 15 | MR. HARRISON:  Q.  Okay.  Are you at |
| 11:13:31 | 16 | Exhibit 13? |
| 11:13:33 | 17 | A.   Yes. |
| 11:13:38 | 18 | Q.   Do you see under the equation table it |
| 11:13:43 | 19 | says "Intercept"? |
| 11:13:48 | 20 | A.   Yes. |
| 11:13:49 | 21 | Q.   And then there's a column for coefficient? |
| 11:13:52 | 22 | A.   Yes. |
| 11:13:53 | 23 | Q.   Do you know what alpha is as it relates to |
| 11:13:57 | 24 | a regression model output? |
| 11:14:01 | 25 | A.   If you're referring to the coefficient -- |

58980aa7-4ab1-4bbc-9ea2-405d025aac3f

JANE D.   NETTESHEIM

Page 72

| | | |
|---|---|---|
| 11:14:01 | 1 | the intercept coefficient. |
| 11:14:06 | 2 | Q.   So is that a percentage or is that the |
| 11:14:10 | 3 | number there, .014? |
| 11:14:14 | 4 | A.   Yes, it could be a percentage. |
| 11:14:16 | 5 | Q.   Can you define what the intercept or alpha |
| 11:14:29 | 6 | of a regression model is? |
| 11:14:32 | 7 | A.   It's the constant. |
| 11:14:39 | 8 | Q.   When you say it's a constant, what do you |
| 11:14:42 | 9 | mean by that? |
| 11:14:45 | 10 | A.   Well, it's the constant factor in the |
| 11:14:48 | 11 | regression equation even if the other factors are |
| 11:14:52 | 12 | equal to zero, it's -- that's what it is. |
| 11:15:02 | 13 | Q.   And that's reflected in your equation down |
| 11:15:05 | 14 | at the bottom? |
| 11:15:06 | 15 | A.   Yes. |
| 11:15:07 | 16 | Q.   What is the estimated alpha in your model? |
| 11:15:10 | 17 | A.   .014. |
| 11:15:13 | 18 | Q.   And that's .014 per day? |
| 11:15:16 | 19 | A.   Yes. |
| 11:15:17 | 20 | Q.   And what does that explain?  What is the |
| 11:15:23 | 21 | implications of an alpha of .014? |
| 11:15:28 | 22 | MR. HEFFELFINGER:  Vague and ambiguous. |
| 11:15:32 | 23 | THE WITNESS:  That's the, sort of, a |
| 11:15:35 | 24 | constant portion of the expected return. |
| 11:15:40 | 25 | MR. HARRISON:  Q.  So using an alpha or |

JANE D.   NETTESHEIM

Page 73

| | | |
|---|---|---|
| 11:15:42 | 1 | having an alpha as a result of your model of .014, |
| 11:15:48 | 2 | doesn't that lead to the prediction that LDK stock |
| 11:15:52 | 3 | price will appreciate by more than a thousand |
| 11:15:55 | 4 | percent each year over and above any changes |
| 11:15:58 | 5 | associated with changes in the market and industry |
| 11:15:59 | 6 | indices? |
| 11:16:01 | 7 | MR. HEFFELFINGER:  Incomplete |
| 11:16:02 | 8 | hypothetical. |
| 11:16:03 | 9 | THE WITNESS:  Well, only in the time |
| 11:16:05 | 10 | period that I'm estimating.  I don't know if it's |
| 11:16:11 | 11 | over a thousand percent.  I noticed that in |
| 11:16:13 | 12 | Dr. Lehn's report.  It could be correct, yes. |
| 11:16:19 | 13 | MR. HARRISON:  Q.  So if you compound 1.4% |
| 11:16:24 | 14 | every day for a year, do you know if you get a |
| 11:16:26 | 15 | thousand percent? |
| 11:16:27 | 16 | A.  I don't know. |
| 11:16:28 | 17 | Q.  Is that something you considered as part |
| 11:16:30 | 18 | of your opinion? |
| 11:16:34 | 19 | A.  No. |
| 11:16:37 | 20 | Q.  Doesn't that alpha in your model have the |
| 11:16:41 | 21 | effect of generating artificially low residuals? |
| 11:16:51 | 22 | A.  No, it is the predicted alpha over this |
| 11:16:55 | 23 | control period, so that's what it is. |
| 11:16:59 | 24 | Q.  That affects the residuals that result |
| 11:17:03 | 25 | from your model, right? |

58980aa7-4ab1-4bbc-9ea2-405d025aac3f

JANE D.   NETTESHEIM

Page 74

| | | |
|---|---|---|
| 11:17:05 | 1 | A.   Well, every piece of the equation affects |
| 11:17:08 | 2 | the residuals. |
| 11:17:09 | 3 | Q.   Including the alpha of that size? |
| 11:17:12 | 4 | A.   Of any size, yes. |
| 11:17:32 | 5 | Q.   I'd like to turn to paragraph 67 of your |
| 11:17:35 | 6 | report.  Are you there? |
| 11:18:03 | 7 | A.   Yes. |
| 11:18:03 | 8 | Q.   I'm sorry, I misspoke, I meant of your |
| 11:18:06 | 9 | reply report.  In paragraph 67 you state, "Dr. Lehn |
| 11:18:28 | 10 | applies all of his criticisms of trading models to |
| 11:18:32 | 11 | my estimate of aggregate damages for options.  He is |
| 11:18:35 | 12 | wrong in his characterization of how I calculated |
| 11:18:36 | 13 | options damages.  I do not use a trading model for |
| 11:18:39 | 14 | estimating aggregate damages for the options. |
| 11:18:41 | 15 | Rather, I used daily changes in the number of open |
| 11:18:45 | 16 | contracts (as reported by OptionsMetrics), not |
| 11:18:48 | 17 | approximations or estimates"; do you see that? |
| 11:18:52 | 18 | A.   Yes. |
| 11:18:53 | 19 | Q.   In your calculation of damages here for |
| 11:18:59 | 20 | call and put options, do you use actual transaction |
| 11:19:03 | 21 | prices? |
| 11:19:04 | 22 | A.   No, I used, as I said in my report, I used |
| 11:19:07 | 23 | the average of the closing bid and ask for that day, |
| 11:19:13 | 24 | for each day. |
| 11:19:15 | 25 | Q.   And that was based on a Black-Scholes |

58980aa7-4ab1-4bbc-9ea2-405d025aac3f

JANE D.   NETTESHEIM

Page 75

| | | |
|---|---|---|
| 11:19:19 | 1 | model, your estimation of damages? |
| 11:19:28 | 2 | A.   Well, that's one piece of it. |
| 11:19:32 | 3 | Q.   Is one portion of your model in |
| 11:19:34 | 4 | determining damages for put and call options? |
| 11:19:37 | 5 | A.   In terms of coming up with the predicted |
| 11:19:43 | 6 | value of the option, I use the Black-Scholes model. |
| 11:20:05 | 7 | Q.   And you estimated what you called the |
| 11:20:07 | 8 | value for call and put options that use as buy and |
| 11:20:11 | 9 | sell prices for these options? |
| 11:20:16 | 10 | A.   I don't understand the question. |
| 11:20:17 | 11 | Q.   Okay.  If you look at paragraph 83 of your |
| 11:20:20 | 12 | report, not your reply report. |
| 11:20:23 | 13 | MR. MILSTEIN:  The report itself? |
| 11:20:25 | 14 | MR. HARRISON:  Yes. |
| 11:21:13 | 15 | Q.   You state in paragraph 83 that, "The daily |
| 11:21:15 | 16 | values of the various series of LDK call and put |
| 11:21:18 | 17 | options have been calculated based on the actual |
| 11:21:20 | 18 | trading price of the underlying ADSs as well as the |
| 11:21:22 | 19 | true value of the underlying ADSs absent the fraud |
| 11:21:26 | 20 | using the Black-Scholes option pricing model, a |
| 11:21:29 | 21 | widely-used and well-accepted financial model for |
| 11:21:32 | 22 | valuing options"; do you see that? |
| 11:21:34 | 23 | A.   Yes. |
| 11:21:34 | 24 | Q.   So you used the Black-Scholes model to |
| 11:21:36 | 25 | calculate option prices to estimate the true values, |

58980aa7-4ab1-4bbc-9ea2-405d025aac3f

JANE D.  NETTESHEIM

Page 76

| | | |
|---|---|---|
| 11:21:40 | 1 | you state in this paragraph, of these options in the |
| 11:21:42 | 2 | absence of the alleged misstatements? |
| 11:21:44 | 3 | A.   Yes. |
| 11:21:56 | 4 | Q.   And you used these estimated values to |
| 11:22:00 | 5 | yield what you called the inflation of a call option |
| 11:22:02 | 6 | and the inflation of a put option? |
| 11:22:08 | 7 | A.   Well, that's part of the equation, but |
| 11:22:10 | 8 | yes. |
| 11:22:15 | 9 | Q.   So do you calculate the difference between |
| 11:22:17 | 10 | your estimate of the actual value and your estimated |
| 11:22:20 | 11 | true value of these options in paragraphs 84 and 85? |
| 11:22:27 | 12 | MR. HEFFELFINGER:  Objection.  That's |
| 11:22:29 | 13 | vague and ambiguous, but go ahead. |
| 11:22:31 | 14 | THE WITNESS:  Yeah, it's the difference |
| 11:22:32 | 15 | between the actual price and the predicted price |
| 11:22:38 | 16 | based on the Black-Scholes model. |
| 11:22:41 | 17 | MR. HARRISON:  Q.  And you didn't use the |
| 11:22:44 | 18 | actual transaction prices for the options, though, |
| 11:22:47 | 19 | right? |
| 11:22:48 | 20 | A.   I used the closing -- the average of the |
| 11:22:53 | 21 | daily bid and ask prices. |
| 11:22:56 | 22 | Q.   But you didn't use the actual transaction |
| 11:22:59 | 23 | prices? |
| 11:23:03 | 24 | A.   Correct. |
| 11:23:06 | 25 | Q.   Is it your opinion that the Black-Scholes |

JANE D.   NETTESHEIM

Page 77

| | | |
|---|---|---|
| 11:23:08 | 1 | model yields accurate values for the call and put |
| 11:23:12 | 2 | options in LDK stock? |
| 11:23:18 | 3 | A.   I think it produces accurate estimates. |
| 11:23:26 | 4 | Q.   Are you familiar with the terms "European |
| 11:23:28 | 5 | options" and "American options"? |
| 11:23:29 | 6 | A.   Yes. |
| 11:23:30 | 7 | Q.   Are the options you valued European |
| 11:23:36 | 8 | options or American options? |
| 11:23:38 | 9 | A.   I believe they're American options. |
| 11:23:39 | 10 | Q.   Can you use the Black-Scholes option |
| 11:23:43 | 11 | pricing model to value American options, like the |
| 11:23:46 | 12 | options in this case? |
| 11:23:47 | 13 | A.   Yes. |
| 11:23:48 | 14 | Q.   What's your authority for that? |
| 11:23:55 | 15 | A.   These options didn't -- the stock didn't |
| 11:24:01 | 16 | pay dividends, so Black-Scholes is widely used to |
| 11:24:05 | 17 | value American options in the absence of dividends. |
| 11:24:09 | 18 | Q.   Did you cite any literature that supports |
| 11:24:14 | 19 | your conclusion that the Black-Scholes options |
| 11:24:16 | 20 | pricing model can be used to value American options? |
| 11:24:24 | 21 | A.   No, I didn't cite anything. |
| 11:24:25 | 22 | Q.   Are you aware of any authority that |
| 11:24:27 | 23 | supports that? |
| 11:24:34 | 24 | A.   The Brealey Myers textbook might, but I |
| 11:24:38 | 25 | don't recall.  I don't recall anything specifically. |

58980aa7-4ab1-4bbc-9ea2-405d025aac3f

JANE D.  NETTESHEIM

Page 78

| | | |
|---|---|---|
| 11:24:47 | 1 | Q.  Are you aware of any authority that runs |
| 11:24:51 | 2 | contrary to your conclusion that you can use the |
| 11:24:54 | 3 | Black-Scholes option pricing model to value American |
| 11:24:57 | 4 | options? |
| 11:24:58 | 5 | A.  There are pricing models that sometimes |
| 11:25:04 | 6 | make adjustments for the put options, particularly |
| 11:25:10 | 7 | for the put options, for early exercise provisions |
| 11:25:13 | 8 | for the put options.  And it's basically -- well, it |
| 11:25:16 | 9 | is a Black-Scholes evaluation with an adjustment for |
| 11:25:20 | 10 | possible early exercise of a put option. |
| 11:25:22 | 11 | Q.  And what authority are you referring to, |
| 11:25:25 | 12 | if any? |
| 11:25:27 | 13 | A.  I don't have a particular article in mind. |
| 11:25:29 | 14 | I've seen the articles but I don't recall the titles |
| 11:25:32 | 15 | or the authors. |
| 11:25:49 | 16 | Q.  Did you make any of the adjustments that |
| 11:25:51 | 17 | you just described to your model? |
| 11:25:57 | 18 | MR. HEFFELFINGER:  Vague and ambiguous. |
| 11:26:04 | 19 | THE WITNESS:  I don't think so.  I don't |
| 11:26:06 | 20 | recall doing that. |
| 11:26:10 | 21 | MR. HARRISON:  Q.  Why not? |
| 11:26:15 | 22 | A.  I don't think -- it's a very, very small |
| 11:26:18 | 23 | adjustment.  I don't think it's necessary.  I don't |
| 11:26:26 | 24 | recall doing it in this case.  It's possible I did, |
| 11:26:28 | 25 | but I don't think I did. |

58980aa7-4ab1-4bbc-9ea2-405d025aac3f

JANE D.   NETTESHEIM

Page 79

| | | |
|---|---|---|
| 11:26:31 | 1 | Q.   Didn't mean to interrupt, I thought you |
| 11:26:33 | 2 | were done. |
| 11:26:34 | 3 | Did you use any other models to attempt to |
| 11:26:36 | 4 | value the options in LDK stock in this case? |
| 11:26:50 | 5 | A.   No, I did not. |
| 11:26:52 | 6 | Q.   Have you heard the term "binomial model"? |
| 11:26:56 | 7 | A.   Yes. |
| 11:26:56 | 8 | Q.   Did you attempt to use the binomial model? |
| 11:26:59 | 9 | A.   No. |
| 11:27:05 | 10 | Q.   Okay.  If you look at Exhibit 11 to your |
| 11:27:08 | 11 | report -- |
| 11:27:09 | 12 | A.   Well, I should say the binomial model |
| 11:27:13 | 13 | collapses to the Black and Scholes with a number of |
| 11:27:16 | 14 | steps.  But I didn't use it, per se, in this case. |
| 11:27:21 | 15 | Q.   Exhibit 11.  Are you there? |
| 11:27:42 | 16 | A.   Yes. |
| 11:27:46 | 17 | Q.   If you look at the columns under -- |
| 11:27:49 | 18 | there's a column for "Calls"; do you see that? |
| 11:27:52 | 19 | A.   Yes. |
| 11:27:53 | 20 | Q.   It's actually three columns under a larger |
| 11:27:57 | 21 | column, "Calls."  And there's one column that says, |
| 11:28:00 | 22 | "Black Scholes Value Using ADS Closing Price"? |
| 11:28:04 | 23 | A.   Yes. |
| 11:28:05 | 24 | Q.   And the next column is "Black Scholes |
| 11:28:10 | 25 | Value Using ADS True Value"; do you see that? |

58980aa7-4ab1-4bbc-9ea2-405d025aac3f

JANE D.   NETTESHEIM

Page 80

| | | |
|---|---|---|
| 11:28:13 | 1 | A.   Yes. |
| 11:28:13 | 2 | Q.   You used Black-Scholes inputs to calculate |
| 11:28:16 | 3 | the figures in these columns? |
| 11:28:18 | 4 | A.   Yes. |
| 11:28:19 | 5 | Q.   Now, the inputs that you used to calculate |
| 11:28:23 | 6 | the values in Column B, the same as the |
| 11:28:26 | 7 | Black-Scholes inputs you used to calculate the |
| 11:28:29 | 8 | actual value in Column A except for LDK stock price? |
| 11:28:34 | 9 | A.   Yes. |
| 11:28:37 | 10 | Q.   Why didn't the other inputs into these |
| 11:28:40 | 11 | values change? |
| 11:28:49 | 12 | MR. HEFFELFINGER:  Vague and overbroad. |
| 11:28:52 | 13 | THE WITNESS:  Well, on a particular date, |
| 11:28:55 | 14 | the strike price is the same for both, time to |
| 11:29:00 | 15 | expiration is the same for both.  I used the same |
| 11:29:03 | 16 | risk-free rate for both and the same volatility for |
| 11:29:06 | 17 | both. |
| 11:29:07 | 18 | MR. HARRISON:  Q.  And what basis do you |
| 11:29:08 | 19 | have for this approach? |
| 11:29:13 | 20 | A.   Well, it's on the same day so those |
| 11:29:16 | 21 | factors on that day are those factors that day.  It |
| 11:29:25 | 22 | wouldn't change until the next day. |
| 11:29:28 | 23 | Q.   Is that approach supported by |
| 11:29:29 | 24 | peer-reviewed economic literature? |
| 11:29:33 | 25 | MR. HEFFELFINGER:  Vague and overbroad. |

58980aa7-4ab1-4bbc-9ea2-405d025aac3f

JANE D.  NETTESHEIM

Page 81

| | | |
|---|---|---|
| 11:29:38 | 1 | THE WITNESS:  I'm not sure what you mean |
| 11:29:39 | 2 | by that. |
| 11:29:43 | 3 | MR. HARRISON:  Q.  By that I mean the |
| 11:29:44 | 4 | approach you used of calculating the values in those |
| 11:29:48 | 5 | two columns that I described, closing price and true |
| 11:29:52 | 6 | value, by only altering LDK stock price as an input? |
| 11:30:02 | 7 | MR. HEFFELFINGER:  Same objections. |
| 11:30:04 | 8 | THE WITNESS:  Well, I applied the standard |
| 11:30:06 | 9 | Black-Scholes model to both of them and just changed |
| 11:30:08 | 10 | the stock price in each.  That's the changing |
| 11:30:12 | 11 | variable in these calculations. |
| 11:30:16 | 12 | MR. HARRISON:  Q.  How did you estimate |
| 11:30:17 | 13 | the implied volatility of LDK's stock? |
| 11:30:31 | 14 | A.  I think it's the average of the implied |
| 11:30:33 | 15 | volatility on those days for the day.  Yeah, so it's |
| 11:30:49 | 16 | the -- I describe it in Footnote 90 on page 56. |
| 11:30:53 | 17 | It's the implied volatility for each option series |
| 11:30:59 | 18 | is calculated for the day.  And so it's the average |
| 11:31:02 | 19 | of the implied volatilities for that day. |
| 11:31:24 | 20 | Q.  So your model assumes that the implied |
| 11:31:27 | 21 | volatility in LDK stock is the same when determining |
| 11:31:33 | 22 | the columns in Exhibit 11 under "Black Scholes Value |
| 11:31:41 | 23 | Using ADS Closing Price" and "Black Scholes Value |
| 11:31:45 | 24 | Using ADS True Value"? |
| 11:31:47 | 25 | A.  Yes, I used the same volatility for both. |

58980aa7-4ab1-4bbc-9ea2-405d025aac3f

JANE D.  NETTESHEIM

Page 82

| | | |
|---|---|---|
| 11:31:50 | 1 | Q.  And that's an assumption you incorporated |
| 11:31:52 | 2 | into your model? |
| 11:31:54 | 3 | A.  Well, it's an input I incorporated into |
| 11:31:57 | 4 | the model. |
| 11:32:03 | 5 | Q.  Is that approach supported by |
| 11:32:05 | 6 | peer-reviewed literature? |
| 11:32:10 | 7 | A.  There are articles that talk about how to |
| 11:32:14 | 8 | calculate the implied volatility; that's standard |
| 11:32:19 | 9 | methodology.  Other than that, I'm not sure what you |
| 11:32:24 | 10 | mean by -- I mean, it's a standard methodology, |
| 11:32:28 | 11 | so... |
| 11:32:29 | 12 | Q.  You're assuming that the volatility on LDK |
| 11:32:32 | 13 | stock in the actual and but-for worlds are the same, |
| 11:32:35 | 14 | right? |
| 11:32:36 | 15 | A.  Yes, I am. |
| 11:32:38 | 16 | Q.  And it's your opinion that that -- using |
| 11:32:41 | 17 | that methodology, is supported by peer-reviewed |
| 11:32:47 | 18 | literature? |
| 11:32:53 | 19 | A.  I'm not aware of any literature that |
| 11:32:54 | 20 | addresses that particular point. |
| 11:32:57 | 21 | Q.  Okay.  If you look at your reply report at |
| 11:32:59 | 22 | paragraph 67, you state that you didn't use the |
| 11:33:13 | 23 | trading model to calculate damages for options, |
| 11:33:16 | 24 | right? |
| 11:33:17 | 25 | A.  Right. |

58980aa7-4ab1-4bbc-9ea2-405d025aac3f

JANE D.   NETTESHEIM

Page 83

| | | |
|---|---|---|
| 11:33:18 | 1 | Q.   But that doesn't mean that you used actual |
| 11:33:21 | 2 | trading data, right? |
| 11:33:26 | 3 | A.   I used the actual -- as I said, I used the |
| 11:33:30 | 4 | actual net change in open contracts for each day. |
| 11:33:42 | 5 | Q.   And you used the trading data from |
| 11:33:45 | 6 | OptionsMetrics? |
| 11:33:50 | 7 | A.   Well, I used the data from OptionsMetrics |
| 11:33:53 | 8 | which provides the open interest among lots of other |
| 11:33:57 | 9 | data, but they provide that. |
| 11:33:59 | 10 | Q.   It says in your report at paragraph -- |
| 11:34:06 | 11 | well, let's stay on 67 of your reply report.  It |
| 11:34:10 | 12 | says, "I used daily changes in the number of open |
| 11:34:12 | 13 | contracts (as reported by OptionsMetrics)," right? |
| 11:34:15 | 14 | A.   Yes. |
| 11:34:22 | 15 | Q.   And in paragraph 87 of your report, you |
| 11:34:41 | 16 | also referred to data provided by OptionsMetrics? |
| 11:34:46 | 17 | A.   Yes. |
| 11:34:51 | 18 | Q.   And in paragraph 87 you reference open |
| 11:34:54 | 19 | interest? |
| 11:34:57 | 20 | A.   Yes. |
| 11:34:58 | 21 | Q.   What do you mean by "open interest"? |
| 11:35:02 | 22 | A.   It's the number of contracts outstanding, |
| 11:35:05 | 23 | and OptionsMetrics provides that each day. |
| 11:35:13 | 24 | Q.   So when you say daily changes in open |
| 11:35:18 | 25 | interest, you refer to it in paragraph 87, you |

58980aa7-4ab1-4bbc-9ea2-405d025aac3f

JANE D.   NETTESHEIM

Page 84

| | | |
|---|---|---|
| 11:35:23 | 1 | simply take the difference between reported open |
| 11:35:25 | 2 | interest from day to day? |
| 11:35:33 | 3 | A.   Yes. |
| 11:35:33 | 4 | Q.   So in a hypothetical scenario where the |
| 11:35:36 | 5 | open interest between two consecutive days is the |
| 11:35:38 | 6 | same, you assume that there were no trades between |
| 11:35:40 | 7 | those two days, right? |
| 11:35:41 | 8 | A.   I assume there were no net trades. |
| 11:35:49 | 9 | Q.   So isn't it possible that your |
| 11:35:51 | 10 | methodologies excludes options transactions that |
| 11:35:59 | 11 | actually took place? |
| 11:36:04 | 12 | A.   It doesn't look at the intraday |
| 11:36:07 | 13 | transactions, it looks at the net change over the |
| 11:36:10 | 14 | course of the day.  So, yes, I'm not looking at |
| 11:36:13 | 15 | individual transactions during the day, I'm looking |
| 11:36:16 | 16 | at net changes in open interest over the course of |
| 11:36:19 | 17 | the day. |
| 11:36:19 | 18 | Q.   Why did you apply the option interest |
| 11:36:22 | 19 | approach described in paragraph 87 of your report |
| 11:36:25 | 20 | instead of using the volume of options traded each |
| 11:36:29 | 21 | day? |
| 11:36:30 | 22 | A.   Because I'm interested in the net -- I'm |
| 11:36:35 | 23 | ultimately interested in the net -- the number of |
| 11:36:40 | 24 | option contracts that on net were purchased in the |
| 11:36:44 | 25 | class period and held over the course of the |

MERRILL LEGAL SOLUTIONS

(800) 325-3376          www.MerrillCorp.com

58980aa7-4ab1-4bbc-9ea2-405d025aac3f

JANE D.   NETTESHEIM

Page 85

| | | |
|---|---|---|
| 11:36:45 | 1 | disclosure. |
| 11:36:46 | 2 | Q.   Do you know when each individual trader |
| 11:36:49 | 3 | bought and sold LDK options during the class period? |
| 11:36:52 | 4 | MR. HEFFELFINGER:  Vague, overbroad, |
| 11:36:53 | 5 | exceeds the scope of her testimony. |
| 11:36:57 | 6 | THE WITNESS:  I'm not using a trader model |
| 11:36:59 | 7 | to calculate the options damages. |
| 11:37:01 | 8 | MR. HARRISON:   Q.  Do you know when each |
| 11:37:03 | 9 | individual trader bought and sold LDK options? |
| 11:37:05 | 10 | A.   No, I don't know anything about individual |
| 11:37:08 | 11 | traders.  I'm not using a trader model. |
| 11:37:10 | 12 | Q.   And if you don't know that, aren't you |
| 11:37:12 | 13 | just making assumptions about individuals' trading |
| 11:37:15 | 14 | behavior? |
| 11:37:16 | 15 | MR. HEFFELFINGER:  Assumes facts not in |
| 11:37:17 | 16 | evidence. |
| 11:37:19 | 17 | THE WITNESS:  No, I'm not making any |
| 11:37:20 | 18 | assumptions about individual trading behavior. |
| 11:37:27 | 19 | MR. HARRISON:   Q.  If you don't know the |
| 11:37:28 | 20 | actual trading behavior of individuals, you're using |
| 11:37:31 | 21 | a model to estimate this behavior, right? |
| 11:37:34 | 22 | A.   I'm not -- |
| 11:37:36 | 23 | MR. HEFFELFINGER:  Object to form. |
| 11:37:37 | 24 | THE WITNESS:  I'm not doing anything with |
| 11:37:39 | 25 | individual trading behavior with respect to the |

JANE D.   NETTESHEIM

Page 86

| | | |
|---|---|---|
| 11:37:41 | 1 | options. |
| 11:37:49 | 2 | MR. HARRISON:  Q.  Your model necessarily |
| 11:37:51 | 3 | makes assumptions about the individuals' trading |
| 11:37:54 | 4 | behavior during the class period on options though, |
| 11:37:57 | 5 | right? |
| 11:37:59 | 6 | A.   No, I'm not making any assumptions. |
| 11:38:04 | 7 | Q.   You don't know when they actually traded? |
| 11:38:07 | 8 | A.   With respect to individuals, that's true. |
| 11:38:09 | 9 | And I'm not making any assumptions about when |
| 11:38:12 | 10 | individual traders traded. |
| 11:39:49 | 11 | Q.   You offered opinions about loss causation |
| 11:39:53 | 12 | in this case, right? |
| 11:39:55 | 13 | A.   Yes. |
| 11:39:56 | 14 | Q.   And those are contained in the two reports |
| 11:39:59 | 15 | we've marked as exhibits today? |
| 11:40:02 | 16 | A.   Yes. |
| 11:40:05 | 17 | Q.   And at paragraph 8 -- I'm sorry, yeah, |
| 11:40:18 | 18 | right, paragraph 8 of your report, you've been asked |
| 11:40:23 | 19 | to make assumptions, correct? |
| 11:40:33 | 20 | A.   Yes. |
| 11:40:35 | 21 | Q.   And one of those assumptions is you assume |
| 11:40:37 | 22 | that the allegations made by the plaintiffs in this |
| 11:40:40 | 23 | case are true? |
| 11:40:49 | 24 | MR. HEFFELFINGER:  Document speaks for |
| 11:40:50 | 25 | itself, asked and answered. |

58980aa7-4ab1-4bbc-9ea2-405d025aac3f

JANE D.   NETTESHEIM

Page 87

| | | |
|---|---|---|
| 11:40:53 | 1 | THE WITNESS:  The assumptions I made are |
| 11:40:55 | 2 | summarized here. |
| 11:41:05 | 3 | MR. HARRISON:  Q.  Your opinions on loss |
| 11:41:06 | 4 | causation assume that plaintiffs will prove the |
| 11:41:08 | 5 | allegations in their complaint, right? |
| 11:41:12 | 6 | MR. HEFFELFINGER:  Same objections. |
| 11:41:16 | 7 | THE WITNESS:  I'm assuming that they will |
| 11:41:18 | 8 | prove allegations that are consistent with my |
| 11:41:21 | 9 | summary of my assumptions. |
| 11:41:25 | 10 | MR. HARRISON:  Q.  So if the allegations |
| 11:41:27 | 11 | turn out to be inaccurate, we don't need to consider |
| 11:41:30 | 12 | your loss causation analysis, right? |
| 11:41:32 | 13 | MR. HEFFELFINGER:  Misstates testimony. |
| 11:41:35 | 14 | THE WITNESS:  I don't know what you mean |
| 11:41:35 | 15 | by would turn out to be inaccurate. |
| 11:41:40 | 16 | MR. HARRISON:  I'll withdraw that |
| 11:41:41 | 17 | question. |
| 11:41:42 | 18 | Q.  We discussed this a little bit earlier |
| 11:41:44 | 19 | with respect to your damages model, but if some of |
| 11:41:46 | 20 | plaintiffs' allegations are inaccurate how does that |
| 11:41:49 | 21 | affect your opinion on loss causation? |
| 11:41:52 | 22 | MR. HEFFELFINGER:  Vague and overbroad. |
| 11:41:56 | 23 | THE WITNESS:  I don't know.  It may have |
| 11:42:00 | 24 | no effect.  I mean, it depends. |
| 11:42:04 | 25 | MR. HARRISON:  Q.  What does it depend on? |

JANE D.   NETTESHEIM

Page 88

| | | |
|---|---|---|
| 11:42:06 | 1 | A.   What the findings are. |
| 11:42:18 | 2 | Q.   So if some of the allegations that |
| 11:42:21 | 3 | plaintiffs -- plaintiff alleges in this complaint |
| 11:42:24 | 4 | are found to be inaccurate, then that could change |
| 11:42:28 | 5 | your opinions regarding loss causation? |
| 11:42:30 | 6 | MR. HEFFELFINGER:  That misstates prior |
| 11:42:31 | 7 | testimony, asked and answered, vague and ambiguous. |
| 11:42:39 | 8 | THE WITNESS:  It may not affect my |
| 11:42:41 | 9 | opinions or it could affect my opinions, it depends. |
| 11:42:54 | 10 | MR. HARRISON:  Q.  Again, we discussed |
| 11:42:55 | 11 | this a little bit earlier but if you look at -- let |
| 11:42:59 | 12 | me restate it. |
| 11:43:00 | 13 | We discussed this a little bit earlier |
| 11:43:03 | 14 | with respect to your damages opinions, but if you |
| 11:43:05 | 15 | look at paragraph 87 of the complaint, so just to |
| 11:43:13 | 16 | give you an example; do you see that? |
| 11:43:19 | 17 | A.   Yes, I'm at paragraph 87. |
| 11:43:22 | 18 | Q.   And you see that there are allegations |
| 11:43:23 | 19 | that 284 metric tons of LDK's inventory that was |
| 11:43:35 | 20 | supposedly in the warehouse simply did not exist? |
| 11:43:40 | 21 | A.   I see that described as a statement made |
| 11:43:43 | 22 | by Mr. Situ, yes. |
| 11:43:47 | 23 | Q.   Assume, for example, that Charlie Situ was |
| 11:43:50 | 24 | mistaken that this inventory was missing.  How does |
| 11:43:51 | 25 | that affect your opinion on loss causation? |

58980aa7-4ab1-4bbc-9ea2-405d025aac3f

JANE D.   NETTESHEIM

Page 89

| | | |
|---|---|---|
| 11:43:55 | 1 | MR. HEFFELFINGER:  Vague and ambiguous, |
| 11:43:55 | 2 | misstates testimony, assumes facts not in evidence. |
| 11:43:57 | 3 | Go ahead and answer. |
| 11:44:06 | 4 | THE WITNESS:  As I said earlier, I haven't |
| 11:44:09 | 5 | determined any particular numbers to inventory so |
| 11:44:12 | 6 | that statement alone doesn't necessarily affect my |
| 11:44:15 | 7 | opinions. |
| 11:44:29 | 8 | MR. HARRISON:  Q.  Are you aware of |
| 11:44:30 | 9 | whether or not plaintiff is still advancing the |
| 11:44:33 | 10 | claim that 284 metric tons of LDK's inventory was |
| 11:44:37 | 11 | completely missing as of August 2007? |
| 11:44:42 | 12 | MR. DEVORE:  Before you answer that, to |
| 11:44:44 | 13 | the extent that it calls for communications with |
| 11:44:48 | 14 | counsel that we agreed are nondiscoverable, don't |
| 11:44:52 | 15 | answer the question.  If you have an independent |
| 11:44:54 | 16 | basis to answer the question, go ahead. |
| 11:44:59 | 17 | THE WITNESS:  I don't have an independent |
| 11:45:02 | 18 | basis. |
| 11:45:19 | 19 | MR. HARRISON:  Q.  Have you read any of |
| 11:45:20 | 20 | the other expert reports submitted by plaintiff in |
| 11:45:25 | 21 | this case in connection with your opinions? |
| 11:45:27 | 22 | A.  No, I have not. |
| 11:45:30 | 23 | Q.  Have you made any independent attempt to |
| 11:45:32 | 24 | ensure that plaintiff is still advancing the |
| 11:45:34 | 25 | allegations you assume to be true? |

58980aa7-4ab1-4bbc-9ea2-405d025aac3f

JANE D.  NETTESHEIM

Page 90

| | | |
|---|---|---|
| 11:45:43 | 1 | A.  Other than what's described in my report, |
| 11:45:46 | 2 | I haven't done anything beyond that. |
| 11:46:50 | 3 | Q.  Do you have a definition of loss causation |
| 11:46:52 | 4 | that you're applying in this case? |
| 11:46:58 | 5 | A.  Well, I think I characterize it as a |
| 11:47:05 | 6 | decline in the stock price, and then a review of the |
| 11:47:09 | 7 | information in determining that the information |
| 11:47:14 | 8 | associated with that decline is related to the |
| 11:47:18 | 9 | allegations in this matter. |
| 11:47:21 | 10 | Q.  Is there somewhere in your report that you |
| 11:47:24 | 11 | define your understanding of loss causation? |
| 11:48:00 | 12 | A.  Well, I have a description of it on page 9 |
| 11:48:03 | 13 | in paragraph 18. |
| 11:48:14 | 14 | Q.  Is that the definition of loss causation |
| 11:48:17 | 15 | that you're using in connection with your opinions |
| 11:48:19 | 16 | in this case? |
| 11:48:19 | 17 | A.  Well, it's consistent with what I just |
| 11:48:23 | 18 | answered as a definition.  I don't know if I call |
| 11:48:26 | 19 | paragraph 18 itself a definition, but it's |
| 11:48:35 | 20 | consistent with that definition. |
| 11:48:37 | 21 | Q.  Is it your understanding that your |
| 11:48:38 | 22 | definition of loss causation that you're applying in |
| 11:48:42 | 23 | this case is consistent with the Supreme Court's |
| 11:48:45 | 24 | definition of loss causation in the Dura opinion? |
| 11:48:48 | 25 | MR. HEFFELFINGER:  Calls for a legal |

58980aa7-4ab1-4bbc-9ea2-405d025aac3f

JANE D.   NETTESHEIM

Page 91

| 11:48:49 | 1 | conclusion. |

11:48:54   2   THE WITNESS:  Given my layperson's reading

11:48:56   3   of the Dura opinion, I think my determination of

11:48:59   4   loss causation is consistent.

11:49:09   5   MR. HARRISON:  Q.  Now, in your previous

11:49:10   6   deposition in this case, you defined corrective

11:49:13   7   disclosures as "disclosures of information that are

11:49:16   8   related to -- the information is related to the type

11:49:18   9   of information that is alleged to have been

11:49:20   10   fraudulently misrepresented or omitted during the

11:49:23   11   class period"; do you recall that?

11:49:26   12   A.   Not specifically.

11:49:30   13   Q.   Is that consistent with the definition of

11:49:32   14   corrective disclosures that you're applying in this

11:49:35   15   case?

11:49:36   16   MR. HEFFELFINGER:  Well, assumes facts not

11:49:37   17   in evidence.  If you want to show her a copy of what

11:49:41   18   she actually testified to to refresh her

11:49:44   19   recollection, then that further question makes

11:49:48   20   sense.

11:49:52   21   MR. HARRISON:  I think we're at 1006.

11:49:54   22   (Whereupon Exhibit 1006 was

11:49:54   23   marked for identification.)

11:50:28   24   MR. HARRISON:  Q.  It's page 129, and I'm

11:50:33   25   looking at lines 15 through 18.

58980aa7-4ab1-4bbc-9ea2-405d025aac3f

JANE D.   NETTESHEIM

Page 92

| | | |
|---|---|---|
| 11:51:07 | 1 | A.   Yeah, I think that's consistent with what |
| 11:51:09 | 2 | I say in paragraph 20 of my report. |
| 11:51:11 | 3 | Q.   Okay.  So that's the definition of |
| 11:51:16 | 4 | corrective disclosure that you're using in |
| 11:51:20 | 5 | connection with your opinions in this case? |
| 11:51:22 | 6 | A.   Well, I think paragraph 20 is more |
| 11:51:24 | 7 | complete, but I think those two statements are |
| 11:51:28 | 8 | consistent. |
| 11:51:44 | 9 | Q.   What do you base that definition on? |
| 11:51:50 | 10 | MR. HEFFELFINGER:  Overbroad. |
| 11:51:56 | 11 | THE WITNESS:  You're referring to my |
| 11:51:57 | 12 | definition of corrective disclosure? |
| 11:52:01 | 13 | MR. HARRISON:  Q.  I am. |
| 11:52:06 | 14 | A.   I think my general experience -- my |
| 11:52:14 | 15 | general experience. |
| 11:52:19 | 16 | Q.   Do you understand that your definition of |
| 11:52:23 | 17 | corrective disclosure is consistent with the Supreme |
| 11:52:26 | 18 | Court's opinion in Dura? |
| 11:52:30 | 19 | MR. HEFFELFINGER:  Calls for a legal |
| 11:52:31 | 20 | conclusion. |
| 11:52:49 | 21 | THE WITNESS:  I just have a -- I mean, |
| 11:52:52 | 22 | I've read the Dura opinion, I've read it as a |
| 11:52:55 | 23 | layperson.  I don't recall, you know, specific |
| 11:53:01 | 24 | statements in that opinion, so -- but I don't think |
| 11:53:06 | 25 | my characterization of corrective disclosure is |

58980aa7-4ab1-4bbc-9ea2-405d025aac3f

JANE D.   NETTESHEIM

Page 93

| | | |
|---|---|---|
| 11:53:09 | 1 | inconsistent with what I recall. |
| 11:53:18 | 2 | MR. HARRISON:  Q.  Are you familiar with |
| 11:53:19 | 3 | Dura's discussion of the revelation of the relevant |
| 11:53:22 | 4 | truth to the market as it relates to loss causation? |
| 11:53:27 | 5 | MR. HEFFELFINGER:  Again, calling for a |
| 11:53:28 | 6 | legal conclusion. |
| 11:53:36 | 7 | THE WITNESS:  I don't -- you know, if |
| 11:53:37 | 8 | there's a particular phrase -- I don't recall |
| 11:53:39 | 9 | specific phrases in the opinion.  I just recall the |
| 11:53:42 | 10 | opinion in general. |
| 11:53:46 | 11 | MR. HARRISON:  Q.  Is it your opinion that |
| 11:53:47 | 12 | loss causation is established when the relevant |
| 11:53:50 | 13 | truth about allegations of fraud becomes generally |
| 11:53:54 | 14 | known to the market? |
| 11:54:03 | 15 | A.  Well, I think in paragraph 20 of my report |
| 11:54:07 | 16 | I describe my usage of corrective disclosure -- of |
| 11:54:16 | 17 | the term "corrective disclosure." |
| 11:54:30 | 18 | Q.  And when you say "in paragraph 20," you're |
| 11:54:33 | 19 | referring to the entire paragraph or is there |
| 11:54:36 | 20 | anything in there that's specifically describing |
| 11:54:39 | 21 | your understanding of the term "corrective |
| 11:54:44 | 22 | disclosure"? |
| 11:54:44 | 23 | A.  Well, I think the entire paragraph. |
| 11:54:46 | 24 | Although, the end of the paragraph is more specific |
| 11:54:50 | 25 | to LDK and the, I'd say roughly first two-thirds of |

58980aa7-4ab1-4bbc-9ea2-405d025aac3f

JANE D.   NETTESHEIM

Page 94

| 11:54:55 | 1 | the paragraph are more generic. |
| 11:54:58 | 2 | Q.   In the first sentence of paragraph 20 you |
| 11:55:01 | 3 | stated, "Disclosure is corrective with respect to |
| 11:55:04 | 4 | alleged misrepresentations and omissions when that |
| 11:55:04 | 5 | disclosure changes the mix of fraud-related |
| 11:55:08 | 6 | information available to investors"; do you see |
| 11:55:12 | 7 | that? |
| 11:55:12 | 8 | A.   Yes. |
| 11:55:13 | 9 | Q.   So it's your opinion that to be corrective |
| 11:55:18 | 10 | with respect to alleged misrepresentations and |
| 11:55:21 | 11 | omissions, the disclosure has to be related to the |
| 11:55:26 | 12 | allegations of fraud? |
| 11:55:36 | 13 | A.   Yeah, in order to be a corrective |
| 11:55:38 | 14 | disclosure it has to provide some information |
| 11:55:40 | 15 | related to the allegations. |
| 11:55:47 | 16 | Q.   So it has to be connected with the |
| 11:55:53 | 17 | allegations of fraud alleged by a plaintiff in a |
| 11:55:58 | 18 | securities fraud case? |
| 11:56:00 | 19 | MR. HEFFELFINGER:  Vague and overbroad. |
| 11:56:03 | 20 | THE WITNESS:  It has to provide |
| 11:56:04 | 21 | information related that pertains to the |
| 11:56:09 | 22 | allegations. |
| 11:56:13 | 23 | MR. HARRISON:  Q.  And what's your opinion |
| 11:56:16 | 24 | on when the fraud-related information in this case |
| 11:56:24 | 25 | was fully disclosed to the market? |

JANE D.   NETTESHEIM

Page 95

| | | |
|---|---|---|
| 11:56:30 | 1 | MR. HEFFELFINGER:  Vague and overbroad. |
| 11:56:34 | 2 | THE WITNESS:  I don't have an opinion as |
| 11:56:35 | 3 | to when it was fully disclosed. |
| 11:56:50 | 4 | MR. HARRISON:  Q.  Now, you selected three |
| 11:56:52 | 5 | dates as partial corrective disclosures in this |
| 11:56:56 | 6 | case, right? |
| 11:56:59 | 7 | A.  Yes. |
| 11:57:00 | 8 | Q.  Those disclosures occurred on October 3rd, |
| 11:57:03 | 9 | 4th, and 8th of 2007? |
| 11:57:06 | 10 | A.  Yes. |
| 11:57:14 | 11 | Q.  And in paragraphs 20 and 30 of your |
| 11:57:18 | 12 | complaint, you identify these disclosures as |
| 11:57:22 | 13 | partially corrective? |
| 11:57:25 | 14 | A.  Of my report or the complaint?  You |
| 11:57:27 | 15 | referred to the complaint. |
| 11:57:29 | 16 | Q.  I'm sorry, I meant report.  Paragraphs 20 |
| 11:57:33 | 17 | and 30 of your report, you identified these |
| 11:57:36 | 18 | disclosures as partially corrective? |
| 11:58:06 | 19 | A.  I see that in paragraph 20.  Did you say |
| 11:58:13 | 20 | paragraph 30? |
| 11:58:14 | 21 | Q.  I said 23. |
| 11:58:21 | 22 | A.  I'm sorry. |
| 11:58:21 | 23 | Q.  I did say 20, but I should have just |
| 11:58:25 | 24 | directed you to 23. |
| 11:58:26 | 25 | MR. HEFFELFINGER:  So the record is clear, |

58980aa7-4ab1-4bbc-9ea2-405d025aac3f

JANE D.   NETTESHEIM

Page 96

| 11:58:27 | 1 | do you want to -- so is it just 23 or 30?  Is it 23 |
| 11:58:33 | 2 | and 30 or just 23 right now? |
| 11:58:36 | 3 | MR. HARRISON:  23. |
| 11:58:37 | 4 | MR. HEFFELFINGER:  Thanks. |
| 11:58:44 | 5 | THE WITNESS:  In paragraph 23 I described |
| 11:58:45 | 6 | them as partial corrective disclosures. |
| 11:58:49 | 7 | MR. HARRISON:  Q.  Earlier, you said you |
| 11:58:50 | 8 | don't have an opinion as to when all fraud-related |
| 11:58:54 | 9 | information was fully disclosed to the market, |
| 11:58:57 | 10 | right? |
| 11:58:59 | 11 | A.  That's right. |
| 11:58:59 | 12 | Q.  So you're asserting that the disclosures |
| 11:59:02 | 13 | on these three dates, October 3rd, 4th, and 8th of |
| 11:59:06 | 14 | 2007 are -- did not fully reveal all fraud-related |
| 11:59:13 | 15 | information related to alleged misstatements and |
| 11:59:16 | 16 | misrepresentations made by the defendants in this |
| 11:59:20 | 17 | case? |
| 11:59:24 | 18 | MR. HEFFELFINGER:  That mischaracterizes |
| 11:59:25 | 19 | her testimony. |
| 11:59:28 | 20 | MR. HARRISON:  It's a question. |
| 11:59:32 | 21 | THE WITNESS:  That -- well, I |
| 11:59:36 | 22 | characterized them as partial corrective disclosures |
| 11:59:39 | 23 | because none of the three disclosures are complete |
| 11:59:43 | 24 | disclosures, and I would say collectively, they're |
| 11:59:46 | 25 | not complete disclosures. |

58980aa7-4ab1-4bbc-9ea2-405d025aac3f

JANE D.   NETTESHEIM

Page 97

| | | |
|---|---|---|
| 11:59:49 | 1 | MR. HARRISON:  Q.  Collectively, they're |
| 11:59:50 | 2 | not complete disclosures? |
| 11:59:53 | 3 | A.   Correct. |
| 12:00:10 | 4 | Q.   In your opinion, are only partial |
| 12:00:20 | 5 | revelations of allegation-related information |
| 12:00:25 | 6 | sufficient to establish loss causation? |
| 12:00:28 | 7 | A.   I'm sorry, I was distracted.  Would you -- |
| 12:00:32 | 8 | Q.   Yes, so was I. |
| 12:00:34 | 9 | A.   And would you read it more slowly. |
| 12:00:36 | 10 | Q.   In your opinion, are only partial |
| 12:00:38 | 11 | revelations of allegation-related information |
| 12:00:41 | 12 | sufficient to establish loss causation? |
| 12:00:45 | 13 | MR. HEFFELFINGER:  Vague and overbroad. |
| 12:00:48 | 14 | THE WITNESS:  I think they can be. |
| 12:00:50 | 15 | MR. HARRISON:  Q.  What's your basis for |
| 12:00:52 | 16 | that opinion? |
| 12:00:59 | 17 | A.   It's been my experience that it's quite |
| 12:01:03 | 18 | common that disclosures are not complete, are not |
| 12:01:11 | 19 | full revelations of particular allegations. |
| 12:01:21 | 20 | Q.   So what is your understanding in this case |
| 12:01:24 | 21 | of when the relevant truth relating to allegations |
| 12:01:28 | 22 | of fraud during the class period was disclosed to |
| 12:01:36 | 23 | the market? |
| 12:01:40 | 24 | A.   Well, it started on October 3rd. |
| 12:01:47 | 25 | Q.   And then you allege another partial |

58980aa7-4ab1-4bbc-9ea2-405d025aac3f

JANE D.   NETTESHEIM

Page 98

| 12:01:52 | 1 | corrective disclosure on October 4th? |

12:01:52   1   corrective disclosure on October 4th?

12:01:55   2        A.   Yes, it started on October 3rd, it

12:01:57   3   continued on October 4th and October 8th.

12:02:00   4        Q.   Do you agree that there are

12:02:02   5   allegation-related disclosures in this case after

12:02:04   6   October 8th, 2007?

12:02:07   7        A.   There are -- yes, there are -- there's a

12:02:10   8   lot of information that comes out after October 8

12:02:13   9   that is related to the allegations.

12:02:22   10        Q.   Okay.  If you look at Appendix B of your

12:02:25   11   report, paragraph 1, you describe the summary of the

12:02:40   12   news related to the alleged misrepresentations and

12:02:43   13   corrective disclosures after October 8, 2007 through

12:02:47   14   the end of 2007 and into 2008; is that right?

12:02:51   15        A.   Yes.

12:02:52   16        Q.   Why did you include Appendix B in your

12:02:54   17   report?

12:02:56   18        A.   It's just meant to be informative that

12:02:59   19   there continued to be news about the topic of

12:03:04   20   alleged misstated inventory and that continued for

12:03:08   21   several months.

12:03:16   22        Q.   And you're aware that various

12:03:18   23   allegation-related disclosures after the class

12:03:21   24   period led to an increase in LDK's stock price?

12:03:28   25             MR. HEFFELFINGER:  Vague as to time for --

58980aa7-4ab1-4bbc-9ea2-405d025aac3f

JANE D.  NETTESHEIM

Page 99

| | | |
|---|---|---|
| 12:03:32 | 1 | with specific disclosures you're referring to. |
| 12:03:39 | 2 | MR. HARRISON:  Q.  Are you aware of any? |
| 12:03:40 | 3 | A.  Well, I have a number of dates here.  Is |
| 12:03:45 | 4 | there a particular one you're interested in? |
| 12:03:48 | 5 | There's a lot of information, a lot of news in this |
| 12:03:51 | 6 | appendix. |
| 12:03:53 | 7 | Q.  I was starting generally, just asking if |
| 12:03:55 | 8 | you're aware.  I'll point you, for example, to |
| 12:03:59 | 9 | paragraph 16 of your Appendix B; do you see that? |
| 12:04:06 | 10 | A.  Yes. |
| 12:04:07 | 11 | Q.  Is that an example of an |
| 12:04:09 | 12 | allegation-related disclosure after the class period |
| 12:04:12 | 13 | that led to an increase of LDK's stock price? |
| 12:04:25 | 14 | A.  I didn't do an analysis of all the news |
| 12:04:27 | 15 | that came out on any of these dates except for |
| 12:04:30 | 16 | October 9th.  On this day, there is news about the |
| 12:04:36 | 17 | progress of the independent investigation, and the |
| 12:04:40 | 18 | stock price did go up substantially that day. |
| 12:04:42 | 19 | There's also the headline of that particular article |
| 12:04:46 | 20 | talks about LDK Solar raised $700 million in debt, |
| 12:04:49 | 21 | retained customers.  I don't know to what extent |
| 12:04:52 | 22 | that did or did not contribute to the stock price |
| 12:04:54 | 23 | increase. |
| 12:04:55 | 24 | So I didn't determine on any of these days |
| 12:05:01 | 25 | to what extent the news about the investigation |

58980aa7-4ab1-4bbc-9ea2-405d025aac3f

JANE D.   NETTESHEIM

Page 100

| | | |
|---|---|---|
| 12:05:05 | 1 | increased the stock price or didn't increase the |
| 12:05:08 | 2 | stock price, but there was information that day |
| 12:05:10 | 3 | about the progress of the investigation. |
| 12:05:17 | 4 | Q.   And in paragraph 18 it also describes |
| 12:05:19 | 5 | information relating to the allegations in the |
| 12:05:22 | 6 | complaint that caused an increase in LDK stock, |
| 12:05:30 | 7 | right? |
| 12:05:31 | 8 | A.   Yes. |
| 12:05:33 | 9 | Q.   As part of your analysis, you didn't |
| 12:05:35 | 10 | consider these disclosures after October 8th, right? |
| 12:05:45 | 11 | A.   Well, I'm not sure what you would consider |
| 12:05:50 | 12 | a disclosure and what you would consider a |
| 12:05:52 | 13 | reinflation of the stock.  But obviously, I looked |
| 12:05:55 | 14 | at all this information. |
| 12:05:58 | 15 | Q.   Now, for purposes of loss causation, is |
| 12:06:01 | 16 | your opinion that to determine when all |
| 12:06:07 | 17 | fraud-related information becomes generally known, |
| 12:06:11 | 18 | you can selectively consider specific dates relating |
| 12:06:16 | 19 | to the fraud? |
| 12:06:18 | 20 | MR. HEFFELFINGER:  Vague and overbroad, |
| 12:06:19 | 21 | assumes facts not in evidence. |
| 12:06:22 | 22 | THE WITNESS:  No. |
| 12:06:26 | 23 | MR. HARRISON:  Q.  You chose to end your |
| 12:06:28 | 24 | analysis of loss causation on October 8th, right? |
| 12:06:35 | 25 | A.   Yes. |

JANE D.  NETTESHEIM

Page 101

| 12:06:37 | 1 | Q.  And in your opinion, these post-class |
| 12:06:42 | 2 | period disclosures relating to the allegations are |
| 12:06:46 | 3 | relevant in determining when the truth about the |
| 12:06:51 | 4 | allegations is revealed to the market? |
| 12:06:54 | 5 | MR. HEFFELFINGER:  Assumes facts not in |
| 12:06:55 | 6 | evidence. |
| 12:06:56 | 7 | THE WITNESS:  Not necessarily. |
| 12:06:57 | 8 | MR. HARRISON:  Q.  How are they relevant? |
| 12:06:59 | 9 | A.  They're -- it's information that is -- or |
| 12:07:04 | 10 | it's news about the alleged inventory misstatements |
| 12:07:11 | 11 | and the investigations surrounding those |
| 12:07:18 | 12 | allegations. |
| 12:07:22 | 13 | Q.  You stated earlier that you included |
| 12:07:24 | 14 | Appendix B in your report to be informative, but you |
| 12:07:29 | 15 | didn't incorporate the disclosures after the class |
| 12:07:32 | 16 | period in deriving your loss causation opinions, |
| 12:07:37 | 17 | right? |
| 12:07:39 | 18 | A.  That's correct. |
| 12:07:40 | 19 | Q.  And you didn't incorporate those |
| 12:07:42 | 20 | disclosures in determining the inflation of LDK |
| 12:07:46 | 21 | stock during the class period? |
| 12:07:53 | 22 | A.  Right, I did not incorporate price changes |
| 12:07:56 | 23 | on any of these posts -- well, after October 8. |
| 12:08:11 | 24 | Q.  And what parameters did you use to |
| 12:08:13 | 25 | determine what disclosures you would use to analyze |

58980aa7-4ab1-4bbc-9ea2-405d025aac3f

JANE D.  NETTESHEIM

Page 102

12:08:20    1    loss causation in this case?

12:08:24    2            MR. HEFFELFINGER:  Vague and overbroad.

12:08:32    3            THE WITNESS:  Well, I looked at the

12:08:33    4    information that came out on October 3rd.  I looked

12:08:36    5    at information that came out on a lot of days, but

12:08:39    6    certainly on October 3rd and thereafter, I was able

12:08:43    7    to tie that to the allegations in the complaint and

12:08:45    8    the allegations as I understand them.

12:08:50    9            And then observing that, you know,

12:08:54    10    certainly beginning on October 9th and on different

12:08:58    11    days thereafter, even on October 4th, there were

12:09:03    12    denials by the company, but then there's additional

12:09:06    13    concern by market participants.

12:09:09    14            So looking at all of the news in total, I

12:09:13    15    determined that the best measure of the price

12:09:18    16    inflation was looking at the price changes on

12:09:20    17    October 3rd, 4th, and 8th.

12:09:26    18            MR. HARRISON:  Q.  And you excluded from

12:09:27    19    that analysis fraud-related disclosures after

12:09:32    20    October 8th even if they're directly related to the

12:09:36    21    allegations in the complaint?

12:09:37    22            MR. HEFFELFINGER:  Assumes facts not in

12:09:39    23    evidence.

12:09:40    24            THE WITNESS:  I think I just said I looked

12:09:41    25    at all of this news after October 8th.

58980aa7-4ab1-4bbc-9ea2-405d025aac3f

JANE D.   NETTESHEIM

Page 103

| | | |
|---|---|---|
| 12:09:50 | 1 | MR. HARRISON:  Q.  You didn't analyze the |
| 12:09:52 | 2 | cumulative impact of the disclosures after the class |
| 12:09:55 | 3 | period relating to your damages model, right? |
| 12:10:01 | 4 | A.  Well, I didn't look at any of these |
| 12:10:06 | 5 | particular dates after October 8 to see -- to |
| 12:10:09 | 6 | determine what effect news related to the |
| 12:10:12 | 7 | allegations had specifically on the ADS price. |
| 12:10:17 | 8 | Q.  And you stopped at the disclosure on |
| 12:10:20 | 9 | October 8th? |
| 12:10:23 | 10 | A.  In terms of determining price inflation, |
| 12:10:25 | 11 | that's correct. |
| 12:10:26 | 12 | Q.  Why did you select October 8th as the date |
| 12:10:29 | 13 | that you stopped your analysis of price inflation? |
| 12:10:36 | 14 | A.  After October 8th, there is a series of |
| 12:10:42 | 15 | information that denies the accusations, then |
| 12:10:47 | 16 | there's information that market participants are |
| 12:10:50 | 17 | still concerned about the accusations.  I think the |
| 12:10:55 | 18 | most relevant dates to use in determining a measure |
| 12:10:59 | 19 | of the price inflation were the three dates that I |
| 12:11:02 | 20 | used, October 3rd, October 4th, and October 8th. |
| 12:11:06 | 21 | Q.  How did you determine that those were the |
| 12:11:08 | 22 | three most relevant dates? |
| 12:11:10 | 23 | A.  As I explained, looking at the news and |
| 12:11:12 | 24 | information. |
| 12:11:13 | 25 | Q.  And you determined that disclosures after |

58980aa7-4ab1-4bbc-9ea2-405d025aac3f

JANE D.   NETTESHEIM

Page 104

| | | |
|---|---|---|
| 12:11:16 | 1 | that were not relevant to your analysis? |
| 12:11:20 | 2 | A.   In terms of determining price inflation. |
| 12:11:35 | 3 | Q.   Under your definition of corrective |
| 12:11:38 | 4 | disclosure, which you stated in your deposition last |
| 12:11:43 | 5 | year, you said that a corrective disclosure is |
| 12:11:47 | 6 | "disclosures of information that are related to -- |
| 12:11:56 | 7 | the information is related to the type of |
| 12:12:00 | 8 | information that is alleged to have been |
| 12:12:01 | 9 | fraudulently misrepresented or omitted during the |
| 12:12:05 | 10 | class period," right? |
| 12:12:06 | 11 | A.   Yes. |
| 12:12:06 | 12 | Q.   And disclosures on December 17th, for |
| 12:12:12 | 13 | example, would fit that definition, correct? |
| 12:12:21 | 14 | A.   Well, based on my assumptions, this would |
| 12:12:23 | 15 | be better characterized as a reinflation as opposed |
| 12:12:28 | 16 | to a corrective disclosure. |
| 12:12:30 | 17 | Q.   You characterized the December 17th |
| 12:12:32 | 18 | disclosure as a reinflation? |
| 12:12:42 | 19 | A.   Yeah, as I said, based on my assumptions, |
| 12:12:43 | 20 | I would characterize that more as a reinflation as |
| 12:12:47 | 21 | opposed to a corrective disclosure. |
| 12:12:49 | 22 | Q.   When you say based on your assumptions, |
| 12:12:51 | 23 | what do you mean by that? |
| 12:12:54 | 24 | A.   That the value of the inventory was not -- |
| 12:13:01 | 25 | the assumptions that I listed in my report, |

JANE D.   NETTESHEIM

Page 105

| | | |
|---|---|---|
| 12:13:03 | 1 | basically that the value of the inventory was not |
| 12:13:05 | 2 | as -- was not accurately stated in the financial |
| 12:13:09 | 3 | statements. |
| 12:13:19 | 4 | Q.   So you're assuming that the disclosure on |
| 12:13:23 | 5 | December 17th, for example, is not a disclosure that |
| 12:13:26 | 6 | changes the mix of fraudulent information available |
| 12:13:29 | 7 | to investors? |
| 12:13:31 | 8 | MR. HEFFELFINGER:  Assumes facts not in |
| 12:13:32 | 9 | evidence, lacks foundation. |
| 12:13:38 | 10 | THE WITNESS:  Well, I think it does change |
| 12:13:40 | 11 | the mix of information related to the alleged, as I |
| 12:13:45 | 12 | said, the alleged inventory discrepancies. |
| 12:13:50 | 13 | MR. HARRISON:  Q.  And under your |
| 12:13:51 | 14 | definition of corrective disclosure in paragraph 20 |
| 12:13:54 | 15 | of your report, wouldn't that fit -- wouldn't the |
| 12:14:04 | 16 | disclosure on December 17th fit the definition in |
| 12:14:07 | 17 | the first sentence? |
| 12:14:09 | 18 | MR. HEFFELFINGER:  Same objections. |
| 12:14:14 | 19 | THE WITNESS:  No, I say here that the |
| 12:14:15 | 20 | corrective disclosure corrects earlier |
| 12:14:21 | 21 | misrepresentations or omissions, so this is more |
| 12:14:26 | 22 | information about inventory discrepancies.  But as I |
| 12:14:35 | 23 | said, under my assumptions, the set of assumptions |
| 12:14:39 | 24 | that I'm using in this case, I wouldn't call this |
| 12:14:42 | 25 | corrective, I would call it more of a reinflating. |

58980aa7-4ab1-4bbc-9ea2-405d025aac3f

JANE D.   NETTESHEIM

Page 106

| | | |
|---|---|---|
| 12:14:57 | 1 | MR. HARRISON:   Q.   In Appendix B of your |
| 12:14:59 | 2 | report, at paragraph 4.   Are you there? |
| 12:15:11 | 3 | A.   Yes. |
| 12:15:11 | 4 | Q.   It states that on October 10th, 2007, "LDK |
| 12:15:15 | 5 | announced that it had signed a three-year contract |
| 12:15:18 | 6 | to supply multicrystalline solar wafers to |
| 12:15:22 | 7 | China-based Chinalight Solar Co., Ltd.   These types |
| 12:15:27 | 8 | of contracts are related to the allegations because |
| 12:15:29 | 9 | the Company touted them as evidence that they had no |
| 12:15:31 | 10 | inventory problems, by purportedly demonstrating |
| 12:15:35 | 11 | commitments from customers dependent on the supply |
| 12:15:37 | 12 | of silicon"; do you see that? |
| 12:15:39 | 13 | A.   Yes. |
| 12:15:40 | 14 | Q.   Is that still your opinion today? |
| 12:15:46 | 15 | A.   It's an observation, but yes. |
| 12:15:49 | 16 | Q.   Is that something you believe should be |
| 12:15:52 | 17 | considered when determining investors' perceptions |
| 12:15:55 | 18 | about the company? |
| 12:16:02 | 19 | MR. HEFFELFINGER:   Vague and ambiguous. |
| 12:16:05 | 20 | THE WITNESS:   I mean, it's information |
| 12:16:08 | 21 | that's in the market, so I think it is considered. |
| 12:16:16 | 22 | MR. HARRISON:   Q.   Referring back to the |
| 12:16:17 | 23 | sales contracts, are you aware that a number of the |
| 12:16:20 | 24 | dates in which the sales contracts were disclosed to |
| 12:16:23 | 25 | the public of LDK led to statistically significant |

58980aa7-4ab1-4bbc-9ea2-405d025aac3f

JANE D.   NETTESHEIM

Page 107

| 12:16:29 | 1 | increases in LDK's stock price? |
| 12:16:34 | 2 | MR. HEFFELFINGER:  Object to the form. |
| 12:16:37 | 3 | THE WITNESS:  As I recall, sometimes they |
| 12:16:38 | 4 | did and sometimes they didn't. |
| 12:16:42 | 5 | MR. HARRISON:  Q.  Are you familiar with a |
| 12:16:43 | 6 | December 12th, 2007 UBS report? |
| 12:16:55 | 7 | MR. DEVORE:  Can you be more specific? |
| 12:16:57 | 8 | MR. HARRISON:  Sure. |
| 12:16:57 | 9 | THE WITNESS:  I may have read it, I don't |
| 12:16:58 | 10 | recall.  I may have. |
| 12:17:03 | 11 | MR. HARRISON:  I'll show it to you. |
| 12:17:17 | 12 | 1007. |
| 12:17:18 | 13 | (Whereupon Exhibit 1007 was |
| 12:17:18 | 14 | marked for identification.) |
| 12:17:43 | 15 | MR. HARRISON:  For the record, this is a |
| 12:17:44 | 16 | December 12, 2007 analyst report by UBS Investment |
| 12:17:51 | 17 | Research, titled "Fundamentals to boost share," |
| 12:17:56 | 18 | relating to LDK Solar Company, Limited. |
| 12:18:01 | 19 | Q.  Have you had a chance to take a look at |
| 12:18:03 | 20 | that? |
| 12:18:03 | 21 | A.  Do you want me to look at the whole thing? |
| 12:18:06 | 22 | Q.  Well, I'll direct you to a specific page |
| 12:18:08 | 23 | but I want to make sure -- |
| 12:18:10 | 24 | A.  I mean, I have it. |
| 12:18:11 | 25 | Q.  I was going to direct you to the page |

58980aa7-4ab1-4bbc-9ea2-405d025aac3f

JANE D.   NETTESHEIM

Page 108

12:18:16    1    containing -- ending in Bates Number -988.

12:18:23    2         A.    Okay.

12:18:23    3         Q.    Do you see at the top that the report

12:18:26    4    notes LDK announced sales contracts on October 16th,

12:18:31    5    October 22nd, and December 10th, 2007?

12:18:36    6         A.    Yes, among other dates, but, yes.

12:18:40    7         Q.    Are you aware that LDK's stock price

12:18:42    8    increased by a statistically significant 11.36

12:18:48    9    percent on October 22nd, 2007?

12:18:53    10         A.    I don't have any particular recollection

12:18:54    11    of it.  I could look it up.

12:18:58    12         Q.    Where would you find that information?

12:19:32    13         A.    I see from Exhibit 4B that the return on

12:19:35    14    that day was 12.8 percent.

12:19:44    15         Q.    What exhibit is that?  I'm sorry.

12:19:47    16         A.    4B.

12:20:19    17         Q.    And under your model, that's statistically

12:20:22    18    significant?

12:20:28    19              MR. HEFFELFINGER:  Assumes facts not in

12:20:29    20    evidence.

12:20:30    21              THE WITNESS:  I don't think I included --

12:20:33    22    I'm not sure I included dates out that far.  I'm

12:20:45    23    looking at Exhibit 14, and the last date is

12:20:47    24    October 9th, 2007.  But given the size of the

12:20:50    25    return, it wouldn't surprise me if it was

58980aa7-4ab1-4bbc-9ea2-405d025aac3f

JANE D.   NETTESHEIM

Page 109

| | | |
|---|---|---|
| 12:20:53 | 1 | statistically significant. |
| 12:20:57 | 2 | MR. HARRISON:  Q.  Okay.  Are you aware |
| 12:21:02 | 3 | that on December 10, 2007 LDK's stock price |
| 12:21:11 | 4 | increased by $13.06? |
| 12:21:18 | 5 | A.   Yes, I have that in Exhibit 4B. |
| 12:21:28 | 6 | Q.   As part of your analysis, did you |
| 12:21:29 | 7 | determine whether that stock price increase was |
| 12:21:32 | 8 | statistically significant? |
| 12:21:36 | 9 | A.   I did not determine the statistical |
| 12:21:41 | 10 | significance of that increase, but it's a large |
| 12:21:43 | 11 | increase. |
| 12:21:45 | 12 | Q.   Did you include the disclosures on |
| 12:21:48 | 13 | October 22nd, 2007 and December 10th, 2007 in |
| 12:21:54 | 14 | determining when all fraud-related information with |
| 12:21:58 | 15 | respect to plaintiffs' allegations was revealed to |
| 12:22:02 | 16 | the market? |
| 12:22:02 | 17 | MR. HEFFELFINGER:  Object to form and also |
| 12:22:03 | 18 | assumes facts not in evidence. |
| 12:22:10 | 19 | THE WITNESS:  Could you repeat the |
| 12:22:11 | 20 | question. |
| 12:22:12 | 21 | MR. HARRISON:  Q.  Yeah.  Did you include |
| 12:22:13 | 22 | the disclosures on October 22nd, 2007 and |
| 12:22:17 | 23 | December 10th, 2007 in determining when all |
| 12:22:20 | 24 | fraud-related information with respect to |
| 12:22:22 | 25 | plaintiffs' allegations was revealed to the market? |

58980aa7-4ab1-4bbc-9ea2-405d025aac3f

JANE D.   NETTESHEIM

Page 110

| | | |
|---|---|---|
| 12:22:26 | 1 | MR. HEFFELFINGER:  Same objections. |
| 12:22:31 | 2 | THE WITNESS:  I think I said earlier that |
| 12:22:32 | 3 | I haven't determined -- I haven't made a |
| 12:22:35 | 4 | determination that all fraud-related information |
| 12:22:37 | 5 | with respect to the allegations has been revealed to |
| 12:22:40 | 6 | the market.  I don't have any particular opinion one |
| 12:22:48 | 7 | way or the other with respect to those two dates. |
| 12:22:50 | 8 | MR. HARRISON:  Q.  So you didn't analyze |
| 12:22:52 | 9 | those dates in determining whether all fraud-related |
| 12:22:57 | 10 | information with respect to plaintiffs' allegations |
| 12:23:01 | 11 | of fraud were disclosed to the market? |
| 12:23:04 | 12 | MR. HEFFELFINGER:  Same objections. |
| 12:23:08 | 13 | THE WITNESS:  I guess I'm not |
| 12:23:09 | 14 | understanding the question.  I don't -- I don't see |
| 12:23:18 | 15 | the relevance in what those two dates -- those two |
| 12:23:22 | 16 | dates and then determining whether all fraud-related |
| 12:23:25 | 17 | information has been revealed to the market.  I |
| 12:23:29 | 18 | guess I'm not seeing the connection. |
| 12:23:30 | 19 | MR. HARRISON:  Q.  Do you agree that the |
| 12:23:33 | 20 | announcement of those solar wafer contracts were |
| 12:23:38 | 21 | related to the allegations in the complaint? |
| 12:23:48 | 22 | MR. HEFFELFINGER:  Vague. |
| 12:23:50 | 23 | THE WITNESS:  Only to the extent, for |
| 12:23:52 | 24 | example, that I characterized in paragraph 4 of |
| 12:23:56 | 25 | Appendix B that they're related to the allegations |

58980aa7-4ab1-4bbc-9ea2-405d025aac3f

JANE D.   NETTESHEIM

Page 111

| | | |
|---|---|---|
| 12:24:01 | 1 | because the company asserted that that showed that |
| 12:24:07 | 2 | they didn't have inventory problems, but only to |
| 12:24:10 | 3 | that extent.  And I don't include those two |
| 12:24:16 | 4 | particular dates in my discussion in Appendix B. |
| 12:24:19 | 5 | MR. HARRISON:  Q.  Why did you choose not |
| 12:24:20 | 6 | to discuss those dates in your Appendix B? |
| 12:24:29 | 7 | A.   I don't think there was any particular |
| 12:24:31 | 8 | reason. |
| 12:24:35 | 9 | Q.   Did you include these dates as part of |
| 12:24:38 | 10 | your analysis of LDK's share price inflation during |
| 12:24:42 | 11 | the class period? |
| 12:24:48 | 12 | A.   No, because those -- to the extent that, |
| 12:24:54 | 13 | you know, if they are additional misrepresentations, |
| 12:24:57 | 14 | they occurred after the end of the class period so |
| 12:25:00 | 15 | they're not relevant to the price inflation in the |
| 12:25:03 | 16 | class period. |
| 12:25:04 | 17 | Q.   You're claiming that the disclosures on |
| 12:25:08 | 18 | October 22nd, 2007 and December 10, 2007 are |
| 12:25:14 | 19 | additional misrepresentations? |
| 12:25:17 | 20 | MR. HEFFELFINGER:  Object.  It lacks |
| 12:25:18 | 21 | foundation, assumes facts not in evidence. |
| 12:25:22 | 22 | THE WITNESS:  No, I didn't -- would you |
| 12:25:29 | 23 | repeat the question. |
| 12:25:30 | 24 | MR. HARRISON:  Q.  Yeah.  I thought that |
| 12:25:31 | 25 | you testified -- you said, "No, because those -- to |

58980aa7-4ab1-4bbc-9ea2-405d025aac3f

JANE D.   NETTESHEIM

Page 112

| | | |
|---|---|---|
| 12:25:35 | 1 | the extent that, you know, if they are additional |
| 12:25:37 | 2 | misrepresentations, they occurred after the end of |
| 12:25:40 | 3 | the class period so they're not relevant to the |
| 12:25:42 | 4 | price inflation in the class period," right? |
| 12:25:45 | 5 | A.   That's what I said. |
| 12:25:47 | 6 | MR. HEFFELFINGER:  Same objections. |
| 12:25:47 | 7 | MR. HARRISON:  Q.  And my question was is |
| 12:25:48 | 8 | it your opinion that the disclosures on |
| 12:25:51 | 9 | October 22nd, 2007 and December 10th, 2007 are |
| 12:25:57 | 10 | additional misrepresentations? |
| 12:25:59 | 11 | A.   No, that's not my opinion. |
| 12:26:03 | 12 | Q.   When you said that earlier, to the extent |
| 12:26:06 | 13 | there are additional misrepresentations, what did |
| 12:26:09 | 14 | you mean by that? |
| 12:26:10 | 15 | A.   That if there's -- just what I said, if |
| 12:26:18 | 16 | there are additional statements made that would be |
| 12:26:21 | 17 | considered misrepresentations that come out after |
| 12:26:24 | 18 | the end of the class period that reinflate the |
| 12:26:26 | 19 | price, then that inflation occurred after the end of |
| 12:26:29 | 20 | the class period and it doesn't pertain to the |
| 12:26:31 | 21 | inflation during the class period. |
| 12:26:35 | 22 | Q.   And I think my question is do you consider |
| 12:26:39 | 23 | disclosures by the company on those two dates, |
| 12:26:41 | 24 | October 22nd, 2007 and December 10th, 2007, were |
| 12:26:45 | 25 | further misrepresentations by the company that |

JANE D.   NETTESHEIM

Page 113

| | | |
|---|---|---|
| 12:26:47 | 1 | reinflated the company's stock price? |
| 12:26:50 | 2 | MR. HEFFELFINGER:  Lacks foundation, |
| 12:26:51 | 3 | assumes facts not in evidence. |
| 12:26:55 | 4 | THE WITNESS:  No, that's not my opinion. |
| 12:26:58 | 5 | MR. HARRISON:  Q.  In determining -- well, |
| 12:27:02 | 6 | let me back up. |
| 12:27:03 | 7 | Did you perform any procedures to |
| 12:27:05 | 8 | determine how the exclusion of these dates from your |
| 12:27:08 | 9 | share price inflation analysis affects your damages |
| 12:27:12 | 10 | estimates? |
| 12:27:16 | 11 | A.   It doesn't affect my damages estimates. |
| 12:27:20 | 12 | MR. HEFFELFINGER:  And it's been asked and |
| 12:27:21 | 13 | answered a couple of times now. |
| 12:27:26 | 14 | MR. HARRISON:  Q.  I don't think that's |
| 12:27:28 | 15 | right, but had you included these dates in your |
| 12:27:31 | 16 | analysis, would that have lowered your damages |
| 12:27:34 | 17 | estimates in this case? |
| 12:27:35 | 18 | MR. HEFFELFINGER:  Assumes facts not in |
| 12:27:37 | 19 | evidence, lacks foundation. |
| 12:27:42 | 20 | THE WITNESS:  No, I don't calculate |
| 12:27:44 | 21 | damages to anyone who may have purchased the ADSs |
| 12:27:51 | 22 | after October 22nd or after December 10th. |
| 12:28:01 | 23 | MR. HARRISON:  I think we've been going |
| 12:28:03 | 24 | for quite a while, I haven't been paying attention. |
| 12:28:04 | 25 | But I think it's 12:30 and I think we're about ready |

58980aa7-4ab1-4bbc-9ea2-405d025aac3f

JANE D.   NETTESHEIM

Page 114

| | | |
|---|---|---|
| 12:28:07 | 1 | to take a break for lunch. |
| 12:28:10 | 2 | MR. HEFFELFINGER:  What time, Matt, would |
| 12:28:11 | 3 | you like to reconvene here? |
| 12:28:13 | 4 | MR. HARRISON:  We should go 45 minutes to |
| 12:28:15 | 5 | an hour.  If we can get back in 45, we can start up. |
| 12:28:22 | 6 | THE VIDEOGRAPHER:  Going off the record. |
| 12:28:23 | 7 | The time is 12:28. |
| 12:28:25 | 8 | (Lunch recess was taken.) |
| 13:27:52 | 9 | THE VIDEOGRAPHER:  We're back on the |
| 13:27:53 | 10 | record.  The time is 1:28. |
| 13:27:56 | 11 | MR. HARRISON:  Q.  Good afternoon, |
| 13:27:56 | 12 | Ms. Nettesheim. |
| 13:28:00 | 13 | A.  Good afternoon. |
| 13:28:03 | 14 | Q.  I want to switch back to something else, |
| 13:28:06 | 15 | another topic. |
| 13:28:07 | 16 | How much time did you spend preparing your |
| 13:28:10 | 17 | reports that you submitted in connection with this |
| 13:28:12 | 18 | case on October 29, 2009 and November 19th, 2009? |
| 13:28:22 | 19 | A.  I really don't know. |
| 13:28:23 | 20 | Q.  Do you have an estimate? |
| 13:28:29 | 21 | A.  Probably over 40 hours, but I don't know |
| 13:28:32 | 22 | if it's double that or -- I don't know. |
| 13:28:38 | 23 | Q.  Somewhere between 40 and 80? |
| 13:28:41 | 24 | A.  I really don't know. |
| 13:28:46 | 25 | Q.  And that is the number of hours that you |

58980aa7-4ab1-4bbc-9ea2-405d025aac3f

JANE D.   NETTESHEIM

Page 115

| | | |
|---|---|---|
| 13:28:50 | 1 | spent actually writing the reports that I just |
| 13:28:52 | 2 | described? |
| 13:28:56 | 3 | A.   Well, preparing the reports. |
| 13:28:58 | 4 | Q.   What else did that include? |
| 13:29:01 | 5 | A.   Reading, analyses, research. |
| 13:29:07 | 6 | Q.   Do you know how much time you spent |
| 13:29:10 | 7 | actually writing the reports that I described? |
| 13:29:12 | 8 | A.   No. |
| 13:29:12 | 9 | Q.   Do you have an estimate of the amount of |
| 13:29:14 | 10 | time that you spent writing the reports? |
| 13:29:19 | 11 | A.   I'm sorry, is that what you just asked? |
| 13:29:22 | 12 | Q.   I asked if you know, and you said no.  I'm |
| 13:29:25 | 13 | asking if you have an estimate. |
| 13:29:27 | 14 | A.   I don't. |
| 13:29:32 | 15 | Q.   Less than 40? |
| 13:29:33 | 16 | A.   I'm not sure -- I don't think I could |
| 13:29:36 | 17 | parse it because I do something, maybe it's review a |
| 13:29:42 | 18 | document, then I write, and then maybe I do |
| 13:29:44 | 19 | something else and then I write.  I'm not sure I can |
| 13:29:48 | 20 | come up with any sort of a reasonable estimate as to |
| 13:29:51 | 21 | how much time I spent actually writing. |
| 13:29:54 | 22 | Q.   How much time did you spend reviewing |
| 13:29:56 | 23 | documents in connection with your reports? |
| 13:30:00 | 24 | A.   Again, I don't know. |
| 13:30:05 | 25 | MR. HARRISON:  I'm just going to mark -- |

58980aa7-4ab1-4bbc-9ea2-405d025aac3f

JANE D.   NETTESHEIM

Page 116

| | | |
|---|---|---|
| 13:30:08 | 1 | I've already lost count.  I think it's 1008, |
| 13:30:12 | 2 | Exhibit. |
| 13:30:23 | 3 | (Whereupon Exhibit 1008 was |
| 13:30:23 | 4 | marked for identification.) |
| 13:30:34 | 5 | MR. HARRISON:   Q.   This document was |
| 13:30:35 | 6 | provided to us by counsel recently, and it states, |
| 13:30:41 | 7 | "Stanford Consulting Group Fees and Expenses Billed |
| 13:30:45 | 8 | as of December 1, 2009."  Are you a member of the |
| 13:30:50 | 9 | Stanford Consulting Group? |
| 13:30:52 | 10 | A.   I'm an employee of that company. |
| 13:30:54 | 11 | Q.   Did you keep billing records regarding the |
| 13:31:00 | 12 | work that you performed as of December 1st, 2009? |
| 13:31:06 | 13 | A.   Well, the firm maintains billing records. |
| 13:31:08 | 14 | Q.   Did you keep time sheets or anything to |
| 13:31:10 | 15 | track the amount of time you spent preparing your |
| 13:31:14 | 16 | reports? |
| 13:31:14 | 17 | A.   Well, as part of the billing software, we |
| 13:31:19 | 18 | do have time sheets. |
| 13:31:20 | 19 | Q.   So you keep time based on the tasks that |
| 13:31:23 | 20 | you perform in relation to the reports you write? |
| 13:31:27 | 21 | A.   I keep track of my time for all kinds of |
| 13:31:29 | 22 | things that I do. |
| 13:31:31 | 23 | Q.   And you have descriptions of the nature of |
| 13:31:33 | 24 | the work that you perform in those billing records? |
| 13:31:39 | 25 | A.   Just general descriptions. |

JANE D.   NETTESHEIM

Page 117

| | | |
|---|---|---|
| 13:31:42 | 1 | Q.   Does the billing record parse out -- let |
| 13:31:47 | 2 | me back up. |
| 13:31:48 | 3 | Do the billing records relating to the |
| 13:31:51 | 4 | work in this case parse out the amount of time you |
| 13:31:55 | 5 | spent on each specific task? |
| 13:31:57 | 6 | A.   No. |
| 13:31:59 | 7 | Q.   Now, this document in front of you, have |
| 13:32:01 | 8 | you seen this before? |
| 13:32:03 | 9 | A.   This?  No. |
| 13:32:06 | 10 | Q.   It says "Billed as of December 1st, 2009." |
| 13:32:10 | 11 | Do you see that fee? |
| 13:32:11 | 12 | A.   Yes. |
| 13:32:12 | 13 | Q.   Are you aware that that's the fee for the |
| 13:32:14 | 14 | services that Stanford Consulting Group has billed |
| 13:32:19 | 15 | plaintiffs' counsel as of December 1st, 2009? |
| 13:32:25 | 16 | A.   Other than from this page, I'm not.  I |
| 13:32:27 | 17 | don't do the billings. |
| 13:32:29 | 18 | Q.   Have you seen that number before? |
| 13:32:31 | 19 | A.   No, I have not. |
| 13:32:32 | 20 | Q.   Do you know if that number represents time |
| 13:32:35 | 21 | spent on your earlier reports and deposition in this |
| 13:32:38 | 22 | case? |
| 13:32:39 | 23 | A.   I don't know. |
| 13:32:46 | 24 | Q.   How much of the fees on this document |
| 13:32:51 | 25 | related to the work you personally did? |

MERRILL LEGAL SOLUTIONS

(800) 325-3376          www.MerrillCorp.com

58980aa7-4ab1-4bbc-9ea2-405d025aac3f

JANE D.   NETTESHEIM

Page 118

| | | |
|---|---|---|
| 13:32:55 | 1 | A.   I don't know. |
| 13:32:56 | 2 | Q.   Do you know how much time you personally |
| 13:32:59 | 3 | billed for the reports that you created on |
| 13:33:03 | 4 | October -- or submitted on October 29, 2009 or |
| 13:33:07 | 5 | November 19th, 2009? |
| 13:33:09 | 6 | A.   As I said earlier, I don't -- it's my best |
| 13:33:13 | 7 | estimate is it's some tens of hours. |
| 13:33:15 | 8 | Q.   Do you know the amount of fees? |
| 13:33:18 | 9 | A.   Well, my time would be billed -- my hourly |
| 13:33:22 | 10 | rate is $495 so my time would be billed at that |
| 13:33:26 | 11 | rate. |
| 13:33:34 | 12 | Q.   Did anyone at Stanford Consulting Group |
| 13:33:38 | 13 | assist you in preparing these reports? |
| 13:33:41 | 14 | A.   Yes. |
| 13:33:42 | 15 | Q.   And who was that? |
| 13:33:43 | 16 | A.   Faye Fort and Bennett Woo, Jason |
| 13:33:50 | 17 | Erpenbeck, Bernadette Burns.  That's probably the |
| 13:34:04 | 18 | extent of it. |
| 13:34:10 | 19 | Q.   Do you know how much of the fees indicated |
| 13:34:12 | 20 | here on Exhibit 1008 are related to the work that |
| 13:34:17 | 21 | those people at Stanford Consulting Group performed? |
| 13:34:22 | 22 | A.   No, I don't know. |
| 13:34:24 | 23 | Q.   What tasks did they perform? |
| 13:34:29 | 24 | A.   They would have done some research, |
| 13:34:30 | 25 | analyses, collating documents, general things like |

58980aa7-4ab1-4bbc-9ea2-405d025aac3f

JANE D.   NETTESHEIM

Page 119

| | | |
|---|---|---|
| 13:34:41 | 1 | that. |
| 13:34:45 | 2 | Q.   Do they keep time records for billing |
| 13:34:49 | 3 | purposes relating to the work performed in this |
| 13:34:52 | 4 | case? |
| 13:34:52 | 5 | A.   Yes, they do.  It's part of the same |
| 13:34:54 | 6 | system. |
| 13:34:55 | 7 | Q.   Do they contain descriptions of the work |
| 13:34:57 | 8 | that was performed? |
| 13:35:01 | 9 | A.   I haven't seen their descriptions, but I |
| 13:35:04 | 10 | would -- it's likely that they would have some |
| 13:35:11 | 11 | general descriptions. |
| 13:35:12 | 12 | Q.   Generally, did others at Stanford |
| 13:35:14 | 13 | Consulting Group spend more time than you in |
| 13:35:17 | 14 | preparing the reports that you submitted in October |
| 13:35:22 | 15 | and November 2009? |
| 13:35:27 | 16 | A.   In terms of preparing the reports, I would |
| 13:35:29 | 17 | have spent the most time.  But in terms of total |
| 13:35:34 | 18 | time billed for writing support and that sort of |
| 13:35:39 | 19 | thing, as a group they probably have more hours than |
| 13:35:45 | 20 | I do. |
| 13:35:46 | 21 | Q.   How about the time they spent writing the |
| 13:35:49 | 22 | report, more or less than you? |
| 13:35:54 | 23 | MR. HEFFELFINGER:  Assumes facts not in |
| 13:35:56 | 24 | evidence. |
| 13:35:57 | 25 | THE WITNESS:  Less. |

58980aa7-4ab1-4bbc-9ea2-405d025aac3f

JANE D.   NETTESHEIM

Page 120

| | | |
|---|---|---|
| 13:35:57 | 1 | MR. HARRISON:   Q.   And they contributed to |
| 13:35:59 | 2 | the actual words put on paper in the reports |
| 13:36:04 | 3 | submitted in October and November 2009? |
| 13:36:09 | 4 | A.   To a certain extent.   I basically write |
| 13:36:12 | 5 | the report, but certainly Faye would review it and |
| 13:36:15 | 6 | she would have editorial comments.   Also, there |
| 13:36:20 | 7 | might be some blanks, some numbers that need to be |
| 13:36:23 | 8 | filled in.   Somebody might fill those in for me. |
| 13:36:27 | 9 | Then the exhibits, though, are prepared primarily by |
| 13:36:30 | 10 | Jason, and Bennett would put together the data into |
| 13:36:36 | 11 | an exhibit format for me. |
| 13:36:39 | 12 | Q.   Was Faye the primary person who assisted |
| 13:36:41 | 13 | you? |
| 13:36:44 | 14 | A.   Yes. |
| 13:36:48 | 15 | Q.   Is she an economist? |
| 13:36:51 | 16 | A.   Her educational background is operations |
| 13:36:53 | 17 | research. |
| 13:36:54 | 18 | Q.   What is operations research? |
| 13:36:58 | 19 | A.   It's a degree, primarily statistics, but |
| 13:37:05 | 20 | from the engineering school at Stanford. |
| 13:37:24 | 21 | Q.   Outside of your communications with your |
| 13:37:26 | 22 | counsel and with your support staff and folks at |
| 13:37:29 | 23 | Stanford Consulting, did you communicate with anyone |
| 13:37:32 | 24 | else in relation to the reports that you submitted |
| 13:37:35 | 25 | in October and November 2009? |

58980aa7-4ab1-4bbc-9ea2-405d025aac3f

JANE D. NETTESHEIM

Page 121

| | | |
|---|---|---|
| 13:37:37 | 1 | A. No. |
| 13:38:12 | 2 | Q. There is a subpoena issued on 11/18/2009 |
| 13:38:18 | 3 | for records in connection with your preparation of |
| 13:38:21 | 4 | these reports, are you aware of that? |
| 13:38:24 | 5 | A. Yes. |
| 13:38:24 | 6 | Q. Did you review the subpoena? |
| 13:38:27 | 7 | A. Yes. |
| 13:38:27 | 8 | Q. And did you produce records in response to |
| 13:38:29 | 9 | the subpoena? |
| 13:38:30 | 10 | A. I produced records in response to |
| 13:38:32 | 11 | instructions with counsel. |
| 13:38:39 | 12 | Q. Have you produced all of the records that |
| 13:38:42 | 13 | were responsive to the categories of the subpoena? |
| 13:38:47 | 14 | A. I'd need to see the subpoena. |
| 13:38:58 | 15 | MR. HARRISON: Exhibit 1009. |
| 13:39:00 | 16 | (Whereupon Exhibit 1009 was |
| 13:39:00 | 17 | marked for identification.) |
| 13:39:31 | 18 | MR. DEVORE: Do you also have a copy of |
| 13:39:33 | 19 | the objections and responses to the subpoena? |
| 13:39:35 | 20 | MR. HARRISON: I don't have it with me. |
| 13:39:57 | 21 | Q. Have you had a chance to take a look at |
| 13:39:59 | 22 | it? |
| 13:40:00 | 23 | A. Yes. |
| 13:40:00 | 24 | Q. Did you search for documents in response |
| 13:40:02 | 25 | to this subpoena? |

58980aa7-4ab1-4bbc-9ea2-405d025aac3f

JANE D.   NETTESHEIM

Page 122

| | | |
|---|---|---|
| 13:40:06 | 1 | A.   Yes. |
| 13:40:09 | 2 | Q.   See Request Number 1 on page 5? |
| 13:40:14 | 3 | A.   Yes. |
| 13:40:14 | 4 | Q.   Did you produce copies of all notes that |
| 13:40:17 | 5 | you prepared or notes prepared by the personnel in |
| 13:40:23 | 6 | connection with your work in this matter at Stanford |
| 13:40:26 | 7 | Consulting Group? |
| 13:40:28 | 8 | A.   I don't know what others produced.  I |
| 13:40:30 | 9 | didn't have anything else. |
| 13:40:41 | 10 | Q.   Do you know if in response to Request |
| 13:40:43 | 11 | Number 5 you produced time sheets, time records, and |
| 13:40:46 | 12 | billing records in response to the subpoena? |
| 13:40:52 | 13 | MR. DEVORE:  I'll note for the record that |
| 13:40:53 | 14 | there's been an objection made to this request and |
| 13:40:58 | 15 | that there's been an extensive amount of |
| 13:41:01 | 16 | correspondence about what was produced in response |
| 13:41:04 | 17 | to it.  The witness can answer what she did, but |
| 13:41:07 | 18 | whether or not the documents were necessarily |
| 13:41:09 | 19 | produced is probably a different question. |
| 13:41:13 | 20 | MR. HARRISON:  Understood.  I understand |
| 13:41:16 | 21 | there's a dispute with respect to time sheets and |
| 13:41:19 | 22 | billing records and we'll resolve that when we |
| 13:41:26 | 23 | resolve it.  And we reserve the right to keep the |
| 13:41:29 | 24 | deposition open in case we need to ask her about the |
| 13:41:33 | 25 | time records, but I understand the debate. |

58980aa7-4ab1-4bbc-9ea2-405d025aac3f

JANE D.   NETTESHEIM

Page 123

| | | |
|---|---|---|
| 13:41:36 | 1 | MR. DEVORE:  Yeah, and I'm not agreeing to |
| 13:41:38 | 2 | your request to keep the deposition open. |
| 13:41:40 | 3 | Obviously, we've asked defendants to commit to |
| 13:41:46 | 4 | turning over the same categories and types of |
| 13:41:49 | 5 | documents the plaintiffs are agreeing to produce. |
| 13:41:51 | 6 | The defendants have so far declined to agree, and as |
| 13:41:55 | 7 | such, the issue remains unresolved.  We can talk |
| 13:42:01 | 8 | about it later. |
| 13:42:03 | 9 | MR. HARRISON:  Okay. |
| 13:42:17 | 10 | MR. HEFFELFINGER:  You had a question |
| 13:42:17 | 11 | pending. |
| 13:42:18 | 12 | MR. HARRISON:  Q.  I understand you might |
| 13:42:19 | 13 | not know the answer to that because there's a debate |
| 13:42:22 | 14 | about the production of time records.  Do you know |
| 13:42:24 | 15 | one way or the other if you produced time records? |
| 13:42:27 | 16 | A.   I don't know whether they were produced or |
| 13:42:29 | 17 | not. |
| 13:42:30 | 18 | MR. HARRISON:  I fear your debate made it |
| 13:42:33 | 19 | moot but... |
| 13:42:52 | 20 | Q.   Turning back to the topic we were |
| 13:42:54 | 21 | discussing before we took our lunch break, which was |
| 13:42:56 | 22 | your opinions on loss causation. |
| 13:43:00 | 23 | Did you make any effort to determine how |
| 13:43:02 | 24 | your damages analysis would have changed had you |
| 13:43:06 | 25 | incorporated all post-class period |

JANE D.   NETTESHEIM

Page 124

```
13:43:08      1      allegation-related disclosures up through
13:43:11      2      December 17th, 2007?
13:43:14      3            MR. HEFFELFINGER:  Lacks foundation, vague
13:43:15      4      and ambiguous, overbroad.
13:43:21      5            THE WITNESS:  I don't know which
13:43:25      6      disclosures.  As I said, in my Appendix B I provided
13:43:30      7      information.  I don't know what you would
13:43:32      8      characterize as disclosures and what would be
13:43:35      9      characterized as additional misrepresentations, and
13:43:38     10      I didn't do an analysis of that.
13:43:39     11            MR. HARRISON:  Q.  Did you do an analysis
13:43:42     12      of how your damages analysis would have changed had
13:43:44     13      you considered disclosures on October 9th, 2007
13:43:49     14      relating to the alleged fraud?
13:43:51     15            MR. HEFFELFINGER:  Lacks foundation.
13:43:59     16            THE WITNESS:  Well, there's a mix of
13:44:00     17      information on October 9th and I didn't incorporate
13:44:10     18      any of the price -- the company-specific price
13:44:13     19      change on October 9th on my analysis of price
13:44:17     20      inflation.
13:44:17     21            MR. HARRISON:  Q.  You said there's a mix
13:44:19     22      of information on October 9th.  Was some of that
13:44:22     23      information related to allegations of fraud in this
13:44:24     24      case?
13:44:24     25         A.  Well, there's the company denial, and then
```

58980aa7-4ab1-4bbc-9ea2-405d025aac3f

JANE D.   NETTESHEIM

Page 125

13:44:29    1      I think there were additional analyst reports that

13:44:32    2      comment on the inventory investigation.

13:44:37    3          Q.   And why did you choose not to incorporate

13:44:39    4      any of the company-specific price change in your

13:44:43    5      analysis of price inflation on October 9th?

13:44:51    6          A.   Well, it's after the end of the class

13:44:53    7      period.  So to the extent that the company denial

13:44:56    8      reinflated the stock price, that wouldn't be

13:44:59    9      pertinent or a measure of corrective disclosure.  So

13:45:06   10      I didn't see any reason to use it.

13:45:10   11          Q.   Have you ever seen anything that was

13:45:13   12      disclosed in the market that corroborated the

13:45:15   13      company's denial of Charlie Situ's allegations on

13:45:18   14      October 9th?

13:45:21   15          A.   Well, I've seen analyst reports that

13:45:27   16      repeat the company's denial and analyst reports that

13:45:30   17      question the company's denial so...

13:45:34   18          Q.   Okay.  Have you seen any disclosures to

13:45:37   19      the market that corroborated the company's denial

13:45:42   20      that those accusations were accurate?

13:45:49   21              MR. HEFFELFINGER:  Asked and answered.

13:45:50   22              MR. HARRISON:  I don't think it was

13:45:51   23      answered.

13:46:01   24              THE WITNESS:  I don't recall

13:46:01   25      corroboration.

58980aa7-4ab1-4bbc-9ea2-405d025aac3f

JANE D.   NETTESHEIM

Page 126

| | | |
|---|---|---|
| 13:46:04 | 1 | MR. HARRISON:  Q.  How about disclosures |
| 13:46:05 | 2 | on December 17th, 2007? |
| 13:46:13 | 3 | A.  I'm sorry, what do you mean by "How |
| 13:46:16 | 4 | about"? |
| 13:46:16 | 5 | MR. HEFFELFINGER:  Vague. |
| 13:46:18 | 6 | MR. HARRISON:  Fair enough. |
| 13:46:22 | 7 | Q.  When I say, "How about disclosures on |
| 13:46:25 | 8 | December 17th, 2007," are those disclosures that |
| 13:46:31 | 9 | corroborated the company's denial that these |
| 13:46:33 | 10 | accusations by Charlie Situ were accurate? |
| 13:46:38 | 11 | A.  Well, they're additional statements from |
| 13:46:41 | 12 | the company that do deny that there is a discrepancy |
| 13:46:52 | 13 | with respect to the inventory quantity. |
| 13:46:58 | 14 | Q.  So those corroborated the company's denial |
| 13:47:00 | 15 | that accusations by Charlie Situ were accurate? |
| 13:47:07 | 16 | MR. HEFFELFINGER:  Vague, ambiguous. |
| 13:47:09 | 17 | THE WITNESS:  Well, it's just another |
| 13:47:11 | 18 | company statement about that, and they do deny that |
| 13:47:18 | 19 | the quantity in the inventories was inaccurate. |
| 13:47:26 | 20 | MR. HARRISON:  Q.  That December 17th |
| 13:47:28 | 21 | disclosure has more than just a denial of the |
| 13:47:31 | 22 | allegations though, right? |
| 13:47:38 | 23 | MR. HEFFELFINGER:  Object.  Lacks |
| 13:47:39 | 24 | foundation and assumes facts not in evidence. |
| 13:47:54 | 25 | THE WITNESS:  I'm not sure what you're |

JANE D.   NETTESHEIM

Page 127

13:47:56    1    asking for.

13:47:57    2         MR. HARRISON:   Q.   The December 17th

13:47:57    3    disclosure describes the conclusion of an

13:47:59    4    independent investigation that was announced on

13:48:01    5    October 4th, 2007 and discussed extensively by

13:48:05    6    analysts up until that date, right?

13:48:08    7         A.   I'm not sure this investigation was

13:48:11    8    announced on October 4th.  This might have been -- I

13:48:15    9    thought this was the later -- the investigation that

13:48:17   10    was announced later in October.

13:48:22   11         Q.   We'll take a look at that in a little more

13:48:25   12    detail, but I just want to return to October 9th

13:48:29   13    before we get off of that topic.

13:48:32   14              And in your report at paragraph 64, you

13:48:36   15    discussed the "large statistically significant

13:48:44   16    positive residual return on October 9, 2007,

13:48:48   17    immediately following the last corrective

13:48:51   18    disclosure," which you opine was on October 8th,

13:48:55   19    2007, right?

13:48:56   20         A.   Yes.

13:49:00   21         Q.   And is it your opinion that the

13:49:09   22    statistically significant positive residual return

13:49:13   23    on October 9th, 2007 was caused by a press release

13:49:18   24    issued by the company?

13:49:23   25         A.   Well, I think the news on that day

58980aa7-4ab1-4bbc-9ea2-405d025aac3f

JANE D.   NETTESHEIM

Page 128

| | | |
|---|---|---|
| 13:49:24 | 1 | attributes to that price increase, yes, the press |
| 13:49:29 | 2 | release by the company. |
| 13:49:30 | 3 | Q.   Have you seen the press release? |
| 13:49:42 | 4 | A.   Yes. |
| 13:49:43 | 5 | Q.   In paragraph 64, you state that, "Much of |
| 13:49:45 | 6 | the LDK ADS price increase on October 9 was due to |
| 13:49:50 | 7 | the Company's improved revenue guidance," and then |
| 13:49:53 | 8 | you say, "(and therefore not related to the |
| 13:49:56 | 9 | allegations)"; do you see that? |
| 13:49:58 | 10 | A.   Yes. |
| 13:49:59 | 11 | Q.   How did you determine that much of it was |
| 13:50:01 | 12 | due to the company's improved revenue guidance? |
| 13:50:04 | 13 | A.   It's frequently -- that particular |
| 13:50:08 | 14 | statement is cited in a lot of the news.  And I'm |
| 13:50:11 | 15 | not really quantifying it, but that seemed to be -- |
| 13:50:14 | 16 | that was important information according to the news |
| 13:50:18 | 17 | stories that came out that day, in addition to the |
| 13:50:20 | 18 | company's denials. |
| 13:50:22 | 19 | Q.   So you didn't quantify the amount of the |
| 13:50:25 | 20 | ADS price increase on October 9th that was |
| 13:50:28 | 21 | attributable to the improved revenue guidance? |
| 13:50:32 | 22 | A.   No. |
| 13:50:33 | 23 | Q.   Why didn't you do that? |
| 13:50:37 | 24 | A.   There was no reason for me to do that. |
| 13:50:39 | 25 | It's not relevant to my analysis. |

JANE D.   NETTESHEIM

Page 129

| | | |
|---|---|---|
| 13:50:42 | 1 | Q.   You conclude that it's not related to the |
| 13:50:44 | 2 | allegations in paragraph 64 of your report? |
| 13:50:52 | 3 | A.   Yes. |
| 13:50:52 | 4 | Q.   Is that the reason why you say that it's |
| 13:50:54 | 5 | not relevant to your analysis? |
| 13:50:57 | 6 | A.   No, this was information that came out |
| 13:51:00 | 7 | after the last disclosure that I used, which was the |
| 13:51:05 | 8 | October 8 disclosure.  So this is after that period. |
| 13:51:13 | 9 | Q.   So anything after the October 8th |
| 13:51:16 | 10 | disclosure is irrelevant to your analysis?  Let |
| 13:51:20 | 11 | me -- before you object, let me rephrase it. |
| 13:51:24 | 12 | Any disclosure relating to the company, |
| 13:51:26 | 13 | whether it's fraud related or non-fraud related, is |
| 13:51:30 | 14 | irrelevant to your analysis after the October 8th |
| 13:51:33 | 15 | disclosure? |
| 13:51:35 | 16 | A.   I determined not to use any price changes |
| 13:51:42 | 17 | after that date in terms of measuring the price |
| 13:51:45 | 18 | inflation. |
| 13:51:47 | 19 | Q.   And what was the reasoning behind your |
| 13:51:49 | 20 | determination not to use any of the price changes |
| 13:51:51 | 21 | after that date in terms of measuring price |
| 13:51:54 | 22 | inflation? |
| 13:51:56 | 23 | A.   As I said before, it's -- I didn't include |
| 13:52:04 | 24 | any potential reinflation of the stock after |
| 13:52:09 | 25 | October 8th, and I didn't include any disclosure |

JANE D.   NETTESHEIM

Page 130

| 13:52:13 | 1 | that may have reversed that inflation after |
| 13:52:16 | 2 | October 8. |
| 13:52:22 | 3 | Q.   Any post-class period disclosure relating |
| 13:52:25 | 4 | to allegations of fraud that caused the stock price |
| 13:52:30 | 5 | to go up, you consider that to be reinflation of the |
| 13:52:34 | 6 | stock? |
| 13:52:36 | 7 | MR. HEFFELFINGER:  Object to it lacks |
| 13:52:38 | 8 | foundation, assumes facts not in evidence. |
| 13:52:41 | 9 | THE WITNESS:  It could potentially depend |
| 13:52:44 | 10 | upon what those statements were. |
| 13:52:49 | 11 | MR. HARRISON:  Q.  Did you do an analysis |
| 13:52:50 | 12 | to determine whether post-class period disclosures |
| 13:52:58 | 13 | relating to allegations of fraud that caused the |
| 13:53:00 | 14 | stock price to go up were reinflations of the stock |
| 13:53:04 | 15 | price? |
| 13:53:04 | 16 | MR. HEFFELFINGER:  Same objections. |
| 13:53:06 | 17 | THE WITNESS:  I didn't do a specific |
| 13:53:08 | 18 | analysis. |
| 13:53:10 | 19 | MR. HARRISON:  Q.  And what's the reason |
| 13:53:11 | 20 | you chose not to do that specific analysis? |
| 13:53:16 | 21 | A.   Well, that -- to the extent that |
| 13:53:20 | 22 | reinflation occurred, it occurred after the end of |
| 13:53:24 | 23 | the class period.  And so as I said earlier, anybody |
| 13:53:28 | 24 | who purchased after that reinflation would not be |
| 13:53:31 | 25 | included in the class.  Anyway, it's after the class |

58980aa7-4ab1-4bbc-9ea2-405d025aac3f

JANE D.   NETTESHEIM

Page 131

13:53:34   1   period, so there was no need to do any further

13:53:38   2   analysis of that.

13:53:39   3       Q.   Those disclosures, to you, aren't relevant

13:53:41   4   to your analysis of loss causation?

13:53:44   5           MR. HEFFELFINGER:   Same objections.

13:53:47   6           THE WITNESS:   That's -- they are not

13:53:50   7   relevant in terms of measuring the price inflation

13:53:53   8   during the class period.

13:53:55   9           MR. HARRISON:   Q.   Are they relevant to

13:53:56   10   your analysis of loss causation?

13:53:59   11           MR. HEFFELFINGER:   Same objections.

13:54:05   12           THE WITNESS:   Not to the analysis that I

13:54:06   13   did that pertains to the class period.

13:54:10   14           MR. HARRISON:   Q.   And why did you limit

13:54:11   15   your analysis of loss causation to the date -- the

13:54:18   16   last date of the class period?

13:54:29   17       A.   Well, my analysis is limited to the price

13:54:34   18   inflation of the stock during the class period and

13:54:36   19   not price inflation that may be in the -- I said

13:54:43   20   "stock," but actually in the ADSs that may be there

13:54:46   21   after the class period.   I didn't do an analysis of

13:54:49   22   anything that may or may not have affected price

13:54:55   23   inflation after the end of the class period.

13:54:58   24       Q.   And to you, those disclosures after the

13:55:02   25   class period are not relevant to your analysis of

JANE D.  NETTESHEIM

Page 132

| | | |
|---|---|---|
| 13:55:04 | 1 | loss causation? |
| 13:55:06 | 2 | MR. HEFFELFINGER:  Same objections. |
| 13:55:11 | 3 | THE WITNESS:  Yeah, I determined that I -- |
| 13:55:15 | 4 | I mean, I have provided information.  I looked at |
| 13:55:18 | 5 | what happened after the class period but determined |
| 13:55:20 | 6 | that that wasn't relevant to a determination of loss |
| 13:55:25 | 7 | causation or price inflation in the class period. |
| 13:55:29 | 8 | MR. HARRISON:  Q.  It wasn't relevant to |
| 13:55:30 | 9 | your determination of when all fraud-related |
| 13:55:34 | 10 | information was fully disclosed to the market? |
| 13:55:38 | 11 | MR. HEFFELFINGER:  Object to form. |
| 13:55:39 | 12 | THE WITNESS:  As I said earlier, I haven't |
| 13:55:40 | 13 | made a determination as to when all fraud-related |
| 13:55:43 | 14 | information was fully disclosed to the market. |
| 13:55:46 | 15 | MR. HARRISON:  Okay.  We have a minute |
| 13:55:48 | 16 | left on the tape so I think we should change before |
| 13:55:50 | 17 | I direct you to a new paragraph. |
| 13:55:52 | 18 | THE VIDEOGRAPHER:  This marks the end of |
| 13:55:54 | 19 | Tape Number 2 in the deposition of Jane Nettesheim. |
| 13:56:01 | 20 | Going off the record.  The time is 1:56. |
| 13:56:05 | 21 | (Recess was taken.) |
| 14:00:20 | 22 | THE VIDEOGRAPHER:  This marks the |
| 14:00:21 | 23 | beginning of Tape Number 3 in the deposition of Jane |
| 14:00:24 | 24 | Nettesheim.  Going back on the record.  The time is |
| 14:00:26 | 25 | 2:00. |

58980aa7-4ab1-4bbc-9ea2-405d025aac3f

JANE D.   NETTESHEIM

Page 133

| | | |
|---|---|---|
| 14:00:30 | 1 | MR. HARRISON:   Q.   If you look at your |
| 14:00:36 | 2 | report, Appendix B at paragraph 2, page B1.  Are you |
| 14:00:50 | 3 | there? |
| 14:00:50 | 4 | A.   Yes. |
| 14:00:53 | 5 | Q.   You see at the bottom of that paragraph |
| 14:00:57 | 6 | where you note that the company raised its |
| 14:01:03 | 7 | third-quarter revenue estimate due to |
| 14:01:05 | 8 | higher-than-expected wafer shipments? |
| 14:01:10 | 9 | A.   Yes. |
| 14:01:13 | 10 | Q.   And is it your opinion that this |
| 14:01:15 | 11 | information concerning wafer shipments is not |
| 14:01:18 | 12 | related to the allegations of fraud in this case? |
| 14:01:25 | 13 | A.   I don't really have an opinion on that.  I |
| 14:01:31 | 14 | would say the increase in the revenue estimate is |
| 14:01:33 | 15 | not.  I don't know to what extent wafer shipments |
| 14:01:39 | 16 | are affected by the inventory.  I don't know that. |
| 14:01:44 | 17 | Q.   Sitting here today, do you characterize -- |
| 14:01:49 | 18 | well, let me back up. |
| 14:01:51 | 19 | Sitting here today, do you have an opinion |
| 14:01:53 | 20 | one way or the other whether announcements of |
| 14:01:56 | 21 | increased revenue based on higher-than-expected |
| 14:02:00 | 22 | wafer shipments are related to the allegations of |
| 14:02:03 | 23 | fraud in this case? |
| 14:02:05 | 24 | MR. HEFFELFINGER:  Vague, ambiguous, |
| 14:02:07 | 25 | overbroad. |

JANE D.   NETTESHEIM

Page 134

| | | |
|---|---|---|
| 14:02:09 | 1 | THE WITNESS:  No, I don't. |
| 14:02:11 | 2 | MR. HARRISON:   Q.   In paragraph 4 of |
| 14:02:12 | 3 | Appendix B, you describe an October 10th, 2007 |
| 14:02:21 | 4 | disclosure that LDK had signed, a three-year |
| 14:02:27 | 5 | contract to supply wafers to Chinalight Solar; do |
| 14:02:30 | 6 | you see that? |
| 14:02:31 | 7 | A.   Yes. |
| 14:02:32 | 8 | Q.   You note that these types of contracts are |
| 14:02:35 | 9 | related to the allegations? |
| 14:02:36 | 10 | MR. HEFFELFINGER:   Objection.  Lacks |
| 14:02:38 | 11 | foundation, assumes facts not in evidence. |
| 14:02:45 | 12 | THE WITNESS:  Yes, I say that. |
| 14:02:57 | 13 | MR. HARRISON:   Q.   How do you reconcile -- |
| 14:03:03 | 14 | okay. |
| 14:03:06 | 15 | You note that this announcement was |
| 14:03:09 | 16 | related to the allegations, right? |
| 14:03:16 | 17 | A.   Yes. |
| 14:03:17 | 18 | Q.   So wouldn't you agree that an announcement |
| 14:03:20 | 19 | of revised third-quarter revenue relating to |
| 14:03:23 | 20 | higher-than-expected wafer shipments is also related |
| 14:03:26 | 21 | to the alleged fraud in this case? |
| 14:03:30 | 22 | A.   Well, the contracts were specifically |
| 14:03:33 | 23 | referenced by the company as evidence that they |
| 14:03:35 | 24 | didn't have inventory problems.  So that was just a |
| 14:03:38 | 25 | reference to what -- the company's characterization |

58980aa7-4ab1-4bbc-9ea2-405d025aac3f

JANE D.   NETTESHEIM

Page 135

14:03:44    1    of what these new contracts meant.

14:03:51    2            Q.   So your opinion is that they are related

14:03:54    3    because the company touted them as evidence that

14:03:59    4    there were no inventory problems?

14:04:01    5            A.   Yes, just to that extent.

14:04:03    6            Q.   Just to that extent.

14:04:07    7            Is it your opinion that the disclosure on

14:04:10    8    October 9 about higher-than-expected wafer shipments

14:04:16    9    changed investors' perceptions about the company's

14:04:20    10   true financial condition?

14:04:21    11           MR. HEFFELFINGER:   Objection to

14:04:25    12   foundation, assumes facts not in evidence.

14:04:32    13           THE WITNESS:   Yeah, I think it gave the

14:04:34    14   market more information about the financial

14:04:35    15   conditions so it certainly could have changed

14:04:38    16   perceptions about the financial condition.

14:04:41    17           MR. HARRISON:   Q.   Earlier, we discussed

14:04:43    18   your discussion of corrective disclosures and we

14:04:49    19   talked a little bit about how you defined that.   I

14:04:52    20   just want to get a little more flavor for the

14:04:55    21   parameters that you place around what constitutes a

14:04:58    22   corrective disclosure.

14:05:00    23           So would you agree with me that for a

14:05:02    24   disclosure to be corrective it has to contain new

14:05:05    25   company-specific information?

JANE D.   NETTESHEIM

Page 136

| | | |
|---|---|---|
| 14:05:07 | 1 | A.    Among other things, but yes. |
| 14:05:09 | 2 | Q.    What other things? |
| 14:05:11 | 3 | A.    Well, in this context to be a corrective |
| 14:05:15 | 4 | disclosure that information has to be related to the |
| 14:05:17 | 5 | allegations. |
| 14:05:19 | 6 | Q.    What about a disclosure that merely |
| 14:05:21 | 7 | repeats information that's already in the |
| 14:05:24 | 8 | marketplace, can that generally constitute a |
| 14:05:27 | 9 | corrective disclosure? |
| 14:05:28 | 10 | A.    It can if in addition to repeating the |
| 14:05:32 | 11 | information there's analysis or a different -- |
| 14:05:37 | 12 | information that would provide some evidence as to |
| 14:05:38 | 13 | the value of information that would be new to the |
| 14:05:42 | 14 | market.  That could be a corrective disclosure. |
| 14:05:46 | 15 | Q.    Let me break that down.  You say |
| 14:05:48 | 16 | "analysis," what do you mean by that? |
| 14:05:52 | 17 | A.    There could be somebody's -- an analyst's |
| 14:05:56 | 18 | interpretation of the value of a particular piece of |
| 14:05:59 | 19 | news that came out earlier, that would be |
| 14:06:01 | 20 | essentially new information but it would be based on |
| 14:06:04 | 21 | previously disclosed information. |
| 14:06:07 | 22 | Q.    So it's your opinion that an analyst's |
| 14:06:10 | 23 | interpretation of previously disclosed information |
| 14:06:13 | 24 | can constitute new information as it pertains to the |
| 14:06:19 | 25 | definition of a corrective disclosure? |

58980aa7-4ab1-4bbc-9ea2-405d025aac3f

JANE D.   NETTESHEIM

Page 137

14:06:22     1          A.   Yes, because it would be new information.

14:06:24     2     But that is an example of something that could

14:06:28     3     happen.

14:06:34     4          Q.   Okay.  And then in your earlier answer you

14:06:37     5     also said that it could constitute -- repeating old

14:06:41     6     information could also constitute a corrective

14:06:44     7     disclosure if it provides some evidence as to the

14:06:47     8     value of previously disclosed information; is that a

14:06:51     9     fair characterization?

14:06:57    10          A.   If there is additional information as to

14:06:59    11     the value of some previously disclosed piece of

14:07:05    12     information, that could be a corrective disclosure

14:07:07    13     because there would be new -- it would still be

14:07:11    14     related to analysis, but there would be some new

14:07:17    15     information out there as to value.

14:07:20    16          Q.   When you use the term "value," how are you

14:07:22    17     using that in your answer?

14:07:24    18          A.   Financial value, like -- could make an

14:07:28    19     asset worth more or less than maybe what somebody

14:07:33    20     previously thought.

14:07:38    21          Q.   As opposed to an analyst's, for example,

14:07:44    22     interpretation or opinion about the value of the

14:07:48    23     previously disclosed information?

14:07:51    24          A.   Well, that could be -- I mean, that could

14:07:53    25     be part of it.  It could be an analyst who has

58980aa7-4ab1-4bbc-9ea2-405d025aac3f

JANE D.   NETTESHEIM

Page 138

| | | |
|---|---|---|
| 14:07:57 | 1 | provided their opinion on the value of some |
| 14:07:59 | 2 | previously disclosed piece of information. |
| 14:08:04 | 3 | Q.   So is it your opinion that an analyst who |
| 14:08:08 | 4 | provides his or her opinion about previously |
| 14:08:14 | 5 | disclosed information can constitute new information |
| 14:08:18 | 6 | as you define a corrective disclosure? |
| 14:08:23 | 7 | MR. HEFFELFINGER:   That is a |
| 14:08:24 | 8 | mischaracterization of her testimony. |
| 14:08:30 | 9 | MR. HARRISON:   Q.   True? |
| 14:08:31 | 10 | A.   That is -- that could be a corrective |
| 14:08:33 | 11 | disclosure. |
| 14:08:35 | 12 | Q.   For a disclosure to be corrective, it has |
| 14:08:41 | 13 | to contain information that's material to investors, |
| 14:08:45 | 14 | right? |
| 14:08:48 | 15 | A.   As I would use the term "material," I |
| 14:08:50 | 16 | would say yes. |
| 14:08:52 | 17 | Q.   And because you said it, I'll ask how do |
| 14:08:56 | 18 | you use the term "material"? |
| 14:08:58 | 19 | A.   That it would be a piece of information |
| 14:08:59 | 20 | that investors would want to know that would be |
| 14:09:03 | 21 | important to them in making investment decisions. |
| 14:09:10 | 22 | Q.   So is it your opinion that a rational |
| 14:09:15 | 23 | investor in August 2007 would want to know about |
| 14:09:28 | 24 | Charlie Situ's allegations that were disclosed in |
| 14:09:31 | 25 | early October 2007? |

58980aa7-4ab1-4bbc-9ea2-405d025aac3f

JANE D.   NETTESHEIM

Page 139

| 14:09:37 | 1 | A.   I think an investor in August 2007 would |
| 14:09:40 | 2 | want to know -- would be interested in knowing, to |
| 14:09:47 | 3 | the extent that the financial statements were not |
| 14:09:50 | 4 | fairly presented, I think an investor would want to |
| 14:09:53 | 5 | know that. |
| 14:09:55 | 6 | Q.   Okay.  So it's your opinion that an |
| 14:09:57 | 7 | investor would have acted had he or she known -- let |
| 14:10:01 | 8 | me back up. |
| 14:10:02 | 9 | It's your opinion an investor in August of |
| 14:10:05 | 10 | 2007 would have acted had he or she known of Charlie |
| 14:10:08 | 11 | Situ's allegations at that time? |
| 14:10:11 | 12 | MR. HEFFELFINGER:  Mischaracterizes her |
| 14:10:13 | 13 | testimony. |
| 14:10:15 | 14 | THE WITNESS:  I don't know how a |
| 14:10:16 | 15 | particular investor would have acted. |
| 14:10:28 | 16 | MR. HARRISON:  Q.   Is it your opinion that |
| 14:10:31 | 17 | a rational investor as of August 2007 would have |
| 14:10:36 | 18 | wanted to know that an independent audit of LDK's |
| 14:10:41 | 19 | inventory would show no material inventory |
| 14:10:44 | 20 | discrepancies as of that date? |
| 14:10:47 | 21 | MR. HEFFELFINGER:  Assumes facts not in |
| 14:10:49 | 22 | evidence. |
| 14:10:51 | 23 | THE WITNESS:  I think it -- in general, an |
| 14:10:54 | 24 | investor would want to know -- I think investors |
| 14:11:01 | 25 | assume that financial statements are fairly |

58980aa7-4ab1-4bbc-9ea2-405d025aac3f

JANE D.  NETTESHEIM

Page 140

14:11:03      1      presented and they would want to know if -- they

14:11:09      2      would want to know if those financial statements

14:11:11      3      were, in fact, not fairly presented.

14:11:16      4            MR. HARRISON:  Q.  So an independent

14:11:20      5      investigation finding that a company's -- or let's

14:11:28      6      say an independent investigation finding that LDK's

14:11:32      7      inventory was not materially overstated during the

14:11:35      8      class period, would that be material to an investor

14:11:39      9      during the class period?

14:11:40     10            MR. HEFFELFINGER:  Incomplete

14:11:41     11      hypothetical, assumes facts not in evidence.

14:11:51     12            THE WITNESS:  Well, I think any

14:11:52     13      information that goes to the value of the company is

14:11:55     14      information that an investor would want to know

14:11:58     15      during the class period.

14:12:06     16            MR. HARRISON:  Q.  Okay.  Is it your

14:12:14     17      opinion that a story reported in a newspaper can

14:12:18     18      constitute a corrective disclosure under your

14:12:21     19      definition of that term?

14:12:26     20            A.  It can.

14:12:27     21            Q.  How about an editorial in a newspaper?

14:12:33     22            A.  I think that could.

14:12:34     23            Q.  How about an article in a tabloid?

14:12:41     24            MR. HEFFELFINGER:  Objection.  Lacks

14:12:41     25      foundation.

58980aa7-4ab1-4bbc-9ea2-405d025aac3f

JANE D.   NETTESHEIM

Page 141

| | | |
|---|---|---|
| 14:12:43 | 1 | THE WITNESS:  I think it depends on the |
| 14:12:44 | 2 | information, but I think it could. |
| 14:12:47 | 3 | MR. HARRISON:  Q.  And when you say, "it |
| 14:12:48 | 4 | depends on the information," what parameters are you |
| 14:12:51 | 5 | drawing around that? |
| 14:12:57 | 6 | A.  I don't have any parameters around that. |
| 14:13:00 | 7 | Q.  It just depends on the facts specific to |
| 14:13:04 | 8 | each case? |
| 14:13:06 | 9 | A.  I think in all cases it depends on the |
| 14:13:10 | 10 | facts. |
| 14:13:10 | 11 | Q.  I'm just trying to make sure I understand |
| 14:13:13 | 12 | your definition of the term generally so I |
| 14:13:15 | 13 | understand. |
| 14:13:18 | 14 | Now, under your definition of a corrective |
| 14:13:21 | 15 | disclosure, would you give the same weight to |
| 14:13:24 | 16 | something reported by an unidentified source as you |
| 14:13:26 | 17 | would to something reported directly by the company? |
| 14:13:36 | 18 | A.  Well, I think -- |
| 14:13:40 | 19 | MR. HEFFELFINGER:  Vague and ambiguous. |
| 14:13:41 | 20 | Sorry. |
| 14:13:44 | 21 | THE WITNESS:  I think in general, the |
| 14:13:47 | 22 | market puts a great deal of weight on statements |
| 14:13:52 | 23 | that come from companies.  And then I think in terms |
| 14:13:55 | 24 | of unidentified sources, I think it would depend on |
| 14:13:58 | 25 | the circumstances. |

JANE D.   NETTESHEIM

Page 142

| | | |
|---|---|---|
| 14:14:02 | 1 | MR. HARRISON:  Q.  So is it your opinion |
| 14:14:03 | 2 | that investors would give greater weight to |
| 14:14:06 | 3 | information reported directly by a company? |
| 14:14:12 | 4 | MR. HEFFELFINGER:  Vague, ambiguous. |
| 14:14:17 | 5 | THE WITNESS:  I think it would depend on |
| 14:14:21 | 6 | circumstances, but I think investors listen to |
| 14:14:24 | 7 | statements from companies. |
| 14:14:28 | 8 | MR. HARRISON:  Q.  Generally, would you |
| 14:14:29 | 9 | give it more weight? |
| 14:14:31 | 10 | A.  Again, I think it would depend on the |
| 14:14:33 | 11 | circumstances. |
| 14:14:34 | 12 | Q.  Is it fair to say that you believe that |
| 14:14:36 | 13 | the revelation of an uncorroborated statement about |
| 14:14:40 | 14 | a company to the market can constitute a corrective |
| 14:14:43 | 15 | disclosure? |
| 14:14:48 | 16 | A.  Again, that's so open-ended.  I think it |
| 14:14:51 | 17 | depends. |
| 14:14:59 | 18 | Q.  What does it depend on? |
| 14:15:03 | 19 | A.  The circumstances, what kind of |
| 14:15:10 | 20 | information it is, timing.  I suppose there could be |
| 14:15:15 | 21 | any number of reasons. |
| 14:15:16 | 22 | Q.  What sort of factors, in your opinion, |
| 14:15:18 | 23 | would render an uncorroborated statement about a |
| 14:15:22 | 24 | company to the market not a corrective disclosure? |
| 14:15:25 | 25 | MR. HEFFELFINGER:  Vague, overbroad. |

58980aa7-4ab1-4bbc-9ea2-405d025aac3f

JANE D.   NETTESHEIM

Page 143

| | | |
|---|---|---|
| 14:15:37 | 1 | THE WITNESS:  I suppose if it wasn't |
| 14:15:40 | 2 | reported by any entity and no one was aware of it |
| 14:15:44 | 3 | and no one cared about it. |
| 14:15:48 | 4 | MR. HARRISON:  Q.  When you say, "reported |
| 14:15:49 | 5 | by any entity," what does that mean? |
| 14:15:58 | 6 | A.  Well, if somebody says something but it's |
| 14:16:01 | 7 | not reported, it doesn't get into the market.  Your |
| 14:16:07 | 8 | question was very broad.  You're asking me to come |
| 14:16:09 | 9 | up with some hypotheticals.  I mean, there are |
| 14:16:15 | 10 | innumerable possibilities. |
| 14:16:17 | 11 | Q.  Are you prepared to discuss hypotheticals |
| 14:16:19 | 12 | today? |
| 14:16:21 | 13 | A.  I don't know.  It depends on your |
| 14:16:26 | 14 | questions. |
| 14:16:27 | 15 | Q.  Okay.  Fair enough. |
| 14:16:39 | 16 | Earlier, you said, when I asked what sort |
| 14:16:45 | 17 | of factors in your opinion would render an |
| 14:16:47 | 18 | uncorroborated statement about a company to the |
| 14:16:49 | 19 | market not a corrective disclosure, you said, "I |
| 14:16:52 | 20 | suppose if it wasn't reported by any entity and no |
| 14:16:55 | 21 | one was aware of it and no one cared about it." |
| 14:16:58 | 22 | When you said "no one cared about it," what do you |
| 14:17:01 | 23 | mean by that? |
| 14:17:02 | 24 | A.  I suppose you could make a statement and |
| 14:17:04 | 25 | if it was completely innocuous -- could potentially |

58980aa7-4ab1-4bbc-9ea2-405d025aac3f

JANE D.   NETTESHEIM

Page 144

14:17:11    1    be statements out there that no one cares about.  I

14:17:14    2    don't know.  I don't have anything in particular in

14:17:16    3    mind.

14:17:16    4         Q.   Are you referring to whether or not it's

14:17:18    5    material to an investor?

14:17:20    6         A.   No, I wasn't referring to anything.

14:17:22    7         Q.   All right.

14:17:38    8              Earlier, we discussed your opinion that

14:17:44    9    partial disclosures -- partial corrective

14:17:48    10   disclosures occurred on October 3rd, 4th, and 8th,

14:17:51    11   right, of 2007?

14:17:52    12        A.   Yes.

14:17:58    13        Q.   Do your reports identify which of the

14:18:02    14   specific alleged false statements in the complaint

14:18:05    15   were corrected by each of the alleged corrective

14:18:07    16   disclosures?

14:18:11    17             MR. HEFFELFINGER:  Asked and answered,

14:18:12    18   reports speak for themselves.

14:18:17    19             THE WITNESS:  Well, I provide a summary of

14:18:19    20   the misrepresentations and then I discuss the

14:18:21    21   corrective disclosures.  And so in terms of the --

14:18:30    22   so I do discuss what part -- why I think the

14:18:36    23   disclosures on the 3rd, 4th, and 8th of October are

14:18:39    24   corrective disclosures.

14:18:42    25             MR. HARRISON:  Q.  Okay.  Do you opine on

JANE D.   NETTESHEIM

Page 145

| | | |
|---|---|---|
| 14:18:43 | 1 | whether -- do you offer an opinion on which of the |
| 14:18:48 | 2 | alleged specific misrepresentations made by the |
| 14:18:53 | 3 | company during the class period were corrected by |
| 14:18:56 | 4 | each partial disclosure that you identified? |
| 14:19:00 | 5 | MR. HEFFELFINGER:  It's vague and |
| 14:19:01 | 6 | overbroad. |
| 14:19:02 | 7 | THE WITNESS:  Well, I think earlier I said |
| 14:19:03 | 8 | I don't have -- I don't enumerate the |
| 14:19:07 | 9 | misrepresentations.  So if you have a specific one |
| 14:19:09 | 10 | in mind, you can share that with me, but I'm not |
| 14:19:13 | 11 | sure what you mean by "specific misrepresentations." |
| 14:19:16 | 12 | MR. HARRISON:  Q.  I'm talking about -- |
| 14:19:20 | 13 | you've analyzed the specific statements by the |
| 14:19:23 | 14 | company that the plaintiffs allege were false in |
| 14:19:27 | 15 | this case, right? |
| 14:19:31 | 16 | A.  Yes. |
| 14:19:31 | 17 | Q.  And my question is have you tied any |
| 14:19:35 | 18 | corrective disclosure on October 3rd, 4th, and 8th |
| 14:19:39 | 19 | to each of those specific misrepresentations? |
| 14:19:46 | 20 | A.  Well, as I've said -- |
| 14:19:48 | 21 | MR. HEFFELFINGER:  Vague and overbroad. |
| 14:19:50 | 22 | THE WITNESS:  I don't know what you mean |
| 14:19:53 | 23 | by "specific misrepresentations."  I've provided my |
| 14:19:57 | 24 | understanding of the misrepresentations.  I see them |
| 14:20:00 | 25 | as a related group. |

58980aa7-4ab1-4bbc-9ea2-405d025aac3f

JANE D.   NETTESHEIM

Page 146

| | | |
|---|---|---|
| 14:20:02 | 1 | MR. HARRISON:  Q.  So you're considering |
| 14:20:04 | 2 | all of the misrepresentations that are identified in |
| 14:20:07 | 3 | the complaint by the defendants in this case as |
| 14:20:10 | 4 | interrelated? |
| 14:20:16 | 5 | MR. HEFFELFINGER:  Objection.  Vague, |
| 14:20:17 | 6 | ambiguous, and object to form. |
| 14:20:21 | 7 | THE WITNESS:  You mean as identified by |
| 14:20:24 | 8 | plaintiffs? |
| 14:20:25 | 9 | MR. HARRISON:  Q.  In the complaint, yes. |
| 14:20:34 | 10 | I misspoke, you're right.  I said defendants.  What |
| 14:20:37 | 11 | I meant was the misstatements by the defendants that |
| 14:20:39 | 12 | are identified by the plaintiffs.  So I can repeat |
| 14:20:43 | 13 | it if I could -- |
| 14:20:46 | 14 | A.   Go ahead and repeat it. |
| 14:20:49 | 15 | Q.   I will. |
| 14:20:50 | 16 | So you're considering all of the |
| 14:20:52 | 17 | misrepresentations that are identified by plaintiffs |
| 14:20:55 | 18 | in the complaint attributed to the defendants in |
| 14:20:59 | 19 | this case as interrelated? |
| 14:21:02 | 20 | A.   Yes, I see the misrepresentations as |
| 14:21:04 | 21 | interrelated, yes. |
| 14:21:06 | 22 | Q.   And you haven't gone back to the complaint |
| 14:21:07 | 23 | and looked at each specific misrepresentation on |
| 14:21:12 | 24 | each date that's identified by the plaintiffs and |
| 14:21:14 | 25 | try to determine when that statement was corrected |

JANE D.   NETTESHEIM

Page 147

| | | |
|---|---|---|
| 14:21:18 | 1 | on one of the disclosure dates that you identify, |
| 14:21:21 | 2 | right? |
| 14:21:21 | 3 | MR. HEFFELFINGER:  Vague and overbroad. |
| 14:21:23 | 4 | THE WITNESS:  Well, I see them as related. |
| 14:21:26 | 5 | And so to that extent, they were all partially |
| 14:21:31 | 6 | corrected beginning on October 3rd and that also |
| 14:21:35 | 7 | applies to October 4th and October 8th. |
| 14:21:39 | 8 | MR. HARRISON:  Q.  So the answer is you |
| 14:21:40 | 9 | have not gone back to the complaint to identify each |
| 14:21:43 | 10 | specific false statement identified by the |
| 14:21:47 | 11 | plaintiffs and determined on which date that |
| 14:21:50 | 12 | statement was corrected on October 3rd, 4th, or 8th? |
| 14:21:55 | 13 | MR. HEFFELFINGER:  Mischaracterizes |
| 14:21:56 | 14 | testimony. |
| 14:21:59 | 15 | THE WITNESS:  Oh, I don't know which |
| 14:22:01 | 16 | specific -- when you say "specific |
| 14:22:03 | 17 | misrepresentation," I don't know what you're |
| 14:22:04 | 18 | referring to.  As I said, I've provided my |
| 14:22:09 | 19 | understanding of the misstatements and I see it as a |
| 14:22:12 | 20 | related group of misstatements. |
| 14:22:16 | 21 | MR. HARRISON:  Q.  When I say "specific |
| 14:22:17 | 22 | misrepresentation," I mean that the statements |
| 14:22:24 | 23 | attributed to each date in the complaint that the |
| 14:22:29 | 24 | plaintiffs claim were false.  And my question is |
| 14:22:33 | 25 | have you gone and looked at each date and each |

58980aa7-4ab1-4bbc-9ea2-405d025aac3f

JANE D.   NETTESHEIM

Page 148

| | | |
|---|---|---|
| 14:22:38 | 1 | statement that the plaintiffs claim was false on |
| 14:22:40 | 2 | that date and identified when that statement was |
| 14:22:47 | 3 | corrected on October 3rd, 4th, or 8th? |
| 14:22:51 | 4 | MR. HEFFELFINGER:  Asked and answered. |
| 14:22:53 | 5 | THE WITNESS:  I think the misstatements |
| 14:22:56 | 6 | were partially -- misstatements were partially |
| 14:23:00 | 7 | corrected beginning on October 3rd.  So there were |
| 14:23:03 | 8 | partial corrective disclosures with respect to the |
| 14:23:07 | 9 | misstatements on October 3rd, October 4th, and |
| 14:23:09 | 10 | October 8th. |
| 14:23:10 | 11 | MR. HARRISON:  Q.  Is it your opinion that |
| 14:23:11 | 12 | all of the misstatements, the specific misstatements |
| 14:23:13 | 13 | that the plaintiffs attribute to the defendants in |
| 14:23:15 | 14 | the complaint were partially corrected on |
| 14:23:19 | 15 | October 3rd? |
| 14:23:21 | 16 | MR. HEFFELFINGER:  Asked and answered. |
| 14:23:27 | 17 | THE WITNESS:  As I said, based on my |
| 14:23:30 | 18 | summary, my understanding of the allegations, I |
| 14:23:33 | 19 | would say that that group of misstatements was |
| 14:23:36 | 20 | partially corrected on October 3rd. |
| 14:23:44 | 21 | MR. HARRISON:  Q.  Let's talk about |
| 14:23:45 | 22 | October 3rd.  You are familiar with the October 3rd, |
| 14:23:48 | 23 | 2007 PiperJaffray report concerning LDK, right? |
| 14:23:55 | 24 | A.   Yes. |
| 14:23:57 | 25 | Q.   You agree that the October 3rd, 2007 |

58980aa7-4ab1-4bbc-9ea2-405d025aac3f

JANE D.   NETTESHEIM

Page 149

| | | |
|---|---|---|
| 14:23:59 | 1 | PiperJaffray report's revelation of Charlie Situ's |
| 14:24:05 | 2 | claims was unsubstantiated on that date? |
| 14:24:09 | 3 | MR. HEFFELFINGER:  Assumes facts not in |
| 14:24:11 | 4 | evidence. |
| 14:24:12 | 5 | THE WITNESS:  I don't know what you mean |
| 14:24:13 | 6 | by "unsubstantiated." |
| 14:24:16 | 7 | MR. HARRISON:  Let me mark it. |
| 14:24:44 | 8 | (Whereupon Exhibit 1010 was |
| 14:24:44 | 9 | marked for identification.) |
| 14:25:01 | 10 | MR. HARRISON:  Q.  And I've marked as |
| 14:25:03 | 11 | Exhibit 1010 the October 3rd, 2007 PiperJaffray |
| 14:25:07 | 12 | report entitled, "LDK Solar Update; Takeaways From |
| 14:25:14 | 13 | Management Meetings"; do you see that? |
| 14:25:17 | 14 | A.   Yes. |
| 14:25:17 | 15 | Q.   And you see that under the three bullet |
| 14:25:22 | 16 | points -- below the three bullet points under "Key |
| 14:25:27 | 17 | Points," there's a heading that is in bold, it says, |
| 14:25:29 | 18 | "Allegations from Former Controller." |
| 14:25:32 | 19 | A.   Yes. |
| 14:25:33 | 20 | Q.   You see that?  And at the bottom of that |
| 14:25:37 | 21 | it says, We have spoken to the LDK CFO about these |
| 14:25:41 | 22 | claims and have found no reason/proof to dispute |
| 14:25:44 | 23 | management's claim of 1,000 metric tons of |
| 14:25:48 | 24 | polysilicon and inventory/WIP; do you see that? |
| 14:25:53 | 25 | A.   Yes, I do. |

58980aa7-4ab1-4bbc-9ea2-405d025aac3f

JANE D.   NETTESHEIM

Page 150

| | | |
|---|---|---|
| 14:25:54 | 1 | Q.   Would you agree with that, that that |
| 14:25:57 | 2 | indicates that PiperJaffray could not substantiate |
| 14:26:01 | 3 | the claims made on October 3rd that it reported from |
| 14:26:04 | 4 | Charlie Situ? |
| 14:26:06 | 5 | MR. HEFFELFINGER:  Lacks foundation. |
| 14:26:07 | 6 | THE WITNESS:  I would say that |
| 14:26:08 | 7 | PiperJaffray was unable to substantiate the claims |
| 14:26:12 | 8 | through the CFO. |
| 14:26:13 | 9 | MR. HARRISON:  Q.  Are you aware of any |
| 14:26:14 | 10 | other procedures that PiperJaffray performed to try |
| 14:26:18 | 11 | and substantiate those claims? |
| 14:26:25 | 12 | A.   I'm not sure specifically what they did. |
| 14:26:27 | 13 | Q.   So you're interpreting that sentence that |
| 14:26:29 | 14 | I just read as the only way that PiperJaffray |
| 14:26:31 | 15 | attempted to substantiate those claims was speaking |
| 14:26:35 | 16 | to the CFO? |
| 14:26:39 | 17 | MR. HEFFELFINGER:  Mischaracterizes the |
| 14:26:41 | 18 | testimony. |
| 14:26:42 | 19 | THE WITNESS:  No, I'm just reading the |
| 14:26:43 | 20 | sentence.  You read the sentence into the record and |
| 14:26:50 | 21 | I said, yes, I see that.  And they said they have |
| 14:26:52 | 22 | spoken to the LDK CFO. |
| 14:26:55 | 23 | MR. HARRISON:  Q.  Well, you said, "I |
| 14:26:57 | 24 | would say that PiperJaffray was unable to |
| 14:27:00 | 25 | substantiate the claims through the CFO," right? |

JANE D.   NETTESHEIM

Page 151

| | | |
|---|---|---|
| 14:27:03 | 1 | A.   Yes. |
| 14:27:04 | 2 | Q.   So that's how you're interpreting that |
| 14:27:06 | 3 | sentence? |
| 14:27:09 | 4 | MR. HEFFELFINGER:  Vague and ambiguous. |
| 14:27:09 | 5 | What sentence?  You just offered an interpretation, |
| 14:27:13 | 6 | her interpretation of another sentence, right, or |
| 14:27:15 | 7 | are you saying that's the sentence that's being |
| 14:27:18 | 8 | interpreted? |
| 14:27:19 | 9 | MR. HARRISON:  I'm referring to a sentence |
| 14:27:20 | 10 | that I read into the record that she answered the |
| 14:27:23 | 11 | question about, which is, We have spoken to the LDK |
| 14:27:25 | 12 | CFO about these claims and have found no |
| 14:27:28 | 13 | reason/proof to dispute management's claims of 1,000 |
| 14:27:35 | 14 | metric tons of polysilicon in inventory/WIP. |
| 14:27:41 | 15 | THE WITNESS:  I'm sorry, what's the |
| 14:27:42 | 16 | question? |
| 14:27:43 | 17 | MR. HEFFELFINGER:  Asked and answered. |
| 14:27:53 | 18 | MR. HARRISON:  Q.  You're interpreting |
| 14:27:54 | 19 | that sentence to mean that PiperJaffray attempted to |
| 14:27:59 | 20 | substantiate the claims through LDK's CFO? |
| 14:28:08 | 21 | A.   Based on my reading of it, I would say |
| 14:28:10 | 22 | that they tried that, yes. |
| 14:28:12 | 23 | Q.   Was this disclosure about Charlie Situ's |
| 14:28:16 | 24 | allegations substantiated on October 3rd, 2007? |
| 14:28:22 | 25 | A.   I don't know. |

58980aa7-4ab1-4bbc-9ea2-405d025aac3f

JANE D.  NETTESHEIM

Page 152

14:28:22    1           MR. HEFFELFINGER:  Lacks foundation,

14:28:23    2    assumes facts not in evidence.

14:28:34    3           MR. HARRISON:  Q.  Are you aware of other

14:28:35    4    analyst reports published on October 3rd and 4th,

14:28:37    5    2007 that indicated that Mr. Situ's allegations were

14:28:42    6    uncorroborated?

14:28:48    7       A.   Well, I'm aware of other analysts that

14:28:50    8    said that they were aware of the allegations but

14:28:53    9    that they had also checked with the company and

14:28:59    10   there was no confirmation from the company about

14:29:02    11   certain allegations.

14:29:04    12      Q.   Those disclosures specifically say that

14:29:05    13   they checked with the company?

14:29:08    14          MR. HEFFELFINGER:  Vague and ambiguous,

14:29:11    15   overbroad.

14:29:12    16          THE WITNESS:  I don't remember

14:29:12    17   specifically, but I thought there was an analyst

14:29:15    18   report that referred to conversations with

14:29:16    19   management or something to that effect but I don't

14:29:20    20   have anything specific in mind.

14:29:32    21          MR. HARRISON:  Q.  Is it your opinion that

14:29:34    22   all of the allegation-specific information contained

14:29:37    23   in the PiperJaffray report is information that was

14:29:41    24   not previously disclosed to the market?

14:29:44    25          MR. HEFFELFINGER:  Vague, overbroad.

58980aa7-4ab1-4bbc-9ea2-405d025aac3f

JANE D.   NETTESHEIM

Page 153

| | | |
|---|---|---|
| 14:29:50 | 1 | THE WITNESS:  I think there were -- I |
| 14:29:54 | 2 | think on this day this information was coming out |
| 14:29:57 | 3 | into the market.  I think there was information to |
| 14:29:59 | 4 | that effect.  Information related to the allegations |
| 14:30:02 | 5 | was coming out into the market. |
| 14:30:06 | 6 | MR. HARRISON:  Q.  And the |
| 14:30:08 | 7 | allegation-related information contained in this |
| 14:30:15 | 8 | analyst report, was that information that was |
| 14:30:17 | 9 | revealed to the market before, in your opinion? |
| 14:30:21 | 10 | MR. HEFFELFINGER:  Vague and overbroad. |
| 14:30:24 | 11 | THE WITNESS:  I think from what I've seen |
| 14:30:26 | 12 | that this information was starting to come out into |
| 14:30:31 | 13 | the market, that the PiperJaffray report was the |
| 14:30:33 | 14 | first analyst report out that talked about it |
| 14:30:36 | 15 | specifically, but that the information that was |
| 14:30:40 | 16 | contained in the e-mails and spreadsheets and |
| 14:30:43 | 17 | whatever Mr. Situ had sent out was starting to come |
| 14:30:47 | 18 | into the market that day and possibly through other |
| 14:30:50 | 19 | means. |
| 14:30:57 | 20 | MR. HARRISON:  Q.  If you look at your |
| 14:30:58 | 21 | report at paragraph 31.  Are you there? |
| 14:31:13 | 22 | A.  Yes. |
| 14:31:14 | 23 | Q.  The first sentence says, News commentators |
| 14:31:17 | 24 | and analysts attributed the drop in the price of |
| 14:31:21 | 25 | LDK's ADS on October 3rd to the information |

58980aa7-4ab1-4bbc-9ea2-405d025aac3f

JANE D.  NETTESHEIM

Page 154

14:31:23   1       contained in the PiperJaffray report regarding

14:31:26   2       allegations of poor internal controls and inventory

14:31:28   3       discrepancies; do you see that?

14:31:32   4           A.   Yes.

14:31:37   5           Q.   And are you aware that the PiperJaffray

14:31:43   6       report on October 3rd discussed allegations that the

14:31:47   7       company had poor financial controls?

14:31:58   8                I'll save you some time.  If you look at

14:32:00   9       the paragraph describing allegations from former

14:32:03   10      controller that we looked at earlier --

14:32:03   11          A.   Okay.

14:32:04   12          Q.   Do you see the description there of poor

14:32:08   13      financial controls?

14:32:08   14               MR. HEFFELFINGER:  The document speaks for

14:32:09   15      itself.

14:32:10   16               THE WITNESS:  I see the words "poor

14:32:11   17      financial controls," yes.

14:32:13   18               MR. HARRISON:  Q.  Is it your opinion that

14:32:15   19      that information about poor financial controls was

14:32:18   20      new allegation-specific information as of this date?

14:32:25   21          A.   I think this was new information, the

14:32:27   22      extent of the poor financial controls and the

14:32:33   23      possible impact on the way the inventory had been

14:32:37   24      valued.

14:32:38   25          Q.   Okay.  So you view those as related?

58980aa7-4ab1-4bbc-9ea2-405d025aac3f

JANE D.   NETTESHEIM

Page 155

| | | |
|---|---|---|
| 14:32:44 | 1 | A.   Yes. |
| 14:32:46 | 2 | Q.   Did you consider that LDK had in the past |
| 14:32:51 | 3 | disclosed a significant deficiency and other |
| 14:32:55 | 4 | weaknesses in internal controls over financial |
| 14:32:58 | 5 | reporting prior to October 3rd, 2007? |
| 14:33:04 | 6 | A.   I think it was in some financial |
| 14:33:06 | 7 | statements that came out around the time of the IPO |
| 14:33:08 | 8 | that prior to hiring certain people they had poor |
| 14:33:11 | 9 | financial controls. |
| 14:33:13 | 10 | Q.   Was this something you considered in |
| 14:33:17 | 11 | determining whether the PiperJaffray report -- I'll |
| 14:33:20 | 12 | repeat. |
| 14:33:24 | 13 | Was this something you considered in |
| 14:33:26 | 14 | determining whether the PiperJaffray report |
| 14:33:28 | 15 | disclosed new allegation-specific information with |
| 14:33:31 | 16 | respect to poor financial controls? |
| 14:33:36 | 17 | A.   I was aware of it, yes. |
| 14:33:39 | 18 | Q.   And is it your opinion that you consider |
| 14:33:42 | 19 | those to be different? |
| 14:33:48 | 20 | A.   Yes. |
| 14:33:49 | 21 | Q.   Do you describe that anywhere in your |
| 14:33:51 | 22 | report? |
| 14:33:55 | 23 | A.   I don't think so. |
| 14:33:58 | 24 | Q.   Sitting here today, you did analyze that, |
| 14:34:00 | 25 | though, as part of your loss causation analysis? |

58980aa7-4ab1-4bbc-9ea2-405d025aac3f

JANE D.  NETTESHEIM

Page 156

| | | |
|---|---|---|
| 14:34:05 | 1 | A.  Analyze what? |
| 14:34:06 | 2 | Q.  The prior financial controls deficiencies |
| 14:34:09 | 3 | that were disclosed by LDK. |
| 14:34:13 | 4 | A.  I didn't analyze it, it was part of a lot |
| 14:34:18 | 5 | of what I had read.  I didn't analyze it |
| 14:34:21 | 6 | particularly. |
| 14:34:29 | 7 | Q.  Did you consider it as part of your |
| 14:34:31 | 8 | opinion in this case? |
| 14:34:33 | 9 | MR. HEFFELFINGER:  Asked and answered. |
| 14:34:45 | 10 | THE WITNESS:  I mean, it was part of the |
| 14:34:47 | 11 | information I read.  To that extent, I considered |
| 14:34:52 | 12 | it. |
| 14:35:11 | 13 | MR. HARRISON:  Q.  Now, if you take a look |
| 14:35:12 | 14 | at the complaint which has been marked as |
| 14:35:18 | 15 | Exhibit 1004. |
| 14:35:26 | 16 | A.  Yes. |
| 14:35:26 | 17 | Q.  You have it? |
| 14:35:27 | 18 | A.  Yes. |
| 14:35:27 | 19 | Q.  At paragraph 92; do you see that? |
| 14:35:40 | 20 | A.  Yes. |
| 14:35:42 | 21 | Q.  And if you scroll back just for context on |
| 14:35:46 | 22 | page 24, Section Roman numeral V, it says, "Specific |
| 14:35:51 | 23 | False Statements"; do you see that? |
| 14:35:52 | 24 | A.  Yes. |
| 14:35:53 | 25 | Q.  And then subheading A, "LDK's IPO |

58980aa7-4ab1-4bbc-9ea2-405d025aac3f

JANE D.   NETTESHEIM

Page 157

| | | |
|---|---|---|
| 14:35:57 | 1 | Prospectus"? |
| 14:35:59 | 2 | A.   Yes. |
| 14:35:59 | 3 | Q.   And so if you look through the complaint |
| 14:36:02 | 4 | from page 24, paragraph 85, up until page 26, |
| 14:36:13 | 5 | paragraph 95, do you see that the complaint breaks |
| 14:36:16 | 6 | out various specific misstatements -- alleged |
| 14:36:21 | 7 | misstatements during the class period? |
| 14:36:25 | 8 | A.   Yes, with respect to the IPO prospectus, |
| 14:36:30 | 9 | yes. |
| 14:36:31 | 10 | Q.   Right.  Do you see in paragraph 92 that, |
| 14:36:32 | 11 | "The prospectus further asserted, in the |
| 14:36:36 | 12 | accompanying financial statements, 'inventories are |
| 14:36:39 | 13 | stated at the lower of cost or market.'  As set |
| 14:36:42 | 14 | forth in detail herein, and as specifically |
| 14:36:44 | 15 | described in the discussion inventory accounting in |
| 14:36:47 | 16 | paragraph 91, this statement was false and the |
| 14:36:50 | 17 | makers of this statement knew it to be false"; do |
| 14:36:52 | 18 | you see that? |
| 14:36:53 | 19 | A.   Yes. |
| 14:36:53 | 20 | Q.   You understand this to be a specific |
| 14:36:55 | 21 | allegation of a false statement that the plaintiffs |
| 14:36:57 | 22 | have alleged in this case? |
| 14:37:01 | 23 | A.   Well, I understand it to be a |
| 14:37:03 | 24 | misrepresentation. |
| 14:37:07 | 25 | Q.   Okay.  A misrepresentation by the |

58980aa7-4ab1-4bbc-9ea2-405d025aac3f

JANE D.   NETTESHEIM

Page 158

| | | |
|---|---|---|
| 14:37:10 | 1 | defendants in this case? |
| 14:37:13 | 2 | A.   I believe that the complaint is referring |
| 14:37:16 | 3 | to defendants. |
| 14:37:18 | 4 | Q.   Now, what portion of the December -- |
| 14:37:23 | 5 | excuse me, what portion of the October 3rd |
| 14:37:25 | 6 | PiperJaffray report corrects that specific alleged |
| 14:37:30 | 7 | false statement that LDK's inventories are stated at |
| 14:37:34 | 8 | the lower of cost or market? |
| 14:37:41 | 9 | A.   Well, the October 3rd PiperJaffray report |
| 14:37:45 | 10 | refers to, you know, inventory discrepancy.  So to |
| 14:37:51 | 11 | the extent that investors might interpret that as |
| 14:37:56 | 12 | the inventories are not stated at the lower of cost |
| 14:37:59 | 13 | or market, that could be a relevant disclosure. |
| 14:38:06 | 14 | Q.   The PiperJaffray report's reference to |
| 14:38:10 | 15 | inventory discrepancies that you just discussed are |
| 14:38:13 | 16 | related to Charlie Situ's allegations? |
| 14:38:20 | 17 | A.   Well, I think it's -- from the |
| 14:38:23 | 18 | PiperJaffray report, it's related to the Situ |
| 14:38:29 | 19 | allegations or accusations. |
| 14:38:32 | 20 | Q.   So is there anything that specifically |
| 14:38:35 | 21 | discusses the statement made by the company on |
| 14:38:44 | 22 | June 1st, 2007 that inventories are stated at lower |
| 14:38:49 | 23 | of cost or market? |
| 14:38:55 | 24 | A.   Well, the financial statements said that |
| 14:38:59 | 25 | inventories are stated at the lower of cost or |

58980aa7-4ab1-4bbc-9ea2-405d025aac3f

JANE D.  NETTESHEIM

Page 159

| | | |
|---|---|---|
| 14:39:02 | 1 | market, so I think investors understood that as to |
| 14:39:05 | 2 | be the basis for that accounting.  The statement in |
| 14:39:08 | 3 | the PiperJaffray report refers to inventory |
| 14:39:12 | 4 | discrepancy, and so there could be different |
| 14:39:19 | 5 | interpretations as to how there could be inventory |
| 14:39:22 | 6 | discrepancies. |
| 14:39:23 | 7 | Q.  So you're extrapolating what the market |
| 14:39:26 | 8 | understood about inventories being stated at lower |
| 14:39:31 | 9 | of cost or market based on the allegations of |
| 14:39:34 | 10 | inventory discrepancies that were disclosed from |
| 14:39:37 | 11 | Charlie Situ on October 3rd, 2007? |
| 14:39:42 | 12 | MR. HEFFELFINGER:  Mischaracterizes |
| 14:39:43 | 13 | testimony. |
| 14:39:47 | 14 | THE WITNESS:  I don't think I'm |
| 14:39:48 | 15 | extrapolating.  I'm just saying that the term |
| 14:39:51 | 16 | "inventory discrepancy," there could be different |
| 14:39:57 | 17 | reasons for inventory discrepancy, one could be that |
| 14:40:01 | 18 | the inventories were not stated at the lower of cost |
| 14:40:04 | 19 | or market. |
| 14:40:07 | 20 | MR. HARRISON:  Q.  But your opinion that |
| 14:40:10 | 21 | the -- that that alleged false statement about |
| 14:40:16 | 22 | inventory stated at lower of cost or market was |
| 14:40:21 | 23 | corrected partially on October 3rd, 2007 is based on |
| 14:40:25 | 24 | the disclosure of Charlie Situ's allegations about |
| 14:40:28 | 25 | inventory discrepancies; is that your opinion? |

58980aa7-4ab1-4bbc-9ea2-405d025aac3f

JANE D.   NETTESHEIM

Page 160

| | | |
|---|---|---|
| 14:40:32 | 1 | A.   Well, it's based on information coming out |
| 14:40:35 | 2 | in the market that there are -- there could be |
| 14:40:39 | 3 | inventory discrepancies. |
| 14:40:45 | 4 | Q.   Information coming out in the market based |
| 14:40:47 | 5 | on Charlie Situ's accusations, right? |
| 14:40:52 | 6 | MR. HEFFELFINGER:  Asked and answered. |
| 14:40:56 | 7 | THE WITNESS:  Well, I think the |
| 14:41:00 | 8 | PiperJaffray report is based on Situ's accusations. |
| 14:41:06 | 9 | And I don't know what else the PiperJaffray analyst |
| 14:41:13 | 10 | did in terms of his research in that area. |
| 14:41:30 | 11 | MR. HARRISON:  Q.  So it's your opinion |
| 14:41:31 | 12 | that this specific false statement was partially |
| 14:41:35 | 13 | disclosed on October 3rd, 2007; is that right? |
| 14:41:42 | 14 | A.   Well, as I said, it's that the value of |
| 14:41:46 | 15 | the inventories as carried in the financial |
| 14:41:49 | 16 | statements, that those values may not be fairly |
| 14:41:54 | 17 | presented was disclosed -- partially disclosed on |
| 14:41:59 | 18 | October 3rd, 2007. |
| 14:42:24 | 19 | Q.   In paragraph 22, subheading -- well, let's |
| 14:42:50 | 20 | see, this is -- so if you look on page 12 of your |
| 14:42:54 | 21 | report, and at the very bottom there's a Romanette |
| 14:43:00 | 22 | "vi"; do you see that? |
| 14:43:04 | 23 | A.   Yes. |
| 14:43:04 | 24 | Q.   And in that paragraph you summarize |
| 14:43:09 | 25 | plaintiffs' allegations that defendants improperly |

58980aa7-4ab1-4bbc-9ea2-405d025aac3f

JANE D.   NETTESHEIM

Page 161

| | | |
|---|---|---|
| 14:43:12 | 1 | used the average weighted cost method to calculate |
| 14:43:16 | 2 | LDK's costs of goods sold? |
| 14:43:20 | 3 | A.   Yes. |
| 14:43:23 | 4 | Q.   Can you show me in the PiperJaffray report |
| 14:43:28 | 5 | on October 3rd, 2007 where any false statement |
| 14:43:35 | 6 | concerning LDK's improper averaging together of the |
| 14:43:39 | 7 | cost of high-quality, quickly-used silicon with the |
| 14:43:43 | 8 | cost of large amounts of low-cost, low-quality, |
| 14:43:45 | 9 | difficult-to-use scrap silicon was disclosed in that |
| 14:43:53 | 10 | report? |
| 14:43:55 | 11 | A.   Those specific words aren't in that |
| 14:43:58 | 12 | report.  The report refers to an inventory |
| 14:44:02 | 13 | discrepancy.  And as I said earlier, there could be |
| 14:44:05 | 14 | different reasons for an inventory discrepancy. |
| 14:44:08 | 15 | Q.   So you're basing the partial disclosure of |
| 14:44:11 | 16 | allegations regarding the company's -- well, that |
| 14:44:13 | 17 | you describe in that paragraph that I just read from |
| 14:44:17 | 18 | on the allegations by -- that were disclosed from |
| 14:44:21 | 19 | Charlie Situ on October 3rd? |
| 14:44:24 | 20 | MR. HEFFELFINGER:  Mischaracterizes |
| 14:44:25 | 21 | testimony. |
| 14:44:26 | 22 | THE WITNESS:  Well, I don't know what |
| 14:44:28 | 23 | detail was in the Situ e-mail, spreadsheets.  This |
| 14:44:33 | 24 | detail may have been in there, I don't know. |
| 14:44:36 | 25 | MR. HARRISON:  Q.  Is there any |

58980aa7-4ab1-4bbc-9ea2-405d025aac3f

JANE D.   NETTESHEIM

Page 162

| | | |
|---|---|---|
| 14:44:37 | 1 | information that came out concerning the |
| 14:44:40 | 2 | allegations -- let me back up. |
| 14:44:44 | 3 | Is there any information that came out in |
| 14:44:46 | 4 | the marketplace following the PiperJaffray report |
| 14:44:48 | 5 | stating that the company improperly used the |
| 14:44:58 | 6 | weighted cost average to calculate its costs of |
| 14:45:02 | 7 | goods sold? |
| 14:45:06 | 8 | A.   I think there are questions about that in |
| 14:45:08 | 9 | other analyst reports; for example, the CIBC report |
| 14:45:26 | 10 | on October 9 refers to that.  And I don't recall if |
| 14:45:29 | 11 | there were other -- that there was other news or |
| 14:45:34 | 12 | other analyst reports that specifically talk about |
| 14:45:39 | 13 | the average cost accounting for inventory. |
| 14:46:16 | 14 | MR. HARRISON:  I need to take a break.  I |
| 14:46:17 | 15 | think we've been going for over an hour. |
| 14:46:20 | 16 | MR. HEFFELFINGER:  I was going to suggest |
| 14:46:22 | 17 | maybe we stretch our legs.  Good call. |
| 14:46:25 | 18 | THE VIDEOGRAPHER:  Going off the record. |
| 14:46:26 | 19 | The time is 2:46. |
| 14:46:28 | 20 | (Recess was taken.) |
| 15:02:00 | 21 | THE VIDEOGRAPHER:  We're back on the |
| 15:02:00 | 22 | record.  The time is 3:02. |
| 15:02:05 | 23 | MR. HARRISON:  Q.  Okay, I'd like to |
| 15:02:11 | 24 | discuss your opinions with respect to October 4th. |
| 15:02:14 | 25 | It's your opinion that certain disclosures on |

JANE D.   NETTESHEIM

Page 163

| | | |
|---|---|---|
| 15:02:18 | 1 | October 4th, 2007 constitute corrective disclosures, |
| 15:02:21 | 2 | right? |
| 15:02:22 | 3 | A.   Yes. |
| 15:02:25 | 4 | Q.   What specific disclosures do you claim |
| 15:02:33 | 5 | constituted corrective disclosures on October 4, |
| 15:02:33 | 6 | 2007? |
| 15:02:34 | 7 | A.   I think there's additional information |
| 15:02:36 | 8 | that comes out that, for example, in my report I |
| 15:02:39 | 9 | have the CIBC report and there are other analyst |
| 15:02:53 | 10 | reports on that day.  There's another PiperJaffray |
| 15:02:55 | 11 | report, there's additional news out that day.  I |
| 15:02:58 | 12 | think there was a conference call that day in |
| 15:03:02 | 13 | addition to the company press release the night |
| 15:03:04 | 14 | before and that morning.  But I think the corrective |
| 15:03:07 | 15 | disclosures are encompassed in the analyst reports |
| 15:03:12 | 16 | and news that comes out. |
| 15:03:14 | 17 | Q.   If you look at paragraphs 33 through 37 of |
| 15:03:16 | 18 | your report, you cite five analyst reports that came |
| 15:03:25 | 19 | out on October 4th? |
| 15:03:34 | 20 | A.   Yes. |
| 15:03:36 | 21 | Q.   Is it your opinion that all of those |
| 15:03:40 | 22 | reports constitute corrective disclosures on October |
| 15:03:44 | 23 | 4th? |
| 15:03:47 | 24 | A.   Well, the Credit Suisse and the Needham |
| 15:03:51 | 25 | reports, I don't know that I would characterize them |

58980aa7-4ab1-4bbc-9ea2-405d025aac3f

JANE D.   NETTESHEIM

Page 164

| | | |
|---|---|---|
| 15:03:54 | 1 | as corrective disclosures on October 4th, but I |
| 15:04:04 | 2 | think the PiperJaffray report and the CIBC report |
| 15:04:14 | 3 | provides some more information. |
| 15:04:20 | 4 | Q.   So it's the PiperJaffray report and the |
| 15:04:24 | 5 | CIBC report that you opine constituted partial |
| 15:04:30 | 6 | corrective disclosures on October 4th, 2007? |
| 15:04:38 | 7 | A.   Yes, I think it's a continuation of the |
| 15:04:41 | 8 | news that came out late on the 3rd, and it continues |
| 15:04:44 | 9 | on the 4th with assessments by the analysts. |
| 15:04:47 | 10 | Q.   Assessments of what? |
| 15:04:56 | 11 | A.   The value of the news that inventory on |
| 15:04:58 | 12 | the financial statements might not have been |
| 15:05:01 | 13 | submitted in accordance with GAAP generally. |
| 15:05:07 | 14 | Q.   What new fraud-related information do |
| 15:05:12 | 15 | those two analyst reports introduce to the market on |
| 15:05:17 | 16 | October 4th, 2007? |
| 15:05:20 | 17 | A.   Well, for example, in the CIBC report, |
| 15:05:21 | 18 | that analyst downgrades their rating on the shares. |
| 15:05:27 | 19 | They provide their reasons, I think primarily the |
| 15:05:33 | 20 | allegations of poor financial controls.  It's also |
| 15:05:41 | 21 | more information that they also were aware of the |
| 15:05:44 | 22 | allegations. |
| 15:05:47 | 23 | Q.   So it's your opinion that that is new |
| 15:05:50 | 24 | fraud-related information that was disclosed to the |
| 15:05:54 | 25 | market on October 4th, 2007? |

58980aa7-4ab1-4bbc-9ea2-405d025aac3f

JANE D.   NETTESHEIM

Page 165

15:05:58    1        A.   Yes.

15:06:03    2        Q.   And it was new information that was

15:06:06    3    distinct from the information that was disclosed on

15:06:08    4    October 3rd?

15:06:09    5        A.   Right, this was new information from

15:06:12    6    another analyst.

15:06:13    7        Q.   The analyst repeating the allegations that

15:06:15    8    were made in the October 3rd PiperJaffray report,

15:06:19    9    right?

15:06:20   10        A.   Well, and it -- based on the wording in

15:06:26   11    that report, it may be that that analyst also had

15:06:30   12    been at least aware of the e-mails and maybe knew

15:06:37   13    about the content of e-mails and spreadsheets and

15:06:39   14    whatever that had been circulated through Mr. Situ.

15:06:48   15        Q.   Are you opining that information contained

15:06:50   16    in the e-mails and spreadsheets circulated by

15:06:53   17    Mr. Situ were disclosed on October 4th, 2007?

15:06:59   18        A.   No, but I think there's information in

15:07:01   19    this analyst report that they may have also had that

15:07:04   20    information.  I think that's in that report.

15:07:10   21        Q.   So it's your opinion that the e-mails and

15:07:12   22    spreadsheets that were circulated by Charlie Situ

15:07:16   23    had entered the market as of this date?

15:07:22   24             MR. HEFFELFINGER:  Mischaracterizes

15:07:23   25    testimony.

58980aa7-4ab1-4bbc-9ea2-405d025aac3f

JANE D.  NETTESHEIM

Page 166

15:07:29     1          THE WITNESS:  Well, I think there's

15:07:31     2     information that various parties had access to the

15:07:37     3     e-mails, spreadsheets, ledger sheets, or whatever

15:07:42     4     was included in Situ materials.

15:07:46     5          MR. HARRISON:  Q.  "Various parties," what

15:07:48     6     do you mean by that?

15:07:49     7          A.   I don't know who they were, but it

15:07:52     8     seems -- well, PiperJaffray, the analyst at

15:07:55     9     PiperJaffray had access to it.  It may be that the

15:07:58    10     analyst at CIBC had access to that information.  And

15:08:04    11     then just general reading, it seems that there

15:08:07    12     was -- there were potentially other entities that

15:08:12    13     had received the information.

15:08:13    14          Q.   You're not opining one way or another

15:08:16    15     whether CIBC actually had that information though,

15:08:20    16     right?

15:08:20    17          A.   That's correct.

15:08:21    18          Q.   You just say it may have had the

15:08:23    19     information?

15:08:23    20          A.   Based on the reading of that particular

15:08:26    21     analyst report, they may have had that information.

15:08:29    22     Because he says, "We have been aware of these

15:08:33    23     allegations, but cannot independently confirm or

15:08:37    24     deny their accuracy."

15:08:41    25          Q.   So on October 4th, those allegations were

58980aa7-4ab1-4bbc-9ea2-405d025aac3f

JANE D.  NETTESHEIM

Page 167

15:08:45    1    uncorroborated, right?

15:08:51    2        A.   Well, I don't know --

15:08:54    3            MR. HEFFELFINGER:  Assumes facts not in

15:08:55    4    evidence.

15:08:56    5            THE WITNESS:  I don't know that they were

15:08:57    6    uncorroborated.  I think that on October 4th it's

15:09:00    7    clear that the company is denying the allegations.

15:09:03    8            MR. HARRISON:  Q.  Have you seen any

15:09:04    9    information on October 4th that anyone has actually

15:09:08    10    independently confirmed the accuracy of Charlie

15:09:12    11    Situ's accusations?

15:09:16    12        A.   Other than the -- apparently there were

15:09:20    13    spreadsheets and ledgers and other things in the

15:09:23    14    Situ materials.  Other than that, I don't know what

15:09:27    15    anybody has done to confirm.

15:09:35    16        Q.   Is there any information that entered the

15:09:41    17    market on October 4th that someone had corroborated

15:09:50    18    the allegations made by Charlie Situ in his e-mails?

15:10:09    19        A.   Outside of the information that may have

15:10:11    20    been included with those e-mails, I don't see any

15:10:14    21    information that anyone has done anything else to

15:10:18    22    corroborate that.

15:10:19    23        Q.   Have you seen those e-mails?

15:10:20    24        A.   No, I have not.

15:10:21    25        Q.   That's not something you considered as

58980aa7-4ab1-4bbc-9ea2-405d025aac3f

JANE D.  NETTESHEIM

Page 168

15:10:23  1    part of your loss causation analysis?

15:10:26  2        A.   That's correct.

15:10:27  3        Q.   Even though those e-mails were circulated

15:10:29  4    to market players?

15:10:37  5             MR. HEFFELFINGER:  Assumes facts not in

15:10:39  6    evidence.

15:10:40  7             THE WITNESS:  I'm not sure what you're

15:10:45  8    asking.

15:10:45  9             MR. HARRISON:  Q.  Were those e-mails

15:10:46  10   circulated to analysts?

15:10:48  11       A.   Well, it was my understanding that it was

15:10:52  12   circulated, certainly to the PiperJaffray analyst.

15:10:55  13   And it seems from my reading of the CIBC report that

15:10:59  14   it may have been circulated to that analyst too, I

15:11:02  15   don't know.  And then other -- there's other

15:11:04  16   information that indicates that there were other

15:11:07  17   people who had access to the e-mails.

15:11:14  18       Q.   And you opine that LDK's stock in -- by

15:11:19  19   the way, when I refer to LDK's stock I mean the ADSs

15:11:24  20   that are at issue in this case -- but it's your

15:11:26  21   opinion that LDK's stock traded in an efficient

15:11:30  22   market, right?

15:11:31  23       A.   Yes.

15:11:31  24       Q.   So under your efficient market opinion,

15:11:35  25   information contained in those e-mails would have

JANE D.   NETTESHEIM

Page 169

| | | |
|---|---|---|
| 15:11:37 | 1 | been reflected in LDK's stock price, right? |
| 15:11:41 | 2 | A.   Yes. |
| 15:11:48 | 3 | Q.   Now, you mentioned the PiperJaffray report |
| 15:11:50 | 4 | and the CIBC World Market report on October 4th. |
| 15:11:58 | 5 | Anything else on October 4th that you consider to be |
| 15:12:01 | 6 | a corrective disclosure? |
| 15:12:08 | 7 | A.   Well, there was the conference call on |
| 15:12:10 | 8 | October 4th and there was more information provided |
| 15:12:12 | 9 | in that conference call regarding the -- what the |
| 15:12:19 | 10 | company had done.  And I think there was information |
| 15:12:24 | 11 | in that conference call about when Mr. Situ had |
| 15:12:28 | 12 | first brought forward his concerns. |
| 15:12:34 | 13 | Q.   Which conference call are you referring |
| 15:12:36 | 14 | to? |
| 15:12:37 | 15 | A.   It's a conference call on October 4th.  I |
| 15:12:40 | 16 | think it was hosted by UBS. |
| 15:12:42 | 17 | Q.   And you consider that to be a corrective |
| 15:12:44 | 18 | disclosure on October 4th? |
| 15:12:48 | 19 | A.   Well, there was additional information in |
| 15:12:51 | 20 | the conference call about, I think, the sequence of |
| 15:12:55 | 21 | events. |
| 15:12:57 | 22 | Q.   Okay.  Do you consider that conference |
| 15:12:59 | 23 | call to constitute a partial corrective disclosure |
| 15:13:02 | 24 | on October 4th? |
| 15:13:07 | 25 | A.   Yeah, I think it was additional |

JANE D.   NETTESHEIM

Page 170

15:13:08    1    information that was related, so I would say it was

15:13:11    2    a partial corrective disclosure.

15:13:13    3         Q.   Is that discussed anywhere in your report

15:13:15    4    or your rebuttal report?

15:13:20    5         A.   The PiperJaffray report on October 4th

15:13:24    6    refers to it.  I'm not sure if I quoted that part,

15:13:29    7    let's see.  Yeah, it's on page 25 of my report.

15:13:41    8    There's a reference to the conference call in the

15:13:44    9    PiperJaffray report in the second bullet point.

15:13:52    10        Q.   Could you point that -- okay, I see it.

15:13:56    11   Sorry.

15:13:57    12        A.   Okay.

15:14:12    13        Q.   And you consider that conference call

15:14:17    14   separately as a partial corrective disclosure on

15:14:20    15   that date that you incorporated into your inflation

15:14:23    16   model?

15:14:26    17        A.   Well, incorporated that date into my

15:14:29    18   measure of price inflation.  But I'm just saying

15:14:33    19   that was information, additional information that

15:14:35    20   was provided on that date.

15:14:54    21        Q.   So correct me if I'm wrong, you're opining

15:15:00    22   that there were three separate corrective

15:15:02    23   disclosures on October 4th, 2007 now:  The CIBC

15:15:05    24   World Market report, PiperJaffray report, and the

15:15:08    25   conference call on that date?

JANE D.  NETTESHEIM

Page 171

15:15:11    1          A.    I wouldn't enumerate them, but I would say

15:15:14    2    that there's information in the two analyst reports

15:15:16    3    and in the conference call that I would consider

15:15:25    4    corrective disclosure of -- partial corrective

15:15:29    5    disclosure of the prior misrepresentations.

15:15:36    6          Q.    Anything else on that date that you

15:15:37    7    consider to be corrective of any false statements

15:15:42    8    that the plaintiffs alleged defendants made during

15:15:44    9    the class period?

15:15:55   10          A.    I don't remember what specific news

15:15:58   11    articles said on that day but there were lots of

15:16:01   12    news articles on that date.  It might have been some

15:16:05   13    statements and news articles providing more

15:16:08   14    information, but I don't recall them specifically.

15:16:11   15          Q.    Have you identified any of those news

15:16:13   16    articles in your report as containing corrective

15:16:16   17    information about the allegations in the complaint?

15:16:28   18          A.    Well, in Footnote 44, I have a couple of

15:16:33   19    news articles.  And I think the news is attributing

15:16:43   20    the decline on the 4th to analyst reports regarding

15:16:52   21    the allegations with respect to the accounting for

15:16:56   22    the inventory and the internal investigation, so --

15:16:59   23    but I don't recall specifically what's -- what's in

15:17:04   24    those reports.

15:17:06   25          Q.    Is it your contention or your opinion that

58980aa7-4ab1-4bbc-9ea2-405d025aac3f

JANE D.   NETTESHEIM

Page 172

| | | |
|---|---|---|
| 15:17:09 | 1 | those news reports contained new fraud-related |
| 15:17:14 | 2 | information? |
| 15:17:16 | 3 | A.   I don't recall specifically what's in |
| 15:17:21 | 4 | those news reports. |
| 15:17:22 | 5 | Q.   Anything else besides what you identified |
| 15:17:25 | 6 | in Footnote 44 and the three other items that we |
| 15:17:34 | 7 | discussed? |
| 15:17:47 | 8 | A.   Nothing that I recall as I sit here right |
| 15:17:49 | 9 | now. |
| 15:17:53 | 10 | Q.   What alleged misrepresentations or |
| 15:17:57 | 11 | omissions did the purported corrective disclosures |
| 15:18:01 | 12 | on October 4th correct? |
| 15:18:05 | 13 | MR. HEFFELFINGER:  Vague and ambiguous. |
| 15:18:14 | 14 | THE WITNESS:  Again, I would say that |
| 15:18:16 | 15 | these are statements that go to the allegations |
| 15:18:19 | 16 | generally about concerns that the inventory or the |
| 15:18:29 | 17 | accounting for the inventory and the financial |
| 15:18:32 | 18 | statements may not have been in accordance with |
| 15:18:35 | 19 | GAAP.  And there's additional information and |
| 15:18:40 | 20 | commentary about those allegations. |
| 15:18:45 | 21 | MR. HARRISON:   Q.  So is it fair to say |
| 15:18:47 | 22 | that it's your opinion that it revealed or it |
| 15:18:50 | 23 | corrected all of the misstatements that are alleged |
| 15:18:53 | 24 | in the complaint, partially? |
| 15:18:57 | 25 | A.   It's a partial corrective disclosure. |

58980aa7-4ab1-4bbc-9ea2-405d025aac3f

JANE D.  NETTESHEIM

Page 173

| | | |
|---|---|---|
| 15:18:59 | 1 | Q.  Of all of the misrepresentations contained |
| 15:19:02 | 2 | in the complaint? |
| 15:19:03 | 3 | A.  Well, as I see them, is a group of |
| 15:19:07 | 4 | misrepresentations regarding the accounting for the |
| 15:19:10 | 5 | inventory. |
| 15:19:11 | 6 | Q.  And by "group of misrepresentations," |
| 15:19:12 | 7 | you're referring to all the allegations -- all of |
| 15:19:16 | 8 | the alleged false statements that the plaintiffs |
| 15:19:18 | 9 | have identified in the complaint? |
| 15:19:22 | 10 | A.  Well, I have, you know, my summary of my |
| 15:19:25 | 11 | understanding of the misstatements, so I'm referring |
| 15:19:28 | 12 | to those. |
| 15:19:32 | 13 | Q.  And in your summary, you consider all of |
| 15:19:35 | 14 | those allegations to be related; is that fair? |
| 15:19:40 | 15 | MR. HEFFELFINGER:  Asked and answered a |
| 15:19:41 | 16 | few times today now. |
| 15:19:43 | 17 | THE WITNESS:  In terms of the inventory |
| 15:19:45 | 18 | valuations, yes, I would say that they're related. |
| 15:19:52 | 19 | MR. HARRISON:  Q.  So is it your opinion |
| 15:19:54 | 20 | that the disclosures that you identified today and |
| 15:19:58 | 21 | in your report on October 4th corrected alleged |
| 15:20:05 | 22 | statements about LDK's use of lower of cost or |
| 15:20:11 | 23 | market inventory accounting? |
| 15:20:14 | 24 | MR. HEFFELFINGER:  Asked and answered. |
| 15:20:16 | 25 | THE WITNESS:  I think they're general -- |

JANE D.  NETTESHEIM

Page 174

| | | |
|---|---|---|
| 15:20:21 | 1 | it's general information that the accounting for the |
| 15:20:26 | 2 | inventory may not have been in accordance with GAAP |
| 15:20:29 | 3 | or that the inventory may not have been fairly |
| 15:20:32 | 4 | presented in the financial statements.  I look at it |
| 15:20:37 | 5 | as there's general information on that point. |
| 15:20:43 | 6 | MR. HARRISON:  Q.  Now, does the complaint |
| 15:20:45 | 7 | allege that any corrective disclosures were made on |
| 15:20:47 | 8 | October 4th, 2007? |
| 15:20:51 | 9 | A.  Yes, I believe so. |
| 15:20:53 | 10 | Q.  Can you direct me to where that is in the |
| 15:20:57 | 11 | complaint? |
| 15:21:31 | 12 | A.  On page 33 of the complaint, beginning at |
| 15:21:37 | 13 | paragraph 123, the complaint alleges that the -- and |
| 15:21:47 | 14 | specifically in paragraph 124 -- they allege that |
| 15:21:50 | 15 | the company's denial of the allegations was false. |
| 15:21:57 | 16 | Q.  You consider that to be a corrective |
| 15:22:01 | 17 | disclosure? |
| 15:22:04 | 18 | A.  No. |
| 15:22:07 | 19 | Q.  Okay.  I -- maybe we had a |
| 15:22:13 | 20 | misunderstanding. |
| 15:22:14 | 21 | My question was does the complaint allege |
| 15:22:15 | 22 | that any corrective disclosures were made on |
| 15:22:18 | 23 | October 4th, 2007? |
| 15:22:21 | 24 | A.  Oh, I'm sorry.  I was thinking in terms of |
| 15:22:25 | 25 | misrepresentations. |

58980aa7-4ab1-4bbc-9ea2-405d025aac3f

JANE D.   NETTESHEIM

Page 175

15:22:26    1            I'm not sure that it does.  I'd have to

15:22:37    2    look.

15:22:37    3            Q.    Since you mentioned the -- are you taking

15:22:40    4    a look now?

15:22:41    5            A.    I could look but I don't really know where

15:22:44    6    to look specifically.

15:22:46    7            Q.    Since you mentioned the false statement on

15:22:49    8    October 4th, the alleged false statement, at

15:22:56    9    paragraph 123 of the complaint, you see that?

15:23:08    10           A.    Yes.

15:23:08    11           Q.    And then in paragraph 124, it says, "As

15:23:11    12    set forth in detail herein, the statement that the

15:23:15    13    management team believed that Situ's allegation had

15:23:18    14    'no merit' was false and the makers of the statement

15:23:22    15    knew it to be false"; do you see that?

15:23:24    16           A.    Yes.

15:23:27    17           Q.    In your opinion, what disclosure corrected

15:23:30    18    the alleged false statement that management believed

15:23:33    19    Mr. Situ's allegations lacked merit?

15:23:49    20           A.    Well, there isn't a particular corrective

15:23:53    21    disclosure except to the extent that the analysts

15:23:57    22    are reporting that they received information that

15:24:00    23    there are potential inventory discrepancies,

15:24:06    24    received it from the controller or recently former

15:24:09    25    controller of the company, reporting on it.  And

JANE D.   NETTESHEIM

Page 176

| | | |
|---|---|---|
| 15:24:13 | 1 | then later on, on October 8, there's the Barron's |
| 15:24:17 | 2 | article which I would say is a corrective disclosure |
| 15:24:25 | 3 | of that statement. |
| 15:24:27 | 4 | Q.   So it corrected the statement that the |
| 15:24:30 | 5 | management team believed that Situ's allegation had |
| 15:24:33 | 6 | no merit, in your opinion? |
| 15:24:41 | 7 | A.   Well, I think there are additional, |
| 15:24:43 | 8 | particularly the Barron's article, disclosures that |
| 15:24:53 | 9 | would not necessarily agree with the management |
| 15:24:58 | 10 | team. |
| 15:25:01 | 11 | Q.   You opine that it's your opinion that |
| 15:25:04 | 12 | those disclosures in the Barron's article corrected |
| 15:25:13 | 13 | the statement by management on October 4th that it |
| 15:25:17 | 14 | believed on October 4th that Situ's allegations had |
| 15:25:22 | 15 | no merit; is that your opinion? |
| 15:25:24 | 16 | A.   Well, the statement in the complaint talks |
| 15:25:26 | 17 | about management's beliefs, and I don't know that |
| 15:25:29 | 18 | the Barron's article talks about management's |
| 15:25:32 | 19 | beliefs.  But I think the Barron's article provides |
| 15:25:35 | 20 | information about why they think that the |
| 15:25:37 | 21 | allegations do, in fact, have merit. |
| 15:25:46 | 22 | Q.   Let's turn to the Barron's article. |
| 15:27:08 | 23 | One of the things that you state at |
| 15:27:11 | 24 | paragraph 37 of your reply report is that it's your |
| 15:27:21 | 25 | understanding that "LDK's ability to produce wafers |

58980aa7-4ab1-4bbc-9ea2-405d025aac3f

JANE D.   NETTESHEIM

Page 177

| | | |
|---|---|---|
| 15:27:24 | 1 | to specifications is directly related to the quality |
| 15:27:26 | 2 | of the Company's silicon inventory, and that much of |
| 15:27:29 | 3 | the Company's feedstock was of poor quality and |
| 15:27:32 | 4 | effectively unusable, which rendered its accounting |
| 15:27:35 | 5 | misleading, and is directly related to the |
| 15:27:37 | 6 | allegations"; do you see that? |
| 15:27:38 | 7 | A.   Yes. |
| 15:27:39 | 8 | Q.   And it's your opinion that information |
| 15:27:43 | 9 | about LDK's -- the quality of LDK's final product is |
| 15:27:49 | 10 | new allegation-specific information in the Barron's |
| 15:27:53 | 11 | article? |
| 15:27:58 | 12 | A.   I'm not sure what you mean by new -- I'm |
| 15:28:03 | 13 | not sure what you mean by new information. |
| 15:28:05 | 14 | Q.   Is it your opinion that -- well, you see |
| 15:28:08 | 15 | at paragraph 37 of your report that you say it's |
| 15:28:10 | 16 | your understanding that LDK's ability to produce |
| 15:28:17 | 17 | wafers to specification is directly related to the |
| 15:28:20 | 18 | quality of the company's silicon inventory? |
| 15:28:24 | 19 | A.   Yes, I see that. |
| 15:28:25 | 20 | Q.   And is it your understanding that the |
| 15:28:27 | 21 | quality of the final product, the wafers, is |
| 15:28:36 | 22 | something that is related to the allegations in the |
| 15:28:38 | 23 | complaint? |
| 15:28:41 | 24 | A.   That's an understanding I have. |
| 15:28:43 | 25 | Q.   Where did you derive that understanding? |

58980aa7-4ab1-4bbc-9ea2-405d025aac3f

JANE D.   NETTESHEIM

Page 178

| | | |
|---|---|---|
| 15:28:53 | 1 | A.   I don't recall specifically.  It could be |
| 15:28:56 | 2 | conversations with counsel, but I don't recall. |
| 15:29:01 | 3 | Q.   So in forming that opinion, you're relying |
| 15:29:04 | 4 | on conversations with counsel as your understanding |
| 15:29:08 | 5 | of what the allegations mean? |
| 15:29:12 | 6 | A.   Well, it's not an opinion.  I'm just |
| 15:29:16 | 7 | saying it's my understanding.  I don't have an |
| 15:29:19 | 8 | opinion about the quality of the wafers. |
| 15:29:23 | 9 | Q.   I keep interrupting you, sorry about that. |
| 15:29:27 | 10 | But it's your understanding that |
| 15:29:29 | 11 | information about the quality of LDK's final product |
| 15:29:34 | 12 | is related to allegations about the company's |
| 15:29:38 | 13 | silicon inventory; is that fair? |
| 15:29:44 | 14 | A.   Yes. |
| 15:29:46 | 15 | Q.   And where do you get that understanding? |
| 15:29:50 | 16 | A.   Well, I think what I said, I don't recall |
| 15:29:53 | 17 | specifically.  I don't recall. |
| 15:30:05 | 18 | Q.   Are you aware of whether the complaint |
| 15:30:07 | 19 | contains any allegations about the quality of LDK's |
| 15:30:12 | 20 | wafers? |
| 15:30:16 | 21 | A.   I don't recall that from the complaint.  I |
| 15:30:18 | 22 | just don't recall where I got this understanding. |
| 15:30:20 | 23 | It could be from the complaint or it could be |
| 15:30:23 | 24 | conversations with counsel. |
| 15:30:30 | 25 | Q.   Your report doesn't identify where you got |

JANE D.   NETTESHEIM

Page 179

| | | |
|---|---|---|
| 15:30:32 | 1 | that understanding, right? |
| 15:30:34 | 2 | A.   That's true, it does not. |
| 15:30:35 | 3 | Q.   So is there anything we can look at to |
| 15:30:39 | 4 | determine where you got that understanding? |
| 15:30:50 | 5 | A.   Not that I know of. |
| 15:31:17 | 6 | Q.   Is it your opinion that information about |
| 15:31:19 | 7 | the final quality -- let me back up. |
| 15:31:24 | 8 | Is it your opinion that information |
| 15:31:27 | 9 | regarding the quality of LDK's wafers discussed in |
| 15:31:32 | 10 | the Barron's article was new allegation-specific |
| 15:31:37 | 11 | information? |
| 15:31:38 | 12 | A.   I think there is some new information |
| 15:31:41 | 13 | about that in the Barron's article. |
| 15:31:46 | 14 | Q.   And that's your opinion? |
| 15:31:48 | 15 | A.   Yes. |
| 15:32:48 | 16 | MR. HARRISON:   1011, I think. |
| 15:32:51 | 17 | (Whereupon Exhibit 1011 was |
| 15:32:51 | 18 | marked for identification.) |
| 15:33:11 | 19 | MR. HARRISON:   Q.   I had marked for the |
| 15:33:13 | 20 | record an article from Barron's dated October 8, |
| 15:33:22 | 21 | 2007.  It says that the title of which is "China's |
| 15:33:25 | 22 | Solar Boom Loses Its Luster." |
| 15:33:28 | 23 | Have you seen this before? |
| 15:33:30 | 24 | A.   Yes, I have.  It's in my report. |
| 15:33:45 | 25 | Q.   Now, you see the subtitle there, the |

58980aa7-4ab1-4bbc-9ea2-405d025aac3f

JANE D.   NETTESHEIM

Page 180

| | | |
|---|---|---|
| 15:33:48 | 1 | article that says, "China's solar-cell stocks are |
| 15:33:57 | 2 | burning too brightly, even if LDK's rumored quality |
| 15:34:02 | 3 | problems prove to be less serious than feared"; do |
| 15:34:05 | 4 | you see that? |
| 15:34:05 | 5 | A.   Yes. |
| 15:34:06 | 6 | Q.   Do you agree that the quality problems |
| 15:34:07 | 7 | discussed in the Barron's article were rumored? |
| 15:34:21 | 8 | MR. HEFFELFINGER:   Document speaks for |
| 15:34:22 | 9 | itself. |
| 15:34:23 | 10 | THE WITNESS:   I don't know that they were |
| 15:34:24 | 11 | rumored, they were reported. |
| 15:34:26 | 12 | MR. HARRISON:   Q.   Do you have any reason |
| 15:34:27 | 13 | to disagree with the author's characterization of |
| 15:34:30 | 14 | the quality problems as rumored? |
| 15:34:36 | 15 | A.   I don't know why they characterized it as |
| 15:34:39 | 16 | rumored.  They seem to be reporting that there were |
| 15:34:41 | 17 | quality problems. |
| 15:34:42 | 18 | Q.   Do you have any reason to disagree with |
| 15:34:44 | 19 | the author's characterization of the quality |
| 15:34:47 | 20 | problems as rumored? |
| 15:34:48 | 21 | A.   Well, as I said, I don't know why the |
| 15:34:51 | 22 | author used the word "rumored" when it appears he's |
| 15:34:56 | 23 | reporting quality problems.  So I don't know why he |
| 15:34:58 | 24 | used that word. |
| 15:35:05 | 25 | Q.   And the quality problems that are reported |

58980aa7-4ab1-4bbc-9ea2-405d025aac3f

JANE D.   NETTESHEIM

Page 181

15:35:07  1   in the complaint were sourced to an unnamed

15:35:10  2   individual who was familiar with LDK's

15:35:15  3   manufacturing; is that right?

15:35:17  4       A.   Well, not in the complaint, but in the

15:35:20  5   Barron's article there is a reference to a person

15:35:26  6   with knowledge in the manufacturing.

15:35:28  7       Q.   Thank you, I appreciate that.  I misspoke.

15:35:30  8            So the quality problems that are reported

15:35:32  9   in the October 8, 2007 Barron's article were sourced

15:35:36  10  to an unnamed individual who's familiar with LDK's

15:35:40  11  manufacturing, right?

15:35:47  12      A.   Yes, they refer to somebody like that,

15:35:51  13  yes.

15:37:04  14      Q.   I've asked this with respect to the two

15:37:06  15  previous disclosure dates that you've discussed in

15:37:11  16  your report, but is it your opinion that the

15:37:16  17  October 8th, 2007 Barron's article was corrective of

15:37:20  18  all of the alleged misstatements identified in the

15:37:26  19  plaintiffs' complaint?

15:37:30  20      A.   I think it corrects -- or provides more

15:37:32  21  information, and so I would characterize it as a

15:37:35  22  corrective disclosure of the general allegations

15:37:38  23  about the inappropriate accounting for the

15:37:41  24  inventory.

15:37:45  25      Q.   Is it your -- I'll circle back to that

JANE D.  NETTESHEIM

Page 182

| | | |
|---|---|---|
| 15:37:50 | 1 | answer, but my question was is it your opinion that |
| 15:37:52 | 2 | the October 8th, 2007 Barron's article was |
| 15:37:56 | 3 | corrective of all of the alleged misstatements |
| 15:37:59 | 4 | identified in the plaintiffs' complaint? |
| 15:38:01 | 5 | MR. HEFFELFINGER:  Asked and answered. |
| 15:38:03 | 6 | THE WITNESS:  Well, as I've said before, |
| 15:38:06 | 7 | I've provided my understanding of the misstatements |
| 15:38:12 | 8 | in my report, and I look at them as a group of |
| 15:38:16 | 9 | misstatements that in general go to the |
| 15:38:20 | 10 | inappropriateness of the accounting for the |
| 15:38:24 | 11 | inventory.  So on that basis, I would say that the |
| 15:38:26 | 12 | Barron's article provides more information related |
| 15:38:29 | 13 | to those allegations. |
| 15:38:31 | 14 | MR. HARRISON:  Q.  And so just following |
| 15:38:32 | 15 | up on that answer, is it your opinion that the |
| 15:38:36 | 16 | Barron's article was partially corrective of all of |
| 15:38:40 | 17 | those related allegations in your opinion? |
| 15:38:42 | 18 | MR. HEFFELFINGER:  That's the third time |
| 15:38:44 | 19 | you've asked -- asked and answered. |
| 15:38:46 | 20 | MR. HARRISON:  She hasn't answered the |
| 15:38:48 | 21 | question. |
| 15:38:49 | 22 | MR. HEFFELFINGER:  You just don't like the |
| 15:38:50 | 23 | answer. |
| 15:38:52 | 24 | MR. HARRISON:  I like the answer a lot. |
| 15:38:56 | 25 | THE WITNESS:  As I said, the Barron's |

JANE D.   NETTESHEIM

Page 183

| | | |
|---|---|---|
| 15:38:57 | 1 | article is corrective of my understanding of the |
| 15:39:00 | 2 | misrepresentations, which are in general the |
| 15:39:02 | 3 | inappropriateness of the accounting for the |
| 15:39:05 | 4 | inventory. |
| 15:39:09 | 5 | MR. HARRISON:  Q.  Thank you. |
| 15:39:15 | 6 | Now, you mentioned earlier that you -- |
| 15:39:19 | 7 | it's your opinion that the Barron's article provides |
| 15:39:22 | 8 | more detail about the inappropriate use of the |
| 15:39:26 | 9 | company's cost accounting, I think; is that correct? |
| 15:39:45 | 10 | A.   I think I said something about the CIBC |
| 15:39:47 | 11 | analyst report on October 9th.  I don't recall -- I |
| 15:39:57 | 12 | think there's something about that in the Barron's |
| 15:39:59 | 13 | article, I just don't recall which paragraph. |
| 15:40:04 | 14 | Q.   Can you point me to whatever information |
| 15:40:07 | 15 | you referred to earlier as more information about |
| 15:40:10 | 16 | the company's -- I want to make sure I get it right. |
| 15:41:23 | 17 | Okay.  So now that I found it, what I was |
| 15:41:27 | 18 | referring to was your statement that this article |
| 15:41:29 | 19 | provides more information of the general allegations |
| 15:41:33 | 20 | about the inappropriate accounting for the |
| 15:41:36 | 21 | inventory.  And my question is where is the specific |
| 15:41:48 | 22 | information that you're referring to? |
| 15:41:51 | 23 | A.   Okay.  Well, in the third paragraph, |
| 15:42:32 | 24 | there's reference to their information that they |
| 15:42:38 | 25 | talked to someone with knowledge of the |

58980aa7-4ab1-4bbc-9ea2-405d025aac3f

JANE D.   NETTESHEIM

Page 184

15:42:40   1   manufacturing that's talking about the impure ingots

15:42:49   2   and just generally about the silicon.

15:43:00   3       Q.   I had understood your answer to be that it

15:43:03   4   provided more information about the allegations

15:43:06   5   of -- well, let me strike that.  I won't ask again.

15:43:13   6   You said they're all interrelated, so I don't want

15:43:16   7   to make Chris mad.

15:43:57   8           If you look at paragraph 20 of your reply

15:44:00   9   report, which is Exhibit 1002.

15:44:16   10      A.   Okay.

15:44:23   11      Q.   You state that -- and this is referring

15:44:27   12   back to the October 3rd, 2007 PiperJaffray report,

15:44:32   13   right?

15:44:34   14      A.   Yes.

15:44:36   15      Q.   It's your opinion that in paragraph 20 of

15:44:38   16   your reply report that the disclosure in the

15:44:42   17   PiperJaffray report concerning doubt about LDK's

15:44:45   18   ability to ramp meaningful polysilicon in 2009 was

15:44:49   19   not new information, right?

15:44:52   20      A.   Yes.

15:44:56   21      Q.   You indicate in that paragraph that

15:45:02   22   Mr. Pichel attended a PiperJaffray annual Solar

15:45:08   23   Power Conference; do you see that?

15:45:10   24      A.   Yes.

15:45:12   25      Q.   And that many market participants would

58980aa7-4ab1-4bbc-9ea2-405d025aac3f

JANE D.   NETTESHEIM

Page 185

15:45:15    1    have heard the same presentation by LDK management

15:45:19    2    as Mr. Pichel did; do you see that at the end?

15:45:23    3        A.   Yes.

15:45:23    4        Q.   What's the basis for your statement that

15:45:25    5    Mr. Pichel attended a presentation by LDK management

15:45:29    6    at the Solar Conference?

15:45:41    7        A.   I think that's some information that I

15:45:43    8    cite in my report.  Well, there was an article that

15:46:06    9    interviewed Mr. Pichel, but I didn't cite that part

15:46:10    10   of it in my report.  And in that article, I recall

15:46:21    11   that there was reference to a presentation by LDK.

15:46:28    12       Q.   An article that you didn't cite in your

15:46:31    13   report?

15:46:32    14       A.   Well, I cite the article in my report but

15:46:34    15   not that piece of it, in my original report at

15:46:37    16   Footnote 33.

15:46:40    17       Q.   Uh-huh.  Footnote 33 of page 22?

15:46:51    18       A.   Yes.

15:46:55    19       Q.   You -- so you're referring to the Seeking

15:46:59    20   Alpha article there from January 22nd, 2008?

15:47:04    21       A.   Yes.

15:47:05    22       Q.   And that article indicates that Jesse

15:47:09    23   Pichel attended a presentation by LDK management?

15:47:16    24       A.   I believe it was in that article, yes.

15:47:20    25       Q.   Does the article describe at all what was

JANE D.   NETTESHEIM

Page 186

| | | |
|---|---|---|
| 15:47:22 | 1 | discussed at that presentation? |
| 15:47:34 | 2 | A.   It had to do with the new polysilicon |
| 15:47:39 | 3 | facility but I don't recall anything specifically. |
| 15:48:05 | 4 | Q.   Who interviewed Mr. Pichel, the author of |
| 15:48:09 | 5 | that article? |
| 15:48:10 | 6 | A.   That was my understanding, yes. |
| 15:49:05 | 7 | MR. HARRISON:  How long have we been |
| 15:49:06 | 8 | going?  Is anyone keeping track? |
| 15:49:09 | 9 | THE VIDEOGRAPHER:  Off the record? |
| 15:49:11 | 10 | MR. HARRISON:  No.  Well, unless Chris |
| 15:49:13 | 11 | needs it. |
| 15:49:23 | 12 | Q.   Well, let's see, let's look at the -- |
| 15:49:32 | 13 | sorry, the PiperJaffray analyst report, |
| 15:49:44 | 14 | Exhibit 1010.  Do you see that in the paragraph |
| 15:50:06 | 15 | after the -- he discusses the allegations from the |
| 15:50:10 | 16 | former controller on the first page? |
| 15:50:13 | 17 | A.   Yes. |
| 15:50:13 | 18 | Q.   It says "Wafer Update"? |
| 15:50:15 | 19 | A.   Yes. |
| 15:50:17 | 20 | Q.   And it says, "We conducted meetings with |
| 15:50:19 | 21 | LDK CEO Light Peng and CFO Jack Lai"; do you see |
| 15:50:26 | 22 | that? |
| 15:50:26 | 23 | A.   Yes, I do. |
| 15:50:27 | 24 | Q.   And you're assuming that those meetings |
| 15:50:29 | 25 | that the authors of the report on 10/3 were the same |

JANE D.   NETTESHEIM

Page 187

15:50:33    1    thing as Jesse Pichel's attendance of a presentation

15:50:39    2    at the annual Solar Conference, right?

15:50:42    3        A.    No, not necessarily.

15:50:46    4        Q.    They could be different?

15:50:47    5        A.    They could be, yes.

15:50:48    6        Q.    So you're not aware one way or another

15:50:51    7    that those meetings occurred at the Solar Conference

15:50:54    8    that's described here in this report?

15:50:56    9        A.    The specific meetings, I don't know.  But

15:50:58   10    there was -- it was referring to the first bullet

15:51:04   11    point, where he says at the conference, LDK

15:51:06   12    management reaffirmed their 2008 production

15:51:09   13    guidance.

15:51:39   14        Q.    Are you aware of whether or not anyone

15:51:41   15    other than the authors of the PiperJaffray report

15:51:44   16    attended the meetings with LDK CEO Light Peng and

15:51:50   17    CFO Jack Lai that are described in the PiperJaffray

15:51:54   18    report?

15:51:55   19        A.    I don't know.

15:51:55   20        Q.    And you're not aware of what information

15:51:57   21    the authors of the PiperJaffray report gathered from

15:52:02   22    LDK CEO Light Peng and CFO Jack Lai from that

15:52:09   23    meeting, are you?

15:52:13   24        A.    Well, according --

15:52:14   25            MR. HEFFELFINGER:  Vague.

58980aa7-4ab1-4bbc-9ea2-405d025aac3f

JANE D.   NETTESHEIM

Page 188

| | | |
|---|---|---|
| 15:52:15 | 1 | THE WITNESS:  According to the description |
| 15:52:16 | 2 | in the paragraph, they were reconfirming the |
| 15:52:21 | 3 | information that's in the paragraph, it seems, but I |
| 15:52:24 | 4 | don't know what else was conveyed at that meeting or |
| 15:52:27 | 5 | meetings. |
| 15:52:28 | 6 | MR. HARRISON:  Q.  Okay.  So it seems to |
| 15:52:30 | 7 | you that the information contained in that paragraph |
| 15:52:34 | 8 | was gathered by PiperJaffray based on the meetings |
| 15:52:39 | 9 | it conducted with the CEO and the CFO? |
| 15:52:43 | 10 | MR. HEFFELFINGER:  Document speaks for |
| 15:52:44 | 11 | itself -- I'm sorry, did you finish? |
| 15:52:46 | 12 | MR. HARRISON:  I was going to say, "Is |
| 15:52:48 | 13 | that what you're saying?" |
| 15:52:50 | 14 | MR. HEFFELFINGER:  Document speaks for |
| 15:52:51 | 15 | itself. |
| 15:52:54 | 16 | THE WITNESS:  Well, it just -- the |
| 15:52:56 | 17 | information in that paragraph is just a |
| 15:52:58 | 18 | reconfirmation of information that was previously |
| 15:53:01 | 19 | known, but it seems that that's what they came away |
| 15:53:06 | 20 | from the meetings with. |
| 15:53:08 | 21 | MR. HARRISON:  Q.  Reconfirmation?  What |
| 15:53:10 | 22 | do you mean by "reconfirmation"? |
| 15:53:16 | 23 | A.   It's generally -- a lot of this |
| 15:53:19 | 24 | information was generally known.  It's in earlier |
| 15:53:25 | 25 | reports. |

58980aa7-4ab1-4bbc-9ea2-405d025aac3f

JANE D.   NETTESHEIM

Page 189

| | | |
|---|---|---|
| 15:53:31 | 1 | Q.   All the information that's contained in |
| 15:53:33 | 2 | that paragraph in your opinion is information that |
| 15:53:35 | 3 | was already generally known? |
| 15:53:39 | 4 | MR. HEFFELFINGER:  Vague and overbroad. |
| 15:53:51 | 5 | THE WITNESS:  As I recall, this was |
| 15:53:53 | 6 | generally known, yes, and had been reported on. |
| 15:54:00 | 7 | MR. HARRISON:   Q.   And can you identify |
| 15:54:07 | 8 | the disclosures that revealed that information prior |
| 15:54:12 | 9 | to this date? |
| 15:54:26 | 10 | A.   I don't recall specifically where it was |
| 15:54:28 | 11 | disclosed.  Some of this was in the August, I think |
| 15:54:34 | 12 | it was the August 1st, 2007 conference call.  Some |
| 15:54:40 | 13 | of this the PiperJaffray analyst had been reporting |
| 15:54:44 | 14 | essentially the same information or opinions in |
| 15:54:46 | 15 | other reports. |
| 15:54:59 | 16 | Q.   And that's contained -- |
| 15:55:01 | 17 | A.   Just in general.  That's my recollection |
| 15:55:04 | 18 | of where that information came from. |
| 15:55:06 | 19 | Q.   That's the information that you cite in |
| 15:55:08 | 20 | your reply report or in your original report? |
| 15:55:16 | 21 | A.   Can you point to what you're referring to? |
| 15:55:19 | 22 | Q.   Yeah, I'm just -- yeah.  I think so.  At |
| 15:55:37 | 23 | paragraph 44. |
| 15:55:48 | 24 | A.   Are you referring to my report or reply |
| 15:55:51 | 25 | report? |

58980aa7-4ab1-4bbc-9ea2-405d025aac3f

JANE D.   NETTESHEIM

Page 190

15:55:51    1         Q.   Your first report.

15:56:13    2         A.   Well, some of that is in paragraph 44.

15:56:44    3         Q.   Okay.  If you look at paragraph 21 of your

15:56:47    4    reply report, you state that the October 1, 2007,

15:56:55    5    Friedman Billings report stated that "checks from

15:56:58    6    last week at the Solar Power Conference revealed

15:57:00    7    that LDK has already seen equipment delivery

15:57:04    8    pushouts, thus bringing into question the co's

15:57:06    9    ability to ramp poly capacity"; do you see that?

15:57:11    10        A.   Yes.

15:57:12    11        Q.   Have you reviewed the Friedman Billings

15:57:15    12   report?

15:57:17    13        A.   Not the whole -- I haven't seen the

15:57:20    14   Friedman Billings report.  I've seen the article

15:57:22    15   that that quote comes from.

15:57:24    16        Q.   The article cited at Footnote 20?

15:57:27    17        A.   Correct.

15:57:35    18        Q.   What's the reason for your inability to

15:57:39    19   review the entire October 1st, 2007 Friedman

15:57:43    20   Billings report?

15:57:46    21        A.   We don't have the report that I'm aware

15:57:48    22   of.  Not all analyst reports are available in the

15:57:56    23   public databases.

15:57:59    24             MR. HARRISON:  I think we're at 1012.

15:58:05    25             (Whereupon Exhibit 1012 was

58980aa7-4ab1-4bbc-9ea2-405d025aac3f

JANE D.   NETTESHEIM

Page 191

| | | |
|---|---|---|
| 15:58:05 | 1 | marked for identification.) |
| 15:58:48 | 2 | MR. DEVORE:  Just so the record's clear, |
| 15:58:50 | 3 | Exhibit 1012 is a single-page document that has |
| 15:58:53 | 4 | Bates LDK_JN012772, which appears to be a page from |
| 15:59:02 | 5 | the middle of something else because the paragraph |
| 15:59:06 | 6 | at the top appears to be a carryover of something |
| 15:59:09 | 7 | else; is that right? |
| 15:59:11 | 8 | MR. HARRISON:  That's what it looks like. |
| 15:59:13 | 9 | I think that's how it was produced. |
| 15:59:15 | 10 | MR. LEE:  It was produced as part of a set |
| 15:59:17 | 11 | of lots of articles compiled together. |
| 15:59:20 | 12 | MR. DEVORE:  Okay. |
| 15:59:22 | 13 | MR. MILSTEIN:  You mean, produced by LDK? |
| 15:59:24 | 14 | MR. LEE:  No, produced by -- |
| 15:59:30 | 15 | MR. MILSTEIN:  Okay.  Got it. |
| 15:59:32 | 16 | MR. DEVORE:  But the intent was just to |
| 15:59:34 | 17 | mark this one page, right? |
| 15:59:36 | 18 | MR. HARRISON:  Yeah. |
| 15:59:38 | 19 | MR. DEVORE:  Thank you. |
| 15:59:39 | 20 | MR. HARRISON:  Q.  So this is the summary |
| 15:59:41 | 21 | of the Friedman Billings report that you describe at |
| 15:59:46 | 22 | Footnote 20 of your reply report? |
| 15:59:50 | 23 | A.  No, I think this is the -- this is the |
| 16:00:03 | 24 | whole thing, I mean, that I've seen. |
| 16:00:07 | 25 | Q.  Right, not the whole Friedman Billings |

58980aa7-4ab1-4bbc-9ea2-405d025aac3f

JANE D.   NETTESHEIM

Page 192

16:00:10      1      report?

16:00:11      2            A.   Well, as I said earlier, if there is a

16:00:15      3      separate analyst report, Friedman Billings analyst

16:00:19      4      report, I have not seen the separate analyst report.

16:00:22      5            Q.   And I just wanted to confirm that it's not

16:00:28      6      out there somewhere.

16:00:29      7            A.   It may be, but we don't have access to it

16:00:32      8      and I don't know.  But this is -- Exhibit 1012 is

16:00:36      9      what I've seen.

16:00:37      10           Q.   And that's why I was asking.

16:00:40      11                Now, you see there that it says at the

16:00:45      12     bottom, "Friedman Billings says that checks from

16:00:48      13     last week at the Solar Power Conference revealed

16:00:49      14     that LDK (China's largest solar wafer manufacturer)

16:00:52      15     has already seen equipment delivery pushouts, thus

16:00:57      16     bringing into question the co's ability to ramp poly

16:01:00      17     capacity"; do you see that?

16:01:03      18           A.   Yes.

16:01:03      19           Q.   And that's what you're referring to in

16:01:05      20     paragraph 21 of your reply report?

16:01:07      21           A.   Yes.

16:01:09      22           Q.   What year is the excerpt here discussing

16:01:14      23     when it's talking about poly capacity?

16:01:27      24           A.   I'm not sure what you mean.

16:01:30      25           Q.   Well, it says that the equipment delivery

58980aa7-4ab1-4bbc-9ea2-405d025aac3f

JANE D. NETTESHEIM

Page 193

16:01:34    1    pushouts are bringing into question the company's

16:01:37    2    ability to ramp poly capacity. Poly capacity for

16:01:41    3    which year? 2008, 2009?

16:01:44    4        A.   I think just generally. It doesn't

16:01:47    5    specify a year.

16:01:48    6        Q.   You don't know which year it's referring

16:01:50    7    to, right?

16:01:51    8        A.   I'm not sure that it's referring to any

16:01:52    9    particular year.

16:01:53    10       Q.   And what equipment is the Friedman

16:01:56    11   Billings report talking about here, do you know?

16:01:59    12       A.   I don't know.

16:02:00    13       Q.   Do you know what the equipment delivery

16:02:03    14   pushouts -- I'm going to rephrase that.

16:02:11    15            It discusses equipment delivery pushouts,

16:02:16    16   do you know which plant at LDK that equipment was to

16:02:19    17   be delivered to?

16:02:20    18       A.   No, I don't.

16:02:26    19       Q.   Are you aware that LDK was expecting

16:02:28    20   equipment deliveries for its original plant and its

16:02:31    21   Sunways plant around this time?

16:02:37    22       A.   Well, I don't know which plant this

16:02:39    23   equipment was destined. I mean, I was aware that

16:02:46    24   they receive equipment all the time.

16:02:52    25       Q.   Have you seen any other disclosures

58980aa7-4ab1-4bbc-9ea2-405d025aac3f

JANE D.   NETTESHEIM

Page 194

16:02:54   1   relating to equipment delivery pushouts with respect

16:03:02   2   to LDK at this time?

16:03:26   3        A.   I don't recall.

16:04:16   4        Q.   At paragraph 27 of your reply report, you

16:04:31   5   discuss the July 31st, 2000 Morgan Stanley report;

16:04:39   6   do you see that?

16:04:40   7        A.   Yes.

16:04:41   8        Q.   You note that, "Dr. Lehn ignores a key

16:04:47   9   input into Morgan Stanley's model which is gross

16:04:52   10  margin"; do you see that?

16:04:54   11       A.   Yes.

16:05:00   12       Q.   Are you talking about the overall gross

16:05:02   13  margin for the company or its margin for

16:05:04   14  polysilicon?

16:05:06   15       A.   The overall gross margins.

16:05:12   16       Q.   And you understand that to be different

16:05:14   17  from the margins for polysilicon?

16:05:21   18       A.   Well, I mean, the potential manufacturer

16:05:29   19  of polysilicon may change the gross margin so

16:05:32   20  they're related.  The gross margins are the gross

16:05:37   21  margins.

16:05:37   22       Q.   And what components go into determining

16:05:40   23  what the gross margins are at LDK?

16:05:45   24       A.   The gross profit, which is basically

16:05:47   25  revenues less cost of goods sold, and that is a

58980aa7-4ab1-4bbc-9ea2-405d025aac3f

JANE D.   NETTESHEIM

Page 195

| | | |
|---|---|---|
| 16:05:52 | 1 | percentage of revenues. |
| 16:05:53 | 2 | Q.   And the overall gross margins, is there a |
| 16:05:56 | 3 | lot of inputs that go into that to determine what |
| 16:06:03 | 4 | calculates the overall gross margin? |
| 16:06:06 | 5 | MR. HEFFELFINGER:  Vague and overbroad. |
| 16:06:08 | 6 | THE WITNESS:  Well, I just defined what |
| 16:06:11 | 7 | the gross margin is.  Are you talking about the |
| 16:06:15 | 8 | inputs to the costs of goods sold?  It's my |
| 16:06:21 | 9 | understanding that a key input to the costs of goods |
| 16:06:24 | 10 | sold is the cost of the raw materials which is the |
| 16:06:28 | 11 | silicon. |
| 16:06:29 | 12 | MR. HARRISON:  Q.  And what's your |
| 16:06:29 | 13 | understanding of that, or where do you get that |
| 16:06:33 | 14 | understanding? |
| 16:06:36 | 15 | A.   Company conference calls, perhaps SEC |
| 16:06:42 | 16 | filings, analyst reports refer to it.  It's |
| 16:06:45 | 17 | something like 80 percent of the cost of goods sold |
| 16:06:49 | 18 | is the cost of the silicon. |
| 16:06:52 | 19 | Q.   Had you undertaken an analysis to |
| 16:06:56 | 20 | determine what LDK's gross margin should have been |
| 16:06:58 | 21 | in October 2007 -- sorry, in 2007? |
| 16:07:03 | 22 | A.   No, I have not. |
| 16:07:09 | 23 | Q.   You don't know what -- strike that. |
| 16:07:20 | 24 | You state that because -- in paragraph 27 |
| 16:07:23 | 25 | you state that because plaintiff alleges that gross |

58980aa7-4ab1-4bbc-9ea2-405d025aac3f

JANE D.  NETTESHEIM

Page 196

16:07:25    1    margins were overstated, this analysis by Dr. Lehn

16:07:29    2    is false or flawed, right?

16:07:43    3        A.    Essentially, yes.

16:07:45    4        Q.    So you're basing that statement on the

16:07:48    5    accuracy of plaintiffs' allegations concerning LDK's

16:07:53    6    inventories in 2007, right?

16:07:57    7        A.    Yes, it's based on plaintiffs'

16:07:59    8    allegations.

16:08:00    9        Q.    And you haven't done any independent

16:08:03    10   analysis to determine what those inventory levels

16:08:06    11   were in 2007, correct?

16:08:09    12       A.    That's correct.

16:08:14    13       Q.    If you look at the October 3rd

16:08:16    14   PiperJaffray report, which is Exhibit 1010.

16:08:23    15       A.    Yes.

16:08:26    16       Q.    At the bottom of the section that has the

16:08:33    17   bold introduction saying "Wafer Update," do you see

16:08:36    18   that, about halfway down the page?

16:08:39    19       A.    Yes.

16:08:39    20       Q.    The bottom of that paragraph, it discusses

16:08:44    21   concerns about competitors' better access to

16:08:47    22   ingot-producing equipment.

16:08:56    23       A.    Yes.

16:08:57    24       Q.    And it specifically notes GT Equipment's

16:09:03    25   increased production of furnaces; do you see that?

58980aa7-4ab1-4bbc-9ea2-405d025aac3f

JANE D.   NETTESHEIM

Page 197

| | | |
|---|---|---|
| 16:09:06 | 1 | A.   Yes. |
| 16:09:06 | 2 | Q.   And it's your opinion that this |
| 16:09:09 | 3 | information was not new information; is that right? |
| 16:09:13 | 4 | A.   There was general information in the |
| 16:09:18 | 5 | market that several of LDK's competitors had ordered |
| 16:09:22 | 6 | equipment and they were gearing up to increase their |
| 16:09:26 | 7 | production. |
| 16:09:28 | 8 | Q.   Can you identify any earlier public |
| 16:09:31 | 9 | disclosures that discussed increased competition |
| 16:09:33 | 10 | from new competitors because of better access to |
| 16:09:38 | 11 | furnaces? |
| 16:09:45 | 12 | A.   I think there's information that I think I |
| 16:09:50 | 13 | identify in my report from an August -- |
| 16:09:56 | 14 | MR. HARRISON:  We need to.  Well -- |
| 16:10:03 | 15 | THE VIDEOGRAPHER:  You can continue. |
| 16:10:05 | 16 | MR. HARRISON:  Is she on the videotape? |
| 16:10:07 | 17 | THE VIDEOGRAPHER:  She's on the videotape. |
| 16:10:10 | 18 | MR. HARRISON:  Q.  Okay.  Sorry for the |
| 16:10:11 | 19 | interruption. |
| 16:10:12 | 20 | A.   There was information on August 1st, 2007, |
| 16:10:14 | 21 | I think it was August 1st or August 2nd, about the |
| 16:10:20 | 22 | first company, Glory Silicon, ordering new equipment |
| 16:10:24 | 23 | and announcing that they were going to increase |
| 16:10:27 | 24 | their production.  So there was information of that |
| 16:10:32 | 25 | type in the market. |

58980aa7-4ab1-4bbc-9ea2-405d025aac3f

JANE D.   NETTESHEIM

Page 198

| | | |
|---|---|---|
| 16:10:36 | 1 | MR. HARRISON:  Okay.  We need to take a |
| 16:10:37 | 2 | break. |
| 16:10:38 | 3 | THE VIDEOGRAPHER:  This marks the end of |
| 16:10:39 | 4 | Tape Number 3 in the deposition of Jane Nettesheim. |
| 16:10:44 | 5 | Going off the record.  The time is 4:11. |
| 16:10:48 | 6 | (Recess was taken.) |
| 16:34:06 | 7 | THE VIDEOGRAPHER:  This marks the |
| 16:34:07 | 8 | beginning of Tape Number 4 in the deposition of Jane |
| 16:34:10 | 9 | Nettesheim.  Going on the record.  The time is 4:34. |
| 16:34:18 | 10 | MR. HARRISON:  Q.  Before we took a break, |
| 16:34:18 | 11 | you were discussing an August 1st or 2nd disclosure |
| 16:34:24 | 12 | that mentioned Glory Silicon ordering new equipment |
| 16:34:29 | 13 | and announcing that it was going to increase its |
| 16:34:31 | 14 | production; do you recall that testimony? |
| 16:34:39 | 15 | A.   Generally, yes. |
| 16:34:40 | 16 | Q.   And we're referring to, just for context, |
| 16:34:42 | 17 | we were talking about the Exhibit 1010, the |
| 16:34:46 | 18 | PiperJaffray report concerning GT Equipment. |
| 16:34:52 | 19 | A.   Yes. |
| 16:34:53 | 20 | Q.   Did the disclosure on August 1st or 2nd |
| 16:34:58 | 21 | that you testified about mention anything about GT |
| 16:35:04 | 22 | Equipment's increase of monthly furnace capacity? |
| 16:35:08 | 23 | A.   No, I don't think so. |
| 16:35:09 | 24 | Q.   Did it mention anything about increased |
| 16:35:13 | 25 | competition from new competitors due to better |

JANE D.   NETTESHEIM

Page 199

| | | |
|---|---|---|
| 16:35:15 | 1 | access to furnaces? |
| 16:35:17 | 2 | A.   It was generally about competition, but I |
| 16:35:19 | 3 | don't think it was specifically about access to |
| 16:35:23 | 4 | furnaces. |
| 16:35:25 | 5 | Q.   Did it mention anything about new |
| 16:35:27 | 6 | equipment? |
| 16:35:33 | 7 | A.   Not that I recall. |
| 16:35:35 | 8 | Q.   Did you see any disclosures prior to |
| 16:35:41 | 9 | October 3rd, 2007 discussing competitors' access to |
| 16:35:50 | 10 | furnace capacity? |
| 16:35:57 | 11 | A.   There were general -- there's general news |
| 16:36:00 | 12 | about other competitors adding capacity.  I don't |
| 16:36:06 | 13 | recall any specifics about equipment deliveries, but |
| 16:36:11 | 14 | there's news about them adding capacity. |
| 16:36:29 | 15 | Q.   Okay.  The October 8, 2007 Barron's |
| 16:36:35 | 16 | article, I don't recall what it was marked as an |
| 16:36:39 | 17 | exhibit.  Someone might have that. |
| 16:36:44 | 18 | MR. DEVORE:  1011. |
| 16:36:50 | 19 | MR. HARRISON:  Thanks. |
| 16:37:16 | 20 | Q.   In paragraph 39 of your reply report, |
| 16:37:18 | 21 | you're discussing double and triple ordering that's |
| 16:37:24 | 22 | referenced in Exhibit 1011, the Barron's article, |
| 16:37:28 | 23 | right? |
| 16:37:35 | 24 | A.   Yes. |
| 16:37:36 | 25 | Q.   And at the end of that paragraph, you say |

58980aa7-4ab1-4bbc-9ea2-405d025aac3f

JANE D.   NETTESHEIM

Page 200

16:37:38    1    because these sales deals were previously publicly

16:37:44    2    disclosed, this is not new information; do you see

16:37:47    3    that?

16:37:47    4        A.   Yes.

16:37:48    5        Q.   Did any of those publicly disclosed sales

16:37:52    6    deals characterize those as a negative event?

16:37:59    7        A.   No, I don't think so.

16:38:02    8        Q.   Did any one of those announcements

16:38:05    9    criticize LDK for entering into multiple orders of

16:38:12   10    polysilicon sales agreements?

16:38:14   11            MR. HEFFELFINGER:   Documents speak for

16:38:16   12    themselves.

16:38:17   13            THE WITNESS:   No, I don't think so.

16:38:23   14            MR. HARRISON:   Q.   Are you familiar with

16:38:24   15    the concept of "headline risk" or "uncertainty

16:38:29   16    discount" relating to a stock's price?

16:38:35   17        A.   I'm familiar with those terms, I don't

16:38:37   18    know what the discount is though.

16:38:38   19        Q.   What do you mean when you say you don't

16:38:40   20    know what the discount is?

16:38:42   21        A.   Well, you referred to a discount in the

16:38:45   22    stock's price, but I'm familiar with uncertainty

16:38:52   23    terms, headline risk.

16:38:55   24        Q.   And what's your understanding of those

16:38:57   25    terms?

58980aa7-4ab1-4bbc-9ea2-405d025aac3f

JANE D.   NETTESHEIM

Page 201

| 16:38:58 | 1 | A.   Well, uncertainty that all information is |
| 16:39:05 | 2 | not known and there are different future |
| 16:39:13 | 3 | possibilities, so there's uncertainty. |
| 16:39:15 | 4 | Q.   And is it fair to say that disclosures of |
| 16:39:20 | 5 | uncertainty in analyst reports or news articles |
| 16:39:25 | 6 | about a company that don't actually relate to the |
| 16:39:31 | 7 | financial health of the company can cause a decrease |
| 16:39:37 | 8 | in the stock's price? |
| 16:39:42 | 9 | A.   I don't know. |
| 16:39:49 | 10 | Q.   Is headline risk something you considered |
| 16:39:52 | 11 | when you analyze negative confounding information |
| 16:39:57 | 12 | concerning the disclosures on October 3rd, 4th, and |
| 16:40:01 | 13 | 8th, 2007? |
| 16:40:09 | 14 | A.   Well, I'm aware that that term, I think, |
| 16:40:12 | 15 | was in a couple of analyst reports, but I can't say |
| 16:40:17 | 16 | that I analyzed it, per se.  I don't think -- it's |
| 16:40:22 | 17 | not relevant to my analysis. |
| 16:40:24 | 18 | Q.   Why are you -- well, why is it your |
| 16:40:27 | 19 | opinion that that's not relevant to your analysis? |
| 16:40:31 | 20 | A.   The uncertainty that is discussed on |
| 16:40:37 | 21 | October 3rd, 4th, and 8th has to do with the |
| 16:40:40 | 22 | allegations and, on the contrary, the company's |
| 16:40:44 | 23 | denial of the allegations and the fact that the |
| 16:40:47 | 24 | independent investigation hasn't -- the results of |
| 16:40:51 | 25 | that haven't been released.  So that particular |

58980aa7-4ab1-4bbc-9ea2-405d025aac3f

JANE D.  NETTESHEIM

Page 202

| | | |
|---|---|---|
| 16:40:55 | 1 | uncertainty and, I guess, the news headlines are all |
| 16:40:59 | 2 | related to those topics.  And those are all related |
| 16:41:02 | 3 | to the allegations. |
| 16:41:05 | 4 | Q.  Okay.  So you -- it's your opinion that |
| 16:41:08 | 5 | those headlines about uncertainty are subsumed by |
| 16:41:17 | 6 | the disclosures of the allegations themselves? |
| 16:41:21 | 7 | A.  I don't think I said the word -- |
| 16:41:24 | 8 | MR. HEFFELFINGER:  I'm puzzling as to |
| 16:41:24 | 9 | whether that's a mischaracterization.  That's |
| 16:41:32 | 10 | certainly not what she said. |
| 16:41:35 | 11 | MR. HARRISON:  Well, let me make sure I'm |
| 16:41:37 | 12 | clear. |
| 16:41:38 | 13 | Q.  Isn't it significant that analysts are |
| 16:41:40 | 14 | saying that that is -- around that time frame that |
| 16:41:43 | 15 | it's a factor to be considered by investors, the |
| 16:41:45 | 16 | headline risk and the uncertainty? |
| 16:41:52 | 17 | A.  I think they're referring to the fact that |
| 16:41:54 | 18 | there is a lot of information that I think they |
| 16:41:58 | 19 | perceive investors would like to know about the |
| 16:42:01 | 20 | allegations that hasn't been revealed, and that is |
| 16:42:04 | 21 | the cause of the uncertainty. |
| 16:42:06 | 22 | Q.  And it's referring to the uncertainty, |
| 16:42:08 | 23 | right? |
| 16:42:10 | 24 | A.  Yes, it refers to uncertainty. |
| 16:42:12 | 25 | Q.  And that the uncertainty itself is going |

58980aa7-4ab1-4bbc-9ea2-405d025aac3f

JANE D.   NETTESHEIM

Page 203

| 16:42:14 | 1 | to cause pressure on the stock, right? |

16:42:14    1    to cause pressure on the stock, right?

16:42:17    2         A.   Well, the uncertainty as to the -- there's

16:42:21    3    a lot of uncertainty because there are the

16:42:23    4    allegations, there's the company denials, and they

16:42:29    5    are awaiting results of the investigation.  All of

16:42:34    6    that uncertainty is related to the allegations.

16:42:39    7         Q.   Do the disclosures -- well, let me strike

16:42:46    8    that.

16:42:55    9              Is it your opinion that losses because of

16:42:58   10    headline risk or uncertainty discount are

16:43:01   11    recoverable?

16:43:03   12              MR. HEFFELFINGER:  Vague and overbroad.

16:43:06   13              THE WITNESS:  I don't have an opinion on

16:43:08   14    losses due to headline risk or uncertainty.

16:43:11   15              MR. HARRISON:  Q.  Do you agree that

16:43:18   16    concerns about possible litigation can cause a

16:43:20   17    decline in a firm's stock price that's distinct from

16:43:24   18    the effect of any alleged corrective disclosure?

16:43:28   19              MR. HEFFELFINGER:  Vague and overbroad.

16:43:34   20              THE WITNESS:  I don't have an opinion on

16:43:35   21    that.  I'm not sure that that's -- you know,

16:43:42   22    litigation is quite common.  I'm not sure what

16:43:44   23    discount there would be, if any, from potential

16:43:48   24    litigation.

16:43:49   25              MR. HARRISON:  Q.  What about concerns

58980aa7-4ab1-4bbc-9ea2-405d025aac3f

JANE D. NETTESHEIM

Page 204

| | | |
|---|---|---|
| 16:43:51 | 1 | concerning management changes at a company? |
| 16:43:57 | 2 | MR. HEFFELFINGER: Again, vague and |
| 16:43:58 | 3 | overbroad. |
| 16:44:05 | 4 | THE WITNESS: Could you be more specific |
| 16:44:07 | 5 | about management changes? |
| 16:44:08 | 6 | MR. HARRISON: Q. Yeah, management |
| 16:44:10 | 7 | changes unrelated to any allegations of fraud. Do |
| 16:44:15 | 8 | you agree that management changes unrelated to |
| 16:44:19 | 9 | allegations of fraud could cause a decline in the |
| 16:44:21 | 10 | firm's stock price? |
| 16:44:23 | 11 | MR. HEFFELFINGER: Same objections. |
| 16:44:26 | 12 | THE WITNESS: Well, I've seen cases where |
| 16:44:29 | 13 | companies' stock prices have declined when potential |
| 16:44:34 | 14 | management changes were announced. I've seen cases |
| 16:44:37 | 15 | where company stock prices increased when potential |
| 16:44:42 | 16 | management changes were announced. |
| 16:44:44 | 17 | MR. HARRISON: Q. Do you agree that |
| 16:44:54 | 18 | disclosures like the ones you just described can |
| 16:44:57 | 19 | move a company's stock independent of any |
| 16:45:00 | 20 | allegations of fraud? |
| 16:45:01 | 21 | MR. HEFFELFINGER: Same objections and |
| 16:45:03 | 22 | also incomplete hypothetical. |
| 16:45:07 | 23 | THE WITNESS: Management changes can occur |
| 16:45:09 | 24 | for a variety of reasons and that doesn't have to be |
| 16:45:12 | 25 | because of fraud. |

58980aa7-4ab1-4bbc-9ea2-405d025aac3f

JANE D.   NETTESHEIM

Page 205

| | | |
|---|---|---|
| 16:45:14 | 1 | MR. HARRISON:   Q.   And that could cause |
| 16:45:15 | 2 | the company's stock price to increase or decrease, |
| 16:45:19 | 3 | right? |
| 16:45:20 | 4 | A.   It may or it may not.   It depends on the |
| 16:45:25 | 5 | circumstances. |
| 16:45:28 | 6 | Q.   And that's a distinct concept to the |
| 16:45:33 | 7 | disclosure of an allegation of fraud, right? |
| 16:45:38 | 8 | A.   It may be or it could be related to an |
| 16:45:40 | 9 | allegation of fraud. |
| 16:46:34 | 10 | Q.   I want to ask you about paragraph 89 of |
| 16:46:45 | 11 | your report; do you see that? |
| 16:47:03 | 12 | A.   Yes. |
| 16:47:03 | 13 | Q.   You write there in the first couple |
| 16:47:07 | 14 | sentences, "Material information is any information |
| 16:47:09 | 15 | that investors would want to know in making |
| 16:47:11 | 16 | investment decisions with respect to any particular |
| 16:47:14 | 17 | company.   An item of information expected by a |
| 16:47:17 | 18 | reasonable investor to cause a share price reaction |
| 16:47:20 | 19 | greater than the cost to transact in that share is |
| 16:47:23 | 20 | material"; do you see that? |
| 16:47:24 | 21 | A.   Yes. |
| 16:47:25 | 22 | Q.   And what's your basis for that definition? |
| 16:47:31 | 23 | A.   Well, the first part of it is from the |
| 16:47:33 | 24 | cite, Footnote 92, the "Basic" opinion, and the |
| 16:47:43 | 25 | second one just goes to value. |

58980aa7-4ab1-4bbc-9ea2-405d025aac3f

JANE D.   NETTESHEIM

Page 206

| | | |
|---|---|---|
| 16:47:48 | 1 | Q.   Footnote 77 of your report, page 43, do |
| 16:47:59 | 2 | you see where you write, "I have limited the dates |
| 16:48:01 | 3 | included in my estimate of per-share damages to |
| 16:48:04 | 4 | dates with statistically significant residual stock |
| 16:48:07 | 5 | price returns, although as I note below, a material |
| 16:48:12 | 6 | change in share price may not be statistically |
| 16:48:16 | 7 | significant even though it is important to investors |
| 16:48:19 | 8 | with respect to assessing the value of a company"; |
| 16:48:19 | 9 | do you see that? |
| 16:48:23 | 10 | A.   Yes. |
| 16:48:23 | 11 | Q.   What's your basis for that statement? |
| 16:48:27 | 12 | A.   Well, I'm just saying that the only dates |
| 16:48:31 | 13 | that I included in my estimate of price inflation |
| 16:48:33 | 14 | are dates with statistically significant returns. |
| 16:48:39 | 15 | And the second part of the sentence refers to |
| 16:48:43 | 16 | basically what we just looked at beginning at |
| 16:48:50 | 17 | paragraph 89 of my report. |
| 16:48:57 | 18 | Q.   Under that definition of materiality, how |
| 16:48:59 | 19 | can one distinguish movements in a stock's price |
| 16:49:02 | 20 | caused by new material information and random |
| 16:49:05 | 21 | movements that are nothing more than white noise? |
| 16:49:11 | 22 | A.   Well, I'm not sure what you mean by random |
| 16:49:13 | 23 | movements that are white noise because there are |
| 16:49:15 | 24 | reasons for stock price movements.  But I think one |
| 16:49:19 | 25 | approach is to look at information that comes out |

58980aa7-4ab1-4bbc-9ea2-405d025aac3f

JANE D.  NETTESHEIM

Page 207

| | | |
|---|---|---|
| 16:49:22 | 1 | about a stock. |
| 16:49:33 | 2 | Q.  You state that "a material change in share |
| 16:49:35 | 3 | price may not be statistically significant even |
| 16:49:37 | 4 | though it is important to investors with respect to |
| 16:49:40 | 5 | assessing the value of a company."  How do you |
| 16:49:42 | 6 | scientifically test for such a material change when |
| 16:49:49 | 7 | it's not statistically significant? |
| 16:49:53 | 8 | A.  Well, a change in the stock price that is |
| 16:49:58 | 9 | not accounted for by market or industry effects may |
| 16:50:01 | 10 | be due to company-specific information, so it would |
| 16:50:04 | 11 | be the residual return. |
| 16:50:12 | 12 | Q.  If there's information that a reasonable |
| 16:50:14 | 13 | shareholder would consider important but that |
| 16:50:19 | 14 | information doesn't alter the total mix of |
| 16:50:21 | 15 | information about a company, is that material under |
| 16:50:24 | 16 | your definition in your report? |
| 16:50:31 | 17 | A.  You're saying it's information that's |
| 16:50:33 | 18 | important but doesn't change the mix of information? |
| 16:50:36 | 19 | Q.  Right.  Let me state it differently. |
| 16:50:38 | 20 | Is it your opinion that something can be |
| 16:50:40 | 21 | material even if it doesn't alter the total mix of |
| 16:50:43 | 22 | information about a company? |
| 16:50:49 | 23 | A.  Well, if it doesn't alter the mix of |
| 16:50:52 | 24 | information about a company, I'm not sure that it |
| 16:50:54 | 25 | would be information, so I don't know.  I'd have to |

58980aa7-4ab1-4bbc-9ea2-405d025aac3f

JANE D.  NETTESHEIM

Page 208

| | | |
|---|---|---|
| 16:51:01 | 1 | have more specifics, but I'm not sure how that would |
| 16:51:04 | 2 | be information if it doesn't change any information. |
| 16:51:11 | 3 | Q.  Did you make any effort to determine |
| 16:51:13 | 4 | whether the -- each of the alleged false statements |
| 16:51:17 | 5 | in this case was material? |
| 16:51:23 | 6 | A.  Well, the analysis I did of the corrective |
| 16:51:27 | 7 | disclosures, that was an analysis of the materiality |
| 16:51:33 | 8 | of those disclosures.  Those disclosures were |
| 16:51:37 | 9 | related to the misrepresentations. |
| 16:51:49 | 10 | Q.  And did you tie those disclosures back to |
| 16:51:56 | 11 | each of the alleged misrepresentations in the |
| 16:51:59 | 12 | complaint to determine whether they were |
| 16:52:01 | 13 | materially -- the stock price materially declined in |
| 16:52:05 | 14 | the disclosures on October 3rd, 4th, and 8th? |
| 16:52:11 | 15 | A.  As I said earlier, the -- my analysis of |
| 16:52:18 | 16 | the disclosures and also my understanding of the |
| 16:52:21 | 17 | misrepresentations are that the disclosures were |
| 16:52:24 | 18 | corrective of the group of misrepresentations that I |
| 16:52:31 | 19 | called, in summary, inappropriate accounting for the |
| 16:52:37 | 20 | inventory. |
| 16:53:05 | 21 | MR. HARRISON:  Can I just take a quick |
| 16:53:07 | 22 | four-minute break and talk with my colleague and see |
| 16:53:09 | 23 | if there's anything else we need to follow up on. |
| 16:53:12 | 24 | If not, then I'll be done. |
| 16:53:14 | 25 | MR. HEFFELFINGER:  Great. |

JANE D.   NETTESHEIM

Page 209

| | | |
|---|---|---|
| 16:53:15 | 1 | MR. HARRISON:  Okay. |
| 16:53:16 | 2 | THE VIDEOGRAPHER:  Going off the record. |
| 16:53:16 | 3 | The time is 4:53. |
| 16:54:52 | 4 | (Recess was taken.) |
| 16:57:28 | 5 | THE VIDEOGRAPHER:  We're back on the |
| 16:57:29 | 6 | record.  The time is 4:57. |
| 16:57:32 | 7 | MR. HARRISON:  Okay.  So we've taken a |
| 16:57:33 | 8 | break.  I have no further questions at this time, |
| 16:57:35 | 9 | although as Josh and I discussed before, there's a |
| 16:57:40 | 10 | dispute about discovery relating to the expert |
| 16:57:43 | 11 | report so we'll discuss that at another time. |
| 16:57:49 | 12 | MR. DEVORE:  By that, you're referring to |
| 16:57:50 | 13 | the time records? |
| 16:57:51 | 14 | MR. HARRISON:  Yes. |
| 16:57:52 | 15 | MR. DEVORE:  I agree. |
| 16:57:54 | 16 | MR. HARRISON:  But we've already discussed |
| 16:57:55 | 17 | that on the record and I don't have any further |
| 16:57:57 | 18 | questions at this time. |
| 16:57:59 | 19 | MR. HEFFELFINGER:  Okay.  I have |
| 16:58:02 | 20 | nothing -- |
| 16:58:03 | 21 | MR. MILSTEIN:  Go off the record for a |
| 16:58:04 | 22 | second. |
| 16:58:05 | 23 | THE VIDEOGRAPHER:  Okay.  Going off the |
| 16:58:06 | 24 | record.  The time is 4:58. |
| 16:58:09 | 25 | (Recess was taken.) |

58980aa7-4ab1-4bbc-9ea2-405d025aac3f

JANE D.  NETTESHEIM

Page 210

| | | |
|---|---|---|
| 16:59:53 | 1 | THE VIDEOGRAPHER:  This marks the end of |
| 16:59:55 | 2 | Tape Number 4 in the deposition of Jane Nettesheim. |
| 16:59:58 | 3 | Going off the record.  The time is 5:00. |
| | 4 | --oOo-- |
| | 5 | (Whereupon, the deposition was |
| | 6 | adjourned at 5:00 p.m.) |
| | 7 | --oOo-- |
| | 8 | I declare under penalty of perjury that |
| | 9 | the foregoing is true and correct.  Subscribed at |
| | 10 | _____, this _____ day of |
| | 11 | _____, 2009. |
| | 12 | |
| | 13 | |
| | 14 | _____ |
| | 15 | Jane D. Nettesheim |
| | 16 | |
| | 17 | |
| | 18 | |
| | 19 | |
| | 20 | |
| | 21 | |
| | 22 | |
| | 23 | |
| | 24 | |
| | 25 | |

58980aa7-4ab1-4bbc-9ea2-405d025aac3f

JANE D.  NETTESHEIM

1                    CERTIFICATE OF REPORTER

2              I, SHERRI STARR, a Certified Shorthand

3      Reporter, hereby certify that the witness in the

4      foregoing deposition was by me duly sworn to tell

5      the truth, the whole truth, and nothing but the

6      truth in the within-entitled cause;

7              That said deposition was taken in

8      shorthand by me, a disinterested person, at the time

9      and place therein stated, and that the testimony of

10     the said witness was thereafter reduced to

11     typewriting, by computer, under my direction and

12     supervision;

13             That before completion of the deposition,

14     review of the transcript [X] was [ ] was not

15     requested.  If requested, any changes made by the

16     deponent (and provided to the reporter) during the

17     period allowed are appended hereto.

18             I further certify that I am not of counsel

19     or attorney for either or any of the parties to the

20     said deposition, nor in any way interested in the

21     event of this cause, and that I am not related to

22     any of the parties thereto.

23             Dated: _____, 2009.

24

25             _____

               SHERRI STARR, CSR No. 10245

58980aa7-4ab1-4bbc-9ea2-405d025aac3f