**BERMAN DEVALERIO**
Joseph J. Tabacco, Jr. (SBN 75484)
Christopher T. Heffelfinger (SBN 118058)
Anthony D. Phillips (SBN 259688)
One California Street
Suite 900
San Francisco, CA 94111

Liaison Counsel for the Class

**COHEN MILSTEIN SELLERS
& TOLL PLLC**
Herbert E. Milstein
Joshua S. Devore
Matthew B. Kaplan
hmilstein@cohenmilstein.com
1100 New York Avenue, N.W.
West Tower, Suite 500
Washington, DC 20005-3964
Telephone: (202) 408-4600
Facsimile: (202) 408-4699

Lead Counsel for the Class

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re LDK SOLAR SECURITIES LITIGATION | Master File No. C-07-05182-WHA (BZ) <br><br> CLASS ACTION <br><br> **[REDACTED] LEAD PLAINTIFF'S REPLY IN FURTHER SUPPORT OF HIS MOTION FOR PARTIAL SUMMARY JUDGMENT** |
| This Document Relates To: <br><br> ALL ACTIONS. | Judge:      Hon. William Alsup <br> Date:       February 11, 2010 <br> Time:       8:00 a.m. <br> Courtroom:  9, 19th Floor |

**REDACTED PUBLIC VERSION**

[REDACTED] LEAD PLAINTIFF'S REPLY IN SUPP. OF MOTION FOR PARTIAL SUMMARY
JUDGMENT
MASTER FILE NO. C-07-5182-WHA(BZ)

# TABLE OF CONTENTS

**TABLE OF CONTENTS** .................................................................................................................. i

**TABLE OF AUTHORITIES** ......................................................................................................... ii

**MEMORANDUM OF POINTS AND AUTHORITIES** ............................................................. 1

    **I.   THERE IS NO MATERIAL DISPUTE THAT THE INDIVIDUAL DEFENDANTS ARE CONTROL PERSONS** ................................................................. 2

        A.   THE PERSONS WHO CONTROL A COMPANY'S BUSINESS ARE ITS CONTROL PERSONS ............................................................................................. 2

        B.   THE INDIVIDUAL DEFENDANTS ARE CONTROL PERSONS OF LDK .............. 5

            1) Defendant Xiaofeng Peng Was A Control Person ................................................ 6
            2) Defendant Jack Lai Was A Control Person .......................................................... 7
            3) Defendant Qiqiang Yao Was A Control Person ................................................... 8
            4) Defendant Xingxue "Sam" Tong Was A Control Person ..................................... 9
            5) Defendant Yonggang Shao Was A Control Person ............................................ 10
            6) Defendant Liangbao "Lambo" Zhu Was A Control Person ................................. 11
            7) Defendant Gang Wang Was A Control Person .................................................. 12

    **II.  THERE IS NO MATERIAL DISPUTE THAT THE MARKETS FOR LDK SECURITIES WERE EFFICIENT** ................................................................................ 13

    **III. CONCLUSION** ............................................................................................................. 14

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Arthur Children's Trust v. Keim,*
   994 F.2d 1390 (9th Cir. 1993)................................................................................................4

*Celotex Corp. v. Catrett,*
   477 U.S. 317 (1986)..............................................................................................................14

*Howard v. Everex Sys., Inc.,*
   228 F.3d 1057 (9th Cir. 2000).........................................................................................2, 3, 6

*In re Charles Schwab Corp. Sec. Litig.,*
   257 F.R.D. 534......................................................................................................................5

*In re Enron Corp. Sec., Deriv. & "ERISA" Litig.,*
   529 F. Supp. 2d 644 (S.D. Tex. 2006)................................................................................13

*No. 84 Employer-Teamster Joint Council Pension Trust Fund v. Am. W. Holding Corp.,*
   320 F.3d 920 (9th Cir. 2003)...............................................................................................12

*Paracor Fin., Inc. v. GE Capital Corp.,*
   96 F.3d 1151 (9th Cir. 1996)............................................................................................4, 6

*United States v. Gomez-Gutierrez,*
   140 F.3d 1287 (9th Cir. 1998)...............................................................................................6

*Wool v. Tandem Computers, Inc.,*
   818 F.2d 1433 (9th Cir. 1987).........................................................................................2, 3

**STATUTES**

15 U.S.C. § 77f(a) ........................................................................................................................6

15 U.S.C. § 78t(a) ........................................................................................................................3

## MEMORANDUM OF POINTS AND AUTHORITIES

Plaintiff in this securities class action seeks partial summary judgment on two issues. First, Plaintiff asks the Court to find that the seven individuals who are Defendants (the "Individual Defendants") were "control persons" of LDK (and of any other Defendant that they supervised) within the meaning of the federal securities laws. Second, Plaintiff asks the Court to find that the markets for LDK securities during the Class Period were efficient. For the reasons set forth below, Plaintiff's motion should be granted in its entirety.

Defendants argue that none of the Individual Defendants controlled LDK. To support their position Defendants misrepresent the duties and responsibilities of the Individual Defendants, make inconsistent arguments, and incorrectly insist that, to establish control person liability, Plaintiff must show involvement in activities directly related to the alleged fraud. Defendants also make the related argument that they are not control persons because of their own supposed ignorance. In essence, they argue that each of the Individual Defendants knew nothing about key aspects of LDK's accounting, manufacturing or inventory, matters central to both LDK's existence as a business entity and to the fraud alleged by Plaintiff. According to Defendants, this supposed unfamiliarity with aspects of LDK's operations connected to the fraud means that the Individual Defendants cannot be control persons. But control person liability is a broad, remedial provision of the securities laws and, even if true, the Individual Defendants' remarkable ignorance does not immunize them from liability.

Responding to Plaintiff's second argument, Defendants do not dispute that the market for LDK shares was efficient, but they insist, without offering any evidence, that it has not been proven that the market for LDK options was efficient. The certified Class includes both individuals who suffered losses because of transactions in LDK shares during the June 1 through October 7, 2007 Class Period and individuals who suffered losses because of transactions in publicly traded options to purchase or sell LDK shares during the same time period. Plaintiff, however, offers substantial evidence that the market for both LDK's shares and options was efficient. Consequently, the Court should find, as a matter of law, that the relevant markets were efficient.

[REDACTED] LEAD PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT                                                                                                          1
MASTER FILE NO. C-07-5182-WHA(BZ)

Defendants also inexplicably devote much of their Opposition to Plaintiff's Motion for Partial Summary Judgment ("Opp'n") to asserting that they are not liable to Plaintiff, on control person grounds or otherwise, because there was never any fraud. In addition to lacking merit, that argument is irrelevant to the legal questions presented by Plaintiff's motion. Plaintiff's substantial evidence of fraud is discussed in detail in Plaintiff's and Defendants' briefing of Defendants' pending summary judgment motion and Plaintiff does not duplicate here the points he has already made in opposition to that motion.

## I. THERE IS NO MATERIAL DISPUTE THAT THE INDIVIDUAL DEFENDANTS ARE CONTROL PERSONS

Because each Individual Defendant had the ability—whether or not actually exercised—to control the management and policies of LDK during the Class Period each is a "control person" of LDK and is potentially liable to Plaintiff if Plaintiff ultimately proves that LDK engaged in securities fraud. The Court should reject Defendants' efforts to convince it to ignore logic and case law and define control so narrowly that even Defendant Peng, LDK's founder, Chairman of the Board of Directors, Chief Executive Officer and majority stockholder would not be a control person. And even if it were relevant, the Court should also give no credence to Defendants' argument that Individual Defendants should not be deemed control persons because each implausibly claims to know little or nothing about important aspects of LDK's accounting, manufacturing and inventory practices.

### A. THE PERSONS WHO CONTROL A COMPANY'S BUSINESS ARE ITS CONTROL PERSONS

"The 1934 [Securities Exchange] Act was intended, inter alia, to protect investors against manipulations of stock prices and to afford remedies for fraud in securities trading." *Wool v. Tandem Computers, Inc.*, 818 F.2d 1433, 1441 (9th Cir. 1987).[1] "To achieve these goals of deterrence and relief" section 20(a) of the Act imposes liability on control persons—"persons who were able, directly or indirectly, to exert influence on the policy and decisionmaking process

---

[1] Although *Wool* has been overruled to the extent that it set out the Ninth Circuit's former requirement that a plaintiff prove a defendant's "culpable participation" in the underlying fraud to establish control person liability, the remainder of the case remains the law of this Circuit. *Howard v. Everex Sys., Inc.*, 228 F.3d 1057, 1065 n.10 (9th Cir. 2000).

of" primary violators of securities laws. *Id.*

> It was necessary for Congress to include specific controlling persons liability provisions in the Securities Acts because many persons with control over direct perpetrators of securities fraud might otherwise have continued to be immune from liability, in light of applicable legal principles. The direct participation required to sustain a cause of action for a primary violation based on malfeasance or misfeasance could have been avoided or disguised by many persons with control.

Loftus C. Carson, II, *The Liability of Controlling Persons Under the Federal Securities Acts*, 72 Notre Dame L. Rev. 263, 268-69 (1997) (footnotes omitted). "[I]n enacting section 20(a), Congress declined to define the term 'control' because 'it would be difficult if not impossible to enumerate or to anticipate the many ways in which actual control may be exerted.'" *Wool*, 818 F.2d at 1441 (quoting H.R. Rep. No. 1383, 73d Cong., 2d Sess. 26 (1934)). Because the control person provision is "remedial" the criteria for determining if a person is a control person of a primary violator should "be construed liberally and flexibly." *Id.*

To establish that a defendant is a control person a plaintiff need only show that the defendant had "[t]he possession, direct or indirect, of the power to direct or cause the direction of the management and policies of a person [who is a primary violator of the securities laws], whether through ownership of voting securities, by contract, or otherwise." *Everex*, 228 F.3d at 1065 n.9 (quoting 17 C.F.R. § 230.405) (SEC regulation defining "control" person). It is sufficient to show that the Individual Defendants had the requisite power, "it is *not* necessary to show" that a defendant actually "exersize[d]" this power. *Everex*, 228 F.3d at 1065 (emphasis added). Importantly, control can be indirect; direct control over the primary violator is not required. 15 U.S.C. § 78t(a) (control person includes "[e]very person who, directly *or indirectly*, controls" a primary violator) (emphasis added).

Defendants are wrong when they claim that "the determination of control person status depends on a careful assessment of a defendant's degree of control and participation in the corporate activities *at issue*." (Opp'n at 6 (emphasis added)). The cases Defendants cite do not support this view—to the contrary, Defendants' principal case suggests precisely the opposite, explaining that "it is *not* necessary to show actual participation" in the conduct at issue. *Everex*,

228 F.3d at 1065 (emphasis added). Requiring a showing that Defendants had actual "participation in the corporate activities at issue," (Opp'n at 6), would defeat a principal purpose of the control person provision—section 20(a) was meant to impose liability on persons who, in fairness, should be accountable for conduct that they had the ability to control but who, like the Individual Defendants here, had attempted to obscure their direct involvement in the fraud at issue. *See Arthur Children's Trust v. Keim*, 994 F.2d 1390, 1398 (9th Cir. 1993). The issue is whether the Defendants controlled a primary violator, not whether they were actually involved in the primary violation.[2]

Even if Defendants were right, and, a finding of actual participation in specific activities at LDK related to the alleged fraud was required to establish control person liability, the extensive case law to the contrary notwithstanding, the undisputed evidence in this case would require a finding that each Individual Defendant actually did participate in conduct related to the fraud. Because solar wafers were essentially the only product that LDK manufactured during the Class Period, the primary objective of each of LDK's directors and officers was to facilitate profitable solar wafer production. This is exactly the area in which Defendants' fraud was allegedly perpetrated—according to Plaintiff, Defendants misled the public by substantially understating LDK's cost to produce its solar wafers, artificially inflating the Company's profits, and by falsely denying that it was doing so when allegations of misconduct became public.

If Defendants' narrow view of control person liability were accepted, it would be difficult to ever hold any corporate insiders accountable as control persons. In this case, for example, even

---

[2] Defendants mistakenly ague that *Paracor Fin., Inc. v. GE Capital Corp.*, 96 F.3d 1151 (9th Cir. 1996), in which a company's CEO was found not to be a control person, supports their view that control person liability is absent unless there is actual participation in fraud-related conduct. But the highly unusual facts in *Paracor*—a corporate takeover by an outside investor partially funded by a debenture transaction in which the CEO was explicitly "not authorized by [his company] to act on its behalf in the debenture offering"—are far removed from the facts here. *Id.* at 1163-64. Moreover, the *Paracor* court's key holding with respect to the CEO was that he could not be liable as a control person because the undisputed evidence indicated that, even if he was a control person, he had acted in good faith. *Id.* at 1164 (holding that facts "are sufficient to prove [the CEO's] good faith defense as a matter of law"). In fact, the court emphasized that, in determining control person liability, "our inquiry must revolve around the 'management and policies' of the corporation, ***not around discrete transactions***," a view inconsistent with Defendants' position here. *Id.* at 1162 (emphasis added).

though the Individual Defendants are comprised of the entire senior leadership of LDK, Defendants insist that *none of them* are a control person of the company—that LDK was not controlled by its Chief Executive Officer ("CEO") and majority stockholder, by its Chief Operating Officer, by its Chief Financial Officer, by its Chief Accounting Officer or by any of its other senior officers or directors. But nothing in the securities laws supports such a counterintuitive result. To the contrary, section 20(a) was enacted to deal with situations such as the one now before this Court in which determined defendants attempt to use a narrow, formulistic reading of the law to escape liability. The control person provision of the Securities Exchange Act is not unreasonably difficult to understand or apply—it was meant to prevent individuals who control a primary violator from unfairly benefiting from the misconduct of the person or entity they controlled, at the expense of ordinary investors. Plaintiff respectfully submits that each of the Individual Defendants in this case is a control person.

A finding that a defendant is a control person does not, of course, mean that the defendant is liable. In accordance with the statutory scheme each Individual Defendant can argue to a jury that no underlying fraud occurred or that they are not personally liable because they acted in good faith. But those issues are irrelevant to the current motion, and the Individual Defendants are not permitted to deny their obvious role in controlling LDK's business.

**B. THE INDIVIDUAL DEFENDANTS ARE CONTROL PERSONS OF LDK**

As noted in Plaintiff's initial brief, each Individual Defendant signed LDK's prospectus (registration statement), which Plaintiff contends contains material false statements about LDK's inventory, accounting practices, and financial condition in general. This fact, when viewed in conjunction with other undisputed evidence, is sufficient to support a finding that, as a matter of law, Individual Defendants were control persons. The only reasonable interpretation of the Individual Defendants' signatures was that they were certifying both that they had reason to believe that the statements in the prospectus were accurate and that, in their capacities as officers and directors, they had sufficient control over LDK's business to be able to meaningfully and knowledgably assert that these statements were accurate. *See In re Charles Schwab Corp. Sec. Litig.*, 257 F.R.D. 534, 550 (N.D. Cal. 2009 (Alsup, J.) ("It is a plausible inference . . . that

individuals who were officers of [a defendant] . . . and who signed the registration statements were in a position to exercise power and control over" persons or entities alleged to have committed primary violations of the securities laws.). At a minimum, the signing officers and directors had control over whether or not the Company would conduct an initial public offering—an IPO would likely have been impossible absent their decision to sign the prospectus. *See* 15 U.S.C. § 77f(a) (a registration statement cannot become effective unless "signed by each issuer, its principal executive officer or officers, its principal financial officer, its comptroller or principal accounting officer, and the majority of its board of directors"). A contrary interpretation—that a person signing a registration statement does not control the entity on whose behalf he is signing—would be inconsistent with those policies underlying the securities laws. As the Ninth Circuit explained in a securities case, "signers of documents should be held responsible for the statements in the document." *Everex*, 228 F.3d at 1061; *see also United States v. Gomez-Gutierrez*, 140 F.3d 1287, 1288-89 (9th Cir. 1998) ("[T]he affixing of a signature is not a mere formality, but rather signifies that the signer has read the document and attests to its accuracy.").

Defendants argue strenuously that standing "alone," the fact that each Individual Defendant is an officer or director of LDK, or both, does not necessarily make them control persons. (Opp'n at 1.) But "'[a]lthough a person's being an officer or director does not create any *presumption* of control, it is a sort of red light.'" *Paracor*, 96 F.3d at 1163 (quoting *Arthur Children's Trust*, 994 F.2d at 1396) (emphasis by the court). Here Plaintiff relies on much more than each Individual Defendants' job title to establish that they are control persons. Taken together, the positions of the Individual Defendants, the fact that each signed the June 2007 prospectus, and other undisputed facts specific to each Individual Defendant, as set forth in Plaintiff's initial brief and as further discussed below, establish, as a matter of law, each Individual Defendants' status as a control person.

### 1) Defendant Xiaofeng Peng Was A Control Person

Defendant Peng's assertion that he is not a control person of LDK is meritless. The Court need look no farther than the undisputed fact that Peng is LDK's founder, majority shareholder,

1   CEO and Chairman of the Board of LDK.[3] LDK, (Form F-1), at II5-II6 (May 11, 2007) ("F-1"), Kaplan Decl. in Supp. of Pl.'s Mot. for Partial Summ. J. Ex. E (Dkt. No. 337-5). Like every other Individual Defendant, Defendant Peng signed LDK's June 2007 IPO prospectus. If Peng does not control LDK it is difficult to see how anyone could ever be found to control any public company.

Defendants claim that Peng "did not possess the requisite degree of involvement over LDK's operations implicated by this case to render him a control person." (Opp'n at 17.) But even if Peng's direct involvement in conduct related to the fraud was a prerequisite to finding him a control person—and, as discussed above, it is not—this factual assertion is unsustainable. The "operations implicated by this case" are LDK's manufacturing of solar wafers. That was essentially all LDK did during the Class Period—to assert that Peng was not involved in such operations, when he directly or indirectly supervised every single LDK employee, is silly. In fact, Defendants themselves acknowledge that Peng was responsible for approving every purchase of Silicon Raw Material during the Class Period, *see, e.g.,* (Opp'n at 17), raw material that Plaintiff asserts was improperly valued in LDK's financial statements and which was piling up unused in LDK's warehouses because it was of poor quality.

Defendants claim that "there is no evidence indicating that Peng had any role related to how LDK accounted for its inventory" (Opp'n at 17) and note that, during his deposition, ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ *See, e.g.,* Peng Dep. 210:12-270:13, Oct. 23, 2009, Kaplan Opp'n Decl. Ex. 32. But while these facts, if true, may have relevance to determining whether Peng carried out his role as a controlling person in good faith, or acted recklessly when he made statements to investors about LDK's finances, Defendants do not explain why they have anything to do with whether Peng is a control person.

### 2) Defendant Jack Lai Was A Control Person

Defendant Lai's assertion that he is not a control person of LDK is also meritless.

---

[3] During the Class Period Peng owned over 70% of LDK's outstanding shares. LDK (Form F-1/A), at 3 (May 31, 2007), Kaplan Decl. In Support of Pl.'s Opp. To Defs.' Mot. for Summ. J. ("Kaplan. Opp'n Decl."), Ex. 1.

According to Defendants, Lai cannot be a control person because "[b]ased on the undisputed evidence of Lai's lack of involvement in determining and managing the usage rates of LDK's various types of silicon materials, it is clear that Lai did not possess the type of active influence over LDK or others necessary to render him a control person under §20(a)." (Opp'n at 20.) But Lai was undisputedly responsible for all of LDK's financial reporting, including the reporting that was false. His asserted ignorance during his deposition about virtually any aspect of LDK's manufacturing process—information which it would seem that Lai would need to know to determine whether LDK's accounting accurately reflected its use of raw material—does not insulate him from liability. Even if it is true that "Plaintiff has not and cannot argue that Lai was responsible for making decisions about the sources of silicon purchased, the prices paid for this silicon, or the rate at which different, materials were used," (*Id.*), Lai was responsible for ensuring that those decisions were accurately reflected in LDK's financial reporting. Moreover, like every other Individual Defendant, Defendant Lai signed LDK's June 2007 IPO prospectus.

Ironically, it is undisputed that Lai does precisely what it is that Defendants claim Peng's failure to do insulates him from being a control person. Compare Opp'n at 14 ("Peng was not involved with and did not manage LDK's accounting operations or policies") with Decl. of Jack Lai in Supp. of Defs.' Mot. for Summ. J. at 2, Dkt. No. 344("As CFO, I oversee LDK's financial reporting, as well as its finance department . . . . [and, with others] determine LDK's accounting policies and procedures.").

### 3) Defendant Qiqiang Yao Was A Control Person

Defendant Yao's assertion that he was not a control person is also meritless. The undisputed facts are that Yao was the company's highest ranking accounting officer, that he was involved in designing and implementing LDK's internal control and accounting procedures and that, like each of the Individual Defendants, he was a signatory of the company's June 2007 IPO prospectus. These facts are sufficient to determine that he is a control person of LDK.

Defendants' claim that Yao had nothing to do with the accounting misconduct alleged in this case—that while he may have had "some" involvement in LDK's accounting, his principal responsibility was "raising capital for the company" (Opp'n at 12)—is misleading. According to

LDK's October 4, 2007 press release, Yao was LDK's "Chief Accounting Officer" a title which suggests he had more than "some" involvement in LDK's accounting.[4] LDK (Form 6-K), Oct. 4, 2007, Kaplan Opp'n Ex. 26, Dkt. No. 432-8.

The press release, which assured investors that whistleblower Charlie Situ's allegations, which had just become public, had "no merit," explained that Yao reported directly to LDK's CFO, Defendant Lai, and that he had supervised Mr. Situ, the only person at LDK, other than Lai, with any familiarity with U.S. GAAP. *See id.* Defendants also assert that, to the extent Yao was involved in accounting, he was only responsible for applying "Chinese domestic accounting" rules. (Opp'n at 12.) Defendants presumably want the Court to infer that Chinese accounting is so utterly unrelated to U.S. accounting that that it is self evident that, even though he was the direct supervisor of Mr. Situ, LDK's only U.S. C.P.A., nothing Yao did was connected to LDK's allegedly false reporting under U.S. GAAP. But Defendants present no evidence to support such a dubious proposition. In any event, if it is true that Yao opted not to learn anything about U.S. GAAP, even though he was ostensibly the chief accounting officer of a public company whose securities were traded in the United States (and not in China), this may be evidence that Yao acted recklessly or with an absence of good faith, but this has little relevance to determining whether he was a control person of LDK.

### 4) Defendant Xingxue "Sam" Tong Was A Control Person

Defendant Tong's assertion that he was not a control person is also meritless. Tong was LDK's President and Chief Operating Officer, a member of the company's board of directors and

---

[4] Alternatively, Defendants' argument is an admission the October 4, 2007 press release, which Plaintiff alleges contains material false statements, was making a false statement when it asserted that Yao was LDK's Chief Accounting Officer. During his deposition Yao testified that, despite LDK's SEC filings to the contrary, he was not LDK's Chief Accounting Officer; 
Yao Dep. 31:16-24, Aug. 24, 2009, attached as Ex. X to accompanying Decl. of Matthew B. Kaplan. Cites to "Kaplan Ex." are cites to exhibits attached to Kaplan's accompanying declaration.

[REDACTED] LEAD PLAINTIFF'S REPLY IN SUPP. OF MOTION FOR PARTIAL SUMMARY JUDGMENT
MASTER FILE NO. C-07-5182-WHA(BZ)

9

a signatory of LDK's January 2007 IPO prospectus. Defendant Peng testified that, as his title suggests, Tong "was in charge of the overall operation" at LDK. Peng Dep. 52:22-53:9, Oct. 22, 2009, Devore Decl. Ex. 6 (Dkt. No. 443-6). Tong himself testified that his job was to ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Tong Dep. 23:7-24:11, Sept. 16, 2009, Kaplan Ex. A. Among Tong's direct reports was LDK's ▮▮▮▮▮▮▮▮▮▮▮▮ *Id.* at 33:25-35:17. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *See, e.g.*, Tong Dep. Ex. 208, Kaplan Ex. B; Tong Dep. Ex. 209, Kaplan Ex. C; Tong Dep. Ex. 210, Kaplan Ex. D; Tong Dep. Ex. 211, Kaplan Ex. E. Once again, Defendants' argument is ironic—Defendants claim Peng is not a control person because he did not "participate in the day-to-day affairs of LDK," [5] (Opp'n at 14) while specifically admitting that Tong did so. (Opp'n at 9.)

### 5) Defendant Yonggang Shao Was A Control Person

The undisputed evidence also shows that Defendant Shao exercised control over LDK. Shao was one of LDK's two Senior Vice Presidents and a member of its board of directors and, like the other Individual Defendants, he signed LDK's June 2007 prospectus. He testified that he ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Shao Dep. at 11:24-12:1, 47:18-48:11, Sept. 9, 2009, Kaplan Ex. F. Among these documents was a ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *See* Devore Decl. Ex. 5, Dkt. No. 443-5; LDK-NDCA-00769524, Kaplan Ex. G; LDK-NDCA02-00011903, Kaplan Ex. H.

Defendants claim that Shao had no control over LDK—or at least over any aspect of LDK related to the alleged fraud—because his job responsibilities "centered around raising capital for LDK." (Opp'n at 12.) But Defendants' argument that "raising capital for LDK" is unrelated to defrauding its investors is nonsensical. Common sense indicates that Shao's ability to raise funds

---

[5] A statement which is, in any event, verifiably false given the thousands of emails showing Peng's day-to-day involvement in managing LDK.

[REDACTED] LEAD PLAINTIFF'S REPLY IN SUPP. OF MOTION FOR PARTIAL SUMMARY JUDGMENT
MASTER FILE NO. C-07-5182-WHA(BZ)

10

on LDK's behalf was closely linked to LDK's financial reporting—lenders and investors could only be expected to provide capital if LDK's financial statements indicated that the company was or likely would be profitable and only if they had confidence in the accuracy of those financial statements. Moreover, Shao testified that he was directly involved in ▌▌▌▌▌ which is hardly surprising given his responsibility of raising funds for LDK. Shao Dep. 117:23-118:7. Plaintiff, of course, alleges that LDK's IPO was based on a prospectus that contained numerous false statements.

### 6) Defendant Liangbao "Lambo" Zhu Was A Control Person

The undisputed evidence also shows that Defendant Zhu possessed the ability to control LDK. As Plaintiff noted in his initial brief, Zhu, LDK's other Senior Vice President, supervised key aspects of LDK's operations, was a member of LDK's board and signed LDK's June 2007 IPO prospectus, facts sufficient to establish his status as a control person.

But even if Defendants were correct that, to establish control person liability, Plaintiff needs not only to show that Zhu had the power to control LDK's operations, but also that he had a more direct link with the conduct related to the alleged fraud, there is abundant, undisputed evidence of such a link. Among this evidence is the following:

- An email in which Zhu ▌▌▌▌▌▌▌▌▌▌▌▌ al. Chen Dep. Ex. 64, Kaplan Ex. I.
- An email in which Zhu ▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌ Zhu Dep. Ex. 316, Kaplan Ex. J.
- Numerous emails showing Zhu's ▌▌▌▌▌▌▌▌ See, e.g., LDK-NDCA-00501441, Kaplan Ex. K; LDK-NDCA-00501463, Kaplan Ex. L; LDK-NDCA-00501578, Kaplan Ex. M; LDK-NDCA-00501664, Kaplan Ex. N; LDK-NDCA-00775508, Kaplan Ex. O; LDK-NDCA-00501366, Kaplan Ex. P; LDK-NDCA-00501647, Kaplan Ex. Q; LDK-NDCA-00503223, Kaplan Ex. R; LDK-NDCA-00503303, Kaplan Ex. S; LDK-NDCA-00772367, Kaplan Ex.

1     T; LDK-NDCA-00772369, Kaplan Ex. U.

2 • ███████████████████████████████

3     Zhu Dep. 44:22-45:16, Kaplan Opp'n Decl. Ex. 18, Dkt. No. 430-18.

Ignoring this uncontroverted evidence, Defendants say that Zhu cannot be a control person because, according to his difficult to credit deposition testimony, he is remarkably ignorant about LDK's manufacturing processes and related accounting. (Opp'n at 7.) But again, while such ignorance might support a finding that Zhu acted recklessly or with an absence of good faith, especially when he signed LDK's June 2007 IPO prospectus, which purports to contain extensive details on LDK's manufacturing and accounting procedures, it is of little, if any, relevance to the determination of whether Zhu was a control person.

### 7) Defendant Gang Wang Was A Control Person

The undisputed evidence also shows that Defendant Wang exercised control over LDK. Again, in addition to being a voting member of LDK's board of directors, and a signatory of the June 2007 IPO prospectus, facts sufficient to establish his status as a control person, Wang was actively involved in internal control issues. ███████████████████████████████ ███████████████████████████████ Wang Dep. 47:16-48:24, Sept. 21, 2009, Kaplan Ex. V. Moreover, ███████████████████████ on the internal LDK investigation that Defendants (wrongly) insist clears them of all wrongdoing. LDK-NDCA-01867303, Kaplan Ex. W. Although Wang, alone among the Individual Defendants, was a member of LDK's board, but not an officer of the Company, he was not an "independent" director. ███████ ███████████████████████████████ the Natixis investment bank, which was one of LDK's principle investors. Wang Dep. 45:4-46:18; *see also No. 84 Employer-Teamster Joint Council Pension Trust Fund v. Am. W. Holding Corp.*, 320 F.3d 920 (9th Cir. 2003) (substantial investors in a corporation can be control persons of the corporation).

Defendants insist that Wang is not a control person because he did not actively involve himself in the "day-to-day" management of LDK and because he "relied on other employees of LDK both to update him on developments at LDK and to run the Company." (Opp'n at 10.) But even if it were true that Wang declined to exercise the authority over LDK that he actually

possessed, and relied unquestioningly on information provided to him by subordinates, such facts would have little, if any, relevance on the issue of whether or not Wang was a control person.

## II. THERE IS NO MATERIAL DISPUTE THAT THE MARKETS FOR LDK SECURITIES WERE EFFICIENT

Defendants do not oppose Plaintiff's motion for a partial summary judgment order determining that the market for LDK securities is efficient, except that, in two sentences in a footnote, they suggest that Plaintiff has not presented sufficient evidence to warrant summary judgment on the efficiency of the market for options to sell or purchase LDK shares. But Defendants point to no evidence—in the form of an opinion by their loss causation and damages expert or otherwise—to counter Plaintiff's evidence of market efficiency.

Moreover, in these two sentences Defendants blatantly misrepresent the truth. They claim that LDK's options are not "traded on one of the major exchanges." (Opp'n at 1 n.1.) But LDK's options are in fact traded on the Chicago Board Options Exchange—the largest options exchange in the country. *See* Nettesheim Decl. Ex. 1 at 85 (Dkt. No. 436-1); *see also* Chicago Board Options Exchange 2008 Annual Report, at 2, http://www.cboe.com/AboutCBOE/AnnualReportArchive/AnnualReport2008.pdf (describing Chicago Board Options Exchange as "the largest U.S. options exchange and creator of listed options"). Moreover, Plaintiff's expert has set out extensively how LDK's options (like all options) are derivative instruments whose prices were dependent on the value of LDK's shares, and that the actual market pricing of those options indicates that the market was in fact efficient as there were no opportunities for arbitrage profits. Nettesheim Decl. Ex. 1 at 84-90; *see also In re Enron Corp. Sec., Deriv. & "ERISA" Litig.*, 529 F. Supp. 2d 644, 754 (S.D. Tex. 2006) ("The market price for options is directly responsive . . . to changes in the market price of the underlying stock, and to information affecting that stock." (quoting *Deutschman v. Beneficial Corp.*, 841 F.2d 502 504 (3d Cir. 1988))).

Consequently, the Court should rule that, as a matter of law, the markets for LDK's shares and for the relevant options to purchase or sell these shares were efficient. Defendants have conceded that the market for LDK's shares (the New York Stock Exchange) was efficient. While they purport to challenge the efficiency of the market for relevant LDK options, they offer no

[REDACTED] LEAD PLAINTIFF'S REPLY IN SUPP. OF MOTION FOR PARTIAL SUMMARY JUDGMENT
MASTER FILE NO. C-07-5182-WHA(BZ)                                                                13

evidence whatsoever to support their contention that the options market was not efficient. They also do not explain why the substantial evidence proffered by Plaintiff's expert that the options market was efficient should not be credited. Consequently, there is no disputed issue of material fact on this subject—that the market for LDK's securities during the class period was efficient—and partial summary judgment should be granted on this issue. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24, (1986) ("One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses, and we think it should be interpreted in a way that allows it to accomplish this purpose.").

### III. CONCLUSION

For the foregoing reasons, and for those set forth in Plaintiff's opening brief, Plaintiff respectfully requests the Court grant Plaintiff's Motion for Partial Summary Judgment.

DATED: January 28, 2010

COHEN MILSTEIN SELLERS & TOLL PLLC

/s/ Herbert E. Milstein
Herbert E. Milstein
Joshua S. Devore
Matthew B. Kaplan
Cohen Milstein Sellers & Toll PLLC
hmilstein@cohenmilstein.com
1100 New York Avenue, N.W.
West Tower, Suite 500
Washington, DC 20005-3964
Telephone: (202) 408-4600
Facsimile: (202) 408-4699

Lead Counsel for the Class


Joseph J. Tabacco, Jr.
Christopher T. Heffelfinger
Anthony D. Phillips
Berman DeValerio
One California Street
Suite 900
San Francisco, CA 94111

Liaison Counsel for the Class

[REDACTED] LEAD PLAINTIFF'S REPLY IN SUPP. OF MOTION FOR PARTIAL SUMMARY JUDGMENT
MASTER FILE NO. C-07-5182-WHA(BZ)

14