Case3:07-cv-05182-WHA Document477 Filed01/28/10 Page1 of 19

LATHAM & WATKINS LLP
James J. Farrell (Bar No. 166595)
james.farrell@lw.com
355 South Grand Avenue
Los Angeles, California 90071
Telephone: (213) 485-1234
Facsimile: (213) 891-8763

LATHAM & WATKINS LLP
John C. Tang (Bar No. 212371)
john.tang@lw.com
Raymond A. Gallenberg (Bar No. 239484)
ray.gallenberg@lw.com
140 Scott Drive
Menlo Park, California 94025
Telephone: (650) 328-4600
Facsimile: (650) 463-2600

LATHAM & WATKINS LLP
Matthew D. Harrison (Bar No. 210981)
matt.harrison@lw.com
505 Montgomery St., Suite 2000
San Francisco, California 94111
Telephone: (415) 391-0600
Facsimile: (415) 395-8095

Attorneys for Defendants

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

In re LDK SOLAR SECURITIES LITIGATION

---

This Document Relates To:

ALL ACTIONS.

MASTER FILE NO. C-07-05182-WHA (BZ)

**REPLY BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO EXCLUDE EVIDENCE AND ARGUMENT REGARDING JANE D. NETTESHEIM'S OPINIONS ON LOSS CAUSATION AND DAMAGES**

Judge: Hon. William H. Alsup
Date: February 11, 2010
Time: 8:00 a.m.
Courtroom: 9, 19th Floor

LATHAM & WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

REPLY BRIEF ISO DEFENDANTS' MOTION TO EXCLUDE NETTESHEIM'S OPINIONS
MASTER FILE NO. C-07-05182-WHA (BZ)

Case3:07-cv-05182-WHA Document477 Filed01/28/10 Page2 of 19

# TABLE OF CONTENTS

**Page**

I. PRELIMINARY STATEMENT ..... 1

II. NETTESHEIM'S LOSS CAUSATION OPINIONS SHOULD BE EXCLUDED ..... 2

A. Nettesheim's Loss Causation Analysis Improperly Assumes That Information Disclosed On October 3, 4 and 8, 2007 Was Corrective ..... 2

1. Plaintiff Asks The Court To Analyze Loss Causation Under A Legal Framework That Does Not Apply Here. ..... 2

2. Nettesheim's Assumptions Are Fatal To The Reliability Of Her Loss Causation Opinions. ..... 3

B. Nettesheim Failed To Disaggregate Negative, Confounding Information. ..... 7

1. Nettesheim Failed To Parse Out Negative, Confounding Information Released To The Market On The Alleged Disclosure Dates. ..... 7

2. Nettesheim Failed To Account For Headline Risk. ..... 9

C. The Court's Prior Rulings Do Not Preclude Defendants' Arguments. ..... 10

III. NETTESHEIM'S DAMAGES OPINIONS SHOULD BE EXCLUDED ..... 10

A. Nettesheim's Constant-Dollar Methodology Is Flawed And Unreliable ..... 10

B. Nettesheim's Constant-Percentage Methodology Is Flawed And Unreliable ..... 11

C. Nettesheim's Damages Methodology Is Flawed Because She Uses An Unreliable Trading Model For Estimating Damages. ..... 13

D. Nettesheim's Damages Methodology Is Flawed Because Her Regression Analysis Is Unreliable And Based Upon Insufficient Facts And Data. ..... 13

IV. THE COURT MUST EXCLUDE NETTESHEIM'S NEW DECLARATION ..... 15

V. CONCLUSION ..... 15

LATHAM & WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

i

REPLY BRIEF ISO DEFENDANTS' MOTION TO EXCLUDE NETTESHEIM'S OPINIONS
MASTER FILE NO. C-07-05182-WHA (BZ)

Case3:07-cv-05182-WHA Document477 Filed01/28/10 Page3 of 19

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Barber v. United Airlines, Inc.*,
17 Fed. Appx. 433 (7th Cir. 2001) .......... 14

*Beller v. United States*,
221 F.R.D. 696 (D.N.M. 2003) .......... 15

*Cabrera v. Cordis Corp.*,
134 F.3d 1418 (9th Cir. 1998) .......... 11

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986) .......... 10

*Claar v. Burlington N. R. R. Co.*,
29 F.3d 499 (9th Cir. 1994) .......... 14

*Daubert v. Merrell Dow Pharms., Inc.*,
509 U.S. 579 (1993) .......... passim

*De Jager Constr., Inc. v. Scheininger*,
938 F. Supp. 446 (W.D. Mich. 1996) .......... 14, 15

*Dura Pharms., Inc. v. Broudo*,
544 U.S. 336 (2005) .......... passim

*In re Bextra & Celebrex Mktg. Sales Practices & Prod. Liab. Litig.*,
524 F. Supp. 2d 1166 (N.D. Cal. 2007) .......... 14

*In re Broadcom*,
No. SA CV 01-274-GLT, 2005 U.S. Dist. LEXIS 12118 (C.D. June 3, 2005) .......... 13

*In re LDK Solar Sec. Litig.*,
584 F. Supp. 2d 1230 (N.D. Cal. 2008) .......... 10

*In re Maxim Integrated Prods., Inc. Sec. Litig.*,
639 F. Supp. 2d 1038 (N.D. Cal. 2009) .......... 3, 4, 6, 7

*In re MIVA, Inc. Sec. Litig.*,
No. 2:05-cv-201-FtM-29DNF, 2009 WL 3821146 (M.D. Fla. Nov. 16, 2009) .......... 4, 7

*In re Omnicom Group, Inc. Sec. Litig.*,
541 F. Supp. 2d 546 (S.D.N.Y. 2008) .......... 3, 7, 10

*In re Oracle Corp. Sec. Litig.*,
No. C 01-00988 SI, 2009 WL 1709050 (N.D. Cal. June 19, 2009) .......... 1, 4, 6, 15

*In re St. Jude Med., Inc., Sec. Litig.*,
629 F. Supp. 2d 915 (D. Minn. 2009) .......... 4

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

ii

REPLY BRIEF ISO DEFENDANTS' MOTION TO EXCLUDE NETTESHEIM'S OPINIONS
MASTER FILE NO. C-07-05182-WHA (BZ)

Case3:07-cv-05182-WHA Document477 Filed01/28/10 Page4 of 19

*In re Vivendi Universal, S.A. Sec. Litig.*,
634 F. Supp. 2d 352 (S.D.N.Y. 2009)....................2, 3, 12

*In re Williams Sec. Litig.*,
496 F. Supp. 2d 1195 (N.D. Okla. 2007)....................12, 13, 14

*In re Williams Sec. Litig.-WCG Subclass*,
558 F.3d 1130 (10th Cir. 2009)....................4, 6, 7, 12

*In re WorldCom, Inc. Sec. Litig.*,
No. 02 Civ. 3288 (DLC) (S.D.N.Y. Mar. 3 2005)....................13

*In re Zonagen, Inc. Sec. Litig.*,
322 F. Supp. 2d 764 (S.D. Tex. 2003)....................7

*Lentell v. Merrill Lynch*,
363 F.3d 161 (2d Cir. 2005)....................2, 3

*Leviton Mfg. Co., Inc. v. Nicor, Inc.*,
245 F.R.D. 524 (D.N.M. 2007)....................15

*Metzler Inv. GMBH v. Corinthian Colleges, Inc.*,
540 F.3d 1049 (9th Cir. 2008)....................3, 6, 7

*Point Prods. A.G. v. Sony Music Entm't, Inc.*,
No. 93 Civ.4001 (NRB), 2004 U.S. Dist. LEXIS 2676 (S.D.N.Y. Feb. 20, 2004)....................15

**STATUTES**

15 U.S.C. § 78u-4(b)(5)....................10

**OTHER AUTHORITIES**

The Rutter Group, Cal. Prac. Guide: Fed. Civ. Proc. Before Trial, ¶ 9:187 (2009)....................10

**RULES**

Fed. R. Evid. 702....................1, 11, 12

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

iii

REPLY BRIEF ISO DEFENDANTS' MOTION TO
EXCLUDE NETTESHEIM'S OPINIONS
MASTER FILE NO. C-07-05182-WHA (BZ)

Case3:07-cv-05182-WHA Document477 Filed01/28/10 Page5 of 19

## I. PRELIMINARY STATEMENT

After wading through the rhetoric and invective in Plaintiff's Opposition, the Court should recognize fairly quickly that Ms. Jane D. Nettesheim's ("Nettesheim") opinions regarding loss causation and damages are unsupportable under Federal Rule of Evidence 702 ("FRE") and *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993). Plaintiff's Opposition is based primarily on the assertion that Defendants' challenges go to the weight of the evidence, not its admissibility. Opp. at 7. Yet Plaintiff overlooks the standard under FRE 702 and *Daubert*, which calls for the exclusion of expert opinions unless they are "the product of reliable principles and methods" or "based upon sufficient facts or data." FRE 702. Nettesheim's methodology and opinions fail to meet these two requirements, and should be excluded.

***First,*** despite Plaintiff's claim that Nettesheim performed an extensive loss causation analysis,[1] it is clear that Nettesheim's assumptions regarding what Plaintiff will prove are fatal to her opinions. The foundation for her assumptions – Situ's allegations and the revelation of these admittedly incorrect rumors to the market – have been abandoned by Plaintiff. Thus, Nettesheim is left with making only vague, conclusory statements that loss causation is established because the market would have understood disclosures on October 3 and 8 as a veiled message revealing LDK's alleged misapplication of the weighted average cost method to a single cost pool – *i.e.*, the fraud Plaintiff now claims caused his loss. But Nettesheim offers no analysis – and therefore no proof – regarding any causal connection between such fraud and the drop in LDK's stock.

***Second,*** Plaintiff attempts to salvage Nettesheim's flawed analysis (and his failure of proof) regarding loss causation by injecting the Second Circuit's broader "materialization of the risk" standard. That standard has no application in this case because Plaintiff alleges specific corrective disclosures, which he must tie to the alleged fraud he now claims caused his loss.

***Third,*** Nettesheim goes to great lengths to explain away negative information that could have impacted LDK's stock price on the purported corrective disclosure dates. Her

---

[1] As noted below, the January 21, 2010 Nettesheim Declaration (Dkt. No. 436), which includes 15-pages of additional opinions, purported evidentiary support and analysis in an attempt to remediate Nettesheim's opinion – is plainly improper, and must be excluded. *In re Oracle Corp. Sec. Litig.*, No. C 01-00988 SI, 2009 WL 1709050, at *26-27 (N.D. Cal. June 19, 2009) (excluding supplemental disclosure attempting to shore up expert's original opinion).

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

1

REPLY BRIEF ISO DEFENDANTS' MOTION TO EXCLUDE NETTESHEIM'S OPINIONS
MASTER FILE NO. C-07-05182-WHA (BZ)

Case3:07-cv-05182-WHA Document477 Filed01/28/10 Page6 of 19

"consideration" of this information, however, came only after Defendants alerted the Court to her flawed analysis at the class certification stage. This effort only illustrates the strained, ad hoc rationalization Nettesheim must employ to support Plaintiff's allegation that all the residual stock drops on October 3 and 8 were fraud-related. Indeed, Nettesheim's loss causation opinion is unsupportable because she failed to parse out the adverse impact on LDK's stock price of the negative, confounding information Plaintiff has now admitted was a false rumor made by Situ.

***Fourth***, Plaintiff's Opposition provides nothing from which this Court can conclude that Nettesheim's estimates of per share inflation are scientifically valid and reliable under either the constant-dollar or the constant-percentage method.

***Fifth***, Plaintiff's attempt to justify Nettesheim's trading model and the flawed methodology behind Nettesheim's event study is in vain. Neither Plaintiff nor Nettesheim can refute the fact that Nettesheim's trading model has previously been excluded specifically because of *Daubert* shortcomings. Similarly, neither can justify Nettesheim's decision to cherry pick data in order to yield statistically significant stock price movements on October 4, 2007.

In short, Nettesheim's methodology and opinions are unreliable, and must be excluded.

## II. NETTESHEIM'S LOSS CAUSATION OPINIONS SHOULD BE EXCLUDED

### A. Nettesheim's Loss Causation Analysis Improperly Assumes That Information Disclosed On October 3, 4 and 8, 2007 Was Corrective.

#### 1. Plaintiff Asks The Court To Analyze Loss Causation Under A Legal Framework That Does Not Apply Here.

Plaintiff attempts to establish a more relaxed standard under which the Court should analyze Nettesheim's flawed loss causation opinions by relying heavily on Second Circuit precedent about "materialization of the risk." Opp. at 2, 10-11 (citing *In re Vivendi Universal, S.A. Sec. Litig.*, 634 F. Supp. 2d 352, 363 (S.D.N.Y. 2009); *Lentell v. Merrill Lynch & Co. Inc.*, 396 F.3d 161, 173 (2d Cir. 2005)). Under this line of cases, Plaintiff claims that he need only prove on summary judgment that a "disclosure" is "relevant" or "related to" or "within the zone" of a misrepresentation, not that any such disclosure was *actually* corrective of a misstatement or a concealed fraud. Opp. at 2, 10-11. But this case law – which Plaintiff erroneously describes as "controlling" (*id*. at 9) – has no application in a case where, as here, a plaintiff claims that

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

2

REPLY BRIEF ISO DEFENDANTS' MOTION TO EXCLUDE NETTESHEIM'S OPINIONS
MASTER FILE NO. C-07-05182-WHA (BZ)

Case3:07-cv-05182-WHA Document477 Filed01/28/10 Page7 of 19

specific corrective disclosures constituted the means by which the alleged fraud became "generally known" by the market. As the district court in *Vivendi* explained, it analyzed the plaintiffs' claims about the gradual revelation of the truth about Vivendi's alleged deteriorating liquidity condition "[u]nder a broader, materialization-of-the-risk theory" because it was "not a case of corrective disclosure." 634 F. Supp. 2d at 366; *accord Lentell*, 396 F.3d at 175 ("There is no allegation that the market reacted negatively to a corrective disclosure. . . .").

Here, Plaintiff pled that two specific news releases to the market on October 3 and 8, 2007 disclosed "allegations of inventory discrepancies at LDK" and "shortages of usable feedstock." Compl. ¶¶ 127-29. He continues to assert only that these specific corrective disclosures revealed the purported fraud at LDK – albeit now asserting euphemistically that they disclosed a scheme to misapply "weighted average cost pools." Ex. 2[2] at ¶¶ 26-54; Ex. 17 at 136:14-22, 138:3-6, 170:8-23; Opp. at 14-16. Plaintiff has never pled or advanced the claim that the purported accounting theory he now espouses was gradually or indirectly revealed to the market, as in *Vivendi* or *Lentell*. Where corrective disclosures are involved, Plaintiff must establish more than the attenuated and speculative connection he asserts here; "where a disclosure does not reveal the falsity of the alleged misstatements, it does not qualify as 'corrective.'" *In re Omnicom Group, Inc. Sec. Litig.*, 541 F. Supp. 2d 546, 551-52 (S.D.N.Y. 2008) ("This is not a case about materialization of an undisclosed risk. Thus, the absence of a corrective disclosure would be 'fatal under Second Circuit precedent.'"); *see also In re Maxim Integrated Prods., Inc. Sec. Litig.*, 639 F. Supp. 2d 1038, 1046-47 (N.D. Cal. 2009) (noting that speculative statements in purported corrective disclosures are insufficient to establish loss causation); *Metzler Inv. GMBH v. Corinthian Colls., Inc.*, 540 F.3d 1049, 1064 (9th Cir. 2008) (same). Nettesheim's opinions make no effort to satisfy this required causal connection.

**2. Nettesheim's Assumptions Are Fatal To The Reliability Of Her Loss Causation Opinions.**

Plaintiff denies that Nettesheim merely assumed loss causation has been established, claiming that she (1) performed an extensive review of analyst reports and news articles, and (2)

[2] Unless otherwise noted, all citations to "Ex. __" are to the Declaration of Meghna Subramanian filed as document number 376 in the above-captioned matter.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

3

REPLY BRIEF ISO DEFENDANTS' MOTION TO EXCLUDE NETTESHEIM'S OPINIONS
MASTER FILE NO. C-07-05182-WHA (BZ)

conducted an event study. Opp. at 4-5, 8, 13-18. He claims this analysis allowed Nettesheim to reliably conclude that the "weighted average cost pool" theory Plaintiff now advances was disclosed on October 3, 4 and 8, and thus, caused LDK's stock to drop, resulting in economic losses to investors. *Id.* at 2, 4-5, 8-11. But this claim does not mesh with Nettesheim's actual opinions.[3] Plaintiff must provide evidence that there is a tangible, causal connection between the diminution in the value of LDK's stock and the actual fraud of which he complains. *In re Maxim*, 639 F. Supp. 2d at 1046-47; *In re Williams*, 558 F.3d at 1140. Nettesheim cannot offer proof of such a connection because of her incorrect and improper assumptions.

In developing her loss causation opinions, Nettesheim assumed, based on allegations in Plaintiff's Complaint, that Situ's accusations of missing and unusable inventory were true. Ex. 2 at ¶ 8, Ex. 1 at 9:11-13, 40:9-12, 42:22-43:2, 87:3-9. Plaintiff excoriates Defendants for pointing out that he will no longer prove these allegations at trial. Opp. at 9 n.6. But this criticism is unsustainable when read in connection with Plaintiff's filings with the Court and the discovery record developed in this case. *See, e.g.*, Dkt. No. 428 at 1 (describing Plaintiff's sole theory of liability as one where "LDK was averaging high-value and low-value raw material together in a single pool to determine the value of each kilogram of raw material on its books"); Ex. 18 at 13; Ex. 8 at 98:18-23; Ex. 9 at 24; Ex. 10 at 50:5-52:25.[4] Now that Plaintiff has admitted he is unable to prove Situ's allegations, Nettesheim cannot establish that the purported October 3-4

---

[3] As an initial matter, an event study showing statistically significant stock drops on alleged disclosure dates alone cannot establish loss causation, as Plaintiff suggests (Dkt. No. 428 at 25). *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 342-44 (2005); *In re Williams Sec. Litig.-WCG Subclass*, 558 F.3d 1130, 1140 (10th Cir. 2009); *In re MIVA, Inc., Sec. Litig.*, No. 2:05-cv-201-FtM-29DNF, 2009 WL 3821146, at *11-12 (M.D. Fla. Nov. 16, 2009).

[4] Plaintiff retreats to the "broad" allegations of his Complaint, which he claims, in hindsight, describe his sole theory of liability about "weighted average cost pools" of inventory. Opp. at 9 n.6. This is not accurate. While the Complaint references one financial metric associated with inventory – and the potential impact on that metric had Situ's claims of missing and useless inventory been true – it advances nothing close to allegations regarding his hindsight disagreement about LDK's application of the admittedly valid weighted average cost method under GAAP to a single pool of silicon materials that were both usable and actually used in LDK's production. Compl. ¶¶ 44-46; Dkt. No. 338 at 13-15. Plaintiff's expert could identify no allegations regarding this new theory concerning usable, but allegedly difficult to use, slower moving materials. Ex. 1 at 45:2-50:21. And this theory certainly was not subjected to the "formidable" pleading requirements of the PSLRA. *In re St. Jude Med., Inc., Sec. Litig.*, 629 F. Supp. 2d 915, 920-21, 925 (D. Minn. 2009) (rejecting new theory of fraud not pled in complaint); *In re Oracle*, 2009 WL 1709050, at *18 (same).

Case3:07-cv-05182-WHA Document477 Filed01/28/10 Page9 of 19

and 8 revelations of the discrepancies identified by Situ establish a causal connection between any such fraud and any losses to investors.[5]

Plaintiff's shift away from Situ has left both him and Nettesheim in a bind. While Nettesheim previously based her analysis on the revelation of the "relevant truth" about Situ's inventory discrepancies, she is now left to make vague, conclusory statements that the purported corrective disclosures revealed some veiled message about the "pooling" theory Plaintiff now describes. Ex. 1 at 160:24-161:14, 183:5-184:2; Dkt. No. 436 at ¶¶ 9, 12-13; Dkt. No. 456 at 23 (claiming that disclosures "strongly suggested" Plaintiff's "pooling" theory and asserting that the precise nature of the disclosures is unimportant because it "makes no difference to class members" what fraud actually took place). But neither Nettesheim's submitted reports nor any other source of her opinions demonstrate that the disclosures had anything to do with the claim that LDK misapplied GAAP by aggregating various forms of silicon feedstock into a single cost pool. Nor has she identified any evidence that Situ – who was a U.S. GAAP CPA well aware of LDK's GAAP policies – ever even questioned LDK's application of GAAP in this manner, such that the disclosures of his allegations would mean what Plaintiff now says they do.

When pressed on this issue, Nettesheim testified that the October 3 Piper Jaffray report "refers to an inventory discrepancy" and that "there could be different reasons for an inventory discrepancy." Ex. 1 at 160:24-161:14. With respect to the October 8 *Barron's* article, Nettesheim testified that the accounting theories were disclosed by discussion of impure ingots. *Id.* at 183:5-184:2.[6] But these vague justifications fall woefully short of establishing a sufficiently direct link between the fraud Plaintiff contends caused his loss, and the disclosure of

---

[5] Nettesheim admitted that she did not try to determine, either by reading other expert reports or otherwise, whether Plaintiff continued to advance the claims of missing and useless inventory based on Situ's accusations and set forth in detail in the Complaint. Ex. 1 at 89:19-90:2.

[6] Plaintiff claims Nettesheim did not admit that information contained in Situ's September 25, 2007 emails – including the upper range of $92 million for Situ's claimed inventory overstatement, and separate claims about wire saw yield rates – was in the marketplace before the October 8, 2007 *Barron's* article. Opp. at 15-16. Yet Nettesheim testified that Situ's emails were disclosed to the market prior to October 8, and that in an efficient market, all information in those emails would be reflected in LDK's stock price. Ex. 1 at 152:21-153:19, 167:16-169:2. Thus, no such information was new, as Nettesheim previously claimed. Ex. 2. at ¶ 47.

LATHAM & WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

5

REPLY BRIEF ISO DEFENDANTS' MOTION TO EXCLUDE NETTESHEIM'S OPINIONS
MASTER FILE NO. C-07-05182-WHA (BZ)

Case3:07-cv-05182-WHA Document477 Filed01/28/10 Page10 of 19

any such fraud.[7] *Metzler*, 540 F.3d at 1064; *In re Maxim*, 639 F. Supp. 2d at 1046-47. Nettesheim also fails to offer a single shred of evidence about what the market understood these disclosures to mean. At this late date, she opines only that market participants are sophisticated, so they would have understood a relationship between the revelation of Situ's misplaced accusations and the pooling theory Plaintiff now claims caused his loss. Dkt. No. 436 at ¶ 13; Opp. at 11 n.9. But even if Plaintiff had claimed that the "truth" about the fraud was revealed indirectly (a leakage theory he has never advanced), he must establish that the market became aware of, and the resulting stock drop resulted from, this alleged fraud. *Metzler*, 540 F.3d at 1064; *In re Oracle*, 2009 WL 1709050, at *16-17. The mere speculation offered by Nettesheim cannot serve as evidence that the market recognized a relationship between the stock drop and what Plaintiff now claims is the "relevant truth." *Metzler*, 540 F.3d at 1062-64.

Plaintiff's attempt to rectify Nettesheim's flawed analysis is meritless. First, Plaintiff claims Nettesheim has proven loss causation because "October events questioned the accuracy of LDK's inventory and inventory accounting," and thus, fall within the "zone of risk" of the misapplication of GAAP Plaintiff now claims caused his loss. Opp. at 11. This is not the law. *Supra*, § II.A.1. Plaintiff must show more than such a speculative or euphemistic relationship to establish the causal connection required by *Dura*. *Metzler*, 540 F.3d at 1064; *In re Williams*, 558 F.3d at 1140; *In re Maxim*, 639 F. Supp. 2d at 1046-47. Plaintiff's suggestion that "more information about the true state of LDK's inventory and accounting methods emerged later" (Opp. at 11) is unsupported by evidence: neither he nor Nettesheim have shown that the alleged fraud he now embraces was ever revealed to the market. Finally, Plaintiff's assertion that disclosures "correspond[ed] to Situ's allegations on a "fact-for-fact" basis" (*id.*) makes little sense now that Plaintiff will not prove these allegations, and certainly does not demonstrate that Plaintiff's "pooling" theory of fraud ever became "generally known" such that it caused

[7] Plaintiff incorrectly asserts that Defendants believe "that a disclosure must 'mirror' the misrepresented or concealed matter in order to be deemed [] corrective." Opp. at 8. Defendants have never made this assertion. In any case, this does not absolve Nettesheim of her duty to show a tangible causal connection between the alleged fraud and any purported economic losses, which she has failed to do. *In re Williams*, 558 F.3d at 1140 (holding plaintiff must establish a causal nexus between the revelation of the previously-concealed truth and the stock drop); *In re Maxim*, 639 F. Supp. 2d at 1046-47 (noting connection cannot be speculative).

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

6

REPLY BRIEF ISO DEFENDANTS' MOTION TO EXCLUDE NETTESHEIM'S OPINIONS
MASTER FILE NO. C-07-05182-WHA (BZ)

Case3:07-cv-05182-WHA Document477 Filed01/28/10 Page11 of 19

investors to suffer any loss. *Dura*, 544 U.S. at 342, 344.[8]

In short, Nettesheim's unreliable loss causation assumptions and conclusions cannot establish any proof of loss causation. *In re Zonagen, Inc. Sec. Litig.*, 322 F. Supp. 2d 764, 781-82 (S.D. Tex. 2003). Her methodology fails as a matter of law because, as a result of her assumptions, Nettesheim did not tie any disclosures to any alleged misrepresentations (*see In re Williams*, 558 F.3d at 1140) or assess the inflationary effect of each allegedly false statement – a point on which Plaintiff's Opposition is silent (*see In re MIVA*, 2009 WL 3821146, at *12).

**B. Nettesheim Failed To Disaggregate Negative, Confounding Information.**

Rather than providing concrete evidence to show that Nettesheim did consider confounding information, Plaintiff asserts that "the record amply demonstrates that Nettesheim considered each *specific* item" that Defendants claim she overlooked. Opp. at 15. Yet Plaintiff's contention is inconsistent with the record. *See, e.g.*, Mot. at 8-12.

**1. Nettesheim Failed To Parse Out Negative, Confounding Information Released To The Market On The Alleged Disclosure Dates.**

In her most recent reports, Nettesheim endeavors to dismiss the impact of confounding information on the corrective disclosure dates that she purported to "consider." *See, e.g.*, Ex. 2 at ¶¶ 44-45, 49-51. But the record is clear: Nettesheim belatedly attempted to explain away such information only after Defendants alerted the Court to this deficiency. *See* Dkt. Nos. 120, 147 at 6-10, 166 at 10-12. Her effort to maintain the original flawed presumption, first advanced over a year ago, that 100% of the residual decline of LDK's stock was related to fraud by continuing that rationalization here strains credulity. *See, e.g.*, *In re Williams*, 558 F.3d at 1139 (plaintiffs' expert erred by assuming any and all losses were related to a corrective disclosure "despite the tangle of factors that affect a stock price"); *In re Omnicom*, 541 F .Supp. 2d at 554 ("Because the law requires the disaggregation of confounding factors, disaggregating only *some* of them cannot

---

[8] The October 4, 2007 Piper Jaffray report simply stated that inventory accounting, in general, is important because it affects costs of goods sold. Ex. 4 at 2. It provides no evidence that the market understood the revelation of inventory discrepancies misidentified by Situ to mean that LDK violated GAAP by failing to apply the weighted average cost method over multiple cost pools. Nor does *Barron's* speculation that "[t]here may be good stuff in that pile of silicon, but that doesn't mean it's worth what LDK's balance sheet says" (Opp. at 11) reveal any aspect of the fraud Plaintiff now claims caused his loss. *Metzler*, 540 F.3d at 1064; *In re Maxim*, 639 F. Supp. 2d at 1046-47.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

7

REPLY BRIEF ISO DEFENDANTS' MOTION TO EXCLUDE NETTESHEIM'S OPINIONS
MASTER FILE NO. C-07-05182-WHA (BZ)

Case3:07-cv-05182-WHA Document477 Filed01/28/10 Page12 of 19

suffice[.]"). Nettesheim's improper refusal to parse out clearly new, negative, and confounding information is easily demonstrated by Plaintiff's recent concession that Situ's allegations of missing and unusable inventory were wrong – *i.e.*, that he cannot present any proof of these claims at trial. Ex. 18 at 11. For example, Plaintiff's accounting expert quite clearly testified that Situ was wrong that 284 MT of silicon inventory was simply missing. Ex. 8 at 97:2-11, 98:18-23. This discrepancy is exactly what was revealed to the market on October 3 and 8. *See, e.g.*, Ex. 6 at 1 (describing a "250MT inventory discrepancy"). Yet, given Plaintiff's concession, Nettesheim can no longer maintain that this was fraud-specific information because no such discrepancy existed. Nettesheim's flawed "analysis" altogether fails to consider whether LDK's stock price was adversely impacted by this negative, confounding information.

Plaintiff's attempt to rationalize Nettesheim's failure to account for negative, confounding information in the October 3 Piper Jaffray report is not credible. Plaintiff claims Nettesheim "*did* specifically consider" delays in LDK's polysilicon plant ramp schedule and that she felt it "was not new news." Opp. at 14. But Nettesheim's testimony only shows her attempt to explain away this information is purely speculative and reactionary. Nettesheim admitted that Piper Jaffray received information on LDK's ramp schedule from conversations with internal management, not from a public presentation at a solar conference, as stated in her reply report. *Compare* Ex. 1 at 186:12-187:19 *with* Ex. 16 at ¶ 20. She also acknowledged that the October 1 article discussing this conference made no mention of which plant any supposed equipment was to be delivered to or even the facility and year in which any delays would affect LDK's production. Ex. 1 at 192:10-193:24. She cannot say whether the delays discussed in the October 1 article had anything to do with LDK's new TCS plant. Indeed, Nettesheim omits that Piper Jaffray's concerns were wholly separate from any such delay. *Compare* Ex. 6 at 1-2 *with* Ex. 20.

Nettesheim also struggles to explain her refusal to account for the impact of confounding information in the October 8 *Barron's* article.[9] She was told by Plaintiff's counsel to assume

[9] Nettesheim's prior argument that the *Barron's* article contained "new" information in the form of a higher potential range of inventory discrepancy of $92 million is noticeably absent from Plaintiff's Opposition. Ex. 2 at ¶¶ 47-52. This is because, contrary to Plaintiff's claim, Nettesheim admitted that this and any other information in Situ's September 25, 2007 email was disclosed to market participants and reflected in LDK's stock price before October 8. Ex. 1 at

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

8

REPLY BRIEF ISO DEFENDANTS' MOTION TO EXCLUDE NETTESHEIM'S OPINIONS
MASTER FILE NO. C-07-05182-WHA (BZ)

Case3:07-cv-05182-WHA Document477 Filed01/28/10 Page13 of 19

that "rumored" information about quality issues were related to Plaintiff's allegations in the Complaint. *See* Ex. 1 at 176:22-179:5; Ex. 16 at ¶ 37. But the Complaint does not contain allegations that LDK misrepresented saw yield data or even discuss the quality of LDK's wafers; nor could Nettesheim identify any such allegations. Ex. 1 at 178:18-179:5. Plaintiff's claim that the *Barron's* article's negative characterization of LDK's sales contracts did not contain new information about double and triple ordering by LDK's customers (Opp. at 16) is likewise misplaced. Nettesheim admitted that no earlier disclosure of LDK's sales contracts took this positive news and cast it in a negative light, as the *Barron's* article did. Ex. 1 at 199:20-200:13.

**2. Nettesheim Failed To Account For Headline Risk.**

Plaintiff claims that Nettesheim "*did* consider the possibility of [headline] risk" and that she did not admit uncertainty in the marketplace. Opp. at 17. The record reflects otherwise. Nettesheim testified that she did not consider headline risk. Ex. 1 at 201:10-17, 203:13-14. Nettesheim also admitted that there was uncertainty in the marketplace. *See e.g.*, *id*. at 202:17-203:6. Even absent these admissions, the analyst reports from this period recognize the strong impact of the headline risk associated with the October 3 and 8 disclosures. *See* Declaration of Jason H. Lee ("Lee Decl."), Ex. 1 (noting market's "knee jerk" reaction to Situ's accusations); *see also* Mot. at 13. Even Plaintiff recognized that "[u]ncertainty and confusion was all over" the market. Dkt. No. 346, Ex. 22 at 199:15-16. Nettesheim simply gave no weight to the adverse effect this collateral risk could have had on LDK's stock price, assuming merely that it too should be recoverable by investors.[10]

Plaintiff's Opposition attempts to sidestep these concerns by claiming they are merely evidence of "Defendants' real problem . . . with Nettesheim's conclusion[s]." Opp. at 15. However, Nettesheim's errors demonstrate fundamental flaws in her methodology, and therefore call into question her admissibility under *Daubert*. Plaintiff also attempts to distract the Court from the defects in Nettesheim's analysis by attacking Defendants' expert Kenneth Lehn,

---

152:21-161:24, 164:4-169:2.

[10] History has demonstrated exactly what analysts said during this time frame about a short-term share price overhang: LDK's stock reached nearly its all-time high only two months later, after the effect of Situ's admittedly untrue accusations were removed. Dkt. No. 354, Ex. A at Ex. 3.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

9

REPLY BRIEF ISO DEFENDANTS' MOTION TO EXCLUDE NETTESHEIM'S OPINIONS
MASTER FILE NO. C-07-05182-WHA (BZ)

Case3:07-cv-05182-WHA Document477 Filed01/28/10 Page14 of 19

asserting that "he hadn't done any calculations or analysis himself to determine whether the price of LDK's securities was impacted by such risk or damage."[11] Opp. at 17. However, it is Plaintiff's burden to establish loss causation, which he has not done. 15 U.S.C. § 78u-4(b)(5).

**C. The Court's Prior Rulings Do Not Preclude Defendants' Arguments.**

Finally, Plaintiff asserts that the Court "specifically rejected" Defendants' "frivolous" loss causation arguments at earlier stages in this litigation. Opp. at 8. This assertion is wrong. A motion to dismiss tests only the legal sufficiency of the allegations in the complaint, which the court must accept as true. *In re LDK Solar Sec. Litig.*, 584 F. Supp. 2d 1230, 1240 (N.D. Cal. 2008); *accord* Schwarzer, *et al.*, CAL. PRAC. GUIDE: FED. CIV PROC. BEFORE TRIAL, ¶ 9:187 (The Rutter Group 2009). In fact, one of the very allegations the Court accepted as true in finding loss causation sufficiently pled in this case is the central allegation abandoned by Plaintiff – "that LDK artificially inflated its stock price by grossly misrepresenting the company's inventory" and that LDK's stock dropped when more accurate information came out about the actual inventory levels. *In re LDK*, 584 F. Supp. 2d at 1251; *see* Compl. ¶¶ 128-29. Plaintiff is also incorrect about the class certification stage, where the Court found that Defendants' loss causation arguments "will be relevant to the merits of plaintiff's case," but not to Plaintiff's efforts to certify a class. *In re LDK Solar Sec. Litig.*, 255 F.R.D. 519, 532 (N.D. Cal. 2009). Indeed, given that Plaintiff has shifted his theory of liability away from Situ's allegations of "fake" and unusable inventory to a hindsight accounting disagreement about "weighted average cost pools" (*supra*, § II.A.2), Plaintiff's complete failure of proof on the element of loss causation is a central issue to be decided on summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 325 (1986); *Omnicom*, 541 F. Supp. 2d at 551, 554.

## III. NETTESHEIM'S DAMAGES OPINIONS SHOULD BE EXCLUDED

**A. Nettesheim's Constant-Dollar Methodology Is Flawed And Unreliable.**

Nettesheim and Plaintiff aptly state that "this case illustrates certain issues that arise from

---

[11] Plaintiff also blatantly mischaracterizes Lehn's opinion when he states that Lehn asserts that "the only thing that constitutes a corrective disclosure is an admission by a company that it committed fraud." Opp. at 10 n.7. Lehn has never made any such assertion. On the contrary, he has testified that "from an economic perspective" many things, including an analyst report or a SEC judgment, "might constitute a corrective disclosure." Ex. 24 at 36:15-24, 59:23-25, 62:9-17.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

10

REPLY BRIEF ISO DEFENDANTS' MOTION TO EXCLUDE NETTESHEIM'S OPINIONS
MASTER FILE NO. C-07-05182-WHA (BZ)

Case3:07-cv-05182-WHA Document477 Filed01/28/10 Page15 of 19

using the constant-dollar method of estimating price inflation." Dkt. No. 436, ¶ 19; *see also* Opp. at 21. Nettesheim's estimates of inflation under the constant-dollar method exceed the entire value of LDK's stock price on several days during the Class Period. Ex. 1 at 53:16-21; Dkt. No. 354, Ex. A at ¶ 185; Mot. at 14. This nonsensical result illustrates the arbitrary nature of the constant-dollar method. Nettesheim's attempt to address this flaw by simply limiting inflation to the closing price of LDK's stock on the days where her model otherwise estimates a measure of inflation greater than the total value of the stock only compounds her model's unreliability. Mot. at 14. Nettesheim assumes that the true value of LDK's stock for almost the entire month of June 2007 was $0 (Ex. 2 at Ex. 5B), but even now provides no justification for making this supposition. Dkt. No. 436 at ¶19; Ex. 2 at ¶ 75. Nor does she cite to any source whatsoever, let alone peer-reviewed academic literature, to back up her model's assumption that LDK's stock had no true value for a significant part of the Class Period. This deficiency confirms the inability of her methodology to satisfy the reliability requirements of FRE 702. *Cabrera v. Cordis Corp.*, 134 F.3d 1418, 1422-23 (9th Cir. 1998) (excluding expert testimony that failed to identify any objective source to show expert followed a scientific method practiced by, at least, a recognized minority of scientists in his field). Given the illogical assumptions underlying Nettesheim's constant-dollar methodology, as well as her model's nonsensical results, the Court should exclude all of Nettesheim's opinions concerning these estimates. *Id.*[12]

**B. Nettesheim's Constant-Percentage Methodology Is Flawed And Unreliable.**

Nettesheim's constant-percentage method for estimating price inflation allows for claimants to recover damages that were not proximately caused by any alleged false statements. Mot. at 15. Inflation under this model leads to the illogical result that the estimated inflation in LDK's stock price increases on any days on which the Company's stock traded at a higher price than before, even if no alleged misstatements were made between the dates at issue. *Id.*; Ex. 24 at 189:22-191:14. This result, where the purported amount of inflation moves in response to

[12] Plaintiff's only response to the critical defects inherent in Nettesheim's constant-dollar method is that just because "adjustments might have to be made to the constant-dollar methodology in certain circumstances does not invalidate the methodology." Opp. at 21. Given that the "adjustments" referred to by Plaintiff defy logic, the Court should disregard this assertion.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

11

REPLY BRIEF ISO DEFENDANTS' MOTION TO EXCLUDE NETTESHEIM'S OPINIONS
MASTER FILE NO. C-07-05182-WHA (BZ)

Case3:07-cv-05182-WHA Document477 Filed01/28/10 Page16 of 19

market forces and daily fluctuations in LDK's stock price rather than any alleged misstatements, is in direct violation of *Dura*, 544 U.S. at 342-43, 347-48, and reveals that this model cannot satisfy the requirements of FRE 702. *See In re Williams Sec. Litig.*, 496 F. Supp. 2d 1195, 1270 (N.D. Okla. 2007) (rejecting constant-percentage method on *Daubert* challenge), *aff'd In re Williams Sec. Litig.-WCG Subclass*, 558 F.3d 1130 (10th Cir. 2009).[13]

Nettesheim asserts that "because operating costs of [LDK] are alleged to have been understated by the misrepresentations, it is economically reasonable to conclude that both parts of the firm's share price – the true value and the inflation – are similarly influenced by market, industry and company-specific events." Dkt. No. 436, ¶ 20; Opp. at 19-20. Yet, the only support that Nettesheim offers for this novel theory consists of an unpublished working paper and a law review article from 1990. Ex. 2 at ¶ 66 n.78. The unpublished working paper pre-dates *Dura* and has never been peer-reviewed. Dkt. No. 437, Ex. G. As such, its discussion is of minimal relevance and lacks one of the key hallmarks of reliability.[14] *Daubert*, 509 U.S. at 594. Further, it actually identifies several flaws with the constant-percentage method, including that it can "overstate the damage claim" and yield "economically nonsensical" results. Dkt. No. 437, Ex. G at 9. The law review article does not discuss Nettesheim's theory. *Id.*, Ex. E.

Another major flaw of Nettesheim's constant-percentage method is that it allows for investors who bought LDK's stock on certain dates within the Class Period to recover damages greater than the entire residual decline in LDK's stock that Nettesheim claims was caused by the corrective disclosures in October 2007. Mot. at 16; Ex. 2 at ¶¶ 62, 75, Ex. 14. This is another manner in which Nettesheim's model allows for the recovery of damages that could not have

---

[13] Plaintiff fails to cite to a single published opinion in which the constant-percentage method was subjected to and survived a challenge under *Daubert*. While Nettesheim states that she "understand[s]" that her inflation methodologies have been employed at trial, the materials and cases that she cites do not support the reliability of Nettesheim's constant-percentage model. Dkt. No. 436, ¶ 16 n.32. For example, the order from *In re Vivendi Universal, S.A. Sec. Litig.* identified by Nettesheim actually excluded testimony regarding the constant-percentage method and held that "the constant percentage method may overestimate the loss by failing to account for the non-fraud-related drop due to the telecom slump." Lee Decl., Ex. 2 at 7, 9. Meanwhile, the materials cited from *Lawrence E. Jaffe Pension Plan v. Household Int'l, Inc.* do not even appear to address the constant-percentage model advanced by Nettesheim. *Id.*, Ex. 3 at 41.

[14] The papers cited by Plaintiff and Nettesheim in support of Nettesheim's two inflation models either pre-date *Dura*, were not peer-reviewed, or both. Opp. at 18 n.17; Dkt. No. 436, ¶ 16 n.31.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

12

REPLY BRIEF ISO DEFENDANTS' MOTION TO EXCLUDE NETTESHEIM'S OPINIONS
MASTER FILE NO. C-07-05182-WHA (BZ)

Case3:07-cv-05182-WHA Document477 Filed01/28/10 Page17 of 19

possibly been caused by the alleged fraud, even under Nettesheim's own assumptions. Plaintiff does not rebut this critical point with any economic analysis or case law. Instead, he explains that while Nettesheim's model suffers from this deficiency, which directly violates *Dura*, this defect only affected Nettesheim's inflation estimates for certain days. Opp. at 20. But this response only acknowledges that Nettesheim's model produces unreliable and illogical results, and supports the exclusion of Nettesheim's opinions regarding the constant-percentage method. *In re Williams*, 496 F. Supp. 2d at 1294 (excluding expert testimony where it did "not square with the law of loss causation, applied through the prism of *Daubert* and Rule 702").

**C. Nettesheim's Damages Methodology Is Flawed Because She Uses An Unreliable Trading Model For Estimating Damages.**

Plaintiff's attempts to sidestep Defendants' central argument that Nettesheim's aggregate damages estimates should be excluded because they are the product of an unreliable methodology.[15] Mot. at 17-18. As explained in Defendants' Motion, Nettesheim's "two trader model" follows the same flawed methodology as Dr. Hakala's trading model in *In re Broadcom Corp. Sec. Litig.*, No. SA CV 01-274-GLT (MLGx), 2005 U.S. Dist. LEXIS 12118 (C.D. June 3, 2005); Mot. at 17-18. There, the court excluded Dr. Hakala's model because of its "questionable accuracy," "significantly questionable reliability," and "*Daubert* shortcomings." *Id*. Because Nettesheim's trading model utilizes the same methodology as Dr. Hakala's, it too must be excluded. *Id*. Plaintiff's silence on this point is telling. Opp. at 21-22.

**D. Nettesheim's Damages Methodology Is Flawed Because Her Regression Analysis Is Unreliable And Based Upon Insufficient Facts And Data.**

Plaintiff asserts that Defendants' critiques of Nettesheim's regression analysis go to "weight not authority" and are therefore inappropriate for *Daubert* purposes.[16] Opp. at 22-24.

---

[15] Though Nettesheim asserts that the proportional trading model has been "admitted after *Daubert* challenges," (Dkt. No. 436, ¶¶ 26-27), in the cases she cites the courts did not uphold reliability under *Daubert*. Mot. 18. For instance, in *In re WorldCom, Inc. Sec. Litig*., No. 02 Civ. 3288 (DLC), 2005 U.S. Dist. LEXIS 3143, at *15-16 (S.D.N.Y. Mar. 3 2005), the reliability of the trading model was not an issue before the court. Moreover, Plaintiff provides no evidence that any event study containing the flawed methodology and data manipulation of Nettesheim's analysis has ever successfully been accepted by a court.

[16] Plaintiff incorrectly argues that the Court should ignore the unreliability of Nettesheim's regression analysis because Lehn's regression model purportedly yields similar results. Opp. 22-23. Lehn's model reveals that movements in LDK's stock on October 4, 2007 were not

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

13

REPLY BRIEF ISO DEFENDANTS' MOTION TO EXCLUDE NETTESHEIM'S OPINIONS
MASTER FILE NO. C-07-05182-WHA (BZ)

Case3:07-cv-05182-WHA Document477 Filed01/28/10 Page18 of 19

Plaintiff is incorrect. Trial courts are recognized as gatekeepers that "must" prevent unreliable expert testimony from reaching a jury. *Claar v. Burlington N. R. R. Co.*, 29 F.3d 499, 501 (9th Cir. 1994). Defendants' challenge of Nettesheim's regression analysis on the basis that she cherry-picked data to contrive a statistically significant price reaction is appropriate under *Daubert*. *In re Bextra & Celebrex Mktg. Sales Practices & Prod. Liab. Litig.*, 524 F. Supp. 2d 1166, 1176 (N.D. Cal. 2007) (expert's testimony inadmissible where he "cherry-pick[ed] observational studies that support his conclusion and reject[ed] or ignor[ed] the great weight of the evidence that contradicts his conclusion"); *De Jager Constr., Inc. v. Scheininger*, 938 F. Supp. 446, 455 (W.D. Mich. 1996) (excluding an expert's opinion on damages where he "pick[ed] and [chose] among purported facts to maximize plaintiff's damages"); *Barber v. United Airlines, Inc.*, 17 Fed. Appx. 433, 437 (7th Cir. 2001); Mot. at 18-20.

Plaintiff avoids any substantive discussion of Defendants' arguments that Nettesheim (1) changed data sets to support her theory, (2) inflated her damages calculations by using the Class Period as the control period, and (3) arrived at her desired result of a statistically significant price movement on October 4 only after cherry-picking companies for her industry index. Mot. at 19. For instance, in response to Defendants' argument that Nettesheim changed the market index for her model after her original event study showed no statistically significant movement in LDK's stock price, Plaintiff simply asserts that "Defendants' expert used the same [new] market index in his analysis." Opp. at 24. Plaintiff misses the point: the replacement of Nettesheim's original index allowed her to arrive at a result she desired, namely that LDK's stock price movements were statistically significant. This reactionary approach demonstrates Nettesheim's bias and

---

statistically significant (Dkt. No. 354, Ex. A at ¶ 60), and thus could not have been caused by any revelation of any alleged fraud (even *if* Nettesheim could tie them to any such fraud, which she has not). *See In re Williams*, 496 F. Supp. 2d at 1272-73. In contrast, Nettesheim's model concludes that October 4 is statistically significant only after cherry picking various inputs. Mot. at 19. Moreover, the metric in Nettesheim's model that predicts inflation (the "alpha") is substantially higher than in Lehn's model. Dkt. No. 354, Ex. A at ¶92, Ex. 3 n.3. Thus, Nettesheim's model predicts the illogical result that LDK's stock would appreciate by 1.4% per day (and more than 1,000% per year) over and above any changes associated with market or industry factors. *Id*. at ¶ 92, Ex. 5 n.2. Using Lehn's properly-constructed model, and considering all alleged "corrective disclosures" that Nettesheim ignores even under her own definition of the term (*id*. at ¶¶ 79-81), Nettesheim's damages estimates would have been drastically reduced or completely eliminated. *Id*.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

14

REPLY BRIEF ISO DEFENDANTS' MOTION TO EXCLUDE NETTESHEIM'S OPINIONS
MASTER FILE NO. C-07-05182-WHA (BZ)

Case3:07-cv-05182-WHA Document477 Filed01/28/10 Page19 of 19

renders her regression analysis unreliable. *De Jager*, 938 F. Supp. at 455.

**IV. THE COURT MUST EXCLUDE NETTESHEIM'S NEW DECLARATION**

Nettesheim has filed a new, *fifteen-page* declaration that vastly exceeds the mere authentication of her prior reports. Dkt. No. 436. This declaration improperly advances further argument, materials and testimony, and is designed to "shore up" her deficient opinions and testimony. The law prohibits such gamesmanship. *In re Oracle*, 2009 WL 1709050, at *26 ("Rule 26's expert disclosure requirements would be obviated if experts could continually refine their opinions in this manner."); *Leviton Mfg. Co., Inc. v. Nicor, Inc.*, 245 F.R.D. 524, 528 (D.N.M. 2007) ("Rule 26(e) does not allow a party to file supplements intended to "deepen" or "strengthen" its own expert's prior rule 26(a)(2)(B) expert report."). Nettesheim's declaration was not filed to address any new or previously unknown events. Instead, it attempts to supplement and rehabilitate the very gaps in her report and testimony that provided the foundation for Defendants' *Daubert* challenge. *See, e.g.*, Dkt. No. 436, ¶¶ 3 & n.5, 7, 12-14, 16 & n.32, 17 & n.33, 19-21, 24-25, 28. Nettesheim's citation to new, previously-undisclosed sources to support her opinions also highlights Plaintiff's disregard for the Rule 26 disclosure requirements and demonstrates the deficiencies in Nettesheim's earlier opinions. *See, e.g., id.*, ¶¶ 3 n.5, 16 n.32, 17 n.33. Nettesheim's "eleventh hour effort to rescue a deficient expert report that has been the basis for the course of this litigation" is inappropriate and should be stricken. *Point Prods. A.G. v. Sony Music Entm't, Inc.*, No. 93 Civ.4001 (NRB), 2004 U.S. Dist. LEXIS 2676, at *37-38 (S.D.N.Y. Feb. 20, 2004).

**V. CONCLUSION**

The Court should exclude Nettesheim's expert opinions and supplemental declaration.

Dated: January 28, 2010

Respectfully submitted,

LATHAM & WATKINS LLP

By **/s/ James J. Farrell**
James J. Farrell
Counsel for Defendants

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

15

REPLY BRIEF ISO DEFENDANTS' MOTION TO EXCLUDE NETTESHEIM'S OPINIONS
MASTER FILE NO. C-07-05182-WHA (BZ)