**BERMAN DEVALERIO**
Joseph J. Tabacco, Jr. (SBN 75484)
Christopher T. Heffelfinger (SBN 118058)
Anthony D. Phillips (SBN 259688)
One California Street, Suite 900
San Francisco, CA 94111
Telephone: (415) 433-3200
Facsimile: (415) 433-6382
Email: jtabacco@bermandevalerio.com
       cheffelfinger@bermandevalerio.com
       aphillips@bermandevalerio.com

Liaison Counsel for the Class

**COHEN MILSTEIN SELLERS
 & TOLL PLLC**
Herbert E. Milstein
Joshua S. Devore
Matthew B. Kaplan
1100 New York Avenue, N.W.
West Tower, Suite 500
Washington, DC 20005-3964
Telephone: (202) 408-4600
Facsimile: (202) 408-4699
Email: hmilstein@cohenmilstein.com
       jdevore@cohenmilstein.com
       mkaplan@cohenmilstein.com

Lead Counsel for the Class

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re LDK SOLAR SECURITIES LITIGATION<br><br>This Document Relates To:<br><br>ALL ACTIONS. | MASTER FILE NO.  C-07-05182-WHA (BZ)<br><br>CLASS ACTION<br><br>**NOTICE OF MOTION AND UNOPPOSED MOTION IN SUPPORT OF PRELIMINARY APPROVAL OF PROPOSED SETTLEMENT AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Judge:      Hon. William Alsup<br>Date:       February 16, 2010<br>Time:       10:00 a.m.<br>Courtroom:  9, 19th Floor |

# **TABLE OF CONTENTS**

NOTICE OF MOTION AND MOTION ................................................................................... 1

STATEMENT OF ISSUES TO BE DECIDED ....................................................................... 1

MEMORANDUM OF POINTS AND AUTHORITIES ........................................................... 1

I.    INTRODUCTION ........................................................................................................ 1

II.   FACTUAL AND PROCEDURAL BACKGROUND.................................................. 2

      A.    Description of the Action................................................................................. 2

      B.    The Proposed Settlement and Notice to the Class ......................................... 4

III.  ARGUMENT ................................................................................................................ 4

      A.    The Settlement Should Be Preliminarily Approved ...................................... 4

            1.    The Risks of Further Litigation Weigh Heavily in Favor of Preliminary Approval........................................................................... 5

                  (a)    There Is Uncertainty About Lead Plaintiff's Ability to Prove His Case................................................................... 6

                  (b)    There Is Uncertainty About Lead Plaintiff's Ability to Prove Substantial Damages ........................................................ 7

                  (c)    There Is Uncertainty About Lead Plaintiff's Ability to Collect on Any Judgment ......................................................... 8

            2.    The Support of the Settlement by Experienced Counsel Weighs in Favor of Preliminary Approval................................................ 9

            3.    The Stage of the Proceedings Weighs in Favor of Preliminary Approval........................................................................... 10

            4.    The Benefits of the Settlement Weigh in Favor of Preliminary Approval........................................................................... 10

      B.    The Proposed Form of Notice to the Class Is Appropriate.................................. 10

IV.  PROPOSED SCHEDULE ........................................................................................... 13

V.   CONCLUSION........................................................................................................... 14

# TABLE OF AUTHORITIES

## CASES

*Armstrong v. Bd. of Sch. Dirs.*, 616 F.2d 305 (7th Cir. 1980) ................................................... 5, 9

*Class Pls. v. Seattle*, 955 F.2d 1268 (9th Cir. 1992) ................................................................. 5, 11

*Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974) ................................................................... 5

*Fisher Bros. v. Cambridge-Lee Indus., Inc.*, 630 F. Supp. 482 (E.D. Pa. 1985) ........................... 9

*Girsh v. Jepson*, 521 F.2d 153 (3d Cir. 1975) ............................................................................... 10

*In re First Capital Holdings Corp. Fin. Prods. Sec. Litig.*, MDL Docket No. 901,
    1992 U.S. Dist. LEXIS 14337 (C.D. Cal. June 10, 1992) ......................................................... 9

*Kirkorian v. Borelli*, 695 F. Supp. 446 (N.D. Cal. 1988) ............................................................... 9

*Officers for Justice v. Civil Serv. Comm'n,*, 688 F.2d 615 (9th Cir. 1982) ................................. 5, 9

*Protective Comm. for Indep. Stockholders of TMT Trailer Ferry v. Anderson*, 390
    U.S. 414 (1968) ......................................................................................................................... 9

*Reed v. Gen. Motors Corp.*, 703 F.2d 170 (5th Cir. 1983) ............................................................. 9

*Shaffer v. Cont'l Cas. Co.,* No. 08-56124, 2010 U.S. App. LEXIS 726 (9th Cir.
    Jan. 12, 2010) .......................................................................................................................... 11

## STATUTES

15 U.S.C.A. §78u-4(a)(7)(A)-(F) ................................................................................................. 11

## OTHER AUTHORITIES

5 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE ¶23.83[1], 23-336.2 to
    23-339 (3d ed. 2001) ................................................................................................................. 5

CONTE & NEWBERG, NEWBERG ON CLASS ACTIONS, §8.2 (4th ed. 2002) ................................. 11

Donald C. Clarke, *The Enforcement of United States Court Judgments in China:
    A Research Note* (May 27, 2004) (unpublished research paper, George
    Washington Univ. Law Sch., available at http://ssrn.com/abstract=943922) ......................... 8

MANUAL FOR COMPLEX LITIGATION §30.41 (3d ed. 1995) ............................................................ 5

Yuan, Arthur Anyuan, *Enforcing and Collecting Money Judgments in China from
    a U.S. Judgment Creditor's Perspective*, 36 GEO. WASH. INT'L L. REV. 757,
    758 (2004) ................................................................................................................................ 8

1                                           **RULES**

2  FED. R. CIV. P. 23(c) .................................................................................................................. 10

3  FED. R. CIV. P. 23(c)(2)(B) ....................................................................................................... 11

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**NOTICE OF MOTION AND MOTION**

PLEASE TAKE NOTICE that on February 16, 2010 at 10:00 a.m., in Courtroom No. 9, 19th Floor, the Honorable William H. Alsup, United States District Judge presiding, located at 450 Golden Gate Avenue, San Francisco, California, Lead Plaintiff Shahpour Javidzad will move this Court, with Defendants concurring, for an order (i) granting preliminary approval of the proposed Settlement set forth in the Stipulation of Settlement (the "Stipulation"); (ii) approving the form and manner of giving notice of the proposed Settlement to the Class (defined below); and (iii) setting a hearing date to consider final approval of the proposed Settlement and all its terms and elements, including the proposed Plan of Allocation (the "Settlement Fairness Hearing") and Lead Plaintiff's request for an award of attorneys' fees and costs. This motion is filed pursuant to the Court's Order of February 10, 2010 (Dkt. No. 498) and is accompanied by a fully executed Stipulation signed by the parties, including all attachments.

**STATEMENT OF ISSUES TO BE DECIDED**

1. Whether the proposed Settlement should be preliminarily approved.

2. Whether the proposed form and manner of notice to the Class should be approved.

**MEMORANDUM OF POINTS AND AUTHORITIES**

I.   **INTRODUCTION**

The proposed Settlement now before the Court for preliminary approval provides for the payment of $16 million in cash plus accruing interest for the benefit of the Class. As discussed in detail below, Lead Plaintiff and Lead Counsel submit that the proposed Settlement is in the best interests of the Class and represents a significant recovery, particularly in light of the risks of further litigation and the uncertainty with respect to Lead Plaintiff's ability to collect on any judgment. Accordingly, Lead Plaintiff respectfully moves for preliminary approval of the proposed Settlement. Defendants agree that this motion should be granted, but do not necessarily agree with all statements and arguments Lead Plaintiff sets out in this brief.

## II. FACTUAL AND PROCEDURAL BACKGROUND

### A. Description of the Action

Beginning on October 9, 2007, several class actions were filed in the United States District Courts for the Northern District of California (the "Court") and for the Southern District of New York alleging similar violations of the federal securities laws against the Defendants. The cases filed in the Southern District of New York were subsequently transferred to the Northern District of California, which consolidated all such cases under the caption, *In re LDK Solar Securities Litigation*, Master File No. C-07-05182-WHA (BZ) (the "Action").

By Order dated January 4, 2008 (Dkt. No. 57), and in accordance with the Private Securities Litigation Reform Act ("PSLRA"), the Court appointed Shahpour Javidzad as Lead Plaintiff for the Action. By Order dated February 8, 2008 (Dkt. No. 64), the Court appointed Cohen Milstein Sellers & Toll PLLC as Lead Counsel for the proposed Class. By Order dated June 1, 2009 (Dkt. No. 262), the Court appointed Berman DeValerio as Liaison Counsel.

On March 10, 2008, Lead Plaintiff filed the Consolidated Class Action Complaint (the "Complaint") (Dkt. No. 65) asserting claims under §§10(b) and 20(a) of the Securities Exchange Act of 1934, 15 U.S.C. §§78j(b) and 78t(a), and Rule l0b-5 promulgated thereunder by the United States Securities and Exchange Commission ("SEC"), against LDK Solar Co., Ltd. ("LDK") and LDK Solar USA, Inc., as well as seven of LDK's officers and directors ("Defendants"). The Complaint alleged that the Defendants disseminated and/or controlled those who disseminated materially false and misleading statements and failed to disclose alleged material facts regarding, among other matters, the quantity and value of LDK's silicon raw material inventory.

The Court denied Defendants' motions to dismiss the Complaint on May 29, 2008 (Dkt. No. 85) and September 24, 2008 (Dkt. No. 132). On January 28, 2009 the Court certified a class (the "Class") comprised of:

> all persons who (a) purchased LDK Solar Co., Ltd. ... American Depository Shares ("ADSs"); (b) purchased call options for LDK ADSs; or (c) sold put options for LDK ADSs during the Class Period defined below, and were damaged thereby. Excluded from the Class are the Defendants and the other current and former

> officers and directors of the Company, their immediate families, their heirs, successors, or assigns and any entity controlled by any such person. The Class Period is June 1, 2007 through October 7, 2007.

Dkt. No. 177 at 6. On May 21, 2009 Lead Counsel caused a Court-approved notice of the class certification order to be mailed to potential Class members.

Following the denial of the motions to dismiss, the parties engaged in extensive discovery, during the course of which, among other things, Defendants produced over two million pages of documents to Lead Plaintiff and Lead Plaintiff took twenty depositions of LDK employees or former employees and five depositions of Defendants' experts. Lead Plaintiff also engaged four of his own experts to assist in discovery, to calculate damages and to testify at trial. Discovery concluded in late December 2009.

On January 7, 2010, Defendants filed a motion for summary judgment and three motions to exclude expert testimony from Lead Plaintiff's technical, damages, and accounting experts. Lead Plaintiff also filed his own motion for partial summary judgment. Briefing of these motions was completed on January 28, 2010. No ruling has yet been issued in connection with these motions.

During the course of the litigation, the parties also participated in extensive mediation efforts. On December 22, 2008, the parties first participated in a formal mediation conducted by the Hon. Daniel Weinstein (Ret.). The parties participated in subsequent in person mediations conducted by Judge Weinstein on August 18, 2009, and on February 1, 2010. Lead Plaintiff and Defendant Jack Lai, on behalf of all of the Defendants, personally attended each of these sessions. At various times throughout the period from December 2008 through January 2010, the parties discussed a possible resolution of the Action with Judge Weinstein. At the conclusion of the February 1, 2010, mediation, and with the participation of Judge Weinstein, the parties agreed that the Action be settled for a payment of $16 million for the benefit of the Class by Defendants and their insurer. Lead Plaintiff understands that, because Defendants' remaining insurance coverage is substantially less than $16 million, most of the settlement amount will be paid by Defendant LDK.

B.   **The Proposed Settlement and Notice to the Class**

The proposed Settlement provides that Defendants or their insurer will pay the $16 million Settlement amount into an interest-bearing escrow account for the benefit of the Class within ten working days of the Court's preliminary approval order. Assuming that every potential Class member files a claim, the proposed Settlement would provide a recovery of about $1.13 per damaged share of LDK stock before deduction of attorneys' fees and expenses and the administrative cost of the proposed Settlement. Lead Plaintiff's attorneys' will petition the Court for attorneys' fees of no more than 15% of the proposed Settlement—$2.4 million. Litigation expenses are expected to be no greater than $3.1 million, and settlement administrative costs are expected to be approximately $250,000.

If preliminary approval is granted, Lead Plaintiff will notify Class members of the proposed Settlement by mailing the Notice and Proof of Claim to them. The Notice advises Class members of the essential terms of the proposed Settlement, of information regarding Lead Counsel's fee and expense application, and of the proposed plan for allocating the proposed Settlement proceeds among Class members. The Notice also sets forth the procedure for objecting to the proposed Settlement or opting out of the Class, and notifies Class members of the date, time and place of the Settlement Fairness Hearing. The Stipulation also provides for a Summary Notice, which would be widely disseminated by Lead Plaintiff. Defendants have the opportunity to terminate the Settlement if the amount of Class members who validly request to be excluded from the Settlement exceeds certain thresholds agreed upon by the parties.

**III.   ARGUMENT**

A.   **The Settlement Should Be Preliminarily Approved**

According to the Manual for Complex Litigation, approving a class action settlement

> involves a two-step process. First, counsel submit the proposed terms of the settlement and the court makes a preliminary fairness evaluation. . . . If the preliminary evaluation of the proposed settlement does not disclose grounds to doubt its fairness or other obvious deficiencies . . . the court should direct that notice under Rule 23(c) be given to the class members of a formal fairness hearing, at which arguments and evidence may be presented in support of and in opposition to the settlement.

[C-07-05182 WHA] NOTICE OF MOTION AND UNOPPOSED MOTION IN SUPPORT OF PRELIMINARY
APPROVAL OF PROPOSED SETTLEMENT AND MEMO IN SUPPORT THEREOF                                  4

§30.41, at 236-37 (3d ed. 1995).

By this motion, Lead Plaintiff respectfully requests that the Court take the first step in the process and preliminarily approve the proposed Settlement and allow Notice of the proposed Settlement and of the Settlement Fairness Hearing to be sent to Class members. Lead Plaintiff asks the Court to enter the proposed Order for Notice and Hearing, attached as <u>Exhibit A</u> to the Stipulation.

Preliminary approval does not require the Court to make a final determination that a settlement is fair, reasonable and adequate. Rather, that decision is made only at the final approval stage, after notice of the settlement has been given to class members. *See* 5 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE ¶23.83[1], 23-336.2 to 23-339 (3d ed. 2001). In considering a potential settlement, the Court need not reach any ultimate conclusions on the issues of fact and law that underlie the merits of the dispute, *Detroit v. Grinnell Corp.*, 495 F.2d 448, 456 (2d Cir. 1974), and need not engage in a trial on the merits. *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982). Preliminary approval of a settlement should be granted if the proposed settlement falls within the range of what could be found "fair, adequate and reasonable" so that notice may be given to the proposed class and a hearing for final approval can be scheduled. *Id.*; *Class Pls. v. Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992). Here, preliminary approval of the proposed Settlement should be granted because the proposed Settlement is well "within the range of possible approval." *Armstrong v. Bd. of Sch. Dirs.*, 616 F.2d 305, 310 (7th Cir. 1980).

### 1. The Risks of Further Litigation Weigh Heavily in Favor of Preliminary Approval

Although the Court should not determine at this point whether the proposed Settlement should be approved, there are sufficient grounds for it to conclude that it is appropriate to advise the Class of the proposed Settlement and to set a date for a Settlement Fairness Hearing to consider whether the Settlement is fair, adequate and reasonable. At the time the Settlement was reached discovery was complete. Given the extensive discovery in this matter, Lead Plaintiff is well positioned to evaluate the merits of the proposed Settlement and Lead Plaintiff's Counsel

believes that the amount of the proposed Settlement is fair, adequate and reasonable, given the possibility that Lead Plaintiff might not prevail at trial and the substantial risk that, even if Lead Plaintiff were to prevail at trial and on any subsequent appeals, a process that might take years, it would be difficult or impossible to collect any judgment against Defendants. And even if Lead Plaintiff were to prevail and be able to collect a judgment, any damages awarded might be much smaller than those that Lead Plaintiff seeks. By contrast, the proposed Settlement would provide an assured all-cash benefit to Class members in the near future.

        **(a)**     **There Is Uncertainty About Lead Plaintiff's Ability to Prove His Case**

The claims advanced by the Class involve numerous complex legal and factual issues and Lead Counsel recognizes that there would be substantial difficulties in prosecuting this case before a jury.

For example, Lead Plaintiff's allegations are based, in part, on public allegations by Mr. Charley Situ, LDK's former financial controller, of inventory and accounting irregularities and of missing inventory. But Lead Plaintiff believes that Situ would not be available as a witness at trial and that even if Situ were available he might not be able to support his assertions that the quantity of inventory he claimed was missing was actually missing. Although it may be possible for Lead Plaintiff to show serious violations of accounting rules at LDK by relying on documents and expert testimony, Situ's absence greatly complicates Lead Plaintiff's ability to present his case in a manner easily understandable by a jury. Moreover, Lead Plaintiff's inability to prove the quantity of inventory that Situ claimed was missing was actually missing, will facilitate an argument by Defendants that loss causation has not been established. This is so because Defendants will argue that the drop in the price of LDK shares resulted from the dissemination of Situ's allegations of missing inventory, allegations that Defendants will assert were not true.

Furthermore, to prevail Lead Plaintiff must prove not only that Defendants materially violated applicable accounting rules, but that they did so with scienter—that they acted intentionally or recklessly. Proving that Defendants' conduct was intentional or reckless is challenging, because Defendants will likely testify that any accounting errors were not the result

of their intentional or reckless conduct. Defendants have argued that they reasonably relied on advice from their outside auditors, the accounting firm of KPMG Huazhen, KPMG's Chinese affiliate. Lead Plaintiff's effort to prove that there was no such reasonable reliance will be complicated by the fact that, despite a subpoena and requests from all parties to this Action that it comply with the subpoena, KPMG Huazhen refused to produce any documents to Lead Plaintiff, contending that to comply would be a violation of Chinese criminal law.

In addition to these concerns, Lead Plaintiff's three most important experts are the subject of pending *Daubert* challenges that argue that their testimony should be excluded. Although Lead Plaintiff believes that the Court would find the testimony of each of these experts admissible, this is by no means certain. It would be a severe blow to Lead Plaintiff's case if any of the three challenged experts were barred from testifying. Moreover, given that nearly all of the fact witnesses are Chinese speaking LDK employees located in China, almost all of the fact witness testimony would need to be presented via videotape or transcript reading, and through an interpreter, making it difficult for Lead Plaintiff to present his case in a compelling manner.

Finally, even if Lead Plaintiff obtained a favorable jury verdict, he would face the prospect of appeals which might take years to resolve and which might ultimately result in an appellate decision in Defendants' favor.

### (b) There Is Uncertainty About Lead Plaintiff's Ability to Prove Substantial Damages

If Lead Plaintiff were to prevail at trial, he would likely argue that damages amounted to approximately $293 million. But there is a substantial possibility that, even if a jury were to find Defendants liable, it could award far less than that amount. Defendants have attacked the methodology used by Lead Plaintiff's damages expert and have asserted that some of the price movement in LDK shares on which Lead Plaintiff's damages number is based occurred for reasons other than the disclosures alleged by Lead Plaintiff. Lead Plaintiff also understands that Defendants will argue, with the support of expert testimony, that, even if Lead Plaintiff proves securities fraud, he cannot prove any damages, in part because the methodology of Lead Plaintiff's damages expert is supposedly unreliable.

### (c) There Is Uncertainty About Lead Plaintiff's Ability to Collect on Any Judgment

Lead Plaintiff believes that it would be difficult to collect any judgment he might obtain against Defendants. Defendants' insurance coverage is limited, each of the Individual Defendants resides in the People's Republic of China (except for Defendant Lai, who is unlikely to have sufficient assets to pay any judgment) and LDK has substantially all of its assets in China. Lead Plaintiff's research indicates that it would not be possible to enforce a judgment under U.S. securities laws in China. *See, e.g.,* Donald C. Clarke, *The Enforcement of United States Court Judgments in China: A Research Note* (May 27, 2004) (unpublished research paper, George Washington Univ. Law Sch., available at http://ssrn.com/abstract=943922) (the question of whether a U.S. judgment can be enforced in China "can be answered with a fair degree of confidence both as to formal law and as to actual practice: almost certainly no, at least where a defendant is present and objecting."); Yuan, Arthur Anyuan, *Enforcing and Collecting Money Judgments in China from a U.S. Judgment Creditor's Perspective*, 36 GEO. WASH. INT'L L. REV. 757, 758 (2004) ("The enforcement of foreign judgments in China has been notoriously difficult in recent years.").

Even if a judgment by this Court could be fully enforced against LDK, the limited amount of insurance available[1] means that if LDK became insolvent, there would likely be no funds to pay any judgment. LDK is a highly leveraged company in a depressed industry and its continued existence as a viable business entity is far from assured. *See* LDK Form 20-F for fiscal year 2008 at 11-13 (filed May 22, 2009 with the SEC) (describing LDK's heavy debt load and difficulty in obtaining financing). LDK's share price has fallen from $37.50 on October 8, 2007, at the end of the Class Period (*after* what Lead Plaintiff alleges were corrective disclosures of fraud at LDK) to $6.82 at the market close of February 12, 2010.

---

[1] Plaintiff understands that LDK or its officers and directors had $20 million in insurance coverage at the beginning of this litigation, but that because of defense costs incurred over the past two years of litigation, the amount of remaining coverage is significantly less than half the amount of the $16 million proposed Settlement. Presumably much, if not all, of LDK's remaining insurance coverage would be consumed by additional legal costs if this matter were to go to trial.

### 2. The Support of the Settlement by Experienced Counsel Weighs in Favor of Preliminary Approval

In determining whether the proposed Settlement should be preliminarily approved, the Court should consider Lead and Liaison Counsel's view that the proposed Settlement is fair, reasonable and adequate. Courts recognize that the opinion of experienced counsel supporting the settlement is entitled to considerable weight. *See*, *e.g.*, *In re First Capital Holdings Corp. Fin. Prods. Sec. Litig.*, MDL Docket No. 901, 1992 U.S. Dist. LEXIS 14337, *8 (C.D. Cal. June 10, 1992) (finding belief of counsel that the proposed settlement represented the most beneficial result for the class to be a compelling factor in approving settlement).[2] Here, Lead Plaintiff's counsel are Cohen Milstein Sellers & Toll PLLC, and Berman DeValerio, two of the most respected and experienced securities class action litigation firms in the country.

The question of whether a proposed settlement is fair, reasonable and adequate necessarily requires a judgment and evaluation by the attorneys for the parties based upon a comparison of "'the terms of the compromise with the likely rewards of litigation.'" *Weinberger*, 698 F.2d at 73 (quoting *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry v. Anderson*, 390 U.S. 414, 424-25 (1968)). An evaluation of the costs and benefits of settlement must also be tempered by recognizing that any compromise involves concessions on the part of all of the settling parties. Indeed, "the very essence of a settlement is compromise, 'a yielding of absolutes and an abandoning of highest hopes.'" *Officers for Justice*, 688 F.2d at 624 (citation omitted).

Giving considerable weight to the views of experienced class counsel is especially appropriate here because of Lead Counsel's familiarity with the factual issues of this Action, largely through their time-consuming and expensive review of the millions of pages of the mostly Chinese language documents produced by Defendants and the taking of 25 depositions, the bulk of which were taken in a language other than English. As a result of their persistent and

---

[2] *See also Kirkorian v. Borelli*, 695 F. Supp. 446, 451 (N.D. Cal. 1988); *Reed v. Gen. Motors Corp.*, 703 F.2d 170, 175 (5th Cir. 1983); *Weinberger v. Kendrick*, 698 F.2d 61, 74 (2d Cir. 1982); *Armstrong*, 616 F.2d at 325; *Fisher Bros. v. Cambridge-Lee Indus., Inc.*, 630 F. Supp. 482, 489 (E.D. Pa. 1985).

aggressive litigation of this case, despite the considerable costs involved, and their knowledge of the relevant facts, Lead Counsel was able to negotiate a favorable result for the Class.

Moreover, it is noteworthy that this proposed Settlement is the result of over a year of arm's length negotiations by experienced counsel, assisted by a respected mediator, and was reached only after Lead Counsel aggressively prosecuted the claims of the Class. The final amount of the proposed Settlement was reached with the active participation of Judge Weinstein, one of the most experienced securities litigation mediators in the country.

### 3. The Stage of the Proceedings Weighs in Favor of Preliminary Approval

"'[T]he stage of the proceedings'" is another factor considered by courts when determining the fairness of a settlement. *Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975) (citation omitted). Here, the proposed Settlement was reached after more than two years of litigation, after all fact and expert discovery had been completed, and less than two months before the scheduled start of trial. There can be no question that at the time the proposed Settlement was reached, Lead Counsel had a clear understanding of the strengths and weaknesses of the Class's claims.

### 4. The Benefits of the Settlement Weigh in Favor of Preliminary Approval

In the face of the abundant risks of continued litigation, the proposed Settlement provides the Class with a prompt and certain recovery of a significant sum. The Court should authorize the notification to the Class of the proposed Settlement and should set a hearing, at which absent Class members will have a chance to be heard, to consider whether the settlement is fair and reasonable and in the best interests of the Class.

### B. The Proposed Form of Notice to the Class Is Appropriate

Under Rule 23(e) of the Federal Rules of Civil Procedure, before a class action may be dismissed or compromised, notice of the proposed dismissal or compromise must be given in the manner directed by the court, and judicial approval must be obtained. The issue of whether a proposed settlement should be approved is within the sound discretion of the district court, which should be exercised in the context of public policy strongly favoring the pretrial settlement of

1    class action lawsuits. *See Shaffer v. Cont'l Cas. Co.,* No. 08-56124, 2010 U.S. App. LEXIS 726,
2    *3 (9th Cir. Jan. 12, 2010); *Class Pls.*, 955 F.2d at 1276.

3           Rule 23 requires that notice of a settlement be "the best notice that is practicable under
4    the circumstances, including individual notice to all members who can be identified through
5    reasonable effort." FED. R. CIV. P. 23(c)(2)(B); *see also* CONTE & NEWBERG, NEWBERG ON
6    CLASS ACTIONS, §8.2 at 162-65 (4th ed. 2002). In addition, the PSLRA imposes its own
7    requirements for notice: it must state: (i) the amount of the settlement proposed to be distributed
8    to the parties to the action, determined in the aggregate and on an average per-share basis; (ii) if
9    the parties do not agree on the average amount of damages per share that would be recoverable
10   in the event Lead Plaintiff prevailed, a statement from each settling party concerning the issue(s)
11   on which the parties disagree; (iii) a statement indicating which parties or counsel intend to make
12   an application for an award of attorneys' fees and costs (including the amount of such fees and
13   costs determined on an average per-share basis), and a brief explanation supporting the fees and
14   costs sought; (iv) the name, telephone number, and address of one or more representatives of
15   counsel for the plaintiff class who will be reasonably available to answer questions concerning
16   any matter contained in the notice of settlement published or otherwise disseminated to the class;
17   (v) a brief statement explaining the reasons why the parties are proposing the settlement; and (vi)
18   such other information as may be required by the Court. *See* 15 U.S.C.A. §78u-4(a)(7)(A)-(F).

19          As detailed in the proposed Notice, Lead Counsel and the Claims Administrator propose
20   to mail copies of the Notice of Proposed Settlement of Class Action (the "Notice") and the Proof
21   of Claim and Release (which together meet each of the requirements described in the preceding
22   paragraph) by first class mail to all persons and entities who appear on the transfer records of
23   LDK during the Class Period. In addition, Lead Counsel intends to widely disseminate the
24   Summary Notice on the internet. Lead Counsel also intends to mail copies of the Notice to the
25   largest banks and brokerage houses, requesting that the Notice be sent to all persons and entities
26   for which they acted as nominee purchaser of LDK securities. A substantial list of the persons
27   who are to receive the Notice is already in place because of the May 2009 Court-approved
28   mailing to Class members to inform them of the Court's certification of the Class. The proposed

1  notice program fulfills the requirements of due process because the proposed Notice alerts and
2  informs those members of the Class who can be identified through reasonable efforts of all of the
3  information set forth above. This Notice process is similar to the process the Court approved in
4  connection with dissemination of the previous notice of class certification in this matter.

## IV. PROPOSED SCHEDULE

If the Court grants preliminary approval to the proposed Settlement, Lead Plaintiff respectfully submits the following procedural schedule for the Court's review:

| Event | Time for Compliance |
| --- | --- |
| Date by which the Claims Administrator shall cause a copy of the Notice and the Proof of Claim to be mailed by first class mail to all Class members who can be identified with reasonable effort | 30 days after the Court's entry of the Order for Notice and Hearing (this mailing deadline is known as the "Notice Date") (Order for Notice and Hearing, ¶9) |
| Deadline for disseminating the Summary Notice | 10 days after the Notice Date (Order for Notice and Hearing, ¶11) |
| Deadline for submitting Requests for Exclusion | 42 days before the Settlement Fairness Hearing (Order for Notice and Hearing, ¶14) |
| Filing of memoranda in support of approval of the Settlement, Plan of Allocation and Lead and Liaison Counsel's application for an award of attorneys' fees and reimbursement of expenses | 35 days before the Settlement Fairness Hearing (Order for Notice and Hearing, ¶11) |
| Deadline for submitting objections or requests to appear at Settlement Fairness Hearing | 28 days before the Settlement Fairness Hearing (Order for Notice and Hearing, ¶13) |
| Filing of memoranda in response to any objections to the Settlement, the Plan of Allocation or Lead and Liaison Counsel's application for an award of attorneys' fees and reimbursement of expenses | 14 days before the Settlement Fairness Hearing (Order for Notice and Hearing, ¶21) |
| Settlement Fairness Hearing | The Parties agree that the Settlement Fairness Hearing should be not less than 120 days following entry of the Order for Notice and Hearing, at a date and time convenient for the Court, to allow sufficient time for notice to reach Class members prior to the hearing |
| Deadline for filing Proofs of Claim | 150 days after the Notice Date (Order for Notice and Hearing, ¶16) |

[C-07-05182 WHA] NOTICE OF MOTION AND UNOPPOSED MOTION IN SUPPORT OF PRELIMINARY
APPROVAL OF PROPOSED SETTLEMENT AND MEMO IN SUPPORT THEREOF              13

## V.     CONCLUSION

For all of the above reasons, Lead Plaintiff respectfully requests that his unopposed Motion for Preliminary Approval of Settlement be approved.

Dated:  February 14, 2010

By:  ____/s/ Herbert E. Milstein_____

**COHEN MILSTEIN SELLERS & TOLL PLLC**
Herbert E. Milstein
Joshua S. Devore
Matthew B. Kaplan
1100 New York Avenue, N.W.
West Tower, Suite 500
Washington, D.C. 20005
Telephone:  (202) 408-4600
Facsimile:  (202) 408-4699
Email: hmilstein@cohenmilstein.com
           jdevore@cohenmilstein.com
           mkaplan@cohenmilstein.com

*Lead Counsel for the Class*


By:  ____/s/ Christopher T. Heffelfinger_____

**BERMAN DEVALERIO**
Joseph J. Tabacco, Jr. (SBN 75484)
Christopher T. Heffelfinger (SBN 118058)
Anthony D. Phillips (SBN 259688)
One California Street, Suite 900
San Francisco, CA 94111
Telephone: (415) 433-3200
Facsimile: (415) 433-6382
Email: jtabacco@bermandevalerio.com
           cheffelfinger@bermandevalerio.com
           aphillips@bermandevalerio.com

*Liaison Counsel for the Class*