1   LATHAM & WATKINS LLP                 LATHAM & WATKINS LLP
       James J. Farrell (Bar No. 166595)      Matthew D. Harrison (Bar No. 210981)
2      james.farrell@lw.com                   matt.harrison@lw.com
    355 South Grand Avenue                505 Montgomery St., Suite 2000
3   Los Angeles, California  90071        San Francisco, California  94111
    Telephone:  (213) 485-1234            Telephone:  (415) 391-0600
4   Facsimile:  (213) 891-8763            Facsimile:  (415) 395-8095

5   LATHAM & WATKINS LLP                 Attorneys for Defendants
       John C. Tang (Bar No. 212371)
6      john.tang@lw.com
       Raymond A. Gallenberg (Bar No. 239484)
7      ray.gallenberg@lw.com
    140 Scott Drive
8   Menlo Park, California  94025
    Telephone:  (650) 328-4600
9   Facsimile:  (650) 463-2600

10

11

12

13                      UNITED STATES DISTRICT COURT

14                     NORTHERN DISTRICT OF CALIFORNIA

15  In re LDK SOLAR SECURITIES          MASTER FILE NO.  C-07-05182-WHA (BZ)
    LITIGATION
16
                                        **DEFENDANTS' OPPOSITION TO LEAD**
17  _____    **PLAINTIFF'S MOTION FOR PARTIAL**
                                        **SUMMARY JUDGMENT**
18  This Document Relates To:

19  ALL ACTIONS.
                                        Judge:     Hon. William H. Alsup
20                                      Date:      February 11, 2010
                                        Time:      8:00 a.m.
21                                      Courtroom: 9, 19th Floor

22

23

24

25

26

27

28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

DEFENDANTS' OPPOSITION TO LEAD PLAINTIFF'S MOTION
FOR PARTIAL SUMMARY JUDGMENT
MASTER FILE NO. C-07-05182-WHA (BZ)

# TABLE OF CONTENTS

**Page**

I.     ISSUES TO BE DECIDED ................................................................................ 1

II.    INTRODUCTION ............................................................................................. 1

III.   BACKGROUND ............................................................................................... 2

IV.    ARGUMENT ..................................................................................................... 5

    A.    The Undisputed Facts Establish That The Individual Defendants
    Were Not Control Persons Under § 20(a)....................................................... 5

        1.    Defendant Liangbao Zhu Was Not A Control Person ............................. 7

        2.    Defendant Xingxue Tong Was Not A Control Person.............................. 9

        3.    Defendant Gang Wang Was Not A Control Person................................. 10

        4.    Defendant Yonggang Shao Was Not A Control Person ......................... 11

        5.    Defendant Qiqiang Yao Was Not A Control Person .............................. 12

        6.    Defendant Xiaofeng Peng Was Not A Control Person........................... 14

            a.    Peng Did Not Actively Participate In The Relevant
            Day-to-Day Operations of LDK ...................................... 14

            b.    The Undisputed Facts Establish That Peng Was Not
            Involved With And Did Not Direct LDK's
            Accounting Activities ..................................................... 15

            c.    Peng's Approval Of The Purchase Price For Silicon
            Materials Supports Dismissal Of Plaintiff's § 20(a)
            Claims ............................................................................ 16

        7.    Defendant Jack Lai Was Not A Control Person ..................................... 18

    B.    The Undisputed Evidence Establishes That Plaintiff Cannot Prove
    A Primary Violation Of § 10(b)................................................................... 20

        1.    Plaintiff Cannot Establish a Primary Violation Showing
        that the Individual Defendants Acted With Scienter Where,
        By Plaintiff's Own Admission, Situ Was Wrong ................................... 21

        2.    LDK's Financial Statements And Accounting Policies
        Were Reviewed and Validated By The Company's
        Independent Auditor ............................................................................. 24

V.     CONCLUSION................................................................................................ 25

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

i

DEFENDANTS' OPPOSITION TO LEAD PLAINTIFF'S MOTION
FOR PARTIAL SUMMARY JUDGMENT
MASTER FILE NO. C-07-05182-WHA (BZ)

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Batwin v. Occam Networks, Inc.*,
   No. CV 07-2750 CAS (SHx), 2008 WL 2676364, (C.D. Cal. July 1, 2008)................ passim

*Brodsky v. Yahoo! Inc.*,
   592 F. Supp. 2d 1192 (N.D. Cal. 2008) ........................................................ passim

*City of Westland Police & Fire Ret. Fund v. Sonic Solutions*,
   No. C 07-05111 CW, 2009 WL 942182 (N.D. Cal. Apr. 6, 2009)...................... 8, 11, 15, 19

*Cool Fuel, Inc. v. Connett*,
   685 F.2d 309 (9th Cir. 1982) ................................................................................. 6

*Houghton v. South*,
   965 F.2d 1532 (9th Cir. 1992) ............................................................................... 2

*Howard v. Everex Sys., Inc.*,
   228 F.3d 1057 (9th Cir. 2000) ....................................................................... passim

*Howard v. Hui*,
   No. C 92-3742-CRB, 2001 WL 1159780 (N.D. Cal Sept. 24, 2007) ..................... passim

*In re eBay Seller Antitrust Litig.*,
   No. C 07-1882 JF (RS), 2008 U.S. Dist. LEXIS 102815
   (N.D. Cal. Dec. 11, 2008) ..................................................................................... 21

*In re McKesson HBOC, Inc. Sec. Litig.*,
   126 F. Supp. 2d 1248 (N.D. Cal. 2000) ............................................................ passim

*In re Nextcard, Inc. Sec. Litig.*,
   No. C 01-21029 JF (RS), 2006 U.S. Dist. LEXIS 16156 (N.D. Cal. Mar. 20,
   2006) ................................................................................................... 6, 8, 10, 11

*In re Silicon Graphics Sec. Litig.*,
   183 F.3d 970 (9th Cir. 1999) ......................................................................... 21, 25

*In re Software Toolworks Inc. Sec. Litig.*,
   50 F.3d 615 (9th Cir. 1994) ................................................................................. 25

*In re Splash Tech. Holdings, Inc. Sec. Litig.*,
   No. C 99-00109 SBA, 2000 U.S. Dist. LEXIS 15370, (N.D. Cal. Sept. 29,
   2000) ................................................................................................................ 14

*In re Worlds of Wonder Sec. Litig.*,
   35 F.3d 1407 (9th Cir. 1994) ............................................................................... 24

*Kassbaum v. Steppenwolf Prods., Inc.*,
   236 F.3d 487 (9th Cir. 2000) ................................................................................. 6

*Matthews v. Centex Telemanagement, Inc.*,
   No. C-92-1837-CAL, 1994 WL 269734 (N.D. Cal. June 8, 1994) ....................................24

*Newton v. Uniwest Fin. Corp.*,
   802 F. Supp. 361 (D. Nev. 1990).......................................................................................24

*Paracor Fin., Inc. v. Gen. Elec. Capital Corp.*,
   96 F.3d 1151 (9th Cir. 1996) ........................................................................................passim

*SEC v. Todd*,
   No. 03CV2230BEN (WMC), 2006 WL 1564892 (S.D. Cal. May 30, 2006)...............passim

*Stavroff v. Meyo*,
   No. 95-4118, 1997 U.S App. LEXIS 32774 (6th Cir. Nov. 12 1997) .................................25

*Sunnyside Dev. Co., LLC v. Opsys Ltd.*,
   No. C 05 0553 MHP, 2007 WL 2462143 (N.D. Cal. Aug. 29, 2007) ...................................6

**STATUTES**

15 U.S.C. § 78j(b)...............................................................................................................passim

15 U.S.C. § 78t....................................................................................................................passim

DEFENDANTS' OPPOSITION TO LEAD PLAINTIFF'S MOTION
TO COMPEL PRODUCTION OF CERTAIN DOCUMENTS
MASTER FILE NO. C-07-05182-WHA (BZ)

**I.     ISSUES TO BE DECIDED**

1.     Whether the undisputed facts establish that the Individual Defendants are not liable for control person liability under § 20(a) of the Securities Exchange Act of 1934, 15 U.S.C. § 78t.

2.     Whether Plaintiff has met his burden of proving that the market for options for LDK's stock was efficient during the Class Period such that Plaintiff is entitled to summary judgment on this issue.[1]

**II.     INTRODUCTION**

Plaintiff has moved for partial summary judgment on two issues: (i) the efficiency of the market in which LDK Solar Co., Ltd.'s ("LDK" or "the Company") stock and options for LDK's stock traded, and (ii) the status of Defendants Xiaofeng Peng ("Peng"), Jack Lai ("Lai"), Xingxue Tong ("Tong"), Yonggang Shao ("Shao"), Liangbao Zhu ("Zhu"), Qiqiang Yao ("Yao"), and Gang Wang ("Wang") (collectively, the "Individual Defendants") as control persons under § 20(a) of the Securities Exchange Act of 1934, 15 U.S.C. § 78t.[2]   While the Individual Defendants occupied various positions on LDK's board or management team, the law is clear that holding these positions, alone, did not render them control persons.   Rather, § 20(a) requires a careful assessment of the Individual Defendants' actual day-to-day involvement in the operations at issue in this case.   As the undisputed facts reveal, none of the Individual Defendants actively participated in the daily management of the relevant areas of LDK's operations sufficient to render them control persons under § 20(a).

Plaintiff's Complaint is centered around Charley Situ's ("Situ") uncorroborated accusation that LDK reported as inventory substantial amounts of non-existent and completely

---

[1] Plaintiff seeks partial summary judgment establishing that "the market for LDK's securities was efficient during the Class Period." Mot. at 6. Defendants do not oppose Plaintiff's Motion with respect to the efficiency of the market for LDK's common stock, traded as American Depository Shares ("ADS") on the New York Stock Exchange. Plaintiff, however, has not presented sufficient evidence to warrant summary judgment on the issue of the efficiency of the market for options, which are derivative instruments not issued by LDK or traded on one of the major exchanges, but purportedly indexed to LDK's ADSs. Accordingly, the Court should deny Plaintiff's Motion with respect to the efficiency of the market for such "options." *Houghton v. South*, 965 F.2d 1532, 1536 (9th Cir. 1992).

[2] The Individual Defendants as well as Defendants LDK Solar Co., Ltd. and LDK Solar USA, Inc. are referred to collectively as "Defendants."

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

1

DEFENDANTS' OPPOSITION TO LEAD PLAINTIFF'S MOTION
FOR PARTIAL SUMMARY JUDGMENT
MASTER FILE NO. C-07-05182-WHA (BZ)

1   unusable silicon raw materials.  After 14 months of extensive and costly discovery, however,

2   Plaintiff has now abandoned Situ's claims and concedes that no silicon materials at LDK were, at

3   any time, missing or completely unusable.  Rather than dismiss his claims, Plaintiff now recasts

4   his theory of liability solely around LDK's application of nuanced and judgmental accounting

5   principles, which LDK applied consistent with other solar companies and with the approval of its

6   independent, outside auditor.  The undisputed facts make clear that most of the Individual

7   Defendants were not actively involved in and did not exercise power over the day-to-day

8   operations of LDK related to the accounting issues now forming the basis of Plaintiff's case.

9   While the Individual Defendants may have held high positions within LDK's management or

10   board, they did not exercise the type of control that courts within the Ninth Circuit have held is

11   necessary to render an individual a control person under § 20(a).  As such, the Court should deny

12   Plaintiff's Motion seeking to establish that each Individual Defendant was a control person.

13   Instead, based on the undisputed facts in this matter, the Court should grant summary judgment

14   in favor of Defendants and dismiss Plaintiff's § 20(a) claims.

15          Furthermore, the undisputed evidence reveals that Plaintiff cannot establish a primary

16   violation of § 10(b) of the Securities Exchange Act, 15 U.S.C. § 78j(b), a predicate to proving his

17   § 20(a) claims.  The facts in this case establish that Situ's accusations were wrong, that

18   Defendants were never made aware of any allegations of a specific inventory discrepancy at

19   LDK until after August 1, 2007, that LDK's accounting policies and financial statements were all

20   reviewed and validated by LDK's independent auditor, and that Defendants have never made any

21   suspicious stock sales.  Accordingly, the record is clear that Plaintiff cannot prove that

22   Defendants acted with the requisite scienter to establish a primary violation under § 10(b).

23   **III.    BACKGROUND**

24          On March 10, 2008, Plaintiff filed his Consolidated Class Action Complaint (Dkt. No.

25   65).  The evidence developed through discovery was summarized in Defendants' Notice of

26   Motion and Motion for Summary Judgment (Dkt. No. 338).  In short, Plaintiff's Complaint

27   alleges that LDK, a solar wafer manufacturer, fraudulently reported silicon materials as

28   inventory that either did not exist or were completely unusable in LDK's manufacturing process.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

2

DEFENDANTS' OPPOSITION TO LEAD PLAINTIFF'S MOTION
FOR PARTIAL SUMMARY JUDGMENT
MASTER FILE NO. C-07-05182-WHA (BZ)

1   *See, e.g.*, Compl. at ¶¶ 37, 87.  These allegations were based on unsubstantiated rumors made by

2   Charley Situ, a disgruntled former employee of LDK, upon his dismissal from the Company on

3   September 25, 2007.  *Id.*; Lai Decl. (Dkt. No. 344) at ¶ 21, Ex. G,  Ex. H.  Specifically, based on

4   Situ's accusations, Plaintiff alleged that out of the 614 tons of silicon feedstock that LDK

5   claimed as part of its inventory as of late August 2007, 284 tons was non-existent and the

6   majority of an additional 285 tons of scrap silicon was completely unusable.  Compl. at ¶¶ 37,

7   87.  Situ never identified any specific discrepancy in LDK's inventory or misstatement in the

8   Company's financial statements while employed at LDK, but rather only made his allegations

9   after he was terminated for cause and his request for $2 million of "in the money" stock options

10  and a relocation to Hong Kong were denied by the Company.  Lai Decl. (Dkt. No. 344) at ¶ 30,

11  Ex. E, Ex. F.

12          After 14 months of discovery, which included the production of over 2.1 million pages of

13  documents to Plaintiff and the taking of 28 depositions, Plaintiff now concedes that Situ was

14  wrong and that there was never any missing or completely unusable inventory at LDK.  *See, e.g.*,

15  Gallenberg Decl., Ex. 2 (Dkt. No. 346) (Harden Dep.) at 97:2-11, 98:18-23 (concluding that

16  Situ's claim of substantial amounts of missing inventory at LDK was wrong); *Id.*, Ex. 3 (Dkt.

17  No. 346) (Todaro Reply) at 13-15 (demonstrating that all forms of silicon in LDK's inventory,

18  including N-type material, P/N-type material, powder, and highly-doped material, were used in

19  LDK's manufacturing process); *Id.*, Ex. 12 (Dkt. No. 346) (Todaro Report) at 24.  This

20  conclusion is consistent with the findings of an internal investigation into Situ's allegations that

21  was initiated by LDK's management immediately after he sent his September 25, 2007 email.

22  Among other things, this internal investigation involved both a manual stock count of LDK's

23  inventory on September 26, 2007 and the testing of the usability of LDK's silicon materials.  Lai

24  Decl. (Dkt. No. 344) at ¶¶ 22-23, Ex. I at 4, 22-25, Ex. J at 4, 22-25; Zhang Decl. (Dkt. No. 349)

25  at ¶¶ 44-47; Rossetto Decl. (Dkt. No. 339) at ¶ 13.  After the internal investigation, the outside

26  directors of LDK's Audit Committee oversaw another investigation into Situ's claims involving

27  independent counsel as well as independent polysilicon and forensic accounting experts.  This

28  independent investigation further confirmed that LDK never booked as inventory any missing or

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

3

DEFENDANTS' OPPOSITION TO LEAD PLAINTIFF'S MOTION
FOR PARTIAL SUMMARY JUDGMENT
MASTER FILE NO. C-07-05182-WHA (BZ)

1   unusable inventory as claimed by Situ.  Lai Decl. (Dkt. No. 344) at ¶ 24; Gallenberg Decl., Ex. 9

2   (Dkt. No. 406) (12/17/2007 Form 6-K) at 2.  Plaintiff's proffered experts agree with the

3   conclusions of both LDK management's internal investigation as well as the independent Audit

4   Committee investigation.  Gallenberg Decl., Ex. 5 (Dkt. No. 346) (Todaro Dep.) at 188:24-

5   191:20; *Id*., Ex. 2 (Dkt. No. 346) (Harden Dep.) at 97:2-11.  Additionally, LDK's outside

6   auditor, KPMG Huazhen ("KPMG"), conducted a thorough analysis and audit of LDK's

7   inventory accounting after Situ publicly made his claims of fraud.  In doing so, KPMG reviewed

8   all of the Company's quarterly financials issued in 2007 and also provided LDK with a clean

9   audit opinion for fiscal year 2007, concluding that LDK's financials were stated in accordance

10   with US GAAP.  Lai Decl. (Dkt. No. 344) at ¶ 36; Kaplan Decl., Ex. D (Dkt. No. 337) (4/7/2008

11   Form 20-F) at F-2.

12        No longer arguing that LDK improperly booked missing or completely unusable silicon

13   materials as inventory, Plaintiff's case now revolves around the assertion that Defendants

14   misapplied judgmental accounting principles related to LDK's inventory.  Gallenberg Decl., Ex.

15   1 (Dkt. No. 346) (Pl.'s Interrog. Resps.) at 13-15 (noting that Plaintiff's case in chief will be

16   based on the contention that LDK misapplied accounting principles under US GAAP).  Plaintiff

17   advances these claims despite the fact that all of LDK's financial statements and accounting

18   decisions were discussed with and approved by KPMG.  Lai Decl. (Dkt. No. 344) at ¶ 12, Ex. A;

19   Kaplan Decl., Ex. D (Dkt. No. 337) (Form 20-F) at F-2.

20        While each of the Individual Defendants served as executives and/or directors of LDK

21   during the Class Period, they were not involved in, and did not direct, any of the day-to-day

22   operations of LDK at issue in this case.  Zhu's work at LDK was limited primarily to human

23   resources.  Declaration of Jason H. Lee,[3] Ex . 1 (Zhu Dep.) at 24:2-25:23; Ex. 2 (Peng Dep.) at

24   52:13-22.  Tong was the Chief Operating Officer of LDK, but was not involved in LDK's

25   accounting, silicon raw material purchases, or inventory management.  Ex. 3 (Tong Dep.) at

26   25:23-26:1, 27:22-28:2, 29:9-30:9, 31:2-15.  As an outside director of LDK, Wang was not an

27   employee of LDK and was not involved in managing or directing any aspect of its daily affairs.

28

[3] Unless otherwise noted, all citations to "Ex. __" are citations to the Lee Declaration.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

4

DEFENDANTS' OPPOSITION TO LEAD PLAINTIFF'S MOTION
FOR PARTIAL SUMMARY JUDGMENT
MASTER FILE NO. C-07-05182-WHA (BZ)

Gallenberg Decl., Ex. 29 (Dkt. No. 417) (Wang Dep.) at 39:19-42:9. Shao's specialized role at LDK was to raise capital, which he did while based out of a three-person office in Shanghai, hundreds of miles from LDK's headquarters in Xinyu, China. Ex. 4 (Shao Dep.) at 15:22-17:18, 117:23-118:7, 124:20-126:21. Shao did not play any role in LDK's accounting activities, the acquiring of silicon materials, or the management of LDK's inventory. *Id.* at 51:6-17, 53:16-18, 77:14-17, 116:2-5. Yao's primary responsibility at LDK was fund raising and managing relations with Chinese banks. Ex. 8 (Yao Dep.) at 39:19-22. Additionally, Yao was involved with LDK's Chinese domestic accounting, but did not play a role in LDK's compliance with international accounting standards such as GAAP. *Id.* at 55:22-57:13. Peng was the CEO and Chairman of LDK's board. In this role, he was focused on developing high level goals for the Company and raising capital. He was not actively involved in the accounting or inventory-management operations at LDK. *See, e.g.*, Peng Decl. (Dkt. No. 340) at ¶ 7; Ex. 5 (Sarno Dep.) at 272:12-22. Given the high prices of silicon raw materials during 2006 and 2007, which were caused by a global shortage in silicon, Peng played the limited role of approving the final purchase prices of silicon materials acquired by LDK, but he did not determine how to ensure that those materials were accounted for correctly under US GAAP. Peng Decl. (Dkt. No. 340) at ¶ 8; Ex. 2 (Peng Dep.) at 46:19-47:9. Finally, Lai was the CFO of LDK, and was familiar with the application of US GAAP relating to inventory. However, he was not involved in the decisions regarding the purchase or utilization of LDK's silicon materials, including the rate at which LDK used its scrap silicon inventory. Gallenberg Decl., Ex. 24 (Dkt. No. 346) (Lai Dep.) at 48:25-49:22, 115:12-116:17.

## IV. ARGUMENT

### A. The Undisputed Facts Establish That The Individual Defendants Were Not Control Persons Under § 20(a)

To establish control person liability under § 20(a), a party must prove: (1) "a primary violation of federal securities laws," and (2) that a defendant "exercised actual power or control over the primary violator." *Howard v. Everex Sys., Inc.*, 228 F.3d 1057, 1065 (9th Cir. 2000). The second prong of this test requires that a party prove more than just "general control" over a

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

5

DEFENDANTS' OPPOSITION TO LEAD PLAINTIFF'S MOTION
FOR PARTIAL SUMMARY JUDGMENT
MASTER FILE NO. C-07-05182-WHA (BZ)

1    corporation. *Howard v. Hui*, No. C 92-3742-CRB, 2001 WL 1159780, at *3 (N.D. Cal Sept. 24,

2    2007). Rather, a party must prove that a defendant was actively involved in and significantly

3    directed the day-to-day operations of the corporation at issue in a case. *See Paracor Fin., Inc. v.*

4    *Gen. Elec. Capital Corp.*, 96 F.3d 1151, 1163-64 (9th Cir. 1996) (concluding that the Chairman

5    and CEO of a corporation was not a control person despite "evidence that [he] was involved in

6    the management of [the corporation], at least on major decisions" where he did not have

7    authority over the types of activities at issue); *Hui*, 2001 WL 1159780, at *3; *In re McKesson*

8    *HBOC, Inc. Sec. Litig.*, 126 F. Supp. 2d 1248, 1277 (N.D. Cal. 2000).

9         A defendant's mere status as a director or executive does not establish that the defendant

10   was a control person under § 20(a). *Paracor*, 96 F.3d at 1163; *SEC v. Todd*, No. 03CV2230BEN

11   (WMC), 2006 WL 1564892, at *9 (S.D. Cal. May 30, 2006). Additionally, a defendant's review

12   and approval of financial statements and SEC filings alone does not establish control person

13   status. *Everex*, 228 F.3d at 1067 n.13; *Batwin v. Occam Networks, Inc.*, No. CV 07-2750 CAS

14   (SHx), 2008 WL 2676364, at *25 (C.D. Cal. July 1, 2008); *In re Nextcard, Inc. Sec. Litig.*, No. C

15   01-21029 JF (RS), 2006 U.S. Dist. LEXIS 16156, at *20 (N.D. Cal. Mar. 20, 2006); *Hui*, 2001

16   WL 1159780, at *4. Rather, the determination of control person status depends on a careful

17   assessment of a defendant's degree of control and participation in the corporate activities at

18   issue. *Everex*, 228 F.3d at 1065; *Brodsky v. Yahoo! Inc.*, 592 F. Supp. 2d 1192, 1207 (N.D. Cal.

19   2008); *Batwin*, 2008 WL 2676364, at *25 (holding that defendants' roles as directors who signed

20   a corporation's SEC filings did not "offer any indication that these defendants were involved in

21   the day-to-day affairs of [the corporation], and therefore, d[id] not present a basis for control

22   liability against these defendants"); *Hui*, 2001 WL 1159780, at *3

23        Here, the undisputed facts make clear that the Defendants did not exercise the degree of

24   control necessary to qualify as control persons under § 20(a). As such, the Court should deny

25   Plaintiff's Motion with respect to his control person claims. Furthermore, based on the

26   evidentiary record, the Court should exercise its authority to grant summary judgment in favor of

27   Defendants and dismiss Plaintiff's § 20(a) claims. *Kassbaum v. Steppenwolf Prods., Inc.*, 236

28   F.3d 487, 494 (9th Cir. 2000); *Cool Fuel, Inc. v. Connett*, 685 F.2d 309, 311 (9th Cir. 1982).

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

6

DEFENDANTS' OPPOSITION TO LEAD PLAINTIFF'S MOTION
FOR PARTIAL SUMMARY JUDGMENT
MASTER FILE NO. C-07-05182-WHA (BZ)

### 1.      Defendant Liangbao Zhu Was Not A Control Person

To qualify as a control person, Zhu had to exercise a significant degree of control over the day-to-day operations at issue in this case. *Paracor*, 96 F.3d at 1163-64; *Brodsky*, 592 F. Supp. 2d at 1207; *Hui*, 2001 WL 1159780, at *3. But the evidence shows that Zhu's involvement at LDK fell far short of this standard. In his deposition, Zhu testified that during the Class Period he was not involved in, nor did he exercise any control over, LDK's silicon purchasing, wafer manufacturing, or accounting practices:

> Q. Did you supervise directly or indirectly in 2007 the purchase of raw material for the production process?
> A. No.
> . . . .
> Q. LDK makes ingots by putting silicon raw materials into the crucible, is that right?
> A. This is a question about the manufacturing process?
> Q. Yes.
> A. So I don't know. It is not within my field.
> . . . .
> Q. Do you think the answer to that question would be of importance to LDK's accountants?
> . . . .
> A. I'm not able to make a judgment because accountancy is not within my field.

Ex. 1 (Zhu Dep.) at 27:15-18, 50:17-23, 52:10-15; *see also id.* at 117:21-119:1. Indeed, Zhu's principal work at LDK involved human resources administration. *Id.* at 24:2-25:23; Ex. 2 (Peng Dep.) at 52:13-22. The above undisputed evidence clearly reveals that Zhu did not have the power to direct or set the policies for the areas of LDK's operations related to the allegations of inventory and accounting fraud in this case. Thus, Zhu lacked both the authority and degree of involvement in the management of LDK's relevant operations necessary to qualify as a control person. *Paracor*, 96 F.3d at 1163-64; *Batwin*, 2008 WL 2676364, at *25; *Hui*, 2001 WL 1159780, at *3.

In support of his Motion, Plaintiff cites to deposition testimony in which Zhu states that he supervised LDK's personnel department, construction workers at LDK,[4] as well as "the

---

[4] Plaintiff selectively cites to Zhu's deposition testimony to make it appear as though an Engineering department reported to Zhu. Mot. at 11. In realty, Zhu had no such responsibility at LDK. When Zhu's cited testimony is read in its proper context, it is clear that Zhu merely stated

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

7

DEFENDANTS' OPPOSITION TO LEAD PLAINTIFF'S MOTION
FOR PARTIAL SUMMARY JUDGMENT
MASTER FILE NO. C-07-05182-WHA (BZ)

1   purchasing of equipment spare parts and office supplies." Mot. at 11; Ex. 1 (Zhu Dep.) at 23:6-

2   27:3, 31:8-10. This testimony, however, falls short of establishing the "significant degree of

3   day-to-day operational control" required to render Zhu a control person. *In re McKesson*, 126 F.

4   Supp. 2d at 1277. To the contrary, it proves that Zhu did not manage or direct any of the silicon

5   inventory, manufacturing, or accounting operations at LDK, which are the operations implicated

6   by Plaintiff's claims. Relying on Zhu's testimony that he had nothing to do with LDK's

7   accounting for or purchasing of LDK's silicon inventory, Plaintiff asks this Court to equate

8   Zhu's purchase of "spare parts and office supplies" with LDK's purchase of its silicon raw

9   materials. But the Court should reject Plaintiff's specious argument. Based on these undisputed

10  facts, Zhu was not, as a matter of law, a control person of LDK under § 20(a). *See Paracor*, 96

11  F.3d at 1163-64; *Brodsky*, 592 F. Supp. 2d at 1207; *Hui*, 2001 WL 1159780, at *3.

12          Plaintiff also cites to Zhu's testimony that he was a member of LDK's "high level

13  management" and the fact that Zhu signed LDK's June 1, 2007 IPO prospectus[5] as support for

14  his claim that Zhu was a control person of LDK. Mot. at 11-12. The law is clear, however, that

15  an individual's status as an officer or director of a corporation alone does not render that

16  individual a control person. *See, e.g.*, *Paracor*, 96 F.3d at 1163; *City of Westland Police & Fire

17  Ret. Fund v. Sonic Solutions*, No. C 07-05111 CW, 2009 WL 942182, at *10-11 (N.D. Cal. Apr.

18  6, 2009); *Todd*, 2006 WL 1564892, at *9. Furthermore, the Ninth Circuit and multiple courts

19  within the Northern District of California have held that the mere review and approval of a

20  company's financial statements or SEC filings does not, in and of itself, render an individual a

21  control person of the company. *Everex*, 228 F.3d at 1067 n.13 (affirming summary judgment in

22  favor of defendant director on § 20(a) claim); *Batwin*, 2008 WL 2676364, at *25; *In re Nextcard*,

23  2006 U.S. Dist. LEXIS 16156, at *20; *Hui*, 2001 WL 1159780, at *4. Rather than rely on

24  Plaintiff's weak proxies for control, the proper analysis involves the careful factual assessment of

25  _____

26  that individuals involved in building construction at LDK reported to him, not that he was in
    charge of any aspect of LDK's manufacturing or technical operations. Ex. 1 (Zhu Dep.) at
27  26:16-24.

    [5] Plaintiff's Motion refers to the Individual Defendants' signature on "LDK's prospectus for its
28  June 1, 2009 IPO." *See, e.g.*, Mot. at 12. LDK's IPO prospectus, however, was filed on June 1,
    2007, not 2009.

LATHAM&WATKINS
ATTORNEYS AT LAW
LOS ANGELES

8

DEFENDANTS' OPPOSITION TO LEAD PLAINTIFF'S MOTION
FOR PARTIAL SUMMARY JUDGMENT
MASTER FILE NO. C-07-05182-WHA (BZ)

the nature and extent of Zhu's involvement in the day-to-day activities and core operations of LDK at issue in this case.  *Paracor*, 96 F.3d at 1162; *Brodsky*, 592 F. Supp. 2d at 1207; *Todd*, 2006 WL 1564892, at *9.  This assessment supports a finding that Zhu was not a control person under §20(a).  Accordingly, the Court should deny Plaintiff's Motion and grant summary judgment in favor of Defendants on the issue of Zhu's status as a control person.

### 2.    Defendant Xingxue Tong Was Not A Control Person

Plaintiff has not advanced any evidence that supports his claim that Tong was a control person with respect to the areas of LDK's operations at issue here.  Plaintiff cites deposition testimony in which Tong states his title at LDK and then describes his duties as assisting the chairman of the board in managing day-to-day activities at the Company.  Mot. at 11 ("Q. Can you describe for me what your duties included as chief operating officer for the company during 2007?  A. To put it simply as to assist the chairman of the board in the day-to-day–in managing the day-to-day operations of the company.").  The record reveals, however, that Tong's general management activities at LDK fall far short of the level of influence and control necessary to establish control person status.  In the portion of Tong's deposition transcript immediately following the excerpt cited by Plaintiff, Tong explained that he played no role in supervising or directing the purchase of silicon materials or the monitoring of LDK's silicon inventory:

> Q.  Were you personally involved ever in the purchase of feedstock materials at LDK during 2007?
> A.  No.
> . . . .
> Q.  As part of your duties in 2007, was it your responsibility to keep yourself informed as to purchases of silicon feedstock by the company?
> A.  At that time I was not responsible for this work.
> . . . .
> Q.  As the chief operating officer at LDK during 2007, were you responsible in any capacity for the quality of the silicon feedstock that would be purchased by the company in 2007?
> . . . .
> A.  The quality of the silicon feedstock was the responsibility of the purchasing department and the quality control department.  I would not be involved in the specifics.
> . . . .
> Q.  Setting aside purchases and focusing simply on existing inventories of

LATHAM&WATKINS<sup>LLP</sup>
ATTORNEYS AT LAW
LOS ANGELES

DEFENDANTS' OPPOSITION TO LEAD PLAINTIFF'S MOTION
FOR PARTIAL SUMMARY JUDGMENT
MASTER FILE NO. C-07-05182-WHA (BZ)

feedstock at LDK during 2007, did you have responsibility in your capacity as COO at LDK for monitoring the quality of existing feedstocks at LDK during 2007?

. . . .

A.  If there was a need to report me on the situation of the inventories at LDK, they would report to me.  But I was not responsible for the specific management work.

Ex. 3 (Tong Dep.) at 25:23-26:1, 27:22-28:2, 29:9-30:9, 31:2-15.  Additionally, the record does not contain any evidence that Tong participated in any aspects of LDK's accounting functions. As such, the undisputed facts establish that Tong lacked the active involvement in and authority over the activities at LDK at issue necessary to render him a control person.  *Paracor*, 96 F.3d at 1163-64; *Brodsky*, 592 F. Supp. 2d at 1207.  There is no evidence demonstrating Tong's actual involvement in or influence over LDK's relevant day-to-day operations, including the management of LDK's silicon inventory or accounting.  Plaintiff's reliance on Tong's job title and purported general power at LDK do not establish control person status.  *Todd*, 2006 WL 1564892, at *9; *Hui*, 2001 WL 1159780, at *3; *In re McKesson*, 126 F. Supp. 2d at 1277.

Finally, as with the other Individual Defendants, Tong's signature on LDK's IPO prospectus does not establish control person status.  *Everex*, 228 F.3d at 1067 n.13; *Batwin*, 2008 WL 2676364, at *25; *In re Nextcard*, 2006 U.S. Dist. LEXIS 16156, at *20.

### 3.      Defendant Gang Wang Was Not A Control Person

As an outside director of LDK, Wang had no role in the day-to-day management and control of LDK's affairs.  He was not an employee of LDK, and did not direct or manage any aspect of the Company.  As the undisputed evidence reveals, Wang relied on other employees of LDK both to update him on developments at LDK and to run the Company.  Gallenberg Decl., Ex. 29 (Dkt. No. 417) (Wang Dep.) at 39:19-42:9.  This lack of any involvement in directing or managing LDK's daily affairs means that Wang was not a control person of LDK as a matter of law.  *Brodsky*, 592 F. Supp. 2d at 1207 (noting that control person status is not established where defendants did not participate "'in the day-to-day affairs'" of a corporation "such that they 'exercised actual power or control over' the issuance of any accounting decisions"); *In re Nextcard*, 2006 U.S. Dist. LEXIS 16156, at *20 ("The Court is unaware of any authority for the

LATHAM&WATKINS^{LLP}
ATTORNEYS AT LAW
LOS ANGELES

10

DEFENDANTS' OPPOSITION TO LEAD PLAINTIFF'S MOTION
FOR PARTIAL SUMMARY JUDGMENT
MASTER FILE NO. C-07-05182-WHA (BZ)

1    proposition that an outside director may be held liable under § 20(a)."); *Hui*, 2001 WL 1159780,

2    at *4.

3           The only purported evidence that Plaintiff cites to support his claim that Wang was a

4    control person is Wang's testimony that he had a vote at LDK's board meetings and voted on

5    policies that were discussed, as well as the fact that Wang's signature was on LDK's IPO

6    Prospectus.  Mot. at 12.  As discussed above, neither Wang's status as an outside director of LDK

7    nor his signature on LDK's IPO prospectus are sufficient to render him a control person.  *Everex*,

8    228 F.3d at 1067 n.13; *Batwin*, 2008 WL 2676364, at *25; *Hui*, 2001 WL 1159780, at *4; *In re*

9    *McKesson*, 126 F. Supp. 2d at 1277.  Indeed, as the undisputed evidence makes clear, Wang did

10   not possess or exercise the control over LDK necessary to establish control person status.

### 4.      Defendant Yonggang Shao Was Not A Control Person

12          The only purported facts that Plaintiff identifies to support his claim that Shao was a

13   control person of LDK are Shao's status as a director of LDK and Shao's signature on LDK's

14   June 1, 2007 IPO prospectus.  Mot. at 12.  Shao's status as a director and ability to vote during

15   board meetings, however, do not establish that Shao controlled or was involved in the relevant

16   operations of LDK.  *See, e.g.*, *Everex*, 228 F.3d at 1067 n.13; *Sonic Solutions*, 2009 WL 942182,

17   at *10-11.  Similarly, the fact that Shao signed LDK's IPO prospectus is not sufficient.  *Everex*,

18   228 F.3d at 1067 n.13; *Batwin*, 2008 WL 2676364, *25; *In re Nextcard*, 2006 U.S. Dist. LEXIS

19   16156, at *20.  Plaintiff provides no evidence that Shao significantly directed the relevant day-

20   to-day operations of LDK in any manner despite having taken the deposition of Shao and

21   receiving over 2.1 million pages of documents through discovery.  Plaintiff cannot identify any

22   evidence that Shao was involved in or possessed the power over the relevant operations of LDK

23   sufficient to render him a control person because Shao did not, in fact, possess such power or

24   control.

25          In fact, the undisputed evidence reveals that Shao did not participate in the day-to-day

26   control or management of any aspect of LDK's operations that are relevant here.  Shao was not

27   an accountant, was not involved in LDK's accounting operations, and did not play a role in

28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

11

DEFENDANTS' OPPOSITION TO LEAD PLAINTIFF'S MOTION
FOR PARTIAL SUMMARY JUDGMENT
MASTER FILE NO. C-07-05182-WHA (BZ)

acquiring or managing LDK's silicon materials.  Ex. 4 (Shao Dep.) at 51:6-17, 53:16-18, 59:1-22 (explaining that Shao's work at LDK was not related to LDK's inventory), 60:18-61:22 (noting that LDK's cost of goods sold was not within Shao's job responsibilities or area of concern), 77:14-17, 116:2-5.  Rather, Shao's job centered around raising capital for LDK.  *Id.* at 117:23-118:7, 124:20-126:21.  Shao's specialized role did not even require him to work at LDK's principal facility in Xinyu, China.  Instead, Shao worked out of a small office of three employees in Shanghai, hundreds of miles away from Xinyu.  *Id.* at 15:22-17:18.  This undisputed lack of involvement in and control over LDK's relevant day-to-day operations establishes that, as a matter of law, Shao was not a control person of LDK.  *Paracor*, 96 F.3d at 1162; *Hui*, 2001 WL 1159780, at *3; *In re McKesson*, 126 F. Supp. 2d at 1277.

### 5.    Defendant Qiqiang Yao Was Not A Control Person

The undisputed evidence establishes that Yao was not a control person.  As the record makes clear, Yao's primary responsibility at LDK in 2007 related to funding and raising capital for the Company.  Ex. 8 (Yao Dep.) at 39:20-22 ("[M]y main responsibility was related to funding, especially loans from domestic commercial banks, cash management.").  Yao's primary concern with fundraising and interfacing with Chinese banks to obtain loans reveals that he was not significantly involved with the core day-to-day operations of LDK in the manner necessary to render him a control person.  *See Hui*, 2001 WL 1159780, at *3; *In re McKesson*, 126 F. Supp. 2d at 1277.  Furthermore, while Yao did have responsibility for some accounting functions at LDK, his role did not include the application of the US GAAP principles that Plaintiff now challenges.  Specifically, Yao was responsible for LDK's Chinese domestic accounting.  Ex. 8 (Yao Dep.) at 55:22-56:5.  He did not supervise, control, or play a significant role in LDK's compliance with international standards such as US GAAP:

> Q. …Okay.  Did LDK have separate accounting policies that applied to accounting outside of China in 2007?
> A.  I don't know.
> . . . .
> Q. …Do you know if LDK made accounting adjustments to convert accounting from domestic Chinese accounting to conform with international accounting rules?

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

. . . .
> [A.]  Of course, we need to make some adjustment to the domestic accounting.
> However, I don't have the knowledge of how to do that.  I'm not the person who's
> in charge of that job.

*Id.* at 56:6-57:13.  LDK's compliance with US GAAP was outside of the responsibility and control of Yao.  Yao's role was unrelated to the Company's need to comply with international accounting standards, and does not establish control person status here.  *See Paracor*, 96 F.3d at 1163-64; *Hui*, 2001 WL 1159780, at *3.

To support his claim that Yao was a control person, Plaintiff cites to deposition testimony in which Yao indicated that he helped contribute to the forming of some of LDK's initial accounting policies.  Mot. at 10.  As the undisputed evidence clearly reveals, however, any contributions that Yao made to the development of LDK's accounting policies was extremely limited in scope.  Plaintiff's Motion selectively cites to deposition testimony to create the false impression that Yao was involved with forming and had the power to influence LDK's larger accounting policies, including the core policies followed by LDK to comply with the international accounting standards that are at issue in this case:  "Q. …you were involved in the process of developing LDK's accounting policies; is that right?....A. To form the policies, yes….Q.  Did you have any role in developing LDK's internal control structure?....A.  Yes, I also—I also participate this kind of . . . task."  *Id.*

Plaintiff, however, omits significant portions of Yao's testimony on this subject, which clearly illustrate Yao's limited involvement in forming and managing LDK's overall accounting policies:  "I was involved in the forming of the accounting procedures and policies related to Chinese domestic accounting….My responsibility was only in charge of what happened in China."  Ex. 8 (Yao Dep.) at 55:19-56:1.  As explained above, Yao's involvement in just the domestic/Chinese segment of LDK's accounting operations does not establish the significant day-to-day influence over key aspects of LDK's application of US GAAP at issue here.  Thus, Yao cannot be a control person with respect to LDK's application of US GAAP to its inventory.  *Paracor*, 96 F.3d at 1162; *Batwin*, 2008 WL 2676364, at *25; *Todd*, 2006 WL 1564892, at *9; *Hui*, 2001 WL 1159780, at *3.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

13

DEFENDANTS' OPPOSITION TO LEAD PLAINTIFF'S MOTION
FOR PARTIAL SUMMARY JUDGMENT
MASTER FILE NO. C-07-05182-WHA (BZ)

**6.      Defendant Xiaofeng Peng Was Not A Control Person**

**a.      Peng Did Not Actively Participate In The Relevant Day-to-Day Operations of LDK**

As the undisputed facts establish, Peng did not direct or participate in the day-to-day affairs of LDK at issue in this case in a manner sufficient to render him a control person under § 20(a).  As LDK's founder and CEO, Peng's primary activities involved generating high-level goals for the Company and raising capital.  LDK's actual operations and daily affairs were directed and controlled by other individuals within the Company.  Peng Decl. (Dkt. No. 340) at ¶ 7; Ex. 5 (Sarno Dep.) at 272:12-22.  Peng was not actively involved with and did not direct the manufacturing activities at LDK.  Ex. 5 (Sarno Dep.) at 270:6-12.  Similarly, Peng was not involved with and did not manage LDK's accounting operations or policies.  Ex. 2 (Peng Dep.) at 89:25-90:6, 92:10-13 (explaining that LDK's accounting matters were directed and handled by LDK's accounting team rather than Peng himself).  Such a general leadership role at LDK, and lack of significant participation in the Company's relevant daily operations, is insufficient to render Peng a control person. *Todd*, 2006 WL 1564892, at *9 (holding on summary judgment that CEO defendant was not a control person where he was not involved in directing the day-to-day operations of a corporation despite the fact that he was "consulted on all major decisions"); *Hui*, 2001 WL 1159780, at *3 (concluding that "[g]eneral control over a company is not enough" to establish control over a corporation, but rather a defendant must have been "active in the day-to-day affairs" of the corporation); *In re McKesson*, 126 F. Supp. 2d at 1277 (holding that a plaintiff must "prove[] that defendants exercised 'a significant degree of day-to-day operational control'" in order to establish control person status).

Plaintiff appears to suggest that Peng's status as "founder, chairman, chief executive officer and ultimate controlling shareholder" of LDK meant that he exercised control over LDK under § 20(a).  Mot. at 8.  The law is clear, however, that control person status is to be determined through a careful factual analysis of a defendant's actual involvement in the day-to-day direction of a corporation rather than the defendant's title or stock ownership. *See, e.g.*, *Everex*, 228 F.3d at 1067

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

14

DEFENDANTS' OPPOSITION TO LEAD PLAINTIFF'S MOTION
FOR PARTIAL SUMMARY JUDGMENT
MASTER FILE NO. C-07-05182-WHA (BZ)

n.13; *Sonic Solutions*, 2009 WL 942182, at \*10-11; *Batwin*, 2008 WL 2676364, at \*25.

### b. The Undisputed Facts Establish That Peng Was Not Involved With And Did Not Direct LDK's Accounting Activities

Plaintiff's Complaint is centered on Charley Situ's accusation that Defendants improperly reported as inventory silicon materials that either did not exist or were completely unusable. *See, e.g.*, Compl. at ¶¶ 37-38. 87; Pl's Opp. to Def.'s Mot. to Dismiss (Dkt. No. 73) at 12. Based on these allegations, the Court allowed Plaintiff's case to survive Defendants' motions to dismiss. After over a year of discovery, however, Plaintiff has now abandoned his claim that LDK's silicon was missing or completely unusable. Gallenberg Decl., Ex. 2 (Dkt. No. 346) (Harden Dep.) at 97:2-11, 98:18-23 (concluding that Situ's accusation of missing inventory was incorrect); *Id.*, Ex. 12 (Dkt. No. 346) (Todaro Report) at 24 (stating that, under the right circumstances, "absolutely any material is usable in LDK's production process); *Id.*, Ex. 3 (Dkt. No. 346) (Todaro Reply) at 13-15 (noting that all types of silicon materials, including N-type material, P/N-type material, powder, and highly-doped material were all used by LDK); *Id.*, Ex. 14 (Dkt. No. 346) (Lorenzini Report) at 9 ("The feedstock for [multicrystalline] wafers can be virgin polysilicon, or in some cases scrap silicon from the semiconductor industry such as tops and tails…broken wafers, pot scrap, granules and powder."); *Id.*, Ex. 7 (Dkt. No. 346) (Lorenzini Dep.) at 105:20-106:10 (N-type material is usable to make solar wafers), 111:4-7 (P/N type material is usable to make solar wafers), 135:4-137:4.

Rather than pursue his original claim that much of LDK's silicon inventory was non-existent and that recycled scrap materials were completely unusable (Compl. at ¶ 37), Plaintiff's new theory of liability turns on the application of judgmental accounting rules that Plaintiff asserts were misapplied by Defendants. Gallenberg Decl., Ex. 1 (Dkt. No. 346) (Pl.'s Interrog. Resps.) at 13-15 ("Plaintiff's principal argument during its case in chief will be that LDK improperly applied the average cost accounting method, in violation of well established, widely known GAAP rules."). The undisputed facts establish that Peng was not involved in and did not direct LDK's accounting practices. *See, e.g.*, Ex. 2 (Peng Dep.) at 86:24-87:23, 89:3-90:6, 93:2-15, 108:11-109:3, 112:4-10. Given Peng's undisputed lack of participation in and control over

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

15

DEFENDANTS' OPPOSITION TO LEAD PLAINTIFF'S MOTION
FOR PARTIAL SUMMARY JUDGMENT
MASTER FILE NO. C-07-05182-WHA (BZ)

1   LDK's accounting activities, which now form the foundation of Plaintiff's case, the Court should

2   find, as a matter of law, that Peng was not a control person. *See Paracor*, 96 F.3d at 1163-64

3   (holding that CEO and Chairman of corporation was not a control person where he lacked

4   involvement in and did not direct aspects of corporation at issue in case); *Brodsky*, 592 F. Supp.

5   2d at 1207; *Todd*, 2006 WL 1564892, at *9; *Hui*, 2001 WL 1159780, at *3.

**c.      Peng's Approval Of The Purchase Price For Silicon Materials
Supports Dismissal Of Plaintiff's § 20(a) Claims**

8          Plaintiff further cites to Peng's role approving LDK's purchases of silicon raw material

9   as purported evidence of his control person status.  Mot. at 8.  But Plaintiff's argument is

10  misguided.  It is true that in 2007 Peng had a role in LDK's purchasing of silicon raw materials.

11  Throughout 2006 and 2007, there was a global shortage in silicon feedstock, which led to sharp

12  increases in the prices for all types of silicon that the solar wafer industry used to manufacture

13  wafers, including recycled silicon.  Gallenberg Decl., Ex. 7 (Dkt. No. 346) (Lorenzini Dep.) at

14  83:15-21, 87:19-88:15; Castellano Decl., Ex. A (Dkt. No. 353) at 8; Rossetto Decl. (Dkt. No.

15  339) at ¶ 86.  Thus, Peng monitored the active market for scrap silicon material to ensure that

16  LDK acquired its silicon raw materials at the lowest possible price given market conditions.

17  Peng Decl. (Dkt. No. 340) at ¶ 8.  This included the market for broken wafers, pot scraps,

18  powder, N-type material, P/N-type material, and highly-doped materials, all of which, by the

19  admission of Plaintiff's own expert, were actively purchased and used by participants in the solar

20  wafer industry.  Gallenberg Decl., Ex. 7 (Dkt. No. 346) (Lorenzini Dep.) at 85:8-20, 88:5-15,

21  105:20-106:10, 111:4-7; *Id*., Ex. 14 (Dkt. No. 346) (Lorenzini Report) at 9; *see also* Rossetto

22  Decl. (Dkt. No. 339) at ¶¶ 56-64.  As Plaintiff's expert confirmed when reviewing an invoice for

23  the purchase of various P-type, N-type, and P/N-type scrap material, LDK acquired its scrap

24  silicon at approximately the same prices as other participants in the recycled silicon market:

25          Q. It's an invoice from Kunical International Group, dated August 7, 2007….If
        you look in the middle of the document, there's a column labeled 'Description.'
26      Do you see that?
        A. Yes.
27      Q. And below that, it has four bolded headings, "IC grade Round Wafers
        (coinroll)" and below that, "Remelt," below that, "Pot Scrap," and below that
28

LATHAM&WATKINS<sup>LLP</sup>
ATTORNEYS AT LAW
LOS ANGELES

16

DEFENDANTS' OPPOSITION TO LEAD PLAINTIFF'S MOTION
FOR PARTIAL SUMMARY JUDGMENT
MASTER FILE NO. C-07-05182-WHA (BZ)

"Broken Wafers."  You see what I'm referring to?
A. I do see them.
Q. Okay.  Are those categories of sources for silicon that are used in multicrystalline wafer manufacture?
A. I believe they give a good indication of what the – what the customer is buying.  So I've never seen them actually put into a form like this, but this is – looks very logical.
. . . .
Q. And in the next column, it has unit price there; right?
A. Correct.
Q. Do you, from your background and experience, have any way of gauging whether these are the approximate unit prices for such raw materials in 2007?
. . . .
THE WITNESS: They look like quite high prices, but during the – during the period when they were – w[ith] the marketplace, outstretched as it was, I'm sure they thought this was a reasonable price to pay."

Gallenberg Decl., Ex. 7  (Dkt. No. 346) (Lorenzini Dep.) at 84:13-88:15; Ex. 6 (Kunical Invoice) at 1.  As such, the undisputed facts do not support a finding of control person liability as to Peng.  Rather, they defeat Plaintiff's claims entirely by establishing that LDK's inventory prices were properly booked and that LDK was purchasing completely usable materials that were being competitively acquired and utilized by several participants in the solar wafer industry.[6]

Peng's limited role in approving silicon material purchase prices does not establish that he was a control person of LDK or any other Individual Defendants.  His participation in the purchasing of silicon raw materials does not prove that he was actively involved in or directly influenced any of LDK's accounting-related practices that Plaintiff has now made the centerpiece of his case.  Indeed, there is no evidence indicating that Peng had any role related to how LDK accounted for its inventory under accounting standards such as ARB 43.  Accordingly, the undisputed facts make clear that Peng did not possess the requisite degree of involvement over LDK's operations implicated by this case to render him a control person.  *See Paracor*, 96 F.3d at 1163-64; *Brodsky*, 592 F. Supp. 2d at 1207; *Todd*, 2006 WL 1564892, at *9.  Thus, the Court should deny Plaintiff's Motion and, instead, dismiss Plaintiff's § 20(a) claim against Peng.

---

[6] Plaintiff's proffered expert Stuart Harden admitted in his deposition that there is no evidence of any collusive activity or fraudulent transactions involving LDK's silicon inventory between LDK and any third parties.  Gallenberg Decl., Ex. 2 (Dkt. No. 346) (Harden Dep.) at 213:11-214:1.  This further undermines Plaintiff's assertion that Defendants improperly purchased and booked LDK's silicon material inventory.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

17

DEFENDANTS' OPPOSITION TO LEAD PLAINTIFF'S MOTION
FOR PARTIAL SUMMARY JUDGMENT
MASTER FILE NO. C-07-05182-WHA (BZ)

### 7.    Defendant Jack Lai Was Not A Control Person

As discussed above, Plaintiff's Complaint is centered around Charley Situ's uncorroborated rumors that LDK had substantial amounts of missing and unusable silicon material in its inventory.  Compl. at ¶¶ 37, 87.  Specifically, the rumors alleged in the Complaint suggested that out of 614 metric tons of material that LDK claimed on its books, 284 tons did not exist while the majority of another 285 tons of scrap material was completely unusable.  *Id*. at ¶ 37.  Under this theory of fraud where hundreds of tons of LDK's silicon inventory recorded in the Company's accounting books were claimed to have been completely fabricated, it is conceivable that Lai, LDK's CFO, could be characterized as having been involved in the daily operations of LDK at issue, thus possibly rendering him a control person under § 20(a).  As previously discussed, however, Plaintiff has now conceded that Situ was wrong, and that none of LDK's reported inventory at any point in time was, in fact, missing or completely unusable.  Gallenberg Decl., Ex. 2 (Dkt. No. 346) (Harden Dep.) at 97:2-11, 98:18-23 ("Q. Okay. And in fact when you looked into [Situ's] assertions with respect to missing inventory, you agreed with the internal investigation that he was incorrect about that; right?  A. Yes.");  *Id*., Ex. 3 (Dkt. No. 346) (Todaro Reply) at 13-15; *Id*., Ex. 12 (Dkt. No. 346) (Todaro Report) at 24; *Id*., Ex. 14 (Dkt. No. 346) (Lorenzini Report) at 9; *Id*., Ex. 7 (Dkt. No. 346) (Lorenzini Dep.) at 105:20-106:10, 111:4-7.  This admission is consistent with the findings of multiple investigations into Situ's claims and LDK's inventory accounting that were conducted by both accounting and polysilicon experts immediately after Situ first made his allegations.  *See* Lai Decl. (Dkt. No. 344) at ¶¶ 21-24; Gallenberg Decl., Ex. 9 (Dkt. No. 406) (12/17/2007 Form 6-K) at 2 (reporting conclusion of independent investigation that there was no inventory missing at LDK and that LDK was using all of its silicon raw materials).  Plaintiff's admission is also consistent with the undisputed facts developed after over a year of costly discovery in this matter.  *See, e.g.*, Lu Decl., Ex. F (Dkt. No. 347) (internal LDK records evidencing the use of all of the different forms of silicon materials in LDK's inventory), ¶¶ 9, 33-34; Gallenberg Decl., Ex. 13 (Dkt. No. 346) (revealing that LDK used significant amounts of silicon materials in its manufacturing process, including

1   N-type material, P/N-type material, and powder of both high and low resistivities); Rand Decl.,

2   Ex. A (Dkt. No. 357) at 37-38, 41 (same).

3          Plaintiff's new theory of liability turns on the utilization rate of LDK's silicon materials,

4   and in particular, the slower moving scrap material in LDK's inventory.  Gallenberg Decl., Ex. 1

5   (Dkt. No. 346) (Pl.'s Interrog. Resps.) at 13-15.  As the undisputed facts establish and Plaintiff's

6   own expert concedes, however, LDK acquired all of the differently sourced silicon materials in

7   its inventory, including the same scrap materials that Plaintiff criticizes, from an active market

8   that involved not just LDK but several participants from the solar wafer industry.  *Id.*, Ex. 14

9   (Dkt. No. 346) (Lorenzini Report) at 9; *Id.*, Ex. 7 (Dkt. No. 346) (Lorenzini Dep.) at 85:8-20,

10  88:5-15, 105:20-106:10, 111:4-7; *see also* Castellano Decl., Ex. A (Dkt. No. 353) at 4-8, 14.  All

11  of the different forms of material purchased by LDK were used in its manufacturing process and,

12  because silicon does not meaningfully degrade or expire over time, there were no obsolescence

13  issues with respect to LDK's inventory.  Gallenberg Decl., Ex. 3 (Dkt. No. 346) (Todaro Reply)

14  at 13-15; Rossetto Decl. (Dkt. No. 339) at ¶¶ 41, 56-64; Lu Decl., Ex. F (Dkt. No. 347).

15  Plaintiff's expert further confirmed that LDK acquired its scrap silicon from the market at

16  reasonable and competitive prices given the extreme tightening of supply for all silicon materials

17  caused by the global shortage of silicon in 2006 and 2007.  Gallenberg Decl., Ex. 7 (Dkt. No.

18  346) (Lorenzini Dep.) at 84:13-88:15; *cf.* Castellano Decl., Ex. A (Dkt. No. 353) at 14 ("It is

19  well-documented that spot market prices for recycled materials regularly reached or exceeded

20  $300 per kilogram [between 2006 and 2008].").  As such, the record is replete with undisputed

21  evidence that LDK purchased its silicon inventory, all of which was usable, at prevailing market

22  prices and appropriately booked that inventory at cost.  This evidence defeats Plaintiff's claims

23  entirely, making the issue of Lai's and the other Defendants' statuses as control persons

24  irrelevant.  *Paracor*, 96 F.3d at 1161 (primary violation of 10(b) is a predicate to 20(a) liability).

25          Furthermore, while Plaintiff criticizes the rate of use of certain silicon materials at LDK,

26  the undisputed facts clearly establish that Lai was not involved in, nor did he exercise control

27  over, the acquisition or rate of use of LDK's silicon raw materials.  Lai did not play any role in

28  acquiring any of LDK's silicon raw materials.  Gallenberg Decl., Ex. 24 (Dkt. No. 346) (Lai

LATHAM&WATKINS<sup>LLP</sup>
ATTORNEYS AT LAW
LOS ANGELES

19

DEFENDANTS' OPPOSITION TO LEAD PLAINTIFF'S MOTION
FOR PARTIAL SUMMARY JUDGMENT
MASTER FILE NO. C-07-05182-WHA (BZ)

Dep.) at 36:2-5.  Similarly, the uncontested facts reveal that Lai was not involved in, and did not

influence, the selection of the materials used to manufacture solar wafers, the utilization rates of

LDK's different types of silicon materials, or any other manufacturing operations at LDK:

> Q. Has anyone within LDK ever explained to you how LDK determines precisely which materials go into making a particular ingot?
> A. No, that's not my area of responsibility.
> . . . .
> Q. Did you receive reports that indicated the quality of the materials that were in inventory at the time?
> A. That is not in my area of responsibilities.
> Q Is it necessary to project the usage of that material to know quality of material in inventory?
> . . . .
> A. That projection of usage of such materials is determined by the manufacturing or engineering staff.  So that was performed and that information is transferred to my accounting staff….
> Q. But you understood that the rate that materials would be consumed in the manufacturing – in the manufacturing process depended on the physical characteristics of that material, right?
> A. No, that's a technical question that I could not provide you a good answer.

*Id*. at 48:25-49:4, 115:12-116:17.  Thus, even assuming that the decision to use certain

materials more quickly than others is relevant to Plaintiff's revamped theory of liability,

Plaintiff has not and cannot argue that Lai was responsible for making decisions about the

sources of silicon purchased, the prices paid for this silicon, or the rate at which different

materials were used.  Based on the undisputed evidence of Lai's lack of involvement in

determining and managing the usage rates of LDK's various types of silicon materials, it

is clear that Lai did not possess the type of active influence over LDK or others necessary

to render him a control person under §20(a).  *See Paracor*, 96 F.3d at 1163-64; *Todd*,

2006 WL 1564892, at *9; *Hui*, 2001 WL 1159780, at *3.

### B.    The Undisputed Evidence Establishes That Plaintiff Cannot Prove A Primary Violation Of § 10(b)

To establish control person liability for any of the Individual Defendants, Plaintiff

must first prove that there was a primary violation of § 10(b) of the Securities Exchange Act.

*Paracor*, 96 F.3d at 1161.  Here, Plaintiff cannot establish a primary violation of § 10(b) by any

of the Defendants because, amongst other things, Defendants did not make any of the alleged

LATHAM&WATKINS™
ATTORNEYS AT LAW
LOS ANGELES

20

DEFENDANTS' OPPOSITION TO LEAD PLAINTIFF'S MOTION
FOR PARTIAL SUMMARY JUDGMENT
MASTER FILE NO. C-07-05182-WHA (BZ)

1  false statements with the requisite scienter.  To establish scienter, Plaintiff must prove that each

2  Defendant had "a mental state embracing an intent to deceive, manipulate, or defraud."  *In re*

3  *Silicon Graphics Sec. Litig.*, 183 F.3d 970, 975 (9th Cir. 1999).  Plaintiff asserts that each

4  Defendant acted with the requisite scienter for liability under the securities laws.  *See* Mot. at 13

5  n.6.  As the undisputed evidence reveals, however, Defendants did not make any of the alleged

6  false statements with an "intent to deceive, manipulate, or defraud."  Indeed, the record makes

7  clear that Defendants consistently acted in good faith, including when making the statements

8  alleged in the Complaint to be false or misleading.[7]

9      **1.**    **Plaintiff Cannot Establish a Primary Violation Showing that the**
**Individual Defendants Acted With Scienter Where, By Plaintiff's**

10                     **Own Admission, Situ Was Wrong**

11

12       As Plaintiff's own proffered experts admit, Charley Situ was wrong when he accused

13 LDK of reporting large quantities of missing and completely unusable silicon materials as

14 inventory.  As such, the undisputed evidence establishes that Plaintiff cannot prove that any

15 Defendants committed a primary violation of § 10(b) with the requisite scienter.  The undisputed

16 evidence also establishes that the Defendants acted in good faith.

17       Immediately after Situ first identified an alleged inventory discrepancy of hundreds of

18 tons of silicon at LDK on September 25, 2007, LDK's management launched an internal

19 investigation into LDK's inventory accounting as well as each one of Situ's claims.  Lai Decl.

20 (Dkt. No. 344) at ¶¶ 21-22, Ex. I, Ex. J.  This investigation involved a manual stock count of all

21 of LDK's inventory, a review of the Company's accounting and inventory records, and an

---

22 [7] Plaintiff incorrectly states that Defendants may be precluded from presenting evidence that they
acted in good faith because Defendants purportedly "refused" to respond to one of Plaintiff's

23 interrogatories.  Mot. at 13 n.6.  In truth, Defendants responded and objected to the interrogatory
referred to by Plaintiff on June 18, 2009.  Kaplan Decl., Ex. K (Dkt. No. 337).  Plaintiff's request

24 for the entire factual basis and all supporting documents is "overly broad and burdensome on
[its] face," and thus need not be answered.  *In re eBay Seller Antitrust Litig.*, No. C 07-1882 JF

25 (RS), 2008 U.S. Dist. LEXIS 102815, at *6 (N.D. Cal. Dec. 11, 2008).  Plaintiff appears to have
acknowledged this fact, as he decided not to compel an additional response to this interrogatory,

26 despite having over six months to do so prior to filing his Motion for Partial Summary Judgment.
Furthermore, over the course of discovery, Plaintiff has been provided with significant

27 information related to Defendants' good faith defense through 20 facts depositions, including the
depositions of each Individual Defendant, and the production of over 2.1 million pages of

28 documents.  Plaintiff cannot seek to exclude that vast quantity of evidence from the Court's
consideration based on this belated attack on a single interrogatory response from months earlier.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES
21
DEFENDANTS' OPPOSITION TO LEAD PLAINTIFF'S MOTION
FOR PARTIAL SUMMARY JUDGMENT
MASTER FILE NO. C-07-05182-WHA (BZ)

1   analysis of the usability of the Company's silicon materials. *Id.*; Zhang Decl. (Dkt. No. 349) at

2   ¶¶ 43-47; Rossetto Decl. (Dkt. No. 339) at ¶ 13.  After a careful evaluation, the internal

3   investigation team concluded that Situ's accusations had no merit.  Lai Decl. (Dkt. No. 344) at

4   23, Ex. I at 22-25, Ex. J at 22-25; Zhang Decl. (Dkt. No. 349) at ¶¶ 43-47; Rossetto Decl. (Dkt.

5   No. 339) at ¶ 13.  Situ had failed to account for silicon materials stored at a number of LDK's

6   warehouses prior to making his accusation of missing inventory and did not have the technical

7   expertise necessary to make a determination about the usability of the Company's silicon

8   materials.  Zhang Decl. (Dkt. No. 349) at ¶¶ 45-47; Rossetto Decl. (Dkt. No. 339) at ¶ 13.

9   Plaintiff's own proffered expert explicitly endorsed the findings of LDK's internal investigation.[8]

10  Gallenberg Decl., Ex. 2 (Dkt. No. 346) (Harden Dep.) at 97:2-11 (agreeing with internal

11  investigation's conclusion that Situ incorrectly claimed that there was missing inventory at LDK

12  because Situ failed to account for silicon stored in all of LDK's warehouses), 98:18-23.

13          In addition to the Company's internal investigation, the outside directors of LDK's Audit

14  Committee oversaw an independent investigation of Situ's claims.  This further investigation,

15  which spanned over two months, similarly concluded that Situ's claims of missing and unusable

16  inventory were wrong, and that there were no material errors in the Company's reported

17  inventory quantities.  Lai Decl. (Dkt. No. 344) at ¶ 24; Gallenberg Decl., Ex. 9 (Dkt. No. 406)

18  (12/17/2007 Form 6-K) at 2.  The Audit Committee investigation, which was conducted by

19  independent counsel as well as independent polysilicon and forensic accounting experts,

20  concluded that LDK was using all of its different types of silicon feedstock and that there was no

21  missing inventory as alleged by Situ.  Gallenberg Decl., Ex. 9  (Dkt. No. 406) (12/17/2007 Form

22

23  [8] Plaintiff alleges that Defendants falsely stated in an October 4, 2007 press release that Situ's
    claims had "no merit."  Compl. at ¶¶ 123-24.  The October 4 press release was based on the work

24  performed by the internal investigation team as of the date of the release.  This included a stock
    taking and other financial data verification procedures carried out on September 26, 2007 by

25  investigation team members Liu Yizheng, Mao Liqun, and Zhang Pingsheng, which indicated
    that Situ's accusations were wrong.  Lai Decl. (Dkt. No. 344), Ex. I at 4, Ex. J at 4; Zhang Decl.

26  (Dkt. No. 349) at ¶¶ 43-47; Rossetto Decl. (Dkt. No. 339) at ¶ 13.  Defendants' reliance on the
    work of the internal investigation team defeats any claim that they made any alleged false

27  statements on October 4, 2007 with scienter.  Indeed, the undisputed facts show that Defendants
    acted in good faith.  Furthermore, as Plaintiff now concedes, Situ's claims of missing and

28  unusable inventory were wrong.  This further demonstrates that Plaintiff cannot establish a
    primary violation of § 10(b) showing that the Defendants acted with scienter.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

22

DEFENDANTS' OPPOSITION TO LEAD PLAINTIFF'S MOTION
FOR PARTIAL SUMMARY JUDGMENT
MASTER FILE NO. C-07-05182-WHA (BZ)

1    6-K) at 2.  Plaintiff's proffered accounting, polysilicon, and industry experts all reviewed and

2    agreed with the Audit Committee investigation experts' results and could not dispute the findings

3    of the independent investigation.  Gallenberg Decl., Ex. 5 (Dkt. No. 346) (Todaro Dep.) at 42:14-

4    43:5, 188:24-191:20 (stating that he did not recall disagreeing with any conclusions in the report

5    generated by the independent investigation's polysilicon expert, which concluded that all of

6    LDK's silicon inventory was usable and being used); *Id.*, Ex. 2 (Dkt. No. 346) (Harden Dep.) at

7    97:2-11; *Id.*, Ex. 7 (Dkt. No. 346) (Lorenzini Dep.) at 135:4-137:4 (agreeing with the conclusion

8    that "the use of 76 percent to 81 percent recycled scrap silicon feedstock at LDK is a viable

9    approach").

10          Finally, KPMG was well aware of Situ's accusation of missing and unusable inventory,

11   as they were copied on Situ's September 25, 2007 email containing his allegations.  This

12   imposed heightened duties on KPMG to investigate the accuracy of LDK's prior and current

13   financial statements.  Pike Decl., Ex. A (Dkt. No. 355) at 36-37; Ex. 7 (PCAOB US Accounting

14   Standards AU 561.04).  Under this heightened investigative requirement, and fully aware of

15   Situ's claims, KPMG reviewed the accuracy of LDK's 3Q07 financials, issued an unqualified

16   opinion for fiscal year 2007, and reaffirmed its previous unqualified opinions for fiscal years

17   2005 and 2006.  Lai Decl. (Dkt. No. 344) at ¶ 36; Kaplan Decl., Ex. D (Dkt. No. 337) (Form 20-

18   F) at F-2.

19          As Plaintiff's experts concede and the undisputed facts reveal, there was never any

20   missing or unusable inventory at LDK.  Accordingly, Plaintiff cannot establish a primary

21   violation under § 10(b) showing that Defendants made the alleged false statements with scienter.

22   Rather, the undisputed facts establish that Defendants consistently acted in good faith.[9]

---

[9] Further proof of Defendants' lack of scienter is the undisputed fact that none of the Defendants
were put on notice of the inventory discrepancy identified in Situ's September 25, 2007 email
prior to making any of the operative alleged misstatements.  There is no evidence that
Defendants were made aware of Situ's claims of hundreds of tons of missing or unusable
inventory prior to the filing of LDK's June 1, 2007 IPO prospectus or the issuance of LDK's
2Q07 financials in an earnings release and on a conference call on August 1, 2007.  Prior to
August 1, 2007, Situ had expressed some general concerns about LDK's developing internal
control systems, noting that LDK's record keeping systems required manual updating rather than
reconciling automatically.  Gallenberg Decl., Ex. 27 (Dkt. No. 346) at 1; Lai Decl. (Dkt. No.
344) at ¶27.  These concerns were not only disclosed (Kaplan Decl., Ex. E (Dkt. No. 337) (Form
F-1) at 18-19, 54), but did not provide any specific indication of missing inventory at LDK or

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

23

DEFENDANTS' OPPOSITION TO LEAD PLAINTIFF'S MOTION
FOR PARTIAL SUMMARY JUDGMENT
MASTER FILE NO. C-07-05182-WHA (BZ)

2.    **LDK's Financial Statements And Accounting Policies Were Reviewed and Validated By The Company's Independent Auditor**

All of LDK's accounting policies, including its application of the weighted average cost method, were discussed with and validated by LDK's independent outside auditor, KPMG. Lai Decl. (Dkt. No. 344) at ¶¶ 7, 12.  KPMG conducted quarterly reviews of LDK's financial statements throughout 2007, and also performed year-end audits for the Company for fiscal years 2006-2008.  *Id.* at ¶ 35.  This included participating in regular audits of LDK's inventory. Gallenberg Decl., Ex. 26 (Dkt. No. 346) (Chen Dep.) at 47:11-14.  During this process, KPMG never required any restatement of LDK's financials and issued a clean audit opinion for each of LDK's year-end financial statements, certifying that LDK's financials were presented fairly and in accordance with GAAP.  Lai Decl. (Dkt. No. 344) at ¶ 35; Kaplan Decl., Ex. D (Dkt. No. 337) (Form 20-F) at F-2.  Defendants' consultation with and reliance on the advice of KPMG establishes that they acted in good faith, and did not possess the requisite scienter for liability, when forming LDK's accounting policies and generating LDK's financial statements.  *Matthews v. Centex Telemanagement, Inc.*, No. C-92-1837-CAL, 1994 WL 269734, at *7 (N.D. Cal. June 8, 1994) (granting summary judgment and finding lack of scienter where defendants conferred with and relied on advice of outside auditors regarding their accounting practices); *Newton v. Uniwest Fin. Corp.*, 802 F. Supp. 361, 368 (D. Nev. 1990).

Plaintiff's mere hindsight disagreement with Defendants' accounting practices – practices that were both approved by LDK's independent auditors and were commonly used by major participants in the solar industry (Lai Decl. (Dkt. No. 344) at ¶¶ 11-12) – cannot establish scienter.  Even if Plaintiff could somehow prove that Defendant's accounting methodologies violated US GAAP, this would be insufficient, as a matter of law, to establish scienter.  *See, e.g., In re Worlds of Wonder Sec. Litig.*, 35 F.3d 1407, 1426 (9th Cir. 1994) ("[Scienter] requires

any specific financial statement error.  Gallenberg Decl., Ex. 27 (Dkt. No. 346); Lai Decl. (Dkt. No. 344) at ¶¶ 27, 30.  Situ did not identify any specific inventory discrepancies at LDK until September 25, 2007, after he was terminated for cause and after his demands for $2 million dollars of "in the money" stock options and a relocation to Hong Kong were denied.  Lai Decl. (Dkt. No. 344) at ¶ 30, Ex. E, Ex. F.  Furthermore, the record is devoid of any evidence that Situ ever raised any concerns about, let alone discussed, LDK's application of the weighted average cost method or the lower of cost or market principle with any of the Defendants.  *Id.* ¶ 30, Ex. H.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

24

DEFENDANTS' OPPOSITION TO LEAD PLAINTIFF'S MOTION
FOR PARTIAL SUMMARY JUDGMENT
MASTER FILE NO. C-07-05182-WHA (BZ)

1   more than a misapplication of accounting principles."); *Stavroff v. Meyo*, No. 95-4118, 1997 U.S

2   .App. LEXIS 32774, at *18 (6th Cir. Nov. 12 1997) ("GAAP violations, standing alone, are not

3   tantamount to securities fraud."); *In re Silicon Graphics*, 183 F.3d at 977; *In re Software*

4   *Toolworks Inc. Sec. Litig.*, 50 F.3d 615, 627 (9th Cir. 1994). As the undisputed evidence reveals,

5   to the extent that they were involved in LDK's accounting operations, none of the Defendants

6   acted with any fraudulent intent when adopting or applying the Company's accounting policies.

7   Without such an intent to defraud, Plaintiff cannot establish scienter or a primary violation of §

8   10(b). *In re Silicon Graphics*, 183 F.3d at 977; *In re Software Toolworks Inc. Sec. Litig.*, 50 F.3d

9   615, 627 (9th Cir. 1994). As such, the Court should deny Plaintiff's Motion and grant summary

10  judgment in favor of Defendants on Plaintiff's § 20(a) claims.[10]

11  **V.     CONCLUSION**

12          For all of the foregoing reasons, the Court should deny Plaintiff's Motion regarding the

13  Individual Defendants' statuses as control persons and the efficiency of the market for options

14  for LDK stock. Furthermore, the Court should grant summary judgment in favor of Defendants

15  and dismiss Plaintiff's § 20(a) claims.

16

17  Dated:  January 21, 2010                          Respectfully submitted,

18                                                    LATHAM & WATKINS LLP

19

20                                                    By    /s/ James J. Farrell
                                                          James J. Farrell
                                                          Counsel for Defendants

21

22  ───────────────────────────

23  [10] The undisputed facts reveal that Defendants never engaged in any suspicious stock sales. At
    the end of December 2007, after the announcement of the results of the independent Audit
    Committee investigation, LDK's stock was trading at nearly an all-time high. Lehn Decl., Ex. A
24  (Dkt. No. 354) at Ex. 3. All of the Individual Defendants except for Peng were free to sell their
    shares at that time, as the lock-up period agreed upon in LDK's registration statement had
25  expired for these individuals. Kaplan Decl., Ex. E (Dkt. No. 337) (Form F-1) at 114-15.
    Nevertheless, none of the Individual Defendants sold any LDK shares at that time. Lai Decl.
26  (Dkt. No. 344) at ¶ 37; Zhu Decl. (Dkt. No. 343) at ¶ 5; Yao Decl. (Dkt. No. 342) at ¶ 6; Tong
    Decl. (Dkt. No. 351) at ¶ 5; Gallenberg Decl., Ex. 29 (Dkt. No. 417) (Wang Dep.) at 68:11-25.
27  In fact, there is no evidence of any suspicious stock sales by any of the Individual Defendants.
    The lack of any suspicious stock sales made by any of the Individual Defendants indicates that
28  they acted in good faith and did not make any of the alleged false statements with an intent to
    deceive or defraud. *In re Worlds*, 35 F.3d at 1424-25.

LATHAM & WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

25

DEFENDANTS' OPPOSITION TO LEAD PLAINTIFF'S MOTION
FOR PARTIAL SUMMARY JUDGMENT
MASTER FILE NO. C-07-05182-WHA (BZ)