**BERMAN DEVALERIO**
Joseph J. Tabacco, Jr. (SBN 75484)
Christopher T. Heffelfinger (SBN 118058)
Anthony D. Phillips (SBN 259688)
425 California Street
Suite 2100
San Francisco, CA 94104

Liaison Counsel for the Class

**COHEN MILSTEIN SELLERS
 & TOLL PLLC**
Herbert E. Milstein
Joshua S. Devore
Matthew B. Kaplan
hmilstein@cohenmilstein.com
1100 New York Avenue, N.W.
West Tower, Suite 500
Washington, DC 20005-3964
Telephone: (202) 408-4600
Facsimile: (202) 408-4699

Lead Counsel for the Class

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re LDK SOLAR SECURITIES LITIGATION  <br><br>This Document Relates To:<br><br>ALL ACTIONS. | Master File No. C-07-05182-WHA (BZ)<br><br>CLASS ACTION<br><br>**LEAD PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>Judge: Hon. William Alsup<br>Date: February 11, 2010<br>Time: 8:00 a.m.<br>Courtroom: 9, 19th Floor |

# TABLE OF CONTENTS

TABLE OF CONTENTS ..................................................................................................................... i

TABLE OF AUTHORITIES .............................................................................................................. 1

NOTICE OF MOTION AND MOTION ........................................................................................... 2

STATEMENT OF ISSUES TO BE DECIDED ................................................................................ 2

MEMORANDUM OF POINTS AND AUTHORITIES .................................................................. 2

    I.    INTRODUCTION AND BACKGROUND ........................................................................ 2
    II.   ARGUMENT ......................................................................................................................... 3
        A.   Summary Judgment Standard ................................................................................... 3
        B.   There is No Material Factual Dispute As to the Efficiency of the Market for LDK Securities ........................................................................................................... 4
        C.   There is no Material Factual Dispute As To Whether the Individual Defendants Are Control Persons ................................................................................ 6
            1)   The Section 20(a) Standard ......................................................................... 6
            2)   The Role Of The Individual Defendants .................................................. 7
                (i)   Defendant Xiaofeng Peng ............................................................. 7
                (ii)  Defendant Jack Lai ........................................................................ 9
                (iii) Defendant Qiqiang Yao ............................................................... 10
                (iv) Defendant Xingxue "Sam" Tong ............................................... 10
                (v)  Defendant Liangbao "Lambo" Zhu ........................................... 11
                (vi) Defendant Gang Wang .................................................................. 12
                (vii) Defendant Yonggang Shao ........................................................ 12
            3)   The Individual Defendants Were Control Persons With Respect to LDK ................ 12
    III.  CONCLUSION ................................................................................................................... 13

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986) ................................................................................................. 3

*Arthur Children's Trust v. Keim*,
    994 F.2d 1390 (9th Cir. 1993) ................................................................................. 6

*Basic v. Levinson*,
    485 U.S. 224 (1988) ............................................................................................ 2, 3

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986) ................................................................................................. 3

*Fecht v. Price Co.*,
    70 F.3d 1078 (9th Cir. 1995) ................................................................................... 4

*Howard v. Everex Sys.*,
    228 F.3d 1057 (9th Cir. 2000) ................................................................................. 5

*In re LDK Solar Sec. Litig.*,
    255 F.R.D. 519 (2009) ................................................................................. 1, 3, 4, 5

*In re Splash Tech. Holdings Sec. Litig.*,
    2000 U.S. Dist. LEXIS 15370 (N.D. Cal. Sept. 29, 2000) ...................................... 6

*No. 84 Employer-Teamster Joint Council Pension Trust Fund v. Am. West Holding Corp.*,
    320 F.3d 920 (9th Cir. 2003) ............................................................................. 6, 12

*Paracor Fin., Inc. v. G.E. Capital Corp.*,
    96 F.3d 1151 (9th Cir. 1996) ................................................................................... 6

**STATUTES**

15 U.S.C. § 78t .................................................................................................................. 1

**OTHER AUTHORITIES**

Fed. R. Civ. P. 56 .................................................................................................... 2, 3, 12

**NOTICE OF MOTION AND MOTION**

PLEASE TAKE NOTICE that Lead Plaintiff Shahpour Javidzad hereby respectfully moves this Court for partial summary judgment in accordance with Rule 56(a) and (d) of the Federal Rules of Civil Procedure.

**STATEMENT OF ISSUES TO BE DECIDED**

1.  Whether the Court should determine that, as a matter of law, LDK's securities were traded in an efficient market because the undisputed evidence indicates that the market was efficient and there is no genuine dispute as to any material fact with respect to this issue.
2.  Whether the Court should determine, as a matter of law, that individual Defendants Xiaofeng Peng, Jack Lai, Qiqiang Yao, Xingxue "Sam" Tong, Liangbao "Lambo" Zhu, Gang Wang and Yonggang Shao (the "Individual Defendants") controlled LDK within the meaning of Section 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") (15 U.S.C. § 78t) because the undisputed evidence indicates that these Defendants possessed such control and there is no genuine dispute as to any material fact with respect to this issue.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.  INTRODUCTION AND BACKGROUND**

Plaintiff in this securities Class Action alleges that LDK Solar Co. Ltd. ("LDK") and the other Defendants committed securities fraud, in violation of Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder, and that several of the Defendants are also derivatively liable for LDK's fraud because they acted as controlling persons of LDK within the meaning of Section 20(a) of the Exchange Act. This matter is set for trial beginning on March 22, 2010. The Class Period, as certified by the Court, is from June 1, 2007 through October 7, 2007.

The Court has written a number of opinions in this case already discussing Plaintiff's claims, and familiarity with the basics of Plaintiff's claims is presumed. *See, e.g., In re LDK Solar Sec. Litig.,* 255 F.R.D. 519 (2009). In brief, Plaintiff alleges—and the evidence that has been produced in discovery that Plaintiff will put on at trial demonstrates—that Defendants misrepresented LDK's financial condition and results through a deliberate scheme to overstate the

1  value of LDK's inventory while at the same time drastically understating the company's costs of
2  goods sold, making LDK appear to be much more profitable than it truly was.

3  As is typical in claims involving the mental state of a defendant, securities fraud claims
4  are seldom ripe for full resolution on summary judgment. Thus, while Plaintiff is confident the
5  evidence adduced in discovery will amply prove his claims, Plaintiff does not seek complete
6  resolution of this matter on summary judgment despite the overwhelming evidence in Plaintiff's
7  favor. Nonetheless, there are certain elements of Plaintiffs' claims which do not require
8  consideration by the jury, and which can be readily established by the Court as a matter of law.
9  Thus, to narrow the issues for trial, Plaintiff requests that the Court exercise its authority to "issue
10 an order specifying what facts . . . are not genuinely at issue" with respect to two aspects of
11 Plaintiff's claims. Fed R. Civ. P. 56(d)(1).

12 Specifically, the Court should find, first, that as a factual matter LDK's securities were
13 traded on an efficient market. Plaintiff contends that he and all members of the class are entitled
14 to the presumption of reliance articulated by the Supreme Court in *Basic v. Levinson*, 485 U.S.
15 224 (1988), because the market for LDK's securities was efficient. Although additional
16 determinations are necessary to completely establish the presumption of reliance, here Plaintiff
17 offers uncontroverted testimony that LDK's stock was traded on an efficient market. As such,
18 there is no need for a jury to consider the question of whether the market is efficient.

19 The Court should also find that the Individual Defendants were controlling persons of
20 LDK and that they controlled any other Individual Defendant that they supervised. If Plaintiff
21 proves at trial that LDK committed securities fraud these Defendants may be derivatively liable
22 as control persons under Section 20(a). Entry of partial judgment on the fact that the Individual
23 Defendants are controlling persons will further streamline the trial in this matter.

24 **II.    ARGUMENT**
25      **A.    Summary Judgment Standard**
26 Summary judgment must be granted under Fed. R. Civ. P. 56 when "the pleadings, the
27 discovery and disclosure materials on file, and any affidavits show that there is no genuine issue
28 as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R.

Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323-26 (1986).  A genuine issue of fact is one that could reasonably be resolved, based on the factual record, in favor of either party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute is "material" if it could affect the outcome of the suit under the governing law.  *Id.* at 248-49.

Rule 56(d)(1) provides that when

> summary judgment is not rendered on the whole action, the court should, to the extent practicable, determine what material facts are not genuinely at issue.  The court should so determine by examining the pleadings and evidence before it and by interrogating the attorneys.  It should then issue an order specifying what facts … are not genuinely at issue.  The facts so specified must be treated as established in the action.

Fed. R. Civ. P. 56(d)(1).  Plaintiff submits that the two issues raised herein are not genuinely at issue, and the Court should so find.

**B.   There is No Material Factual Dispute As to the Efficiency of the Market for LDK Securities**

As this Court noted in certifying the class in this action in *In re LDK Solar Securities Litigation*, 255 F.R.D. 519, 526 (N.D. Cal. 2009) (the "*Class Cert. Opinion*"), "[a] plaintiff asserting securities fraud under Section 10(b) must prove (1) a material misrepresentation or omission, (2) scienter, (3) in connection with the purchase or sale of a security, (4) reliance, (5) economic loss, and (6) loss causation."  *Id.*, (citing *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 341-42 (2005)).  Plaintiff asks the Court to hold that there are no disputed material facts related to one element of Plaintiff's reliance showing, and requests the Court enter such an order pursuant to Fed. R. Civ. P. 56(d)(1).

As the Court noted in the *Class Cert. Opinion*, Plaintiff "relies on the 'fraud-on-the-market' theory to establish reliance."  255 F.R.D. at 526 (quoting *Basic, Inc. v. Levinson*, 485 U.S. 224, 242-43 (1988)).  In *Basic,* "the Supreme Court ruled that reliance may be presumed in securities cases under the fraud-on-the-market doctrine.  *Basic* 'created a rebuttable presumption of investor reliance based on the theory that investors presumably rely on the market price, which typically reflects the misrepresentation or omission.'"  *Class Cert. Opinion,* 225 F.R.D. at 256,

(quoting *No. 84 Employer-Teamster Joint Council Pension Trust Fund v. Am. West Holding Corp.*, 320 F.3d 920, 934 n.12 (9th Cir. 2003)).[1]

"The fraud-on-the-market theory is based on the efficient market hypothesis . . . and therefore is contingent upon the alleged misrepresentation or omission being disseminated into an efficient market:

> The fraud-on-the-market presumption is "based on the hypothesis that, in an open and developed securities market, the price of a company's stock is determined by the available material information regarding the company and its business. . . . Misleading statements will therefore defraud purchasers of stock even if the purchasers do not directly rely on the misstatements.". . . Thus, the presumption of reliance is available only when a plaintiff alleges that a defendant made material representations or omissions concerning a security that is actively traded in an "efficient market," thereby establishing a "fraud on the market."

*Id.*, quoting *Binder v. Gillespie*, 184 F.3d 1059, 1064 (9th Cir. 1999) (citations omitted).

Plaintiff asks the Court to determine as a factual matter that the market for LDK's securities was efficient during the entire Class Period. There is substantial evidence that the market for LDK's securities (*i.e.,* its American Depositary Shares ("ADSs") and put and call options on those ADSs) was efficient during this period.

Plaintiff's expert, Jane Nettesheim, has done an extensive study which establishes that the market for LDK's securities meet the various tests for market efficiency. *See* Expert Report of Jane D. Nettesheim (Oct. 29, 2009) ("Nettesheim Report"), attached as Ex. A to accompanying Decl. of Matthew B. Kaplan ("Kaplan Decl.")[2] Ms. Nettesheim concluded that the market for

---

[1] As the Court set out in the *Class Cert. Opinion*, "the requirements for the presumption are as follows: (1) that the defendant made public misrepresentations; (2) that the misrepresentations were material; (3) that the shares were traded on an efficient market; and (4) that the plaintiff traded the shares between the time the misrepresentations were made and the time the truth was revealed." 255 F.R.D. at 526 (citing *Basic*, 485 U.S. at 248 n.27). The motion seeks to establish only the third element of the presumption, as the questions of whether Defendants made misrepresentations and whether those misrepresentations were material can be left to the jury. *See, e.g., Fecht v. Price Co.*, 70 F.3d 1078, 1080-81 (9th Cir. 1995). The fourth element is defined by the Class definition, as only purchasers during the Class Period are entitled to the presumption, and there can be no dispute that Plaintiff traded securities during the Class Period.

[2] Ms. Nettesheim discusses at length a number of factors indicative of market efficiency, including the following: there was considerable trading volume in LDK shares during the Class Period; at least nine securities analysts followed and reported on LDK; trading in LDK stock was facilitated by a specialist on the New York Stock Exchange, a sophisticated and developed principal exchange; there were demonstrable relationships between company-specific news

these securities "was efficient during . . . the 'Class Period.'" (Nettesheim Report at 2.)

Defendants do not offer any contradictory evidence on market efficiency. In fact, for purposes of his analysis, Defendants' damages expert assumes, that the market *is* efficient. Expert Report of Kenneth Lehn at 23 n.53 (Nov. 12, 2009), Kaplan Decl. Ex. B ("Ms. Nettesheim opines that the market for LDK stock was efficient. . . . For purposes of my analysis, I accept this assumption."). In certifying the Class in this action in the *Class Cert. Opinion*, the Court noted that neither Defendants nor the financial economist that they had employed as an expert witness had challenged Ms. Nettesheim's views on market efficiency—"Defendants neither argue that the market is not efficient nor offer any evidence of their own on the subject." 255 F.R.D. at 527. Defendants have now found a new expert, but the relevant evidence has not changed— Defendants still offer no evidence that contradicts Plaintiff's evidence showing that the market for LDK's securities was efficient during the Class Period. Consequently, the Court should find that the market for LDK's securities was efficient during the Class Period.

### C. There Is No Material Factual Dispute As To Whether the Individual Defendants Were Control Persons

#### 1) The Section 20(a) Standard

To state a claim under Section 20(a) of the Exchange Act, a plaintiff must allege: (1) a primary violation of federal securities law; and (2) that the defendant possessed, directly or indirectly, power or control over the primary violator.[3] *Howard v. Everex Sys.,* 228 F.3d 1057,

---

releases and prompt price reactions by LDK securities; LDK's market capitalization during the Class Period was larger than the median of the market capitalizations for all companies included in the New York Stock Exchange Composite Index and the NASDAQ Composite Index; the bid/ask spread for LDK shares were comparable to the spread for stocks of comparable companies in LDK's industry; LDK's shares were listed on a major exchange; there was significant ownership and trading of the LDK's shares by institutions; there was extensive news coverage of LDK available to investors; and put/call parity held between the LDK shares and options on these shares. Nettesheim Report at 8-9.

[3] Specifically, Section 20(a) of the Exchange Act provides that:
> Every person who, directly or indirectly, controls any person liable under any provision of this title or of any rule or regulation thereunder shall also be liable jointly and severally with and to the same extent as such controlled person to any person to whom such controlled person is liable, unless the controlling person acted in good faith and did not directly or indirectly induce the act or acts constituting the violation or cause of action.

1065 (9th Cir. 2000). This motion seeks to establish the second element of Plaintiff's Section 20(a) claim with respect to the Individual Defendants.

Control is "the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of a person, whether through the ownership of voting securities, by contract, or otherwise." *Am. W.*, 320 F.3d at 945 (quoting 17 C.F.R. § 230.405) (emphasis omitted). In the Ninth Circuit, "'to make out a prima facie case, it is not necessary to show actual participation or the exercise of actual power[.]'" *Am. W.*, 320 F.3d at 945 (quoting *Howard*, 228 F.3d at 1065). The Ninth Circuit has explained that the inquiry revolves around the "'management and policies' of the corporation, not around discrete transactions." *Paracor Fin., Inc. v. G.E. Capital Corp.*, 96 F.3d 1151, 1162 (9th Cir. 1996). That is, the allegedly controlling person need not have been actively involved in the underlying fraudulent scheme. *See*, *e.g.*, *In re Splash Tech. Holdings Sec. Litig.*, 2000 U.S. Dist. LEXIS 15370, at *51 (N.D. Cal. Sept. 29, 2000). Rather, the question is "whether the defendant, acting alone or as a member of an identifiable group, had the power or influence to direct significant aspects of the management of the corporation." *Id*. To state a Section 20(a) claim a plaintiff need not plead that a defendant committed fraud or had scienter—"[i]f the plaintiff had this obligation, the controlling person provision 'would hardly make anyone liable who would not be so otherwise'" and would be superfluous. *Arthur Children's Trust v. Keim*, 994 F.2d 1390, 1398 (9th Cir. 1993).

### 2) The Role Of The Individual Defendants

As discussed in detail below, undisputed evidence—in the form of the Individual Defendants' own deposition testimony and LDK's SEC filings—indicates that Defendants Peng, Lai, Yao, Tong, Zhu, Shao and Wang controlled LDK within meaning Section 20(a) of the Exchange Act.

#### (i) Defendant Xiaofeng Peng

Defendant Peng was during the Class Period (and still is), the founder, majority shareholder, Chief Executive Officer ("CEO") and Chairman of the Board of LDK. LDK, (Form F-1), at II5-II6 (May 11, 2007), Kaplan Decl. E ("F-1"). As LDK's Chairman and CEO Defendant Peng exercised influence and control over LDK, including by supervising LDK's other

senior officers:

> Q. As the chairman of the board you make decisions about the policies of LDK Solar?
> . . . .
> A. Some policy would require the board to make decisions of, but some policies would just need the management to make the decisions of them. It just depends.
> . . . .
> Q. As the CEO do you give directions to management?
> . . . .
> A. As the CEO I would execute resolutions and decisions of the board and also on behalf of the board, carry out some responsibilities.
> . . . .
> Q. In connection with that, do you give directions to LDK's managers?
> . . . .
> A. [In] [t]he case [of] management members who reported to me, sometimes I would give them directions.
> Q. . . . Who reported directly to you in 2007?
> A. The members of the management, for example, the CFO, COO, senior vice-president, and they would be reporting to me.
> Q. Mr. Lai and Mr. Tong and Mr. Zhu, is that right?
> A. Yes.

(Xiaofeng Peng Dep. 49:5-25, 50:13-51-20, Oct. 22, 2009, excerpts at Kaplan Decl. Ex. C.) *See also* LDK, (Form 20-F) at 16 (Apr. 7, 2008), Kaplan Decl. Ex. D (describing Peng as LDK's "founder, chairman, chief executive officer and ultimate controlling shareholder"); F-1 at 2 (similar language).[4]

Peng was personally responsible for supervising and approving purchases of all of LDK's silicon raw material, the allegedly poor quality of much of which forms a central issue in this case:

> Q. Were all purchases of silicon raw material approved by you in 2006?
> . . . .
> A. . . . all the purchases would have to have my approval.
> Q. And that was also the case in 2007?
> A. Yes.
> Q. And your approval was required to pay any invoices for raw materials?
> A. For the silicon material and also the large size of procurement,

---

[4] Defendants previously filed on the record LDK's F-1 filing for its June 1, 2007 initial public offering and for its F-20 annual report for the period ending December 31, 2007. (*See* Defs.' Req. for Judicial Notice In Supp. of Mot. to Dismiss Lead Pl.'s Consolidated Class Action Compl. at 1, 3, Apr. 7, 2008, Dkt. No. 69.)

yes, it would need to have my approval.

(Peng Dep. 46:19-47:14.)

Peng signed LDK's prospectus for its June 1, 2009 IPO. F-1 at II5-II6.

(ii) <u>Defendant Jack Lai</u>

Defendant Lai was LDK's Chief Financial Officer ("CFO") during the entire Class Period and, according to his own testimony, he was responsible for implementing and supervising LDK's financial reporting:

> Q. So are you ultimately responsible for [LDK's] financial reporting?
> A. Yes.
> . . . .
> Q. Who developed LDK's accounting policies?
> A. . . . we will work together as a team to put together the reporting structure and the system to meet the requirement for reporting.
> Q. Were you personally involved in that process?
> A. Yes.

(Lai Dep. 37:19-38:9, Sept. 24, 2009, Excerpt at Kaplan Decl. F.)

> Q. Do you know who developed LDK's policy for accounting for its raw material costs?
> A. Well, I don't have that detail level of knowledge, no.
> Q. Would you have been involved in that process?
> A. Of course.
> Q. What about LDK's policy for determining its costs of goods sold, would you have been involved in developing that policy?
> A. Well, I get involved with discussions and review and finalize the company's policy.
> Q. You ultimately approve the policy?
> A. Of course.

(Lai Dep. 40-15-41:3.) *See also* F-1 at II5-II6 (indicating that Lai was LDK's CFO).

Lai's control over LDK was confirmed by Defendant Peng's testimony:

> Q. In 2007, what were Mr. Lai's responsibilities at LDK?
> A. He's CFO.
> . . . .
> Q. . . . What was he responsible for . . .?
> A. All the financial management and also the staff management. All the financial management.
> . . . .
> Q. Who is responsible for overseeing LDK's accounting during 2007?
> . . . .
> A. Jack Lai.

(Peng Dep. 52:5-12, 53:24-54:5.)

Lead Plaintiff's Motion For Partial Summary Judgment
MASTER FILE NO. C-07-5182-WHA(BZ)     9

Lai signed LDK's prospectus for its June 1, 2009 IPO. F-1 at II5-II6.

### (iii) Defendant Qiqiang Yao

Defendant Yao was LDK's Assistant President and Principal Accounting Officer during the entire Class Period. F-1 at II5-II6. According to his own testimony he had a central role in LDK's financial reporting:

> Q. . . . In 2007 did you have a management role at LDK?
> A. Yes.
> Q. What were you responsible for managing?
> A. [M]y main responsibility was related to funding . . . . I also have—had the responsibility of manage domestic accounting personnels [sic].
> . . . .
> Q. . . . you were involved in the process of developing LDK's accounting policies; is that right?
> . . . .
> A. To form the policies, yes.
> . . . .
> Q. Did you have any role in developing LDK's internal control structure?
> . . . .
> A. Yes, I also—I also participate this kind of . . . task.
> . . . .
> Q. . . . did you participate in any way in the preparations for the initial public offering?
> . . . .
> A. Of course.
> Q. . . . In what way did you participate in the preparations for the initial public offering?
> . . . .
> A. I was responsible for the company's cash management and I was also responsible for the domestic financial management. I believe that was part of the preparation of the IPO.

(Yao Dep. 39:12-24, 55:7-13, 57:22-58:7, 131:12-133:15, Aug. 14, 2009, Excerpt at Kaplan Decl. Ex. G.)

Yao signed LDK's prospectus for its June 1, 2009 IPO. F-1, II5-II6.

### (iv) Defendant Xingxue "Sam" Tong

Defendant Tong was a director of LDK and its President and Chief Operating Officer ("COO") during the entire Class Period. F-1 at II5-II6. He testified about his control over LDK:

> Q. In what capacity were you employed at LDK in early January 2007?
> . . . .
> A. I was the president and chief operating officer.
> . . . .

> Q. Did you maintain that title throughout all of 2007 . . . ?
> A. Yes.
> Q. Can you describe for me what your duties included as chief operating officer for the company during 2007?
> A. To put it simply as to assist the chairman of the board in the day-to-day—in managing the day-to-day operations of the company.

(Tong Dep. 23:17-24:11, Sept. 16, 2009, Excerpt at Kaplan Decl. Ex. H.)

Defendant Peng also testified as to Defendant Tong's responsibilities:

> Q. What were Sam Tong's responsibilities in 2007?
> . . . .
> A. He was in charge of the overall operation.

(Peng Dep. 52:23-53:10.)

Tong signed LDK's prospectus for its June 1, 2009 IPO. F-1 at II5-II6.

(v) <u>Defendant Liangbao "Lambo" Zhu</u>

Defendant Zhu was a Director and Senior Vice President of LDK during the entire Class Period. F-1 at II5-II6. Zhu testified as to his control over LDK's operations:

> Q. Were you responsible—did the personnel department report directly or indirectly to you?
> A. It reported to me.
> Q. That was the case throughout 2007?
> A. Yes.
> . . . .
> Q. Who else did you supervise directly at LDK in 2007?
> A. Administration.
> . . . .
> Q. Did anyone else report to you in 2007?
> . . . .
> A. Engineering. . . .
> . . . .
> Q. Was there anybody else who reported to you?
> A. The people who purchased the equipment and the spare parts for the equipment.
> . . . .
> Q. . . . it would be fair to say that you are one of the top executives at LDK, is that right?
> . . . .
> A. Yes, I am just one of the members of the high level management.
> Q. And that was the case in 2007?
> A. Yes, it was the case in 2007.

(Zhu Dep. 52:11-27:3, 44:9-16, Sept. 25, 2009, Excerpt at Kaplan Decl. Ex I.)

CEO Peng also testified as to Defendant Zhu's responsibilities during the Class Period:

> Q. What were Lambo Zhu's responsibilities?
> . . . .
> A. He was our executive VP and he was in charge of human resource administration and other aspects of operations.

(Peng Dep. 52:13-22.)

Zhu signed LDK's prospectus for its June 1, 2009 IPO. F-1 at II5-II6.

### (vi) Defendant Gang Wang

Defendant Wang was a Director of LDK throughout the entire Class Period. F-1 at II5-II6. He testified as to his control of LDK as a member of its Board of Directors:

> Q. As a member of the board, did you have a vote at board meetings?
> A. Yes.
> Q. At board meetings did you vote on what the policies of LDK should be?
> . . . .
> A. Yes.
> Q. And at board meetings did you discuss what direction the management of the company should lead LDK in?
> A. Yes.

(Wang Dep. 40:13-25, Sept. 21, 2009, Excerpt at Kaplan Decl. K.)

### (vii) Defendant Yonggang Shao

Defendant Shao was a Director of LDK throughout the entire Class Period and he signed LDK's prospectus for its June 1, 2009 IPO. F-1 at II5-II6. As Defendant Wang discussed in his testimony, the members of LDK's Board of Directors controlled LDK.

Wang signed LDK's prospectus for its June 1, 2009 IPO. F-1 at II5-II6.

### 3) The Individual Defendants Were Control Persons With Respect to LDK

Given the deposition testimony and other evidence set forth above, there can be no dispute that Defendants Peng, Lai, Yao, Tong Zhu, Shao and Wang had "the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of" LDK. Consequently, the Court should hold that these Defendants controlled LDK. Moreover, Defendant Peng, as LDK's CEO, had the power over and controlled each of the other Individual Defendants, and is a controlling person of each of the other Individual Defendants.[5] And

---

[5] With the exception of the outside director, Gang Wang.

Defendant Lai, the CFO, controlled LDK's finance personnel, including the Assistant President of Finance Yao, and should be found to be a controlling person of Yao. As such, the Court should enter a finding pursuant to Rule 56(d)(1) that the Individual Defendants named above are controlling persons as contemplated by Section 20(a).

Under Ninth Circuit precedent, Section 20(a) contains a burden-shifting framework which normally provides a limited "good faith" affirmative defense to defendants. *Am. W.*, 320 F.3d at 945. Once a plaintiff shows control and a primary violation, a defendant is liable unless "he can show no scienter and an effective lack of participation." *Id.* If the Court rules, as it should, that the Individual Defendants were controlling persons the burden would then be on Defendants to set out evidence of good faith during trial.[6]

## III. CONCLUSION

Plaintiff respectfully requests the Court grant Plaintiff's requested relief, and enter an Order holding:

1. That the market for LDK's securities, including its ADS, call options and put options, was efficient at all relevant times.

2. That each of the Individual Defendants are controlling persons of LDK, that Defendant Peng is a controlling person of every other Individual Defendant (except for Defendant Wang, a non-executive Director of LDK), and that Defendant Lai is a controlling person of Defendant Yao.

---

[6] In this case Defendants may be precluded from coming forward with evidence that they supposedly acted in good faith. During discovery, when asked via interrogatory to set forth any facts that would support any affirmative defense—including the good faith defense to Plaintiff's Section 20(a) claim—Defendants refused to do so, instead merely repeating verbatim, the affirmative defenses they had set forth in their Answer, without proffering a single fact supporting a good faith defense facts. (*See* Def. LDK's Resp. And Objections To Lead Pl. Shahpour Javidzad's First Set Of Interrogs. at 10-14, Kaplan Decl. Ex. J.) Having refused to provide any factual basis for their good faith affirmative defense during discovery, despite repeated requests that they do so, it would not be appropriate to allow Defendants to do so now. In any event, however, Plaintiff expects to affirmatively prove at trial that each Defendant acted with scienter. Plaintiff specifically reserves all other arguments which may be attendant to Defendants' effort to explicate belatedly any good faith defense.

| | | |
|---|---|---|
| 1 | DATED: January 7, 2010 | COHEN MILSTEIN SELLERS & TOLL PLLC |
| 2 | |     /s/ Herbert E. Milstein_____ |
| | | Herbert E. Milstein |
| 3 | | Joshua S. Devore |
| | | Matthew B. Kaplan |
| 4 | | Cohen Milstein Sellers & Toll PLLC |
| | | hmilstein@cohenmilstein.com |
| 5 | | 1100 New York Avenue, N.W. |
| | | West Tower, Suite 500 |
| 6 | | Washington, DC 20005-3964 |
| | | Telephone: (202) 408-4600 |
| 7 | | Facsimile: (202) 408-4699 |
| 8 | | Lead Counsel for the Class |
| 9 | | |
| 10 | | Joseph J. Tabacco, Jr. |
| | | Christopher T. Heffelfinger |
| | | Anthony D. Phillips |
| 11 | | Berman DeValerio |
| | | 425 California Street |
| 12 | | Suite 2100 |
| | | San Francisco, CA 94104 |
| 13 | | |
| 14 | | Liaison Counsel for the Class |

Lead Plaintiff's Motion For Partial Summary Judgment
MASTER FILE NO. C-07-5182-WHA(BZ)     14

# CERTIFICATE OF SERVICE

I hereby certify that on this date, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses of the parties of record.

          /s/ Matthew B. Kaplan
Matthew B. Kaplan

January 7, 2010

Lead Plaintiff's Motion For Partial Summary Judgment
MASTER FILE NO. C-07-5182-WHA(BZ)

1