**BERMAN DEVALERIO**
Joseph J. Tabacco, Jr. (SBN 75484)
Christopher T. Heffelfinger (SBN 118058)
Anthony D. Phillips (SBN 259688)
One California Street, Suite 900
San Francisco, CA 94111
Telephone: (415) 433-3200
Facsimile: (415) 433-6382
Email: jtabacco@bermandevalerio.com
        cheffelfinger@bermandevalerio.com
        aphillips@bermandevalerio.com

Liaison Counsel for the Class

**COHEN MILSTEIN SELLERS**
 **& TOLL PLLC**
Herbert E. Milstein
Joshua S. Devore
Matthew B. Kaplan
1100 New York Avenue, N.W.
West Tower, Suite 500
Washington, DC 20005-3964
Telephone: (202) 408-4600
Facsimile: (202) 408-4699
Email: hmilstein@cohenmilstein.com
        jdevore@cohenmilstein.com
        mkaplan@cohenmilstein.com

Lead Counsel for the Class

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re LDK SOLAR SECURITIES LITIGATION | MASTER FILE NO.  C-07-05182-WHA (BZ) |
| | CLASS ACTION |
| This Document Relates To: | LEAD PLAINTIFF'S NOTICE OF MOTION AND MOTION IN SUPPORT OF FINAL APPROVAL OF PROPOSED SETTLEMENT AND PLAN OF ALLOCATION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF |
| ALL ACTIONS. | |
| | Judge:       Hon. William Alsup |
| | Date:        June 17, 2010 |
| | Time:        8:00 a.m. |
| | Courtroom:  9, 19th Floor |

1

## **TABLE OF CONTENTS**

2  NOTICE OF MOTION AND MOTION ......................................................................... 1

3  STATEMENT OF ISSUES TO BE DECIDED ............................................................. 1

4  MEMORANDUM OF POINTS AND AUTHORITIES .................................................. 1

5  I.  INTRODUCTION ...................................................................................... 1

6  II.  BACKGROUND ........................................................................................ 2

7  A.  Description Of The Action............................................................. 2

8

9  B.  Proposed Settlement And Notice To The Class............................. 4

III.  ARGUMENT ............................................................................................. 6
10

11  A.  A Proposed Class Action Settlement Should Be Approved If It Is Fair, Reasonable And Adequate ................................................... 6

12  B.  The Proposed Settlement Should Be Approved.............................. 8

13  1.  There Is Uncertainty About Lead Plaintiff's Ability To Prove His Case ................................................................ 9
14

15  2.  There Is Uncertainty About Lead Plaintiff's Ability To Prove Substantial Damages................................................ 10

16  3.  There Is Uncertainty About Lead Plaintiff's Ability To Collect On Any Judgment........................................... 11
17

18  4.  Fully Litigating This Action Would Be Time Consuming And Expensive .......................................... 12

19  5.  Experienced Counsel, Having Completed Discovery, Recommend Approval Of The Settlement............................. 13
20

21  6.  The Settlement Provides A Substantial Benefit To The Class ............................................................................... 14

22  C.  The Proposed Plan Of Allocation Is Fair, Reasonable, And Adequate And Should Be Approved................................................. 15
23

24  IV.  CONCLUSION............................................................................................ 15

25

26

27

28

## TABLE OF AUTHORITIES

Page(s)

CASES

*Beecher v. Able*,
 575 F.2d 1010 (2d Cir. 1978)................................................................................15

*Boyd v. Bechtel Corp.*,
 485 F. Supp. 610 (N.D. Cal. 1979) .........................................................................8

*Church v. Consol. Freightways, Inc.*,
 No. C-90-2290, 1993 U.S. Dist. LEXIS 6439 (N.D. Cal. May 3, 1993)..................7

*Class Plaintiffs v. Seattle*,
  955 F.2d 1268 (9th Cir. 1992) ...............................................................................7

*Dura Pharm., Inc. v. Broudo*,
 544 U.S. 336 (2005)................................................................................................9

*Ellis v. Naval Air Rework Facility*,
 87 F.R.D. 15 (N.D. Cal. 1980), *aff'd*, 661 F.2d 939 (9th Cir. 1981) .......................7

*Fisher Bros. v. Cambridge-Lee Indus., Inc.*,
 630 F. Supp. 482 (E.D. Pa. 1985) .........................................................................13

*Girsh v. Jepson*,
 521 F.2d 153 (3d Cir. 1975)....................................................................................7

*In re Apollo Group, Inc. Sec. Litig.*,
 No. CV 04-2147-PHx-JAT, 2008 U.S. Dist. LEXIS 61995 (D. Ariz. Aug. 4, 2008) ..............9

*In re Chicken Antitrust Litig. Am. Poultry*,
 669 F.2d 228 (5th Cir. 1982) ................................................................................15

*In re First Capital Holdings Corp. Fin. Prods. Sec. Litig.*,
 MDL Dkt. No. 901, 1992 U.S. Dist. LEXIS 14337 (C.D. Cal. June 10, 1992).......13

*In re GulfOil/Cities Serv. Tender Offer Litig.*,
 142 F.R.D. 588 (S.D.N.Y. 1992) ...........................................................................15

*In re Ikon Office Solutions*,
 194 F.R.D. 166 (E.D. Pa. 2000).............................................................................15

*In re Indep. Energy Holdings PLC*,
 No. 00 Civ. 6689, 2003 WL 22244676 (S.D.N.Y. Sept. 29, 2003).........................8

[C-07-05182 WHA] NOTICE OF MOT. AND MOT. IN SUPPORT OF FINAL APPROVAL OF
PROPOSED SETTLEMENT AND PLAN OF ALLOCATION & MEMO IN SUPPORT THEREOF

ii

*In re Warner Commc'ns Sec. Litig.*,
618 F. Supp. 735 (S.D.N.Y. 1985), *aff'd*, 798 F.2d 35 (2d Cir. 1986) ...................................8

*In re Wash. Pub. Power Supply Sys. Sec. Litig.*,
720 F. Supp. 1379 (D. Ariz. 1989) .......................................................................7

*Kirkorian v. Borelli*,
695 F. Supp. 446 (N.D. Cal. 1988) .......................................................................13

*Lewis v. Newman*,
59 F.R.D. 525 (S.D.N.Y. 1973) ...........................................................................8

*Milstein v. Huck*,
600 F. Supp. 254 (E.D.N.Y. 1984) .......................................................................12

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*,
221 F.R.D. 523 (C.D. Cal. 2004) .....................................................................8, 13

*Officers for Justice v. Civil Serv. Comm'n*,
688 F.2d 615 (9th Cir. 1982) .....................................................................6, 7, 12, 14

*Reed v. Gen. Motors Corp.*,
703 F.2d 170 (5th Cir. 1983) .............................................................................13

*Reynolds v. Beneficial Nat'I Bank*,
288 F.3d 277 (7th Cir. 2002) .............................................................................12

*Torrisi v. Tucson Elec. Power Co.*,
8 F.3d 1370,1375 (9th Cir. 1993) .........................................................................7

*Util. Reform Project v. Bonneville Power Admin.*,
869 F.2d 437 (9th Cir. 1989) .............................................................................6

*Van Bronkhorst v. Safeco Corp.*,
529 F.2d 943 (9th Cir. 1976) .............................................................................6

*Weinberger v. Kendrick*,
698 F.2d 61 (2d Cir. 1982) ...........................................................................13, 14

*White v. NFL*,
822 F. Supp. 1389 (D. Minn. 1993) .....................................................................15

*Woo v. Home Loan Group, L.P.*,
No. 07-CV-202, 2008 WL 3925854 (S.D. Cal. Aug. 25, 2008) .................................7

1

**OTHER AUTHORITIES**

2

Arthur Anyuan Yuan, *Enforcing and Collecting Money Judgments in China from a U.S.*
   *Judgment Creditor's Perspective*, 36 Geo. Wash. Int'l L. Rev. 757, 758 (2004) ...................11

Donald C. Clarke, *The Enforcement of United States Court Judgments in China: A*
   *Research Note* (May 27, 2004) ...............................................................................................11

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1  **NOTICE OF MOTION AND MOTION**

2      PLEASE TAKE NOTICE that on June 17, 2010 at 8:00 a.m., in Courtroom No. 9, 19th

3  Floor, the Honorable William H. Alsup, United States District Judge presiding, located at 450

4  Golden Gate Avenue, San Francisco, California, Lead Plaintiff Shahpour Javidzad will move this

5  Court, with Defendants concurring, for entry of an order and judgment granting final approval of

6  the proposed Settlement and Plan of Allocation that were preliminarily approved by the Court on

7  February 17, 2010.  This motion is accompanied by a separate motion asking that the Court make

8  an award of fees and expenses if the Settlement is approved.

9  **STATEMENT OF ISSUES TO BE DECIDED**

10      1.      Whether the proposed Settlement should be preliminarily approved.

11      2.      Whether the proposed Plan of Allocation of the Settlement proceeds to the Class

12  should be approved.

13  **MEMORANDUM OF POINTS AND AUTHORITIES**

14  **I.      INTRODUCTION**

15      Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, Lead Plaintiff respectfully

16  submits this memorandum in support of his motion for final approval of the Settlement of this

17  litigation for $16,000,000.00 in cash (plus accruing interest) (the "Settlement") and approval of

18  the proposed plan of allocation of the Settlement.  The terms of the Settlement are set forth in the

19  Stipulation of Settlement dated February 14, 2010 (the "Stipulation"), which has been previously

20  submitted to the Court. (Dkt. No. 501).  Lead Counsel believes that the Settlement is a highly

21  favorable result for the Class and should be approved.  The $16 million settlement amount, paid

22  in two installments, was deposited into an escrow account on February 23 and February 26, 2010

23  and has been earning interest for the benefit of the Class since that time.  (*See* accompanying

24  Decl. of Hebert E. Milstein ("Milstein Decl.") ¶ 20.)

25      As discussed in detail below, Lead Plaintiff and Lead Counsel submit that the proposed

26  Settlement is in the best interests of the Class and represents a significant recovery, particularly

27  in light of the risks of further litigation and the uncertainty with respect to Lead Plaintiff's ability

28  to collect on any judgment.  Accordingly, Lead Plaintiff respectfully moves for final approval of

1  the proposed Settlement.  Lead Plaintiff and Lead Counsel further submit that the proposed Plan

2  of Allocation is fair and reasonable and should be approved.  Defendants agree that this motion

3  should be granted, but do not necessarily agree with the statements and arguments Lead Plaintiff

4  sets out in this brief, and take no position on the Plan of Allocation.

5  **II.      BACKGROUND**

6         **A.      Description Of The Action**

7         Beginning on October 9, 2007, several class actions were filed in the United States

8  District Courts for the Northern District of California (the "Court") and for the Southern District

9  of New York alleging similar violations of the Federal securities laws against Defendants.  The

10  cases filed in the Southern District of New York were subsequently transferred to the Northern

11  District of California, which consolidated all such cases under the caption *In re LDK Solar*

12  *Securities Litigation*, Master File No. C-07-05182-WHA (BZ) (the "Action").

13         By Order dated January 4, 2008 (Dkt. No. 57), and in accordance with the Private

14  Securities Litigation Reform Act ("PSLRA"), the Court appointed Shahpour Javidzad as Lead

15  Plaintiff for the Action.  By Order dated February 8, 2008 (Dkt. No. 64), the Court appointed

16  Cohen Milstein Sellers & Toll PLLC as Lead Counsel for the proposed class.  By Order dated

17  June 1, 2009 (Dkt. No. 262), the Court appointed Berman DeValerio as Liaison Counsel.[1]

18         On March 10, 2008, Lead Plaintiff filed the Consolidated Class Action Complaint (the

19  "Complaint") (Dkt. No. 65) asserting claims under §§10(b) and 20(a) of the Securities Exchange

20  Act of 1934, 15 U.S.C. §§78j(b) and 78t(a), and Rule l0b-5 promulgated thereunder by the

21  United States Securities and Exchange Commission ("SEC"), against LDK Solar Co., Ltd.

22  ("LDK") and LDK Solar USA, Inc., as well as seven of LDK's officers and directors.  The

23  Complaint alleged that Defendants disseminated and/or controlled those who disseminated

24  materially false and misleading statements and failed to disclose alleged material facts regarding,

25  among other matters, the quantity and value of LDK's silicon raw material inventory.  The Court

26

27

28

---

[1] Lead Counsel and Liaison Counsel are collectively referred to as "Plaintiff's Counsel."

1    denied Defendants' motions to dismiss the Complaint on May 29, 2008 (Dkt. No. 85) and

2    September 24, 2008 (Dkt. No. 132).

3          After extensive discovery and briefing by the parties, on January 28, 2009 the Court

4    certified a class comprised of:

5                all persons who (a) purchased LDK Solar Co., Ltd. . . . American
             Depository Shares ("ADSs"); (b) purchased call options for LDK
6            ADSs; or (c) sold put options for LDK ADSs during the Class
             Period defined below, and were damaged thereby.  Excluded from
7            the Class are the Defendants and the other current and former
             officers and directors of the Company, their immediate families,
8            their heirs, successors, or assigns and any entity controlled by any
             such person.  The Class Period is June 1, 2007 through October 7,
9            2007.

10   (Dkt. No. 177 at 6.)  On February 12, 2009 Defendants filed a petition with the Ninth Circuit

11   seeking permission to file an interlocutory appeal of the Court's decision to certify a class.

12   (Petition for Permission to Appeal, Dkt. No. 1, 09-80039 (9th Cir. Feb. 12, 2009).)  Following

13   Plaintiff's filing of a responsive brief opposing review, the Ninth Circuit denied Defendants

14   permission to appeal.  (Order, Dkt. No. 14, No. 09-80039 (9th Cir. May 1, 2009).  Shortly

15   thereafter, on May 21, 2009, Lead Counsel caused a Court-approved notice of the class

16   certification order to be mailed to potential class members. (See accompanying Decl. of Eric

17   Schachter.  ("Schachter Decl." ¶ 9.)

18         Following the denial of the motions to dismiss, the parties engaged in extensive

19   discovery, during the course of which, among other things, Defendants produced over two

20   million pages of documents, mainly in Chinese, and Plaintiff's Counsel took twenty depositions

21   of LDK employees or former employees and five depositions of Defendants' experts.  (Milstein

22   Decl. ¶ 3 & Ex. B.)  Most of these depositions took place in Hong Kong and Hawaii in languages

23   other than English.  (*Id.*)  Lead Plaintiff also engaged four of his own experts—each of whom

24   was deposed by Defendants (one twice)—to assist in discovery, to calculate damages and to

25   testify at trial.  Discovery concluded in late December 2009.[2]  (*Id.*)

26   _____

27   [2] Lead Plaintiff's testifying experts were Thomas J. Todaro, a technical expert in silicon wafer
     manufacturing (*see* accompanying Decl. of Thomas J. Todaro); Stuart Harden, an accounting
28   expert; (*see* accompanying Decl. of Stuart Harden); Robert Lorenzini, an expert on the solar
     wafer industry (*see* accompanying Decl. of Robert Lorenzini) and Jane D. Nettesheim, an expert

1    On January 7, 2010, Defendants filed a motion for summary judgment and three motions

2    to exclude expert testimony from Lead Plaintiff's technical, damages, and accounting experts.

3    Lead Plaintiff also filed his own motion for partial summary judgment.  (Dkt. Nos. 335, 338,

4    341, 375, 382.)  Briefing of these motions was completed on January 28, 2010.  (Dkt. Nos. 469,

5    471, 475, 477, 479.)  Because of the proposed Settlement no ruling has been issued in connection

6    with these motions.

7    During the course of the litigation, the parties also participated in extensive mediation

8    efforts.  (Milstein Decl. ¶ 9.)  On December 22, 2008, the parties first participated in a formal

9    mediation conducted by the Hon. Daniel Weinstein (Ret.).  (*Id.*)  The parties participated in

10   subsequent mediations conducted by Judge Weinstein on August 18, 2009, and on February 1,

11   2010.  (*Id.*)  Lead Plaintiff, on behalf of the class, and Defendant Jack Lai, on behalf of all

12   Defendants, personally attended each of these sessions.  (*Id.*)  At various times throughout the

13   period from December 2008 through January 2010, the parties discussed a possible resolution of

14   the Action with Judge Weinstein. (*Id.*)  At the conclusion of the February 1, 2010 mediation, and

15   with the participation of Judge Weinstein, the parties agreed that the Action should be settled for

16   a payment of $16 million for the benefit of the class by Defendants and their insurer.  (*Id.*)

17        **B.    Proposed Settlement And Notice To The Class**

18        After briefing and oral argument the Court granted preliminary approval to the Settlement

19   on February 17, 2010 (Dkt. No. 503).  Shortly after the Court's preliminary approval order

20   Defendants and their insurers, acting in accordance with their obligations under the Settlement,

21   deposited $16 million into an interest bearing escrow account which will fund the Settlement if it

22   is approved.  Lead Plaintiff understands that, because Defendants' remaining insurance coverage

23   was substantially less than $16 million, $10 million of the settlement amount was paid by

24   Defendant LDK, with the remainder being paid by the company's insurer.  (Milstein Decl. ¶ 20.)

25        In its February 17 order the Court also set a hearing on whether it should grant final

26   approval to the Settlement for June 17, 2010 and approved, with certain modifications, the

27

28   on loss causation and damages (*see* accompanying Decl. of Jane D. Nettesheim).  Lead Plaintiff
     also engaged a fifth non-testifying accounting expert who provided assistance in the preparation
     of Lead Plaintiff's Consolidated Complaint.  (*See* accompanying Decl. of Harris Devor.)

1   parties' proposed notice of the Settlement (the "Notice") to the Class.[3]  The Notice advises the

2   Class that, pursuant to the Court's preliminary approval order, class members have until June 3,

3   2010 to file any objection to the proposed Settlement, including to the Plan of Allocation and

4   Lead Counsel's request for an award of attorneys' fees and reimbursement of litigation expenses,

5   or to advise the Court and the parties if they wish to appear and be heard at the final approval

6   hearing.  The notice also indicates that the Court's order provides that class members have until

7   May 6, 2010 to request to be excluded from the class.

8         The notice was initially mailed to class members on March 19, 2010.  (Schachter Decl.

9   ¶ 18; Milstein Decl. ¶ 21.)   The notice and key documents likely to be of interest to class

10  members, such as the Stipulation, have been made available on the website www.

11  ldksolarsecuritieslitigation.com.[4]   (Id.)   On March 24, 2010 Lead Counsel issued as a press

12  release the Court-approved summary notice of the Settlement, which contains a brief description

13  of the Settlement and explains how class members can obtain a copy of the full notice.[5]   (Id.)

14  This summary notice has been widely distributed on the Internet, including on the Yahoo!

15  Finance and Google Finance web sites.  (Id.)

16        As of April 14, 2010 A.B. Data, the claims administrator, had received 17 valid requests

17  for exclusions in response to the initial May 21, 2009 notice advising the Class that a Class had

18  been certified and only one additional valid request for exclusion in response to the March 2010

19  Notice.  (Schachter Decl. ¶¶ 14, 21.)  As of this date, no class member has filed an objection to

20  the Settlement or a request to appear at the final approval hearing.  (Milstein Decl. ¶ 21.)  Lead

21  Plaintiff will provide the Court with updated numbers once the deadlines for requesting

22  exclusion, objecting to the Settlement and requesting to appear at the hearing have passed.

---

[3] A copy of the published notice to the class is attached as Exhibit D to the accompanying Schachter Declaration.

[4] A printout of the home page of the www.ldksolarsecuritieslitigation.com website, which is maintained by A.B. Data, the Court-appointed claims administrator, is attached as Exhibit C to the Milstein Declaration.

[5] A copy of the published summary notice to the class is attached as Exhibit D to the Milstein Declaration.

1    Assuming that every potential class member files a claim, the proposed Settlement would

2    provide an estimated recovery of about $1.13 per damaged share of LDK stock before deduction

3    of attorneys' fees and expenses and the administrative cost of the proposed Settlement.

4    (Nettesheim Decl. ¶ 15.)  Plaintiff is today filing a separate Motion for an Award of Fees and

5    Expenses which seeks reimbursement of expenses and an award of $2.2 million in attorneys fees,

6    13.75% of the $16 million Settlement.  Plaintiff's separate motion also seeks reimbursement

7    from the settlement fund of litigation expenses of $2,699,725.56 and of the costs of

8    administering the Settlement.  If each of these proposed amounts is paid out of the Settlement

9    fund (and if administrative costs are estimated at $250,000) the net recovery for class members

10   would be approximately $0.77 per damaged share.

11   Lead and Liaison Counsel believe that the Settlement is fair, reasonable and adequate and

12   recommend that it be approved.  (Milstein Decl. ¶ 9; Decl. of Christopher T. Heffelfinger ¶ 11.)

13   **III.    ARGUMENT**

14       **A.    <u>A Proposed Class Action Settlement Should Be Approved If It Is Fair,
                  Reasonable And Adequate</u>**

15

16   It is well established that "voluntary conciliation and settlement are the preferred means

17   of dispute resolution."  *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir.

18   1982).  Class action suits readily lend themselves to compromise because of the difficulties of

19   proof, the uncertainties of the outcome, and the typical length of the litigation.  "[T]here is an

20   overriding public interest in settling and quieting litigation," and this is "particularly true in class

21   action suits."  *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976); *see also Util.*

22   *Reform Project v. Bonneville Power Admin.*, 869 F.2d 437, 443 (9th Cir. 1989).

23   In deciding whether to approve a proposed settlement of a stockholders' class action

24   under Federal Rule of Civil Procedure 23(e), the court must find that the proposed settlement is

25   "fair, reasonable, and adequate."  The Ninth Circuit has explained that

26   > [t]he district court's ultimate determination [of whether a class
     > action settlement should be approved] will necessarily involve a
     > balancing of several factors which may include, among others,
     > some or all of the following: the strength of plaintiffs' case; the
27   > risk, expense, complexity, and likely duration of further litigation;
     > the risk of maintaining class action status throughout the trial; the
28   > amount offered in settlement; the extent of discovery completed,

1
2

> and the stage of the proceedings; the experience and views of
> counsel; the presence of a governmental participant; and the
> reaction of the class members to the proposed settlement.

3
4
5
6
7
8
9
10
11

*Officers for Justice*, 688 F.2d at 625 (citations omitted); *accord Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370,1375 (9th Cir. 1993); *Woo v. Home Loan Group, L.P.*, No. 07-CV-202, 2008 WL 3925854, at *3 (S.D. Cal. Aug. 25, 2008); *Church v. Consol. Freightways, Inc.*, No. C-90-2290, 1993 U.S. Dist. LEXIS 6439 (N.D. Cal. May 3, 1993); *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 720 F. Supp. 1379 (D. Ariz. 1989), *aff'd sub nom. Class Plaintiffs v. Seattle*, 955 F.2d 1268 (9th Cir. 1992).  "'The relative degree of importance to be attached to any particular factor will depend upon . . . the nature of the claim(s) advanced, the type(s) of relief sought, and the unique facts and circumstances presented by each individual case.'"  *Home Loan Group*, 2008 WL 3925854, at *3 (quoting *Officers for Justice*, 688 F.2d at 625).

12
13
14

> The district court must exercise "sound discretion" in approving a settlement.  *Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980), *aff'd*, 661 F.2d 939 (9th Cir. 1981); *Torrisi*, 8 F.3d at 1375. In exercising its discretion,

15
16
17
18

> the court's intrusion upon what is otherwise a private consensual
> agreement negotiated between the parties to a lawsuit must be
> limited to the extent necessary to reach a reasoned judgment that
> the agreement is not the product of fraud or overreaching by, or
> collusion between, the negotiating parties, and that the settlement,
> taken as a whole, is fair, reasonable and adequate to all concerned.

19

*Officers for Justice*, 688 F.2d at 625.  The Ninth Circuit has cautioned that

20
21
22
23
24

> the settlement or fairness hearing is not to be turned into a trial or
> rehearsal for trial on the merits.  Neither the trial court nor this
> court is to reach any ultimate conclusions on the contested issues
> of fact and law which underlie the merits of the dispute, for it is the
> very uncertainty of outcome in litigation and avoidance of wasteful
> and expensive litigation that induce consensual settlements.  The
> proposed settlement is not to be judged against a hypothetical or
> speculative measure of what ***might*** have been achieved by the
> negotiators.

25

*Id.* (emphasis in original).

26
27
28

> In determining whether the proposed Settlement is fair, reasonable and adequate, the Court should balance against the continuing risks of litigation the benefits afforded to the Class and the immediacy and certainty of a substantial recovery.  *Girsh v. Jepson*, 521 F.2d 153, 157

1  (3d Cir. 1975); *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 616-17 (N.D. Cal. 1979); *In re Warner*

2  *Commc'ns Sec. Litig.*, 618 F. Supp. 735, 741 (S.D.N.Y. 1985), *aff'd*, 798 F.2d 35 (2d Cir. 1986).

3  In other words,

4          [t]he Court shall consider the vagaries of litigation and compare
        the significance of immediate recovery by way of the compromise

5          to the mere possibility of relief in the future, after protracted and
        expensive litigation.  In this respect, [i]t has been held proper to

6          take the bird in hand instead of a prospective flock in the bush.

7  *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004)

8  (citations and quotations omitted).  Courts recognize "that stockholder [class action] litigation is

9  notably difficult and notoriously uncertain."  *Lewis v. Newman*, 59 F.R.D. 525, 528 (S.D.N.Y.

10  1973).

11        Where, as here, a proposed class settlement has been reached after arm's-length

12  negotiation conducted by capable counsel, with the assistance of a respected mediator, that fact

13  should be taken into account by the Court.  *See Boyd v. Bechtel Corp.*, 485 F. Supp. at 622 ("the

14  recommendations of plaintiffs' counsel should be given a presumption of reasonableness."); *see*

15  *also In re Indep. Energy Holdings PLC*, No. 00 Civ. 6689, 2003 WL 22244676, at *4 (S.D.N.Y.

16  Sept. 29, 2003) ("the fact that the Settlement was reached after exhaustive arm's-length

17  negotiations, with the assistance of a private mediator experienced in complex litigation, is

18  further proof that it is fair and reasonable").

19      **B.**      <u>The Proposed Settlement Should Be Approved</u>

20        The proposed $16 million Settlement (plus accruing interest) is fair, reasonable, and

21  adequate and in the best interests of the Class.  If this litigation were to continue this matter

22  would likely not be finally resolved for years given the length of the likely appeals process.

23  More importantly, there is a substantial possibility that Lead Plaintiff might not prevail at trial

24  and, even if Lead Plaintiff were to prevail at trial and on any subsequent appeals, it might be

25  difficult or impossible to collect any judgment against Defendants.  And even if Lead Plaintiff

26  were to prevail and be able to collect a judgment, any damages awarded might be much smaller

27  than those that Lead Plaintiff seeks.  In other words, if this litigation were to continue there is a

28  real possibility that Class members might collect little or nothing and, even if eventually able to

1    recover a meaningful amount, Class members would not receive any payment until well into the

2    future.  By contrast, the proposed Settlement would provide a prompt, substantial and assured

3    all-cash benefit to class members in the near future.

4            **1.**         **There Is Uncertainty About Lead Plaintiff's Ability To Prove His Case**

5          The claims advanced by the Class involve numerous complex legal and factual issues and

6    Lead Counsel recognizes that there would be substantial difficulties in prosecuting this case

7    before a jury.

8          For example, Lead Plaintiff's allegations are based, in part, on public allegations by

9    Charley Situ, LDK's former financial controller, of inventory and accounting irregularities and

10   of missing inventory.  But Lead Plaintiff believes that Situ would not be available as a witness at

11   trial and that even if Situ were available, he might not be able to support his assertions that the

12   quantity of inventory he claimed was missing was actually missing.[6]  Although it may be

13   possible for Lead Plaintiff to show serious violations of accounting rules at LDK by relying on

14   documents and expert testimony, Situ's absence greatly complicates Lead Plaintiff's ability to

15   present his case in a manner easily understandable by a jury.  Moreover, Lead Plaintiff's inability

16   to prove that Situ's claims about missing inventory were correct will facilitate an argument by

17   Defendants that loss causation has not been established—Defendants will say that the drop in the

18   price of LDK shares resulted almost exclusively from the dissemination of Situ's allegations of

19   missing inventory, allegations that Defendants will assert were not true.  The Supreme Court's

20   decision in *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336 (2005), and subsequent cases interpreting

21   *Dura* have made proving loss causation more difficult and uncertain than in the past.  *See, e.g.,*

22   *In re Apollo Group, Inc. Sec. Litig.*, No. CV 04-2147-PHx-JAT, 2008 U.S. Dist. LEXIS 61995

23   (D. Ariz. Aug. 4, 2008), (reversing jury verdict in favor of shareholders because evidence was

24   insufficient to establish loss causation).

25

26

27   ─────────────────────

28   [6] Lead Counsel's repeated efforts to locate or meet with Mr. Situ were unsuccessful.  (Milstein Decl. ¶ 10.)

1      Furthermore, to prevail, Lead Plaintiff must prove not only that Defendants materially

2    violated applicable accounting rules, but that they did so with scienter—that they acted

3    intentionally or recklessly.   Proving that Defendants' conduct was intentional or reckless is

4    challenging because Defendants will likely testify that any accounting errors were not the result

5    of their intentional or reckless conduct.   Defendants have argued that they reasonably relied on

6    advice from their outside auditors, the accounting firm of KPMG Huazhen, KPMG's Chinese

7    affiliate.   Lead Plaintiff's effort to prove that there was no such reasonable reliance will be

8    complicated by the fact that, despite a subpoena and requests from all parties to this Action that it

9    comply with the subpoena, KPMG Huazhen refused to produce any documents to Lead Plaintiff,

10    contending that compliance would violate Chinese criminal law.  (Milstein Decl. ¶ 4.)

11        In addition to these concerns, at the time Lead Plaintiff agreed to the proposed settlement,

12    Lead Plaintiff's three most important experts were the subject of pending *Daubert* challenges

13    that argue that their testimony should be excluded.   Although Lead Plaintiff believes that the

14    Court would have found the testimony of each of these experts admissible, this is by no means

15    certain.  It would be a severe blow to Lead Plaintiff's case if any of the three challenged experts

16    were barred from testifying.   Moreover, given that nearly all of the fact witnesses are Chinese

17    speaking LDK employees located in China, almost all of the fact witness testimony would need

18    to be presented via recorded video or transcript reading, and through an interpreter, making it

19    difficult for Lead Plaintiff to present his case in a compelling manner.

20            **2.**      **There Is Uncertainty About Lead Plaintiff's Ability To Prove**

21                **Substantial Damages**

22        If Lead Plaintiff were to prevail at trial, he would likely argue that damages amounted to

23    approximately $293 million.  But there is a substantial possibility that, even if a jury were to find

24    Defendants liable, it could award far less than that amount.   Defendants have attacked the

25    methodology used by Lead Plaintiff's damages expert and have asserted that some or all of the

26    price movement in LDK shares on which Lead Plaintiff's damages number is based occurred for

27    reasons other than the disclosures alleged by Lead Plaintiff.   Lead Plaintiff understands that

28    Defendants will argue, with the support of their own expert testimony, that, even if Lead Plaintiff

proves securities fraud, he cannot prove any damages, in part because the methodology of Lead

Plaintiff's damages expert is supposedly unreliable.

> **3.     There Is Uncertainty About Lead Plaintiff's Ability To Collect On Any Judgment**

Lead Plaintiff believes that it would be difficult to collect any judgment he might obtain

against Defendants.   Defendants' insurance coverage is limited, each of the individual

Defendants resides in the People's Republic of China (except for Defendant Lai, who is unlikely

to have sufficient assets to pay any judgment) and LDK has substantially all of its assets in

China.   Lead Plaintiff's research indicates that it would not be possible to enforce a judgment

under U.S. securities laws in China.  *See, e.g.,* Donald C. Clarke, *The Enforcement of United

States Court Judgments in China: A Research Note* (May 27, 2004) (unpublished research paper,

George Washington Univ. Law Sch., available at http://ssrn.com/abstract=943922) (the question

of whether a U.S. judgment can be enforced in China "can be answered with a fair degree of

confidence both as to formal law and as to actual practice: almost certainly no, at least where a

defendant is present and objecting"); Arthur Anyuan Yuan, *Enforcing and Collecting Money

Judgments in China from a U.S. Judgment Creditor's Perspective*, 36 Geo. Wash. Int'l L. Rev.

757, 758 (2004) ("The enforcement of foreign judgments in China has been notoriously difficult

in recent years.").

Even if a judgment by this Court could be fully enforced against LDK, the limited

amount of insurance available means that if LDK became insolvent there would likely be no

funds to pay any judgment.  LDK is a highly leveraged company in a depressed industry and its

continued existence as a viable business entity is far from assured.  *See* LDK, 2008 Annual

Report (Form 20-F), at 11-13 (May 22, 2009) (describing LDK's heavy debt load and difficulty

in obtaining financing).  LDK's share price has fallen from $37.50 on October 8, 2007, at the end

of the Class Period (*after* what Lead Plaintiff alleges were corrective disclosures of fraud at

LDK) to $6.82 at the market close of February 12, 2010, the last trading day before the

Settlement was finalized.  As of the close of the market on April 12, 2010 LDK shares were

trading at $7.62 per share.  (Milstein Decl. ¶ 11.)  Moreover, according to a recent SEC filing,

LDK lost $7.3 million in the fourth quarter of 2009 on revenue that was down sharply from the same quarter in 2008.  LDK, (Form 6-K), at 7 (Mar. 31, 2010).

### 4.   Fully Litigating This Action Would Be Time Consuming And Expensive

The immediacy and certainty of this Settlement is a factor for the Court to balance in determining whether this proposed settlement is fair, adequate, and reasonable.  Courts consistently have held that "[t]he expense and possible duration of the litigation should be considered in evaluating the reasonableness of [a] settlement."  *Milstein v. Huck*, 600 F. Supp. 254, 267 (E.D.N.Y. 1984); *see also Officers for Justice*, 688 F.2d at 626.

Absent a settlement, any recovery by the Class is likely to be delayed by years, even if Lead Plaintiff is ultimately successful.  Although trial was less than two months away at the time the Settlement was agreed to, it is unlikely that a jury verdict would have ended this Action.  Defendants would undoubtedly appeal any adverse decision to the Ninth Circuit and, if they lost there, would likely have sought en banc review or a writ of certiorari from the United States Supreme Court or both.  Such appeals would be time consuming and might lead to the reversal of any favorable verdict.  A prompt, certain recovery is considerably more valuable to the Class than an uncertain recovery at some undetermined point in the future.  *See Reynolds v. Beneficial Nat'l Bank*, 288 F.3d 277, 284 (7th Cir. 2002) ("To most people, a dollar today is worth a great deal more than a dollar ten years from now.").

Further litigation would also be expensive.  At the time of the Settlement, Lead Counsel had accrued litigation expenses of some $2.7 million (not counting the value of attorney time) and Plaintiff's Counsel believe that Defendants had spent some $14 million on litigation costs (including both expenses and attorneys fees).  This case has been unusually costly to litigate, in part because both sides rely heavily on experts and on documents and testimony that must be translated at considerable cost.[7]  Millions of dollars in additional fees and expense would likely accrue if this case were litigated to a final judgment.

---

[7] The litigation expenses incurred by Plaintiff's Counsel, including the reasons why these expenses were necessary, are discussed in detail in Lead Counsel's Motion for an Award of Attorneys Fees and Expenses, which is also being filed today.

1    Other things being equal, it is in the interest of the plaintiff class to minimize litigation

2    costs.   Ultimately, all reasonable litigation costs incurred by Lead Counsel will likely be

3    subtracted from any class recovery.   Moreover, Lead Plaintiff understands that the cost of

4    additional litigation fees and expenses incurred by Defendants would be paid by LDK's insurer,

5    up to the applicable coverage limits.   At the time the Settlement was agreed to Plaintiff's

6    Counsel believes that only about $6 million of LDK's initial $20 million in applicable insurance

7    coverage remained.   (Milstein Decl. ¶ 20; *see also* LDK, (Form 6-K), (Mar. 31, 2010) (indicating

8    expense of $10 million by the company).)   Further litigation would consume insurance coverage

9    that could otherwise be used to fund a settlement, and it is not clear whether, in the future, LDK

10   itself would be willing or financially able to pay more than the $10 million that it contributed to

11   the proposed $16 million Settlement.

## 5. Experienced Counsel, Having Completed Discovery, Recommend Approval Of The Settlement

In determining whether the Settlement should be approved, the Court should consider

Lead and Liaison Counsel's view that the Settlement is fair, reasonable and adequate.   Courts

recognize that, in determining whether a proposed settlement is fair, "[g]reat weight" should be

accorded to the views of experienced class counsel "who are most closely acquainted with the

facts of the underlying litigation."  *Nat'l Rural*, 221 F.R.D. at 528 (citation omitted); *see also In

re First Capital Holdings Corp. Fin. Prods. Sec. Litig.*, MDL Dkt. No. 901, 1992 U.S. Dist.

LEXIS 14337, *8 (C.D. Cal. June 10, 1992) (finding belief of counsel that the proposed

settlement represented the most beneficial result for the class to be a compelling factor in

approving settlement).[8]  Here Plaintiff's Counsel are Cohen Milstein Sellers & Toll PLLC and

Berman DeValerio, two of the most respected and experienced securities class action litigation

firms in the country.  (Milstein Decl. Ex. A; Heffelfinger Decl. Ex A.)

The question of whether a proposed settlement is fair, reasonable and adequate

necessarily requires a judgment and evaluation by the attorneys for the parties based upon a

---

[8] Other courts have expressed similar views.  *See, e.g., Reed v. Gen. Motors Corp.*, 703 F.2d 170, 175 (5th Cir. 1983); *Weinberger v. Kendrick*, 698 F.2d 61, 74 (2d Cir. 1982); *Kirkorian v. Borelli*, 695 F. Supp. 446, 451 (N.D. Cal. 1988); *Fisher Bros. v. Cambridge-Lee Indus., Inc.*, 630 F. Supp. 482, 489 (E.D. Pa. 1985).

1  comparison of "'the terms of the compromise with the likely rewards of litigation.'"

2  *Weinberger*, 698 F.2d at 73 (quoting *Protective Comm. for Indep. Stockholders of TMT Trailer*

3  *Ferry v. Anderson*, 390 U.S. 414, 424-25 (1968)).   An evaluation of the costs and benefits of

4  settlement must also be tempered by recognizing that any compromise involves concessions on

5  the part of all settling parties.   Indeed, "the very essence of a settlement is compromise, a

6  yielding of absolutes and an abandoning of highest hopes."   *Officers for Justice*, 688 F.2d at 624

7  (internal quotations omitted).

8          Given the advanced stage of these proceedings, it is especially appropriate to afford

9  considerable weight to the views of experienced class counsel.   At the time the Settlement was

10  agreed to, all discovery—both merits and expert discovery—had been completed and motions

11  for summary judgment had been fully briefed.   Lead Counsel is intimately familiar with the

12  factual issues of this Action, largely through their time-consuming and expensive review of the

13  millions of pages of the mostly Chinese language documents produced by Defendants, the taking

14  of 25 fact and expert depositions and extensive consultation with Lead Plaintiff's experts.

15          It is also relevant that the Settlement is the result of over a year of arm's length

16  negotiations by experienced counsel, assisted by a respected mediator, and was reached only

17  after Plaintiff's Counsel aggressively prosecuted the claims of the Class until almost the eve of

18  trial.   The final amount of the Settlement was reached with the active participation of retired

19  Judge Weinstein, one of the most experienced securities litigation mediators in the country.

20                   **6.      The Settlement Provides A Substantial Benefit To The Class**

21          In the face of the abundant risks of continued litigation, the proposed Settlement provides

22  the class with a prompt and certain recovery of $16 million with accruing interest, a significant

23  sum, especially in light of LDK's uncertain future viability.   With an estimated recovery of $1.13

24  per damaged share, the per-damaged-share recovery is 15% of LDK's April 12, 2010 per share

25  closing price of $7.62.

26

27

28

C.   **The Proposed Plan Of Allocation Is Fair, Reasonable, And Adequate And Should Be Approved**

Lead Plaintiff also seeks approval of the methodology by which the settlement proceeds will be allocated among Class members (the "Plan of Allocation"). The Plan of Allocation is set forth in the notice mailed to Class members, and additional information regarding the Plan of Allocation is located on the www.ldksolarsecuritieslitigation.com website.

Assessment of a plan of allocation in a class action is governed by the same standard applicable to the settlement as a whole—the plan must be fair, reasonable, and adequate. *See In re Ikon Office Solutions*, 194 F.R.D. 166, 184 (E.D. Pa. 2000); *Class Plaintiffs,* 955 F.2d at 1284. District courts enjoy "broad supervisory powers over the administration of class-action settlements to allocate the proceeds among the claiming class members . . . equitably." *Beecher v. Able*, 575 F.2d 1010, 1016 (2d Cir. 1978); *accord In re Chicken Antitrust Litig. Am. Poultry*, 669 F.2d 228, 238 (5th Cir. 1982). An allocation formula need only have a reasonable, rational basis, particularly if recommended by "experienced and competent" class counsel. *White v. NFL*, 822 F. Supp. 1389, 1420 (D. Minn. 1993); *In re GulfOil/Cities Serv. Tender Offer Litig.*, 142 F.R.D. 588, 596 (S.D.N.Y. 1992).

The objective of a plan of allocation is to provide an equitable basis upon which to distribute the settlement fund among eligible class members. Here, the Plan of Allocation was developed by Lead Counsel with the assistance of their damage expert and reflects an assessment of the damages that could have been recovered at trial under the theories asserted in the case by Lead Plaintiff. *See* Nettesheim Decl. (describing proposed plan of allocation as fair and reasonable). The Plan of Allocation will result in a fair distribution of the available proceeds among those class members who submit valid claims and therefore should be approved.

IV.   **CONCLUSION**

For all of the above reasons, Lead Plaintiff respectfully requests that the Court grant final approval to the Settlement.

1  Dated:  April 16, 2010

2                                    By:  ____/s/ Herbert E. Milstein_____

3                                    **COHEN MILSTEIN SELLERS & TOLL**
                                          **PLLC**
4                                    Herbert E. Milstein
                                     Joshua S. Devore
5                                    Matthew B. Kaplan
                                     1100 New York Avenue, N.W.
6                                    West Tower, Suite 500
                                     Washington, D.C. 20005
7                                    Telephone:  (202) 408-4600
                                     Facsimile:  (202) 408-4699
8                                    Email: hmilstein@cohenmilstein.com
                                              jdevore@cohenmilstein.com
9                                              mkaplan@cohenmilstein.com

10                                   *Lead Counsel for the Class*

11

12                                   By:  _____/s/ Christopher T. Heffelfinger_____

13                                   **BERMAN DEVALERIO**
                                     Joseph J. Tabacco, Jr. (SBN 75484)
14                                   Christopher T. Heffelfinger (SBN 118058)
                                     Anthony D. Phillips (SBN 259688)
15                                   One California Street, Suite 900
                                     San Francisco, CA 94111
16                                   Telephone: (415) 433-3200
                                     Facsimile: (415) 433-6382
17                                   Email: jtabacco@bermandevalerio.com
                                              cheffelfinger@bermandevalerio.com
18                                            aphillips@bermandevalerio.com

19                                   *Liaison Counsel for the Class*

20

21

22

23

24

25

26

27

28

1

## **CERTIFICATE OF SERVICE**

2

3      I hereby certify that on this date, I caused to be electronically filed the foregoing with the

4    Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-

5    mail addresses of the parties of record.

6

7                                    ____/s/ Matthew B. Kaplan____
                                     Matthew B. Kaplan

8                                    April 16, 2010

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28